NOW, THEREFORE, in consideration of the mutual representations, warranties, covenants and agreements contained herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and upon the terms and subject to the conditions hereof, the Parties, intending to be legally bound, hereby agree as follows:

## ARTICLE I
## DEFINITIONS

1.1    <u>Defined Terms</u>. As used herein, the terms below shall have the following respective meanings:

"<u>Acquired Bank Accounts</u>" shall mean any bank accounts of Sellers that Buyer elects to acquire by written notice to Sellers on or before the date that is ten (10) days prior to Closing; <u>provided</u>, that the Parties shall agree in good faith as to one or more bank accounts that the Debtors shall retain in connection with the wind down and liquidation of the Seller entities and businesses following the Closing (the "<u>Retained Bank Account(s)</u>").

"<u>Acquired Intellectual Property</u>" shall mean, collectively, all Owned Intellectual Property and Licensed Intellectual Property.

"<u>Administrative Agent</u>" shall have the meaning set forth in the Preamble.

"<u>Administrative Expenses</u>" shall mean, collectively, the administrative expenses incurred by Debtors in the Cases, including expenses of the kind specified in Sections 105, 326, 328, 330, 331, 365, 503(a), 503(b), 507(b), 546(c), 546(d), or 726 (to the extent permitted by Law) of the Bankruptcy Code, and any other provision of the Bankruptcy Code (including, subject to entry of the DIP Order, Section 506(c) of the Bankruptcy Code).

"<u>Affiliate</u>" shall mean, with respect to any Person, any other Person that, directly or indirectly through one or more intermediaries, controls, or is controlled by, or is under common control with, such Person, and the term "control" (including the terms "controlled by" and "under common control with") means the possession, directly or indirectly, of the power to direct or cause the direction of the management and policies of such Person, whether through ownership of voting securities, by contract or otherwise.

"<u>Agreement</u>" shall have the meaning set forth in the Preamble.

"<u>Agreement Date</u>" shall have the meaning set forth in the Preamble.

"<u>Allocation Schedule</u>" shall have the meaning set forth in <u>Section 3.3</u>.

"<u>Alternate Transaction</u>" shall mean a transaction or transactions pursuant to which any of the Sellers or any of its subsidiaries, in one or a series of transactions, sells, transfers, exchanges, leases or otherwise disposes of, directly or indirectly, all or any material portion of the Purchased Assets, including any transaction pursuant to one or more Competing Qualified Bids or through any other asset sale, stock sale, share exchange, debt-for-equity swap, joint venture, credit bid, financing, merger, amalgamation, business combination, reorganization, restructuring or recapitalization, a plan of reorganization, a plan of arrangement or any similar transaction, in each

2

case that would not involve a sale or disposition of any or all of the Purchased Assets (other than sale of the products of the Business in the Ordinary Course of Business) or the Business to Buyer; provided, that any disposition of Purchased Assets that is expressly permitted by Section 6.2 of this Agreement shall not be deemed an Alternate Transaction.

"Anti-Corruption Laws" shall mean the FCPA and all other applicable Laws concerning or relating to bribery or corruption in any jurisdiction in which any Seller or any of its subsidiaries is located or is doing business.

"Anti-Money Laundering Laws" shall mean the U.S. Patriot Act, as amended, and all other applicable Laws in any jurisdiction in which any Seller or any of its subsidiaries is located or is doing business, which Laws relate to money laundering, any predicate crime to money laundering, or any financial record keeping and reporting requirements related thereto.

"Antitrust Laws" shall have the meaning set forth in Section 6.12(b).

"Assumed Benefit Plans" shall have the meaning set forth in Section 2.3(i).

"Assumed Contracts" shall have the meaning set forth in Section 2.5(a).

"Assumed Liabilities" shall have the meaning set forth in Section 2.3.

"Assumption Notice" shall have the meaning set forth in Section 2.5(f).

"Auction" shall mean the auction for the Purchased Assets to be conducted on the Auction Date in the event of the submission of one or more Competing Qualified Bids in accordance with the terms and provisions of the Bidding Procedures Order and as expressly defined in the Bidding Procedures.

"Auction Date" shall mean the date of the Auction scheduled by the Bankruptcy Court and set forth in the Bidding Procedures Order or such later date as shall be announced by the Sellers and agreed upon by the Sellers and Buyer.

"Available Contracts" shall have the meaning set forth in Section 2.5(a).

"Avoidance Actions" shall mean those actual and/or potential claims and causes of action under sections 502(d), 544, 545, 547, 548 and 550 of the Bankruptcy Code, or any other avoidance actions under the Bankruptcy Code.

"Bankruptcy Code" shall have the meaning set forth in the Recitals.

"Bankruptcy Court" shall have the meaning set forth in the Recitals.

"Bankruptcy Milestones" shall have the meaning set forth in Section 7.3.

"Bankruptcy Rules" shall mean the Federal Rules of Bankruptcy Procedure originally promulgated pursuant to 28 U.S.C. § 2075 and the general, local and chambers rules of the Bankruptcy Court, applicable to the Cases.

"Benefit Plan" shall mean any "employee benefit plan" (within the meaning of Section 3(3) of ERISA, including multiemployer plans within the meaning of Section 3(37) of ERISA), and all pension, severance, retirement, consulting, compensation, profit sharing, commission, employment, change in control, retention, fringe benefit, bonus, stock or other equity, equitybased, option, incentive compensation, restricted stock, stock appreciation right or similar right, phantom equity, profits interests, deferred compensation, employee loan, vacation, paid time off, welfare, medical, dental, vision, flexible benefit, cafeteria, dependent care, disability or wage continuation benefits during periods of absence from work (including short-term disability, long-term disability and worker's compensation benefits), supplemental unemployment, hospitalization, life insurance, death or survivor benefits, employment insurance, and all other employee benefit plans, programs, policies, practices, agreements and other arrangements, and any funding vehicle therefor now in effect or required to be established in the future as a result of the transactions contemplated by this Agreement, in each case, whether or not subject to ERISA, whether formal or informal, written or oral, insured or self-insured, funded or unfunded, binding or not, that (i) provides benefits or compensation to, or which has any application to, any present or former employee, director, independent contractor or other individual service provider of any Seller or any beneficiary or dependent of such persons, (ii) is adopted, maintained, sponsored, contributed to, or required to be contributed to by any Seller, or (iii) with respect to which any Seller is a party, is bound, participates in, or has or could reasonably be expected to have any Liability with respect thereto, whether actual or contingent, or direct or indirect.

"Bidding Procedures" shall mean the Bidding Procedures filed with the Bankruptcy Court in the form attached as Exhibit 1 to the Bidding Procedures Order and approved by the Bankruptcy Court, with such changes thereto being in form and substance reasonably acceptable to Sellers and Buyer.

"Bid" shall have the meaning ascribed to such term in the Bidding Procedures.

"Bidding Procedures Motion" shall mean the motion filed in the Cases, which motion shall be in form and substance reasonably satisfactory to Sellers and Buyer (together with all exhibits thereto), (i) seeking approval of (A) this Agreement and the Transactions and (B) the Bidding Procedures and scheduling certain dates, deadlines and forms of notice in connection therewith, (ii) authorizing the payment of the Expense Reimbursement to Buyer, and (iii) granting other related relief.

"Bidding Procedures Order" shall mean the order of the Bankruptcy Court approving the Bidding Procedures Motion, the Bidding Procedures and granting the relief requested therein in the form set forth hereto as Exhibit A with changes thereto being in form and substance reasonably acceptable to Buyer.

"Bill of Sale and Assignment and Assumption Agreement" shall have the meaning set forth in Section 3.1(b)(i).

"Budget" shall have the meaning ascribed thereto in the DIP Documents.

"Business" shall have the meaning set forth in the Recitals.

"Business Day" shall mean any day other than a Saturday, Sunday or a legal holiday on which banking institutions in New York City, New York or Governmental Entities in the State of Delaware are authorized or obligated by Law or executive order to close.

"Buyer" shall have the meaning set forth in the Preamble.

"Buyer Group" shall mean means Buyer, any Affiliate of Buyer and each of their respective former, current or future Affiliates, officers, directors, employees, partners, members, managers, agents, advisors, successors or permitted assigns.

"Cases" shall have the meaning set forth in the Recitals.

"Claims" shall have the meaning as defined in the Bankruptcy Code.

"Closing" shall mean the consummation of the Transactions.

"Closing Date" shall have the meaning set forth in Section 3.1(a).

"Code" shall mean the Internal Revenue Code of 1986, as amended, and the regulations promulgated thereunder.

"Competing Qualified Bid" shall have the meaning set forth in the Bidding Procedures Order.

"Confidential Information" shall mean all information in any form or medium that relates to the Business, the Purchased Assets or the Assumed Liabilities, including financial information, projections, pricing structures, technical data, Trade Secrets, know-how, ideas, inventions, designs, research, development plans, identities of, and arrangements with, customers and suppliers, software and databases, but shall not include any information that (i) at the time of disclosure thereof is generally available to the public (other than as a result of disclosure in violation of this Agreement), (ii) is, was or hereafter becomes available to the receiving party from a source not known by the receiving party to be bound by obligations of confidentiality with respect to such information, or (iii) is independently developed by the receiving party following the Closing Date without reliance on or use of any Confidential Information.

"Contract" shall mean any lease, sublease, license, sublicense, agreement, contract, contract right, obligation, trust, purchase order, sale order, instrument and other similar arrangements, whether or not in written form, that is binding upon a Person or its property (including any binding commitment to enter into any of the foregoing).

"Contracting Parties" shall have the meaning set forth in Section 10.17.

"Copyrights" shall have the meaning set forth in the definition of Intellectual Property.

"Credit Bid Amount" shall have the meaning set forth in Section 3.2(a).

"Credit Documents" shall mean, collectively, the Prepetition Loan Documents and the DIP Documents.

"Cure Amounts" shall mean all amounts payable that must be paid or otherwise satisfied to cure all of the Sellers' monetary defaults under the Assumed Contracts at the time of the assumption thereof and assignment to Buyer pursuant to section 365 of the Bankruptcy Code.

"Debt" shall mean, without duplication, (i) indebtedness or other obligations for borrowed money or in respect of loans or advances or issued in substitution for or exchange of indebtedness for borrowed money or loans or advances, whether short-term or long-term, secured or unsecured, (ii) any indebtedness or other obligations evidenced by any note, bond, debenture or other debt security or instrument, (iii) all obligations to pay the deferred purchase price of property or services, contingent or otherwise (including all "earn-out" obligations), (iv) all obligations under interest rate and currency hedging agreements, including swap breakage or associated fees, (v) all obligations arising from bankers' acceptances, letters of credit (to the extent drawn) and cash/book overdrafts or similar facilities, (vi) all obligations for the payment of which a Person is responsible or liable, directly or indirectly, as obligor, guarantor or otherwise, including guarantees of such obligations, (vii) any obligations under leases that have been or are required to be, in accordance with GAAP, recorded as capital leases, (viii) any indebtedness or other obligations secured by a Lien on any Seller's interest in any assets, and (ix) all accrued interest, premiums, penalties (including any prepayment penalties or premiums) and other obligations related to any of the foregoing.

"Debtors" shall mean the Sellers as debtors in possession in the Cases.

"Designation Notice" shall have the meaning set forth in Section 2.5(a).

"Determination Date" shall have the meaning set forth in Section 2.5(a).

"DIP Documents" shall mean that certain Superpriority Secured Debtor-in-Possession Financing Agreement by and among the DIP Lenders, the Sellers and the Administrative Agent and the other Loan Documents (as defined therein).

"DIP Facility" shall mean the debtor-in-possession term loan facility pursuant to which the DIP Lenders agreed to provide up to $16 million in debtor-in-possession financing commitments on the terms set forth in the DIP Documents.

"DIP Lenders" shall mean the lenders providing the DIP Facility.

"Documents" shall mean all of the Sellers' written files, documents, instruments, papers, books, reports, records, tapes, microfilms, photographs, letters, budgets, forecasts, plans, operating records, safety and environmental reports, data, studies, and documents, Tax Returns, ledgers, journals, title policies, customer lists, regulatory filings, operating data and plans, research material, technical documentation (design specifications, engineering information, test results, maintenance schedules, functional requirements, operating instructions, logic manuals, processes, flow charts, etc.), user documentation (installation guides, user manuals, training materials, release notes, working papers, etc.), marketing documentation (sales brochures, flyers, pamphlets, web pages, etc.), and other similar materials, in each case whether or not in electronic form.

"Equity Interests" of any Person shall mean all (i) shares of capital stock, rights to purchase shares of capital stock, warrants, options, calls or restricted stock (whether or not currently

exercisable), (ii) equity appreciation, phantom stock, stock plans, profit participation plans, profit units, profit interests, equity plans or similar rights, (iii) participations or other equivalents of or interests in (however designated, including units thereof) the equity (including common stock, preferred stock and limited liability company, partnership and joint venture interests) of such Person and (iv) securities exchangeable for or convertible or exercisable into any of the foregoing.

"ERISA" shall mean the Employee Retirement Income Security Act of 1974, as amended, and the regulations promulgated thereunder.

"ERISA Affiliate" shall mean, with respect to any Person, any trade or business (whether or not incorporated) which is a member of a group of which such Person is a member and which would be deemed to be a "controlled group" within the meaning of Sections 414(b), (c), (m) and (o) of the Code.

"Excluded Assets" shall have the meaning set forth in Section 2.2.

"Excluded Cash" shall mean, an amount in cash, determined as of the Closing Date, that has not otherwise been disbursed by the Sellers and their subsidiaries in accordance with the Budget from (i) any borrowings under the DIP Facility and (ii) the amount of cash and cash equivalents of the Sellers and their subsidiaries as of the date hereof

"Excluded Contracts" shall have the meaning set forth in Section 2.2(a).

"Excluded Liabilities" shall have the meaning set forth in Section 2.4.

"Expense Reimbursement" shall mean, following entry of the Bidding Procedures Order, all reasonable and documented out-of-pocket fees and expenses, including all professional fees and expenses and travel expenses, incurred by Buyer or the Administrative Agent, in each case, without duplication and to the extent not otherwise payable to, and received by, the Administrative Agent pursuant to the DIP Documents or the Prepetition Loan Documents, in connection with the diligence, negotiation, execution, delivery, performance and enforcement of this Agreement and the Transactions contemplated thereby, which aggregate total amount shall not, in any event, exceed $1,000,000.

"Express Representations" shall have the meaning set forth in Section 5.8(c).

"Extended Contract Period" shall have the meaning set forth in Section 2.5(a).

"FCPA" shall mean the Foreign Corrupt Practices Act of 1977, as amended, 15 U.S.C. §§78dd-1, et seq.

"Final DIP Order" shall mean an Order of the Bankruptcy Court acceptable to the Debtors and Administrative Agent, authorizing and approving on a final basis, among other things, the DIP Documents and the DIP Facility (as the same may be amended, supplemented, or modified from time to time after entry thereof in accordance with the terms thereof) as to which no stay has been entered.

"Final Order" shall mean an Order of the Bankruptcy Court or other applicable court (a) that is not the subject of a pending appeal, petition for certiorari, motion for reconsideration or leave to appeal or other proceeding for review, rehearing or reargument, (b) that has not been reversed, vacated, modified or amended, is not stayed and remains in full force and effect, and (c) with respect to which the time to appeal, to petition for certiorari, to move for reconsideration or to seek review, rehearing or reargument shall have expired, as a result of which such order shall have become final in accordance with Rule 8002 of the Federal Rules of Bankruptcy Procedure or other applicable Laws, as applicable.

"Foreign Subsidiaries" shall mean each of the following subsidiaries of the Sellers: (i) Near Intelligence SAS, a simplified joint-stock company organized under the Laws of France; (ii) Near Intelligence Pvt. Ltd., a private company organized under the Laws of India; and (iii) Near Intelligence Pty. Ltd., a private company organized under the Laws of Australia.

"GAAP" shall mean United States generally accepted accounting principles.

"Government Official" shall mean any officer or employee of a Governmental Entity or any department, agency, or instrumentality thereof, or of a public international organization, or any person acting in an official capacity for or on behalf of any such Governmental Entity or department, agency, or instrumentality, or for or on behalf of any such public international organization, or any political party, party official, or candidate thereof, excluding officials related to the government of the United States.

"Governmental Entity" shall mean any (i) federal, state, provincial, local, municipal, foreign or other government, (ii) governmental or quasi-governmental authority of any nature (including any governmental agency, branch, department, official, or entity and any court, arbitrator or other tribunal) or (iii) body exercising, or entitled to exercise, any administrative, executive, judicial, legislative, police, regulatory, or taxing authority, including any arbitral tribunal.

"Hired Employees" shall mean, collectively, the employees of the Sellers who accept an offer of employment by Buyer at or prior to the Closing and actually commence employment with Buyer upon the Closing.

"HSR Act" shall mean the Hart-Scott-Rodino Antitrust Improvements Act of 1976, as amended.

"Income Taxes" means Taxes imposed on, or measured by, income or profits, including franchise taxes imposed in lieu of income tax.

"Intellectual Property" shall mean all intellectual property and industrial property, whether protected, created or arising under the Laws of the United States or any other jurisdiction, including all: (i) patents and patent applications, all continuations, divisionals, and continuations-in-part of any of the foregoing, all patents issuing on any of the foregoing, and all reissues, renewals, substitutions, reexaminations and extensions of any of the foregoing (collectively, "Patents"); (ii) trademarks, service marks, trade names, service names, brand names, trade dress rights, logos, corporate names, trade styles, logos and other source or business identifiers and general intangibles of a like nature, together with the goodwill associated with any of the foregoing, and all

applications, registrations, renewals and extensions of any of the foregoing (collectively, "Marks"); (iii) internet domain names; (iv) copyrights, works of authorship, and all mask work, database and design rights, whether or not registered or published, all applications, registrations, reversions, extensions and renewals of any of the foregoing, and all moral rights, however denominated (collectively, "Copyrights"); (v) trade secrets and other confidential or proprietary information (collectively, "Trade Secrets"); (vi) rights of publicity, persona rights or other rights to use indicia of any Person's personality; and (vii) Technology and other intellectual property or industrial property rights arising from or relating to any Technology.

"Interim DIP Order" shall mean an Order of the Bankruptcy Court (as the same may be amended, supplemented, or modified from time to time after entry thereof in accordance with the terms thereof), in form and substance acceptable to the Debtors and Administrative Agent, authorizing on an interim basis, among other things, the DIP Documents and the DIP Facility.

"IT Systems" shall mean all information technology, computers, computer systems and communications systems owned, operated, leased or licensed by any Seller.

"Knowledge of the Sellers" shall mean, as to a particular matter, the actual knowledge of Gladys Kong and John Faieta.

"Labor Laws" shall mean, collectively, to the extent applicable to any Seller, any federal, national, state, and foreign Laws governing labor and/or employment and employment-related matters, including all such Laws relating to wages, employee classification, other compensation and benefits (including but not limited to any applicable federal, state or local laws concerning COVID-19 related paid sick leave or other benefits), family and medical leave and other leaves of absence, the provision of meal and rest periods/breaks, hours, vacation, severance, restrictive covenants, background checks and screening, immigration, WARN Act and any similar federal, state, provincial or local "mass layoff" or "plant closing" Law, collective bargaining, discrimination, harassment, retaliation, civil rights, safety and health (including but not limited to the federal Occupational Safety and Health Act and any applicable state or local laws concerning COVID-19-related health and safety issues), and workers' compensation.

"Law" shall mean any federal, state, provincial, local or foreign statute, law, ordinance, regulation, rule, code, order, treaty, administrative interpretation, guideline, principle of common law or equity, judgment enacted, promulgated, issued, enforced or entered by any Governmental Entity.

"Leased Real Property" shall mean each parcel of real property leased by a Seller as tenant, lessee or sublessee and used in or necessary for the conduct of the Business as currently conducted, together with all rights, title and interest of each such Seller in and to leasehold improvements relating thereto.

"Leases" shall mean all leases, subleases, licenses, concessions and other agreements pursuant to which a Seller holds any Leased Real Property.

"Lenders" shall mean, collectively, the Prepetition Lenders and the DIP Lenders.

"Liabilities" shall mean, as to any Person, all debts, adverse claims, liabilities, commitments, responsibilities, and obligations of any kind or nature whatsoever, direct, indirect, asserted or unasserted, absolute or contingent, of such Person, whether accrued, vested or otherwise, whether known or unknown, and whether or not actually reflected, or required to be reflected, in such Person's balance sheets or other books and records, including any liability for Taxes.

"Licensed Intellectual Property" shall mean all Intellectual Property (other than Owned Intellectual Property) used, held for use or practiced in connection with the Business.

"Lien" shall mean any claim, pledge, option, charge, hypothecation, easement, security interest, license, right-of-way, encroachment, mortgage, statutory or deemed trust, and deed of trust or other encumbrance.

"Marks" shall have the meaning set forth in the definition of Intellectual Property.

"Material Adverse Effect" shall mean any event, change, occurrence, circumstance, development, condition, fact or effect, which, when considered either individually or in the aggregate together with other events, changes, occurrences, circumstances, developments, conditions, facts or effects, is or would reasonably be expected to be materially adverse to (i) the Business or the properties, assets, condition (financial or otherwise), results or operations of the Business or the Purchased Assets, or (ii) any Seller's ability to consummate the Transactions, other than with respect to clause (i) hereof any event, change, occurrence, circumstance, development, condition or change of fact, arising out of, resulting from or attributable to (A) general business or economic conditions affecting the United States or those countries within which the Business operates or the industries in which the Business operates, (B) a change in GAAP or regulatory accounting principles or interpretations thereof after the date hereof, or a change in applicable Law by any Governmental Entity after the date hereof, (C) any act of war or terrorism (or, in each case, escalation thereof), cyberattack or declaration of a national emergency, (D) any pandemic or epidemic, (E) general economic or political conditions, (F) financial, banking or securities markets (including (w) any disruption of any of the foregoing markets, (x) any change in currency exchange rates, (y) any decline or rise in the price of any security, commodity, Contract or index, and (z) any increased cost, or decreased availability, of capital), (G) any act or omission by any Seller or any of their respective Affiliate required to be taken pursuant to the terms of the Final DIP Order, (H) any change in the market price, credit rating or trading volume of Holdings' stock or other securities or any change affecting the ratings or the ratings outlook for Holdings, (I) any matter disclosed in the Sellers' Disclosure Schedules, (J) the negotiation, public announcement, or pendency of this Agreement or the Transactions, (K) any failure, in and of itself, to achieve any budgets, projections, forecasts, estimates, plans, predictions, performance metrics or operating statistics or the inputs into such items (whether or not shared with Buyer or its Affiliates or Representatives), (L) any action taken by Buyer or its Affiliates with respect to the Transactions or the financing thereof, (M) (x) the commencement or pendency of the Cases, (y) any objections in the Bankruptcy Court to (1) this Agreement or any of the Transactions, (2) any requirements in the Sale Order or the Bidding Procedures Order or any actions or omissions of the Sellers or their Affiliates in compliance therewith, (3) the Sale Order or the reorganization or liquidation of the Sellers or their Affiliates, or (4) the assumption or rejection of any Available Contract, or (z) any requirements in the Sale Order or the Bidding Procedures Order, which each are in form and

substance acceptable to Buyer, or any other actions or omissions of the Sellers or their Affiliates in compliance therewith, or (N) any natural disaster, except in each case covered by clauses (A) through (F) to the extent such event, change, occurrence, circumstance, development, condition or change of fact disproportionately and adversely affects any Seller as compared to other companies in a business similarly situated to that of the Business.

"Non-Recourse Persons" shall have the meaning set forth in Section 10.17.

"Notices" shall have the meaning set forth in Section 10.6.

"OFAC" shall mean The Office of Foreign Assets Control of the U.S. Department of the Treasury.

"Open Source Software" shall mean any Software that is subject to, or licensed, provided or distributed under, any license meeting the Open Source Definition (as promulgated by the Open Source Initiative as of the date of this Agreement) or the Free Software Definition (as promulgated by the Free Software Foundation as of the date of this Agreement) or any similar license for "free," "publicly available" or "open source" Software, including the GNU General Public License, the Lesser GNU General Public License, the Apache License, the BSD License, Mozilla Public License (MPL), the MIT License or any other license that includes similar terms.

"Order" shall mean any judgment, order, injunction, writ, ruling, verdict, decree, stipulation, award or other binding obligation, pronouncement or determination of any Governmental Entity or arbitration tribunal.

"Ordinary Course of Business" shall mean the conduct and operation of the Business, taken as a whole, in the ordinary course, consistent with past practice, and in accordance with applicable Law.

"Organizational Documents" shall mean, with respect to any Person (other than a natural Person), (i) the certificate or articles of incorporation, formation or organization and any limited liability company, operating or partnership agreement, or similar organizational document adopted or filed in connection with the creation, formation or organization of such Person and (ii) all bylaws and equity holders agreements or similar arrangements to which such Person (or holders of its Equity Interests) is a party relating to the organization or governance of such Person, in each case, as amended or supplemented.

"Outside Date" shall have the meaning set forth in Section 9.1(b)(ii).

"Owned Intellectual Property" shall mean all Intellectual Property owned or purported to be owned by any Seller.

"Party" or "Parties" shall have the meaning set forth in the Preamble.

"Permits" shall mean all licenses, certificates, consents, permits, registrations, quotas, and other authorizations of any Governmental Entity relating to the Purchased Assets or used by the Sellers in connection with the Business, and all pending applications therefor.

**327**

"Permitted Liens" shall mean (i) Liens for utilities and Taxes, assessments or other governmental charges not yet due and payable or the amount or validity of which is being contested in good faith by appropriate proceedings or the nonpayment of which is permitted or required by the Bankruptcy Code, (ii) zoning, entitlement and other land use and environmental regulations by any Governmental Entity having jurisdiction over any Real Property which are not violated by the current use, occupancy or operation of any Real Property, (iii) easements, rights of way, restrictive covenants, encroachments, and similar non-monetary encumbrances or non-monetary impediments against any of the Purchased Assets which do not, individually or in the aggregate, adversely affect the operation of the Purchased Assets and, in the case of the Leased Real Property, which do not, individually or in the aggregate, adversely affect the use or occupancy of such Leased Real Property as it relates to the operation of the Purchased Assets, (iv) materialmans', mechanics', artisans', shippers', warehousemans' or other similar common law or statutory liens incurred in the Ordinary Course of Business for amounts not yet due and payable, (v) licenses granted on a non-exclusive basis in the Ordinary Course of Business, and (vi) such other defects, exceptions, restrictions, imperfections in title, charges, easements, restrictions and encumbrances (other than in connection with the Loan Debt) which would not, individually or in the aggregate, reasonably be expected to materially detract from the property and/or the use of the property for its intended purpose in the Ordinary Course of Business.

"Person" shall mean an individual, partnership, joint venture, corporation, business trust, limited liability company, trust, unincorporated organization, association, joint stock company, estate, Governmental Entity or other entity.

"Personal Information" shall mean, (a) "personal data" or "personally identifiable information" or "PII" provided by applicable Law or by the Sellers; or (b) information that identifies, could be used to identify, or is otherwise associated with an identifiable individual.

"Personal Property Leases" shall have the meaning set forth in Section 4.19.

"Petition Date" shall mean the date on which the Debtors file voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

"Plan" shall mean a plan of reorganization or liquidation for the Debtors pursuant to sections 1125, 1126, 1129 and 1145 of the Bankruptcy Code (as applicable), to be implemented in the Cases.

"Post-Closing Tax Period" shall mean all taxable years or other taxable periods that end after the Closing Date and, with respect to any taxable year or other taxable period beginning on or before and ending after the Closing Date, the portion of such taxable year or period beginning after the Closing Date.

"Pre-Closing Tax Period" shall mean all taxable years or other taxable periods that end on or before the Closing Date and, with respect to any taxable year or other taxable period beginning on or before and ending after the Closing Date, the portion of such taxable year or period ending on and including the Closing Date.

"Prepetition Financing Agreement" shall have the meaning set forth in the Recitals.

**328**

"Prepetition Lenders" shall have the meaning set forth in the Recitals.

"Prepetition Loan Documents" shall mean the Prepetition Financing Agreement and the other Loan Documents (as defined therein).

"Previously Omitted Contract" shall have the meaning set forth in Section 2.5(k)(i).

"Previously Omitted Contract Notice" shall have the meaning set forth in Section 2.5(k)(ii).

"Privacy Laws" shall mean any and all applicable Laws relating to the receipt, collection, compilation, use, storage, processing, sharing, safeguarding, security (technical, physical or administrative), disposal, destruction, disclosure or transfer (including cross-border) of any Personal Information.

"Proceeding" shall mean any action, claim, complaint, arbitration, governmental investigation, prosecution, order, litigation, proceeding, or suit (whether civil, criminal, administrative, investigative, appellate, or informal) of any kind whatsoever, regardless of the legal theory under which such Liability or obligation may be sought to be imposed, whether sounding in Contract or tort, or whether at law or in equity, or otherwise under any legal or equitable theory, commenced, brought, conducted, or heard by or before, or otherwise involving, any Governmental Entity or arbitrator.

"Professional Fees and Expenses" shall mean the reasonable and documented fees and expenses of professionals of Debtors and any committee appointed in the Cases pursuant to section 1102 of the Bankruptcy Code that are accrued and unpaid as of the Closing Date, whether or not included in a fee statement or fee application at such time and whether or not allowed by the Bankruptcy Court at such time.

"Purchase Price" shall have the meaning set forth in Section 3.2(a).

"Purchased Assets" shall mean all right, title and interest of each of the Sellers, as of the Closing, in, to and under all of the assets, properties, interests, rights and claims of the Sellers as of the Closing (whether owned, leased, licensed, used or held for use by the Sellers), wherever situated and of whatever kind and nature, real or personal, tangible or intangible, and whether or not reflected on the books and records of the Sellers, including the assets, properties, rights and claims as of the Closing described in Section 2.1, other than the Excluded Assets.

"Related Party" shall have the meaning set forth in Section 4.24(a).

"Related Party Transactions" shall have the meaning set forth in Section 4.24(a).

"Representative" shall mean, with respect to any Person, such Person's officers, managers, directors, employees, agents and representatives (including any investment banker, financial advisor, accountant, legal counsel or expert retained by or acting on behalf of such Person or its Affiliates).

"Sale Order" shall mean the Order which shall be in a form and substance reasonably acceptable to Buyer and Sellers in their sole discretion and which shall, among other things: (i)

approve, pursuant to sections 363 and 365 of the Bankruptcy Code (A) the execution, delivery and performance by the Sellers of this Agreement, including each and every term and condition hereof, and the other instruments and agreements contemplated hereby, (B) the sale of the applicable Purchased Assets of the Sellers to Buyer free and clear of all Liens and Liabilities (other than Permitted Liens and Assumed Liabilities), on the terms set forth herein, (C) the assumption of the Assumed Liabilities of the Sellers by Buyer on the terms set forth herein and (D) effective as of the Closing, the release of Sellers from amounts due and owing under (x) the Prepetition Loan Documents and (y) the DIP Documents up to an amount equal to the Credit Bid Amount; (ii) authorize the Sellers to assume and assign to Buyer the Assumed Contracts; (iii) find that Buyer has provided adequate assurance of future performance with respect to the Assumed Contracts to which any Seller is a party; (iv) find that Buyer is a "good faith" buyer within the meaning of section 363(m) of the Bankruptcy Code; (v) provide that neither Buyer nor any of its Affiliates or equityholders will have any derivative, successor, transferee or vicarious liability of any kind or character, whether fixed or contingent, for Liabilities of the Sellers (whether under federal or state Law or otherwise), including on account of any Taxes arising, accruing, or payable under, out of, in connection with, or in any way relating to the operation of the Business prior to the Closing (except for such Transfer Taxes that constitute Assumed Liabilities); (vi) waive in all necessary jurisdictions, (A) the so-called "bulk sales," "bulk transfer" and similar Laws, including those related to Taxes and (B) the imposition of any Taxes incurred in connection with the Transactions and the Sale Order; (vii) enjoin all Persons from commencing any proceeding or taking any action against Buyer or any of its Affiliates to recover any claim that such Person has solely against the Sellers or their Affiliates; and (viii) provide that the obligations of the Sellers relating to Taxes, whether arising under Law, by this Agreement, or otherwise, shall be fulfilled by the Sellers (except as specifically set forth in the Agreement).

"Sanctioned Entity" shall mean (i) a country or a government of a country, (ii) an agency of the government of a country, (iii) an organization directly or indirectly controlled by a country or its government, or (iv) a Person resident in or determined to be resident in a country, in each case of clauses (i) through (iv), that is a target of Sanctions, including a target of any country sanctions program administered and enforced by OFAC.

"Sanctioned Person" shall mean, at any time (i) any Person named on the list of Specially Designated Nationals and Blocked Persons maintained by OFAC, OFAC's consolidated Non SDN list or any other Sanctions related list maintained by any Governmental Entity, (ii) a Person that is a target of Sanctions, (iii) any Person operating, organized or resident in a Sanctioned Entity, or (iv) any Person directly or indirectly owned or controlled (individually or in the aggregate) by or acting on behalf of any such Person or Persons described in clauses (i) through (iii) above.

"Sanctions" shall mean any and all economic sanctions, trade sanctions, financial sanctions, sectoral sanctions, secondary sanctions, trade embargoes, anti-terrorism Laws and other sanctions, Laws, regulations or embargoes, including those imposed, administered or enforced from time to time by: (i) the United States of America, including those administered by OFAC, the U.S. Department of State, the U.S. Department of Commerce, or through any existing or future executive order, (ii) the United Nations Security Council, (iii) the European Union or any European Union member state, (iv) Her Majesty's Treasury of the United Kingdom, or (v) any other Governmental Entity with jurisdiction over any Seller or its Affiliates.

"Seller Registered Intellectual Property" shall mean all issued Patents, pending Patent applications, Mark registrations, applications for Mark registration, Copyright registrations, applications for Copyright registration and internet domain names, in each case, included in the Owned Intellectual Property.

"Seller Software" shall mean all Software owned or purported to be owned by, or developed by or for, any Seller.

"Sellers" shall have the meaning set forth in the Preamble.

"Sellers' Disclosure Schedules" shall mean the disclosure schedules delivered by the Sellers to Buyer concurrently with the execution and delivery of this Agreement on the Agreement Date.

"Software" shall mean, collectively, any and all (i) computer programs, including any and all software implementations of algorithms, models and methodologies, whether in source code or object code, (ii) databases and compilations, including any and all data and collections of data, whether machine readable or otherwise, (iii) descriptions, flow-charts and other work product used to design, plan, organize and develop any of the foregoing, screens, user interfaces, report formats, firmware, development tools, templates, menus, buttons and icons, and (iv) all documentation including user manuals and other training documentation related to any of the foregoing.

"Tax" or "Taxes" shall mean (i) all U.S. federal, state, local, foreign and other taxes, assessments, duties or charges of any kind whatsoever, including, income, profits, gains, net worth, sales and use, *ad valorem,* gross receipts, sales, use, business and occupation, license, premium, minimum, alternative or add-on minimum, environmental, estimated, stamp, customs duties, occupation, property (real or personal), franchise, capital stock, license, excise, value added, payroll, employment, social security (or similar), escheat or unclaimed property, unemployment, transfer, severance, registration, lease, service, recording, documentary, permit or authorization, intangibles or other tax (whether payable directly or by withholding), together with any penalty, fine, addition to tax or interest on the foregoing; (ii) any liability in respect of any items described in clause (i) payable by reason of contract, assumption, transferee or successor liability, operation of Law, Treasury Regulations Section 1.1502-6(a) or any analogous or similar provision of any state, local, or non-U.S. Law (or any predecessor or successor thereof) or otherwise; and (iii) any Liability in respect of any items described in clause (i) as a result of being a "transferee" of the taxpayer or entity or a number of a related, non-arm's length, affiliated or combined group.

"Tax Return" shall mean any return, declaration, report, claim for refund, or information return or statement (including elections, declarations, disclaimers, notices, disclosures, schedules, estimates) relating to Taxes, including any schedule or attachment thereto, and including any amendment or supplement thereof.

"Technology" shall mean all technology, formulae, algorithms, procedures, processes, methods, techniques, ideas, know-how, creations, inventions (whether patentable or unpatentable and whether or not reduced to practice), discoveries, improvements, product, servicing, business, financial and supplier information and materials, specifications, designs, models, devices, prototypes, schematics and development tools, Software, websites, recordings, graphs, drawings,

reports, analyses and other writings and other tangible embodiments of any of the foregoing, in any form or media whether or not specifically listed in this definition.

"Third Party Consents" shall have the meaning set forth in Section 6.7(b).

"Trade Secrets" shall have the meaning set forth in the definition of Intellectual Property.

"Transaction Dispute" shall have the meaning set forth in Section 10.10.

"Transactions" shall mean the sale of the Purchased Assets pursuant to this Agreement and the other transactions contemplated by this Agreement.

"Transfer Tax" or "Transfer Taxes" shall mean any stamp, sales, use, transfer, conveyance, recording, registration, filing or other similar non-Income Tax, fee, duty or charge imposed upon the sale, transfer or assignment of property or any interest therein or the recording thereof, and any penalty, addition to Tax or interest with respect thereto.

"Treasury Regulations" shall mean the regulations promulgated under the Code, as such regulations may be amended from time to time.

"U.S. Patriot Act" shall mean Uniting and Strengthening America by Providing Appropriate Tools Required to Intercept and Obstruct Terrorism (USA Patriot Act of 2001).

"WARN Act" shall mean the Worker Adjustment and Retraining Notification Act of 1988, as amended, and any successor Law, and the rules and regulations thereunder and under any successor Law, and any comparable Law under the Laws of any state.

1.2     Other Definitional Provisions.

(a)     The words "hereof," "herein" and "hereunder" and words of similar import when used in this Agreement shall refer to this Agreement as a whole and not to any particular provision of this Agreement, and Section, Schedule and Exhibit references are to this Agreement unless otherwise specified.

(b)     All Exhibits and Schedules annexed hereto or referred to herein are hereby incorporated in and made a part of this Agreement as if set forth in full herein. Any capitalized terms used in any Schedule or Exhibit but not otherwise defined therein shall be defined as set forth in this Agreement.

(c)     The meanings given to terms defined herein shall be equally applicable to both singular and plural forms of such terms.

(d)     Whenever the words "include," "includes" or "including" are used in this Agreement they shall be deemed to be followed by the words "without limitation." Where the context permits, the use of the term "or" will be equivalent to the use of the term "and/or."

(e)     Words denoting any gender shall include all genders. Where a word or phrase is defined herein, each of its other grammatical forms shall have a corresponding meaning.

(f)      A reference to any Party shall include such Party's successors and permitted assigns.

(g)      The word "extent" in the phrase "to the extent" means the degree to which a subject or other thing extends, and such phrase does not mean simply "if".

(h)      References herein to any Law shall be deemed to refer to such Law as amended, modified, codified, reenacted, replaced, supplemented or superseded in whole or in part and in effect from time to time, including any successor legislation thereto, and also to all rules and regulations promulgated thereunder, and references to any section or other provision of a Law means that section or provision of such Law in effect from time to time and constituting the substantive amendment, modification, codification, reenactment, replacement or supplement of such section or other provision; provided that for purposes of any representation or warranty set forth herein, with respect to any violation of or non-compliance with, or alleged violation of or non-compliance, with any Law, the reference to such Law means such as in effect at the time of such violation or non-compliance or alleged violation or non-compliance.

(i)      All references to "$" and dollars shall be deemed to refer to the currency of the United States of America.

(j)      The provision of a table of contents, the division into Articles, Sections and other subdivisions and the insertion of headings are for convenience of reference only and shall not affect or be utilized in construing or interpreting this Agreement. References to the terms "Article," "Section," "clause," "Schedule" and "Exhibit" are references to the Articles, Sections, clauses, Schedules and Exhibits to this Agreement unless otherwise specified.

(k)      References to "days" means calendar days unless Business Days are expressly specified. When calculating the period of time before which, within which or following which any act is to be done or step taken pursuant to this Agreement, the date that is the reference date in calculating such period will be excluded. If the last day of such period is a day other than a Business Day, the period in question will end on the next succeeding Business Day.

(l)      References to "written" or "in writing" include in electronic form (including by e-mail transmission or electronic communication by portable document format (.pdf)).

(m)      The word "will" will be construed to have the same meaning and effect as the word "shall". The words "shall," "will," or "agree(s)" are mandatory, and "may" is permissive.

(n)      Any document or item will be deemed "delivered," "provided" or "made available" by the Sellers, within the meaning of this Agreement if such document or item is (a) included in the data room, (b) actually delivered or provided to Buyer or any of Buyer's Representatives, (c) made available upon request, including at the Sellers' or any of their Subsidiaries' offices or (d) publicly filed with the United States Securities and Exchange Commission.

(o)      Any reference to any agreement or Contract will be a reference to such agreement or Contract, as amended, modified, supplemented or waived.

## ARTICLE II
## TRANSFER OF ASSETS AND LIABILITIES

2.1    <u>Purchased Assets</u>. At the Closing, and upon the terms and subject to the conditions set forth herein and in the Sale Order and, with respect to the Sellers, subject to the approval of the Bankruptcy Court pursuant to sections 363 and 365 of the Bankruptcy Code, the Sellers shall sell, convey, assign, transfer and deliver to Buyer, and Buyer shall purchase, acquire and accept from the Sellers, all of the right, title and interest of each of the Sellers as of the Closing, free and clear of all Liens (other than Permitted Liens and Assumed Liabilities), in, to and under, all of the Purchased Assets. The Purchased Assets shall include Sellers' rights, titles and interests in, to and under each of the following of the Sellers as of the Closing:

(a)    other than the Excluded Cash, (i) all cash, money orders, third-party checks, wire transfers and any other funds of the Sellers, commercial paper, marketable securities, demand deposits, reserves for Taxes, certificates of deposit and other bank deposits, deposits of any Seller with any third-party (including any vendor, manufacturer, customer, utility or landlord or other cash deposits for rent, electricity, telephone or otherwise), treasury bills, and other cash equivalents and liquid investments and (ii) the Acquired Bank Accounts;

(b)    all deposits, credits, and prepaid charges and expenses from whatever source paid;

(c)    all accounts receivable;

(d)    all Avoidance Actions other than those claims set forth on Schedule 2.1(s) that constitute Avoidance Actions (collectively, the "<u>Excluded Avoidance Actions</u>");

(e)    [Reserved];

(f)    all royalties, advances, prepaid assets, and other current assets;

(g)    all machinery, furniture, fixtures, furnishings, equipment, and other tangible personal property owned or used or held for use by the Sellers in the conduct of the Business, including all artwork, desks, chairs, tables, hardware, copiers, telephone lines and numbers, facsimile machines and other telecommunication equipment, cubicles and miscellaneous office furnishings and supplies;

(h)    all rights of any Seller under or pursuant to all warranties, representations and guarantees, including those made by suppliers, manufacturers and contractors or any other third party to and for the benefit of any Seller;

(i)    except as set forth in <u>Section 2.2(g)</u>, all current and prior insurance policies, to the extent transferable, and all rights and benefits of any nature of Sellers with respect thereto, including all insurance recoveries or proceeds thereunder and rights to assert claims with respect to any such insurance recoveries or proceeds;

(j)    all Permits, including those listed on <u>Schedule 2.1(j)</u>, to the extent transferable or assignable under Law;

18

(k)     all Assumed Contracts;

(l)     all Documents (other than Excluded Documents);

(m)     all Acquired Intellectual Property and all of Sellers' rights to institute and pursue Proceedings against third parties for past, present and future infringement, misappropriation or dilution of any of the foregoing, or other conflict therewith, and all of the Sellers' rights to recover damages or lost profits in connection with any of the foregoing;

(n)     all Equity Interests of the Foreign Subsidiaries owned by the Sellers;

(o)     all rights under non-disclosure or confidentiality, non-compete or non-solicitation agreements with current or former employees and non-employee agents of any Seller or with third parties (including any non-disclosure or confidentiality, non-compete, or non-solicitation agreement entered into in connection with the Auction);

(p)     any interest in any internet websites, URLs or internet domain names, and any applications and registrations pertaining thereto;

(q)     any loans owed to any Seller by any current or former employee, officer or director of any Seller;

(r)     the sponsorship of all Assumed Benefit Plans and all right, title and interest in any assets thereof or relating thereto;

(s)     all Claims, other than the Claims set forth on Schedule 2.1(s), that the Sellers may have against any Person, including (i) all other rights, claims, causes of action, rights of recovery, rights of set-off, and rights of recoupment as of the Closing of any Seller, in each case, arising out of or relating to events occurring on or prior to the Closing Date (and any proceeds paid from all current and prior insurance policies), and (ii) all claims that any Seller may have against any Person with respect to any other Purchased Assets or any Assumed Liabilities;

(t)     all other assets or rights of every kind and description of Sellers as of the Closing related to the Business, wherever located, whether real, personal or mixed, tangible or intangible that are not Excluded Assets; and

(u)     all goodwill related to the foregoing.

2.2     Excluded Assets. Notwithstanding anything herein contained to the contrary, from and after the Closing, each Seller shall retain, and Buyer shall not purchase, such Seller's right, title and interest in and to (and the Purchased Assets shall not include any of) the following assets and properties of the Sellers (collectively, the "Excluded Assets"), all of which shall remain the exclusive property of the Sellers:

(a)     any Contract other than (i) any Assumed Contract or (ii) any Contract otherwise included as a Purchased Asset under Section 2.1(h), Section 2.1(k), or Section 2.1(o) (collectively, the "Excluded Contracts");

(b)     any Contract or arrangement (including any loan or similar arrangement) with or binding upon any of the Sellers and any Related Party, except as set forth on <u>Schedule 2.3(i)</u>;

(c)     any intercompany accounts receivable owed between or among the Sellers;

(d)     all rights of the Sellers under this Agreement and the agreements and instruments delivered to the Sellers by Buyer pursuant to this Agreement;

(e)     all Documents (i) to the extent they relate to any of the Excluded Assets or Excluded Liabilities (including information stored on the computer systems, data networks or servers of any Seller); (ii) that are minute books, organizational documents, stock registers and such other books and records of any Seller as pertaining to ownership, organization or existence of such Seller, Tax Returns (and any related work papers), corporate seal, checkbooks, and canceled checks; (iii) prepared by or on behalf of Sellers in connection with this Agreement or the Transactions or related to the Cases or any other Excluded Asset; (iv) that any Seller is required by Law to retain; or (v) that are governed under GDPR or collected from natural persons with addresses in the European Union or European Economic Area; <u>provided</u> that, to the extent not prohibited by applicable Law, Buyer shall have the right to make copies of any portions or all of such Documents (collectively, "<u>Excluded Documents</u>");

(f)     all Equity Interests of the Sellers;

(g)     the Sellers' directors and officers liability insurance policies, if any, and all rights and benefits of any nature of Sellers with respect thereto, including all insurance recoveries thereunder and rights to assert claims with respect to such insurance recoveries;

(h)     all assets owned or used by the Sellers that are specifically identified in <u>Schedule 2.2(h)</u>;

(i)     all assets of the Sellers that would otherwise constitute a Purchased Asset (if owned immediately prior to the Closing) if conveyed or otherwise disposed of during the period from the date hereof until the Closing Date (i) at the direction of the Bankruptcy Court, (ii) as not prohibited by the terms of the DIP Documents, or (iii) in the Ordinary Course of Business;

(j)     all Permits other than those set forth on <u>Schedule 2.1(j)</u> and those Permits that are not transferable;

(k)     the sponsorship of all Benefit Plans that are not Assumed Benefit Plans and all right, title and interest in any asset thereof or relating thereto;

(l)     all rights related to the matters set forth on <u>Schedule 2.1(s)</u>;

(m)     all Excluded Avoidance Actions and all of the rights, claims or causes of action of the Sellers of any kind, including those available under the Bankruptcy Code, against any officer, director, employee, manager or Affiliate of, or lender to, any Seller or any of their respective Affiliates (and the proceeds of any insurance policies related to such rights, claims or causes of action) arising at any time period prior to the Closing; and

(n)     the Excluded Cash.

2.3     <u>Assumed Liabilities</u>. Upon the terms and subject to the conditions set forth in this Agreement and the Sale Order, and subject to the exclusions set forth in <u>Section 2.4</u> (and in the event of any conflict between the exclusions set forth in <u>Section 2.4</u> and the provisions of this <u>Section 2.3</u>, the exclusions set forth in <u>Section 2.4</u> shall prevail), as partial consideration for the Purchased Assets, Buyer shall, on and after the Closing, assume only the following Liabilities of the Sellers (the "<u>Assumed Liabilities</u>"):

(a)     all Liabilities under the Assumed Contracts to the extent that any such Liabilities under such Assumed Contracts: (i) arise out of or relate to events, occurrences, acts or omissions occurring solely after the Closing Date; (ii) do not arise from a breach, violation or default of such Assumed Contract by any Seller prior to the Closing; and (iii) are not required to be performed prior to the Closing;

(b)     all Liabilities relating to Buyer's ownership or operation of the Purchased Assets to the extent arising out of or relating to events, occurrences, acts or omissions occurring solely after the Closing Date and all Liabilities relating to the ownership of the Equity Interests of the Foreign Subsidiaries;

(c)     all Cure Amounts;

(d)     all accrued and unpaid Administrative Expenses incurred by Sellers prior to the Closing Date (other than Professional Fees and Expenses) not to exceed $1,000,000 in the aggregate (the "<u>Post-Petition Payables</u>");

(e)     all Liabilities in respect of wages and other compensation of employees of Sellers for the last pay period immediately preceding the Closing Date;

(f)     all current Liabilities, including all accounts payable and trade payables existing on the Closing Date (including, for the avoidance of doubt, (i) invoiced accounts payable and (ii) accrued but uninvoiced accounts payable) of Sellers not to exceed $3,000,000 in the aggregate;

(g)     all Liabilities relating to Hired Employees accruing on or after the close of business on the Closing Date, solely to the extent arising out of or relating to the Hired Employees' employment by Buyer or its Affiliates;

(h)     all Liabilities relating to Hired Employees' vacation and other time off to the extent set forth in <u>Section 6.6(c)</u>;

(i)     all Liabilities with respect to the Benefit Plans listed on <u>Schedule 2.3(i)</u> (the "<u>Assumed Benefit Plans</u>"); and

(j)     all Liabilities for Transfer Taxes pursuant to <u>Section 6.10(a)</u>.

2.4     <u>Excluded Liabilities</u>. Notwithstanding anything to the contrary set forth herein, Buyer shall not assume, and shall not be deemed to have assumed, and the Sellers shall be solely

and exclusively liable with respect to, all Liabilities of any Seller or any of their respective predecessors other than the Assumed Liabilities (collectively, the "Excluded Liabilities"). For the avoidance of doubt, and without limiting the foregoing, Buyer shall not be obligated to assume, nor assumes, and Buyer hereby disclaims, all of the Excluded Liabilities, including all of the following Liabilities of any Seller (or any of their respective predecessors) (each of which shall constitute an Excluded Liability hereunder):

(a)    any Liability for (i) Taxes of any Seller for any taxable period and (ii) Taxes relating to the operation of the Business or the ownership of the Purchased Assets for any Pre-Closing Tax Period;

(b)    any Claim in connection with or arising from or relating to any Excluded Asset, including any Taxes associated therewith;

(c)    any fees, costs and expenses (including legal fees and accounting fees) incurred by any Seller in connection with the Cases or the Transactions, including all fees, costs and expenses incurred in connection with or by virtue of (i) the negotiation, preparation and review of this Agreement and all agreements ancillary or related hereto, (ii) the preparation and submission of any filing or notice required to be made or given in connection with the Transactions, and the obtaining of any consent required to be obtained in connection with the Transactions, (iii) the negotiation, preparing and review of the DIP Documents and (iv) any Alternate Transaction;

(d)    any Liabilities of Sellers arising under or pursuant to Labor Laws relating to the pre-Closing periods;

(e)    any Liabilities relating to the Hired Employees arising prior to the Closing Date (other than those expressly set forth in Section 2.3 or Section 6.6(c)), and any Liabilities relating to all other current or former employees, directors, consultants and other individual service providers of the Sellers who are not Hired Employees arising at any time, in each case, including any severance, termination or payment in lieu of notice Liability, and any other Liability arising under or out of any Law or Contract in connection with such Person's employment, service or Contract with, or the termination of such Person's employment, service or Contract with, any Seller;

(f)    any Liabilities of the Sellers and their respective ERISA Affiliates with respect to any Benefit Plan or other compensation or benefit plan, program, policy, agreement or arrangement of the Sellers, other than with respect to any Assumed Benefit Plan, including any health, welfare, retirement, pension or profit sharing Liability, deferred compensation Liability, equity or equity-based incentive compensation Liability, any Liability under any employment agreements or offer letters, or any penalties, fines or other expenses resulting from any compliance issue with any Benefit Plan or Law, other than those Liabilities expressly assumed pursuant to Section 2.3(e) and Section 2.3(h);

(g)    other than Liabilities expressly assumed pursuant to Section 2.3(e) or Section 2.3(g) or set forth on Schedule 2.3(i), any success, retention, stay, change of control or similar bonuses and any other payments or benefits owing to current or former employees, independent contractors or consultants of the Sellers in connection with the consummation of the

Transactions, including the employer portion of any payroll, social security or similar Taxes in respect thereof;

(h)     any Liability of any Seller arising out of this Agreement or any agreement ancillary or related hereto;

(i)     any Liabilities arising out of or relating to the Business, the Purchased Assets or the ownership, operation or conduct thereof prior to the Closing (other than the Foreign Subsidiaries);

(j)     any Liabilities for accrued expenses and accounts payable of the Sellers, other than those assumed pursuant to Section 2.3(f);

(k)     any Liabilities of the Sellers arising as a result of any Proceeding, whether initiated prior to or following the Closing, to the extent related to the Purchased Assets, including any actions for breach of contract, violations of or non-compliance with Law (including Sanctions, Anti-Corruption Laws and Anti-Money Laundering Laws), or any tort actions related to periods prior to the Closing;

(l)     any Liabilities arising as a result of any Contract or arrangement (including any loan or similar arrangement) with or binding upon any of the Sellers and any Related Party (other than those Liabilities expressly assumed pursuant to Section 2.3(a) and as set forth on Schedule 2.3(i)) and all intercompany payables owed from one Seller to any other Seller;

(m)     any Liabilities of Sellers (i) existing prior to the filing of the Cases that are subject to compromise under the Bankruptcy Code or other applicable Law and (ii) to the extent not otherwise expressly assumed herein, incurred subsequent to the filing of the Cases and prior to the Closing;

(n)     any Liabilities arising out of Professional Fees and Expenses; and

(o)     any Administrative Expenses that do not constitute Post-Petition Payables and except as otherwise assumed pursuant to Section 2.3(f).

2.5     Assumption and Assignment of Assumed Contracts.

(a)     When delivered in accordance with Section 6.11, Schedule 2.5(a) will set forth a list of the executory Contracts to which one or more Sellers is a party, together with estimated Cure Amounts for each Assumed Contract (the "Available Contracts") which may be updated to add Contracts entered into in the Ordinary Course of Business or otherwise not prohibited by this Agreement following the date hereof. By the date that is two (2) Business Days prior to the Closing (such date, the "Determination Date"), Buyer shall designate in writing (each such writing, a "Designation Notice") which Available Contracts from Schedule 2.5(a) that Buyer wishes for Sellers to assume and assign to Buyer at the Closing (the "Assumed Contracts"). Buyer shall have the right to amend a Designation Notice in any respect at any time prior to the Determination Date. All Contracts of the Sellers that are listed on Schedule 2.5(a) and which Buyer does not designate in writing pursuant to a Designation Notice for assumption shall not constitute Assumed Contracts or Purchased Assets and shall automatically be deemed Excluded Assets;

provided, however, that if an Available Contract is subject to a Cure Amount dispute or other dispute as to the assumption or assignment of such Available Contract that has not been resolved to the mutual satisfaction of Buyer and the Sellers prior to the Determination Date, then the Determination Date shall be extended (but only with respect to such Available Contract) to no later than the earlier of (A) the date on which such dispute has been resolved to the mutual satisfaction of Buyer and the Sellers, (B) the date on which such Available Contract is deemed rejected by operation of section 365 of the Bankruptcy Code and (C) the date upon which such dispute is finally determined by the Bankruptcy Court (the "Extended Contract Period"). If a Designation Notice with respect to such Available Contract is not delivered by Buyer in writing by the date which is three (3) Business Days following the expiration of such Extended Contract Period, such Available Contract shall be automatically deemed an Excluded Asset. For the avoidance of doubt, except as set forth in Section 2.3, Buyer shall not assume or otherwise have any Liability with respect to any Excluded Asset. At Buyer's reasonable request, the Sellers shall make reasonably available to Buyer the appropriate employees of the Sellers necessary to discuss the outstanding Available Contracts.

(b)     The Sellers shall use commercially reasonable efforts to take all actions required by the Bankruptcy Court to obtain an Order (which shall be the Sale Order, unless as otherwise determined by Buyer) containing a finding that the proposed assumption and assignment of the Assumed Contracts to Buyer satisfies all applicable requirements of section 365 of the Bankruptcy Code.

(c)     At the Closing, the Sellers shall, pursuant to the Sale Order and the Bill of Sale and Assignment and Assumption Agreement, assume and assign, or cause to be assigned, to Buyer, each of the Assumed Contracts that is capable of being assumed and assigned as of such date.

(d)     Buyer will cooperate with the Sellers in communicating with third parties to Available Contracts as may be reasonably necessary to assist the Sellers in establishing that Buyer has satisfied the requirement of adequate assurance of future performance contained in sections 365(b)(1)(C) and 365(f) of the Bankruptcy Code with respect to the applicable Available Contracts.

(e)     In the event Sellers are unable to assign any such Assumed Contract to Buyer without the consent of another Person, then the Parties shall use their commercially reasonable efforts to obtain, and to cooperate in obtaining, all required consents necessary to assume and assign such Assumed Contracts to Buyer; provided that Sellers shall not be required to expend any money.

(f)     Within three (3) Business Days after entry of the Bidding Procedures Order, or as soon as reasonably practicable thereafter, the Sellers shall file a list of the Available Contracts (the "Assumption Notice") with the Bankruptcy Court and shall serve such Assumption Notice via first class mail on each counterparty to an Available Contract listed thereon. The Assumption Notice shall identify all Available Contracts and set forth a good faith estimate of the amount of the Cure Amounts applicable to each such Contract.

(g)    Not later than one (1) Business Day following the Determination Date, Sellers shall file with the Bankruptcy Court an amended and restated Assumption Notice, which notice shall set forth only the Assumed Contracts (and exclude all other Available Contracts).

(h)    On the Closing Date, with respect to Cure Amounts not disputed as of the Closing Date, the Buyer shall pay all Cure Amounts to the applicable counterparty and Sellers shall have no Liability therefor. With respect to Cure Amounts that are disputed as of the Closing Date, the Parties shall cooperate and diligently pursue resolution of such disputes. Upon the resolution of any disputed Cure Amount following the Closing, the Buyer shall pay such Cure Amount promptly, and in no event later than two (2) Business Days following such resolution.

(i)    Upon payment by Buyer of all Cure Amounts, all defaults under the Assumed Contracts (monetary or otherwise) shall be deemed cured.

(j)    Notwithstanding anything in this Agreement to the contrary, from and after the date hereof through the Closing, the Sellers will not reject or take any action (or fail to take any action that would result in rejection by operation of Law) to reject, repudiate or disclaim any of their Contracts without the prior written consent of Buyer.

(k)    <u>Previously Omitted Contracts</u>.

(i)    If prior to the Determination Date it is discovered by any Party that a Contract should have been listed on <u>Schedule 2.5(a)</u> but was not listed on <u>Schedule 2.5(a)</u> and has not been rejected by the Sellers (any such Contract, a "<u>Previously Omitted Contract</u>"), the discovering Party shall, promptly following the discovery thereof (but in no event later than two (2) Business Days following the discovery thereof), notify the other Parties in writing of such Previously Omitted Contract and then the Sellers shall, promptly following such notification (but in no event later than two (2) Business Days following such notification), notify Buyer of Sellers' good faith estimate of all Cure Amounts (if any) for such Previously Omitted Contract. Buyer may thereafter deliver a Designation Notice to Sellers, no later than the earlier of (x) the Determination Date or the expiration of the Extended Contract Period, as applicable, and (y) five (5) Business Days following notification of such Previously Omitted Contract from the Seller with respect to such Previously Omitted Contract and such contract shall be an Assumed Contract under this Agreement. All Previously Omitted Contracts with respect to which Buyer fails to timely deliver a Designation Notice, shall be an Excluded Asset.

(ii)    If Buyer delivers a Designation Notice in accordance with <u>Section 2.5(k)(i)</u>, the Sellers shall serve a notice (the "<u>Previously Omitted Contract Notice</u>") on the counterparties to such Previously Omitted Contract notifying such counterparties of the Cure Amounts with respect to such Previously Omitted Contract and the Sellers' intention to assume and assign such Previously Omitted Contract in accordance with this <u>Section 2.5</u>. The Previously Omitted Contract Notice shall provide the counterparties to such Previously Omitted Contract with fourteen (14) Business Days to object, in writing to the Sellers and Buyer, to the Cure Amounts or the assumption of its Contract. If the counterparties, the Sellers and Buyer are unable to reach a consensual resolution with respect to the objection, the Sellers shall seek an expedited hearing before the Bankruptcy

Court to determine the Cure Amounts and approve the assumption. If no objection is served on the Sellers and Buyer, the Sellers shall obtain an order of the Bankruptcy Court fixing the Cure Amounts and approving the assumption of the Previously Omitted Contract. Buyer shall be responsible for all Cure Amounts relating to such Previously Omitted Contracts.

**ARTICLE III**
**CLOSING AND PURCHASE PRICE**

3.1     <u>Closing; Transfer of Possession; Certain Deliveries</u>.

     (a)      Unless this Agreement shall have been terminated and the Transactions shall have been abandoned pursuant to <u>Article IX</u>, the Closing shall take place at 10:00 a.m. (prevailing Eastern Time) on the date (the "<u>Closing Date</u>") that is two (2) Business Days after all the conditions set forth in <u>Article VIII</u> shall have been satisfied or waived (excluding, but subject to the satisfaction or waiver of, conditions that, by their nature, are to be satisfied at the Closing), or such other time or date as agreed to in writing by the Parties. The Closing shall take place by telephone or video conference and electronic exchange of documents, unless otherwise mutually agreed to by the Parties. The Closing shall be effective as of 12:01 a.m. (prevailing Eastern Time) on the Closing Date.

     (b)      At the Closing, the Sellers shall deliver, or shall cause to be delivered, to Buyer the following:

        (i)      a counterpart to the Bill of Sale and Assignment and Assumption Agreement in customary form reasonably agreed to by Buyer and Sellers (such agreement not to be unreasonably withheld or delayed) (the "<u>Bill of Sale and Assignment and Assumption Agreement</u>"), duly executed by each Seller;

        (ii)      one (1) or more assignments of the Owned Intellectual Property, in customary form reasonably agreed to by Buyer and Sellers (such agreement not to be unreasonably withheld or delayed) (the "<u>IP Assignment and Assumption Agreement</u>"), duly executed by the applicable Seller(s);

        (iii)      a certificate of a duly authorized officer of each Seller dated the Closing Date certifying as to the matters set forth in <u>Section 8.1(a)</u>, <u>Section 8.1(b)</u> and <u>Section 8.1(d)</u>;

        (iv)      assignments of the Leases, in each case, in customary form as reasonably requested by Buyer with respect to the Leased Real Property;

        (v)      stock certificates representing the Equity Interests of each Foreign Subsidiary held by Sellers, to the extent certificated;

        (vi)      a certification of non-foreign status from each of the Sellers other than Near Singapore, duly completed and executed in compliance with Treasury Regulation Section 1.1445-2(b); and

(vii)    such other closing instruments and certificates as may be reasonably requested by Buyer, in each case in form and substance reasonably acceptable to Buyer and Sellers.

(c)    At the Closing, Buyer shall deliver, or shall cause to be delivered to the Sellers, the following:

(i)    a counterpart to the Bill of Sale and Assignment and Assumption Agreement, duly executed by Buyer;

(ii)    a counterpart to the IP Assignment and Assumption Agreement, duly executed by Buyer;

(iii)    the Excluded Cash to the Retained Bank Account(s);

(iv)    a certificate of a duly authorized officer of Buyer dated the Closing Date, certifying as to the matters set forth in Section 8.2(a) and Section 8.2(b); and

(v)    such other closing instruments and certificates as may be reasonably requested by the Sellers, in each case, in form and substance reasonably acceptable to the Sellers and Buyer.

3.2    Purchase Price; Related Matters.

(a)    Purchase Price. The aggregate consideration for the Purchased Assets shall consist of the following (collectively, the "Purchase Price"): (i) a credit bid equal to (A) all outstanding obligations under the DIP Facility and (B) not less than $34,000,000 of the outstanding obligations under the Prepetition Loan Documents (the "Credit Bid Amount"); *plus* (ii) the assumption by Buyer of the Assumed Liabilities. The Credit Bid Amount shall be paid by means of a credit against the total amounts due and owing under the Credit Documents as of the Closing Date. In no event shall the Credit Bid Amount be payable by Buyer in cash.  The Administrative Agent shall take all necessary actions under the DIP Facility and the Prepetition Financing Agreement in order to cause the payment of the Credit Bid Amount in accordance with this Section 3.2(a).

(b)    Bulk Sales Laws. Buyer hereby waives compliance by the Sellers with the requirements and provisions of any "bulk-transfer" Laws that may apply to the sale and transfer of the Purchased Assets to Buyer. Pursuant to section 363(f) of the Bankruptcy Code, the transfer of the Purchased Assets of the Sellers shall be free and clear of all Liens, other than Permitted Liens and Assumed Liabilities, in each case pursuant to the Bankruptcy Code, whether arising prior to or subsequent to the Petition Date, including any liens or claims arising out of the "bulk-transfer" Laws.

3.3    Allocation of Purchase Price. Sellers and Buyer agree to allocate amounts treated as consideration for U.S. federal income tax purposes among the Purchased Assets for all purposes (including tax and financial accounting) in accordance with Section 1060 of the Code and the Treasury Regulations promulgated thereunder and the allocation methodology set forth in Schedule 3.3 attached hereto (the "Allocation Schedule"). Within ninety (90) days following the

Closing Date, Buyer will provide to Sellers a draft of the Allocation Sc̲h̲e̲d̲u̲l̲e̲ prep
accordance with such allocation methodology. If, within thirty (30) calendar days of t
receipt of Buyer's proposed allocation, Sellers do not deliver Buyer written notice (a
Allocation Objection Notice") of any objections that they have to such allocation, Bt
proposed allocation shall be final and binding to all parties. If Sellers timely deliver to Bt
Seller Allocation Objection Notice, then Buyer and Sellers shall work together in good fai
resolve the disputed items. If Buyer and Sellers are unable to resolve all of the disputed it
within thirty (30) calendar days of Buyer's receipt of the Seller Allocation Objection Notice
such later date as Buyer and Sellers may agree), then Buyer and Sellers shall refer the dispt
items for resolution to an accounting firm of national reputation mutually acceptable to Buyer a
Sellers, with no existing relationship with either Buyer or Sellers and such accounting firm sh
determine the final allocation in accordance with such allocation methodology. Buyer and Selle.
shall file all applicable Tax Returns (including Form 8594, any amended Tax Returns, and an
claims for refund) consistent with the Allocation Schedule and shall take no position contrary
thereto or inconsistent therewith (including in any audits or examinations by any taxing authority
or any other proceedings) absent a contrary "determination" (within the meaning of Section
1313(a) of the Code).

      3.4    W̲i̲t̲h̲h̲o̲l̲d̲i̲n̲g̲. Buyer or any other paying agent (as applicable) shall be entitled to
deduct and withhold from the amounts payable under this Agreement such amounts as may be
required to be deducted and withheld under the Code and any other applicable Tax Laws. Before
withholding or deducting any amounts hereunder, the applicable withholding agent shall use
commercially reasonable efforts to notify Sellers of its intent to withhold at least five (5) days
before deducting or withholding any such amounts (other than (i) any withholding on payments in
the nature of compensation for services and (ii) any withholding due to the failure of any Seller to
deliver the documentation required by S̲e̲c̲t̲i̲o̲n̲ ̲3̲.̲1̲(̲b̲)̲(̲v̲i̲)̲) and cooperate with the Sellers to reduce
or eliminate such withholding or deduction. To the extent any such amount is to be so deducted
and withheld by Buyer, such amounts shall be timely paid over to, or deposited with, the relevant
Governmental Entity in accordance with the provisions of applicable Law. Any such withheld
amount shall be treated as though it had been paid to the Person in respect of which such
withholding was required.

# ARTICLE IV
# REPRESENTATIONS AND WARRANTIES OF SELLERS

    Except as set forth in the Sellers' Disclosure Schedules, each of the Sellers hereby jointly
and severally makes the following representations and warranties to Buyer with respect to itself
and each other Seller as of the Agreement Date:

      4.1    O̲r̲g̲a̲n̲i̲z̲a̲t̲i̲o̲n̲ ̲a̲n̲d̲ ̲G̲o̲o̲d̲ ̲S̲t̲a̲n̲d̲i̲n̲g̲. Each Seller (a) is an entity duly formed, validly
existing and in good standing under the Laws of its jurisdiction of incorporation or formation, and
(b) subject to any limitations that may be imposed on such Seller as a result of filing a petition for
relief under the Bankruptcy Code, has full organizational power and authority to own, lease and
operate its properties, to perform all of its obligations under the Available Contracts, and carry on
the Business as it is now being conducted. The Sellers have delivered to Buyer true, complete and
correct copies of each Seller's Organizational Documents as in effect on the date hereof.

**344**

4.2    <u>Power and Authority</u>. Subject to entry and effectiveness of the Sale Order in respect of the Sellers, except as set forth on <u>Schedule 4.2</u>, each Seller has the requisite organizational power and authority to enter into this Agreement and to perform its obligations hereunder, and the execution and delivery of this Agreement by each Seller and, subject to the approval of this Agreement by the Bankruptcy Court, the consummation by each Seller of the Transactions and the performance of each Seller's obligations hereunder have been duly authorized by all requisite organizational action on the part of each Seller. This Agreement has been duly executed and delivered by each Seller and (assuming the due and valid authorization, execution and delivery thereof by Buyer), following the approval of this Agreement and the Transactions by the Bankruptcy Court pursuant to the Sale Order, will constitute the legal, valid and binding obligation of each Seller, enforceable against each Seller in accordance with its terms, except that such enforceability (a) may be limited by bankruptcy, insolvency, fraudulent transfer, reorganization, moratorium and other similar Laws of general application affecting or relating to the enforcement of creditors' rights generally and (b) is subject to general principles of equity, whether considered in a proceeding at law or in equity (collectively, the "<u>Enforceability Exceptions</u>"). Each Seller has the requisite organizational power to operate its business with respect to the Purchased Assets that it owns as now conducted and is duly qualified as a foreign entity to do business, and to the extent legally applicable, is in good standing, with respect to the Business, in each jurisdiction in which the character of its owned, operated or leased properties or the nature of its activities makes such qualification necessary, except where the failure to be so qualified or in good standing has not had a Material Adverse Effect.

4.3    <u>Foreign Subsidiaries</u>. All of the outstanding Equity Interests of the Foreign Subsidiaries are set forth on <u>Schedule 4.3</u>. Except as set forth on <u>Schedule 4.3</u>, all such Equity Interests are duly authorized and validly issued, are fully paid and nonassessable, were offered, sold and delivered in compliance with all applicable securities Laws, and are owned by the Sellers in the amounts set forth on <u>Schedule 4.3</u>. There are no Contracts to which any Seller or its Affiliates is a party or bound with respect to the voting of the Equity Interests of any Foreign Subsidiary other than the Organizational Documents of such Foreign Subsidiary. There are no outstanding or authorized options, warrants, rights, agreements, subscriptions, convertible securities or commitments to which any Foreign Subsidiary is a party or which are binding upon any Foreign Subsidiary providing for the issuance or redemption of any Equity Interests of any Foreign Subsidiary. Except as set forth on <u>Schedule 4.3</u>, no Foreign Subsidiary has any limitation, whether by Contract, Order or applicable Law, on its ability to make any distributions or dividends to its equity holders or repay any Indebtedness. Except for the Equity Interests set forth on <u>Schedule 4.3</u>, no Seller owns, directly or indirectly, any Equity Interests in any Person and does not have any direct or indirect obligation to (i) purchase or otherwise acquire any notes, obligations, instruments, units, securities or other Equity Interests of any other Person or (ii) make a capital contribution or loan to, or other investment in, any other Person or assume any liability or obligation of any other Person.

4.4    <u>Litigation</u>. Except as set forth on <u>Schedule 4.4</u>, as of the date hereof there are no outstanding Orders or Proceedings pending, or, to the Knowledge of the Sellers, threatened against any Seller relating to the ownership or use of the Purchased Assets or conduct of the Business by the Sellers or otherwise affecting the Purchased Assets or the Business.

4.5     No Contravention. Subject to the entry and effectiveness of the Sale Order by the Bankruptcy Court, and except as set forth on Schedule 4.5, neither the execution and delivery of this Agreement and compliance by the Sellers with any provisions hereof, nor the consummation of the Transactions, will (a) violate or conflict with any provision of any Seller's Organizational Documents, (b) with or without the giving of notice or the lapse of time or both violate, or result in a breach of, or constitute a default under, or conflict with, or accelerate the performance required by, any of the terms of any Available Contract or Lease that are included in Purchased Assets, except as would not be material to the Business, taken as a whole, (c) violate or conflict with any Order, or any Law or Permit that is required to be discharged prior to Closing applicable to the Sellers, or (d) result in the creation of any Lien upon any of the Purchased Assets (other than a Permitted Lien and Assumed Liabilities); except, in the case of clauses (b), (c) and (d) above, for compliance with the applicable requirements of the HSR Act or other Antitrust Laws if required.

4.6     Consents and Approvals. Except (a) to the extent excused or made unenforceable as a result of the filing of the Cases, (b) to the extent not required if the Sale Order is entered, or (c) as set forth on Schedule 4.6, the execution, delivery and performance by each Seller of this Agreement and the Transactions, and the legality, validity, binding effect or enforceability of this Agreement and any agreements contemplated hereby, do not require any consents, waivers, authorizations or approvals of, or filings with, any (i) Governmental Entities or (ii) other third Persons, except with respect to clause (ii) as would not reasonably be expected to have a Material Adverse Effect, or, with respect to clause (i), for any filings required to be made under the HSR Act or any applicable Antitrust Laws.

4.7     Title to Purchased Assets; Sufficiency.

(a)     Except as set forth on Schedule 4.7(a), Sellers have, and subject to the entry and effectiveness of the Sale Order in respect of the Purchased Assets, at the Closing, Buyer will have, good and valid title to each of the Purchased Assets (except for those Purchased Assets that are leased or licensed to any Seller, as to which any Seller has, and at the Closing, Buyer will have, valid licensed or leasehold interests), free and clear of all Liens, other than (i) Permitted Liens, (ii) Liens encumbering Buyer's assets, if any, securing any loan made directly to Buyer or expressly assumed by Buyer as of the Closing Date, (iii) as subject to Section 2.5, or (iv) the Enforceability Exceptions.

(b)     Other than the Excluded Assets, the Purchased Assets constitute all of the assets used in or held by the Sellers for use in the Business and, as of the date hereof, are sufficient for Buyer to conduct the Business as of the Closing Date as it has been conducted by the Sellers prior to the Closing Date, in each case, except as would not be material to the Business taken as a whole.

4.8     Validity of Available Contracts. As of the Agreement Date, subject to requisite Bankruptcy Court approvals and assumption by the applicable Seller of the applicable Contract in accordance with applicable Law (including satisfaction any applicable Cure Amounts) and except (i) as set forth on Schedule 4.8, (ii) as a result of the commencement of the Cases, and (iii) with respect to any Contract that has previously expired in accordance with its terms, been terminated, restated, or replaced: (a) each Available Contract is a legal, valid and binding obligation of the Seller that is a party thereto, and is enforceable against such Seller in accordance with its terms

and, to the Knowledge of the Sellers, is a legal, valid and binding obligation of each other party to such Contract and is enforceable against such other party thereto in accordance with its terms, subject to bankruptcy Laws and general equitable principles; (b) no Seller that is a party to any Available Contract, or any other party to an Available Contract is in default or breach of an Available Contract; (c) to the Knowledge of the Sellers, during the twelve (12) months preceding the Agreement Date, no other party to any Available Contract has materially breached such Contract; (d) to the Knowledge of the Sellers, there does not exist any event, condition or omission that would constitute a material default or breach (or event which, with the giving of notice or lapse of time or both would become such a default or breach) under any Available Contract; (e) no Seller that is a party to any Available Contract has received any written notice of termination or cancellation with respect to any Available Contract; and (f) with respect to the Assumed Contracts, upon entry of the Sale Order and payment of the Cure Amounts by Buyer, each Seller will not be in breach or default of its obligations thereunder.

4.9    Intellectual Property.

(a)    Schedule 4.9(a) sets forth a correct and complete list of all items of Seller Registered Intellectual Property, specifying the record owner, jurisdiction and issuance, registration or application number and date, as applicable, of each such item. Except as would not be material and adverse to the Business in the aggregate, and to the Knowledge of the Sellers, all renewal, maintenance and other necessary filings and fees due and payable to any relevant Governmental Entity or domain name registrar to maintain all Seller Registered Intellectual Property in full force and effect have been timely submitted or paid in full. To the Knowledge of the Sellers, all Seller Registered Intellectual Property is subsisting and all issuances and registrations included in the Seller Registered Intellectual Property are valid and enforceable in accordance with applicable Law.

(b)    Except as set forth on Schedule 4.9(b), (i) a Seller is the sole and exclusive owner of all right, title and interest in and to all Owned Intellectual Property, free and clear of all Liens (other than Permitted Liens) and (ii) all Licensed Intellectual Property is licensed to the applicable Seller, free and clear of all Liens (other than Permitted Liens). To the Knowledge of the Sellers, the Acquired Intellectual Property constitutes all of the Intellectual Property used in, and necessary and sufficient for, the conduct and operation of the Business as currently conducted.

(c)    To the Knowledge of the Sellers, in the past two (2) years, none of the Sellers has received any written notice, and there are no claims or Proceedings pending or threatened against any Seller, (i) alleging that the conduct of the Business as currently conducted infringes, misappropriates, dilutes or otherwise violates of any Intellectual Property of a third party, (ii) challenging the ownership, validity or enforceability of any Owned Intellectual Property or (iii) challenging the use by any Seller of any Acquired Intellectual Property. Except as set forth on Schedule 4.9(c), to the Knowledge of the Sellers, in the past two (2) years, the conduct of the business as currently conducted does not infringe, constitute or result from a misappropriation of, dilute or otherwise violate any Intellectual Property of any Person. Notwithstanding anything to the contrary herein, this Section 4.9(c) constitutes the sole and exclusive representation and warranty with respect to the infringement, misappropriation, dilution or other violation of Intellectual Property of a third party.

(d)     To the Knowledge of the Sellers, in the past two (2) years, no Owned Intellectual Property has been or is being infringed, misappropriated, diluted or otherwise violated by any Person; and to the Knowledge of the Sellers, no claim or Proceeding alleging any of the foregoing is pending or threatened against any Person by any Seller.

(e)     To the Knowledge of the Sellers and except as would not be material and adverse to the Business in the aggregate, each Seller has taken commercially reasonable security measures to maintain and protect the confidentiality and value of all (i) Trade Secrets included in the Owned Intellectual Property and (ii) Trade Secrets owned by any Person to whom any Seller has a confidentiality obligation and which are in the possession of a Seller. Except as set forth on Schedule 4.9(e), to the Knowledge of the Sellers, no material Trade Secret included in the Owned Intellectual Property has been authorized to be disclosed or, to the Knowledge of the Sellers, has been actually disclosed to any Person other than pursuant to a valid written confidentiality Contract sufficiently restricting the disclosure and use thereof, in each case, except as would not be material and adverse to the Business in the aggregate.

(f)     To the Knowledge of Sellers and except as would not be material and adverse to the Business in the aggregate or as set forth on Schedule 4.9(f), the IT Systems are adequate and sufficient (including with respect to working condition and capacity) in all material respects for the operation of the Business. To the Knowledge of the Sellers, there have been no material (i) security breaches or a successful unauthorized use, access or intrusions of any IT Systems which required a notice be provided to a Governmental Entity or individual, or (ii) outages of any IT Systems that have caused or resulted in a material disruption to the Business.

(g)     Except as set forth on Schedule 4.9(g), to the Knowledge of Sellers and except as would not be material and adverse to the Business in the aggregate, none of the source code or related materials for any such Seller Software with respect to the manufacturing machines utilized in the Business has been licensed or provided to, or used or accessed by, any Person other than Sellers' employees, consultants or contractors. Except as set forth on Schedule 4.9(g), to the Knowledge of Sellers and except as would not be material and adverse to the Business in the aggregate, no Open Source Software is or has been included, incorporated or embedded in, linked to, combined or distributed with or used in the delivery or provision of any Seller Software, in each case, in a manner that (i) requires or conditions the use or distribution of any Seller on the disclosure, licensing or distribution of any Source Code for any portion of such Software or the granting of any right to decompile, reverse engineer or create derivative works of any such Seller Software, or (ii) otherwise imposes any material limitation, restriction, waiver of rights or condition on the right or ability of the Company to use or distribute any Seller Software, except, in each case, with respect to the Open Source Software itself.

(h)     The Sellers and, to the Knowledge of the Sellers, any Person acting for or on the Sellers' behalf, have at all times materially complied with (i) applicable Privacy Laws; (ii) the Sellers' policies and notices regarding Personal Information; and (iii) the Sellers' contractual obligations with respect to Personal Information. To the Knowledge of the Sellers, each Seller has implemented and maintains reasonable safeguards to protect Personal Information against material loss, theft, misuse or unauthorized access, use, modification, alteration, destruction or disclosure. Except as set forth on Schedule 4.9(h), to the Knowledge of the Sellers, there have been no material breaches, security incidents, misuse of or unauthorized access to or disclosure of any Personal

Information in the possession or control of the Sellers or collected, used or processed by or on behalf of the Sellers. To the Knowledge of the Sellers, no Seller has received any written notice of any claims (including written notice from third parties acting on its behalf), investigations, or inquires related to, or been charged with, the violation of any Privacy Laws.

4.10    Employee Benefits.

(a)    Schedule 4.10(a) lists all Benefit Plans.

(b)    True, correct and complete copies of the following documents, with respect to each of the Benefit Plans, have been made available to Buyer: (i) any plan documents and all material amendments thereto, (ii) the most recent Form 5500, if applicable, and (iii) the most recent summary plan descriptions (including letters or other documents updating such descriptions).

(c)    Each of the Benefit Plans sponsored by any Seller that is intended to qualify under Section 401 of the Code has received a favorable determination letter from the Internal Revenue Service that such plan is so qualified, and, except as disclosed in Schedule 4.10(c), to the Knowledge of the Sellers, nothing has occurred since the date of such determination with respect to the operation of any such plan which could reasonably be expected to result in the revocation of such favorable determination.

(d)    Since January 1, 2023, each of the Benefit Plans has been maintained, in all material respects, in accordance with its terms and all provisions of applicable Law. None of the Sellers has incurred, and no event has occurred and no condition or circumstance exists that could result, directly or indirectly, in, any unsatisfied Liability (including, any indirect, contingent or secondary Liability) of any Seller under Title IV of ERISA or Section 412 or 430 of the Code or Section 302 or 303 of ERISA or other similar Law.

(e)    Other than as required under Section 4980B of the Code or other similar applicable Law or for which the covered person pays the full cost of coverage for such person and his or her beneficiaries and dependents, neither the Sellers nor any ERISA Affiliate has or could reasonably be expected to have any material Liability for providing post-termination or retiree medical, life insurance or other welfare benefits.

(f)    Neither the execution and delivery of this Agreement nor the consummation of the Transactions, either alone or in connection with any other event, will (i) give rise to any payments or benefits that would be nondeductible to the Sellers under Section 280G of the Code or that could result in an excise Tax on any recipient under Section 4999 of the Code, (ii) result in any payment or benefit becoming due to any current or former employee, independent contractor or consultant of the Sellers, (iii) increase the amount or value of any compensation or benefits payable under any Benefit Plan, result in any acceleration of the time of payment or vesting of any compensation or benefits or provide any additional compensatory rights or benefits (including funding of compensation or benefits through a trust or otherwise) to any current or former employee, independent contractor or consultant of the Sellers, or (iv) limit or restrict the ability of Buyer, its Affiliates, or the Sellers to merge, amend or terminate any Benefit Plan.

4.11   Labor Matters.

(a)     Schedule 4.11(a) sets forth a complete list of all employees and individual independent contractors of the Sellers and Foreign Subsidiaries (except if prohibited by Law, in which case the list will be on an anonymous basis) and based on the Sellers' records as of the Agreement Date, correctly reflects, with respect to each individual (except if prohibited by Law), as applicable: (i) date of hire; (ii) job title and department; (iii) rate of pay or salary; (iv) employee versus independent contractor status; (v) exempt versus non-exempt status for purposes of the Fair Labor Standards Act (as applicable); (vi) accrued PTO (as applicable); and (vii) to the extent known, leave of absence status.

(b)     None of the Sellers is a party to any labor or collective bargaining agreement and there are no labor or collective bargaining agreements which pertain to employees of Sellers, and no such agreements are being negotiated as of the Agreement Date. No employees of Sellers are represented by a labor or trade union, works council, employee association or other employee representative, no labor organization or group of employees of any Seller has made a pending demand for recognition, and there are no representation proceedings or petitions seeking a representation proceeding presently pending or, to the Knowledge of the Sellers, threatened in writing to be brought or filed, with the U.S. National Labor Relations Board. There is no organizing activity pending or, to the Knowledge of the Sellers, threatened in writing by any labor organization or group of employees of the Sellers.

(c)     There is (i) no unfair labor practice complaint pending against any Seller or, to the Knowledge of the Sellers, threatened in writing against them, before the U.S. National Labor Relations Board, and no grievance or arbitration proceeding arising out of or under any collective bargaining agreement is so pending against any Seller or, to the Knowledge of the Sellers, threatened in writing against them, and (ii) no strike, labor dispute, slowdown or stoppage pending against any Seller or, to the Knowledge of the Sellers, threatened in writing against them.

(d)     Each of the Sellers and Foreign Subsidiaries is in material compliance with all Labor Laws. Other than as set forth on Schedule 4.11(d), no equal employment opportunity charges or other claims of employment discrimination are pending or, to the Knowledge of the Sellers, threatened in writing against them, nor have there been any such charges or claims since December 31, 2022. No wage and hour department investigation has been made or, to the Knowledge of the Sellers, threatened in writing against any Seller or Foreign Subsidiary since December 31, 2022, whether internally or by any Governmental Entity in connection with the employment, engagement, compensation, or service of any current or former employee, consultant or contractor. Other than as set forth in Schedule 4.11(d), there are no complaints, charges or claims against any Seller or Foreign Subsidiary pending or, to Knowledge of the Sellers, threatened in writing, in connection with or otherwise relating to the employment or termination of employment or failure to employ or discrimination, harassment, retaliation, equal pay, or any other employment-related matter arising under the Labor Laws by any Seller or Foreign Subsidiary of any individual, nor have there been any such complaints, charges or claims against any Seller or Foreign Subsidiary since December 31, 2022.

(e)     Prior to the date hereof, except as set forth on Schedule 4.11(e), the Sellers have not taken any action or any actions relating to the Business at any single site of employment

34

in the ninety (90)-day period prior to the Closing Date that would, individually or in the aggregate, constitute a "mass layoff" or "plant closing" within the meaning of the WARN Act, or any similar applicable Law.

(f)     To the Knowledge of Sellers, there are no outstanding, pending, threatened in writing or anticipated assessments, actions, causes of action, Claims, complaints, demands, orders, prosecutions, suits, or other Proceedings against any Seller, any Foreign Subsidiary, or any of their respective directors, officers or agents pursuant to or under any applicable Laws, with respect of pension obligations, unemployment insurance, social security, income tax, employer health tax, employment standards, labor relations, occupational health and safety, human rights, workers' compensation or pay equity, and no Seller or Foreign Subsidiary has any liability for any arrears of wages, taxes, penalties, or other sums for failure to comply with any of the foregoing obligations. To the Knowledge of Sellers, no Seller has an obligation to re-instate any employees in connection with this Agreement or the completion of the Transactions.

(g)     All vacation pay, bonuses, commissions and other emoluments relating to Sellers and their employees are accurately reflected in all material respects and have been accrued in the books and records of the applicable Seller in accordance with GAAP.

(h)     Since December 31, 2022, to the Knowledge of the Sellers, all individuals who have provided or are providing services of any kind to the Sellers are correctly classified as an employee or an independent contractor and if classified as an employee are correctly classified as exempt or nonexempt from overtime under applicable Laws. Since December 31, 2022, to the Knowledge of the Sellers, Sellers have not implemented, and have no plans to implement, any reductions in hours, furloughs or salary reductions that would (i) cause any employee classified as "exempt" under applicable federal and state overtime pay Laws to lose such "exempt" status, or (ii) cause any employee's compensation to fall below the applicable federal, state or local minimum wage.

(i)     Since December 31, 2022, neither the Sellers, nor, to the Knowledge of Sellers, any of their respective officers or directors in their individual capacities, have settled any material claims, actions, complaints, or other grievances relating to sexual harassment involving or relating to one or more current or former employees, independent contractors, or any other individual service providers. There are no such claims, actions, complaints or other grievances relating to sexual harassment currently pending or, to the Knowledge of Sellers, threatened in writing.

4.12   Conduct of Business. Except as set forth on Schedule 4.12, and except for the Cases, the DIP Documents, all negotiation and preparation therefor, and the negotiation, execution, delivery and performance of this Agreement, as of the Agreement Date, (a) the Business is conducted in the Ordinary Course of Business, (b) the Sellers own and operate the Purchased Assets in the Ordinary Course of Business, and (c) there is no Material Adverse Effect.

4.13   Compliance with Laws; Permits.

(a)     Except as disclosed on Schedule 4.13, the Sellers and the Foreign Subsidiaries are conducting the Business and Purchased Assets in compliance, in all material

respects, with all applicable Laws, notices, approvals and Orders. Except as disclosed on <u>Schedule 4.13</u>, to the Knowledge of the Sellers, (i) each Seller and Foreign Subsidiary is not in material breach of any Law, notice, approval or order applicable to it or the Business, and (ii) there are no facts or circumstances which could form the basis for any such material breach. Each Seller and Foreign Subsidiary is not under investigation with respect to the violation of any Laws and to the Knowledge of the Sellers, there are no facts or circumstances which could form the basis for any such violation. None of the Sellers or Foreign Subsidiaries has received any written notice or other communication that alleges that the Business is not in compliance in any material respect with any Law, Order or Permit applicable to the Business or the Purchased Assets or (B) any written notice or communication regarding any deficiencies in any material respect in the compliance practices, procedures, methodologies or methods of the Business or its employees or internal compliance controls, including any complaint, allegation, assertion or claim that the Business or its employees has engaged in illegal practices.

(b)    The Sellers and Foreign Subsidiaries (and all of their employees who are legally required to be licensed by a Government Entity in order to perform his or her duties with respect to his or her employment with such Seller or Foreign Subsidiary) have all material Permits which are required for the lawful operation of the Business as presently conducted and the ownership and operation of the Purchased Assets, and each such Permit is valid, binding and in full force and effect, in each case except as would not reasonably be expected to have a Material Adverse Effect. Except as set forth on <u>Schedule 4.13(b)</u>, to the Knowledge of Sellers, none of the Sellers is or has been in material default or violation (and no event has occurred which, with notice or the lapse of time or both, would constitute a default or violation) of any term, condition or provision of any Permit to which it is a party. <u>Schedule 4.13(b)</u> sets forth a list of all material Permits of the Sellers.

4.14    <u>[Reserved]</u>.

4.15    <u>Financial Advisors</u>. Except as set forth on <u>Schedule 4.15</u>, no Person has acted, directly or indirectly, as a broker, finder or financial advisor for any in connection with the Transactions and no Person is entitled to any fee or commission or like payment in respect thereof.

4.16    <u>[Reserved]</u>.

4.17    <u>Tax Matters</u>.

(a)    Except as set forth in <u>Schedule 4.17(a)</u>, the Sellers and the Foreign Subsidiaries have timely filed (taking into account any valid extensions of time to file) all material Tax Returns which are required to be filed by them, all such Tax Returns are true, correct and complete in all material respects, and all material Taxes due and payable by the Sellers and the Foreign Subsidiaries prior to the date hereof have been timely and fully paid.

(b)    Except as set forth on <u>Schedule 4.17(b)</u>, there are no Liens for Taxes upon the Purchased Assets or any assets of the Foreign Subsidiaries other than for Permitted Liens.

(c)    Except as set forth on <u>Schedule 4.17(c)</u>, to the Knowledge of Sellers, the Sellers and the Foreign Subsidiaries have complied in all material respects with all applicable Laws relating to the withholding, collection and payment of material Taxes and have duly and timely

withheld, collected and paid over to the appropriate Governmental Entity all amounts required to be so withheld, collected and paid under all applicable Laws.

(d)     No Seller or Foreign Subsidiary has received any notice from any taxing authority or Governmental Entity asserting that such Seller or Foreign Subsidiary may be subject to Tax in any jurisdiction in which such Seller or Foreign Subsidiary does not file Tax Returns.

(e)     No action, suit, proceeding or audit is pending against or with respect to the Sellers or any Foreign Subsidiary regarding Taxes.

(f)     No Seller or Foreign Subsidiary has waived any statute of limitations in respect of Taxes or agreed to any extension of time with respect to a Tax assessment or deficiency, other than any waiver or exclusion which has expired. There are no outstanding requests by a Seller or any Foreign Subsidiary for any extension of time within which to file any Tax Return or within which to pay any Taxes shown to be due on any Tax Return.

(g)     Except for the Equity Interests in the Foreign Subsidiaries, none of the Purchased Assets is an interest (other than indebtedness within the meaning of Section 163 of the Code) in an entity taxable as a corporation, partnership, trust or real estate mortgage investment conduit for U.S. federal income tax purposes.

4.18    Real Property.

(a)     Schedule 4.18(a) sets forth a complete list of the Leased Real Property and the Leases. Except for the Leased Real Property set forth on Schedule 4.18(a), the Sellers do not own or lease or otherwise occupy any other real property or.

(b)     Except as set forth on Schedule 4.18(b), a Seller has good and valid leasehold title to the Leased Real Property, in each case free and clear of all Liens of any nature whatsoever except for Permitted Liens.

(c)     Except as set forth on Schedule 4.18(c), the Sellers have not subleased, licensed or otherwise granted to any Person the right to possess, use or occupy the Leased Real Property or any portion thereof.

(d)     The Leases are in full force and effect. No Seller has delivered or received written notice from the other party to any Lease of the termination or surrender thereof. The Sellers have delivered to Buyer true and complete copies of the Leases, including all amendments, notices or memoranda of lease thereto, and all estoppel certificates, or subordination, non-disturbance and attornment agreements, if any, relating to the Leased Real Property. There are no material agreements, understandings or undertakings pertaining to the Leases and the Sellers' leasehold interests in the Leased Real Property which have not been disclosed or made available to Buyer prior to the date hereof.

(e)     Except as set forth in Schedule 4.18(e), as of the date hereof, no Seller has received any written notice from any Governmental Entity asserting any material violation of applicable Laws with respect to the Leased Real Property, and there is no pending or, to the

Knowledge of the Sellers, threatened eminent domain taking, expropriation, condemnation or re-zoning affecting any portion of the Leased Real Property.

4.19    Tangible Personal Property. Schedule 4.19 sets forth all leases of personal property ("Personal Property Leases") relating to personal property used or held for use by the Sellers or to which any Seller is a party or by which the properties or assets of any of the Sellers is bound. No Seller has received any written notice of any default or event that with notice or lapse of time or both would constitute a default by any Seller under any of the Personal Property Leases.

4.20    Insurance. The Sellers have insurance policies in full force and effect for such amounts as are sufficient for all requirements of Law and all agreements to which any Seller is a party or by which it is bound. Set forth in Schedule 4.20 is a list of all insurance policies and all fidelity bonds held by or applicable to any Seller setting forth, in respect of each such policy, the policy name, policy number, carrier, term, type of coverage and annual premium. Except as set forth on Schedule 4.20, to the Knowledge of Sellers, no event relating to any Seller has occurred which can reasonably be expected to result in a retroactive upward adjustment in premiums under any such insurance policies or which is likely to result in a prospective upward adjustment in such premiums. Excluding insurance policies that have expired and been replaced in the Ordinary Course of Business, no insurance policy has been cancelled within the last two (2) years and, to the Knowledge of the Sellers, no threat has been made to cancel any insurance policy of any Seller during such period. Except as noted in each insurance policy or on Schedule 4.20, all such insurance will remain in full force and effect, all premiums due to date thereunder have been paid in full, neither Sellers nor any of Sellers' Affiliates is in material default with respect to any obligations thereunder.

4.21    Condition and Suitability of Purchased Assets. As of the Agreement Date, there has been no condemnation, seizure, damage, destruction or other casualty loss (whether or not covered by insurance) affecting any of the Purchased Assets or the Business in any material respect which has not subsequently been completely repaired, replaced or restored. As of the Agreement Date, there are no pending or, to the Knowledge of the Sellers, threatened or contemplated condemnation proceedings affecting the Business, any of the Purchased Assets (or any portion thereof), or of any sale or other disposition of the Business or any of the Purchased Assets (or any portion thereof) in lieu of condemnation except as would not reasonably be expected to have a Material Adverse Effect.

4.22    Anti-Corruption.

(a)    Except as set forth on Schedule 4.22, none of the Sellers, or any of their respective officers, directors, employees, agents, representatives, consultants, members, equityholders, in each case, acting for or on behalf of the Sellers, since December 31, 2022 has, to the Knowledge of the Sellers, directly or indirectly, in connection with the Business:

(i)    made, offered or promised to make or offer any payment, loan or transfer of anything of value, including any reward, advantage or benefit of any kind, to or for the benefit of any Government Official, candidate for public office, political party or political campaign, for the purpose of (A) influencing any act or decision of such Government Official, candidate, party or campaign, (B) inducing such Government Official, candidate,

party or campaign to do or omit to do any act in violation of a lawful duty, (C) obtaining or retaining business for or with any Person, (D) expediting or securing the performance of official acts of a routine nature, or (E) otherwise securing any improper advantage;

(ii)    paid, offered or promised to make or offer any bribe, payoff, influence payment, kickback, unlawful rebate, or other similar unlawful payment of any nature;

(iii)    made, offered or promised to make or offer any unlawful contributions, gifts, entertainment or other unlawful expenditures;

(iv)    established or maintained any unlawful fund of corporate monies or other properties;

(v)    created or caused the creation of any false or inaccurate books and records of the Sellers related to any of the foregoing; or

(vi)    otherwise violated any provision of any Anti-Corruption Laws.

4.23    OFAC. None of the Sellers are, or to the Knowledge of the Sellers have been since December 31, 2022, in violation of any Sanctions. As of the Agreement Date, none of the Sellers nor, to the Knowledge of the Sellers, any director, officer, employee, agent, member, Affiliate or equityholder of any Seller (a) is a Sanctioned Person or a Sanctioned Entity, (b) has any assets located in Sanctioned Entities, or (c) derives revenues from investments in, or transactions with Sanctioned Persons or Sanctioned Entities. Each of the Sellers and, to the Knowledge of the Sellers, each director, officer, employee, agent and Affiliate of any Seller, is, and since December 31, 2022 has been, in compliance with all applicable Anti-Corruption Laws, and Anti-Money Laundering Laws. No proceeds as a result of the Transactions will be used to fund any operations in, finance any investments or activities in, or make any payments to, a Sanctioned Person or a Sanctioned Entity, or otherwise used in any manner that would result in a violation of any Sanction, Anti-Corruption Law, or Anti-Money Laundering Law by any Persons.

4.24    Related Party Transactions.

(a)    To the Knowledge of the Sellers, no Seller, executive officer, director, member, manager, equityholder or Affiliate of a Seller nor any individual who is a lineal descendant, sibling, parent or spouse of any such Person (each, a "Related Party") is a party to any Contract or arrangement (including any loan or similar arrangement) with or binding upon any of the Sellers or the Purchased Assets or has any interest in any asset (each, a "Related Party Transaction") other than as set forth on Schedule 4.24(a). Except as set forth on Schedule 4.24(a), no Seller has made any payments to or on behalf of any Related Party (including by exercise of set-off rights, cancellation of intercompany indebtedness, or otherwise).

(b)    Except as disclosed on Schedule 4.24(b), to the Knowledge of Sellers, no Related Party will, immediately following the Closing, hold any asset (tangible or intangible), property, right, claim, cause of action (including any counterclaim) or defense used in or related to the Business.

4.25    Customers and Suppliers. Schedule 4.25 lists the ten (10) largest customers (by sales revenue) and ten (10) largest suppliers (by payments) of the Sellers and their subsidiaries during each of (i) the twelve (12)-month period ended December 31, 2022 and (ii) the nine (9)-month period ended September 30, 2023, based upon the Sellers' information systems. Except as set forth on Schedule 4.25, since November 1, 2023 and as of the Agreement Date, no customer or supplier listed on Schedule 4.25 has provided written notice that it intends to cease doing business with or materially and adversely decrease the amount of business done with the Sellers.

4.26    Disclaimer of Other Representations and Warranties. Except as expressly set forth in this Article IV (as modified by the Sellers' Disclosure Schedules hereto), no Seller nor any other Person makes any representation and warranty, express or implied, in respect of such Seller, the Purchased Assets, the Business or the Assumed Liabilities, and any such other representations or warranties, express or implied, are hereby expressly disclaimed.

### ARTICLE V
### REPRESENTATIONS AND WARRANTIES OF BUYER

Buyer hereby represents and warrants to the Sellers as follows:

5.1    Organization and Good Standing. Buyer is a limited liability company duly organized, validly existing and in good standing under the Laws of its jurisdiction of formation, and has full power and authority to own, lease and operate its properties and carry on its business as it is now being conducted.

5.2    Power and Authority.

(a)    Buyer has the requisite power and authority to enter into this Agreement and to perform its obligations hereunder, and the execution and delivery of this Agreement and the consummation of the Transactions and the performance of Buyer's obligations hereunder have been duly authorized by all requisite company action on the part of Buyer. This Agreement has been duly executed and delivered by Buyer and constitutes (assuming the due and valid authorization, execution and delivery thereof by the other parties thereto and the entry of approval of this Agreement and the Transactions by the Bankruptcy Court pursuant to the Sale Order) the legal, valid and binding obligation of Buyer, enforceable against Buyer in accordance with its terms.

(b)    The Administrative Agent has the requisite power and authority to take all necessary actions under the DIP Facility and the Prepetition Financing Agreement in order to cause the payment of the Credit Bid Amount in accordance with Section 3.2(a).

5.3    No Contravention. Neither the execution and delivery of this Agreement nor the consummation of the Transactions will (a) violate or conflict with any provision of Buyer's Organizational Documents, or (b) violate or conflict with any Order, Governmental Entity or arbitrator, or any Law applicable to Buyer; other than, in the case of clause (b), compliance with the applicable requirements of the HSR Act or other Antitrust Laws if required.

5.4    Consents and Approvals. Except for (a) entry of the Sale Order, and (b) any consents or approvals as are reflected on Schedule 5.4, the execution, delivery and performance

by Buyer of this Agreement and the Transactions, and the legality, validity, binding effect or enforceability of this Agreement and any agreements contemplated hereby, do not require any consents, waivers, authorizations or approvals of, or filings with, any third Persons or Governmental Entities, other than any filings required to be made under the HSR Act or applicable Antitrust Laws.

5.5    Litigation. There are no Proceedings pending or, to the knowledge of Buyer, threatened, that would reasonably be expected to adversely affect the ability of Buyer to consummate the Transactions in any material respect.

5.6    Financial Advisors. No Person has acted, directly or indirectly, as a broker, finder or financial advisor for Buyer in connection with the Transactions and no Person is entitled to any fee or commission or like payment in respect thereof.

5.7    Sufficient Funds; Adequate Assurances. Buyer has or will have as of the Closing, immediately available funds sufficient for the satisfaction of all of Buyer's obligations under this Agreement, including all fees, expenses of, and other amounts required to be paid by, Buyer in connection with the transactions contemplated hereby. As of the Closing, Buyer shall be capable of satisfying the conditions contained in sections 365(b)(1)(C) and 365(f)(2)(B) of the Bankruptcy Code with respect to the Assumed Contracts and the related Assumed Liabilities.

5.8    Acknowledgements; "As Is" "Where Is" Transaction.

(a)    IN MAKING ITS DETERMINATION TO PROCEED WITH THE TRANSACTIONS CONTEMPLATED BY THIS AGREEMENT, BUYER AND THE BUYER GROUP HAVE RELIED SOLELY ON THE RESULTS OF THEIR OWN INDEPENDENT INVESTIGATION.

(b)    BUYER, ON ITS OWN BEHALF AND ON BEHALF OF THE BUYER GROUP, ACKNOWLEDGES AND AGREES THAT IT AND THE BUYER GROUP HAVE RECEIVED FROM SELLERS CERTAIN PROJECTIONS, FORWARD-LOOKING STATEMENTS, FORECASTS, AND PROSPECTIVE OR THIRD-PARTY INFORMATION RELATING TO SELLERS, THE BUSINESS, THE PURCHASED ASSETS AND THE ASSUMED LIABILITIES (WHETHER IN WRITTEN, ELECTRONIC, OR ORAL FORM, AND INCLUDING IN THE DATA ROOM, MANAGEMENT MEETINGS, ETC.) (COLLECTIVELY, "PROJECTIONS"). BUYER, ON BEHALF OF ITSELF AND THE BUYER GROUP, ACKNOWLEDGES THAT (I) SUCH PROEJCTIONS ARE BEING PROVIDED SOLELY FOR THE CONVENIENCE OF BUYER AND THE BUYER GROUP TO FACILITATE THEIR OWN INDEPENDENT INVESTIGATION; (II) THERE ARE UNCERTAINTIES INHERENT IN ATTEMPTING TO MAKE SUCH PROJECTIONS AND FORECASTS AND IN SUCH INFORMATION; (III) BUYER AND THE BUYER GROUP ARE FAMILIAR WITH SUCH UNCERTAINTIES AND ARE TAKING FULL RESPONSIBILITY FOR MAKING THEIR OWN EVALUATION OF THE ADEQUACY AND ACCURACY OF ALL SUCH PROJECTIONS, FORECASTS, AND INFORMATION SO FURNISHED (INCLUDING THE REASONABLENESS OF THE ASSUMPTIONS UNDERLYING SUCH PROJECTIONS); AND (IV) NONE OF THE SELLERS NOR ANY OTHER PERSON MAKES ANY REPRESENTATIONS OR WARRANTIES WITH RESPECT TO SUCH PROJECTIONS AND

FORECASTS. BUYER, ON ITS OWN BEHALF AND ON BEHALF OF THE BUYER GROUP HEREBY DISCLAIMS RELIANCE ON ANY SUCH PROJECTIONS.

(c)     BUYER, ON ITS OWN BEHALF AND ON BEHALF OF THE BUYER GROUP, FURTHER ACKNOWLEDGES AND AGREES THAT THE REPRESENTATIONS AND WARRANTIES MADE BY SELLERS TO BUYER IN ARTICLE IV (AS QUALIFIED BY THE SELLERS' DISCLOSURE SCHEDULES) OR IN THE DOCUMENTS DELIVERED BY SELLERS TO BUYER IN ACCORDANCE WITH SECTION 3.1(b) AT THE CLOSING (COLLECTIVELY, THE "EXPRESS REPRESENTATIONS") ARE THE SOLE AND EXCLUSIVE REPRESENTATIONS, WARRANTIES AND STATEMENTS OF ANY KIND MADE TO BUYER IN CONNECTION WITH THE TRANSACTIONS CONTEMPLATED BY THIS AGREEMENT AND THAT ALL OTHER REPRESENTATIONS OR WARRANTIES OF ANY KIND OR NATURE EXPRESSED OR IMPLIED, WHETHER IN WRITTEN, ELECTRONIC OR ORAL FORM, INCLUDING (A) TO THE COMPLETENESS OR ACCURACY OF, OR ANY OMISSION TO STATE OR TO DISCLOSE ANY INFORMATION (OTHER THAN SOLELY TO THE EXTENT OF AN EXPRSS REPRESENTATION), INCLUDING IN THE DATA ROOM, PROJECTIONS, MEETINGS, CALLS OR CORRESPONDENCE WITH MANAGEMENT OR THE SELLERS OR ANY OF THEIR RESPECTIVE AFFILIATES OR REPRESENTATIVES, AND (B) ANY OTHER STATEMENT RELATING TO THE HISTORICAL, CURRENT OR FUTURE BUSINESS, FINANCIAL CONDITION, RESULTS OF OPERATIONS, ASSETS, LIABILITIES, PROPERTIES, CONTRACTS, EMPLOYEE MATTERS, REGULATORY COMPLIANCE, BUSINESS RISKS AND PROSPECTUS OF THE SELLERS OR ANY OF THEIR RESPECTIVE AFFILIATES OR SUBSIDIARIES, OR THE QUALITY, QUANTITY OR CONDITION OF THE SELLERS' ASSETS, ARE, IN EACH CASE, EXPRESSLY DISCLAIMED BY EACH OF THE SELLERS, ON ITS OWN BEHALF AND ON BEHALF OF EACH OF THE OTHER SELLERS, INCLUDING WITH RESPECT TO (I) ANY WARRANTY, EXPRESS OR IMPLIED, OF MERCHANTABILITY OR FITNESS FOR ANY PARTICULAR PURPOSE AS TO ANY PORTION OF THE PURCHASED ASSETS, AND (II) WITH RESPECT TO THE BUSINESS, FINANCIAL CONDITION, RESULTS OF OPERATIONS, ASSETS, LIABILITIES, AND PROSPECTS OF SELLERS OR THE BUSINESS OF THE SELLERS,), THE MERCHANTABILITY OR FITNESS OF THE PERSONAL PROPERTY OR ANY OTHER PORTION OF THE PURCHASED ASSETS FOR ANY PARTICULAR PURPOSE, OR ANY OTHER MATTER RELATING TO THE PURCHASED ASSETS OR ANY PORTION THEREOF.

(d)     UPON THE CLOSING DATE, SUBJECT TO THE EXPRESS REPRESENTATIONS AND THE PROVISIONS OF SECTION 10.5, BUYER WILL ACCEPT THE PURCHASED ASSETS AT THE CLOSING "AS IS," "WHERE IS," AND "WITH ALL FAULTS."

## ARTICLE VI
## COVENANTS OF THE PARTIES

6.1     Conduct of Business Pending the Closing. Except (a) as required by applicable Law or by order of the Bankruptcy Court, (b) as otherwise expressly required by this Agreement, (c) as limited by the terms of the DIP Documents, (d) as set forth on Schedule 6.1, or (e) with the prior

written consent of Buyer (not to be unreasonably withheld, conditioned, or delayed), during the period from the Agreement Date and continuing until the earlier of the termination of this Agreement in accordance with its terms or the Closing, the Sellers shall use commercially reasonable efforts to, and shall use commercially reasonable efforts to cause the Foreign Subsidiaries to, carry on the Business in the Ordinary Course of Business (subject to the requirements of the Bankruptcy Code and Bankruptcy Court) and use commercially reasonable efforts to preserve in all material respects (i) the operations, organization and goodwill of the Business intact (including by maintaining and renewing its Permits) and (ii) relationships with Governmental Entities, customers, suppliers, partners, lessors, licensors, licensees, vendors, contractors, distributors, agents, officers and employees and others having business dealings with the Business. The Sellers shall notify Buyer in writing of any event, occurrence, fact, condition or change in the Business, assets, operations or prospects of the Sellers that results in, or could reasonably be expected to result in, a Material Adverse Effect, promptly upon the Knowledge of Sellers of such occurrence of any such event, occurrence, fact, condition or change.

6.2    <u>Negative Covenants</u>. Except as otherwise expressly provided by this Agreement, as set forth on <u>Schedule 6.1</u>, or consented to in writing by Buyer (such consent not to be unreasonably withheld, conditioned or delayed), or as may be required by order of the Bankruptcy Court or as limited by the terms of the DIP Documents, during the period from the Agreement Date until the earlier of the termination of this Agreement in accordance with its terms or the Closing, the Sellers shall not and shall cause the Foreign Subsidiaries to not take any of the following actions:

(a)    incur or commit to incur any capital expenditures other than as expressly contemplated under the Budget;

(b)    acquire or agree to acquire (by merging or consolidating with, or by purchasing any portion of the stock of, or other ownership interests in, or substantial portion of assets of, or by any other manner), any business or division or any corporation, partnership, association, limited liability company or other entity;

(c)    grant any Lien on or otherwise encumber or dispose of (or consent to the disposition of) any of the Purchased Assets (including any Available Contract), including the Equity Interests of any of the Sellers, other than a Permitted Lien or inventory sold in the Ordinary Course of Business, Liens securing the DIP Facility and any other Liens not prohibited by the DIP Documents;

(d)    sell, assign, transfer, license, sublicense, covenant not to sue with respect to, abandon, cancel, terminate, permit to lapse or expire, or otherwise dispose of any material Acquired Intellectual Property, other than (i) non-exclusive licenses granted in the Ordinary Course of Business and (ii) expiration of Intellectual Property at the end of its non-renewable statutory life;

(e)    adjust, split, combine, redeem, repurchase or reclassify any capital stock or equity interests or issue or propose or authorize the issuance of any other securities (including Debt securities, options, profits interests, warrants or any similar security exercisable for, or convertible into, such other security);

(f)     incur or assume any Debt (other than the DIP Facility and any other Debt not prohibited by the DIP Documents and trade payables in the Ordinary Course of Business);

(g)     guarantee any Debt of any Person or enter into any "keep well" or other agreement to maintain any financial condition of another Person or enter into any arrangement having the economic effect of any of the foregoing (other than the DIP Facility and any guarantee not prohibited by the DIP Documents);

(h)     enter into, amend, restate, supplement, modify, waive or terminate any Available Contract, other than any amendment, restatement, supplement, modification or waiver that is done in the Ordinary Course of Business and is not material and adverse to the Business;

(i)     adopt any amendments to the certificate of incorporation, bylaws or other Organizational Documents of any Seller;

(j)     initiate, compromise, settle or agree to settle any Claim, complaint, or Proceeding, other than compromises or settlements in the Ordinary Course of Business that (i) involve only the payment of money damages not in excess of $100,000 individually or $500,000 in the aggregate, (ii) do not impose ongoing limits on the conduct of the Business, and (iii) result in a full release of all Sellers with regard to the Claims or complaint giving rise to such Proceeding;

(k)     make, change or revoke any material Tax election (including entity classification elections), change any financial or Tax accounting method, except insofar as may have been required by applicable Law or a change in GAAP, consent to an extension or waiver of the limitation period applicable to any Tax claim or assessment, or surrender any right to claim a refund of a material amount of Taxes;

(l)     enter into, amend, negotiate or terminate any collective bargaining agreement or similar agreement with any labor union or labor organization representing any employees;

(m)     (i) unless in accordance with an Order of the Bankruptcy Court or the Budget, increase the compensation payable to or to become payable to, or the benefits provided to, pay any bonus to, or grant any equity or equity-based award to, any current or former employee, director, independent contractor or other individual service provider of the Sellers; (ii) grant, increase, pay, provide or modify any severance, retention, change in control or termination payment or benefit to, or loan or advance or accelerate any amount to, any current or former employee, director, independent contractor or other individual service provider of the Sellers; (iii) accelerate the vesting or payment, or fund or in any other way secure the payment, of any compensation or benefit for any current or former employee, director, independent contractor or other individual service provider of the Sellers; (iv) approve, establish, adopt, enter into, amend or terminate any Assumed Benefit Plan, except as required by Law; (v) grant or forgive any loans to any current or former employee, director, independent contractor or other individual service provider of the Sellers; or (vi) hire or promote, or terminate or demote (other than for cause) any current or former employee, independent contractor or other individual service provider of the Sellers with annual target cash compensation greater than $100,000 or in accordance with the Budget;

(n)      (i) enter into any Contract or arrangement (including any loan or similar arrangement) with a Related Party or that would be a Related Party Transaction if it existed on the Agreement Date or (ii) make payments to or on behalf of any Related Party (including by exercise of set-off rights or otherwise), other than in accordance with the terms of an existing, disclosed Related Party Transaction;

(o)      receive, collect, compile, use, store, process, share, safeguard, secure (technically, physically and administratively), dispose of, destroy, disclose, or transfer (including cross-border) Personal Information (or fail to do any of the foregoing, as applicable) in violation of any (i) applicable Privacy Laws, (ii) privacy policies or notices of the Sellers, or (iii) the Sellers' contractual obligations with respect to Personal Information;

(p)      cash collected by the Sellers and their subsidiaries from customers of the Business during the period between the date hereof and the Closing Date shall only be used to fund ordinary course expenses of the Business (not expenses related to the administration of the Cases); or

(q)      authorize, commit or agree to take any of the foregoing actions.

6.3    Access.

(a)      Subject to applicable Law, until the Closing Date, the Sellers (i) shall give Buyer and its Representatives reasonable access during normal business hours to the offices, assets, contracts, properties, officers, employees, accountants, auditors, financial advisors, counsel (other than counsel to the Sellers in connection with the Cases) and other representatives, books and records, of the Sellers and their Affiliates, (ii) shall furnish to Buyer and its Representatives such financial, operating and property related data and other information as such Persons reasonably request, (iii) shall instruct the employees, accountants, counsel and financial advisors of the Sellers and their Affiliates to cooperate reasonably with Buyer in its investigation of the Business; and (iv) shall, upon reasonable request of Buyer, use commercially reasonable efforts to provide Buyer with access to their customers, suppliers, vendors, distributors, manufacturers and other Persons with whom the Business has had material dealings; provided, however, that Buyer will not, and will not permit any of its Representatives to, contact any officer, manager, director, employee, customer, supplier, lessee, lessor, lender, licensee, licensor, distributor, noteholder or other material business relation of the Sellers or any Foreign Subsidiary prior to the Closing with respect to the Sellers, Foreign Subsidiaries, their business or the Transactions without the prior written consent of the Sellers for each such contact, which consent shall not be unreasonably withheld, conditioned or delayed. No investigation by Buyer prior to or after the date of this Agreement shall diminish or obviate any of the representations, warranties, covenants or agreements of the Sellers contained in this Agreement. For the avoidance of doubt, nothing in this Section 6.3(a) shall require Sellers to take any such action if (i) such action may result in a waiver or breach of any attorney/client privilege or (ii) such action could reasonably be expected to result in violation of applicable Law or Order.

(b)      From and after the Closing Date until the conclusion of the Cases, Buyer shall give the Sellers and the Sellers' Representatives reasonable access during normal business hours to the books and records pertaining to the Purchased Assets and Assumed Liabilities, for the

45

purposes of (i) the preparation or amendment of Tax Returns, (ii) the determination of any matter relating to the rights or obligations of the Sellers under this Agreement, or (iii) as is necessary to administer, or satisfy their obligations in connection with, the Cases. Buyer shall, and shall cause each of its controlled Affiliates to, cooperate with the Sellers as may reasonably be requested by the Sellers for such purposes. For the avoidance of doubt, nothing in this Section 6.3(b) shall require Buyer to take any such action if (i) such action may result in a waiver or breach of any attorney/client privilege, (ii) such action could reasonably be expected to result in violation of applicable Law or Order, or (iii) providing such access or information would be reasonably expected to be disruptive to its normal business operations. Unless otherwise consented to in writing by the Sellers, Buyer will not, for a period of three (3) years following the Closing Date, destroy, alter or otherwise dispose of any of the books and records without first offering to surrender to the Sellers such books and records or any portion thereof that Buyer may intend to destroy, alter or dispose of. From and after the Closing, Buyer will, and will cause its employees to, provide Sellers with reasonable assistance, support and cooperation with Sellers' wind-down and related activities (e.g., helping to locate documents or information related to preparation of Tax Returns or prosecution or processing of insurance/benefit claims).

(c)     The information provided pursuant to this Section 6.3 will be used solely for the purpose of consummating the transactions contemplated hereby, and will be governed by all the terms and conditions of Section 12.19 of the Prepetition Financing Agreement. None of Sellers or Buyer makes any representation or warranty as to the accuracy of any information, if any, provided pursuant to this Section 6.3, and no Party may rely on the accuracy of any such information, in each case, other than the Express Representations or the representations and warranties made by Buyer to Sellers in Article V of this Agreement, as applicable.

6.4     Confidentiality. From and after the Closing Date:

(a)     the Sellers will treat and hold as confidential all of the Confidential Information, and will not, directly or indirectly, without the prior written consent of Buyer, disclose or use any Confidential Information, except as required by Law. The Sellers' obligation not to disclose Confidential Information shall not apply to Confidential Information that it shall be required to disclose by Law; provided, however, that, prior to making such disclosure, the Sellers shall notify Buyer promptly to the extent not prohibited by Law so that Buyer may seek confidential treatment or protection of such Confidential Information at Buyer's sole cost and expense; and

(b)     in the event that the Sellers are required in any Proceeding to disclose any Confidential Information, the Sellers will notify Buyer promptly of the requirement to the extent not prohibited by Law so that Buyer may seek an appropriate protective order at Buyer's sole cost and expense or waive compliance with the provisions of this Section 6.4.

6.5     Public Announcements. From the Agreement Date, Buyer and the Sellers will consult with each other before issuing, and provide each other the reasonable opportunity to review and comment upon, any press release, any court filing or pleading filed with the Bankruptcy Court relating primarily to this Agreement or the Transactions, or other public statements with respect to the Transactions, and neither Buyer nor the Sellers shall issue any such press release or make any such public statement without the prior written approval of the other Party, in each case except as

may be required by Law, or by obligations pursuant to any listing agreement with any national securities exchange. Sellers shall use their respective commercially reasonable efforts to cause their respective Affiliates, employees, officers and directors to comply with this <u>Section 6.5</u>.

6.6    <u>Employment Matters</u>.

(a)    Prior to Closing, Buyer may in its sole discretion (following consultation with the executive management of the Sellers) provide offers of employment to individuals employed by the Sellers as of the Closing Date, which offer shall provide at least the same base salary or hourly wage rate and target incentive cash bonus opportunities and such other terms and conditions determined by Buyer in its sole discretion.

(b)    Buyer shall provide credit to Hired Employees under Buyer's paid time off plans for all accrued but unused paid time off days as of the Closing, except to the extent that Hired Employees receive payment for such vacation days in connection with the Closing.

(c)    Following the Closing, Buyer shall give each Hired Employee full credit for prior service with the Sellers for purposes of (i) eligibility and vesting under any health or welfare Benefit Plans of Buyer (for the avoidance of doubt, excluding defined benefit pension accruals, deferred compensation, or equity or equity-based incentive plans, or any plan under which such crediting would be prohibited), and (ii) determination of benefit levels under any employee benefit plans of Buyer relating to paid time off, in each case, for which the Hired Employee is otherwise eligible and in which the Hired Employee is offered participation, except where such credit would result in a duplication of benefits. Buyer shall use commercially reasonable efforts to waive, or cause to be waived, any limitations on benefits relating to pre-existing conditions to the same extent such limitations are waived under any comparable plan of the Sellers and use commercially reasonable efforts to recognize for purposes of annual deductible and out-of-pocket limits under its medical and dental plans, deductible and out-of-pocket expenses paid by Hired Employees in the calendar year in which the Closing Date occurs.

(d)    Without limiting the generality of <u>Section 2.4</u>, each Seller shall retain responsibility for, and satisfy all Liabilities with respect to, all payments and benefits of the employees (and their spouses, dependents and beneficiaries, and all former employees, agents and representatives) under Benefit Plans of the Sellers that are not Assumed Benefit Plans accrued up to the Closing Date or which relate to events prior to the Closing Date in accordance with the terms thereof and applicable Laws. The Seller and Buyer shall work in good faith to transfer sponsorship of any Assumed Benefit Plan (including any third party insurance contracts or services agreements thereto) from Seller to Buyer or its Affiliates.

(e)    Without limiting the generality of <u>Article II</u>, each Seller shall be responsible for the following claims or benefit payments of all employees (and their spouses, dependents and beneficiaries, and all former employees, agents and representatives) accrued up to the Closing Date or which related to events prior to the Closing Date regardless of whether such claims are filed before or after the Closing Date under each Benefit Plan that is not an Assumed Benefit Plan:

(i)    with respect to death or dismemberment claims, those in respect of which the event occurred prior to the Closing Date;

(ii)     with respect to health claims, those in respect of which the services were provided or the supplies were purchased prior to the Closing Date; and

(iii)     with respect to short term and/or long term disability claims and workers' compensation claims, for those claims resulting from events that occurred prior to the Closing Date, including, to the extent covered under the Benefit Plans, for recurring illnesses which first originated with events occurring prior to the Closing Date, whether or not such claims continue after the Closing Date.

(f)     This Section 6.6 shall operate exclusively for the benefit of the Sellers and Buyer and not for the benefit of any other Person, including any current or former employees of the Sellers or the Hired Employees, which Persons shall have no rights to enforce this Section 6.6. Nothing in this Section 6.6 shall: (i) entitle any Hired Employee to employment with Buyer; (ii) change such Hired Employee's status as an employee-at-will or restrict the ability of Buyer to terminate the service of any Hired Employee at any time or for any reason; (iii) create any third party rights in any current or former service provider of the Sellers (including any beneficiary or dependent thereof); or (iv) be treated as an amendment of any Benefit Plan or other employee benefit plan or arrangement or restrict the ability of Buyer, the Sellers or any of their respective Affiliates to amend, modify, discontinue or terminate any Benefit Plan or other employee benefit plan or arrangement.

(g)     For any Hired Employees who are principally based outside the United States, the provisions of this Section 6.6 shall apply to such employees *mutatis mutandis* to the maximum extent permitted by applicable Law.

6.7     Reasonable Efforts; Approvals.

(a)     Buyer and the Sellers will use reasonable best efforts to take, or cause to be taken, all actions and use reasonable best efforts to do, or cause to be done, and to assist and cooperate with the other Parties in doing, all things which are necessary, proper or advisable to consummate and make effective the Transactions including: (i) the transfer, modification or reissuance of all Permits, (ii) the obtaining or taking of all other necessary actions, non-actions or waivers from Governmental Entities and the making of all other necessary registrations and filings with Governmental Entities (including any Regulatory Authorizations), and (iii) the execution and delivery of any additional certificates, agreements, instruments, reports, schedules, statements, consents, documents and information necessary to consummate the Transactions. The covenants in this Section 6.7(a) shall survive the Closing.

(b)     In furtherance of the foregoing, Buyer and each Seller shall use its commercially reasonable efforts to obtain any consents and approvals from any third party other than a Governmental Entity that may be required in connection with the Transactions (the "Third Party Consents"). Without limiting the generality of the foregoing sentence, the Sellers shall not be required to compensate any applicable third party, commence or participate in any Proceeding or offer or grant any accommodation (financial or otherwise, including any accommodation or arrangement to indemnify, remain primarily, secondarily or contingently liable for any Assumed Liability) to any applicable third party in connection with the Sellers' obligations under this Section 6.7(b); provided, that the Sellers shall obtain the written consent of Buyer prior to any Seller paying

any such compensation, commencing or participating in any Proceeding, or offering or granting any such accommodation. The covenants in this Section 6.7(b) shall survive the Closing.

(c)     The obligations of the Sellers pursuant to this Section 6.7 shall be subject to any Orders entered, or approvals or authorizations granted or required, by or under the Bankruptcy Court or the Bankruptcy Code (including in connection with the Cases), the DIP Facility, and each of Sellers' obligations as a debtor-in-possession to comply with any Order of the Bankruptcy Court (including the Bidding Procedures Order and the Sale Order) and Sellers' duty to seek and obtain the highest or otherwise best price for the Acquired Assets as required by the Bankruptcy Code.

(d)     Promptly following the Closing, at Buyer's sole cost and expense, Sellers shall take such further actions and execute such further documents as may be necessary or reasonably requested by Buyer or Sellers to effectuate, evidence and perfect the assignment and transfer of the Owned Intellectual Property to Buyer, including making such filings with any Governmental Entities as may be required to transfer the Owned Intellectual Property to Buyer or to further the prosecution, issuance or maintenance of the Owned Intellectual Property.

(e)     This Section 6.7 shall not apply to filings or consents under Antitrust Laws, which shall be governed by the obligations set forth in Section 6.12.

6.8     Corporate Name Change. Within thirty (30) days following the Closing, each Seller shall deliver to Buyer (a) a duly executed and acknowledged certificate of amendment to such Seller's certificate of incorporation or other Organizational Document which is required to change such Seller's corporate or other entity name to a new name that is, in Buyer's reasonable judgment, sufficiently dissimilar to such Seller's present name and in, all cases, does not include the name "Near" so as to avoid confusion and to make each Seller's present name available to Buyer, and (b) appropriate documents, duly executed and acknowledged, which are required to change such Seller's name to such new name in any jurisdiction in which such Seller is qualified to do business, in forms reasonably satisfactory to Buyer. Buyer and any Affiliate of Buyer are hereby authorized (but not obligated) to file such certificates or other documents (at Buyer's expense) with the applicable Governmental Entities in order to effectuate such change of name at or after the Closing as Buyer may elect.

6.9     Assignment of Contracts and Rights.

(a)     To the maximum extent permitted by the Bankruptcy Code, the Purchased Assets of the Sellers shall be assumed and assigned to Buyer pursuant to section 365 of the Bankruptcy Code as of the Closing Date or such other date as specified in the Sale Order or this Agreement, as applicable. Notwithstanding any other provision of this Agreement to the contrary, this Agreement shall not constitute an agreement to assign any asset or any right thereunder if, after giving effect to the Sale Order, an attempted assignment without the consent of a third party (including any Governmental Entity) would constitute a breach or in any way adversely affect the rights of Buyer following the Closing. If, as of the Closing Date, such consent is not obtained or such assignment is not attainable pursuant to sections 363 or 365 of the Bankruptcy Code other than as a result of the failure by the Buyer to pay or otherwise satisfy all Cure Amounts, then the Sellers and Buyer will, for a period of sixty (60) days following the Closing, cooperate in a

mutually agreeable arrangement, to the extent feasible (without infringing upon the legal rights of any third party or violating any Law), under which Buyer would obtain the benefits and assume the obligations (to the extent otherwise constituting Assumed Liabilities hereunder) thereunder in accordance with this Agreement, including subcontracting, sublicensing or subleasing to Buyer, or under which the Sellers would enforce for the benefit of, and at the direction of, Buyer, with Buyer assuming all of the Sellers' obligations (to the extent constituting Assumed Liabilities hereunder), and any and all rights of the Sellers thereunder.

(b)     Notwithstanding anything herein to the contrary, in the event that Sellers are unable to transfer to Buyer any of their Equity Interests in Near Intelligence Pvt. Ltd. ("Near India") at the Closing as a result of failure to obtain corporate approval for, or registration of, such transfer under the organizational documents of Near India or under applicable Law, from and after the Closing, for a period of time until the earlier to occur of (x) 6 months following the Closing Date and (y) the transfer of such Equity Interests to Buyer (the "End Date"), Buyer and Sellers shall use commercially reasonable efforts to enter into a mutually agreeable arrangement, to the extent feasible under applicable Law, under which Buyer would obtain the benefits and assume all the obligations related to ownership of the Equity Interests of Near India as though it were such record holder of such Equity Interests, and Sellers will continue to hold such Equity Interests for the benefit of the Buyer. Sellers shall use their reasonable best efforts to undertake any instruction received in writing from Buyer with respect to exercising any rights and powers of Sellers in respect of their ownership of the Equity Interests of Near India, to the extent permitted by applicable Law. From and after the Closing until the End Date, Sellers shall use their reasonable best efforts to obtain all approvals required to consummate the transfer of the Equity Interests in Near India to Buyer. As between Sellers and Buyer, from and after the Closing, Buyer shall be responsible for the operations of Near India as though it were the record owner of the Equity Interests of Near India and shall assume and agree to pay for any and all Liabilities of Near India. Buyer shall pay for all expenses reasonably incurred by the Sellers in connection with the arrangements set forth in this Section 6.9(b) and from and after the Closing, Buyer shall indemnify the Sellers and their Affiliates from any Liabilities incurred by the Sellers arising out of any action or omission of Sellers or their Affiliates taken at the direction of Buyer under such arrangement. For the avoidance of doubt, the failure to transfer the Equity Interest of Near India at the Closing as contemplated by this Section 6.9(b) shall not cause a failure to satisfy any condition to Closing set forth in Article VIII of this Agreement nor give rise to an event of termination under Article IX of this Agreement.

6.10   Tax Matters.

(a)     All Transfer Taxes arising out of the transfer of the Purchased Assets and any Transfer Taxes required to effect any recording or filing with respect thereto shall be borne by Buyer. The Transfer Taxes shall be calculated assuming that no exemption from Transfer Taxes is available, unless otherwise indicated in the Sale Order or, at Closing, the Sellers or Buyer, as appropriate, provide an appropriate resale exemption certificate or other evidence acceptable to Buyer or the Sellers, as appropriate, of exemption from such Transfer Taxes. The Sellers and Buyer shall cooperate to timely prepare and file any Tax Returns relating to such Transfer Taxes, including any claim for exemption or exclusion from the application or imposition of any Transfer Taxes. Each Party shall file all necessary documentation and returns that it is required by Law to file with respect to such Transfer Taxes when due, and shall promptly, following the filing thereof,

furnish a copy of such return or other filing and a copy of a receipt showing payment of any such Transfer Tax to the other Party. Each Party shall furnish or cause to be furnished to the other, upon request, as promptly as practicable, such information and assistance relating to the Purchased Assets and the Business as is reasonably necessary for filing of all Tax Returns, including any claim for exemption or exclusion from the application or imposition of any Taxes or making of any election related to Taxes, the preparation for any audit by any taxing authority and the prosecution or defense of any claim, suit or proceeding relating to any Tax Return.

(b)    Other than Transfer Taxes, all Liability for Taxes with respect to the Business or the Purchased Assets attributable to the Pre-Closing Tax Period shall be borne by the Sellers, and all Liability for Taxes with respect to the Purchased Assets attributable to the Post-Closing Tax Period shall be borne by Buyer. For purposes of this Agreement, with respect to Taxes attributable to any taxable year or other taxable period beginning on or before and ending after the Closing Date, the portion of any such Taxes allocated to a Pre-Closing Tax Period shall be: (i) in the case of Taxes based upon, or related to income, receipts, profits, or wages or imposed in connection with the sale, transfer or assignment of property, or required to be withheld, deemed equal to the amount which would be payable if such taxable year or other taxable period ended on the Closing Date, and (ii) in the case of other Taxes deemed to be the amount of such Taxes for the entire period multiplied by a fraction the numerator of which is the number of days in the period ending on the Closing Date and the denominator of which is the number of days in the entire period.

(c)    The Parties agree that the transfer of the Purchased Assets (except for the purchase of the Equity Interests of the Foreign Subsidiaries) to the Buyer is intended to be treated as a taxable acquisition of assets and the Parties shall prepare and file all relevant U.S. federal income Tax Returns consistent with such intended treatment and Section 3.3, respectively, absent a contrary "determination" (within the meaning of Section 1313(a) of the Code). No elections shall be made under Section 338 of the Code (or any election to similar effect) with respect to the transactions contemplated by this Agreement.

(d)    The obligations set forth in this Section 6.10 with respect to Taxes shall survive until the date that is thirty (30) days following the expiration of the applicable statute of limitations.

6.11    Available Contracts List. Sellers shall use commercially reasonable efforts to provide Buyer with a true and correct list of all Available Contracts (and copies thereof) promptly following the date hereof and in no event later thirty (30) days from the Agreement Date.

6.12    HSR Act; Antitrust Laws.

(a)    Sellers and Buyer shall, if required in connection with the transactions contemplated hereby, (i) promptly make the filings required by any Governmental Entity, including under the HSR Act or any other Antitrust Laws and, in any event, within ten (10) Business Days after the Agreement Date in the case of all filings required under the HSR Act and all other filings required by other Antitrust Laws, (ii) comply at the earliest practicable date with any request for additional information, documents or other materials received from any Governmental Entity, whether such request is formal or informal, (iii) cooperate with the other Parties in connection with

resolving any investigation or other inquiry concerning the transactions contemplated by this Agreement commenced by any Governmental Entity, and (iv) cooperate with the other Parties in connection with any other Party's filing. Each Party shall be responsible for the payment of its respective fees and expenses, including legal fees and expenses, in complying with any request for additional information or documentary material from any Governmental Entity; *provided* that all filing fees required to be paid in connection with any filings hereunder shall be borne equally by Sellers and Buyer. Except where prohibited by applicable Law or any Governmental Entity, and subject to Section 6.4, each Party shall promptly inform the other Parties of any oral communication with, and provide copies of written communications with, any Governmental Entity regarding any such filing. No Party shall agree to participate in any formal meeting with any Governmental Entity in respect of any such filings, investigation, or other inquiry without giving the other Parties prior notice of the meeting and, to the extent permitted by such Governmental Entity, the opportunity to attend and/or participate. Subject to applicable Laws and any Governmental Entity, the Parties will coordinate, consult and cooperate with one another in connection with any analyses, appearances, presentations, memoranda, briefs, arguments, opinions and proposals made or submitted by or on behalf of any Party relating to proceedings under the HSR Act or any other Antitrust Law, if any. Except where prohibited by applicable Law or any Governmental Entity, and subject to Section 6.4, the Parties will provide each other with copies of all correspondence, filings or communications, including any documents, information and data contained therewith, between them or any of their representatives, on the one hand, and any Governmental Entity or members of its staff, on the other hand, with respect to this Agreement and the transactions contemplated hereby.

(b)     Buyer and each Seller shall use their respective reasonable best efforts to obtain any required approval from any Governmental Entity and to resolve such objections, if any, as may be asserted by any Governmental Entity with respect to the transactions contemplated by this Agreement under the HSR Act, the Sherman Act, as amended, the Clayton Act, as amended, the Federal Trade Commission Act, as amended, and any other United States federal or state or foreign Laws that are designed to prohibit, restrict or regulate actions having the purpose or effect of monopolization or restraint of trade (collectively, the "Antitrust Laws"). Buyer and each Seller shall use their respective reasonable best efforts to take such action as may be required to cause the expiration of the notice periods under the HSR Act or other Antitrust Laws with respect to such transactions as promptly as practicable after the execution of this Agreement.

## ARTICLE VII
## BANKRUPTCY PROVISIONS

7.1     Expense Reimbursement. In consideration for Buyer having expended considerable time and expense in connection with this Agreement and the negotiation thereof and the identification and quantification of assets of the Sellers, if this Agreement is terminated for any reason other than Section 9.1(c)(i) or Section 9.1(c)(iii)(A), the Sellers shall pay Buyer if approved by the Bankruptcy Court, in accordance with the terms of this Agreement (including Section 9.2) and the Bidding Procedures Order an aggregate amount equal to the Expense Reimbursement; provided, however, if this Agreement is terminated pursuant to Section 9.1(b)(vi), Section 9.1(b)(vii) or Section 9.1(c)(ii), any such Expense Reimbursement shall only be due and payable upon consummation of an Alternate Transaction from the proceeds of such Alternate Transaction. Each of the Parties acknowledges and agrees that the agreements contained in this Section 7.1 are

an integral part of the Transactions and this Agreement and that the Expense Reimbursement is not a penalty, but rather is liquidated damages in a reasonable amount that will reasonably compensate Buyer in the circumstances in which such Expense Reimbursement is payable for the efforts and resources expended and opportunities foregone by Buyer while negotiating and pursuing the Transactions and this Agreement and in reasonable reliance on this Agreement and on the reasonable expectation of the consummation of the Transactions, which amount would otherwise be impossible to calculate with precision. In accordance with <u>Section 7.3</u>, Sellers shall file with and seek the entry by the Bankruptcy Court of the Bidding Procedures Order approving the payment of the Expense Reimbursement. The claim of Buyer in respect of the Expense Reimbursement shall constitute an allowed administrative expense claim against each of the Sellers under sections 503(b) and 507(a)(2) of the Bankruptcy Code in the Cases (without the need to file a proof of claim). The Expense Reimbursement shall be payable on a joint and several basis by the Sellers.

7.2   <u>Bankruptcy Court Orders and Related Matters</u>.

(a)   The Sellers and Buyer acknowledge that this Agreement and the Transactions are subject to entry of, as applicable, the Bidding Procedures Order and the Sale Order. In the event of any discrepancy between this Agreement and the Bidding Procedures Order and the Sale Order, the Bidding Procedures Order and the Sale Order shall govern. In the event the entry of the Sale Order or the Bidding Procedures Order is appealed, Sellers shall use commercially reasonable efforts to defend such appeal, and Buyer shall cooperate in such efforts. Buyer and Sellers acknowledge that Sellers must take reasonable steps to demonstrate that they have sought to obtain the highest or otherwise best offer for the Purchased Assets, including giving notice thereof to the creditors of Sellers and other interested parties, providing information about Sellers' business to prospective bidders, entertaining higher or otherwise better offers from such prospective bidders, and, in the event that additional qualified prospective bidders desire to bid for the Purchased Assets, conducting the Auction. Buyer agrees and acknowledges that Sellers and their Affiliates will be permitted, and will be permitted to cause their Representatives, to initiate contact with, solicit or encourage submission of any inquiries, proposals or offers by, respond to any unsolicited inquiries, proposals or offers submitted by, and enter into any discussions or negotiations regarding any of the foregoing with, any Person (in addition to Buyer and its Affiliates, agents and Representatives).

(b)   The bidding procedures to be employed with respect to this Agreement and the Auction will be those reflected in the Bidding Procedures Order.

(c)   Buyer shall take all actions as may be reasonably necessary to cause the Bidding Procedures Order and Sale Order to be issued, entered and become Final Orders, including furnishing affidavits, declarations or other documents or information for filing with the Bankruptcy Court. Buyer agrees that it will promptly take such actions as are reasonably requested by Sellers to assist in obtaining entry of the Bidding Procedures Order and Sale Order and a finding of adequate assurance of future performance by Buyer. Buyer will provide adequate evidence and assurance under the Bankruptcy Code of the future performance by Buyer of each Assumed Contract in accordance with the Bidding Procedures Order. Buyer will, and will cause its Affiliates to, reasonably promptly take all actions reasonably required or requested by Sellers to assist in obtaining a Bankruptcy Court finding that there has been an adequate demonstration of adequate

assurance of future performance under the Assumed Contracts, such as furnishing affidavits, non-confidential financial information and other documents or information for filing with the Bankruptcy Court and making Buyer's Representatives available to testify before the Bankruptcy Court.

(d)    The Sellers shall, consistent with their respective obligations as fiduciaries under the Bankruptcy Code, cooperate with Buyer concerning the Bidding Procedures Order, the Sale Order, and any other orders of the Bankruptcy Court relating to the Transactions. The Sellers shall give notice under the Bankruptcy Code of the request for the relief specified in the Bidding Procedures Motion to all creditors and parties in interest entitled to notice thereof pursuant to the Bidding Procedures Order, the Bankruptcy Code and the Bankruptcy Rules, including all Persons that have asserted Liens on any Seller's assets, and all non-debtor parties to the Available Contracts of the Sellers and other appropriate notice, including such additional notice as the Bankruptcy Court shall direct or as Buyer may reasonably request, and provide appropriate opportunity for hearing, to all parties entitled thereto, of all motions, orders, hearings, or other Proceedings in the Bankruptcy Court relating to this Agreement, the Transactions and the Bidding Procedures Motion.

(e)    The Sellers shall provide draft copies of all orders, motions, pleading, applications and other material documents they intend to file with the Bankruptcy Court in connection with the sale of the Purchased Assets or the Transactions not less than three (3) Business Days prior to the date when the Sellers plan to file such document (provided, that if the delivery of such drafts at least three (3) Business Days is not reasonably practicable, such drafts shall be delivered to Buyer as soon as reasonable practicable prior to filing). The form and substance of any such document hereunder shall be mutually acceptable to Sellers and Buyer (provided that no party shall unreasonably withhold, condition or delay its consent).

(f)    Subject to the Sellers exercising their rights pursuant to this Section 7.2, the Sellers shall not, and shall cause their subsidiaries not to, take any action that is intended to result in, or fail to take any action that is intended to result in, or fail to take any action the intent of which failure to act would reasonably be expected to result in, the reversal, voiding, modification or staying of the Bidding Procedures Order or, if applicable, if Buyer is the prevailing bidder at the Auction, the Sale Order. The Sellers shall, and shall cause their subsidiaries to, comply with the Bidding Procedures Order and the Sale Order.

(g)    For the avoidance of doubt, nothing in this Agreement will restrict Sellers or their Affiliates from selling, disposing of or otherwise transferring any Excluded Assets (other than Available Contracts, which the Sellers may not terminate, amend or otherwise dispose of, or reject in the Cases, without Buyer's consent) or from settling, delegating or otherwise transferring any Excluded Liabilities, in each case, with the approval of the Bankruptcy Court, or from entering into discussions or agreements with respect to the foregoing.

7.3    Bankruptcy Milestones. The Sellers shall achieve the following milestones by the dates set forth below (or such later date as may be agreed by Buyer) (collectively, the "Bankruptcy Milestones"):

(a)    On the Petition Date, the Debtors shall file a motion with the Bankruptcy Court seeking approval of the DIP Facility.

(b)      On or before the date that is two (2) days after the Petition Date, the Debtors shall have filed the Bidding Procedures Motion with the Bankruptcy Court.

(c)      On or before the date that is three (3) days after the Petition Date, the Bankruptcy Court shall have entered the Interim DIP Order.

(d)      On or before the date that is twenty-five (25) days after the Petition Date, the Bankruptcy Court shall have entered the Bidding Procedures Order and the Final DIP Order.

(e)      On or before the date that is fifty-five (55) days after the Petition Date, the Bid Deadline (as defined in the Bidding Procedures Order) shall have occurred.

(f)      On or before the date that is sixty (60) days after the Petition Date, the Debtors shall have commenced the Auction, if necessary.

(g)      On or before the date that is seventy-one (71) days after the Petition Date, the Bankruptcy Court shall have entered the Sale Order.

(h)      On or before the date that is ninety (90) days after the Petition Date, the Closing shall have occurred.

## ARTICLE VIII
## CONDITIONS TO OBLIGATIONS OF THE PARTIES

8.1      <u>Conditions Precedent to Obligations of Buyer</u>. The obligation of Buyer to consummate the Transactions is subject to the satisfaction (or waiver by Buyer in Buyer's sole discretion) on or prior to the Closing Date of each of the following conditions:

(a)      <u>Accuracy of Representations and Warranties</u>. The representations and warranties of the Sellers contained in <u>Section 4.1</u> (Organization and Good Standing), <u>Section 4.2</u> (Power and Authority), <u>Section 4.3</u> (Foreign Subsidiaries) and <u>Section 4.15</u> (Financial Advisors) shall be true and correct on the date hereof and on and as of the Closing Date, with the same force and effect as though such representations and warranties had been made on and as of the Closing Date (except to the extent that any such representation or warranty is expressly made as of a specified date). All other representations and warranties of the Sellers contained in <u>Article IV</u> shall be true and correct on the date hereof and as of the Closing Date (except to the extent that any such representation or warranty is expressly made as of a specified date), except where the failure of any such representations or warranties to be true and correct (without giving effect to any limitations to "material" or "Material Adverse Effect"), either individually or in the aggregate, has resulted in or would reasonably be expected to result in a Material Adverse Effect.

(b)      <u>Performance of Obligations</u>. Each of the Sellers shall have performed in all material respects all obligations and agreements contained in this Agreement required to be performed by it on or prior to the Closing Date.

(c)      [Reserved.]

(d)    <u>DIP Financing</u>. The DIP Documents shall have each been approved by the Bankruptcy Court pursuant to the Final DIP Order, which shall be in form and substance acceptable to Buyer.

(e)    <u>No Material Adverse Effect</u>. There shall have been no Material Adverse Effect from the Agreement Date through the Closing Date.

(f)    <u>No Challenges to Credit Bid</u>. As of the expiration of the Challenge Period (as defined in the Interim DIP Order), there shall be no pending challenge or contest to the validity, amount, perfection or priority of the DIP Documents, the Loan Documents or other Claims of Buyer or Administrative Agent (as applicable) thereunder that would prevent Buyer's credit bid the Credit Bid Amount, unless any such challenge or contest shall have been resolved to the reasonable satisfaction of Buyer in its sole discretion.

(g)    <u>Deliverables</u>. The Sellers shall have delivered, or caused to be delivered, to Buyer each deliverable required pursuant to <u>Section 3.1(b)</u>.

(h)    <u>Bidding Procedures Order</u>. The Bankruptcy Court shall have entered the Bidding Procedures Order, which Order shall not be subject to a stay or otherwise been vacated.

(i)    <u>Sale Order</u>. The Bankruptcy Court shall have entered the Sale Order, which Order shall have become a Final Order.

(j)    <u>No Default</u>. The DIP Documents shall be in full force and effect, and there shall be no outstanding Events of Default (as defined in the DIP Documents) that materially impair the Buyer's ability to consummate the Transactions described herein.

8.2    <u>Conditions Precedent to the Obligations of the Sellers</u>. The obligation of the Sellers to consummate the Transactions is subject to the satisfaction (or waiver by the Sellers) at or prior to the Closing Date of each of the following conditions:

(a)    <u>Accuracy of Representations and Warranties</u>. The representations of Buyer contained in <u>Section 5.1</u> (Organization and Good Standing), <u>Section 5.2</u> (Power and Authority), and <u>Section 5.6</u> (Financial Advisors) shall be true and correct on the date hereof and on and as of the Closing Date, with the same force and effect as though such representations and warranties had been made on and as of the Closing Date (except to the extent that any such representation or warranty is expressly made as of a specified date). All other representations and warranties contained in <u>Article V</u> shall be true and correct on the date hereof and as of the Closing Date (except to the extent that any such representation or warranty is expressly made as of a specified date), except where the failure of any such representations or warranties to be true and correct (without giving effect to any limitations to "material" or similar qualifier), either individually or in the aggregate, has resulted in or would reasonably be expected to have an adverse effect on Buyer's ability to perform its obligations under this Agreement in any material respect.

(b)    <u>Performance of Obligations</u>. Buyer and Administrative Agent shall have performed in all material respects all obligations and agreements contained in this Agreement required to be performed by it prior to or on the Closing Date.

(c)     <u>Deliverables</u>. Buyer shall have delivered to the Sellers each deliverable required pursuant to <u>Section 3.1(c)</u>.

(d)     <u>Bidding Procedures Order</u>. The Bankruptcy Court shall have entered the Bidding Procedures Order, which Order shall not be subject to a stay or otherwise been vacated.

(e)     <u>Sale Order</u>. The Bankruptcy Court shall have entered the Sale Order, which Order shall not be subject to a stay or otherwise been vacated.

8.3     <u>Conditions Precedent to Obligations of Buyer and the Sellers</u>. The respective obligations of Buyer and the Sellers to consummate the Transactions are subject to the fulfillment, on or prior to the Closing Date, of the condition (which may be waived by the Parties in whole or in part to the extent permitted by applicable Law) that (a) no provision of any applicable Law or Order enacted, entered, promulgated, enforced or issued by any Governmental Entity shall be in effect that prevents, renders illegal or otherwise prohibits the sale and purchase of the Purchased Assets or any of the other Transactions, and (b) the waiting period applicable to the transactions contemplated by this Agreement under the HSR Act and any other applicable Antitrust Laws, if required, shall have expired or early termination shall have been granted.

8.4     <u>Frustration of Closing Conditions</u>. Upon the occurrence of the Closing, any condition set forth in <u>Article VIII</u> that was not satisfied as of the Closing will be deemed to have been waived for all purposes by the Party having the benefit of such condition as of and after the Closing. Neither the Sellers nor Buyer may rely on the failure of any condition to their respective obligations to consummate the Transactions set forth in <u>Section 8.1</u>, <u>Section 8.2</u> or <u>Section 8.3</u>, as the case may be, to be satisfied if such failure was caused by such Party's failure to comply with or breach of any provision of this Agreement.

## ARTICLE IX
## TERMINATION

9.1     <u>Termination of Agreement</u>. This Agreement may be terminated and the Transactions abandoned at any time prior to the Closing:

(a)     by written agreement of the Sellers and Buyer.

(b)     by Buyer, if:

(i)     any Bankruptcy Milestone is not timely satisfied in accordance with <u>Section 7.3</u>;

(ii)     there shall have been a breach by the Sellers of any of their representations, warranties, covenants or agreements contained in this Agreement, which breach would result in the failure to satisfy one or more of the conditions set forth in <u>Section 8.1</u>, and such breach shall be incapable of being cured or, if capable of being cured, shall not have been cured by the earlier of (A) ninety-one (91) days following the date hereof (or such later date as the Parties may agree upon in writing, the "<u>Outside Date</u>") or twenty (20) Business Days after written notice thereof shall have been received by the Sellers, provided that the right to terminate this Agreement pursuant to this <u>Section 9.1(b)(ii)</u> will not be

available to Buyer at any time that Buyer is in material breach of any covenant, representation or warranty hereunder;

(iii)     the Cases are (A) converted to cases under chapter 7 of the Bankruptcy Code or (B) dismissed prior to the Closing;

(iv)     a trustee or examiner is appointed under section 1104 of the Bankruptcy Code;

(v)     by either Buyer or the Sellers, if the DIP Documents are terminated, pursuant to the terms therein or as set forth in any DIP Orders;

(vi)     Buyer is not the winning bidder at the Auction for any of the Purchased Assets;

(vii)     any Seller enters into a definitive agreement with respect to an Alternate Transaction or an Order of the Bankruptcy Court or other court of competent jurisdiction is entered approving an Alternate Transaction;

(viii)     any insolvency Proceeding or similar Proceeding is commenced by a Seller or any of their respective Affiliates with respect to any Foreign Subsidiary; or

(ix)     by either Buyer or the Sellers, if the Closing shall not have occurred by the Outside Date.

(c)     by the Sellers, if:

(i)     there shall have been a breach by Buyer or Administrative Agent of any of its representations, warranties, covenants or agreements contained in this Agreement, which breach would result in the failure to satisfy one or more of the conditions set forth in Section 8.2, and such breach shall be incapable of being cured or, if capable of being cured, shall not have been cured within the earlier of (A) Outside Date or (B) twenty (20) Business Days after written notice thereof shall have been received by Buyer;

(ii)     any Seller enters into a definitive agreement with respect to an Alternate Transaction that is a Competing Qualified Bid, or an Order of the Bankruptcy Court or other court of competent jurisdiction is entered approving an Alternate Transaction that is a Competing Qualified Bid; or

(iii)     (A) (i) all of the conditions set forth in Sections 8.1 and 8.3 are satisfied or waived by Buyer as of the Closing Date (other than those conditions that, by their nature, can only be satisfied as of the Closing Date, but which would be satisfied as of the Closing Date); (ii) Sellers have irrevocably notified Buyer in writing that (A) they are ready, willing and able to consummate the transactions contemplated by this Agreement, and (B) all conditions set forth in Section 8.2 have been satisfied (other than those conditions that, by their nature, can only be satisfied as of the Closing Date, but which would be satisfied as of the Closing Date) or that they are willing to irrevocably waive any unsatisfied conditions set forth in Section 8.2; (iii) Sellers have given Buyer written Notice at least two (2)

Business Days prior to such termination stating Sellers' intention to terminate this Agreement pursuant to this <u>Section 9.1(c)(iii)</u>; and (iv) Buyer does not provide, or cause to be provided, Sellers with sufficient funds to complete the transactions contemplated by this Agreement at the time which the Closing should have occurred by the expiration of the two (2) Business Day period contemplated by clause (iii) hereof or (B) if Sellers or their board of directors (or similar governing body) determine in good faith that proceeding with the transaction contemplated by this Agreement would violate Law or be inconsistent with their fiduciary obligations under Law; or

(d)    by either Buyer or the Sellers, if any Governmental Entity shall have enacted or issued a Law or Order or taken other action permanently restraining, prohibiting or enjoining any of the Parties from consummating the Transactions; provided that the right to terminate this Agreement pursuant to this <u>Section 9.1(d)</u> will not be available to any party at any time that such party is in material breach of any covenant, representation or warranty hereunder.

9.2    <u>Consequences of Termination</u>.

(a)    If either Buyer, on the one hand, or Sellers, on the other hand, desire to terminate this Agreement pursuant to <u>Section 9.1</u>, such Party (or Parties, as applicable) shall give written notice of such termination to the other Parties. Upon delivery of such notice of termination, this Agreement will become void and have no further force and effect and all further obligations of the Parties to each other under this Agreement will terminate without further obligation or liability of the Parties.

(b)    Notwithstanding anything to the contrary in this Agreement, if this Agreement is terminated pursuant to <u>Section 9.1(b)(vi)</u>, <u>Section 9.1(b)(vii)</u> or <u>Section 9.1(c)(ii)</u>, then Buyer shall be entitled to payment of the Expense Reimbursement, if approved by the Bankruptcy Court, upon consummation of an Alternate Transaction from the proceeds of such Alternate Transaction.

(c)    Notwithstanding anything to the contrary in this Agreement, if this Agreement is terminated for any reason other than pursuant to <u>Section 9.1(b)(vi)</u>, <u>Section 9.1(b)(vii)</u>, <u>Section 9.1(c)(i)</u>, <u>Section 9.1(c)(ii)</u> or <u>Section 9.1(c)(iii)(A)</u>, then Buyer shall be entitled to payment of the Expense Reimbursement no later than two (2) Business Days following such termination.

(d)    Notwithstanding the foregoing set forth in this <u>Section 9.2</u>, <u>Section 1.1</u> (Defined Terms), <u>Section 6.5</u> (Public Announcements), <u>Section 7.1</u> (Expense Reimbursement), this <u>Section 9.2</u> (Consequences of Termination) and <u>Article X</u> (Miscellaneous) shall survive any termination of this Agreement.

(e)    Nothing in this <u>Section 9.2</u> shall relieve any Party of any liability for an intentional breach of this Agreement prior to the date of termination.

# ARTICLE X
# MISCELLANEOUS

10.1    <u>Expenses</u>. Except as set forth in this Agreement, the Credit Documents or the Sale Order, and whether or not the Transactions are consummated, each Party shall bear all costs and expenses incurred or to be incurred by such Party in connection with this Agreement and the consummation of the Transactions.

10.2    <u>Assignment</u>. Neither this Agreement nor any of the rights or obligations hereunder may be assigned by Sellers without the prior written consent of Buyer, or by Buyer or the Administrative Agent without the prior written consent of Sellers; <u>provided, however</u>, that Buyer may assign any or all of its rights and/or liabilities hereunder (or any document delivered by Buyer pursuant hereto) to one or more Affiliates of Buyer, or to any party which has received a contribution of the outstanding balance under the Prepetition Financing Agreement equal to the Credit Bid Amount, in the aggregate, which assignment shall not relieve Buyer of its obligations hereunder. Subject to the foregoing, this Agreement shall be binding upon and inure to the benefit of the Parties and their respective successors and permitted assigns; <u>provided, further,</u> that Sellers may transfer or assign such rights and obligations under this Agreement to a liquidation trust or similar vehicle under a confirmed chapter 11 plan of liquidation in the Cases.

10.3    <u>Parties in Interest</u>. This Agreement shall be binding upon and inure solely to the benefit of the Sellers and Buyer, and nothing in this Agreement, express or implied, is intended to or shall confer upon any other Person any rights, benefits or remedies of any nature whatsoever under or by reason of this Agreement except as expressly set forth herein. Without limiting the foregoing, no direct or indirect holder of any equity interests or securities of either the Sellers or Buyer (whether such holder is a limited or general partner, member, stockholder or otherwise), nor any Affiliate of either the Sellers or Buyer, nor any Representative, or controlling Person of each of the Parties and their respective Affiliates, shall have any liability or obligation arising under this Agreement or the Transactions.

10.4    <u>Matters Related to the Administrative Agent</u>.

(a)    Each of the Parties acknowledges and agrees that none of the Sellers' title to, control of or possession of any of the Purchased Assets, or any of the Sellers' obligations in respect of any of the Assumed Liabilities, shall be transferred to or assumed by the Administrative Agent. Each Seller and Buyer, on behalf of itself and its respective Affiliates, acknowledges and agrees that neither the Administrative Agent nor any of its Affiliates (other than Buyer) shall have any Liability in the event of any breach by Buyer or any Seller of any of its representations, warranties, covenants, obligations or other agreements under this Agreement, including its obligations to consummate the Transactions in accordance with the terms of any document contemplated by this Agreement, other than as a result of or arising out of the Administrative Agent's intentional fraud or willful misconduct. Each Seller and Buyer, on behalf of itself and its respective Affiliates, further acknowledges and agrees that neither the Administrative Agent nor any of its Affiliates (other than Buyer) shall in any way be deemed to be attributed or otherwise responsible for any of the representations, warranties, covenants, obligations or other agreements of Buyer or the Sellers under any document contemplated by this Agreement, including any obligation of Buyer or the Sellers hereunder to make payments of any kind, provide written

approvals or make deliveries. Each Seller and Buyer, on behalf of itself and its respective Affiliates, further acknowledges and agrees that neither the Administrative Agent nor any of its Affiliates shall have any Liability or other obligation in respect of any action taken or not taken by the Administrative Agent in connection with any document contemplated by this Agreement, other than as a result of or arising out of the Administrative Agent's intentional fraud or willful misconduct. Each Seller and Buyer, on behalf of itself and its respective Affiliates, further acknowledges and agrees that Buyer, and not the Administrative Agent, has negotiated the terms of the purchase set forth herein, including the assets being purchased, the Liabilities being assumed, the Purchase Price and all the terms of this Agreement relating to the purchase by Buyer, and the Administrative Agent shall bear no responsibility and incur no Liability whatsoever to any Person solely by virtue of being a Party.

10.5    Risk of Loss. The Sellers will bear all risk of loss occurring to or upon any portion of the Purchased Assets prior to the Closing Date. In the event that any material portion of any Purchased Assets is damaged or destroyed prior to Closing Date, then, with respect to such Purchased Assets, Buyer may, at Buyer's option, either (i) proceed to close notwithstanding the damage or destruction of such Purchased Assets or (ii) exclude such Purchased Assets, in which event Buyer shall have no obligation to close if as a consequence of the exclusion of such Purchased Assets any condition to Closing in Section 8.1 would not be satisfied unless such loss is covered by insurance or cause of action against a third-party. If Buyer closes notwithstanding an unrepaired or unrestored loss to a Purchased Asset, the Sellers will deliver and/or assign to Buyer any insurance proceeds with respect to such damage or destruction, and all claims against third parties relating thereto.

10.6    Notices. All notices, demands, requests, waivers, consents, approvals or other communications (collectively, "Notices") required or permitted to be given hereunder or that are given with respect to this Agreement shall be in writing and shall be personally served, delivered by a nationally recognized overnight delivery service with charges prepaid, or transmitted by hand delivery or electronic mail, addressed as set forth below, or to such other address as such Party shall have specified most recently by written Notice. Notice shall be deemed given on the date of service or transmission if personally served or transmitted by electronic mail with confirmation of receipt (excluding "out of office" or similar automated replies); provided, however, that, if delivered or transmitted on a day other than a Business Day (or if transmitted by electronic mail after 5:00 pm Eastern Time), notice shall be deemed given on the next Business Day. Notice otherwise sent as provided herein shall be deemed given on the next Business Day following timely deposit of such Notice with an overnight delivery service:

| | |
|---|---|
| If to the Sellers: | Near Intelligence, Inc. |
| | 100 W Walnut St., Suite A-4 |
| | Pasadena, CA 91124 |
| | Attention: Legal Department |
| | Email:legal@near.com |
| | |
| With a copy (which shall not constitute notice) to: | Willkie Farr & Gallagher LLP |
| | 787 Seventh Avenue |
| | New York, NY 10019 |

<u>Attention</u>: Rachel Strickland; Thomas Mark;
Andrew Mordkoff; Erin Kinney
<u>Email</u>: rstrickland@willkie.com;
tmark@willkie.com; amordkoff@willkie.com;
ekinney@willkie.com

If to Buyer or
Administrative Agent:

Blue Torch Finance LLC
c/o Blue Torch Capital LP
150 East 58th Street, 39th Floor
New York, NY 10155
<u>Email</u>: BlueTorchAgency@alterdomus.com

With a copy (which shall
not constitute notice) to:

King & Spalding LLP
1185 Avenue of the Americas, 34th Floor
New York, NY 10036
<u>Attention</u>: Roger G. Schwartz
           Timothy M. Fesenmyer
<u>Email</u>:   rschwartz@kslaw.com
           tfesenmyer@kslaw.com

Rejection of or refusal to accept any Notice, or the inability to deliver any Notice because of changed address of which no Notice was given, shall be deemed to be receipt of the Notice as of the date of such rejection, refusal or inability to deliver.

10.7   <u>Entire Agreement; Amendments and Waivers</u>. This Agreement and all agreements entered into pursuant hereto and thereto and all certificates and instruments delivered pursuant hereto and thereto constitute the entire agreement between the Parties pertaining to the subject matter hereof and supersede all prior agreements, understandings, negotiations, and discussions, whether oral or written, of the Parties; <u>provided</u>, that nothing herein shall modify or alter the terms, rights or obligations of the Administrative Agent, the Lenders or the Sellers under the Prepetition Loan Documents or the DIP Documents prior to Closing. This Agreement may be amended, supplemented or modified, and any of the terms, covenants, representations, warranties or conditions may be waived, only by a written instrument executed by Buyer and Sellers, or in the case of a waiver, by the Party waiving compliance. No waiver of any of the provisions of this Agreement shall be deemed or shall constitute a waiver of any other provision hereof (whether or not similar), and no such waiver shall constitute a continuing waiver unless otherwise expressly provided. No failure on the part of any Party to exercise, and no delay in exercising, any right, power or remedy hereunder shall operate as a waiver thereof, nor shall any single or partial exercise of such right, power or remedy by such Party preclude any other or further exercise thereof or the exercise of any other right, power or remedy.

10.8   <u>Counterparts</u>. This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, and all of which together shall constitute one and the same instrument. Counterparts to this Agreement may be delivered via electronic delivery, "pdf" or

facsimile. In proving this Agreement, it shall not be necessary to produce or account for more than one such counterpart signed by the Party against whom enforcement is sought.

10.9    Invalidity. If any one or more of the provisions contained in this Agreement or in any other instrument referred to herein, shall, for any reason, be held to be invalid, illegal or unenforceable in any respect, the Parties shall negotiate in good faith to modify this Agreement, to ensure that this Agreement shall reflect as closely as practicable the intent of the Parties on the date hereof. If the final judgment of a court of competent jurisdiction or other Governmental Entity declares that any term or provision hereof is invalid, illegal or unenforceable, the Parties agree that the court making such determination will have the power to reduce the scope, duration, area or applicability of the term or provision, to delete specific words or phrases, or to replace any invalid, illegal or unenforceable term or provision with a term or provision that is valid, legal and enforceable and that comes closest to expressing the intention of the invalid, illegal or unenforceable term or provision.

10.10    Governing Law. This Agreement, and any Proceeding that may be based upon, arise out of or relate or be incidental to the Transactions, this Agreement, the negotiation, execution, performance or consummation of the foregoing or the inducement of any Party to enter into the foregoing, whether for breach of Contract, tortious conduct or otherwise, and whether now existing or hereafter arising (each, a "Transaction Dispute"), will be exclusively governed by and construed and enforced in accordance with the internal Laws of the State of Delaware, without giving effect to any Law or rule that would cause the Laws of any jurisdiction other than the State of Delaware to be applied, except to the extent that such Laws are superseded by the Bankruptcy Code.

10.11    Dispute Resolution; Consent to Jurisdiction.

(a)    Without limiting any Party's right to appeal any order of the Bankruptcy Court, (i) the Bankruptcy Court shall retain exclusive jurisdiction to enforce the terms of this Agreement and to decide any Transaction Dispute, and (ii) any and all proceedings related to the foregoing shall be filed and maintained only in the Bankruptcy Court, and the Parties hereby consent to and submit to the jurisdiction and venue of the Bankruptcy Court and shall receive notices at such locations as indicated in Section 10.6; provided, however, upon the closing of the Cases (except for any matter(s) with respect to the Sellers and/or the Cases in which the Bankruptcy Court retains jurisdiction with respect to such matter with respect to Sellers and/or the Cases), or if the Bankruptcy Court is unwilling or unable to hear such Transaction Dispute, then, the Parties agree to unconditionally and irrevocably submit to the exclusive jurisdiction of the U.S. District Court for the District of Delaware sitting in New Castle County or the courts of the State of Delaware sitting in New Castle County and any appellate court from any thereof, for the resolution of any such Transaction Dispute. In that context, and without limiting the generality of the foregoing, each Party irrevocably and unconditionally: (i) submits for itself and its property to the exclusive jurisdiction of such courts with respect to any Transaction Dispute and for recognition and enforcement of any judgment in respect thereof, and agrees that all claims in respect of any Transaction Dispute shall be heard and determined in such courts; (ii) agrees that venue would be proper in such courts, and waives any objection that it may now or hereafter have that any such court is an improper or inconvenient forum for the resolution of any Transaction Dispute; and (iii) agrees that Notice demand in accordance with Section 10.6, will be effective

service of process; provided, however, that nothing herein will be deemed to prevent a Party from making service of process by any means authorized by the Laws of the State of Delaware.

(b)     The foregoing consent to jurisdiction will not constitute submission to jurisdiction or general consent to service of process in the State of Delaware for any purpose except with respect to any Transaction Dispute.

10.12    WAIVER OF RIGHT TO TRIAL BY JURY. EACH PARTY HEREBY WAIVES TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW ANY RIGHT THEY MAY HAVE TO A TRIAL BY JURY IN RESPECT OF ANY PROCEEDING IN CONNECTION WITH A TRANSACTION DISPUTE.

10.13    Specific Performance. Each Party acknowledges and agrees that each other Party would be damaged irreparably in the event that a Party does not perform its obligations under this Agreement in accordance with its specific terms or otherwise breaches this Agreement, so that, in addition to any other remedy that Buyer or the Sellers may have under law or equity, each Party shall be entitled to injunctive relief to prevent any breaches of the provisions of this Agreement by the other Parties and to enforce specifically this Agreement and the terms and provisions hereof.

10.14    Third Party Beneficiaries. Nothing in this Agreement, express or implied, is intended to confer upon any other Person any rights or remedies of any nature under or by reason of this Agreement, except as expressly provided herein, including Section 10.17.

10.15    Counting. If the due date for any action to be taken under this Agreement (including the delivery of Notices) is not a Business Day, then such action shall be considered timely taken if performed on or prior to the next Business Day following such due date.

10.16    Survival. Except as expressly set forth in this Agreement to the contrary, all representations and warranties and covenants of Buyer and the Sellers, respectively, contained in this Agreement or in any document delivered pursuant hereto shall not survive the Closing Date and thereafter shall be of no further force and effect. Notwithstanding the foregoing, all covenants and agreements set forth in this Agreement, which by their terms would require performance after the Closing Date, shall survive until fully performed or until such covenant or agreement expires by its terms.

10.17    Non-Recourse. All claims, Liabilities, Proceedings, or causes of action (whether in contract or in tort, in law or in equity, or granted by statute) that may be based upon, in respect of, arise under, out or by reason of, be connected with, or relate in any manner to a Transaction Dispute, may be made only against (and are expressly limited to) the entities that are expressly identified as parties hereto in the preamble to this Agreement or, if applicable, their permitted assignees (collectively, the "Contracting Parties"). No Person who is not a Contracting Party, including any past, present or future director, officer, employee, incorporator, member, partner, manager, equityholder, Affiliate, agent, attorney, or representative of, and any financial advisor or lender to, any Contracting Party (other than the Persons listed on Schedule 10.17), or any director, officer, employee, incorporator, member, partner, manager, equityholder, Affiliate, agent, attorney, or representative of, and any financial advisor or lender to, any of the foregoing (collectively, the "Non-Recourse Persons"), shall have any Liability (whether in contract or in tort,

in law or in equity, or granted by statute) for any claims, Liabilities, or causes of action, arising under, out of, in connection with, or related in any manner to a Transaction Dispute; and, to the maximum extent permitted by Law, each Contracting Party hereby waives and releases all such claims, Liabilities, and causes of action, against any such Non-Recourse Persons.

10.18    Preparation of this Agreement. Buyer and the Sellers hereby acknowledge that (a) Buyer and the Sellers jointly and equally participated in the drafting of this Agreement and all other agreements contemplated hereby, (b) Buyer and the Sellers have been adequately represented and advised by legal counsel with respect to this Agreement and the Transactions, and (c) no presumption shall be made that any provision of this Agreement shall be construed against either Party by reason of such role in the drafting of this Agreement and any other agreement contemplated hereby.

10.19    Releases. Effective as of the Closing, each of the Sellers on their own behalf and on behalf of their past, present, and future predecessors, successors and assigns hereby unconditionally, irrevocably, and fully forever release, remise, acquit, relinquish, irrevocably waive, and discharge, in their capacity as purchaser of the Purchased Assets, the Buyer, Administrative Agent and the Lenders, and each of their respective affiliates, former, current, or future officers, employees, directors, agents, representatives, owners, members, partners, financial advisors, legal advisors, shareholders, managers, consultants, accountants, attorneys, affiliates, assigns, and predecessors in interest, each in their capacity as such, of and from any and all Claims, demands, liabilities, responsibilities, disputes, remedies, causes of action, indebtedness and obligations, rights, assertions, allegations, actions, suits, controversies, proceedings, losses, damages, injuries, attorneys' fees, costs, expenses, or judgments of every type, whether known, unknown, asserted, unasserted, suspected, unsuspected, accrued, unaccrued, fixed, contingent, pending, or threatened, including all legal and equitable theories of recovery, arising under common law, statute, or regulation or by contract, of every nature and description that exist on the date hereof with respect to or relating to this Agreement and the Transaction, in each case, in connection with any event, conduct or circumstance occurring on or prior to the Closing.

10.20    Schedules. The Sellers' Disclosure Schedules have been arranged for purposes of convenience in separately numbered sections corresponding to the sections of this Agreement; provided that each section of the Sellers' Disclosure Schedules will be deemed to incorporate by reference all information disclosed in any other section of the Sellers' Disclosure Schedules, and any disclosure in the such Seller's Disclosure Schedules will be deemed a disclosure against any representation or warranty set forth in this Agreement. Capitalized terms used in the Sellers' Disclosure Schedules and not otherwise defined therein have the meanings given to them in this Agreement. The specification of any dollar amount or the inclusion of any item in the representations and warranties contained in this Agreement, the Sellers' Disclosure Schedules or the attached exhibits is not intended to imply that the amounts, or higher or lower amounts, or the items so included, or other items, are or are not required to be disclosed (including whether such amounts or items are required to be disclosed as material or threatened) or are within or outside of the Ordinary Course of Business, and no Party will use the fact of the setting of the amounts or the fact of the inclusion of any item in this Agreement, the Sellers' Disclosure Schedules or exhibits in any dispute or controversy between the Parties as to whether any obligation, item or matter not set forth or included in this Agreement, the Sellers' Disclosure Schedules or exhibits is or is not required to be disclosed (including whether the amount or items are required to be disclosed as

material or threatened) or are within or outside of the Ordinary Course of Business. In addition, matters reflected in the Sellers' Disclosure Schedules are not necessarily limited to matters required by this Agreement to be reflected in the Sellers' Disclosure Schedules. Such additional matters are set forth for informational purposes only and do not necessarily include other matters of a similar nature. No information set forth in the Sellers' Disclosure Schedules will be deemed to broaden in any way the scope of the Parties' representations and warranties. Any description of any agreement, document, instrument, plan, arrangement or other item set forth on any Sellers' Disclosure Schedule is qualified in its entirety by the terms of such agreement, document, instrument, plan, arrangement, or item which terms will be deemed disclosed for all purposes of this Agreement. The information contained in this Agreement, in the Sellers' Disclosure Schedules and exhibits hereto is disclosed solely for purposes of this Agreement, and no information contained herein or therein will be deemed to be an admission by any Party to any third party of any matter whatsoever, including any violation of Law or breach of Contract.

10.21   Fiduciary Obligation. Nothing in this Agreement, or any document related to the transactions contemplated hereby, will require any Seller or any of their respective managers, officers or members, in each case, in their capacity as such, to take any action, or to refrain from taking any action, that the board of directors or managers (or other governing body) of such Seller has determined, in good faith after consultation with legal counsel and independent financial advisors, would be a violation of such Person's fiduciary obligations or applicable Law. For the avoidance of doubt, Sellers retain the right to pursue any transaction or restructuring strategy that, in Sellers' business judgment, will maximize the value of their estates.

*[Remainder of Page Intentionally Left Blank]*

IN WITNESS WHEREOF, this Agreement has been duly executed and delivered by the duly authorized officers of the Sellers, Buyer and the Administrative Agent as of the date first above written.

**SELLERS:**

**Near Intelligence, Inc.**

By: _John Faieta_

Name: John Faieta

Title: Chief Financial Officer

**Near Intelligence LLC**

By: _John Faieta_

Name: John Faieta

Title: Chief Financial Officer

**Near North America Inc.**

By: _John Faieta_

Name: John Faieta

Title: Vice President, Chief Financial Officer, Treasurer and Secretary

**Near Intelligence Pte. Ltd.**

By: _John Faieta_

Name: John Faieta

Title: Director

*[Signature Page to Asset Purchase Agreement]*

DocuSign Envelope ID: E15C1AC8-AF47-49E7-98A3-H47D1D34FA80L

**383**

**Near Intelligence SAS,** solely for purposes of Section 6.1 and Section 6.2 (and, in each case, the related definitions)

By:_____

Name: John Faieta

Title: Director

**384**

IN WITNESS WHEREOF, this Agreement has been duly executed and delivered by the duly authorized officers of the Sellers, Buyer and the Administrative Agent as of the date first above written.

**SELLERS:**

**Near Intelligence, Inc.**

By:_____
Name:
Title:


**Near Intelligence LLC**

By:_____
Name:
Title:


**Near North America Inc.**

By:_____
Name:
Title:

**Near Intelligence Pte. Ltd.**

By:_____
Name:
Title:


**Near Intelligence Pty. Ltd.**, solely for purposes of Section 6.1 and Section 6.2 (and, in each case, the related definitions)

By:_____
Name: Gladys Kong
Title: Authorized Person

**BUYER:**

**BTC Near HoldCo LLC**

By: _____
Name: Kevin Genda
Title: Authorized Signatory

**386**

**ADMINISTRATIVE          AGENT          AND COLLATERAL AGENT:**

**Blue Torch Finance LLC**, solely for purposes of Section 3.2, Section 5.2(b), Section 10.2, Section 10.4, and Sections 10.7 to 10.19 (and, in each case, the related definitions)

By: _____
Name: Kevin Genda
Title: Authorized Signatory

Case 23-1-1962-TMH   Doc 291-1   Filed 02/22/24   Page 71 of 100

## Exhibit 2

Near Intelligence Inc., et al.
($USD)

**388**

NOTE: Any Government Contracts Listed Herein Will Be Assigned Only to the Extent Such Assignment is Permissible by Law and Their Terms Therein

NOTE: For avoidance of doubt, only the contracts (and associated cure amounts) of the Debtors are set out below and not contracts of the Foreign Subsidiaries, which will be assigned and assumed by Buyer indirectly through the acquisition of the Equity Interests of such Foreign Subsidiaries.

NOTE: Estimated Cure Amounts Represent Total Prepetition Obligations Owed to the Contract Counterparty Under One or More of the Contracts Listed Herein

| | | | | Current Total: | $3,777,584 |
|---|---|---|---|---|---|

| ID | Debtor Name | Contract Counterparty | Contract Title & Description | Date of Contract or Lease | Current Estimated Cure |
|---|---|---|---|---|---|
| 1623 | Near Intelligence LLC | Amazon Web Services | Agreement | 05/31/23 | 2,706,506 |
| 1778 | Near Intelligence Pte. Ltd. | Magnite, Inc. | Assignment of Agreement - International | 03/14/22 | 407,035 |
| 1819 | Near North America, Inc. | PICKWELL SP ZOO | Mutual Data License Agreement | 12/30/20 | 135,484 |
| 1665 | Near North America Inc | Digital Envoy, Inc. | Agreement | 01/01/23 | 122,706 |
| 1738 | Near Intelligence Pte. Ltd. | INMOBI PTE LTD | Inmobi Near Agreement | 12/05/18 | 109,156 |
| 1862 | Near Intelligence Pte. Ltd. | Unruly Group LLC (now Nexxen Group LLC) | Real Time Bidding Buyer Agreement | 12/20/22 | 100,690 |
| 1754 | Near North America, Inc. | Irys, Inc | Data Supplier Agreement | 08/05/19 | 72,000 |
| 1817 | Near North America Inc | Passby Technologies Limited | Agreement | 11/01/21 | 32,581 |
| 1624 | Near Intelligence Pte. Ltd. | Anthony Fitzgerald (ASLF) | Novation Acknowledgement | 03/01/22 | 26,469 |
| 1885 | Near North America, Inc. | Zoom Video Communications, Inc. | Agreement | 07/26/22 | 12,229 |
| 1785 | Near North America Inc | MBI International | Agreement | 04/05/22 | 8,848 |
| 1811 | Near Intelligence Pte Ltd | Oracle Corporation Singapore Pte Ltd1 | Agreement | 09/24/18 | 7,856 |
| 842 | Near North America Inc | Rove Marketing Inc. | Agreement and all relevant Service Orders | 01/01/23 | 22,000 |
| 1607 | Near Intelligence, LLC | Airbiz Offshore Private Limited (SG) | Agreement | 06/01/23 | 3,935 |
| 1812 | Near Intelligence Pte. Ltd. | Oracle Corporation UK Limited1 | Agreement | 11/29/21 | 3,774 |
| 1841 | Near North America Inc | Spatial.AI | Amendment Form | 01/01/21 | 2,213 |
| 1884 | Near North America, Inc. | Zayo | Amendment Form | 06/24/21 | 1,707 |
| 1732 | Near Intelligence Pte. Ltd. | Incubata Australia Pty Ltd | Novation Letter | 01/01/22 | 1,400 |
| 1709 | Near Intelligence Pte. Ltd. | Google Asia Pacific Pte Ltd | Agreement | 12/17/13 | 665 |
| 1774 | Near Intelligence Pte. Ltd. | M2K Advisors Pte Ltd | Agreement | 11/30/21 | 273 |
| 1682 | Near Intelligence Pte Ltd | ECRA Pte Ltd | Agreement | 11/22/21 | 56 |
| 1 | Near North America, Inc. | 36 Presents | Service Order for Data Sets | 05/15/19 | 0 |
| 2 | Near North America, Inc. | Accenture | Agreement | 09/01/21 | 0 |
| 3 | Near North America, Inc. | Activate Holdings Ltd. | Service Order | 07/26/22 | 0 |
| 4 | Near North America, Inc. | Activate Holdings Ltd. | Agreement | 07/01/22 | 0 |
| 5 | Near North America, Inc. | Acutely, Inc. | Service Order | 12/08/16 | 0 |
| 6 | Near North America, Inc. | Acutely, Inc. | Service Order | 04/05/17 | 0 |
| 7 | Near North America, Inc. | Acutely, Inc. | Service Order | 04/18/18 | 0 |
| 8 | Near North America, Inc. | Acutely, Inc. | Service Order | 11/20/18 | 0 |
| 9 | Near North America, Inc. | Acutely, Inc. | Service Order | 12/17/18 | 0 |
| 10 | Near North America, Inc. | Acutely, Inc. | Service Order | 02/26/19 | 0 |
| 11 | Near North America, Inc. | Acutely, Inc. | Service Order | 04/11/19 | 0 |
| 12 | Near North America, Inc. | Acutely, Inc. | Service Order | 04/12/19 | 0 |
| 13 | Near North America, Inc. | AdColony, Inc. | Service Order | 12/06/16 | 0 |
| 14 | Near North America, Inc. | Admatik SDN BHD | Agreement | 01/01/23 | 0 |
| 15 | Near Intelligence Pte. Ltd. | Admatik SDN BHD | Near Platform Data Usage and Services Agreement | 10/30/20 | 0 |
| 16 | Near Intelligence Pte. Ltd. | Admatik SDN BHD | Renewal CUM Amendment Agreement | 12/17/22 | 0 |
| 17 | Near North America, Inc. | Aelius Exploitation Technologies, LLC | Amendment #1 to Bundled Data Licensee Agreement | 08/01/20 | 0 |
| 18 | Near North America, Inc. | Affordable Dentures and Implants | Service Order | 09/09/19 | 0 |
| 19 | Near North America, Inc. | Affordable Dentures and Implants | Service Order | 09/12/19 | 0 |
| 20 | Near Intelligence Pte. Ltd. | Agoop Corp | Agreement | 08/28/23 | 0 |
| 21 | Near North America, Inc. | Ailevon Pacific Aviation Consulting | Service Order | 02/22/22 | 0 |
| 22 | Near North America, Inc. | Ailevon Pacific Aviation Consulting | Service Order for Near Data Sets | 03/02/23 | 0 |
| 23 | Near North America, Inc. | Ailevon Pacific Aviation Consulting | Invoice | 04/26/23 | 0 |
| 24 | Near North America, Inc. | AiPod | Service Order for Data Sets | 06/15/17 | 0 |
| 25 | Near North America, Inc. | Airsage, Inc. | Service Order #3 | 03/31/20 | 0 |

| 26 | Near North America, Inc. | Airsage, Inc. | Service Order | 01/29/21 | 0 |
| 27 | Near North America, Inc. | Airsage, Inc. | Amendedment to Data License Agreement | 12/29/21 | 0 |
| 28 | Near North America, Inc. | Airsage, Inc. | Service Order | 03/23/21 | 0 |
| 29 | Near North America, Inc. | AJR Media Group | Data License Agreement, 19 Data | 02/08/21 | 0 |
| 30 | Near North America, Inc. | AJR Media Group | Data License Agreemets, 19 to 21 data | | 0 |
| 31 | Near North America, Inc. | AJR Media Group | Service Order #SC120 | 02/07/21 | 0 |
| 32 | Near North America, Inc. | Akya (Konfid S.A. de C.V.) | Service Order - Vista Data Explorer | 07/10/22 | 0 |
| 33 | Near North America, Inc. | Akya (Konfid S.A. de C.V.) | Service Order | 09/01/23 | 0 |
| 34 | Near North America, Inc. | Albertsons Companies | Service Order for Data Sets | 11/17/17 | 0 |
| 35 | Near North America, Inc. | Alexander Babbage, Inc. | Bundled Reseller Agreement and all related Service Orders | 09/14/22 | 0 |
| 69 | Near North America, Inc. | Alexander Babbage, Inc. | Agreement and all related Service Orders | 01/01/23 | 0 |
| 70 | Near North America, Inc. | Alexander Babbage, Inc. | Bundled Reseller Agreement and all related Service Orders | 12/19/22 | 0 |
| 71 | Near North America, Inc. | Alexander Babbage, Inc. | Addendum to Bundled Reseller Agreement | 09/14/22 | 0 |
| 72 | Near North America, Inc. | Alexander Babbage, Inc. | Bundled Reseller Agreement and all related Service Orders | 09/14/22 | 0 |
| 73 | Near North America, Inc. | AlphaMap | Service Order | 08/01/22 | 0 |
| 79 | Near North America, Inc. | Altometer Business Intelligence | Agreement and all related Service Orders | 04/19/23 | 0 |
| 80 | Near North America, Inc. | Altscore | Service Order | 06/14/22 | 0 |
| 81 | Near North America, Inc. | Altscore | Service Order | 06/15/23 | 0 |
| 82 | Near North America, Inc. | Amaro Law Firm | Service Order | 09/14/20 | 0 |
| 83 | Near North America, Inc. | Amazon | Service Order | 09/15/17 | 0 |
| 84 | Near North America, Inc. | Amberoon | Service Order | 09/15/23 | 0 |
| 85 | Near North America, Inc. | American Dairy Queen Corp. | Service Order | 06/21/17 | 0 |
| 86 | Near North America, Inc. | American Realty Advisors | Service Order | 03/26/19 | 0 |
| 87 | Near North America, Inc. | American Student List Marketing | Service Order | 06/01/17 | 0 |
| 88 | Near North America, Inc. | Analytic Strategies LLC | Service Order | 09/27/19 | 0 |
| 89 | Near North America, Inc. | Apple Inc. | Agreement | 05/20/21 | 0 |
| 90 | Near North America, Inc. | Apple Inc. | Agreement | 06/17/21 | 0 |
| 91 | Near North America, Inc. | Apple Inc. | Purchase Order | 05/21/21 | 0 |
| 92 | Near North America, Inc. | Applied Post | Service Order | 12/31/21 | 0 |
| 93 | Near North America, Inc. | Area Research Associates | Service Order | 11/20/17 | 0 |
| 94 | Near North America, Inc. | Area Research Associates | Service Order | 10/05/15 | 0 |
| 95 | Near North America, Inc. | Argos Analytics | Service Order | 01/20/23 | 0 |
| 96 | Near North America, Inc. | Argos Analytics | Service Order | 10/10/22 | 0 |
| 97 | Near North America, Inc. | Argos Analytics | Service Order | 08/28/22 | 0 |
| 98 | Near North America, Inc. | Argos Analytics | Service Order | 10/11/22 | 0 |
| 99 | Near North America, Inc. | Argos Analytics | Service Order | 06/13/23 | 0 |
| 100 | Near North America, Inc. | Argos Analytics | Service Order | 08/17/23 | 0 |
| 101 | Near North America, Inc. | Argos Analytics / METAVERSO, S.A. | Service Order | 10/11/22 | 0 |
| 102 | Near North America, Inc. | Asset Strategies Group (ASG) | Service Order | 11/14/22 | 0 |
| 103 | Near North America, Inc. | Associated Wholesale Grocers, Inc. | Service Order | 08/24/18 | 0 |
| 104 | Near North America, Inc. | Atkins Group | CEL Report | 11/22/19 | 0 |
| 105 | Near North America, Inc. | Atkins Group | CEL Report | 10/02/20 | 0 |
| 106 | Near North America, Inc. | Atkins Group | CEL Report | 09/02/20 | 0 |
| 107 | Near North America, Inc. | Atlas AI | Service Order | 12/17/21 | 0 |
| 108 | Near Intelligence Pte. Ltd. | AudienceQ | Near Platform Data Usage and Services Agreement | 01/01/22 | 0 |
| 109 | Near Intelligence Pte. Ltd. | AudienceQ Limited | Allspark Usage Agreement | 07/01/19 | 0 |
| 110 | Near North America, Inc. | August Partners | Service Order | 07/19/16 | 0 |
| 111 | Near North America, Inc. | August Partners | Service Order | 12/13/16 | 0 |
| 112 | Near North America, Inc. | August Partners | Service Order | 02/01/18 | 0 |
| 113 | Near North America, Inc. | August Partners | Service Order | 07/20/18 | 0 |
| 114 | Near North America, Inc. | August Partners | Service Order | 10/23/18 | 0 |
| 115 | Near North America, Inc. | August Partners | Service Order | 11/05/17 | 0 |
| 116 | Near North America, Inc. | August Partners | Service Order | 11/26/18 | 0 |
| 117 | Near North America, Inc. | August Partners | Service Order | 11/29/16 | 0 |
| 118 | Near North America, Inc. | August Partners | Service Order | 12/26/18 | 0 |
| 119 | Near North America, Inc. | August Partners | Service Order | 01/25/19 | 0 |
| 120 | Near North America, Inc. | August Partners | Service Order | 09/08/20 | 0 |
| 121 | Near North America, Inc. | August Partners | Service Order | 09/04/18 | 0 |
| 122 | Near North America, Inc. | August Partners | Service Order | 10/01/20 | 0 |
| 123 | Near North America, Inc. | August Partners | Service Order | 04/19/18 | 0 |
| 124 | Near North America, Inc. | August Partners | Service Order | 07/07/17 | 0 |
| 125 | Near North America, Inc. | August Partners | Service Order | 04/18/17 | 0 |
| 126 | Near North America, Inc. | August Partners | Service Order | 03/30/17 | 0 |

| 127 | Near North America, Inc. | August Partners | Service Order | 04/15 | 0 |
| 128 | Near North America, Inc. | August Partners | Service Order | 04/0 | 0 |
| 129 | Near North America, Inc. | August Partners | Service Order | 05/27/16 | 0 |
| 130 | Near North America, Inc. | August Partners | Service Order | 06/13/16 | 0 |
| 131 | Near North America, Inc. | August Partners | Service Order | 07/27/18 | 0 |
| 132 | Near North America, Inc. | August Partners | Service Order | 08/17/17 | 0 |
| 133 | Near North America, Inc. | August Partners | Service Order | 08/17/17 | 0 |
| 134 | Near North America, Inc. | August Partners | Service Order | 08/21/18 | 0 |
| 135 | Near North America, Inc. | August Partners | Service Order | 09/12/18 | 0 |
| 136 | Near North America, Inc. | August Partners | Service Order | 09/17/18 | 0 |
| 137 | Near North America, Inc. | August Partners | Service Order | 09/20/18 | 0 |
| 138 | Near North America, Inc. | August Partners | Service Order | 09/17/20 | 0 |
| 139 | Near North America, Inc. | August Partners | Service Order | 07/25/17 | 0 |
| 140 | Near North America, Inc. | August Partners | Service Order | 12/21/16 | 0 |
| 141 | Near North America, Inc. | August Partners | Service Order | 02/03/18 | 0 |
| 142 | Near North America, Inc. | August Partners | Service Order | 02/03/18 | 0 |
| 143 | Near North America, Inc. | August Partners | Service Order | 12/21/16 | 0 |
| 144 | Near North America, Inc. | August Partners | Service Order | 08/26/16 | 0 |
| 145 | Near North America, Inc. | August Partners | Service Order | 02/02/17 | 0 |
| 146 | Near North America, Inc. | August Partners | Service Order | 11/16/17 | 0 |
| 147 | Near North America, Inc. | August Partners | Service Order | 01/17/18 | 0 |
| 148 | Near North America, Inc. | August Partners | Service Order | 01/18/18 | 0 |
| 149 | Near North America, Inc. | August Partners | Service Order | 09/20/17 | 0 |
| 150 | Near North America, Inc. | August Partners | Service Order | 01/25/17 | 0 |
| 151 | Near North America, Inc. | August Partners | Service Order | 01/25/17 | 0 |
| 152 | Near North America, Inc. | August Partners | Service Order | 03/11/16 | 0 |
| 153 | Near North America, Inc. | August Partners | Service Order | 07/07/17 | 0 |
| 154 | Near North America, Inc. | August Partners | Service Order | 03/08/17 | 0 |
| 155 | Near North America, Inc. | August Partners | Service Order | 10/13/17 | 0 |
| 156 | Near North America, Inc. | Australia Bureau of Statistics | Service Order | 06/29/20 | 0 |
| 157 | Near Intelligence Pte. Ltd. | Australian United Retailers Limited | Agreement | 06/30/23 | 0 |
| 158 | Near North America, Inc. | Autonetwork, Inc. | Service Order | 08/01/18 | 0 |
| 159 | Near Intelligence Pte. Ltd. | AutoZone Brazil | Service Order | 10/04/22 | 0 |
| 160 | Near Intelligence Pte. Ltd. | Avarisoft Pty Ltd | Agreement | 11/15/22 | 0 |
| 161 | Near North America, Inc. | Avison Young | Service Order | 02/18/16 | 0 |
| 162 | Near North America, Inc. | Avison Young | Service Order | 08/04/21 | 0 |
| 163 | Near North America, Inc. | Avison Young | Service Order | 12/28/22 | 0 |
| 164 | Near North America, Inc. | Bazze | Authorized Reseller Agreement | 06/11/20 | 0 |
| 165 | Near North America, Inc. | Big Lots Stores, Inc. | Service Order | 05/01/21 | 0 |
| 166 | Near North America, Inc. | Big Lots Stores, Inc. | Service Order | 04/04/18 | 0 |
| 167 | Near North America, Inc. | Big Lots Stores, Inc. | Service Order | 02/18/16 | 0 |
| 168 | Near North America, Inc. | Big Lots Stores, Inc. | Service Order | 02/05/16 | 0 |
| 169 | Near North America, Inc. | Big Lots Stores, Inc. | Service Order | 02/28/19 | 0 |
| 170 | Near North America, Inc. | Big Lots Stores, Inc. | Service Order | 05/19/16 | 0 |
| 171 | Near North America, Inc. | Big Lots Stores, Inc. | Service Order | 11/08/16 | 0 |
| 172 | Near North America, Inc. | Big Lots Stores, Inc. | Service Order | 04/20/16 | 0 |
| 173 | Near North America, Inc. | Big Lots Stores, Inc. | Service Order | 10/12/15 | 0 |
| 174 | Near Intelligence Pte. Ltd. | Big Mobile Group Pty. Ltd. | Allspark Usage Agreement | 01/01/20 | 0 |
| 175 | Near North America, Inc. | BJ's Wholesale Club | Service Order | 09/05/19 | 0 |
| 176 | Near North America, Inc. | BJ's Wholesale Club | Service Order | 03/17/20 | 0 |
| 177 | Near Intelligence Pte. Ltd. | Black C Media Limited | Agreement | 10/01/20 | 0 |
| 178 | Near Intelligence Pte. Ltd. | Black C Media Limited | Near Data Usage Agreement | 10/01/20 | 0 |
| 179 | Near North America, Inc. | Blue Genie Art Bazaar | Agreement | 10/01/23 | 0 |
| 180 | Near Intelligence Pte. Ltd. | BMT commercial Aus PTY ltd | Agreement | 10/20/22 | 0 |
| 181 | Near Intelligence Pte. Ltd. | Bonzai Digital Pte Ltd. | Allspark Usage Agreement | 10/01/18 | 0 |
| 182 | Near North America, Inc. | Boston Consulting Group | Agreement | 12/01/22 | 0 |
| 183 | Near North America, Inc. | Boston Red Sox | Service Order | 01/16/18 | 0 |
| 184 | Near North America, Inc. | Bowling Green State Univ (BGSU) | Agreement | 06/01/22 | 0 |
| 185 | Near Intelligence Pte. Ltd. | BP Australia Pty Ltd | Agreement | 09/30/22 | 0 |
| 186 | Near Intelligence Pte. Ltd. | Break Media Pte Ltd | Agreement | 06/19/23 | 0 |
| 187 | Near North America, Inc. | Brentwood Associates | Agreement | 02/08/23 | 0 |
| 188 | Near North America, Inc. | Brightview Health | Service Order | 06/16/22 | 0 |
| 189 | Near North America, Inc. | Brisbane City Council | Agreement | 01/01/23 | 0 |

**390**

| | | | | | |
|---|---|---|---|---|---|
| 190 | Near North America, Inc. | Brookfield Properties (BPR RETI Svc) | Service Order | 01/ | 0 |
| 191 | Near North America, Inc. | Burger King South Africa (RF) Proprietary Limited | Service Order | 02/ | 0 |
| 192 | Near North America, Inc. | CACI LTD. | Data License Agreement | 10/29/21 | 0 |
| 193 | Near North America, Inc. | CACI LTD. | Data License Agreement | 09/21/21 | 0 |
| 194 | Near North America, Inc. | CACI LTD. | Data License Agreement | 11/30/21 | 0 |
| 195 | Near North America, Inc. | CACI LTD. | Data License Agreement | 09/10/21 | 0 |
| 196 | Near North America, Inc. | CACI LTD. | Data License Agreement | 12/15/21 | 0 |
| 197 | Near North America, Inc. | CACI LTD. | Data License Agreement | 09/30/21 | 0 |
| 198 | Near North America, Inc. | CACI LTD. | Data License Agreement | 10/29/21 | 0 |
| 199 | Near North America, Inc. | CACI LTD. | Data License Agreement | 12/03/21 | 0 |
| 200 | Near North America, Inc. | CACI LTD. | Data License Agreement | 10/29/21 | 0 |
| 201 | Near North America, Inc. | CACI LTD. | Data License Agreement | 11/02/21 | 0 |
| 202 | Near North America, Inc. | CACI LTD. | Data License Agreement | 05/22/22 | 0 |
| 203 | Near North America, Inc. | CACI LTD. | Data License Agreement | 09/16/21 | 0 |
| 204 | Near North America, Inc. | CACI LTD. | Data License Agreement | 11/22/21 | 0 |
| 205 | Near North America, Inc. | CACI LTD. | Data License Agreement | 09/21/21 | 0 |
| 206 | Near North America, Inc. | CACI LTD. | Data License Agreement | 09/15/21 | 0 |
| 207 | Near North America, Inc. | CACI LTD. | Data License Agreement | 12/03/21 | 0 |
| 208 | Near North America, Inc. | CACI LTD. | Data License Agreement | 10/18/21 | 0 |
| 209 | Near North America, Inc. | CACI LTD. | Data License Agreement | 09/29/21 | 0 |
| 210 | Near North America, Inc. | CACI LTD. | Data License Agreement | 09/01/21 | 0 |
| 211 | Near North America, Inc. | CACI LTD. | Data License Agreement | 09/10/21 | 0 |
| 212 | Near North America, Inc. | CACI LTD. | Data License Agreement | 09/27/21 | 0 |
| 213 | Near North America, Inc. | CACI LTD. | Data License Agreement | 11/29/21 | 0 |
| 214 | Near North America, Inc. | CACI LTD. | Data License Agreement | 10/29/21 | 0 |
| 215 | Near North America, Inc. | CACI LTD. | Data License Agreement | 11/02/21 | 0 |
| 216 | Near North America, Inc. | CACI LTD. | Data License Agreement | 09/30/21 | 0 |
| 217 | Near North America, Inc. | CACI LTD. | Data License Agreement | 12/09/21 | 0 |
| 218 | Near North America, Inc. | CACI LTD. | Data License Agreement | 09/30/21 | 0 |
| 219 | Near North America, Inc. | CACI LTD. | Data License Agreement | 09/30/21 | 0 |
| 220 | Near North America, Inc. | CACI LTD. | Data License Agreement | 09/21/21 | 0 |
| 221 | Near North America, Inc. | CACI LTD. | Data License Agreement | 12/16/21 | 0 |
| 223 | Near North America, Inc. | Caravan Industry Association of Australia | Agreement | 07/01/21 | 0 |
| 224 | Near North America, Inc. | Caravan Industry Association of Australia | Data License Agreement | 10/29/20 | 0 |
| 225 | Near North America, Inc. | Caravan Industry Association of Australia | Agreement | 01/17/22 | 0 |
| 226 | Near North America, Inc. | Caravaning Informations GmbH | Service Order | 04/27/21 | 0 |
| 227 | Near North America, Inc. | Cardiff University | Service Order | 07/25/22 | 0 |
| 228 | Near North America, Inc. | CBRE GmbH | Agreement | 11/16/21 | 0 |
| 229 | Near North America, Inc. | CBRE Inc. | Service Order | 10/31/22 | 0 |
| 230 | Near North America, Inc. | CBRE Inc. | Purchase Order | 12/07/22 | 0 |
| 231 | Near North America, Inc. | CBRE Inc. | Service Order | 12/27/23 | 0 |
| 232 | Near North America, Inc. | CBRE Inc. | Service Order | 10/31/22 | 0 |
| 233 | Near North America, Inc. | CBRE Inc. | Purchase Order | 11/01/22 | 0 |
| 234 | Near North America, Inc. | CBRE Inc. | Service Order | 10/31/22 | 0 |
| 235 | Near North America, Inc. | CBRE Inc. | Purchase Order | 05/04/20 | 0 |
| 236 | Near North America, Inc. | CBRE Inc. | Purchase Order | 01/19/21 | 0 |
| 237 | Near North America, Inc. | CBRE Inc. | Purchase Order | 12/09/22 | 0 |
| 238 | Near North America, Inc. | CBRE Inc. | Service Order | 11/04/22 | 0 |
| 239 | Near North America, Inc. | CBRE Inc. | Purchase Order | | 0 |
| 240 | Near North America, Inc. | CBRE Inc. | Service Order | 10/12/22 | 0 |
| 241 | Near North America, Inc. | CBRE Limited | Data License Agreement | 01/01/23 | 0 |
| 242 | Near North America, Inc. | CBRE Limited | Purchase Order | 09/28/21 | 0 |
| 243 | Near North America, Inc. | CBRE Limited | Limited License Agreement | 01/04/20 | 0 |
| 244 | Near North America, Inc. | CBRE Limited | Data License Agreement | 01/04/23 | 0 |
| 245 | Near North America, Inc. | CBRE Limited | Data License Agreement | 09/27/22 | 0 |
| 246 | Near North America, Inc. | CBRE LTD | Data License Agreement | 12/17/21 | 0 |
| 247 | Near North America, Inc. | CBRE PTE Ltd | Data License Agreement | 03/04/22 | 0 |
| 248 | Near North America, Inc. | CBRE PTE Ltd | Data License Agreement | 05/06/22 | 0 |
| 249 | Near North America, Inc. | CBRE PTE Ltd | Limited License Agreement | 11/19/21 | 0 |
| 250 | Near North America, Inc. | CBRE Real Estate, S.A. | Limited License Agreement | 01/03/19 | 0 |
| 254 | Near North America, Inc. | CBRE SRL | Data License Agreement and all relevant Purchase Orders | 12/23/22 | 0 |
| 255 | Near North America, Inc. | Central Counties Tourism | Service Order | 03/31/23 | 0 |
| 256 | Near North America, Inc. | Centre for Economic and Regional Studies | Service Order | 05/25/21 | 0 |

391

**392**

| | | | | | |
|---|---|---|---|---|---|
| 257 | Near North America, Inc. | Chameleon Digital Media | Data License Agreement and all relevant Service Orders | 10/15/21 | 0 |
| 259 | Near North America, Inc. | Chameleon Digital Media | Data License Agreement and all relevant Service Orders | 03/21/22 | 0 |
| 260 | Near North America, Inc. | Chameleon Digital Media | Data License Agreement and all relevant Service Orders | 08/02/22 | 0 |
| 261 | Near North America, Inc. | Charter Deck Cramer | Service Order | 08/27/21 | 0 |
| 262 | Near North America, Inc. | Chick-Fil-A Inc. | Data License Agreement | 06/30/23 | 0 |
| 263 | Near North America, Inc. | Chick-Fil-A Inc. | Service Order Data Feeds | 06/30/23 | 0 |
| 265 | Near North America, Inc. | Choose Chicago | Data License Agreement and all relevant Service Orders | 11/15/21 | 0 |
| 266 | Near North America, Inc. | Choose Chicago | Data License Agreement and all relevant Service Orders | 06/30/21 | 0 |
| 267 | Near North America, Inc. | Choose Chicago | 2023 Fiscal Year Renewal Contract | 06/01/23 | 0 |
| 269 | Near North America, Inc. | CID | Purchase Order: Disaggregate Mobility Data | 09/08/22 | 0 |
| 270 | Near North America, Inc. | CircleK-TAS | Data License Agreement | 05/01/23 | 0 |
| 271 | Near North America, Inc. | Citadel Enterprise Americas LLC | Data Evaluation Agreement | 09/20/22 | 0 |
| 273 | Near North America, Inc. | City of Apache Junction | Data License Agreement | 12/01/22 | 0 |
| 274 | Near North America, Inc. | City of Cleveland, Department of Community Develo | Service Order | 12/13/22 | 0 |
| 275 | Near North America, Inc. | City of El Paso | No. 2022-0907 Disaggregate Mobility Data | 09/01/22 | 0 |
| 276 | Near North America, Inc. | City of El Paso | Service Agreement for Near Data Sets | 09/13/22 | 0 |
| 277 | Near North America, Inc. | City of Grand Junction | Data License Agreement | 02/19/20 | 0 |
| 278 | Near North America, Inc. | City of Grand Junction | Data License Agreement | 12/02/20 | 0 |
| 279 | Near North America, Inc. | City of Grand Junction | Data License Agreement | 05/12/20 | 0 |
| 280 | Near North America, Inc. | City of Kingman Tourism Division | Agreement | 12/01/22 | 0 |
| 281 | Near North America, Inc. | City of New Westminster - Office of the CAO | Service Order for Data Feeds | 07/09/21 | 0 |
| 282 | Near Intelligence Pte. Ltd. | City of Perth | Agreement | 12/15/22 | 0 |
| 283 | Near North America, Inc. | City of Prescott Tourism Office AZ | Service Order for Data Feeds | 10/05/20 | 0 |
| 284 | Near North America, Inc. | City of Prescott Tourism Office AZ | Agreement | 12/01/22 | 0 |
| 285 | Near North America, Inc. | City of Québec | Service Order for Data Feeds | 12/01/22 | 0 |
| 286 | Near North America, Inc. | City of Sierra Vista | Service Order | 10/05/20 | 0 |
| 287 | Near North America, Inc. | Claire's European Services Limited | Data License Agreement | 05/01/22 | 0 |
| 288 | Near North America, Inc. | Claire's European Services Limited | Data License Agreement | 10/30/20 | 0 |
| 289 | Near North America, Inc. | Claire's European Services Limited | Data License Agreement | 03/09/21 | 0 |
| 290 | Near North America, Inc. | Claire's European Services Limited | Data License Agreement | 05/18/22 | 0 |
| 291 | Near North America, Inc. | Claire's European Services Limited | First Amendment Agreement | 11/01/22 | 0 |
| 292 | Near North America, Inc. | Coca-Cola Canada Bottling Limited | Service Order | 02/01/23 | 0 |
| 293 | Near North America, Inc. | Coca-Cola Canada Bottling Limited | Data License Agreement | 01/27/23 | 0 |
| 294 | Near North America, Inc. | Cochise County Tourism Council | Agreement | 12/01/22 | 0 |
| 295 | Near North America, Inc. | cohort.digital LLC | Service Order for Data Feeds | 02/05/21 | 0 |
| 296 | Near North America, Inc. | cohort.ID, Inc. | Agreement | 12/01/22 | 0 |
| 297 | Near North America, Inc. | cohort.ID, Inc. | Data License Agreement | 08/09/23 | 0 |
| 298 | Near North America, Inc. | Coldwell Banker Commercial Affiliates | Data License Agreement | 05/28/21 | 0 |
| 299 | Near North America, Inc. | Coldwell Banker Commercial Affiliates | Service Order | 07/14/23 | 0 |
| 300 | Near North America, Inc. | Coles Supermarkets | Service Order | 03/30/20 | 0 |
| 301 | Near North America, Inc. | Coles Supermarkets | Service Order | 04/13/21 | 0 |
| 302 | Near North America, Inc. | Colliers International | Data License Agreement | 02/01/21 | 0 |
| 303 | Near North America, Inc. | Colliers International | Data License Agreement | 09/14/20 | 0 |
| 304 | Near North America, Inc. | Colliers International | Purchase Order | 08/04/22 | 0 |
| 305 | Near North America, Inc. | Colliers International - Atlanta, LLC | Service Order | 07/13/22 | 0 |
| 306 | Near North America, Inc. | Colorado Tourism Office | Service Order | 12/22/22 | 0 |
| 307 | Near North America, Inc. | Columbia Distributing ESRI | Agreement | 01/01/23 | 0 |
| 308 | Near North America, Inc. | Columbia Distributing, Inc. | Data License Agreement | 12/16/22 | 0 |
| 309 | Near North America, Inc. | COMMB | Service Order | 09/12/22 | 0 |
| 310 | Near North America, Inc. | COMMB CA | Data License Agreement for Near Data Sets | 03/02/23 | 0 |
| 311 | Near North America, Inc. | Community Data Platforms | Near Solution Overview and Quote | 01/01/19 | 0 |
| 312 | Near North America, Inc. | Community Data Platforms | Data License Agreement | 01/28/21 | 0 |
| 313 | Near North America, Inc. | Community Data Platforms | Service Order for Data Feed | 02/07/22 | 0 |
| 314 | Near North America, Inc. | Community Service Platforms | Data License Agreement | 08/13/20 | 0 |
| 315 | Near North America, Inc. | Compass Digital Labs | Data License Agreement and all relevant Service Orders | 11/22/17 | 0 |
| 317 | Near North America, Inc. | Competitive Analytics Professionals, LLC | Service Order | 10/29/19 | 0 |
| 318 | Near Intelligence Pte. Ltd. | Container Exchange (QLD) Limited | Agreement | 06/12/23 | 0 |
| 319 | Near North America, Inc. | Coraggio Group LLC | Data License Agreement | 11/02/21 | 0 |
| 320 | Near North America, Inc. | Coraggio Group LLC | Data License Agreement | 08/05/21 | 0 |
| 321 | Near North America, Inc. | Costa Vida Fresh Mexican Grill | Service Order | 03/01/16 | 0 |
| 322 | Near North America, Inc. | County of Newell, Alberta Canada | Service Order | 09/10/20 | 0 |
| 323 | Near North America, Inc. | Cratos Portable Chargers LLC | Service Order for Data Sets | 01/07/21 | 0 |
| 324 | Near North America, Inc. | CS Property Management | Service Order for Data Sets | 01/27/20 | 0 |

**393**

| | | | | |
|---|---|---|---|---|
| 325 | Near North America, Inc. | Cuebiq, Inc. | Second Amendment to Data Order Form | 09/29 | 0 |
| 326 | Near North America, Inc. | Cullari Media | Data License Agreement and all relevant Service Orders | 12/03 | 0 |
| 329 | Near North America, Inc. | Culmen International, LLC | Master License Agreement and all relevant Service Orders | 10/16/18 | 0 |
| 332 | Near North America, Inc. | Cultivar Brands | Service Order | 09/08/22 | 0 |
| 333 | Near North America, Inc. | Cushman & Wakefield ULC | Data License Agreement | 09/11/18 | 0 |
| 334 | Near North America, Inc. | Cushman & Wakefield ULC | Data License Agreement | 05/15/19 | 0 |
| 335 | Near Intelligence Pte. Ltd. | D Chain FZ LLC | Agreement | 01/01/23 | 0 |
| 336 | Near Intelligence Pte. Ltd. | Dai Nippon Intelligence Co., Ltd | Agreement | 10/01/22 | 0 |
| 337 | Near North America, Inc. | Dakota Worldwide | Service Order, Renewal | 07/22/23 | 0 |
| 338 | Near North America, Inc. | Dakota Worldwide | Service Order | 08/28/23 | 0 |
| 339 | Near North America, Inc. | Dallimore & Co. | Data License Agreement and all relevant Service Orders | 05/01/22 | 0 |
| 340 | Near North America, Inc. | Dallimore & Co. | Data License Agreement and all relevant Service Orders | 04/29/21 | 0 |
| 341 | Near North America, Inc. | Dallimore & Co. | Data License Agreement and all relevant Service Orders | 05/01/23 | 0 |
| 342 | Near North America, Inc. | Dallimore & Co. | Data License Agreement and all relevant Service Orders | 06/01/22 | 0 |
| 343 | Near North America, Inc. | Data Graphix | Data License Agreement and all relevant Service Orders | 01/18/19 | 0 |
| 344 | Near North America, Inc. | Data Graphix | Data License Agreement and all relevant Service Orders | 12/20/18 | 0 |
| 345 | Near North America, Inc. | Datagence, Inc. d/b/a V12 | Bundled Reseller Agreement | 08/01/19 | 0 |
| 346 | Near North America, Inc. | Datagence, Inc. d/b/a V12 | Amendment 1 to Bundled Reseller Agreement | 02/03/20 | 0 |
| 347 | Near North America, Inc. | Datagence, Inc. d/b/a V12 | Amendment 2 to Bundled Reseller Agreement | 04/03/20 | 0 |
| 348 | Near North America, Inc. | Datagence, Inc. d/b/a V12 | Amendment 3 to Bundled Reseller Agreement | 08/01/20 | 0 |
| 350 | Near North America, Inc. | Datamentors LLC dba V12 Group | Amendment No. 3 to Bundled Reseller Agreement | 08/01/22 | 0 |
| 351 | Near North America, Inc. | DataMesh | Data License Agreement and all relevant Service Orders | 10/26/20 | 0 |
| 352 | Near North America, Inc. | Datapolis | Data License Agreement and all relevant Service Orders | 04/15/21 | 0 |
| 354 | Near North America, Inc. | Datapolis | Data License Agreement and all relevant Service Orders | 11/03/20 | 0 |
| 355 | Near North America, Inc. | DataRobot | Service Order | 07/20/22 | 0 |
| 356 | Near North America, Inc. | Dean Runyan | Agreement and all relevant Service Orders | 02/01/23 | 0 |
| 357 | Near North America, Inc. | Dean Runyan Associates | Data License Agreement and all relevant Service Orders | 01/19/21 | 0 |
| 361 | Near Intelligence Pte. Ltd. | Decathlon SE | Agreement | 12/23/22 | 0 |
| 362 | Near Intelligence Pte. Ltd. | Deep End Services Pty Ltd | Agreement | 09/26/23 | 0 |
| 363 | Near North America, Inc. | Delaware North | Agreement | 01/01/23 | 0 |
| 364 | Near North America, Inc. | Delaware North | Data License Agreement and all relevant Service Orders | 09/22/22 | 0 |
| 365 | Near North America, Inc. | Delaware North | Data License Agreement and all relevant Service Orders | 01/03/23 | 0 |
| 366 | Near North America, Inc. | Design Workshop, Inc. | Agreement and all relevant Service Orders | 07/10/23 | 0 |
| 367 | Near North America, Inc. | Destination Analysts, Inc. | Agreement | 01/01/23 | 0 |
| 368 | Near North America, Inc. | Destination Analysts, Inc. | Service Order | 07/01/23 | 0 |
| 369 | Near North America, Inc. | Destination Analysts, Inc. | Data License Agreement and all relevant Service Orders | 07/28/21 | 0 |
| 373 | Near North America, Inc. | Destination Analysts, Inc. | Agreement and all relevant Service Orders | 08/31/23 | 0 |
| 374 | Near North America, Inc. | Destination Analysts, Inc. | Agreement and all relevant Service Orders | 07/01/23 | 0 |
| 376 | Near North America, Inc. | Destination Analysts, Inc. | Data License Agreement and all relevant Service Orders | 11/29/22 | 0 |
| 377 | Near North America, Inc. | Destination Analysts, Inc. | Data License Agreement and all relevant Service Orders | 11/10/22 | 0 |
| 378 | Near North America, Inc. | Destination Analysts, Inc. | Data License Agreement and all relevant Service Orders | 06/21/21 | 0 |
| 379 | Near North America, Inc. | Destination Analysts, Inc. | Data License Agreement and all relevant Service Orders | 11/29/22 | 0 |
| 381 | Near North America, Inc. | Destination Analysts, Inc. | Data License Agreement for Near Data Sets and Service Order for Tri-Valley area, California | 12/20/22 | 0 |
| 382 | Near North America, Inc. | Destination Analysts, Inc. | Data License Agreement for Near Data Sets and Service Order for Texas Datasets | 01/28/22 | 0 |
| 383 | Near North America, Inc. | Destination Analysts, Inc. | Data License Agreement for Near Data Sets and Service Order for Texas Datasets | 03/16/23 | 0 |
| 386 | Near North America, Inc. | Destination Analysts, Inc. | Data License Agreement and all relevant Service Orders | 04/13/23 | 0 |
| 387 | Near North America, Inc. | Destination Analysts, Inc. | Data License Agreement and all relevant Service Orders | 01/30/23 | 0 |
| 389 | Near North America, Inc. | Dietrich-Pepper, LLC | Service Order | 08/20/22 | 0 |
| 390 | Near North America, Inc. | Dietrich-Pepper, LLC | Service Order | 08/19/22 | 0 |
| 391 | Near North America, Inc. | Digital Performance Group | Service Order | 11/20/21 | 0 |
| 393 | Near North America, Inc. | Discover DuPage | Data License Agreement and all relevant Service Orders | 11/15/22 | 0 |
| 394 | Near North America, Inc. | Discover Salt River | Service Order | 10/30/20 | 0 |
| 395 | Near Intelligence Pte. Ltd. | DNP Media Art Co. Ltd. | Agreement | 10/01/23 | 0 |
| 396 | Near North America, Inc. | Dollar General Corporation | Agreement | 02/01/23 | 0 |
| 397 | Near North America, Inc. | Dollar General Corporation | Data License Agreement and all relevant Service Orders | 02/02/21 | 0 |
| 399 | Near North America, Inc. | Dollar General Corporation | Data License Agreement and all relevant Service Orders | 07/09/21 | 0 |
| 400 | Near North America, Inc. | Dollar General Corporation | Data License Agreement and all relevant Service Orders | 02/24/21 | 0 |
| 401 | Near North America, Inc. | DuPage CVB | Agreement | 01/01/23 | 0 |
| 403 | Near North America, Inc. | Earth Economics | Agreement | 06/01/22 | 0 |
| 404 | Near North America, Inc. | Earth Economics | Service Order | 02/22/21 | 0 |
| 405 | Near North America, Inc. | Earthvision LLC | Service Order | 10/08/21 | 0 |
| 406 | Near North America, Inc. | Earthvision LLC | Service Order | 06/10/22 | 0 |
| 407 | Near North America, Inc. | Earthvision LLC | Service Order | 07/06/23 | 0 |

| | | | | |
|---|---|---|---|---|
| 408 | Near North America, Inc. | Eddy Alexander | Agreement and all relevant Service Orders | 12/01/21 | 0 |
| 414 | Near North America, Inc. | Element Advisory Pty Ltd | Service Order | 03/10/23 | 0 |
| 415 | Near North America, Inc. | Element Advisory Pty Ltd | Agreement | 04/26/23 | 0 |
| 416 | Near North America, Inc. | Elizabeth Destination Marketing Organization | Service Order | 04/11/22 | 0 |
| 417 | Near North America, Inc. | ELV Consulting Inc. | Service Order | 02/01/22 | 0 |
| 418 | Near North America, Inc. | Enflick | Service Order | 08/06/18 | 0 |
| 419 | Near North America, Inc. | Enlighten | Service Order | 03/28/22 | 0 |
| 420 | Near North America, Inc. | Enlighten | Service Order | 11/10/20 | 0 |
| 421 | Near North America, Inc. | Entertainment and Culture Advisors, LLC | Service Order | 06/06/22 | 0 |
| 422 | Near North America, Inc. | Entrada Insights Corporation | Data License Agreement | 07/01/20 | 0 |
| 423 | Near North America, Inc. | Environics Analytics Group Ltd. | Agreement and all relevant Service Orders | 06/01/22 | 0 |
| 427 | Near North America, Inc. | Environics Analytics Group Ltd. | Amendment #3 to the Amended and Restated Bundled Reseller Agreement | 07/01/20 | 0 |
| 428 | Near North America, Inc. | Epsilon Data Management, LLC | Agreement and all relevant Service Orders | 11/01/22 | 0 |
| 430 | Near North America, Inc. | Epsilon Data Management, LLC | Measurement Master Services Agreement and all relevant Service Orders | 08/11/22 | 0 |
| 432 | Near North America, Inc. | Ernst & Young LLP | Service Order for Location Data | 09/30/23 | 0 |
| 434 | Near North America, Inc. | eSite Analytics | Service Order | 03/21/23 | 0 |
| 435 | Near North America, Inc. | Estudios Tecnicos | Service Order | 05/12/22 | 0 |
| 436 | Near Intelligence Pte. Ltd. | Ethos Urban Pty Ltd. | Agreement | 03/16/23 | 0 |
| 437 | Near North America, Inc. | Euphonos Coffee Roasters | Service Order | 04/29/20 | 0 |
| 438 | Near North America, Inc. | EVO Entertainment Group | Service Order | 04/13/22 | 0 |
| 439 | Near North America, Inc. | Exact Marketing | Service Order | 10/04/22 | 0 |
| 440 | Near North America, Inc. | Exact Marketing | Service Order | 03/08/23 | 0 |
| 441 | Near North America, Inc. | Explore Washington Park | Service Order | 09/23/20 | 0 |
| 442 | Near North America, Inc. | Felipe Kup Barbieri de Matos | Service Order | 02/17/22 | 0 |
| 443 | Near North America, Inc. | Fernbank Museum | Service Order | 11/09/22 | 0 |
| 444 | Near North America, Inc. | Fernridge Solutions Pty Ltd | Service Order | 03/01/22 | 0 |
| 446 | Near Intelligence Pte. Ltd. | Finity Consulting Pty. Ltd. | Master Near Platform Data Usage and Services Agreement and all relevant Statements of Work | 05/01/21 | 0 |
| 448 | Near North America, Inc. | Flare Americas LLC. | Data License Agreement for Near Data Sets | 09/06/22 | 0 |
| 449 | Near North America, Inc. | Flare Americas LLC. | Data License Agreement for Near Data Sets | 02/01/23 | 0 |
| 450 | Near North America, Inc. | Flare Americas LLC. | Data License Agreement for Near Data Sets | 09/06/22 | 0 |
| 451 | Near North America, Inc. | Flare Americas LLC. | Data License Agreement for Near Data Sets | 11/15/22 | 0 |
| 452 | Near North America, Inc. | Flare Consulting | Agreement and all relevant Service Orders | 11/01/22 | 0 |
| 462 | Near North America, Inc. | Focus DMG | Service Order | 05/28/20 | 0 |
| 463 | Near North America, Inc. | Foot Locker Retail, Inc. | Service Order | 04/01/22 | 0 |
| 464 | Near North America, Inc. | Foot Locker Retail, Inc. | Service Order | 02/14/22 | 0 |
| 465 | Near North America, Inc. | Fort Smith CVB | Service Order | 05/12/21 | 0 |
| 466 | Near North America, Inc. | Forward Data S.L | Data License Agreement | 06/09/22 | 0 |
| 467 | Near North America, Inc. | Forward Data S.L | Data License Agreement | 06/14/21 | 0 |
| 468 | Near North America, Inc. | Forward Keys | Service Order | 08/13/22 | 0 |
| 469 | Near North America, Inc. | FragranceX | Service Order | 09/13/22 | 0 |
| 470 | Near Intelligence Pte. Ltd. | Fresh Information Limited | Agreement | 09/08/23 | 0 |
| 471 | Near North America, Inc. | Fresno/Clovis Convention & Visitors Bureau | Agreement | 01/01/23 | 0 |
| 472 | Near North America, Inc. | Fresno/Clovis Convention & Visitors Bureau | Data License Agreement for Near Data Sets | 12/14/22 | 0 |
| 474 | Near North America, Inc. | Fresno/Clovis Convention & Visitors Bureau | Service Order | 09/09/21 | 0 |
| 475 | Near North America, Inc. | Front Analytics, Inc. | Service Order | 04/17/19 | 0 |
| 476 | Near North America, Inc. | Fundacio Eurecat | Service Order | 06/16/22 | 0 |
| 477 | Near North America, Inc. | Fundacio Eurecat | Service Order | 09/07/21 | 0 |
| 478 | Near North America, Inc. | GapMaps Ltd. | Amendment 1 to Agreement | 04/20/21 | 0 |
| 479 | Near North America, Inc. | GapMaps Ltd. | Agreement | 01/01/23 | 0 |
| 480 | Near North America, Inc. | Gensler | Service Order | 08/18/21 | 0 |
| 481 | Near North America, Inc. | GEOmarketing Solutions Group | Agreement | 02/01/23 | 0 |
| 482 | Near Intelligence Pte. Ltd. | Geografia Pty Ltd | Agreement | 11/17/22 | 0 |
| 483 | Near North America, Inc. | GEOmarketing Solutions Group | Data License Agreement and all relevant Service Orders | 08/26/21 | 0 |
| 485 | Near North America, Inc. | GEOmarketing Solutions Group | Data License Agreement | 02/03/23 | 0 |
| 486 | Near North America, Inc. | Georgia Tech School of Economics | Service Order | 01/13/21 | 0 |
| 487 | Near Intelligence Pte. Ltd. | Geoscience Australia | Agreement | 03/15/23 | 0 |
| 488 | Near Intelligence Pte. Ltd. | GHD Pty Ltd | Agreement | 06/09/23 | 0 |
| 489 | Near North America, Inc. | Global Planning Solutions | Agreement | 02/01/23 | 0 |
| 490 | Near North America, Inc. | Glomil Teknoloji Anonim Sirketi | Data License Agreement | 04/26/22 | 0 |
| 491 | Near North America, Inc. | Glomil Teknoloji Anonim Sirketi | Data License Agreement | 04/26/22 | 0 |
| 492 | Near North America, Inc. | GMA Gesellschaft fur Markt- und Absatzforschung m Service Order | 05/25/22 | 0 |
| 493 | Near North America, Inc. | Goman + York Property Advisors / Accubranch Llc. | Service Order | 04/13/21 | 0 |
| 494 | Near North America, Inc. | Greater Florence Chamber of Commerce, Florence A Service Order | 10/05/20 | 0 |

| | | | | | |
|---|---|---|---|---|---|
| 495 | Near North America, Inc. | Greater Palm Springs CVB | Agreement | 01/01/** | 0 |
| 496 | Near North America, Inc. | Greater Palm Springs CVB | Near Solution Overview and Quote | 05/0** | 0 |
| 497 | Near North America, Inc. | Grosvenor Group Management Services Ltd. | Data License Agreement | | 0 |
| 498 | Near North America, Inc. | Guam Visitors Bureau | Independent and Professional Services Sole Source Contract | 11/07/22 | 0 |
| 499 | Near North America, Inc. | Guam Visitors Bureau | Notice to Proceed | 11/10/22 | 0 |
| 500 | Near North America, Inc. | Guam Visitors Bureau | Agreement | 11/01/22 | 0 |
| 501 | Near North America, Inc. | H2R Market Research | Agreement | 03/28/23 | 0 |
| 502 | Near North America, Inc. | Hamilton City Council | Agreement | 09/01/22 | 0 |
| 503 | Near North America, Inc. | Haute Dog Spa | Service Order | 04/21/22 | 0 |
| 504 | Near North America, Inc. | Hawaii Department of Business, Economic Development | Contract for Goods and Services | 12/23/22 | 0 |
| 505 | Near North America, Inc. | Herrmann Global | Agreement | 01/01/23 | 0 |
| 506 | Near North America, Inc. | Herrmann Global | Service Order | 11/02/21 | 0 |
| 507 | Near North America, Inc. | Herrmann Global | Service Order | 06/05/23 | 0 |
| 508 | Near North America, Inc. | Hibbett Sporting Goods, Inc. | Service Order | 11/23/20 | 0 |
| 509 | Near North America, Inc. | HKS, Inc. | Agreement | 12/01/22 | 0 |
| 510 | Near Intelligence Pte. Ltd. | Hobart City Council | Agreement | 06/30/23 | 0 |
| 511 | Near North America, Inc. | Houston First Corporation | Agreement | 01/01/23 | 0 |
| 512 | Near Intelligence Pte. Ltd. | Houston kemp Pty Ltd | Agreement | 10/15/22 | 0 |
| 513 | Near North America, Inc. | HR&A Advisors | Service Order | 04/19/22 | 0 |
| 514 | Near North America, Inc. | Humanld | Service Order | 11/10/22 | 0 |
| 515 | Near North America, Inc. | IBM Corp. | Procurement Agreement for the Exchange of Confidential Information | 09/11/18 | 0 |
| 516 | Near North America, Inc. | ICF Consulting Group Inc. | Service Order | 06/10/19 | 0 |
| 517 | Near North America, Inc. | IdealSpot | Service Order | 11/06/20 | 0 |
| 518 | Near Intelligence Pte. Ltd. | Idemitsu Kosan Co. Ltd. | Agreement | 03/01/23 | 0 |
| 519 | Near Intelligence Pte. Ltd. | Ikano Insight Ltd. | Agreement | 07/28/23 | 0 |
| 520 | Near North America, Inc. | IMM, LLC | Service Order | 12/13/19 | 0 |
| 522 | Near North America, Inc. | Indiana University | Service Order | 07/08/20 | 0 |
| 523 | Near North America, Inc. | Infopact Analytics | Service Order | 12/22/20 | 0 |
| 524 | Near Intelligence Pte. Ltd. | Innity China Company Ltd | Amendment to Allspark and Near Data Usage Agreement #5 | 04/01/21 | 0 |
| 525 | Near Intelligence Pte. Ltd. | Innity China Company Ltd | Amendment to Allspark and Near Data Usage Agreement #7 | 04/01/23 | 0 |
| 526 | Near North America, Inc. | Innovatio, S.A. ("Pulpey") | Purchase Order 0010029 | 05/17/22 | 0 |
| 527 | Near North America, Inc. | Innovatio, S.A. ("Pulpey") | Purchase Order 0010028 | 05/18/22 | 0 |
| 528 | Near North America, Inc. | Innovatio, S.A. ("Pulpey") | Reseller Sales and Data License Agreement | 05/26/21 | 0 |
| 529 | Near North America, Inc. | Inretail Management | Service Order | 04/06/23 | 0 |
| 530 | Near North America, Inc. | Inretail Management | Service Order | 06/30/22 | 0 |
| 531 | Near North America, Inc. | Insite Real Estate | Service Order | 06/15/21 | 0 |
| 532 | Near North America, Inc. | Intelligent Direct, Inc. | Agreement | 05/01/22 | 0 |
| 535 | Near North America, Inc. | International Coffee & Tea, LLC | Service Order for Location Data | 05/07/18 | 0 |
| 536 | Near North America, Inc. | International GmbH | Service Order for Location Data | 04/05/19 | 0 |
| 537 | Near North America, Inc. | Intersection Media | Agreement | 02/01/22 | 0 |
| 538 | Near North America, Inc. | Intervistas Consulting | Agreement and all relevant Service Orders | 02/01/23 | 0 |
| 544 | Near North America, Inc. | Intuitive Health | Service Order | 01/07/19 | 0 |
| 545 | Near North America, Inc. | IRB Holding Corp | Service Order | 04/25/22 | 0 |
| 546 | Near North America, Inc. | Jackson County Visitors Bureau | Service Order | 10/13/22 | 0 |
| 547 | Near North America, Inc. | Jacksonville State University | Service Order | 11/30/23 | 0 |
| 548 | Near North America, Inc. | James Andrew Group, Inc | Limited License Agreement | 03/30/21 | 0 |
| 549 | Near North America, Inc. | James Andrew Group, Inc | Data License Agreement | 09/25/22 | 0 |
| 550 | Near North America, Inc. | James Andrew Group, Inc | Data License Agreement | 02/22/22 | 0 |
| 551 | Near Intelligence Pte. Ltd. | JCDecaux Australia Trading Pty Ltd | Agreement | 04/20/23 | 0 |
| 552 | Near Intelligence Pte. Ltd. | JKH Business and Property Consulting (Pty) Ltd | Service Order | 07/08/23 | 0 |
| 553 | Near North America, Inc. | JKH Business and Property Consulting (Pty) Ltd | Service Order | 07/11/22 | 0 |
| 554 | Near North America, Inc. | Johnston County | Agreement | 01/01/22 | 0 |
| 555 | Near North America, Inc. | Kalibrate (Knowledge Support Systems Inc.) | Agreement | 01/01/22 | 0 |
| 556 | Near North America, Inc. | Kaua'I Economic Development Board Inc. | Service Order | 11/18/21 | 0 |
| 557 | Near North America, Inc. | Kaytros | Service Order | 12/09/21 | 0 |
| 558 | Near North America, Inc. | KFC Pty Ltd. | Service Order | 10/01/23 | 0 |
| 559 | Near North America, Inc. | KFC Pty Ltd. | Agreement | 05/01/22 | 0 |
| 560 | Near North America, Inc. | KFC Pty Ltd. | Data License Agreement | 05/07/21 | 0 |
| 561 | Near North America, Inc. | KFC Pty Ltd. | Agreement | 02/11/22 | 0 |
| 562 | Near North America, Inc. | KFC Pty Ltd. | Agreement | 05/02/23 | 0 |
| 563 | Near North America, Inc. | Kisio | Service Order | 08/01/19 | 0 |
| 564 | Near North America, Inc. | Kitson & Partners | Service Order | 06/07/19 | 0 |
| 565 | Near North America, Inc. | Knowledge Support Systems, Inc. | Bundled Reseller Agreement | 04/12/22 | 0 |

**395**

**396**

| | | | | | |
|---|---|---|---|---|---|
| 566 | Near North America, Inc. | Kohler Co. | Service Order | 08/15/22 | 0 |
| 567 | Near North America, Inc. | Akya (Konfid S.A. de C.V.) | Service Order | 09/01/22 | 0 |
| 568 | Near North America, Inc. | KPMG LLP | Purchase Order | 05/26/22 | 0 |
| 569 | Near North America, Inc. | KPMG LLP | Near Solution Overview and Quote for Vista Data Explorer Subscription | 04/07/22 | 0 |
| 570 | Near North America, Inc. | Kwiktrip | Data License Agreement | 03/03/23 | 0 |
| 571 | Near North America, Inc. | Kwiktrip | Near Solution Overview and Quote for Vista Data Explorer Subscription | 03/25/22 | 0 |
| 572 | Near North America, Inc. | Land of Illusion Aqua-CTV | Service Order for Location Data | 06/24/22 | 0 |
| 575 | Near North America, Inc. | Lasalle Investment Management | Data License Agreement | 04/01/22 | 0 |
| 576 | Near North America, Inc. | Lasalle Investment Management | Data License Agreement | 04/03/23 | 0 |
| 577 | Near North America, Inc. | Lasalle Investment Management | Data License Agreement | 03/08/21 | 0 |
| 578 | Near North America, Inc. | Legend LLP | Service Order | 04/06/23 | 0 |
| 579 | Near North America, Inc. | Legend LLP | Service Order | 04/06/23 | 0 |
| 580 | Near North America, Inc. | Legend Partners - Beau Niblock | Agreement | 04/01/22 | 0 |
| 581 | Near North America, Inc. | Leggo Studio Pty Ltd | Agreement and all relevant Service Orders | 03/31/23 | 0 |
| 583 | Near North America, Inc. | Lens | Service Order | 05/05/22 | 0 |
| 585 | Near North America, Inc. | Lidl US Operations, LLC | Service Order | 05/05/22 | 0 |
| 586 | Near North America, Inc. | Lidl US Operations, LLC | Service Order | 05/26/21 | 0 |
| 587 | Near North America, Inc. | Lifestyle Media Solutions, LLC | Service Order | 06/30/21 | 0 |
| 588 | Near North America, Inc. | Little Caesar Enterprises, Inc. | Agreement and all relevant Service Orders and Purchase Orders | 01/01/23 | 0 |
| 593 | Near Intelligence Pte. Ltd. | Localis Technologies Australia Pty Ltd | Agreement and all relevant Service Orders | 01/01/22 | 0 |
| 595 | Near Intelligence Pte. Ltd. | Location IQ Pty Ltd. | Service Order | 01/01/23 | 0 |
| 596 | Near North America, Inc. | Location IQ Pty Ltd. | Service Order | 06/25/19 | 0 |
| 597 | Near North America, Inc. | Locomizer | Service Order | 06/14/22 | 0 |
| 598 | Near North America, Inc. | Longwoods International | Service Order | 10/31/22 | 0 |
| 600 | Near North America, Inc. | Longwoods International | Service Order | 10/26/21 | 0 |
| 603 | Near North America, Inc. | Look Media USA LLC | Service Order | 11/17/16 | 0 |
| 604 | Near North America, Inc. | Love Communications | Service Order | 02/28/22 | 0 |
| 605 | Near North America, Inc. | Lyons Group | Service Order | 02/20/19 | 0 |
| 607 | Near Intelligence Pte. Ltd. | MACROPLAN HOLDINGS PTY LTD | Agreement | 10/15/23 | 0 |
| 608 | Near North America, Inc. | Madden | Madden - 2022 Rate Card | 01/01/22 | 0 |
| 609 | Near North America, Inc. | Madden | Service Order | 08/16/22 | 0 |
| 610 | Near North America, Inc. | Madden | Proposed Solution | 04/26/22 | 0 |
| 611 | Near North America, Inc. | Madden | Service Order | 09/29/22 | 0 |
| 612 | Near North America, Inc. | Madden | Service Order | 08/16/22 | 0 |
| 613 | Near North America, Inc. | Madden | Service Order | 09/29/22 | 0 |
| 614 | Near North America, Inc. | Madden | Service Order | 09/29/22 | 0 |
| 615 | Near North America, Inc. | Madden | Service Order | 10/30/22 | 0 |
| 616 | Near North America, Inc. | Madden | Service Order | 09/29/22 | 0 |
| 617 | Near North America, Inc. | Madden | Service Order | 09/29/22 | 0 |
| 619 | Near North America, Inc. | Madden | Service Order | 11/08/22 | 0 |
| 620 | Near North America, Inc. | Madden | Service Order | 09/29/22 | 0 |
| 621 | Near North America, Inc. | Madden | Service Order | 10/11/22 | 0 |
| 622 | Near North America, Inc. | Madden | Service Order | 08/16/22 | 0 |
| 623 | Near North America, Inc. | Madden Media | Service Order | 01/03/23 | 0 |
| 624 | Near North America, Inc. | Madden Media | Service Order | 10/27/22 | 0 |
| 626 | Near North America, Inc. | Madden Media | Service Order | 05/24/22 | 0 |
| 628 | Near North America, Inc. | Madden Media | Service Order | 06/01/22 | 0 |
| 630 | Near North America, Inc. | Madden Media | Service Order | 06/01/22 | 0 |
| 631 | Near North America, Inc. | Madden Media | Service Order | 09/29/22 | 0 |
| 633 | Near North America, Inc. | Madden Media | Service Order | 05/24/22 | 0 |
| 634 | Near North America, Inc. | Madden Media | Service Order | 08/16/22 | 0 |
| 637 | Near North America, Inc. | Madden Media | Service Order | 12/14/22 | 0 |
| 639 | Near North America, Inc. | Madden Media | Service Order | 08/09/22 | 0 |
| 640 | Near North America, Inc. | Magellan Strategy Group | Service Order | 02/18/22 | 0 |
| 641 | Near North America, Inc. | Manistee County Visitors Bureau | Agreement and all relevant Service Orders | 11/01/22 | 0 |
| 644 | Near North America, Inc. | Manistee County Visitors Bureau | Manistee County Visitors Dashboard Contract and all relevant Service Orders | | 0 |
| 646 | Near North America, Inc. | MAPIT (PTY) Ltd | Service Order | 04/01/22 | 0 |
| 647 | Near North America, Inc. | MAPIT (Pty) Ltd | Purchase Order | 07/11/22 | 0 |
| 648 | Near North America, Inc. | MAPIT (Pty) Ltd | Purchase Order | 09/27/22 | 0 |
| 649 | Near North America, Inc. | Market Economics Ltd. | Service Order | 04/01/22 | 0 |
| 650 | Near North America, Inc. | Market Focus Direct Inc. | Service Order | 10/04/18 | 0 |
| 651 | Near North America, Inc. | Massachusetts Convention Center Authority | Service Order | 06/08/19 | 0 |
| 652 | Near North America, Inc. | Matthew Jaffe | Service Order | 03/11/22 | 0 |

| | | | | | |
|---|---|---|---|---|---|
| 653 | Near North America, Inc. | McDonalds | Service Order | 05/11/23 | 0 |
| 654 | Near North America, Inc. | McElhanney Ltd. | Agreement | 09/01/23 | 0 |
| 655 | Near Intelligence Pte. Ltd. | Mead & Hunt | Service Order | 01/01/23 | 0 |
| 656 | Near North America, Inc. | Mead & Hunt | Service Order #E469 | 12/08/21 | 0 |
| 657 | Near North America, Inc. | Mead & Hunt | Service Order #ES243 | 07/28/20 | 0 |
| 658 | Near Intelligence Pte. Ltd. | Measurement of Outdoor Visibiltiy and Exposure Pty | Agreement | 04/20/23 | 0 |
| 663 | Near North America, Inc. | MediaOne North America | Agreement and all relevant Service Orders | 02/16/23 | 0 |
| 667 | Near Intelligence Pte. Ltd. | Mediatiks Limited | Agreement | 04/01/23 | 0 |
| 668 | Near North America, Inc. | Megalytics | Proposed Solution | 04/12/22 | 0 |
| 669 | Near North America, Inc. | Megalytics | Service Order | 12/17/20 | 0 |
| 670 | Near Intelligence Pte. Ltd. | Melbourne City Council | Agreement | 06/30/23 | 0 |
| 671 | Near North America, Inc. | Meta Platforms Technologies, LLC | Service Order Data Feeds #INB2739182 | 07/01/23 | 0 |
| 674 | Near North America, Inc. | METAVERSO, S.A. | Agreement and all relevant Purchase Orders | 11/01/22 | 0 |
| 678 | Near North America, Inc. | Michael Bauer International GmbH (and Hitachi Solu | Licence Agreement and all relevant Orders | 04/05/22 | 0 |
| 679 | Near North America, Inc. | Michigan State Billing | Service Order | 02/16/21 | 0 |
| 680 | Near North America, Inc. | Mississippi Development Authority | Service Order | 12/31/19 | 0 |
| 681 | Near North America, Inc. | MIT | Service Order | 04/08/21 | 0 |
| 682 | Near North America, Inc. | Mobil IT Consultants | Service Order | 02/02/22 | 0 |
| 699 | Near Intelligence Pte. Ltd. | Monash University | Agreement | 09/12/22 | 0 |
| 700 | Near North America, Inc. | Moreton Bay Australia | Service Order | 07/19/21 | 0 |
| 701 | Near North America, Inc. | Moreton Bay Regional Council | Agreement | 06/01/22 | 0 |
| 702 | Near North America, Inc. | Morey Consulting | Agreement and all relevant Service Orders | 08/23/23 | 0 |
| 705 | Near North America, Inc. | Morey Consulting | Agreement | 07/28/22 | 0 |
| 710 | Near North America, Inc. | Morey Consulting | Agreement | 08/09/22 | 0 |
| 711 | Near North America, Inc. | Morey Consulting | Agreement | 08/04/22 | 0 |
| 712 | Near North America, Inc. | Morey Consulting | Agreement | 08/29/22 | 0 |
| 713 | Near North America, Inc. | Morey Consulting | Agreement | 08/04/22 | 0 |
| 714 | Near North America, Inc. | Morey Consulting | Agreement | 08/30/22 | 0 |
| 715 | Near North America, Inc. | Morey Consulting | Agreement | 08/04/22 | 0 |
| 716 | Near North America, Inc. | Motivation Holdings, LLC | Service Order | 04/28/24 | 0 |
| 717 | Near North America, Inc. | Mount Carmel Health System | Service Order | 05/08/18 | 0 |
| 718 | Near North America, Inc. | MSA Devco (Pty) Ltd (T/A McDonald's Sou Africa) | Service Order | 06/24/21 | 0 |
| 719 | Near North America, Inc. | Munchen Tourismus | Service Order | 06/24/21 | 0 |
| 720 | Near North America, Inc. | National Institutes of Health | Service Order | 07/30/20 | 0 |
| 721 | Near North America, Inc. | Nationwide News Pty Ltd | Near Platform Data Usage and Services Agreement | 03/14/22 | 0 |
| 722 | Near Intelligence Pte. Ltd. | Nationwide News Pty Ltd | Allspark and Data Usage Agreement | 03/01/19 | 0 |
| 723 | Near North America, Inc. | NaviRetail Inc. | Agreement | 07/01/22 | 0 |
| 724 | Near North America, Inc. | nContext, LLC | Service Order | 01/01/20 | 0 |
| 726 | Near North America, Inc. | nContext, LLC | One Year Agreement | 04/01/23 | 0 |
| 727 | Near North America, Inc. | nContext, LLC | Purchase Order nCX-2023-006 | 04/01/23 | 0 |
| 728 | Near North America, Inc. | Neptune Member LLC | Service Order | 07/23/19 | 0 |
| 729 | Near North America, Inc. | New Balance Athetics, Inc | Service Order | 10/23/23 | 0 |
| 730 | Near North America, Inc. | Newmark & Company Real Estate | Service Order | 08/04/22 | 0 |
| 731 | Near North America, Inc. | Nexcore Group | Service Order | 05/04/23 | 0 |
| 732 | Near North America, Inc. | Nexcore Group | Service Order | 03/03/20 | 0 |
| 733 | Near North America, Inc. | Nexcore Group | Proposed Solution | 05/20/22 | 0 |
| 734 | Near North America, Inc. | Nexcore Group | Proposed Solution | 05/20/22 | 0 |
| 735 | Near North America, Inc. | Nexpansion Inc. | Agreement and all relevant Service Orders | 06/01/22 | 0 |
| 737 | Near North America, Inc. | NextSeed Services LLC | Service Order | 02/11/20 | 0 |
| 738 | Near North America, Inc. | Nike, Inc. | Service Order | 05/22/23 | 0 |
| 739 | Near North America, Inc. | Nike, Inc. | Service Order | 02/13/19 | 0 |
| 740 | Near North America, Inc. | Ninigret Partners LLC | Service Order | 05/19/23 | 0 |
| 741 | Near North America, Inc. | Ninigret Partners LLC | Service Order | 04/16/23 | 0 |
| 742 | Near North America, Inc. | Ninthdecimal, Inc. | Service Order | 01/31/19 | 0 |
| 743 | Near Intelligence Pte. Ltd. | Nissin Shoukai Inc. | Agreement | 06/15/23 | 0 |
| 744 | Near North America, Inc. | NWAP II Inc | Agreement and all relevant Service Orders | 05/01/22 | 0 |
| 748 | Near North America, Inc. | NYC & Company | Agreement | 01/01/23 | 0 |
| 749 | Near North America, Inc. | O2 Planning + Design | Agreement | 01/01/23 | 0 |
| 750 | Near North America, Inc. | O2 Planning + Design | Vista Data Explorer Subscription | 01/18/23 | 0 |
| 751 | Near North America, Inc. | O2 Planning + Design | Proposed Solution | 01/20/22 | 0 |
| 752 | Near North America, Inc. | Off Madison Ave | Agreement and all relevant Insertion Orders | 12/01/22 | 0 |
| 755 | Near Intelligence Pte. Ltd. | Office of Spot | Agreement | 07/14/23 | 0 |
| 756 | Near Intelligence Pte. Ltd. | On The Run Pty Ltd | Agreement | 06/07/22 | 0 |

**398**

| 757 | Near North America, Inc. | Oracle; | Data License Agreement | 09/01/21 | 0 |
|---|---|---|---|---|---|
| 758 | Near North America, Inc. | Oracle America, Inc.; | Oracle Amendment Three | 05/06/22 | 0 |
| 759 | Near North America, Inc. | Oracle America, Inc.; | Oracle Amendment Six | 05/02/22 | 0 |
| 760 | Near North America, Inc. | Orange142 | Agreement and all relevant Service Orders | 01/01/23 | 0 |
| 763 | Near North America, Inc. | Orbital Insight Inc. | Re: Orbital Insight - agreement | 04/08/22 | 0 |
| 764 | Near North America, Inc. | Orbital Insight Inc. | Re: Orbital Insight - agreement | 04/12/22 | 0 |
| 765 | Near North America, Inc. | Orbital Insight Inc. | Evaluation License Agreement | 04/07/22 | 0 |
| 766 | Near North America, Inc. | Orlando/Orange County Convention & Visitors Bureau | Service Order | 11/30/20 | 0 |
| 767 | Near Intelligence Pte. Ltd. | Osaka Metro Adern Co.,Ltd. | Agreement | 03/31/23 | 0 |
| 768 | Near North America, Inc. | Osterreich Werbung | Purchase Order 4500001262 | 08/02/22 | 0 |
| 770 | Near North America, Inc. | Otak, Inc. | Service Order | 12/07/22 | 0 |
| 771 | Near North America, Inc. | Oxford Economics | Agreement and all relevant Service Orders | 02/01/23 | 0 |
| 779 | Near Intelligence Pte. Ltd. | Pacific consultants | Agreement | 03/30/23 | 0 |
| 780 | Near North America, Inc. | PB Software Inc. ("Precisely") | PB Software Inc. Purchase Order | 01/11/21 | 0 |
| 781 | Near North America, Inc. | Pelmorex Corp. | Agreement | 10/01/22 | 0 |
| 782 | Near North America, Inc. | Pendleton | Service Order | 05/18/22 | 0 |
| 783 | Near North America, Inc. | Penn State University | Service Order | 08/02/22 | 0 |
| 784 | Near Intelligence Pte. Ltd. | Perception Media SDN BHD | Near Data Usage Agreement | 09/01/20 | 0 |
| 785 | Near North America, Inc. | Pew Research Center | Service Order | 11/12/20 | 0 |
| 786 | Near North America, Inc. | PlinPoint Inc. | Agreement | 01/01/22 | 0 |
| 787 | Near North America, Inc. | Pinal County | Agreement | 12/01/22 | 0 |
| 788 | Near Intelligence Pte. Ltd. | Pinchhitters BV | Agreement | 04/01/23 | 0 |
| 789 | Near Intelligence Pte. Ltd. | Pinchhitters BV | Services Agreement | 04/01/23 | 0 |
| 790 | Near North America, Inc. | Placewise Media | Agreement and all relevant Service Orders | 01/25/23 | 0 |
| 792 | Near North America, Inc. | Point72, L.P. | Service Order for Pinnacle Data | 06/05/23 | 0 |
| 793 | Near North America, Inc. | Popeyes Louisiana Kitchen Inc. (RBI) | Agreement | 05/01/22 | 0 |
| 794 | Near North America, Inc. | Precisely Software Incorporated ("Precisely") | Service Order Data Feeds | 05/11/22 | 0 |
| 795 | Near North America, Inc. | Precisely Software Incorporated ("Precisely") | Service Order Data Feeds | 12/23/21 | 0 |
| 796 | Near North America, Inc. | Precisely Software Incorporated ("Precisely") | Service Order Data Feeds | 12/12/22 | 0 |
| 797 | Near North America, Inc. | Precisely.com (Syncsort) | Agreement | 01/01/23 | 0 |
| 798 | Near North America, Inc. | PriceWaterhouseCoopers | Service Order (Feed) | 05/29/23 | 0 |
| 800 | Near Intelligence Pte. Ltd. | PropertyGuru Pte. Ltd | Service Agreement and all relevant Statements of Work | 10/17/22 | 0 |
| 801 | Near North America, Inc. | Propulso | Agreement and all relevant Service Orders | 03/01/22 | 0 |
| 807 | Near North America, Inc. | PwC Advisory sp. z o.o. sp.k. ("PwC") | Purchase Order PO 61197 | 01/04/23 | 0 |
| 808 | Near North America, Inc. | PwC Middle East | Agreement | 05/29/23 | 0 |
| 809 | Near North America, Inc. | Q1 Media | Agreement | 10/01/22 | 0 |
| 810 | Near North America, Inc. | Q1 Media | Service Order | 01/01/21 | 0 |
| 811 | Near North America, Inc. | Q1 Media | Q1Media Insertion Order | 10/16/19 | 0 |
| 812 | Near North America, Inc. | Q1 Media | Q1Media Insertion Order | 10/16/19 | 0 |
| 813 | Near North America, Inc. | Q1 Media | Service Order for Data Sets | 11/29/22 | 0 |
| 814 | Near Intelligence Pte. Ltd. | Quantify Strategic Insights | Agreement | 03/23/23 | 0 |
| 815 | Near North America, Inc. | Quantum Health | Service Order | 12/18/20 | 0 |
| 816 | Near North America, Inc. | Quantum Health | Service Order | 04/07/21 | 0 |
| 817 | Near North America, Inc. | QuickTrip Corporation | Service Order | 09/30/22 | 0 |
| 818 | Near North America, Inc. | QuickTrip Corporation | Service Order | 09/23/22 | 0 |
| 819 | Near North America, Inc. | QuickTrip Corporation | Service Order | 08/01/22 | 0 |
| 820 | Near North America, Inc. | Radbridge | Service Order | 07/31/23 | 0 |
| 821 | Near North America, Inc. | Radbridge | Service Order | 03/02/23 | 0 |
| 822 | Near Intelligence Pte. Ltd. | Reach Media New Zealand Limited | Agreement | 03/23/23 | 0 |
| 823 | Near Intelligence Pte. Ltd. | Redland City Council | Agreement | 09/25/22 | 0 |
| 824 | Near North America, Inc. | Restaurant Brands International US Services LLC | Service Order | 03/23/22 | 0 |
| 825 | Near North America, Inc. | Restaurant Brands International US Services LLC | Service Order | 04/19/21 | 0 |
| 826 | Near North America, Inc. | Restaurant Brands International US Services LLC | Service Order | 05/01/22 | 0 |
| 827 | Near North America, Inc. | Rexall Pharmacy Group LLC | Service Order | 07/10/23 | 0 |
| 828 | Near North America, Inc. | Rexall Pharmacy Group Ltd | Service Order | 06/24/21 | 0 |
| 829 | Near North America, Inc. | Rexall Pharmacy Group ULC | Service Order | 06/20/22 | 0 |
| 830 | Near North America, Inc. | RMG Advertising | Service Order | 03/31/23 | 0 |
| 831 | Near North America, Inc. | Rockport Analytics | Agreement and all relevant Service Orders | 02/01/23 | 0 |
| 840 | Near North America, Inc. | Roswell, LLC | First Amendment to Data Order Form | 11/15/19 | 0 |
| 855 | Near North America, Inc. | Roy Morgan | Agreement and all relevant Service Orders | 02/01/23 | 0 |
| 858 | Near North America, Inc. | RRC Associates | Agreement and all relevant Service Orders | 08/01/22 | 0 |
| 865 | Near Intelligence Pte. Ltd. | Rural Press Pty. Ltd. | Agreement | 01/01/23 | 0 |
| 866 | Near North America, Inc. | S.M.EG.I.T TURISTICAS S.A.M.P. | Agreement | 01/01/23 | 0 |

| 867 | Near Intelligence Pte. Ltd. | SA1 Property Holdings Pty Ltd | Agreement | 08/09/23 | |
| 868 | Near North America, Inc. | SDI Realty Advisors | Service Order | 07/26/23 | 0 |
| 869 | Near North America, Inc. | SDI Realty Advisors | Service Order | 04/10/23 | 0 |
| 870 | Near North America, Inc. | Seychelles Tourism Department | Service Order | 11/01/22 | 0 |
| 871 | Near North America, Inc. | Shell International B.V. | Agreement and all Purchase Orders | 06/11/23 | 0 |
| 872 | Near North America, Inc. | Shell International B.V. | Information Licence Agreement CW534195 | 06/11/21 | 0 |
| 873 | Near North America, Inc. | Shell International B.V. | Certificate of Completion (for CW534195) | 06/19/21 | 0 |
| 875 | Near North America, Inc. | Shell International B.V. | Amending Agreement #1 | 03/30/23 | 0 |
| 876 | Near North America, Inc. | Simpleview | Agreement and all relevant Service Orders | 01/01/22 | 0 |
| 877 | Near North America, Inc. | Simpleview | Irving Website Pixel Measurement | 09/11/20 | 0 |
| 881 | Near Intelligence Pte. Ltd. | Singapore Press Holdings Limited | Amendment No. 2 to Near Data Usage Agreement | 04/24/21 | 0 |
| 882 | Near North America, Inc. | SiteSeer Technologies, LLC | Service Order | 09/04/20 | 0 |
| 883 | Near North America, Inc. | SiteSeer Technologies, LLC | Service Order | 04/28/22 | 0 |
| 884 | Near North America, Inc. | SITEZEUS SERVICES LLC | Fwd: SiteZeus April Royalty Report | 01/04/23 | 0 |
| 885 | Near North America, Inc. | SITEZEUS SERVICES LLC | Re: Lidl renewal | 05/05/22 | 0 |
| 886 | Near North America, Inc. | SITEZEUS SERVICES LLC | Amended and Restated Bundled Reseller Agreement | 07/01/21 | 0 |
| 887 | Near North America, Inc. | SITEZEUS SERVICES LLC | Agreement | 02/01/23 | 0 |
| 888 | Near North America, Inc. | SITEZEUS SERVICES LLC | Amendment Agreement | 12/19/22 | 0 |
| 889 | Near North America, Inc. | Sky Synergy, LLC | Agreement | 01/01/21 | 0 |
| 890 | Near North America, Inc. | SMARInsights | Service Order #ES287 | 11/04/20 | 0 |
| 891 | Near North America, Inc. | SMARInsights | Service Order #ES472 | 12/10/21 | 0 |
| 892 | Near North America, Inc. | SMARInsights | Service Order #ES464 | 11/15/21 | 0 |
| 893 | Near North America, Inc. | SMARInsights | Service Order #ES446 | 09/29/21 | 0 |
| 894 | Near North America, Inc. | SMARInsights | Service Order #ES442 | 09/16/21 | 0 |
| 896 | Near Intelligence Pte. Ltd. | SMRT Commercial Pte Ltd. | Near Platform Data Usage and Services Agreement | 03/01/21 | 0 |
| 897 | Near North America, Inc. | Sojern, Inc. | Service Order | 04/15/23 | 0 |
| 898 | Near North America, Inc. | Southern Methodist University | Service Order | 04/01/23 | 0 |
| 899 | Near North America, Inc. | Spatial Labs, Inc. | Bundled Reseller Agreement | 05/21/22 | 0 |
| 900 | Near North America, Inc. | Spatial Labs, Inc. | Amendment to Reseller Agreement | 03/10/21 | 0 |
| 901 | Near North America, Inc. | Spatial Labs, Inc. | Bundled Reseller Agreement | 05/21/22 | 0 |
| 902 | Near North America, Inc. | Starcom | Orden de Compra de Internet | 02/16/23 | 0 |
| 903 | Near North America, Inc. | Starcom | Orden de Compra de Internet | 02/12/23 | 0 |
| 904 | Near Intelligence Pte. Ltd. | Stellar Lifestyle Pte Ltd | Agreement | 03/01/21 | 0 |
| 905 | Near North America, Inc. | Strategic Marketing and Research Insights | Service Order #ES446 | 11/01/21 | 0 |
| 907 | Near North America, Inc. | StreetMetrics, Inc. | Agreement and all relevant Service Orders | 01/01/23 | 0 |
| 910 | Near North America, Inc. | StreetMetrics, Inc. | Addendum 1 to 2022 Data License Agreement | 06/01/22 | 0 |
| 911 | Near North America, Inc. | StreetMetrics, Inc. | Addendum 2 to 2022 Data License Agreement | 06/01/22 | 0 |
| 912 | Near North America, Inc. | StreetMetrics, Inc. | 2022 Master Data License Agreement | 06/01/22 | 0 |
| 913 | Near Intelligence Pte. Ltd. | SunLife Assurance Company of Canada | Second Amendment to Allspark Agreement | 04/01/21 | 0 |
| 914 | Near North America, Inc. | SunPubs Investment Group | Service Order | 10/01/23 | 0 |
| 915 | Near North America, Inc. | SVF University Westwood, LLC | Service Order | 04/23/19 | 0 |
| 916 | Near North America, Inc. | Tahoe Regional Planning Agency | Service Order | 10/08/20 | 0 |
| 917 | Near North America, Inc. | Tailored Brands Shared Services, LLC | Service Order | 08/16/16 | 0 |
| 918 | Near North America, Inc. | Tailored Brands Shared Services, LLC | Purchase Order | 08/02/18 | 0 |
| 919 | Near North America, Inc. | Tailored Brands Shared Services, LLC | Quote for Subscription license | 08/02/18 | 0 |
| 920 | Near North America, Inc. | Tailored Brands Shared Services, LLC | Quote for Subscription license | 07/15/18 | 0 |
| 921 | Near North America, Inc. | Tailored Brands Shared Services, LLC | Service Order | 08/14/17 | 0 |
| 922 | Near North America, Inc. | Tailored Brands Shared Services, LLC | Purchase Order P0370090 | 08/16/16 | 0 |
| 923 | Near North America, Inc. | Tailored Brands Shared Services, LLC | Purchase Order P0465484 | 08/16/17 | 0 |
| 924 | Near North America, Inc. | Tailored Brands Shared Services, LLC | Service Order | 08/27/15 | 0 |
| 925 | Near North America, Inc. | Tango ("Licensee") | Amendment 2 to Agreement | 02/21/22 | 0 |
| 926 | Near North America, Inc. | Tango ("Licensee") | Amendment 2 to Agreement (KFC) | | 0 |
| 927 | Near North America, Inc. | Tango ("Licensee") | Amendment 1 to Agreement | 02/01/21 | 0 |
| 928 | Near North America, Inc. | Tango Analytics | Service Order | 01/01/23 | 0 |
| 929 | Near North America, Inc. | Tango Analytics | Purchase Order | 09/25/23 | 0 |
| 930 | Near North America, Inc. | Tango Analytics | Service Order | 05/16/23 | 0 |
| 931 | Near North America, Inc. | Tango Analytics | Service Order | 01/23/23 | 0 |
| 932 | Near North America, Inc. | Tango Analytics | Amendment 1 to Data License Agreement | 02/01/21 | 0 |
| 933 | Near North America, Inc. | Tango Management Consulting & Analytics | Purchase Order | 05/09/17 | 0 |
| 934 | Near North America, Inc. | Tango Management Consulting & Analytics | Purchase Order | 05/09/18 | 0 |
| 935 | Near North America, Inc. | Tango Management Consulting & Analytics | Purchase Order | 09/25/23 | 0 |
| 936 | Near North America, Inc. | Tango Management Consulting & Analytics | Purchase Order | 06/28/23 | 0 |
| 937 | Near North America, Inc. | Tango Management Consulting & Analytics | Purchase Order | 01/13/17 | 0 |

**400**

| 938 | Near North America, Inc. | Tango Management Consulting & Analytics | Purchase Order | 03/06/18 | |
| 939 | Near North America, Inc. | Tango Management Consulting & Analytics | Purchase Order | 11/04/20 | |
| 940 | Near North America, Inc. | Tango Management Consulting & Analytics | Purchase Order | 08/07/20 | 0 |
| 941 | Near North America, Inc. | Tango Management Consulting & Analytics | Purchase Order | 11/30/20 | 0 |
| 942 | Near North America, Inc. | Tango Management Consulting & Analytics | Purchase Order | 09/29/21 | 0 |
| 943 | Near North America, Inc. | Tango Management Consulting & Analytics | Purchase Order | 07/18/22 | 0 |
| 944 | Near North America, Inc. | Tango Management Consulting & Analytics | Purchase Order | 06/27/23 | 0 |
| 945 | Near North America, Inc. | Tango Management Consulting & Analytics | Purchase Order | 02/04/21 | 0 |
| 946 | Near North America, Inc. | Tango Management Consulting & Analytics | Purchase Order | 11/15/22 | 0 |
| 947 | Near North America, Inc. | Tango Management Consulting & Analytics | Purchase Order | 05/13/20 | 0 |
| 948 | Near North America, Inc. | Tango Management Consulting & Analytics | Purchase Order | 09/09/19 | 0 |
| 949 | Near North America, Inc. | Tango Management Consulting & Analytics | Purchase Order | 09/19/16 | 0 |
| 950 | Near North America, Inc. | Tango Management Consulting & Analytics | Purchase Order | 06/15/18 | 0 |
| 951 | Near North America, Inc. | Tango Management Consulting & Analytics | Purchase Order | 02/11/19 | 0 |
| 952 | Near North America, Inc. | Tango Management Consulting & Analytics | Purchase Order | 06/08/17 | 0 |
| 953 | Near North America, Inc. | Tango Management Consulting & Analytics | Purchase Order | 11/05/15 | 0 |
| 954 | Near North America, Inc. | Tango Management Consulting & Analytics | Purchase Order | 03/16/21 | 0 |
| 955 | Near North America, Inc. | Tango Management Consulting & Analytics | Purchase Order | 06/15/20 | 0 |
| 956 | Near North America, Inc. | Tango Management Consulting & Analytics | Purchase Order | 02/06/17 | 0 |
| 957 | Near North America, Inc. | Tango Management Consulting & Analytics | Purchase Order | 01/17/19 | 0 |
| 958 | Near North America, Inc. | Tango Management Consulting & Analytics | Purchase Order | 03/12/20 | 0 |
| 959 | Near North America, Inc. | Tango Management Consulting & Analytics | Purchase Order | 08/07/17 | 0 |
| 960 | Near North America, Inc. | Tango Management Consulting & Analytics | Purchase Order | 12/16/21 | 0 |
| 961 | Near North America, Inc. | Tango Management Consulting & Analytics | Purchase Order | 02/15/22 | 0 |
| 962 | Near North America, Inc. | Tango Management Consulting & Analytics | Purchase Order | 11/19/18 | 0 |
| 963 | Near North America, Inc. | Tango Management Consulting & Analytics | Purchase Order | 01/12/16 | 0 |
| 964 | Near North America, Inc. | Tango Management Consulting & Analytics | Purchase Order | 08/25/16 | 0 |
| 965 | Near North America, Inc. | Tango Management Consulting & Analytics | Purchase Order | 11/30/21 | 0 |
| 966 | Near North America, Inc. | Tango Management Consulting & Analytics | Purchase Order | 09/09/21 | 0 |
| 967 | Near North America, Inc. | Tango Management Consulting & Analytics | Purchase Order | 02/06/17 | 0 |
| 968 | Near North America, Inc. | Tango Management Consulting & Analytics | Purchase Order | 06/23/21 | 0 |
| 969 | Near North America, Inc. | Tango Management Consulting & Analytics | Purchase Order | 02/27/19 | 0 |
| 970 | Near North America, Inc. | Tango Management Consulting & Analytics | Purchase Order | 05/24/21 | 0 |
| 971 | Near North America, Inc. | Tango Management Consulting & Analytics | Purchase Order | 03/13/17 | 0 |
| 972 | Near North America, Inc. | Tango Management Consulting & Analytics | Purchase Order | 05/05/21 | 0 |
| 973 | Near North America, Inc. | Tango Management Consulting & Analytics | Purchase Order | 12/19/19 | 0 |
| 974 | Near North America, Inc. | Tango Management Consulting & Analytics | Purchase Order | 11/30/22 | 0 |
| 975 | Near North America, Inc. | Tango Management Consulting & Analytics | Purchase Order | 02/15/19 | 0 |
| 976 | Near North America, Inc. | Tango Management Consulting & Analytics | Purchase Order | 01/18/16 | 0 |
| 977 | Near North America, Inc. | Tango Management Consulting & Analytics | Purchase Order | 10/05/17 | 0 |
| 978 | Near North America, Inc. | Tango Management Consulting & Analytics | Purchase Order | 07/30/21 | 0 |
| 979 | Near North America, Inc. | Tango Management Consulting & Analytics | Purchase Order | 10/13/21 | 0 |
| 980 | Near North America, Inc. | Tango Management Consulting & Analytics | Purchase Order | 06/21/21 | 0 |
| 981 | Near North America, Inc. | Tango Management Consulting & Analytics | Purchase Order | 12/19/16 | 0 |
| 982 | Near North America, Inc. | Tango Management Consulting & Analytics | Purchase Order | 03/12/20 | 0 |
| 983 | Near North America, Inc. | Tango Management Consulting & Analytics | Purchase Order | 07/16/16 | 0 |
| 984 | Near North America, Inc. | Tango Management Consulting & Analytics | Purchase Order | 01/12/21 | 0 |
| 985 | Near North America, Inc. | Tango Management Consulting & Analytics | Purchase Order | 07/28/17 | 0 |
| 986 | Near North America, Inc. | Tango Management Consulting & Analytics | Purchase Order | 09/26/16 | 0 |
| 987 | Near North America, Inc. | Tango Management Consulting & Analytics | Purchase Order | 09/14/22 | 0 |
| 988 | Near North America, Inc. | Tango Management Consulting & Analytics | Purchase Order | 07/10/22 | 0 |
| 989 | Near North America, Inc. | Tango Management Consulting & Analytics | Purchase Order | 07/19/22 | 0 |
| 990 | Near North America, Inc. | Tango Management Consulting & Analytics | Purchase Order | 04/26/21 | 0 |
| 991 | Near North America, Inc. | Tango Management Consulting & Analytics | Purchase Order | 03/04/21 | 0 |
| 992 | Near North America, Inc. | Tango Management Consulting & Analytics | Purchase Order | 04/22/21 | 0 |
| 993 | Near North America, Inc. | Tango Management Consulting & Analytics | Purchase Order | 11/18/22 | 0 |
| 994 | Near North America, Inc. | Tango Management Consulting & Analytics | Purchase Order | 03/16/21 | 0 |
| 995 | Near North America, Inc. | Tango Management Consulting & Analytics | Purchase Order | 04/22/21 | 0 |
| 996 | Near North America, Inc. | Tango Management Consulting & Analytics | Purchase Order | 03/25/16 | 0 |
| 997 | Near North America, Inc. | Tango Management Consulting & Analytics | Purchase Order | 09/24/15 | 0 |
| 998 | Near North America, Inc. | Tango Management Consulting & Analytics | Purchase Order | 06/29/21 | 0 |
| 999 | Near North America, Inc. | Tango Management Consulting & Analytics | Purchase Order | 03/08/17 | 0 |
| 1000 | Near North America, Inc. | Tango Management Consulting & Analytics | Purchase Order | 06/29/21 | 0 |

| | | | | |
|---|---|---|---|---|
| 1001 | Near North America, Inc. | Tango Management Consulting & Analytics | Purchase Order | 08/08/22 |
| 1002 | Near North America, Inc. | Tango Management Consulting & Analytics | Purchase Order | 07/27/21 |
| 1003 | Near North America, Inc. | Tango Management Consulting & Analytics | Purchase Order | 10/19/20 |
| 1004 | Near North America, Inc. | Tango Management Consulting & Analytics | Purchase Order | 06/25/21 |
| 1005 | Near North America, Inc. | Tango Management Consulting & Analytics | Purchase Order | 06/25/21 |
| 1006 | Near North America, Inc. | Tango Management Consulting & Analytics | Purchase Order | 11/05/19 |
| 1007 | Near North America, Inc. | Tango Management Consulting & Analytics | Purchase Order | 10/24/19 |
| 1008 | Near North America, Inc. | Tango Management Consulting & Analytics | Purchase Order | 11/04/15 |
| 1009 | Near North America, Inc. | Tango Management Consulting & Analytics | Purchase Order | 01/10/17 |
| 1010 | Near North America, Inc. | Tango Management Consulting & Analytics | Purchase Order | 07/17/18 |
| 1011 | Near North America, Inc. | Tango Management Consulting & Analytics | Purchase Order | 10/05/17 |
| 1012 | Near North America, Inc. | Tango Management Consulting & Analytics | Purchase Order | 06/17/15 |
| 1013 | Near North America, Inc. | Tango Management Consulting & Analytics | Purchase Order | 02/25/16 |
| 1014 | Near North America, Inc. | Tango Management Consulting & Analytics | Purchase Order | 01/03/19 |
| 1015 | Near North America, Inc. | Tango Management Consulting & Analytics | Purchase Order | 06/29/16 |
| 1016 | Near North America, Inc. | Tango Management Consulting & Analytics | Purchase Order | 04/26/21 |
| 1017 | Near North America, Inc. | Tango Management Consulting & Analytics | Purchase Order | 10/17/18 |
| 1018 | Near North America, Inc. | Tango Management Consulting & Analytics | Purchase Order | 02/08/16 |
| 1019 | Near North America, Inc. | Tango Management Consulting & Analytics | Purchase Order | 06/30/20 |
| 1020 | Near North America, Inc. | Tango Management Consulting & Analytics | Purchase Order | 02/18/16 |
| 1021 | Near North America, Inc. | Tango Management Consulting & Analytics | Purchase Order | 09/12/19 |
| 1022 | Near North America, Inc. | Tango Management Consulting & Analytics | Purchase Order | 07/31/19 |
| 1023 | Near North America, Inc. | Tango Management Consulting & Analytics | Purchase Order | 04/20/17 |
| 1024 | Near North America, Inc. | Tango Management Consulting & Analytics | Purchase Order | 11/24/15 |
| 1025 | Near North America, Inc. | Tango Management Consulting & Analytics | Purchase Order | 12/10/18 |
| 1026 | Near North America, Inc. | Tango Management Consulting & Analytics | Purchase Order | 10/21/12 |
| 1027 | Near North America, Inc. | Tango Management Consulting & Analytics | Purchase Order | 09/14/18 |
| 1028 | Near North America, Inc. | Tango Management Consulting & Analytics | Purchase Order | 09/11/18 |
| 1029 | Near North America, Inc. | Tango Management Consulting & Analytics | Purchase Order | 10/25/18 |
| 1030 | Near North America, Inc. | Tango Management Consulting & Analytics | Purchase Order | 10/26/18 |
| 1031 | Near North America, Inc. | Tango Management Consulting & Analytics | Purchase Order | 09/11/18 |
| 1032 | Near North America, Inc. | Tango Management Consulting & Analytics | Purchase Order | 07/31/19 |
| 1033 | Near North America, Inc. | Tango Management Consulting & Analytics | Purchase Order | 06/17/19 |
| 1034 | Near North America, Inc. | Tango Management Consulting & Analytics | Purchase Order | 04/28/17 |
| 1035 | Near North America, Inc. | Tango Management Consulting & Analytics | Purchase Order | 11/11/16 |
| 1036 | Near North America, Inc. | Tango Management Consulting & Analytics | Purchase Order | 11/30/16 |
| 1037 | Near North America, Inc. | Tango Management Consulting & Analytics | Purchase Order | 06/21/16 |
| 1038 | Near North America, Inc. | Tango Management Consulting & Analytics | Purchase Order | 03/16/17 |
| 1039 | Near North America, Inc. | Tango Management Consulting & Analytics | Agreement | 06/18/15 |
| 1040 | Near North America, Inc. | Tarbell Management Group | Service Order | 03/25/22 |
| 1041 | Near North America, Inc. | Taste Buds Kitchen International, LLC | Service Order | 08/16/22 |
| 1042 | Near North America, Inc. | Tate Economic Research | Service Order | 12/09/21 |
| 1043 | Near North America, Inc. | Tate Economic Research | Service Order | 12/11/20 |
| 1044 | Near North America, Inc. | Tate Economic Research | Service Order | 02/07/19 |
| 1045 | Near North America, Inc. | Tate Economic Research | Service Order | 02/07/18 |
| 1046 | Near North America, Inc. | Tate Economic Research | Service Order | 02/07/20 |
| 1047 | Near North America, Inc. | Taubman Centers | Service Order #SC108 | 12/09/20 |
| 1048 | Near North America, Inc. | Taubman Centers | Service Order | 12/08/21 |
| 1049 | Near North America, Inc. | Taubman Centers | Service Order Data Feeds | 12/16/22 |
| 1050 | Near North America, Inc. | Taubman Centers | Service Order #SC111 (Addition to SC108) | 12/11/20 |
| 1051 | Near North America, Inc. | Taubman Centers | Service Order #SC118  (Addition to SC108) | 01/19/20 |
| 1052 | Near North America, Inc. | Taubman Centers | Agreement | 01/01/23 |
| 1053 | Near North America, Inc. | Taymax Group, LP | Service Order | 07/29/21 |
| 1054 | Near North America, Inc. | Tazewell County, VA | Summarized Deliverable and Fees | |
| 1055 | Near North America, Inc. | Tazewell County, VA | Signed Contract | 06/30/20 |
| 1056 | Near North America, Inc. | TCI - Research | Service Order #ES199 | 02/28/19 |
| 1057 | Near North America, Inc. | TCI - Research | Service Order #ES39 | 04/02/19 |
| 1058 | Near North America, Inc. | TD Bank | Agreement | 07/01/22 |
| 1060 | Near North America, Inc. | TD Bank | Master Service Agreement and all relevant Statements of Work | 08/31/23 |
| 1062 | Near North America, Inc. | Tech Verti Data and Analytics | Service Order for Data Sets | 06/07/18 |
| 1063 | Near North America, Inc. | Tetrad Computer Applications, Inc. | Agreement | 03/01/22 |
| 1064 | Near North America, Inc. | Tetrad Computer Applications, Inc. | Amendment 2 to Bundled Reseller Agreement | 05/31/21 |
| 1065 | Near North America, Inc. | Tetrad Computer Applications, Inc. | Service Order | 03/23/19 |

**401**

| | | | | **402** | |
|---|---|---|---|---|---|
| 1066 | Near North America, Inc. | Tetrad Computer Applications, Inc. | Purchase Order | 03/2? | 0 |
| 1067 | Near North America, Inc. | Tetrad Computer Applications, Inc. | Purchase Order | 01/?? | 0 |
| 1068 | Near North America, Inc. | Tetrad Computer Applications, Inc. | Service Order | 11/15/18 | 0 |
| 1069 | Near North America, Inc. | Tetrad Computer Applications, Inc. | Service Order | 11/15/18 | 0 |
| 1070 | Near North America, Inc. | Tetrad Computer Applications, Inc. | Service Order | 01/23/20 | 0 |
| 1071 | Near North America, Inc. | Tetrad Computer Applications, Inc. | Amendment 2 to Bundled Reseller Agreement | 05/31/21 | 0 |
| 1072 | Near North America, Inc. | Tetrad Computer Applications, Inc. | Service Order | 12/30/20 | 0 |
| 1073 | Near North America, Inc. | Tetrad Computer Applications, Inc. | Service Order | 01/30/19 | 0 |
| 1074 | Near North America, Inc. | Tetrad Computer Applications, Inc. | Purchase Order | 03/31/17 | 0 |
| 1075 | Near North America, Inc. | Tetrad Computer Applications, Inc. | Purchase Order | 09/17/18 | 0 |
| 1076 | Near North America, Inc. | Tetrad Computer Applications, Inc. | Service Order | 01/21/20 | 0 |
| 1077 | Near North America, Inc. | The Biltmore Company | Data License Agreement and all relevant Service Orders | 02/11/19 | 0 |
| 1079 | Near North America, Inc. | The Boston Consulting Group, Inc. | Data Processing Agreement and all relevant Service Orders | 05/06/22 | 0 |
| 1080 | Near North America, Inc. | The Boston Consulting Group, Inc. | Near Platform Data Usage and Services Agreement and all relevant Service Orders | 05/06/22 | 0 |
| 1082 | Near North America, Inc. | The Boston Consulting Group, Inc. | Invoicing Requirments | | 0 |
| 1085 | Near North America, Inc. | The Boston Consulting Group, Inc. | Statement of Work | 07/27/22 | 0 |
| 1088 | Near North America, Inc. | The Chicago Bears Football Club, Inc. | Service Order | 08/18/23 | 0 |
| 1089 | Near North America, Inc. | The Data Appeal Company SpA | Service Order | 10/17/22 | 0 |
| 1090 | Near North America, Inc. | The Last House on Mulholland | Service Order | 03/24/22 | 0 |
| 1091 | Near North America, Inc. | The Retail Coach | Limited License Agreement and all relevant Service Orders | 04/10/17 | 0 |
| 1092 | Near North America, Inc. | The Retail Coach | Limited License Agreement and all relevant Service Orders | 02/02/16 | 0 |
| 1093 | Near North America, Inc. | The Retail Coach | Limited License Agreement and all relevant Service Orders | 12/15/15 | 0 |
| 1094 | Near North America, Inc. | The Retail Coach | Limited License Agreement and all relevant Service Orders | 11/28/16 | 0 |
| 1095 | Near North America, Inc. | The Retail Coach | Limited License Agreement and all relevant Service Orders | 10/26/15 | 0 |
| 1096 | Near North America, Inc. | The Retail Coach | Limited License Agreement and all relevant Service Orders | 07/31/18 | 0 |
| 1097 | Near North America, Inc. | The Retail Coach | Limited License Agreement and all relevant Service Orders | 01/12/17 | 0 |
| 1098 | Near North America, Inc. | The Retail Coach | Limited License Agreement and all relevant Service Orders | 09/12/19 | 0 |
| 1099 | Near North America, Inc. | The Retail Coach | Limited License Agreement and all relevant Service Orders | 03/07/16 | 0 |
| 1100 | Near North America, Inc. | The Retail Strategy | Data License Agreement and all relevant Service Orders | 02/05/19 | 0 |
| 1101 | Near North America, Inc. | The Retail Strategy | Service Order | 04/16/19 | 0 |
| 1102 | Near North America, Inc. | The Shopping Center Group | Limited License Agreement | 03/16/17 | 0 |
| 1103 | Near North America, Inc. | The Shopping Center Group | Data License Agreement | 01/28/19 | 0 |
| 1104 | Near North America, Inc. | The Shopping Center Group | Limited License Agreement | 11/29/17 | 0 |
| 1105 | Near North America, Inc. | The Shopping Center Group | Limited License Agreement | 01/15/18 | 0 |
| 1106 | Near North America, Inc. | The Trust for Public Land | Service Order | 06/30/23 | 0 |
| 1107 | Near North America, Inc. | the Wireless Registry Inc. | 2d Restated and Amended Bundled Data License Agreement | 11/01/18 | 0 |
| 1108 | Near North America, Inc. | the Wireless Registry Inc. | Bundled Data License Agreement | 05/30/18 | 0 |
| 1109 | Near North America, Inc. | the Wireless Registry Inc. | Amendment 2 to Second Restated and Amended Bundled Data License Agreement | 12/01/19 | 0 |
| 1110 | Near North America, Inc. | the Wireless Registry Inc. | Bundled Data License Agreement | 08/04/17 | 0 |
| 1111 | Near North America, Inc. | the Wireless Registry Inc. | Amendment 1 to Second Restated and Amended Bundled Data License Agreement | 05/31/19 | 0 |
| 1112 | Near North America, Inc. | the Wireless Registry Inc. | Amendment 1 to Data License Agreement | 11/22/17 | 0 |
| 1113 | Near North America, Inc. | Think Economics | Agreement | 07/20/23 | 0 |
| 1114 | Near North America, Inc. | Think Economics | Data License Agreement and all relevant Service Orders | 04/20/21 | 0 |
| 1115 | Near North America, Inc. | Think Economics | Data License Agreement and all relevant Service Orders | 09/21/21 | 0 |
| 1116 | Near North America, Inc. | Think Economics | Data License Agreement and all relevant Service Orders | 04/01/22 | 0 |
| 1117 | Near North America, Inc. | ThirtySixNZ | Data License Agreement | 08/04/22 | 0 |
| 1121 | Near North America, Inc. | Topos.AI | Data License Agreement and all relevant Service Orders | 06/25/19 | 0 |
| 1122 | Near North America, Inc. | Topos.AI | Data License Agreement and all relevant Service Orders | 12/13/18 | 0 |
| 1123 | Near Intelligence | Topos.AI | Agreement and all relevant Service Orders | | 0 |
| 1124 | Near North America, Inc. | Tourism Australia | Service Order | 06/26/17 | 0 |
| 1125 | Near North America, Inc. | Tourism Economics | Agreement and all relevant Service Orders | 02/01/23 | 0 |
| 1135 | Near North America, Inc. | Tourism Economics | Data License Agreement and all relevant Service Orders | 01/24/23 | 0 |
| 1136 | Near North America, Inc. | Tourism Economics | Data License Agreement and all relevant Service Orders | 01/26/23 | 0 |
| 1141 | Near North America, Inc. | Tourism Economics | Data License Agreement and all relevant Service Orders | 03/14/23 | 0 |
| 1150 | Near North America, Inc. | Tourism Economics | Data License Agreement and all relevant Service Orders | 11/10/22 | 0 |
| 1151 | Near North America, Inc. | Tourism Economics | Data License Agreement and all relevant Service Orders | 12/14/22 | 0 |
| 1159 | Near North America, Inc. | Tourism Economics | Order for Alabma and Acceptance of Quote | 09/30/22 | 0 |
| 1161 | Near North America, Inc. | Tourism Economics | Data License Agreement and all relevant Service Orders | 04/18/23 | 0 |
| 1163 | Near North America, Inc. | Tourism Economics | Data License Agreement and all relevant Service Orders | 09/08/23 | 0 |
| 1166 | Near North America, Inc. | Tourism Economics | Data License Agreement and all relevant Service Orders | 06/30/21 | 0 |
| 1167 | Near North America, Inc. | Tourism Economics | Data License Agreement and all relevant Service Orders | 09/14/21 | 0 |
| 1169 | Near North America, Inc. | Tourism Economics | Data License Agreement and all relevant Service Orders | 09/13/22 | 0 |
| 1170 | Near North America, Inc. | Tourism Economics | Data License Agreement and all relevant Service Orders | 09/08/21 | 0 |

**403**

| 1171 | Near North America, Inc. | Tourism Economics | Data License Agreement and all relevant Service Orders | 04/03/__ | 0 |
| 1173 | Near North America, Inc. | Tourism Economics | Data License Agreement and all relevant Service Orders | 09/1__ | 0 |
| 1175 | Near North America, Inc. | Tourism Economics | Data License Agreement and all relevant Service Orders | 10/12/23 | 0 |
| 1176 | Near North America, Inc. | Tourism Economics | Data License Agreement and all relevant Service Orders | 05/11/22 | 0 |
| 1179 | Near North America, Inc. | Tourism Economics | Data License Agreement and all relevant Service Orders | 02/14/23 | 0 |
| 1180 | Near North America, Inc. | Tourism Economics | Data License Agreement and all relevant Service Orders | 11/14/22 | 0 |
| 1181 | Near North America, Inc. | Tourism Economics | Data License Agreement and all relevant Service Orders | 06/24/21 | 0 |
| 1182 | Near North America, Inc. | Tourism Economics | Data License Agreement and all relevant Service Orders | 09/27/19 | 0 |
| 1183 | Near North America, Inc. | Tourism Economics | Data License Agreement and all relevant Service Orders | 02/22/21 | 0 |
| 1186 | Near North America, Inc. | Tourism Economics | Data License Agreement and all relevant Service Orders | 12/13/22 | 0 |
| 1196 | Near North America, Inc. | Tourism Economics | Data License Agreement and all relevant Service Orders | 02/14/23 | 0 |
| 1197 | Near North America, Inc. | Tourism Economics | Data License Agreement and all relevant Service Orders | 02/14/23 | 0 |
| 1198 | Near North America, Inc. | Tourism Economics | Data License Agreement and all relevant Service Orders | 08/01/23 | 0 |
| 1199 | Near North America, Inc. | Tourism Economics | Data License Agreement and all relevant Service Orders | 08/31/22 | 0 |
| 1200 | Near North America, Inc. | Tourism Economics | Data License Agreement and all relevant Service Orders | 07/28/22 | 0 |
| 1202 | Near North America, Inc. | Tourism Economics | Data License Agreement and all relevant Service Orders | 03/28/23 | 0 |
| 1203 | Near North America, Inc. | Tourism Economics | Data License Agreement and all relevant Service Orders | 04/03/23 | 0 |
| 1204 | Near North America, Inc. | Tourism Economics | Data License Agreement and all relevant Service Orders | 07/13/20 | 0 |
| 1205 | Near North America, Inc. | Tourism Economics | Data License Agreement and all relevant Service Orders | 02/28/22 | 0 |
| 1206 | Near North America, Inc. | Tourism Economics | Data License Agreement and all relevant Service Orders | 06/30/22 | 0 |
| 1211 | Near North America, Inc. | Tourism Economics | Data License Agreement and all relevant Service Orders | 03/23/21 | 0 |
| 1220 | Near Intelligence Pte. Ltd. | Tourist Trackz Pty Ltd | Agreement | 01/12/22 | 0 |
| 1221 | Near North America, Inc. | Tourix | Service Order | 09/29/22 | 0 |
| 1222 | Near North America, Inc. | Town of Pinetop-Lakeside | Agreement | | 0 |
| 1223 | Near North America, Inc. | Town of Superior | Agreement | | 0 |
| 1225 | Near North America, Inc. | Trade Area Systems, Inc. | Bundled Reseller Agreement and all relevant Purchase Orders | 04/12/22 | 0 |
| 1233 | Near North America, Inc. | Trade Area Systems, Inc. | Agreement | 05/18/21 | 0 |
| 1318 | Near North America, Inc. | Trade Area Systems, Inc. | Amendment 1 to Reseller Agreement | 01/01/17 | 0 |
| 1321 | Near Intelligence Pte. Ltd. | Transport for NSW | Agreement | | 0 |
| 1322 | Near North America, Inc. | Transunion Risk and Alternative Data Solutions, Inc. | Service Order | 05/01/19 | 0 |
| 1323 | Near North America, Inc. | Travel Nevada | Service Order | 04/16/19 | 0 |
| 1324 | Near North America, Inc. | Travel Portland | Service Order | 01/29/19 | 0 |
| 1325 | Near North America, Inc. | Tribelix, LLC | Service Order | 10/08/22 | 0 |
| 1326 | Near North America, Inc. | Triple Digital | Service Order | 03/05/21 | 0 |
| 1327 | Near North America, Inc. | Twine Data | Service Order | 04/27/16 | 0 |
| 1328 | Near North America, Inc. | University of Auckland | Data License Agreement and all relevant Service Orders | 11/23/20 | 0 |
| 1329 | Near North America, Inc. | University of California Santa Cruz | Service Order | 05/28/20 | 0 |
| 1330 | Near Intelligence Pte. Ltd. | University of Canterbury | Agreement | 12/22/22 | 0 |
| 1331 | Near North America, Inc. | University of Kansas | Service Order | 09/29/20 | 0 |
| 1332 | Near North America, Inc. | University of Maryland | Data License Agreement and all relevant Service Orders | 05/12/20 | 0 |
| 1333 | Near North America, Inc. | University of Maryland | Data License Agreement and all relevant Service Orders | 08/01/22 | 0 |
| 1334 | Near North America, Inc. | University of Maryland | Amendment 1 to Agreement and Service Order | 07/28/20 | 0 |
| 1335 | Near North America, Inc. | University of Montana | Agreement | 01/01/23 | 0 |
| 1336 | Near North America, Inc. | Urban Studies | Agreement | 04/01/22 | 0 |
| 1337 | Near North America, Inc. | Urban Systems | Data License Agreement and all relevant Service Orders | 06/21/22 | 0 |
| 1338 | Near North America, Inc. | Urban Systems | Data License Agreement and all relevant Service Orders | 05/14/20 | 0 |
| 1340 | Near North America, Inc. | UrbanMetrics | Data License Agreement and all relevant Service Orders | 05/19/21 | 0 |
| 1341 | Near North America, Inc. | UrbanMetrics | Data License Agreement and all relevant Service Orders | 11/23/20 | 0 |
| 1342 | Near North America, Inc. | UrbanMetrics | Data License Agreement and all relevant Service Orders | 08/27/20 | 0 |
| 1343 | Near North America, Inc. | UrbanMetrics | Data License Agreement and all relevant Service Orders | 11/14/22 | 0 |
| 1344 | Near North America, Inc. | UrbanMetrics | Data License Agreement and all relevant Service Orders | 07/30/19 | 0 |
| 1345 | Near North America, Inc. | Urbis | Data License Agreement and all relevant Service Orders | 08/19/19 | 0 |
| 1346 | Near North America, Inc. | Urbis | Data License Agreement and all relevant Service Orders | 02/13/20 | 0 |
| 1351 | Near North America, Inc. | Urbis | Data License Agreement and all relevant Service Orders | 05/29/18 | 0 |
| 1352 | Near North America, Inc. | Urbis | Data License Agreement and all relevant Service Orders | 08/09/20 | 0 |
| 1353 | Near North America, Inc. | Urbis | Data License Agreement and all relevant Service Orders | 08/09/21 | 0 |
| 1357 | Near North America, Inc. | Urbis | Data License Agreement and all relevant Service Orders | 05/05/18 | 0 |
| 1358 | Near North America, Inc. | Urbis | Data License Agreement and all relevant Service Orders | 11/11/19 | 0 |
| 1363 | Near North America, Inc. | Urbis | Data License Agreement and all relevant Service Orders | 08/04/22 | 0 |
| 1365 | Near North America, Inc. | Urbis | Data License Agreement and all relevant Service Orders | 12/11/19 | 0 |
| 1366 | Near North America, Inc. | Urbis | Data License Agreement and all relevant Service Orders | 05/29/18 | 0 |
| 1367 | Near North America, Inc. | Urbis | Data License Agreement and all relevant Service Orders | 03/11/19 | 0 |
| 1368 | Near North America, Inc. | Urbis | Data License Agreement and all relevant Service Orders | 06/07/18 | 0 |

| | | | | | |
|---|---|---|---|---|---|
| 1369 | Near Intelligence Pte. Ltd. | Urbis Pty. Ltd. | Service Order | 08/0 | 0 |
| 1370 | Near North America, Inc. | US Ignite, Inc. | Service Level Agreement | 12/1 | 0 |
| 1371 | Near North America, Inc. | Valvoline | Data License Agreement and all relevant Service Orders | 07/22/19 | 0 |
| 1372 | Near North America, Inc. | Valvoline | Data License Agreement and all relevant Service Orders | 12/12/19 | 0 |
| 1373 | Near North America, Inc. | Valvoline | Data License Agreement and all relevant Service Orders | 09/27/22 | 0 |
| 1374 | Near North America, Inc. | Valvoline | Data License Agreement and all relevant Service Orders | 03/21/19 | 0 |
| 1375 | Near North America, Inc. | Valvoline | Data License Agreement and all relevant Service Orders | 11/24/21 | 0 |
| 1378 | Near North America, Inc. | Valvoline | Data License Agreement and all relevant Service Orders | 12/28/20 | 0 |
| 1379 | Near North America, Inc. | Valvoline | Agreement | 09/01/22 | 0 |
| 1380 | Near North America, Inc. | Veitch Lister Consulting Pty Ltd. | Service Order for Data Feeds | 06/17/22 | 0 |
| 1381 | Near North America, Inc. | Verizon | Exhibit A to Verizon Data Provider Agreement | 12/12/16 | 0 |
| 1382 | Near North America, Inc. | Verizon | Attachment A Service Statement of Work | 01/01/16 | 0 |
| 1383 | Near North America, Inc. | Verizon | Verizon Data Provider Agreement | 11/30/16 | 0 |
| 1384 | Near North America, Inc. | Verizon | Attachment A Service Statement of Work | 01/01/16 | 0 |
| 1385 | Near North America, Inc. | Verizon | Attachment C Service Statement of Work | 01/01/18 | 0 |
| 1386 | Near North America, Inc. | Vietch Lister Consulting Pty. Ltd. (VLC) | Agreement | 01/01/19 | 0 |
| 1387 | Near North America, Inc. | Vika Enterprises | Service Order for Data Sets | 10/18/19 | 0 |
| 1388 | Near Intelligence Pte. Ltd. | VDOOH Ltd | Agreement | 09/22/23 | 0 |
| 1389 | Near North America, Inc. | Visit Albuquerque | Data License Agreement and all relevant Service Orders | 06/02/21 | 0 |
| 1391 | Near North America, Inc. | Visit Anchorage | Service Order for Data Sets | 05/01/19 | 0 |
| 1392 | Near North America, Inc. | Visit Baltimore | Data License Agreement and all relevant Service Orders | 05/19/21 | 0 |
| 1393 | Near North America, Inc. | Visit California | Master Service Agreement | 01/24/20 | 0 |
| 1394 | Near North America, Inc. | Visit California | Exhibit 1 Work Statement #2 and Budget | 10/14/20 | 0 |
| 1395 | Near North America, Inc. | Visit California | Data License Agreement and all relevant Service Orders | 06/03/21 | 0 |
| 1398 | Near North America, Inc. | Visit California | Data License Agreement and all relevant Service Orders | 12/10/20 | 0 |
| 1399 | Near North America, Inc. | Visit Canton | Near Solutions Quote and Acceptance of Contract - Renewal | 02/18/23 | 0 |
| 1400 | Near North America, Inc. | Visit Canton | Data License Agreement | 09/09/21 | 0 |
| 1401 | Near North America, Inc. | Visit Canton | Agreement | 01/01/23 | 0 |
| 1402 | Near North America, Inc. | Visit Eureka | Data License Agreement | 03/10/20 | 0 |
| 1403 | Near North America, Inc. | Visit Eureka | Purchase Terms and Service Order | 03/12/20 | 0 |
| 1404 | Near North America, Inc. | Visit Fort Wayne | Service Order for Data Sets | 10/17/19 | 0 |
| 1405 | Near North America, Inc. | Visit Greater Palm Springs | Near Solution Overview and Quote for Dataset and Dashboard 2023 Renewal | 02/21/23 | 0 |
| 1406 | Near North America, Inc. | Visit Greater Palm Springs | Near Solution Overview and Quote for Historical Datasets | 04/21/23 | 0 |
| 1407 | Near North America, Inc. | Visit Greater Palm Springs | Data License Agreement | 10/20/21 | 0 |
| 1408 | Near North America, Inc. | Visit Hendricks County | Service Order | 02/27/20 | 0 |
| 1409 | Near North America, Inc. | Visit Manistee County | Service Order | 05/20/21 | 0 |
| 1410 | Near North America, Inc. | Visit Ogden | Service Order | 05/22/19 | 0 |
| 1411 | Near North America, Inc. | Visit Philadelphia | Service Order | 08/09/19 | 0 |
| 1413 | Near North America, Inc. | Visit Redding | Data License Agreement | 09/21/20 | 0 |
| 1414 | Near North America, Inc. | Visit Salt Lake | Data License Agreement | 04/25/19 | 0 |
| 1415 | Near North America, Inc. | Visit Savannah | Service Order | 10/29/19 | 0 |
| 1416 | Near North America, Inc. | Visit Temecula Valley | Service Order | 01/17/20 | 0 |
| 1417 | Near North America, Inc. | Visual Approach | Service Order | 03/17/22 | 0 |
| 1418 | Near North America, Inc. | Vitamin Cottage Natural Foods Market, Inc. | Service Order | 06/14/22 | 0 |
| 1419 | Near North America, Inc. | Vitamin Cottage Natural Foods Market, Inc. | Service Order | 11/18/19 | 0 |
| 1420 | Near North America, Inc. | W E Upjohn Institute for Employment Research | Data License Agreement | 12/21/22 | 0 |
| 1421 | Near North America, Inc. | W E Upjohn Institute for Employment Research | Data License Agreement | 12/01/22 | 0 |
| 1422 | Near North America, Inc. | Wakefern Food Corp. | Data License Agreement | 01/08/20 | 0 |
| 1423 | Near North America, Inc. | Wakefern Food Corp. | Data License Agreement | 02/12/21 | 0 |
| 1424 | Near North America, Inc. | Wal Mart de México, S. de R.L. de C.V. | Limited License Agreement | 01/01/19 | 0 |
| 1425 | Near North America, Inc. | Walmart | Agreement | 10/01/22 | 0 |
| 1426 | Near North America, Inc. | Walmart | Limited License Agreement | 01/05/17 | 0 |
| 1427 | Near North America, Inc. | Walmart | Limited License Agreement | 08/22/18 | 0 |
| 1428 | Near North America, Inc. | Walmart (Corporacion de Supermercados Unidos, S.F | Data License Agreement | 08/22/22 | 0 |
| 1429 | Near North America, Inc. | Walmart (Corporacion de Supermercados Unidos, S.F | Data License Agreement | 09/02/22 | 0 |
| 1430 | Near North America, Inc. | Walmart (Mexico y Centroamerica) | New Vendors Form | 10/10/19 | 0 |
| 1431 | Near North America, Inc. | Walmart (Mexico y Centroamerica) | Agreement | 05/28/19 | 0 |
| 1432 | Near North America, Inc. | Walmart (Mexico y Centroamerica) | Service Order for Historical Data | 06/30/23 | 0 |
| 1435 | Near North America, Inc. | Walmart (Mexico y Centroamerica) | Legal Representative Confirmation | 11/09/15 | 0 |
| 1436 | Near North America, Inc. | Walmart (Nueva Wal Mart de México, S. de R.L. de C | Amendment Agreement to the Data License Agreement | 07/04/23 | 0 |
| 1437 | Near North America, Inc. | Walmart (Servicios Administrativos Wal-Mart S. de F | Data License Agreement and all relevant Service Orders | 05/29/20 | 0 |
| 1438 | Near North America, Inc. | Walmart (Servicios Administrativos Wal-Mart S. de F | Limited License Agreement | 03/12/19 | 0 |
| 1439 | Near North America, Inc. | Walmart (Servicios Administrativos Wal-Mart S. de F | Limited License Agreement | 03/12/19 | 0 |

**404**

**405**

| | | | | | |
|---|---|---|---|---|---|
| 1440 | Near North America, Inc. | Walmart (Supermercados Unidos, S.R.L.) | Limited License Agreement | 10/01/... | 0 |
| 1441 | Near North America, Inc. | Walmart (Supermercados Unidos, S.R.L.) | Limited License Agreement | 10/0... | 0 |
| 1442 | Near North America, Inc. | Walmart (Supermercados Unidos, S.R.L.) | Limited License Agreement | 09/09/19 | 0 |
| 1443 | Near North America, Inc. | Wal-Mart Canada Corp. | Data License Agreement | 05/01/20 | 0 |
| 1444 | Near North America, Inc. | Washington County Visitors Association | Data License Agreement | 08/07/20 | 0 |
| 1445 | Near North America, Inc. | Washington County Visitors Association | Agreement | 06/17/21 | 0 |
| 1446 | Near North America, Inc. | Washington DC Economic Partnership | Service Order for Data Sets | 04/24/19 | 0 |
| 1447 | Near North America, Inc. | Watson & Associates Economists | Data License Agreement | 03/27/20 | 0 |
| 1448 | Near North America, Inc. | Watson & Associates Economists | Data License Agreement | 02/04/21 | 0 |
| 1449 | Near North America, Inc. | Wawa | Agreement | 06/01/22 | 0 |
| 1450 | Near North America, Inc. | Wawa | Data License Agreement and all relevant Service Orders | 04/17/19 | 0 |
| 1452 | Near North America, Inc. | Wawa | Data License Agreement and all relevant Service Orders | 06/04/18 | 0 |
| 1453 | Near North America, Inc. | Wawa | Amendment 1 to Agreement | 04/17/19 | 0 |
| 1454 | Near North America, Inc. | Wawa | Amendment 1 to Agreement | 02/20/20 | 0 |
| 1455 | Near North America, Inc. | Wawa | Data License Agreement and all relevant Service Orders | 08/01/18 | 0 |
| 1459 | Near North America, Inc. | Webster Pacific, LLC | Data License Agreement | 01/14/20 | 0 |
| 1460 | Near North America, Inc. | Webster Pacific, LLC | Data License Agreement | 10/22/19 | 0 |
| 1461 | Near North America, Inc. | Webster Pacific, LLC | Data License Agreement | 01/29/20 | 0 |
| 1462 | Near North America, Inc. | Webster Pacific, LLC | Data License Agreement | 11/11/19 | 0 |
| 1463 | Near North America, Inc. | Webster Pacific, LLC | Agreement | 05/24/21 | 0 |
| 1464 | Near North America, Inc. | Webster Pacific, LLC | Data License Agreement | 10/29/19 | 0 |
| 1465 | Near North America, Inc. | Webster Pacific, LLC | Data License Agreement | 12/17/19 | 0 |
| 1466 | Near North America, Inc. | Webster Pacific, LLC | Data License Agreement | 01/04/19 | 0 |
| 1467 | Near North America, Inc. | Webster Pacific, LLC | Data License Agreement | 04/06/21 | 0 |
| 1468 | Near North America, Inc. | Webster Pacific, LLC | Data License Agreement | 08/21/19 | 0 |
| 1469 | Near North America, Inc. | Webster Pacific, LLC | Data License Agreement | 12/01/20 | 0 |
| 1470 | Near North America, Inc. | Webster Pacific, LLC | Data License Agreement | 02/25/19 | 0 |
| 1471 | Near North America, Inc. | Weedmaps | Agreement | 05/10/23 | 0 |
| 1472 | Near North America, Inc. | Welcor Development | Limited License Agreement | 04/18/18 | 0 |
| 1473 | Near North America, Inc. | Welcor Development | Limited License Agreement | 07/18/16 | 0 |
| 1475 | Near North America, Inc. | Wendy's International, LLC | Wendy's International, LLC Master Services Agreement and all relevant Statements of Work | 06/18/18 | 0 |
| 1478 | Near North America, Inc. | West Village | Service Order for Data Sets | 09/01/20 | 0 |
| 1479 | Near North America, Inc. | WestRidge | Service Order | 06/22/17 | 0 |
| 1480 | Near North America, Inc. | Wetzel's Pretzels LLC | Service Order | 09/15/17 | 0 |
| 1481 | Near North America, Inc. | Whatabrands LLC | Data License Agreement | 04/06/20 | 0 |
| 1482 | Near North America, Inc. | Whatabrands LLC | Data License Agreement | 02/01/21 | 0 |
| 1483 | Near North America, Inc. | Whatabrands LLC | Data License Agreement | 02/01/18 | 0 |
| 1484 | Near North America, Inc. | Whatabrands LLC | Data License Agreement | 02/04/19 | 0 |
| 1485 | Near North America, Inc. | Whereabout | Data License Agreement | 03/15/23 | 0 |
| 1486 | Near North America, Inc. | Whysdom | Agreement and all relevant Service Orders | 03/31/22 | 0 |
| 1487 | Near North America, Inc. | Whysdom | Data License Agreement and all relevant Service Orders | 07/24/21 | 0 |
| 1488 | Near North America, Inc. | Whysdom | Data License Agreement and all relevant Service Orders | 07/24/21 | 0 |
| 1489 | Near North America, Inc. | Whysdom | Data License Agreement and all relevant Service Orders | 09/04/20 | 0 |
| 1493 | Near North America, Inc. | Whysdom | Data License Agreement and all relevant Service Orders | 07/17/20 | 0 |
| 1495 | Near North America, Inc. | Whysdom | Data License Agreement and all relevant Service Orders | 02/23/21 | 0 |
| 1496 | Near North America, Inc. | Whysdom | Data License Agreement and all relevant Service Orders | 12/14/21 | 0 |
| 1497 | Near North America, Inc. | Whysdom | Data License Agreement and all relevant Service Orders | 09/09/21 | 0 |
| 1498 | Near North America, Inc. | Whysdom | Data License Agreement and all relevant Service Orders | 06/20/22 | 0 |
| 1499 | Near North America, Inc. | Winick Realty Group, LLP | Data License Agreement | 12/20/17 | 0 |
| 1500 | Near North America, Inc. | Winick Realty Group, LLP | Data License Agreement | 06/04/18 | 0 |
| 1501 | Near Intelligence Pte. Ltd. | X-Locations, Inc | Agreement | 01/01/22 | 0 |
| 1502 | Near Intelligence Pte. Ltd. | X-Locations, Inc | Amendment Agreement | 01/01/23 | 0 |
| 1503 | Near North America, Inc. | X-Mode Social, Inc. | Data License Agreement | 10/01/18 | 0 |
| 1504 | Near North America, Inc. | Yahoo Ad Tech Singapore Pte Ltd | Purchase Order 315001339 | 09/12/23 | 0 |
| 1505 | Near North America, Inc. | Yahoo Ad Tech Singapore Pte Ltd | Purchase Order 315001340 | 09/12/23 | 0 |
| 1506 | Near North America, Inc. | Yahoo Ad Tech Singapore Pte Ltd | Purchase Order 315001341 | 09/12/23 | 0 |
| 1507 | Near North America, Inc. | Yahoo Ad Tech Singapore Pte Ltd | Purchase Order 315001342 | 09/12/23 | 0 |
| 1508 | Near North America, Inc. | Yahoo Ad Tech Singapore Pte Ltd | Purchase Order 315001345 | 09/12/23 | 0 |
| 1509 | Near North America, Inc. | Yahoo Ad Tech Singapore Pte Ltd | Purchase Order 315001346 | 09/12/23 | 0 |
| 1510 | Near North America, Inc. | Yahoo Ad Tech Singapore Pte Ltd | Purchase Order 315001347 | 09/12/23 | 0 |
| 1511 | Near North America, Inc. | Yahoo Ad Tech Singapore Pte Ltd | Purchase Order 315001348 | 09/12/23 | 0 |
| 1512 | Near North America, Inc. | Yahoo Ad Tech Singapore Pte Ltd | Purchase Order 315001303 | 08/04/23 | 0 |
| 1513 | Near North America, Inc. | Yahoo Ad Tech Singapore Pte Ltd | Purchase Order 315001304 | 08/04/23 | 0 |

**406**

| 1514 | Near North America, Inc. | Yahoo Ad Tech Singapore Pte Ltd | Purchase Order 315001291 | 07/1 | 0 |
|---|---|---|---|---|---|
| 1515 | Near North America, Inc. | Yahoo Ad Tech Singapore Pte Ltd | Purchase Order 315001292 | 07/ | 0 |
| 1516 | Near North America, Inc. | Yahoo Ad Tech Singapore Pte Ltd | Purchase Order 315001293 | 07/14/23 | 0 |
| 1517 | Near North America, Inc. | Yahoo Ad Tech Singapore Pte Ltd | Purchase Order 315001294 | 07/14/23 | 0 |
| 1518 | Near North America, Inc. | Yahoo Ad Tech Singapore Pte Ltd | Purchase Order 315001295 | 07/14/23 | 0 |
| 1519 | Near North America, Inc. | Yahoo Ad Tech Singapore Pte Ltd | Purchase Order 315001257 | 06/08/23 | 0 |
| 1520 | Near North America, Inc. | Yahoo Ad Tech Singapore Pte Ltd | Purchase Order 315001258 | 06/08/23 | 0 |
| 1521 | Near North America, Inc. | Yahoo Ad Tech Singapore Pte Ltd | Purchase Order 315001259 | 06/08/23 | 0 |
| 1522 | Near North America, Inc. | Yahoo Ad Tech Singapore Pte Ltd | Purchase Order 315001260 | 06/08/23 | 0 |
| 1523 | Near North America, Inc. | Yahoo Ad Tech Singapore Pte Ltd | Purchase Order 315001029 | 11/04/22 | 0 |
| 1524 | Near North America, Inc. | Yahoo Ad Tech Singapore Pte Ltd | Purchase Order 315001110 | 12/09/22 | 0 |
| 1525 | Near North America, Inc. | Yahoo Ad Tech Singapore Pte Ltd | Purchase Order 315000990, revised | 10/07/22 | 0 |
| 1526 | Near North America, Inc. | Yahoo Ad Tech Singapore Pte Ltd | Purchase Order 315001020 | 10/03/22 | 0 |
| 1527 | Near North America, Inc. | Yahoo Ad Tech Singapore Pte Ltd | Purchase Order 315001049 | 10/24/22 | 0 |
| 1528 | Near North America, Inc. | Yahoo Ad Tech Singapore Pte Ltd | Purchase Order 315001017 | 10/03/22 | 0 |
| 1529 | Near North America, Inc. | Yahoo Ad Tech Singapore Pte Ltd | Purchase Order 315001019 | 10/03/22 | 0 |
| 1530 | Near North America, Inc. | Yahoo Ad Tech Singapore Pte Ltd | Purchase Order 315000991 | 08/18/22 | 0 |
| 1531 | Near North America, Inc. | Yahoo Ad Tech Singapore Pte Ltd | Purchase Order 315001067 | 11/11/22 | 0 |
| 1532 | Near North America, Inc. | Yahoo Ad Tech Singapore Pte Ltd | Purchase Order 315001036 | 11/06/22 | 0 |
| 1533 | Near North America, Inc. | Yahoo Ad Tech Singapore Pte Ltd | Purchase Order 315001033 | 10/05/22 | 0 |
| 1534 | Near North America, Inc. | Yahoo Ad Tech Singapore Pte Ltd | Purchase Order 315001024 | 10/03/22 | 0 |
| 1535 | Near North America, Inc. | Yahoo Ad Tech Singapore Pte Ltd | Purchase Order 315001112 | 12/09/22 | 0 |
| 1536 | Near North America, Inc. | Yahoo Ad Tech Singapore Pte Ltd | Purchase Order 315000992 | 08/19/22 | 0 |
| 1537 | Near North America, Inc. | Yahoo Ad Tech Singapore Pte Ltd | Purchase Order 315001048 | 10/24/22 | 0 |
| 1538 | Near North America, Inc. | Yahoo Ad Tech Singapore Pte Ltd | Purchase Order 315001018 | 10/03/22 | 0 |
| 1539 | Near North America, Inc. | Yahoo Ad Tech Singapore Pte Ltd | Purchase Order 315001032 | 10/05/22 | 0 |
| 1540 | Near North America, Inc. | Yahoo Ad Tech Singapore Pte Ltd | Purchase Order 315001044 | 11/19/22 | 0 |
| 1541 | Near North America, Inc. | Yahoo Ad Tech Singapore Pte Ltd | Purchase Order 315001068 | 11/11/22 | 0 |
| 1542 | Near North America, Inc. | Yahoo Ad Tech Singapore Pte Ltd | Purchase Order 315001113 | 12/09/22 | 0 |
| 1543 | Near North America, Inc. | Yahoo Ad Tech Singapore Pte Ltd | Purchase Order 315001069 | 11/11/22 | 0 |
| 1544 | Near North America, Inc. | Yahoo Ad Tech Singapore Pte Ltd | Purchase Order 315001047 | 11/24/22 | 0 |
| 1545 | Near North America, Inc. | Yahoo Ad Tech Singapore Pte Ltd | Purchase Order 315000993 | 08/19/22 | 0 |
| 1546 | Near North America, Inc. | Yahoo Ad Tech Singapore Pte Ltd | Purchase Order 315000990 | 08/18/22 | 0 |
| 1547 | Near North America, Inc. | Yahoo Ad Tech Singapore Pte Ltd | Purchase Order 315001022 | 10/03/22 | 0 |
| 1548 | Near North America, Inc. | Yahoo Ad Tech Singapore Pte Ltd | Purchase Order 315001021 | 10/03/22 | 0 |
| 1549 | Near North America, Inc. | Yahoo Ad Tech Singapore Pte Ltd | Purchase Order 315001025 | 10/03/22 | 0 |
| 1550 | Near North America, Inc. | Yahoo Ad Tech Singapore Pte Ltd | Purchase Order 315001111 | 12/09/22 | 0 |
| 1551 | Near North America, Inc. | Yahoo Ad Tech Singapore Pte Ltd | Purchase Order 315001023 | 10/03/22 | 0 |
| 1552 | Near North America, Inc. | Yahoo Ad Tech Singapore Pte Ltd | Purchase Order 315000994 | 08/22/22 | 0 |
| 1553 | Near North America, Inc. | Yahoo Ad Tech Singapore Pte Ltd | Purchase Order 315001132 | 01/12/23 | 0 |
| 1554 | Near North America, Inc. | Yahoo Ad Tech Singapore Pte Ltd | Purchase Order 315001046 | 10/24/22 | 0 |
| 1555 | Near North America, Inc. | Yahoo Ad Tech Singapore Pte Ltd | Purchase Order 315001026 | 10/03/22 | 0 |
| 1556 | Near North America, Inc. | Yahoo Ad Tech Singapore Pte Ltd | Purchase Order 315001379 | 10/18/23 | 0 |
| 1557 | Near North America, Inc. | Yahoo Ad Tech Singapore Pte Ltd | Purchase Order 315001380 | 10/18/23 | 0 |
| 1558 | Near North America, Inc. | Yahoo Ad Tech Singapore Pte Ltd | Purchase Order 315001257 | 07/08/23 | 0 |
| 1559 | Near North America, Inc. | Yahoo Ad Tech Singapore Pte Ltd | Purchase Order 315001258 | 07/08/23 | 0 |
| 1560 | Near North America, Inc. | Yahoo Ad Tech Singapore Pte Ltd | Purchase Order 315001259 | 07/08/23 | 0 |
| 1561 | Near North America, Inc. | Yahoo Ad Tech Singapore Pte Ltd | Purchase Order 315001260 | 07/08/23 | 0 |
| 1562 | Near North America, Inc. | Yahoo Ad Tech Singapore Pte Ltd | Purchase Order 315001223 | 05/15/23 | 0 |
| 1563 | Near North America, Inc. | Yahoo Ad Tech Singapore Pte Ltd | Purchase Order 315001224 | 05/15/23 | 0 |
| 1564 | Near North America, Inc. | Yahoo Ad Tech Singapore Pte Ltd | Purchase Order 315001225 | 05/15/23 | 0 |
| 1565 | Near North America, Inc. | Yahoo Ad Tech Singapore Pte Ltd | Purchase Order 315001226 | 05/15/23 | 0 |
| 1566 | Near North America, Inc. | Yahoo Ad Tech Singapore Pte Ltd | Purchase Order 315001227 | 05/15/23 | 0 |
| 1567 | Near North America, Inc. | Yahoo Ad Tech Singapore Pte Ltd | Purchase Order 315001228 | 05/15/23 | 0 |
| 1568 | Near North America, Inc. | Yahoo Ad Tech Singapore Pte Ltd | Purchase Order 315001229 | 05/15/23 | 0 |
| 1569 | Near North America, Inc. | Yahoo Ad Tech Singapore Pte Ltd | Purchase Order 315001230 | 05/15/23 | 0 |
| 1570 | Near North America, Inc. | Yahoo Ad Tech Singapore Pte Ltd | Purchase Order 315001235 | 05/15/23 | 0 |
| 1571 | Near North America, Inc. | Yahoo Ad Tech Singapore Pte Ltd | Purchase Order 315001236 | 05/15/23 | 0 |
| 1572 | Near North America, Inc. | Yahoo Ad Tech Singapore Pte Ltd | Purchase Order 315001237 | 05/17/23 | 0 |
| 1573 | Near North America, Inc. | Yahoo Ad Tech Singapore Pte Ltd | Purchase Order 315001238 | 05/17/23 | 0 |
| 1574 | Near North America, Inc. | Yahoo Ad Tech Singapore Pte Ltd | Purchase Order 315001178 | 03/08/23 | 0 |
| 1575 | Near North America, Inc. | Yahoo Ad Tech Singapore Pte Ltd | Purchase Order 315001179 | 03/08/23 | 0 |
| 1576 | Near North America, Inc. | Yahoo Ad Tech Singapore Pte Ltd | Purchase Order 315001180 | 03/08/23 | 0 |

**407**

| # | Debtor | Counterparty | Description | Date | |
|---|--------|--------------|-------------|------|---|
| 1577 | Near North America, Inc. | Yahoo Ad Tech Singapore Pte Ltd | Purchase Order 315001204 | 04/11/23 | 0 |
| 1578 | Near North America, Inc. | Yahoo Ad Tech Singapore Pte Ltd | Purchase Order 315001132 | 01/12/23 | 0 |
| 1579 | Near North America, Inc. | Yahoo Ad Tech Singapore Pte Ltd | Purchase Order 315001133 | 01/12/23 | 0 |
| 1580 | Near North America, Inc. | Yahoo Ad Tech Singapore Pte Ltd | Purchase Order 315001157 | 02/10/23 | 0 |
| 1581 | Near North America, Inc. | Yahoo Ad Tech Singapore Pte Ltd | Purchase Order 315001158 | 02/10/23 | 0 |
| 1582 | Near North America, Inc. | Yahoo Ad Tech Singapore Pte Ltd | Purchase Order 315001159 | 02/10/23 | 0 |
| 1583 | Near North America, Inc. | Yahoo Ad Tech Singapore Pte Ltd | Purchase Order 315001160 | 02/10/23 | 0 |
| 1584 | Near North America, Inc. | Yahoo Ad Tech Singapore Pte Ltd | Purchase Order 315001161 | 02/10/23 | 0 |
| 1586 | Near North America, Inc. | Yahoo AdTech Australia Pty | Agreement and all relevant Purchase Orders | | 0 |
| 1589 | Near North America, Inc. | Yale University | Data Transfer and Use Agreement | 06/16/20 | 0 |
| 1590 | Near North America, Inc. | Zartico, Inc. | Agreement and all relevant Service Orders | 07/01/22 | 0 |
| 1596 | Near North America, Inc. | Zelnik Consulting | Service Order | 06/19/17 | 0 |
| 1597 | Near North America, Inc. | Zelnik Consulting | Service Order | 09/11/17 | 0 |
| 1600 | Near Intelligence Pte. Ltd. | Accuflex Consulting Pvt. | Consultant Agreement | 10/01/19 | 0 |
| 1601 | Near North America, Inc. | Adlakha Kukreja & Co. | Adlakha Kukreja & Co. Service Agreement | 12/01/22 | 0 |
| 1604 | Near North America, Inc. | Advanced Contributors Pvt. Ltd. | Agreement | 06/20/22 | 0 |
| 1605 | Near Intelligence Pte. Ltd. | AEI Legal LLC | Agreement | 09/30/23 | 0 |
| 1606 | Near Intelligence Pte. Ltd. | AEI Legal LLC | Agreement | 10/26/23 | 0 |
| 1608 | Near North America Inc | Alight Public Relations, LLC | Agreement | 01/03/23 | 0 |
| 1611 | Near Intelligence Pte. Ltd. | Amazon Web Services | AWS Main Customer Agreement | 10/04/19 | 0 |
| 1612 | Near Intelligence Pte. Ltd. | Amazon Web Services | AWS Private Pricing Addendum | 12/18/19 | 0 |
| 1613 | Near Intelligence Pte. Ltd. | Amazon Web Services | AWS Support Private Pricing Addendum #2 | 01/01/20 | 0 |
| 1614 | Near Intelligence Pte. Ltd. | Amazon Web Services | AWS Customer Notice to Extend Payment Period | 02/01/23 | 0 |
| 1615 | Near Intelligence Pte. Ltd. | Amazon Web Services | AWS Amendment No. 1 to AWS Support Private Pricing Addendum | 12/31/22 | 0 |
| 1616 | Near Intelligence Pte. Ltd. | Amazon Web Services | AWS Private Pricing Addendum | 12/16/21 | 0 |
| 1617 | Near Intelligence Pte. Ltd. | Amazon Web Services | AWS GDPR Data Processing Addendum, undated | N/A | 0 |
| 1618 | Near Intelligence Pte. Ltd. | Amazon Web Services | AWS Mutual Non-Disclosure Agreement | 10/04/19 | 0 |
| 1619 | Near Intelligence Pte Ltd | Amazon Web Services | Agreement | 12/31/21 | 0 |
| 1620 | Near Intelligence Pte. Ltd. | Amazon Web Services | Amazon AWS Inc. Payment Term Customer Notice | 02/01/23 | 0 |
| 1621 | Near Intelligence Pte. Ltd. | Amazon Web Services | Agreement | 12/16/21 | 0 |
| 1622 | Near Intelligence Pte. Ltd. | Amazon Web Services | Private Pricing Addendum | 06/27/23 | 0 |
| 1625 | Near Intelligence Pte. Ltd. | Anthony Fitzgerald (ASLF) | Agreement | 12/01/19 | 0 |
| 1627 | Near North America, Inc. | Aramark Refreshment Services, LLC | Agreement | 08/30/21 | 0 |
| 1628 | Near Intelligence, Inc. | ARInsights, LLC | Agreement | 05/03/23 | 0 |
| 1631 | Near Intelligence Pte Ltd | ASLF Media Pty Ltd | Agreement | 12/01/19 | 0 |
| 1635 | Near North America, Inc. | Baker Tilly US, LLP | Engagement Letter for 2022 Tax Compliance and Tax Provision Services | 01/04/23 | 0 |
| 1636 | Near North America, Inc. and Near Intelligence LLC | Baker Tilly US, LLP | Agreement | | 0 |
| 1637 | Near Intelligence, Inc. | Baker Tilly US, LLP | Tax Engagement Letter | 11/30/23 | 0 |
| 1641 | Near North America Inc | Bisnow, LLC | Agreement | 05/15/23 | 0 |
| 1644 | Near Intelligence Pte Ltd | Bonzai Digital Pte Ltd | Agreement | 12/31/21 | 0 |
| 1646 | Near North America, Inc. | Business Wire Inc | Agreement | 03/24/23 | 0 |
| 1647 | Near North America, Inc. | CACI LTD. | Master Services Agreement for Licensed Data | 12/21/21 | 0 |
| 1648 | Near Intelligence LLC | Calabrese Consulting, LLC | Agreement | 10/19/22 | 0 |
| 1651 | Near North America, Inc. | ChurnZero | Agreement | 10/25/22 | 0 |
| 1655 | Near Intelligence LLC | Craft Capital Management LLC | Agreement | 03/20/23 | 0 |
| 1656 | Near North America, Inc. | CREtech | Agreement | 08/04/23 | 0 |
| 1657 | Near Intelligence LLC | Daijogo & Pedersen, LLP | Agreement | 05/25/22 | 0 |
| 1661 | Near Intelligence LLC | Deel Inc. | Agreement | 10/01/22 | 0 |
| 1662 | Near Intelligence, Inc. | Deloitte Financial Advisory Services LLP | Engagement Letter | 04/07/23 | 0 |
| 1663 | Near Intelligence Pte Ltd | Digital Commons Limited | Agreement | 12/30/22 | 0 |
| 1664 | Near Intelligence Pte. Ltd. | Digital Commons Limited | Agreement | 03/16/22 | 0 |
| 1666 | Near Intelligence LLC | Digital Media Innovation - Notified Intrado | Agreement | 11/08/22 | 0 |
| 1670 | Near North America, Inc. | DOMO, Inc. | Agreement and all relevant Service Orders | 07/21/23 | 0 |
| 1676 | Near Intelligence LLC | Driti Advisors LLPs | Agreement and all relevant Statements of Work | 01/02/23 | 0 |
| 1677 | Near Intelligence LLC | Driti Advisors LLPs | Agreement and all relevant Statements of Work | 01/25/23 | 0 |
| 1678 | Near Intelligence LLC | E*TRADE Financial Corporate Services Inc | Agreement | 03/15/23 | 0 |
| 1679 | Near Intelligence LLC | E*TRADE Financial Corporate Services Inc | Agreement | 03/31/23 | 0 |
| 1680 | Near North America, Inc. | eContext.ai LLC dba Complementics | Data License Agreement | 02/29/28 | 0 |
| 1681 | Near North America, Inc. | eContext.ai LLC dba Complementics | Amendement to Data License Agreement | 04/01/19 | 0 |
| 1684 | Near Intelligence LLC | Edgar Agents LLC | Agreement | 03/13/23 | 0 |
| 1685 | Near Intelligence, Inc. | Edgar Agents LLC | Agreement | 06/30/23 | 0 |
| 1686 | Near Intelligence, Inc. | Edgar Agents LLC | Agreement | 03/09/23 | 0 |
| 1687 | Near Intelligence LLC | ePrivacy GmbH | Agreement | 04/21/22 | 0 |

**408**

| | | | | | |
|---|---|---|---|---|---|
| 1688 | Near Intelligence LLC | ePrivacy GmbH | Agreement | 05/1 | 0 |
| 1689 | Near Intelligence LLC | ePrivacy GmbH | Agreement | 05/1 | 0 |
| 1696 | Near North America, Inc. | ESRI (Environmental Systems Research Institute) | Agreement | 09/06/19 | 0 |
| 1697 | Near North America, Inc. | ESRI (Environmental Systems Research Institute) | Agreement | 09/06/19 | 0 |
| 1702 | Near North America, Inc. | Fiction Tribe, Inc | Agreement | N/A | 0 |
| 1705 | Near Intelligence Pte. Ltd. | Geoscape Australia | Licence Agreement | 12/17/21 | 0 |
| 1705 | Near Intelligence Pte. Ltd. | Geoscape Australia | Licence Agreement | 12/17/21 | 0 |
| 1712 | Near Intelligence Pte. Ltd. | Google Ireland Limited | Agreement | 12/18/13 | 0 |
| 1713 | Near North America, Inc. | Gokul Krishnan Rathakrishnan | Consultant Agreement | 08/01/22 | 0 |
| 1714 | Near Intelligence LLC | Grant Thornton Bharat LLP | Agreement | 11/18/22 | 0 |
| 1715 | Near Intelligence, Inc. | Grant Thornton Bharat LLP | Engagement Letter | 06/16/23 | 0 |
| 1716 | Near Intelligence, Inc. | Grant Thornton Bharat LLP | Addendum | 06/28/23 | 0 |
| 1717 | Near Intelligence, Inc. | Haynes and Boone, LLP | Letter Agreement | 09/06/23 | 0 |
| 1718 | Near Intelligence INC | Haynes and Boone, LLP | Agreement | | 0 |
| 1719 | Near Intelligence Pte. Ltd. | HERE Europe B.V. | 1. Here Europe B.V Addendum | 09/29/21 | 0 |
| 1720 | Near Intelligence Pte. Ltd. | HERE Europe B.V. | General License Agreement | 01/10/19 | 0 |
| 1721 | Near Intelligence Pte. Ltd. | Here Europe_Novations | Here Europe_Novation | 01/01/22 | 0 |
| 1722 | Near Intelligence LLC | Highspot Inc. | Agreement | 01/01/23 | 0 |
| 1726 | Near North America, Inc. | Hubspot Inc. | Agreement | 07/28/23 | 0 |
| 1728 | Near Intelligence Pte. Ltd. | ICR LLC | Agreement | 01/06/22 | 0 |
| 1729 | Near Intelligence Pte. Ltd. | ICR LLC | Agreement | 02/01/23 | 0 |
| 1730 | Near North America, Inc. | Idealab | Agreement | | 0 |
| 1733 | Near Intelligence Pte. Ltd. | Incubata Australia Pty Ltd | Agreement | 02/01/18 | 0 |
| 1734 | Near Intelligence Pte Ltd | Incubata Australia Pty Ltd | Agreement | 01/01/22 | 0 |
| 1735 | Near Intelligence, Inc. | Infinite Global Consulting Inc. | Public Relations Services Agreement | 07/05/23 | 0 |
| 1736 | Near Intelligence Pte. Ltd. | InfoSum Limited | Order Form | 06/22/23 | 0 |
| 1737 | Near Intelligence | InfoSum Limited | Agreement | 06/30/23 | 0 |
| 1739 | Near Intelligence Pte. Ltd. | INMOBI PTE LTD | Agreement | 04/25/19 | 0 |
| 1740 | Near Intelligence Pte. Ltd. | INMOBI PTE LTD | Transfer of Agreements to Near Intelligence Pte Ltd | 01/01/22 | 0 |
| 1741 | Near Intelligence Pte. Ltd. | INMOBI PTE LTD | Amendment | 06/23/22 | 0 |
| 1742 | Near Intelligence Pte. Ltd. | InMobi Pte Ltd | Data Licensing Master Agreement | 06/25/20 | 0 |
| 1743 | Near North America Inc | Integral Ad Science, Inc. | Agreement | 02/06/23 | 0 |
| 1747 | Near Intelligence LLC | Intrado Digital Media, LLC | Agreement | 01/31/23 | 0 |
| 1748 | Near Intelligence LLC | Intrado Digital Media, LLC | Agreement | 11/08/22 | 0 |
| 1749 | Near Intelligence LLC | Intrado Digital Media, LLC | Interdo Notified Agreement | 11/09/22 | 0 |
| 1750 | Near Intelligence LLC | Intrado Digital Media, LLC | Notified MSA | 11/08/22 | 0 |
| 1751 | Near Intelligence LLC | Intrado Digital Media, LLC | Notified Contract | 11/08/22 | 0 |
| 1752 | Near Intelligence, Inc. | InvestorBrandNetwork (IBN) | Service Agreement and all relevant Statements of Work | 09/01/23 | 0 |
| 1753 | Near Intelligence INC | InvestorBrandNetwork (IBN) | Agreement | 09/01/23 | 0 |
| 1755 | Near North America, Inc. | Irys, Inc | Amendment No. 1 to Data Supply Agreement | 05/05/21 | 0 |
| 1756 | Near North America, Inc. | Irys, Inc | Amendment No. 2 to Data Supply Agreement | 02/02/21 | 0 |
| 1757 | Near North America, Inc. | Irys, Inc | Amendment No. 3 to Data Supply Agreement | 07/19/23 | 0 |
| 1758 | Near North America, Inc. | Irys, Inc. | U.S. Data Privacy Addendum for Data Suppliers | 04/26/23 | 0 |
| 1759 | Near North America Inc | Jarrell Chalmers | Agreement | 01/03/23 | 0 |
| 1760 | Near North America Inc | Jason Wu | Agreement | 12/12/22 | 0 |
| 1762 | Near Intelligence LLC | Kelley Drye & Warren LLP | Engagement Letter | 07/27/22 | 0 |
| 1763 | Near Intelligence LLC | Kelley Drye & Warren LLP | Engagement letter | 09/22/22 | 0 |
| 1766 | Near Intelligence Pte. Ltd. | Kollaborations Ltd-Joy Lacana | Agreement | 06/30/23 | 0 |
| 1767 | Near Intelligence Pte. Ltd. | Kundeln I Acquisition Corp. | Engagement Addendum | 12/19/22 | 0 |
| 1768 | Near Intelligence LLC | Kundeln I Acquisition Corp. | Engagement Letter | 12/21/21 | 0 |
| 1770 | Near Intelligence Pte. Ltd. | Lead Generation Pty. Ltd. | Data License Renewal Agreement & Novation | 10/01/22 | 0 |
| 1771 | Near Intelligence Pte Ltd | Lex Connect Consulting Private Limited | Agreement | 05/31/16 | 0 |
| 1772 | Near Intelligence Pte Ltd | Lex Connect Consulting Private Limited | Amendment | 08/01/22 | 0 |
| 1773 | Near North America Inc | Linkedin | Agreement | 11/01/22 | 0 |
| 1775 | Near Intelligence Pte. Ltd. | M2K Advisors Pte Ltd | Agreement | 11/27/21 | 0 |
| 1776 | Near Intelligence Pte. Ltd. | M2K Advisors Pte Ltd | Agreement | 03/15/23 | 0 |
| 1777 | Near Intelligence Pte. Ltd. | M2K Advisors Pte Ltd | Agreement | 05/15/23 | 0 |
| 1779 | Near Intelligence Pte Ltd | Magnite, Inc. | Buyer Order Agreement | 11/20/19 | 0 |
| 1780 | Near Intelligence Pte Ltd | Magnite, Inc. | Agreement | N/A | 0 |
| 1782 | Near Intelligence INC | Marsh & McLennan Agency LLC | Agreement | 07/28/23 | 0 |
| 1783 | Near Intelligence Pte. Ltd. | Masahiro Matsui | Consulting Agreement | 06/12/23 | 0 |
| 1784 | Near Intelligence Pte. Ltd. | MaxMind, Inc. | Contract | 08/01/22 | 0 |
| 1786 | Near Intelligence Pte. Ltd. | MediaQuest Plus Business FZ LLC | Data License Agreement | 01/01/23 | 0 |

| | | | | | |
|---|---|---|---|---|---|
| 1787 | Near Intelligence Pte. Ltd. | MediaQuest Plus Business FZ LLC | Business Agreement | 01/0 | 0 |
| 1788 | Near Intelligence Pte. Ltd. | MediaQuest Plus Business FZ LLC | Agreement | 01/0 | 0 |
| 1789 | Near Intelligence Pte. Ltd. | Metayage Inc | Agreement | 07/27/21 | 0 |
| 1790 | Near North America, Inc. | Michael Bauer International GmbH | Mutual Data Exchange and License Agreement | 04/05/19 | 0 |
| 1791 | Near Intelligence LLC | Miras Visa Pvt Ltd | Agreement | 03/16/23 | 0 |
| 1792 | Near Intelligence Pte. Ltd. | MMP Worldwide FZ LLC | 146 MMP SSP Agreement | 06/01/23 | 0 |
| 1796 | Near Intelligence LLC | My Equity Comp, LLC | Agreement | 02/28/23 | 0 |
| 1797 | Near Intelligence LLC | My Equity Comp, LLC | Outsourcing Agreement | 02/28/23 | 0 |
| 1798 | Near Intelligence LLC | My Equity Comp, LLC | Retaining Notice | 03/24/23 | 0 |
| 1799 | Near Intelligence Pte. Ltd. | Natarajan & Swaminathan | Engagement Letter | 12/07/22 | 0 |
| 1800 | Near North America, Inc. | National Retail Federation, Inc. | Agreement | | 0 |
| 1801 | Near North America, Inc. | New England Sales & Marketing | Telemarketing Sales Support | 11/05/20 | 0 |
| 1808 | Near Intelligence LLC | North Land Capital Markets (Northland Securities, In | Agreement | 03/12/23 | 0 |
| 1810 | Near North America, Inc. | OpenX Technologies, Inc. (V) | Agreement | 09/29/22 | 0 |
| 1815 | Near North America, Inc. | PandaDoc, Inc. | Agreement | 06/21/23 | 0 |
| 1816 | Near North America, Inc. | PARKER IBRAHIM & BERG LLP | Agreement | 11/09/23 | 0 |
| 1818 | Near North America Inc | Pearl Meyer & Partners | Agreement | | 0 |
| 1820 | Near North America, Inc. | PICKWELL SP ZOO | Amendment No. 1 to Mutual Data License Agreement | 05/01/22 | 0 |
| 1821 | Near North America, Inc. | Propmodo Inc. | Agreement | 11/02/23 | 0 |
| 1822 | Near Intelligence Pte. Ltd. | PublicNSA LLC dba BIGDBM | Amendment No. 2 to Master Services Agreement | 09/05/22 | 0 |
| 1823 | Near Intelligence Pte. Ltd. | PublicNSA LLC dba BIGDBM | U.S. Data Privacy Addendum for Data Suppliers | 04/26/23 | 0 |
| 1824 | Near Intelligence Pte. Ltd. | PublicNSA LLC dba BIGDBM | Statement of Work #3 | 05/31/22 | 0 |
| 1826 | Near Intelligence Pte Ltd. | PubMatic, Inc. | Agreement | 01/01/22 | 0 |
| 1829 | Near Intelligence Pte. Ltd. | SC Tristone Production Impex SRL | Agreement | 01/01/23 | 0 |
| 1834 | Near Intelligence Pte. Ltd. | Shivaami Cloud Services Pvt Ltd | Novation Agreement | 01/01/22 | 0 |
| 1835 | Near North America, Inc. | Sight & Sound Film, LLC | Agreement | 03/08/23 | 0 |
| 1836 | Near Intelligence, Inc. | Singhvi Dev & Unni LLP | Agreement | 07/01/23 | 0 |
| 1838 | Near North America, Inc. | SM10000 PROPERTY, LLC | Agreement | 02/11/22 | 0 |
| 1839 | Near North America, Inc. | Smaato Inc. | Agreement | 01/01/22 | 0 |
| 1840 | Near North America, Inc. | Spatial Labs, Inc. | Agreement | 05/21/22 | 0 |
| 1842 | Near North America Inc | Subskribe | Agreement | 07/17/23 | 0 |
| 1843 | Near Intelligence Pte. Ltd. | Takeshi Yamamoto | Consultant Agreement | 01/01/22 | 0 |
| 1844 | Near North America, Inc. | Talent Hunt USA (HireBrain Corporation) | Agreement | | 0 |
| 1845 | Near North America, Inc. | Tamoco Limited | Second Amendment to Data License Agreement | 01/31/23 | 0 |
| 1846 | Near North America, Inc. | Tamoco Limited | Data License Agreement | 11/01/21 | 0 |
| 1847 | Near Intelligence LLC | The Benchmark Company, LLC | Agreement | 03/06/23 | 0 |
| 1848 | Near Intelligence Pte. Ltd. | The Nielsen Company | Agreement | 06/01/20 | 0 |
| 1849 | Near North America Inc. and Near Intelligence Pte. Ltd. | The Nielsen Company | Assignment & Amendement to DMA License Agreement | 06/23/23 | 0 |
| 1850 | Near North America, Inc. | TrueData Solutions, Inc. | Data License & Services Agreement | 10/01/22 | 0 |
| 1851 | Near Intelligence Pte. Ltd. | TrueData Solutions, Inc. | Renewal Addendum for Device Identity Service | 02/01/22 | 0 |
| 1852 | Near Intelligence Pte Ltd | TrueData Solutions, Inc. | Agreement | 10/01/22 | 0 |
| 1853 | Near Intelligence Pte. Ltd. | TrueData Solutions, Inc. | Data License & Services Agreement | 10/01/21 | 0 |
| 1854 | Near North America Inc | TrueGrit Communications, LLC | Agreement | 05/03/23 | 0 |
| 1855 | Near Intelligence LLC | TrustArc Inc - NI01 | Agreement | 03/06/23 | 0 |
| 1856 | Near Intelligence LLC | UHY LLP | Engagement Letter | 03/25/22 | 0 |
| 1857 | Near Intelligence Pte. Ltd. | Unify Technologies Private Limited | Agreement | 08/18/22 | 0 |
| 1858 | Near Intelligence Pte. Ltd. | Unify Technologies Private Limited | Unify Novation Copy | 01/01/23 | 0 |
| 1859 | Near Intelligence Pte. Ltd. | Unify Technologies Private Limited | MSA Amendment | 08/17/22 | 0 |
| 1860 | Near North America, Inc. | Unisource Solutions, Inc. | Agreement | 10/22/21 | 0 |
| 1863 | Near Intelligence Pte. Ltd. | Unruly Group LLC (now Nexxen Group LLC) | Agreement | 11/22/22 | 0 |
| 1866 | Near Intelligence Pte. Ltd. | Verve Group Europe GmbH | Agreement | 09/27/21 | 0 |
| 1867 | Near Intelligence Pte. Ltd. | Verve Group Europe GmbH | Data Protection Addendum | 09/27/21 | 0 |
| 1868 | Near Intelligence Pte. Ltd. | Verve Group Europe GmbH | Real-Time Bidding End User Agreement | 09/27/21 | 0 |
| 1869 | Near Intelligence Pte. Ltd. | Wahl & Case (EQIQ K.K.) | Agreement | 02/01/23 | 0 |
| 1872 | Near North America Inc | Workaletta Inc. | Agreement | 03/01/23 | 0 |
| 1874 | Near North America, Inc. | Xerox | First Amendment to Data Monetization Agreement | 02/07/18 | 0 |
| 1875 | Near North America, Inc. | X-Mode Social, Inc. | Data Monetization Agreement | 08/20/19 | 0 |
| 1876 | Near North America, Inc. | X-Mode Social, Inc. | Data Monetization Agreement | 11/20/17 | 0 |
| 1877 | Near Intelligence Pte. Ltd. | X-Mode Social, Inc. | Data Monetization Agreement | 07/01/19 | 0 |
| 1878 | Near North America, Inc. | X-Mode Social, Inc. | First Amendment to Data Monetization Agreement | 06/02/20 | 0 |
| 1879 | Near North America, Inc. | X-Mode Social, Inc. | Third Amendment to Data Monetization Agreement | 01/01/23 | 0 |
| 1880 | Near North America, Inc. | X-Mode Social, Inc. | Data Monetization Agreement | 11/20/17 | 0 |
| 1881 | Near North America, Inc. | X-Mode Social, Inc. | First Amendment to Data Monetization Agreement | 06/02/20 | 0 |

| 1882 | Near North America, Inc. | X-Mode Social, Inc. | Data Monetization Agreement | 08/__ | 0 |
| 1886 | Near North America, Inc. | Zoom Video Communications, Inc. | Agreement | 08/__ | 0 |
| 1887 | Near North America, Inc. | ZoomInfo Technologies LLC | Agreement | 10/01/23 | 0 |
| 1888 | Near Intelligence, Inc. | AFCO Acceptance Corporation | Premium Finance Agreement | 04/19/23 | 0 |
| 1891 | Near Intelligence, Inc. | AIG Specialty Insurance Company | Insurance Policy | 03/24/23 | 0 |
| 1892 | Near Intelligence, Inc. | AIG Specialty Insurance Company | Insurance Policy | 03/25/23 | 0 |
| 1893 | Near Intelligence, Inc. | Allied World Speciality Insurance Company | Insurance Policy | 03/23/23 | 0 |
| 1894 | Near Intelligence, Inc. | Berkshire Hathaway Specialty Insurance | Insurance Policy | 03/23/23 | 0 |
| 1895 | Near Intelligence, Inc. | Ace American Insurance Company (Chubb) | Insurance Policy | 07/22/23 | 0 |
| 1898 | Near Intelligence Pte. Ltd. | Chubb Insurance Singapore Ltd | Insurance Policy | 07/16/23 | 0 |
| 1899 | Near Intelligence Pte. Ltd. | Chubb Insurance Singapore Ltd | Insurance Policy | 07/17/23 | 0 |
| 1900 | Near Intelligence Pte. Ltd. | Marsh (Singapore) Pte Ltd | Insurance Policy | 08/24/23 | 0 |
| 1901 | Near Intelligence, Inc. | National Union Fire Insurance Company of Pittsburg | Insurance Policy | 03/23/23 | 0 |
| 1902 | Near Intelligence, Inc. | Sentinel Insurance Company Ltd (Hartford) | Insurance Policy | 07/28/23 | 0 |
| 1903 | Near Intelligence, Inc. | Sentinel Insurance Company Ltd (Hartford) | Insurance Policy | 07/28/23 | 0 |
| 1904 | Near Intelligence, Inc. | Vantage Risk Assurance Company | Insurance Policy | 03/23/23 | 0 |
| 1906 | Near Intelligence Pte. Ltd. | The Executive Centre Singapore Pte Ltd | Exclusive Workspace License Agreement | 02/15/22 | 0 |
| 1909 | Near Intelligence | SARL LDA Aquafontaine | Agreement | 07/14/05 | 0 |
| 1916 | Near Intelligence, Inc. | Chihiro Fukami | Agreement | 11/27/23 | 0 |
| 1917 | Near Intelligence, Inc. | Gladys Kong | Agreement | 03/23/23 | 0 |
| 1918 | Near Intelligence LLC | Gladys Kong | Agreement | 05/18/22 | 0 |
| 1919 | Near Intelligence, Inc. | Gladys Kong | Employment Agreement | 04/11/23 | 0 |
| 1920 | Near Intelligence, Inc. | Gladys Kong | Employment Agreement Modification | 11/10/23 | 0 |
| 1921 | Near Intelligence, Inc. | Gladys Kong | Agreement | 11/10/23 | 0 |
| 1922 | Near Intelligence, Inc. | Harikrishnan Palappetty | Agreement | 11/30/23 | 0 |
| 1926 | Near Intelligence LLC | John Faieta | Employment Agreement | 11/10/23 | 0 |
| 1927 | Near Intelligence LLC | John Faieta | Agreement | 05/18/22 | 0 |
| 1928 | Near Intelligence LLC | John Faieta | Agreement | 11/10/23 | 0 |
| 1929 | Near Intelligence LLC | Justin Joseph | Agreement | 05/18/22 | 0 |
| 1930 | Near Intelligence, Inc. | Karthik Uttarkar | Agreement | 11/20/23 | 0 |
| 1931 | Near Intelligence, Inc. | Kathryn T. Petralia | Agreement | 03/23/23 | 0 |
| 1932 | Near Intelligence LLC | Madhu Therani | Agreement | 05/18/22 | 0 |
| 1933 | Near Intelligence, Inc. | Mark N. Greene | Agreement | 03/23/23 | 0 |
| 1934 | Near Intelligence, Inc. | Michelle Zhou | Agreement | 11/17/23 | 0 |
| 1935 | Near Intelligence, Inc. | Mini Krishnamoorthy | Agreement | 03/23/23 | 0 |
| 1936 | Near Intelligence, Inc. | Nitin Agarwal | Agreement | 11/30/23 | 0 |
| 1937 | Near Intelligence, Inc. | Paul Gross | Employment Agreement | 11/10/23 | 0 |
| 1938 | Near Intelligence, Inc. | Paul Gross | Employment Agreement | 11/10/23 | 0 |
| 1942 | Near Intelligence, Inc. | Ronald Steger | Indemnification Agreement | 03/23/23 | 0 |
| 1943 | Near Intelligence, Inc. | Scott Slipy | Employment Agreement | 12/01/23 | 0 |
| 1945 | Near Intelligence, Inc. | Shobhit Shukla | Agreement | 03/23/23 | 0 |
| 1946 | Near Intelligence LLC | Shobhit Shukla | Agreement | 05/18/22 | 0 |
| 1947 | Near Intelligence, Inc. | Shobhit Shukla | Employment Agreement | 04/11/23 | 0 |
| 1948 | Near Intelligence, Inc. | Soonj Balakrishnan | Agreement | 11/30/23 | 0 |
| 1949 | Near Intelligence, Inc. | Sreenivas Reddy | Agreement | 11/20/23 | 0 |
| 2045 | Near North America, Inc. | KJ Consulting | Legal Consulting Serices | 01/01/24 | 0 |
| 2046 | Near Intelligence Pte. Ltd. | WireWheel, Inc. 2 | Agreement | 05/24/22 | 0 |
| 2047 | Near Intelligence | TriNet HR III, Inc 2 | Agreement | 02/10/23 | 0 |
| 2048 | Near Intelligence | TriNet HR III, Inc 2 | Agreement | 08/16/21 | 0 |
| 2049 | Near Intelligence | TriNet HR III, Inc 2 | Agreement | 08/16/21 | 0 |
| 2050 | Near Intelligence | TriNet HR III, Inc 2 | Agreement | 08/16/21 | 0 |
| 2051 | Near Intelligence | TriNet HR III, Inc 2 | Agreement | 08/16/21 | 0 |

Note:
1) Counterparty filed an objection that is resolved for purposes of the Sale Order; however, counterparty remain in discussion with the Debtors to resolve such objection in accordance with the Bidding Procedures Order.
2) Assumption of this contract remains subject to objection period pursuant to *Notice of Filing of (I) Closing Assigned Contracts and (II) Notice of Third Supplemental Notice of Cure Costs and Assumption and Assignment of Executory Contracts or Unexpired Leases in Connection With Sale of All or Substantially All Assets* [Docket No. 265].

# TAB 6

**412**

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re:<br><br>NEAR INTELLIGENCE, INC., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 23-11962 (TMH)<br><br>(Jointly Administered)<br><br>**Ref. D.I. 22, 231, 243, 245, 288 304,<br>305, 323, 328, 336, 337** |

## FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER APPROVING ADEQUACY OF DISCLOSURES ON A FINAL BASIS AND CONFIRMING THE MODIFIED THIRD AMENDED COMBINED DISCLOSURE STATEMENT AND CHAPTER 11 PLAN OF LIQUIDATION OF NEAR INTELLIGENCE, INC. AND ITS AFFILIATED DEBTORS PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE

Upon consideration of the *Modified Third Amended Combined Disclosure Statement and Chapter 11 Plan of Liquidation of Near Intelligence, Inc. and Its Affiliated Debtors*, dated March 13, 2024 [D.I. 336], attached hereto as Exhibit A (together with all exhibits thereto, and as may be amended, modified, or supplemented, the "Combined Disclosure Statement and Plan"), proposed by the debtors and debtors in possession in the above-captioned cases (collectively, the "Debtors"); and this Court having approved the Combined Disclosure Statement and Plan on an interim basis, for solicitation purposes only, by order dated February 5, 2024 [D.I. 243] (the "Solicitation Procedures Order"); and the Debtors having filed the Plan Supplement on February 27, 2024, March 11, 2024, and March 13, 2024 [D.I. 305, 328, 337] (as may be amended, modified, or supplemented, the "Plan Supplement"); and upon the affidavit of service filed reflecting compliance with the notice and solicitation requirements of the Solicitation Procedures Order

---

[1]   The Debtors in these chapter 11 cases, along with the last four digits of their federal tax identification numbers, to the extent applicable, are Near Intelligence, Inc. (7857), Near Intelligence LLC (7857), Near North America, Inc. (9078), and Near Intelligence Pte. Ltd. The Debtors' headquarters is located at 100 W Walnut St., Suite A-4, Pasadena, CA 91124.

**413**

[D.I. 311] (the "Notice Affidavit"); and upon the *Notice of (I) Approval of Combined Disclosure Statement and Plan on an Interim Basis for Solicitation Purposes Only; and (II) The Hearing to Consider (A) Final Approval of the Combined Disclosure Statement and Plan as Containing Adequate Information and (B) Confirmation of the Combined Disclosure Statement and Plan* [D.I. 246] (the "Combined Hearing Notice"); and upon the *Declaration of Stanislav Kesler of Kroll Restructuring Administration LLC Regarding the Solicitation of Votes and Tabulation of Ballots Cast on the First Amended Combined Disclosure Statement and Chapter 11 Plan of Liquidation of Near Intelligence, Inc. and Its Affiliated Debtors* [D.I. 317], filed with this Court on March 8, 2024 (the "Voting Declaration"); and upon the *Declaration of Jordan Fisher in Support of Confirmation of the Combined Disclosure Statement and Chapter 11 Plan of Liquidation of Near Intelligence, Inc. and Its Affiliated Debtors* [D.I. 319] (the "Fisher Declaration"), filed with this Court on March 8, 2024; and upon the *Memorandum of Law in Support of Confirmation of the Combined Disclosure Statement and Chapter 11 Plan of Liquidation of Near Intelligence, Inc. and Its Affiliated Debtors* [D.I. 318], filed with this Court on March 8, 2024 (the "Confirmation Memorandum"); and any objections to the Combined Disclosure Statement and Plan having been resolved and/or overruled by this Court pursuant to this Confirmation Order; and the hearing to consider Confirmation of the Combined Disclosure Statement and Plan and final approval of the disclosures contained therein having been held on March 12, 2024 (the "Combined Hearing"); and upon the evidence adduced and proffered and the arguments of counsel made at the Combined Hearing; and this Court having reviewed all documents in connection with the Combined Hearing and having heard all parties desiring to be heard; and upon the record of the Chapter 11 Cases (as defined below); and after due deliberation and consideration of all of the foregoing; and sufficient cause appearing therefor; this Court hereby makes the following:

**414**

## Findings of Fact and Conclusions of Law

A.     **Findings of Fact and Conclusions of Law.**   The findings and conclusions set forth herein, together with the findings of fact and conclusions of law set forth in the record of the Combined Hearing, constitute this Court's findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure, made applicable to these proceedings pursuant to Bankruptcy Rules 7052 and 9014. To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent that any of the following conclusions of law constitute findings of fact, they are adopted as such.

B.     **Capitalized Terms.**   Capitalized terms used herein, but not defined herein, shall have the respective meanings attributed to such terms in the Combined Disclosure Statement and Plan, the Plan Supplement, and the Solicitation Procedures Order, as applicable.

C.     **Jurisdiction and Venue.**   This Court has jurisdiction over the Chapter 11 Cases pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated as of February 29, 2012.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and this Court may enter a final order consistent with Article III of the United States Constitution, and the Debtors consent to entry of this Confirmation Order under the Local Rules and Article III of the United States Constitution.  Venue of these proceedings and the Chapter 11 Cases is proper in this district and in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

D.     **Chapter 11 Petitions.**   On December 8, 2023 (the "Petition Date"), each of the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code (the "Chapter 11 Cases").  The Debtors continue to manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  The Chapter 11 Cases are being jointly administered for procedural purposes only pursuant to Bankruptcy Rule 1015(b).  On December

22, 2023, the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed the Official Committee of Unsecured Creditors [D.I. 85] (the "Committee"). No party has requested the appointment of a trustee or examiner in the Chapter 11 Cases.

E.    **Judicial Notice.** This Court takes judicial notice of the docket in the Chapter 11 Cases maintained by the Clerk of this Court and/or its duly appointed agent, including, without limitation, all pleadings, notices, and other documents filed, all orders entered, and all evidence and arguments made, proffered or adduced at the hearings held before this Court during the Chapter 11 Cases, including, without limitation, the Combined Hearing.

F.    **Adequacy of Disclosures in the Combined Disclosure Statement and Plan.** The Combined Disclosure Statement and Plan contains adequate and extensive material information regarding the Debtors and the Combined Disclosure Statement and Plan (and the transactions contemplated thereby) so that the parties entitled to vote on the Combined Disclosure Statement and Plan could make informed decisions regarding the Combined Disclosure Statement and Plan. The Combined Disclosure Statement and Plan contains "adequate information" as that term is defined in section 1125(a) of the Bankruptcy Code and complies with any applicable additional requirements of the Bankruptcy Code and Bankruptcy Rules.

G.    **Plan Supplement.** Prior to the Combined Hearing, the Debtors filed the Plan Supplement. The Plan Supplement complies with the terms of the Combined Disclosure Statement and Plan, and the filing and notice of the Plan Supplement was appropriate and complied with the requirements of the Bankruptcy Code and the Bankruptcy Rules, and no other or further notice is or shall be required. The Debtors are authorized to modify the Plan Supplement documents following entry of this Confirmation Order in a manner consistent with this Confirmation Order and/or the Combined Disclosure Statement and Plan.

**416**

H.      **Mailing of Solicitation and Confirmation Materials.**  As is evidenced by the Voting Declaration and the Notice Affidavit, the transmittal and service of the Combined Disclosure Statement and Plan, the Ballots, the Combined Hearing Notice, and the Opt-Out Election Form were adequate and sufficient under the circumstances, and all parties required to be given notice of the Combined Disclosure Statement and Plan (including the deadline for filing and serving objections to final approval of the Combined Disclosure Statement and Plan as containing adequate information and Confirmation thereof) have been given due, proper, timely, and adequate notice thereof in accordance with the Solicitation Procedures Order and in compliance with the Bankruptcy Code, the Bankruptcy Rules, and applicable non-bankruptcy law, and such parties have had an opportunity to appear and be heard with respect thereto.  No other or further notice of the Combined Disclosure Statement and Plan and the Combined Hearing is required.

I.      **Voting.**  The procedures by which the Ballots for acceptance or rejection of the Combined Disclosure Statement and Plan were distributed and tabulated under the circumstances of the Chapter 11 Cases were fair, properly conducted, and complied with the Bankruptcy Code and the Bankruptcy Rules, applicable non-bankruptcy law and the Solicitation Procedures Order.

J.      **Bankruptcy Rule 3016.**  In accordance with Bankruptcy Rule 3016(a), the Combined Disclosure Statement and Plan is dated and identifies the Debtors as the plan proponents.  In accordance with Bankruptcy Rule 3016(b), the Debtors appropriately filed the Combined Disclosure Statement and Plan with this Court.

K.      **Plan Compliance with Bankruptcy Code (11 U.S.C. § 1129(a)(1)).**  As set forth below, the Combined Disclosure Statement and Plan complies with all of the applicable provisions of the Bankruptcy Code, thereby satisfying section 1129(a)(1) of the Bankruptcy Code.

**417**

L.     **Proper Classification (11 U.S.C. §§ 1122, 1123(a)(1)).**  The classification of Claims and Interests under the Combined Disclosure Statement and Plan is proper under the Bankruptcy Code.  In addition to Administrative Claims, Professional Fee Claims, DIP Loan Claims, Priority Tax Claims, and Quarterly Fees, which need not be classified, the Combined Disclosure Statement and Plan designates seven Classes of Claims and Interests.  The Claims or Interests placed in each Class are substantially similar to other Claims or Interests, as the case may be, in each such Class.  Valid business, factual, and legal reasons exist for separately classifying the various Classes of Claims and Interests created under the Combined Disclosure Statement and Plan, and such Classes do not unfairly discriminate between holders of Claims and Interests.  Thus, the Combined Disclosure Statement and Plan satisfies sections 1122 and 1123(a)(1) of the Bankruptcy Code.

M.     **Specification of Unimpaired Classes (11 U.S.C. § 1123(a)(2)).**  Section VII of the Combined Disclosure Statement and Plan specifies that Class 1 (Priority Non-Tax Claims) and Class 2 (Other Secured Claims) are Unimpaired under the Combined Disclosure Statement and Plan.  Thus, section 1123(a)(2) of the Bankruptcy Code is satisfied.

N.     **Specification of Treatment of Impaired Classes (11 U.S.C. § 1123(a)(3)).**  Section 7 of the Combined Disclosure Statement and Plan designates Class 3 (Prepetition Loan Claims), Class 4 (General Unsecured Claims), Class 5 (Existing Securities Law Claims), Class 6 (Interests), and Class 7A (Intercompany Claims) and Class 7B (Intercompany Interests) as Impaired and specifies the treatment of Claims and Interests in such Classes.  Thus, section 1123(a)(3) of the Bankruptcy Code is satisfied.

O.     **No Discrimination (11 U.S.C. § 1123(a)(4)).**  The Combined Disclosure Statement and Plan provides for the same treatment by the Debtors for each Claim or Interest in each

- 6 -

respective Class unless the holder of a particular Claim or Interest has agreed to a less favorable treatment of such Claim or Interest. Thus, section 1123(a)(4) of the Bankruptcy Code is satisfied.

P.      **Implementation of the Combined Disclosure Statement and Plan (11 U.S.C. § 1123(a)(5)).**  The Combined Disclosure Statement and Plan, including the provisions governing the Litigation Trust, provides adequate and proper means for the Combined Disclosure Statement and Plan's implementation. Thus, section 1123(a)(5) of the Bankruptcy Code is satisfied.

Q.      **Non-Voting Equity Securities (11 U.S.C. § 1123(a)(6)).**  The Combined Disclosure Statement and Plan does not provide for the issuance of non-voting securities, all Interests in the Debtors shall be cancelled and the Debtors' corporate entities shall be wound down. Therefore, section 1123(a)(6) of the Bankruptcy Code is satisfied.

R.      **Selection of Officers and Directors (11 U.S.C. § 1123(a)(7)).**  Section 9 of the Combined Disclosure Statement and Plan provides that the Litigation Trust shall be administered by the Litigation Trustee and the Litigation Trust Board, in accordance with the Combined Disclosure Statement and Plan and the Litigation Trust Agreement. Subject to paragraph 2 of this Order, the Litigation Trustee was designated by the DIP Agent and Prepetition Agent, in consultation with the Committee and acceptable to the Debtors, and shall be appointed as the trustee to the Litigation Trust as of the Effective Date or as soon as reasonably practicable thereafter. One member of the Litigation Trust Board was selected by the Committee, which member is reasonably acceptable to the DIP Agent and the Prepetition Agent, and two members of the Litigation Trust Board were selected by the DIP Agent and the Prepetition Agent in consultation with the Committee; provided, that, the Litigation Trustee must obtain unanimous consent from the members of the Litigation Trust Board before pursuing (or refusing to pursue) any Claims objections and settlements with respect to General Unsecured Claims, which are not

**419**

Prepetition Loan Claims, that are asserted or scheduled in the amount of $200,000 or higher. Prior to the Effective Date, the Debtors, the Committee, and the Prepetition Lenders shall use reasonable efforts to identify and agree upon Claims that the Litigation Trustee will seek to object to and/or settle. The Litigation Trustee shall oversee the Litigation Trust and the implementation of the Combined Disclosure Statement and Plan, pursue and litigate the Litigation Trust Assets (including the Retained Causes of Action), and oversee and implement the wind-down of the Estates.  The Litigation Trustee and Litigation Trust Board shall be vested with the power to act for the Debtors in the same capacity as applicable to a board of directors and officers, subject to the provisions of the Combined Disclosure Statement and Plan and the Litigation Trust Agreement (and all articles of incorporation or amendments, by-laws, governing documents, and related documents, as applicable, are deemed amended pursuant to the Combined Disclosure Statement and Plan to permit and authorize the same).  From and after the Effective Date, the Litigation Trustee and Litigation Trust Board shall be deemed officers, representatives, and directors of, and shall act for, each of the Debtors and their Estates.

S.      **Additional Combined Disclosure Statement and Plan Provisions (11 U.S.C. § 1123(b)).**  The Combined Disclosure Statement and Plan provisions are appropriate, in the best interests of the Debtors and their Estates, and consistent with the applicable provisions of the Bankruptcy Code and Bankruptcy Rules.

T.      **Executory Contracts (11 U.S.C. § 1123(b)(1), (b)(2)).**   The Debtors have exercised reasonable business judgment in determining to either assume, assume and assign, or reject each of the Debtors' remaining Executory Contracts as provided for in the Combined Disclosure Statement and Plan, the Plan Supplement, and this Confirmation Order, and any such determinations are justified and appropriate under the circumstances.

**420**

U.     **Compromises and Settlements Under and in Connection with the Combined Disclosure Statement and Plan (11 U.S.C. § 1123(b)(3)(A)).**     All of the settlements and compromises pursuant to and in connection with the Combined Disclosure Statement and Plan, including the Plan Settlement, comply with the requirements of section 1123(b)(3) of the Bankruptcy Code and Bankruptcy Rule 9019.

V.     **Releases, Exculpations, and Injunctions (11 U.S.C. § 1123(b)(3)(B)).**     Under the facts and circumstances of the Chapter 11 Cases, the releases, exculpations, and injunctions provided for in the Combined Disclosure Statement and Plan are, subject to the terms and limitations set forth in the Combined Disclosure Statement and Plan: (i) within the jurisdiction of this Court under 28 U.S.C. § 1334, (ii) an appropriate exercise of the Debtors' business judgment, (iii) integral elements of the transactions incorporated into the Combined Disclosure Statement and Plan and inextricably bound with the other provisions of the Combined Disclosure Statement and Plan, (iv) in exchange for good and valuable consideration provided by the Released Parties, (v) in the best interests of the Debtors, the Estates, and all holders of Claims and Interests that are Releasing Parties, (vi) fair, equitable, and reasonable, (vii) given and made after due notice and an opportunity to object, opt-out, and be heard with respect thereto, (viii) consistent with sections 105, 524, 1123, 1129, and 1141 and other applicable provisions of the Bankruptcy Code and other applicable law, and (ix) a bar to any of the Releasing Parties asserting any released claim against any of the Released Parties as and to the extent provided for in the Combined Disclosure Statement and Plan and this Confirmation Order.   For the avoidance of doubt, any defendant in the MobileFuse Litigation that is MobileFuse, its affiliates, or a current or former manager, member, officer or employee of MobileFuse (collectively, the "MobileFuse Parties") is not, and shall not be deemed to be, a Releasing Party.

**421**

W.     **Combined Disclosure Statement and Plan Compliance with Bankruptcy Code (11 U.S.C. § 1123(b)(5)).**  In accordance with section 1123(b)(5) of the Bankruptcy Code, Section 7 of the Combined Disclosure Statement and Plan modifies or leaves unaffected, as the case may be, the rights of holders of Claims and Interests in each Class.

X.     **Combined Disclosure Statement and Plan Compliance with Bankruptcy Code (11 U.S.C. § 1123(b)(6)).**  In accordance with section 1123(b)(6) of the Bankruptcy Code, the Combined Disclosure Statement and Plan includes various additional appropriate provisions that are not inconsistent with applicable provisions of the Bankruptcy Code.

Y.     **Modifications to the Combined Disclosure Statement and Plan (11 U.S.C. § 1127(a)).**  The modifications to the solicitation version of the Combined Disclosure Statement and Plan do not adversely change the treatment of any Class in a material manner.   Therefore, the Combined Disclosure Statement and Plan does not require additional disclosure under sections 1125 or 1127(a) of the Bankruptcy Code or re-solicitation of votes under section 1126 of the Bankruptcy Code, nor does it require that holders of Claims be afforded an opportunity to change previously cast acceptances or rejections.  The Classes that accepted the solicitation version of the Combined Disclosure Statement and Plan are deemed to have accepted the Combined Disclosure Statement and Plan and additional notice under Bankruptcy Rule 3019(a) is not required.

Z.     **Debtors' Compliance with Bankruptcy Code (11 U.S.C. § 1129(a)(2)).**  Pursuant to section 1129(a)(2) of the Bankruptcy Code, the Debtors have complied with the applicable provisions of the Bankruptcy Code, including, without limitation, sections 1122, 1123, 1124, 1125, and 1126 of the Bankruptcy Code, the Bankruptcy Rules, and the Solicitation Procedures Order governing notice, disclosure, and solicitation in connection with the Combined Disclosure

**422**

Statement and Plan, the Plan Supplement, and all other matters considered by this Court in connection with the Chapter 11 Cases.

AA.     **Combined Disclosure Statement and Plan Proposed in Good Faith and Not by Means Forbidden by Law (11 U.S.C. § 1129(a)(3)).**  The Debtors have proposed the Combined Disclosure Statement and Plan in good faith and not by any means forbidden by law, thereby satisfying section 1129(a)(3) of the Bankruptcy Code.  In determining that the Combined Disclosure Statement and Plan has been proposed in good faith, this Court has examined the totality of the circumstances surrounding the filing of the Chapter 11 Cases, the Combined Disclosure Statement and Plan itself, and the process leading to its formulation.  The Combined Disclosure Statement and Plan is the result of extensive arm's length negotiations among the Debtors, the Committee, the U.S. Trustee, the Prepetition Lenders, the DIP Lenders, the SEC (as defined below) and other key stakeholders.   The Combined Disclosure Statement and Plan promotes the objectives and purposes of the Bankruptcy Code.

BB.     **Payments for Services or Costs and Expenses (11 U.S.C. § 1129(a)(4)).**  The procedures set forth in the Combined Disclosure Statement and Plan for this Court's approval of the fees, costs, and expenses to be paid in connection with the Chapter 11 Cases, or in connection with the Combined Disclosure Statement and Plan and incident to the Chapter 11 Cases, satisfy the objectives of, and are in compliance with, section 1129(a)(4) of the Bankruptcy Code.

CC.     **Directors, Officers, and Insiders (11 U.S.C. § 1129(a)(5)).**  In accordance with the Combined Disclosure Statement and Plan, the Debtors' corporate entities will be wound down and, pursuant to Section 9.4 of the Combined Disclosure Statement and Plan, upon the occurrence of the Effective Date, each of the Debtors' directors and officers shall be terminated automatically (except to the extent retained by the Litigation Trustee, subject to a separate agreement with the

Litigation Trustee).  Subject to paragraph 2 of this Order, the identity of the Litigation Trustee has been disclosed as part of the Plan Supplement, and is consistent with the interests of holders of Claims and Interests and with public policy.  Thus, the Combined Disclosure Statement and Plan satisfies section 1129(a)(5) of the Bankruptcy Code.

DD.    **Best Interests of Creditors (11 U.S.C. § 1129(a)(7)).**  The "best interests" test is satisfied as to all Impaired Classes under the Combined Disclosure Statement and Plan, as each holder of a Claim or Interest in such Impaired Classes will receive or retain property of a value, as of the Effective Date, that is not less than the amount that such holder would so receive or retain if the Debtors were liquidated under chapter 7 of the Bankruptcy Code.

EE.    **Acceptance by Certain Classes (11 U.S.C. § 1129(a)(8)).**  Class 1 (Priority Non-Tax Claims) and Class 2 (Other Secured Claims) are left unimpaired under the Combined Disclosure Statement and Plan. Class 3 (Prepetition Loan Claims) and Class 4 (General Unsecured Claims)[2] have voted to accept the Combined Disclosure Statement and Plan in accordance with the Bankruptcy Code, thereby satisfying section 1129(a)(8) as to those Classes.  Class 5 (Existing Securities Law Claims), Class 6 (Interests), Class 7A (Intercompany Claims) and Class 7B (Intercompany Interests) are deemed to have rejected the Combined Disclosure Statement and Plan pursuant to section 1126(g) of the Bankruptcy Code.  Accordingly, section 1129(a)(8) of the Bankruptcy Code has not and cannot be satisfied.  The Combined Disclosure Statement and Plan,

---

[2]    With respect to Debtor Near Intelligence LLC, Class 4 failed to submit any Ballots and is deemed to have accepted the Combined Disclosure Statement and Plan with respect to such Debtor.  See In re Accuride Corp., No. 09-13449 BLS, 2010 WL 5093173, at *6 (Bankr. D. Del. Feb. 18, 2010) ("Class 4A failed to submit any Ballots and is deemed to have accepted the Plan."); see also In re Ruti–Sweetwater, Inc., 836 F.2d 1263 (10th Cir.1988) (inaction by a non-voting single class creditor constitutes acceptance by the class); In re Adelphia Communs. Corp., 368 B.R. 140 (Bankr.S.D.N.Y.2007) (following Ruti–Sweetwater in holding that a non-voting class is deemed to have accepted the plan).

however, is still confirmable because it satisfies the nonconsensual confirmation provisions of section 1129(b), as set forth below.

FF.     **Treatment of Administrative Claims, Professional Fee Claims, Priority Tax Claims, DIP Loan Claims and U.S. Trustee Claims (11 U.S.C. § 1129(a)(9)).**     The treatment of Administrative Claims, Professional Fee Claims, DIP Loan Claims, Priority Tax Claims, and Quarterly Fees pursuant to Sections 2 and 6 of the Combined Disclosure Statement and Plan satisfies section 1129(a)(9) of the Bankruptcy Code.

GG.     **Acceptance by Impaired Class (11 U.S.C. § 1129(a)(10)).**     Class 3 (Prepetition Loan Claims) and Class 4 (General Unsecured Claims) are Impaired Classes of Claims that voted to accept the Combined Disclosure Statement and Plan with respect to each of the Debtors, determined without including any acceptance of the Combined Disclosure Statement and Plan by any insider.  Therefore, section 1129(a)(10) of the Bankruptcy Code is satisfied.

HH.     **Feasibility (11 U.S.C. § 1129(a)(11)).**     The evidence supporting the Combined Disclosure Statement and Plan proffered or adduced by the Debtors at, or prior to, or in declarations filed in connection with the Combined Hearing establish that the Debtors have the wherewithal to make all payments and otherwise comply with their financial commitments under the Combined Disclosure Statement and Plan.

II.     **Payment of Fees (11 U.S.C. § 1129(a)(12)).**     All fees payable under 28 U.S.C. § 1930 have been paid or will be paid on or before the Effective Date pursuant to the Combined Disclosure Statement and Plan, thereby satisfying section 1129(a)(12) of the Bankruptcy Code.

JJ.     **Miscellaneous Provisions (11 U.S.C. §§ 1129 (a)(6), 1129(a)(13)–(16)).**     Sections 1129(a)(6), (a)(13)–(16) of the Bankruptcy Code are inapplicable to Confirmation, as the Debtors (i) will not have any businesses involving the establishment of rates (section 1126(a)(6)), (ii) are

**425**

not obligated to pay retiree benefits (as defined in section 1114(a) of the Bankruptcy Code) (section 1129(a)(13)), (iii) have no domestic support obligations (section 1129(a)(14)), (iv) are not individuals (section 1129(a)(15)), and (v) are not nonprofit corporations (section 1129(a)(16)).

KK.    **No Unfair Discrimination; Fair and Equitable Treatment (11 U.S.C. § 1129(b)).**  The classification and treatment of Claims and Interests in Class 5 (Existing Securities Law Claims), Class 6 (Interests), Class 7A (Intercompany Claims) and Class 7B (Intercompany Interests), which are deemed to have rejected the Combined Disclosure Statement and Plan, is proper pursuant to section 1122 of the Bankruptcy Code, does not discriminate unfairly, and is fair and equitable pursuant to section 1129(b)(1) of the Bankruptcy Code.  There is no Class of Claims or Interests junior to the holders of Claims and Interests in Class 5, Class 6, Class 7A and Class 7B that will receive or retain property under the Combined Disclosure Statement and Plan on account of their Claims or Interests.  Accordingly, the Combined Disclosure Statement and Plan does not violate the absolute priority rule, does not discriminate unfairly, and is fair and equitable with respect to each Class that is deemed to have rejected the Combined Disclosure Statement and Plan.  Thus, the Combined Disclosure Statement and Plan satisfies section 1129(b) of the Bankruptcy Code.

LL.    **Only One Plan (11 U.S.C. § 1129(c)).**  The Combined Disclosure Statement and Plan is the only chapter 11 plan currently proposed in the Chapter 11 Cases, and section 1129(c) of the Bankruptcy Code is therefore satisfied.

MM.    **Principal Purpose (11 U.S.C. § 1129(d)).**  The principal purpose of the Combined Disclosure Statement and Plan is neither the avoidance of taxes, nor the avoidance of the application of section 5 of the Securities Act of 1933, and no governmental unit has objected to

Confirmation on any such grounds.  Accordingly, section 1129(d) of the Bankruptcy Code is inapplicable.

NN.    **Satisfaction of Confirmation Requirements.**  Based upon the foregoing, the Combined Disclosure Statement and Plan satisfies the requirements for Confirmation set forth in section 1129 of the Bankruptcy Code and should be confirmed.

OO.    **Good Faith Solicitation (11 U.S.C. § 1125(e)).**  The Debtors and their officers, directors, employees, advisors, Professionals, and agents have acted in good faith within the meaning of section 1125(e) of the Bankruptcy Code, and in compliance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Solicitation Procedures Order in connection with all of their respective activities relating to the solicitation of acceptances of the Combined Disclosure Statement and Plan and their participation in the activities described in section 1125 of the Bankruptcy Code, and they are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code and the release, injunction and exculpation provisions set forth in Section 14 of the Combined Disclosure Statement and Plan and in this Confirmation Order.

PP.    **Retention of Jurisdiction.**  This Court retains jurisdiction over the matters set forth in Section 15 of the Combined Disclosure Statement and Plan and/or section 1142 of the Bankruptcy Code.  For the avoidance of doubt, the rights of all parties are reserved with respect to the jurisdiction of the Bankruptcy Court over the MobileFuse Litigation.

**Based upon the foregoing findings, and upon the record made before this Court at the Combined Hearing, and good and sufficient cause appearing therefor, it is hereby ORDERED, ADJUDGED AND DECREED THAT:**

**<u>Adequacy of Disclosures in the Combined Disclosure Statement and Plan</u>**

1.    The Combined Disclosure Statement and Plan is approved on a final basis as having adequate information as contemplated by section 1125(a)(1) of the Bankruptcy Code and sufficient

information of a kind necessary to satisfy the disclosure requirements of any applicable non-bankruptcy laws, rules, and regulations.

<u>**Confirmation of the Combined Disclosure Statement and Plan**</u>

2.      The Combined Disclosure Statement and Plan, as and to the extent modified by this Confirmation Order, is approved and confirmed pursuant to section 1129 of the Bankruptcy Code; provided that, the Effective Date shall not occur prior to the Debtors' filing of a notice identifying the Litigation Trustee and the Litigation Trustee's compensation, which notice shall be included in the notice of occurrence of the Effective Date.  All objections to Confirmation and the Combined Disclosure Statement and Plan not otherwise withdrawn, resolved, or otherwise disposed of are overruled and denied on the merits.

3.      The terms of the Combined Disclosure Statement and Plan are incorporated by reference into (except to the extent modified by this Confirmation Order), and are an integral part of, this Confirmation Order.  Each provision of the Combined Disclosure Statement and Plan, as modified by this Confirmation Order, is authorized and approved and shall have the same validity, binding effect, and enforceability as every other provision of the Combined Disclosure Statement and Plan.   The terms of the Combined Disclosure Statement and Plan, as modified by any modifications made at the Combined Hearing, are incorporated by reference into and are an integral part of this Confirmation Order.  The failure specifically to describe, include, or refer to any particular article, section, or provision of the Combined Disclosure Statement and Plan, Plan Supplement, or any related document in this Confirmation Order shall not diminish or impair the effectiveness of such article, section, or provision, and the Combined Disclosure Statement and Plan, the Plan Supplement, and all related documents are approved and confirmed in their entirety as if set forth verbatim in this Confirmation Order.

<u>**Conditions Precedent**</u>

4.      The Effective Date shall not occur unless the conditions precedent set forth in Section 13.1 of the Combined Disclosure Statement and Plan have been satisfied or waived in accordance with Section 13.3 of the Combined Disclosure Statement and Plan.

<u>**Compromises and Settlements Under the Combined Disclosure Statement and Plan**</u>

5.      Pursuant to section 1123 of the Bankruptcy Code, upon the Effective Date, all settlements and compromises set forth in the Combined Disclosure Statement and Plan, including the Plan Settlement, are approved in all respects, and constitute good faith compromises and settlements.

<u>**Classification and Treatment**</u>

6.      The Combined Disclosure Statement and Plan's classification scheme is approved. The classifications set forth on the Ballots (a) were set forth on the Ballots solely for purposes of voting to accept or reject the Combined Disclosure Statement and Plan, (b) do not necessarily represent, and in no event shall be deemed to modify or otherwise affect, the actual classification of such Claims under the Combined Disclosure Statement and Plan for distribution purposes, (c) may not be relied upon by any holder as representing the actual classification of such Claim under the Combined Disclosure Statement and Plan for distribution purposes, and (d) shall not be binding on the Debtors, and/or the Litigation Trustee, as applicable, except for the purpose of voting on the Combined Disclosure Statement and Plan.

<u>**Authorization to Implement the Combined Disclosure Statement and Plan**</u>

7.      The Debtors and/or the Litigation Trustee, as applicable, are authorized to take or cause to be taken all corporate actions necessary or appropriate to implement all provisions of, and to consummate the Combined Disclosure Statement and Plan and to execute, enter into, or otherwise make effective all documents arising in connection therewith, prior to, on, and after the

Effective Date, all without further action under applicable law, regulation, order, or direction by the pre-Effective Date shareholders or board of directors of the Debtors.

8.     On or after the Effective Date, the officers of the Debtors or Litigation Trustee, as applicable, are authorized to do all things and to execute and deliver all agreements, documents, instruments, notices, and certificates as are contemplated by the Combined Disclosure Statement and Plan and to take all necessary actions required in connection therewith, in the name of and on behalf of the Debtors, all without further action under applicable law, regulation, order, or direction by the pre-Effective Date shareholders or board of directors of the Debtors.

9.     The Debtors or the Litigation Trustee (as applicable) are authorized to adjust, continue, settle, reinstate, discharge or eliminate all Allowed Intercompany Claims and Intercompany Interests, in each case to the extent the Debtors or the Litigation Trustee deem appropriate, with the prior consent of the Prepetition Agent.

10.     The approvals and authorizations specifically set forth in this Confirmation Order are not intended to limit the authority of the Litigation Trustee, the Debtors, or any officer thereof to take any and all actions necessary or appropriate to implement, effectuate, and consummate any and all documents or transactions contemplated by the Combined Disclosure Statement and Plan or this Confirmation Order.

<u>**Enforceability of the Combined Disclosure Statement and Plan**</u>

11.     Pursuant to sections 1123(a), 1141(a) and 1142 of the Bankruptcy Code, the Combined Disclosure Statement and Plan and all related documents (including, but not limited to, the Litigation Trust Agreement) shall be, and hereby are, valid, binding and enforceable.

12.     On the Effective Date, the Debtors shall irrevocably transfer and shall be deemed to have irrevocably transferred to the Litigation Trust all of their rights, title, claims, defenses, and interest in and to all of the Litigation Trust Assets free and clear of all liens, claims, and

encumbrances, except to the extent otherwise provided in the Combined Disclosure Statement and Plan or this Confirmation Order, in accordance with section 1141 of the Bankruptcy Code; and such transfer shall be exempt from any stamp, real estate transfer, other transfer, mortgage reporting, sales, use, or other similar tax.

### The Litigation Trust

13.     **Litigation Trustee.**  On the Effective Date, the Litigation Trust, in accordance with the terms of the Litigation Trust Agreement and the Combined Disclosure Statement and Plan, shall be established for the benefit of the Litigation Trust Beneficiaries.  Pursuant to the Combined Disclosure Statement and Plan and the Litigation Trust Agreement, all of the Litigation Trust Assets shall be deemed to have been vested in the Litigation Trust on the Effective Date, without the necessity of any further order of this Court.  The Litigation Trustee may use, acquire and dispose of property in accordance with the terms of the Litigation Trust Agreement and the Combined Disclosure Statement and Plan and shall have the exclusive right, authority, and standing to initiate, file, prosecute, abandon, compromise, settle, withdraw, litigate to judgment or release any Claims and Causes of Action that are Litigation Trust Assets or to take, or to refrain from taking, any other action which the Litigation Trustee, in consultation with the Litigation Trust Board as required under the Litigation Trust Agreement, which the Litigation Trustee deems necessary or desirable, in each case in accordance with the wind-down budget reflected in the Current DIP Budget (as defined in the Final DIP Order), and without supervision of or approval by the Court and free and clear of any restrictions of the Bankruptcy Code or the Bankruptcy Rules other than restrictions expressly imposed by the Combined Disclosure Statement and Plan, the Litigation Trust Agreement or this Confirmation Order.  The Litigation Trustee shall be the representative of the Estate as that term is used in section 1123(b)(3)(B) of the Bankruptcy Code with respect to the rights, powers, authority, and responsibilities specified in the Combined

**431**

Disclosure Statement and Plan, this Confirmation Order and the Litigation Trust Agreement and except as provided in the Combined Disclosure Statement and Plan, the Litigation Trust Agreement or this Confirmation Order, the Litigation Trustee shall be the Debtors' successor in interest with respect to the Litigation Trust Assets and all actions, claims, defenses, rights, or interests constituting Litigation Trust Assets are preserved and retained and may be enforced by the Litigation Trustee as the representative of the Estates pursuant to section 1123(b)(3(B) of the Bankruptcy Code.

14.     **Litigation Trust Agreement.**   The formation, rights, powers, duties, structure, obligations and other matters pertaining to the Litigation Trustee shall be governed by the Litigation Trust Agreement, the Combined Disclosure Statement and Plan and this Confirmation Order.  The terms of the Litigation Trust Agreement are consistent with the Combined Disclosure Statement and Plan and this Confirmation Order, fair, reasonable and in the best interest of the Debtors, their Estates, creditors, and other parties in interest.  The Litigation Trust Agreement is approved, subject to any amendments permitted under the Combined Disclosure Statement and Plan, the Litigation Trust Agreement, and this Confirmation Order.  The terms of the Litigation Trust, the selection and appointment of  the Litigation Trustee, and the members of the Litigation Trust Board and the terms of the Litigation Trustee's and the Litigation Trust Board's compensation are fair, equitable and reasonable and in the best interest of the Debtors, their Estates, creditors, and other parties in interest.  Pursuant to the Combined Disclosure Statement and Plan, the Court shall retain jurisdiction over the Litigation Trust.

## Executory Contracts

15.     The assumption of the Executory Contracts identified on the Assumption Schedule is approved.

16.     Except for any Executory Contract that (i) has already been assumed and assigned; (ii) as of the Effective Date is subject to a pending motion to assume or assume and assign such Executory Contract; (iii) is a contract, release, or other agreement or document entered into in connection with the Combined Disclosure Statement and Plan; (iv) is a D&O Policy or an insurance policy; or (v) is identified for assumption on the Assumption Schedule included in the Plan Supplement, each of the Debtors' remaining Executory Contracts shall be deemed rejected as of the Effective Date in accordance with the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code and such rejections are approved.

17.     Each Executory Contract assumed pursuant to the Combined Disclosure Statement and Plan or by Order of this Court, and not assigned to a third party on or prior to the Effective Date, shall be assumed by the Wind-Down Estates, and any proceeds and/or receivables owed to the Wind-Down Estates under any Executory Contract shall be deemed a Litigation Trust Asset.

18.     Unless otherwise provided by a Court order, any Proofs of Claim based on the rejection of the Debtors' Executory Contracts pursuant to the Combined Disclosure Statement and Plan or otherwise must be filed with the Court and served on the Litigation Trustee no later than thirty (30) days after the earlier of (i) notice of entry of an order approving the rejection of such Executory Contract; and (ii) notice of occurrence of the Effective Date.  All Allowed Claims arising from the rejection of the Debtors' Executory Contracts shall be classified as Class 4 General Unsecured Claims, except as otherwise provided by order of the Court.  Any Allowed Claims arising from the rejection of the Executory Contracts that are not timely filed pursuant to Section 12.2 of the Combined Disclosure Statement and Plan shall be forever disallowed and barred.

## Administrative Claims

19.     Except as otherwise set forth in Section 6.1 of the Combined Disclosure Statement and Plan, requests for payment of Administrative Claims must be filed with the Court and served

**433**

on the Debtors, the Litigation Trustee, the Claims Agent, and the U.S. Trustee, so as to be received by the Administrative Claim Bar Date.  Such proof of Administrative Claim must include at a minimum: (i) the name of the applicable Debtor that is purported to be liable for the Administrative Claim; (ii) the name of the holder of the Administrative Claim; (iii) the amount of the Administrative Claim; (iv) the basis of the Administrative Claim; and (v) supporting documentation for the Administrative Claim.  **FAILURE TO FILE AND SERVE SUCH PROOF OF ADMINISTRATIVE CLAIM TIMELY AND PROPERLY SHALL RESULT IN THE ADMINISTRATIVE CLAIM BEING FOREVER BARRED AND RELEASED**.

### Professional Fees Account and Fee Claims

20.     In accordance with Section 6.1 of the Combined Disclosure Statement and Plan, on the Effective Date, the Debtors shall be authorized to transfer custody of the Professional Fee Reserve Account to the Litigation Trust and the Debtors or the Litigation Trustee, as applicable, shall fund the Professional Fee Reserve Account with cash equal to the Professional Fee Reserve Amount.  Professionals Fee Claims shall be paid in Cash from funds held in the Professional Fee Reserve Account when such Claims are Allowed by a Final Order of the Court.  Neither the Debtors' nor the Litigation Trust's obligations to pay Professional Fee Claims shall be limited nor be deemed limited to funds held in the Professional Fee Reserve Account.

21.     All final applications for payment of Professional Fee Claims must be filed with this Court and served on the Debtors, counsel to the Debtors, counsel to the Committee, counsel to the Prepetition Lenders, the Litigation Trustee, counsel to the Prepetition Lenders, and the U.S. Trustee by the Professional Fee Claims Bar Date.  Each holder of an Allowed Professional Fee Claim shall be paid in Cash from the Professional Fee Reserve Account in an amount equal to such Allowed Professional Fee Claim as soon as reasonably practicable following the date upon which such Claim becomes Allowed, unless such holder shall agree to a different treatment of such

Claim.  Professionals shall only be required to file a final fee application and do not need to file an interim fee application.

22.     The funds in the Professional Fee Reserve Account shall be used solely for the payment of Allowed Professional Fee Claims in accordance with Section 6 of the Combined Disclosure Statement and Plan. Until payment in full of all Allowed Professional Fee Claims, funds held in the Professional Fee Reserve Account shall not be considered Litigation Trust Assets or otherwise property of the Litigation Trust, the Debtors, their Estates, or any other party.  Any funds remaining in the Professional Fee Reserve Account after all required payments have been made shall promptly be released from such escrow and shall be returned to the Prepetition Lenders without any further action or order of the Court.

## Release, Injunction, Exculpation and Related Provisions

23.     The release, injunction, exculpation, and related provisions set forth in Section 14 of the Combined Disclosure Statement and Plan are hereby approved and authorized in their entirety, and such provisions are effective and binding on all Entities as and to the extent provided for therein.  Notwithstanding any provision in the Combined Disclosure Statement and Plan, any Plan-related document, this Order or the Litigation Trust Agreement to the contrary, the MobileFuse Parties, in response to the MobileFuse Litigation, shall have the right (to the extent such right existed as of the date hereof or arose thereafter) to raise, assert and prosecute: (a) any counter-claim, cross-claim, or third-party claim against any person or entity and (b) any defense and affirmative defense, including set-off and recoupment. The rights of all parties are reserved with respect to the merits of such counter-claims, cross-claims, third-party claims, or defenses. For the avoidance of doubt, the transfer from the Debtors to the Litigation Trust of standing and the right to pursue the MobileFuse Litigation shall not affect, in any manner, including the mutuality

**435**

of debt requirement necessary to assert setoff, the right of the defendants in the MobileFuse Litigation to assert the rights set forth in (a) and (b).

**Payment of Statutory Fees**

24.     All fees due and payable pursuant to section 1930 of Title 28 of the U.S. Code ("Quarterly Fees") prior to the Effective Date shall be paid by the Debtors on the Effective Date. After the Effective Date, any and all Quarterly Fees shall be paid when due and payable. The Debtors shall file all monthly operating reports due prior to the Effective Date when they become due, using UST Form 11-MOR. After the Effective Date, the Litigation Trustee and each of the Wind-Down Estates shall file with the Bankruptcy Court separate UST Form 11-PCR reports when they become due. Each and every one of the Debtors, the Wind-Down Estates, and the Litigation Trustee shall remain obligated to pay Quarterly Fees to the Office of the U.S. Trustee until the earliest of that particular Debtor's case being closed, dismissed or converted to a case under Chapter 7 of the Bankruptcy Code. The U.S. Trustee shall not be required to file any Administrative Claim in the case, and shall not be treated as providing any release under the Combined Disclosure Statement and Plan with respect to payment of the Quarterly Fees.

**United States Interests**

25.     Notwithstanding any provision to the contrary in the Combined Disclosure Statement and Plan, the Plan Supplement, this Order or any implementing Combined Disclosure Statement and implementing Combined Disclosure Statement and Plan documents (collectively, the "Documents"): (x) Nothing in the Documents shall: (1) discharge, release, enjoin, impair or otherwise preclude (a) any liability to a Governmental Unit that is not a "claim" within the meaning of section 101(5) of the Bankruptcy Code (a "claim"), (b) any claim of a Governmental Unit arising after the Effective Date, or (c) any liability of any entity or person under police or regulatory statutes or regulations to any Governmental Unit as the owner, lessor, lessee or operator of property

or rights to property that such entity owns, operates or leases after the Effective Date; (2) release, nullify, preclude or enjoin the enforcement of any police or regulatory power; (3) modify the scope of Bankruptcy Code Section 505; (4) confer jurisdiction to the Bankruptcy Court with respect to the claims, liabilities and Causes of Action of the United States, except to the extent set forth in 28 U.S.C. § 1334 (as limited by any other provisions of the United States Code); (5) release, enjoin, impair or discharge any non-Debtors from any claim, liability, suit, right or Cause of Action of the United States; (6) affect any setoff or recoupment rights of the United States and such rights are preserved; (7) require the United States to file an administrative claim in order to receive payment for any liability described in Section 503(b)(1)(B) and (C) pursuant to Section 503(b)(1)(D) of the Bankruptcy Code; (8) constitute an approval or consent by the United States without compliance with all applicable legal requirements and approvals under non-bankruptcy law; (9) be construed as a compromise or settlement of any liability, claim, Cause of Action or interest of the United States; (10) modify the scope of Section 502 of the Bankruptcy Code with respect to the claims of the United States; (11) cause the filing of any claim, including but not limited to amended claims, by the United States to be automatically disallowed and expunged; or (12) enjoin or estop the United States from asserting against the Debtors claims, liabilities and obligations assumed by the Purchaser that the United States would otherwise be entitled to assert against the Debtors and the Debtors' estates under applicable law; and (y) liens securing claims of the United States shall be retained until the claim, with interest, is paid in full. Administrative expense claims of the United States allowed pursuant to the Combined Disclosure Statement and Plan or the Bankruptcy Code shall be paid in accordance with section 1129(a)(9)(A) of the Bankruptcy Code and accrue interest and penalties as provided by non-bankruptcy law until paid in full. Priority Tax Claims of the United States allowed pursuant to the Combined Disclosure Statement and Plan or the Bankruptcy

**437**

Code will be paid in accordance with section 1129(a)(9)(C) of the Bankruptcy Code. To the extent allowed Priority Tax Claims (including any penalties, interest, or additions to tax entitled to priority under the Bankruptcy Code) are not paid in full in cash on the Effective Date, then such Priority Tax Claims shall accrue interest commencing on the Effective Date at the rate set forth in Section 511 of the Bankruptcy Code. Moreover, nothing shall affect a release, injunction or otherwise preclude any claim whatsoever against any Debtor or any of the Debtors' Estates by or on behalf of the United States for any liability arising a) out of pre-petition or post-petition tax periods for which a return has not been filed or b) as a result of a pending audit or audit that may be performed with respect to any pre-petition or post-petition tax period. Further, nothing shall enjoin the United States from amending any claim against any Debtor or any of the Debtors' Estates with respect to any tax liability a) arising out of pre-petition or post-petition tax periods for which a tax return has not been filed or b) from a pending audit or audit that may be performed with respect to any pre-petition or post-petition tax period. Any liability arising a) out of pre-petition or post-petition tax periods for which a return has not been filed or b) as a result of a pending audit or audit which may be performed with respect to any pre-petition or post-petition tax period shall be paid in accordance with 1129(a)(9)(A) and (C) of the Bankruptcy Code. Without limiting the foregoing but for the avoidance of doubt, nothing contained in the Documents shall be deemed to bind the United States to any characterization of any transaction for tax purposes or to determine the tax liability of any person or entity, including, but not limited to, the Debtors and the Debtors' estates, nor shall the Documents be deemed to have determined the federal tax treatment of any item, distribution, or entity, including the federal tax consequences of this Combined Disclosure Statement and Plan, nor shall anything in the Documents be deemed to have

**438**

conferred jurisdiction upon the Bankruptcy Court to make determinations as to federal tax liability and federal tax treatment except as provided under Section 505 of the Bankruptcy Code.

## SEC Matters

26.     Notwithstanding any language to the contrary in the Combined Disclosure Statement and Plan and/or this Confirmation Order, no provision shall (i) preclude the United States Securities and Exchange Commission ("SEC") from enforcing its police or regulatory powers; or, (ii) enjoin, limit, impair or delay the SEC from commencing or continuing any claims, causes of action, proceeding or investigations against any non-debtor person or non-debtor entity in any forum.

27.     Notwithstanding anything to the contrary in the Combined Disclosure Statement and Plan or this Confirmation Order, nothing in the Combined Disclosure Statement and Plan or this Confirmation Order shall affect the obligations of the Debtors, the Litigation Trust, Litigation Trustee, and/or any transferee or custodian to maintain all books and records that are subject to any SEC subpoena, document preservation letter, or other investigative request wherever those records are located.

## Plan Settlement

28.     The evidence establishes that it is in the best interests of the Debtors' stakeholders to resolve the Committee Challenge Rights on the terms set forth in the Combined Disclosure Statement and Plan, including the Plan Settlement.  In addition, sound business justifications exist for the Debtors, the Committee, and the Prepetition Secured Parties to enter into the Plan Settlement.  Each component of the Plan Settlement is an integral, integrated, and inextricably linked part of the Combined Disclosure Statement and Plan that is not severable from the entirety of the Combined Disclosure Statement and Plan.  Accordingly, the parties have met their burden of proving that the Plan Settlement is fair, reasonable, and in the best interests of the Estates.

## Litigation Trust Beneficial Interests

29.     The Litigation Trust Interests to be issued to the Litigation Trust Beneficiaries under the Combined Disclosure Statement and Plan are being issued pursuant to section 1145 of the Bankruptcy Code and the offering, issuance, and distribution of the Litigation Trust Interests pursuant to the Combined Disclosure Statement and Plan and the Litigation Trust Agreement shall be exempt pursuant to section 1145 of the Bankruptcy Code from, among other things, the registration and/or prospectus delivery requirements of section 5 of the Securities Act and any other applicable federal, state, local or other law requiring registration and/or delivery of prospectuses prior to the offering, issuance, distribution, or sale of securities.  The Litigation Trust Interests shall not be represented by units or certificates, or be transferable or assignable, except by will or intestate succession or as otherwise determined by the Litigation Trustee in accordance with all applicable securities law.

30.     Within five (5) business days after a Class 4 General Unsecured Claim becomes an Allowed Claim under the Combined Disclosure Statement and Plan, the Debtors or the Litigation Trustee, as applicable, shall cause a notice to be served on the Holder of such Allowed Class 4 General Unsecured Claim, in form reasonably acceptable to the Litigation Trustee and the Committee or the member of the Litigation Trust Board that is designated by the Committee, as applicable, informing such Holder of its right under the Combined Disclosure Statement and Plan to elect to receive Litigation Trust Interests on account of its Allowed General Unsecured Claim, and that not timely making such election will result in such Holder receiving, in full and final satisfaction of such Holder's Allowed General Unsecured Claim, such Holder's Pro Rata Share of the GUC Cash Pool in accordance with the Combined Disclosure Statement and Plan.  Such notice must provide no less than thirty (30) days for each Holder to make the election, which election

may be made either via submission of an election form via U.S. Mail or by online submission through the Debtors' claims agent's website.

**Dissolution of the Committee**

31.     On the Effective Date, the Committee shall dissolve and the members thereof and the professionals retained by the Committee shall be released and discharged from all rights and duties arising from, or related to, the Chapter 11 Cases; provided, however, that after the Effective Date, the Committee shall continue to exist and have standing and a right to be heard for the following limited purposes: (a) applications, and any relief related thereto, for payment of Professional Fee Claims or expense reimbursements for members of the Committee; and (b) any appeal pending as of the Effective Date or filed thereafter, the outcome of which could affect the treatment of prepetition creditors (including Holders of Allowed Priority Claims and 503(b)(9) Claims), including, but not limited to, any cases, controversies, suits or disputes arising in connection with the Consummation, interpretation, implementation or enforcement of the Combined Disclosure Statement and Plan or the Confirmation Order.

**Termination of Professionals**

32.     On the Effective Date, the engagement of each Professional retained by the Debtors shall be terminated without further order of the Court or act of the parties unless otherwise agreed to by the Debtors and such Professional; provided, however, that (a) such Professional shall be entitled to prosecute their respective Professional Fee Claims and represent their respective constituents with respect to applications for payment of such Professionals Fee Claims, and (b) nothing herein or in the Combined Disclosure Statement and Plan shall prevent the Litigation Trustee from retaining any such Professional on or after the Effective Date, which retention shall not require Court approval.

## Binding Effect on all Parties

33.     Subject to the occurrence of the Effective Date, the Combined Disclosure Statement and Plan and this Confirmation Order shall be binding and inure to the benefit of the Debtors, the Litigation Trustee, the Released Parties, all present and former holders of Claims and Interests, and their respective successors and assigns.  Except as expressly provided in the Combined Disclosure Statement and Plan, all agreements, instruments and other documents filed in connection with the Combined Disclosure Statement and Plan shall be given full force and effect, and shall bind all parties referred to therein as of the Effective Date, whether or not such agreements are actually issued, delivered, or recorded on the Effective Date or thereafter and whether or not a party has actually executed such agreement.

34.     Effective as of and subject to the occurrence of the Effective Date and subject to the terms of the Combined Disclosure Statement and Plan and this Confirmation Order, all prior orders entered in the Chapter 11 Cases, all documents and agreements executed by the Debtors as authorized and directed thereunder and all motions or requests for relief by the Debtors pending before the Court as of the Effective Date that ultimately are granted shall be binding upon and shall inure to the benefit of the Debtors, the Litigation Trustee, and their respective successors and assigns.

## Modifications

35.     Without the need for a further order or authorization of this Court, but subject to the express provisions of this Confirmation Order, the Debtors shall be authorized and empowered as may be necessary to make non-material modifications to the documents filed with the Court, including the various documents included in the Plan Supplement and the Combined Disclosure Statement and Plan, in each case, only in accordance with and subject to the terms of the Combined

**442**

Disclosure Statement and Plan. For the avoidance of doubt, the evidentiary record for the Combined Hearing is closed, and the evidentiary record shall not be amended, modified or supplemented.

### Notice of Entry of Confirmation Order and Effective Date

36.     Pursuant to Bankruptcy Rules 2002 and 3020(c), the Debtors are hereby authorized to serve a notice of entry of this Confirmation Order and the occurrence of the Effective Date, substantially in the form attached hereto as <u>Exhibit B</u> (the "<u>Notice of Confirmation and Effective Date</u>") on the Effective Date, on all holders of Claims against or Interests in the Debtors and all other Persons on whom the Combined Hearing Notice was served. The form of the Notice of Confirmation and Effective Date is hereby approved in all respects. The Notice of Confirmation and Effective Date shall constitute good and sufficient notice of the entry of this Confirmation Order and of the relief granted herein, including, without limitation, any bar dates and deadlines established under the Combined Disclosure Statement and Plan and this Confirmation Order, and no other or further notice of the entry of this Confirmation Order, the occurrence of the Effective Date, or any such bar dates and deadlines need be given.

37.     Except as otherwise may be provided in the Combined Disclosure Statement and Plan, notice of all subsequent pleadings in the Chapter 11 Cases after the Effective Date shall be limited to the following parties: (i) the Litigation Trustee, (ii) the U.S. Trustee (iii) any party known to be directly affected by the relief sought; and (iv) any party that requests notice after the Effective Date in accordance with Bankruptcy Rule 2002.

### Retention of Jurisdiction

38.     Under sections 105(a) and 1142 of the Bankruptcy Code, and notwithstanding entry of this Confirmation Order and the occurrence of the Effective Date, on and after the Effective Date, this Court shall retain jurisdiction over all matters arising out of, or related to, the Chapter

**443**

11 Cases, the Combined Disclosure Statement and Plan, and related documents, to the fullest extent permitted by applicable law, including, among other things, to take the actions specified in Section 15 of the Combined Disclosure Statement and Plan.

## References to Combined Disclosure Statement and Plan Provisions

39.     The failure to specifically include or to refer to any particular article, section, or provision of the Combined Disclosure Statement and Plan or any related document in this Confirmation Order shall not diminish or impair the effectiveness of such article, section, or provision, and such article, section, or provision shall have the same validity, binding effect, and enforceability as every other article, section, or provision of the Combined Disclosure Statement and Plan, it being the intent of this Court that the Combined Disclosure Statement and Plan (as and to the extent modified by this Confirmation Order) be confirmed in its entirety.

## Rules Governing Conflicts Between Documents

40.     In the event that any provision of the Combined Disclosure Statement and Plan is inconsistent with the provisions of the Plan Supplement and any other order in the Chapter 11 Cases, or any other agreement to be executed by any Person pursuant to the Combined Disclosure Statement and Plan, the provisions of the Combined Disclosure Statement and Plan shall control and take precedence; *provided*, *however*, that this Confirmation Order shall control and take precedence in the event of any inconsistency between this Confirmation Order, any provision of the Combined Disclosure Statement and Plan, and any of the foregoing documents; *provided further, however*, in the event that there is any inconsistency between the Combined Disclosure Statement and Plan and the Litigation Trust Agreement, the terms of the Combined Disclosure Statement and Plan shall control.

Case 23-11966-TMH    Doc 9-3    Filed 08/06/25    Page 128 of 409

**444**

### Extension of Injunctions and Stays

41.     Unless otherwise provided in the Combined Disclosure Statement and Plan or in this Confirmation Order, all injunctions or stays provided for in the Chapter 11 Cases under sections 105 or 362 of the Bankruptcy Code or otherwise, and extant on the Confirmation Date (including any injunctions or stays contained in or arising from the Combined Disclosure Statement and Plan or this Confirmation Order), shall remain in full force and effect.

### Section 1146 Exemption

42.     Pursuant to section 1146(a) of the Bankruptcy Code, the issuance, transfer or exchange of any security under the Combined Disclosure Statement and Plan or the making or delivery of any instrument of transfer pursuant to, in implementation of, or as contemplated by the Combined Disclosure Statement and Plan, or the re-vesting, transfer or sale of any real or personal property of the Debtors pursuant to, in implementation of, or as contemplated by the Combined Disclosure Statement and Plan, shall not be taxed under any state or local law imposing a stamp tax, transfer tax or any similar tax or fee.

### Headings

43.     Headings utilized herein are for convenience and reference only, and do not constitute a part of the Combined Disclosure Statement and Plan or this Confirmation Order for any other purpose.

### No Stay of Confirmation Order

44.     Notwithstanding Bankruptcy Rules 3020(e) and 6004(h) and any other Bankruptcy Rule to the contrary, to the extent applicable, there is no reason for delay in the implementation of this Confirmation Order and, thus, this Confirmation Order shall be effective and enforceable immediately upon entry.

**Dated: March 15th, 2024**
**Wilmington, Delaware**

*Thomas M. Horan*
**THOMAS M. HORAN**
**UNITED STATES BANKRUPTCY JUDGE**

- 33 -

**445**

<u>**Exhibit A**</u>

**Combined Disclosure Statement and Plan**

**446**

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | Chapter 11 |
| NEAR INTELLIGENCE, INC., *et al.*,[1] | Case No. 23-11962 (TMH) |
| Debtors. | (Jointly Administered) |

## MODIFIED THIRD AMENDED COMBINED
## DISCLOSURE STATEMENT AND CHAPTER 11 PLAN OF LIQUIDATION
## OF NEAR INTELLIGENCE, INC. AND ITS AFFILIATED DEBTORS

**WILLKIE FARR & GALLAGHER LLP**
Rachel C. Strickland (admitted *pro hac vice*)
Andrew S. Mordkoff (admitted *pro hac vice*)
Joseph R. Brandt (admitted *pro hac vice*)
787 Seventh Avenue
New York, New York 10019
Telephone: (212) 728-8000
Facsimile: (212) 728-8111
rstrickland@willkie.com
amordkoff@willkie.com
jbrandt@willkie.com

**YOUNG CONAWAY STARGATT & TAYLOR, LLP**
Edmon L. Morton (No. 3856)
Matthew B. Lunn (No. 4119)
Shane M. Reil (No. 6195)
Carol E. Cox (No. 6936)
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253
emorton@ycst.com
mlunn@ycst.com
sreil@ycst.com
ccox@ycst.com

*Co-counsel for Debtors and Debtors in Possession*

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of their federal tax identification numbers, to the extent applicable, are Near Intelligence, Inc. (7857), Near Intelligence LLC (7857), Near North America, Inc. (9078), and Near Intelligence Pte. Ltd.  The Debtors' headquarters is located at 100 W Walnut St., Suite A-4, Pasadena, CA 91124.

## <u>TABLE OF CONTENTS</u>

**Page**

ARTICLE   I          DEFINED TERMS AND RULES OF INTERPRETATION ............................3

ARTICLE   II         CLASSIFICATION OF CLAIMS AND INTERESTS AND ESTIMATED
RECOVERIES ...........................................................................................19

2.1      Classification..............................................................................................19

ARTICLE   III        BACKGROUND AND DISCLOSURES ......................................................23

3.1      General Background ...................................................................................23
3.2      Events Leading to Chapter 11....................................................................26
3.3      The Chapter 11 Cases ................................................................................30

ARTICLE   IV        CONFIRMATION AND VOTING PROCEDURES .....................................36

4.1      Confirmation Procedures ...........................................................................36
4.2      Procedures for Objections..........................................................................36
4.3      Requirements for Confirmation .................................................................37
4.4      Classification of Claims and Interests........................................................37
4.5      Unimpaired Claims and Impaired Claims or Interests................................38
4.6      Confirmation Without Necessary Acceptances; Cramdown ......................39
4.7      Feasibility...................................................................................................40
4.8      Best Interests Test and Liquidation Analysis.............................................41
4.9      Acceptance of the Plan...............................................................................42

ARTICLE   V          CERTAIN RISK FACTORS TO BE CONSIDERED PRIOR TO VOTING ..43

5.1      The Combined Disclosure Statement and Plan May Not Be Accepted................43
5.2      The Combined Disclosure Statement and Plan May Not Be Confirmed.............43
5.3      Distributions to Holders of Allowed Claims Under the Combined Disclosure
Statement and Plan May Be Inconsistent with Projections ...................................44
5.4      Objections to Classification of Claims .......................................................44
5.5      Failure to Consummate the Combined Disclosure Statement and Plan ...............45
5.6      Plan Releases May Not Be Approved.........................................................45
5.7      Reductions to Estimated Creditor Recoveries ...........................................45
5.8      Sale Fails to Close......................................................................................45
5.9      Certain Tax Considerations........................................................................46

ARTICLE   VI        TREATMENT OF UNCLASSIFIED CLAIMS............................................46

6.1      Administrative Claims ...............................................................................46
6.2      DIP Loan Claims........................................................................................48
6.3      Priority Tax Claims....................................................................................48

**448**

ARTICLE VII    TREATMENT OF CLASSIFIED CLAIMS AND INTERESTS ....................48

7.1    Class 1: Priority Non-Tax Claims .............................................................49
7.2    Class 2: Other Secured Claims ................................................................49
7.3    Class 3: Prepetition Loan Claims .............................................................50
7.4    Class 4: General Unsecured Claims .........................................................50
7.5    Class 5: Existing Securities Law Claims ..................................................50
7.6    Class 6: Interests ....................................................................................51
7.7    Class 7A and Class 7B: Intercompany Claims and Intercompany Interests .........51

ARTICLE VIII    ACCEPTANCE OR REJECTION OF THE PLAN ..........................51

8.1    Class Entitled to Vote ..............................................................................51
8.2    Acceptance by Impaired Classes of Claims or Interests ..........................52
8.3    Deemed Acceptance by Unimpaired Classes ..........................................52
8.4    Presumed Rejections by Impaired Classes ..............................................52
8.5    Confirmation Pursuant to Section 1129(b) of the Bankruptcy Code .......52
8.6    Controversy Concerning Impairment ......................................................52
8.7    Elimination of Vacant Classes .................................................................52

ARTICLE IX    IMPLEMENTATION OF THE PLAN AND THE LITIGATION TRUST .....53

9.1    Implementation of the Combined Disclosure Statement and Plan ...........53
9.2    No Substantive Consolidation ..................................................................53
9.3    Combined Disclosure Statement and Plan Funding .................................53
9.4    Debtors' Directors and Officers ..............................................................53
9.5    D&O Policy ............................................................................................53
9.6    Indemnification of Directors, Officers and Employees ...........................54
9.7    Wind-Up and Dissolution of the Debtors ................................................54
9.8    Creation and Governance of the Litigation Trust ....................................54
9.9    Purpose of the Litigation Trust ...............................................................55
9.10   Ability to Seek and Obtain Discovery .....................................................55
9.11   Allocation of Litigation Trust Distribution Proceeds ..............................56
9.12   Availability of Litigation Trust Distribution Proceeds for Holders of
       Subordinated Convertible Debentures ......................................................57
9.13   Litigation Trust Financing .......................................................................57
9.14   Litigation Trustee and Litigation Trust Agreement .................................57
9.15   Compensation and Duties of Litigation Trustee ......................................58
9.16   Litigation Trust Board; Oversight ...........................................................58
9.17   Certain United States Federal Income Tax Considerations ......................59
9.18   Abandonment, Disposal, and Destruction of Records .............................65
9.19   Distributions by Litigation Trustee ..........................................................65
9.20   Cash Investments ....................................................................................65
9.21   Dissolution of the Litigation Trust ..........................................................65
9.22   Control Provisions ..................................................................................65
9.23   Limitation of Liability; Indemnification ..................................................66

**449**

9.24     Corporate Action ................................................................................... 66

ARTICLE X     PROVISIONS GOVERNING DISTRIBUTIONS .......................................... 66

10.1     Distributions for Allowed Claims ........................................................ 66
10.2     Interest on Claims ................................................................................ 67
10.3     Distributions by Litigation Trustee as Disbursement Agent ................ 67
10.4     Means of Cash Payment ...................................................................... 67
10.5     Fractional Distributions ....................................................................... 67
10.6     De Minimis Distributions .................................................................... 67
10.7     Delivery of Distributions; Unclaimed Distributions ........................... 68
10.8     Application of Distribution Record Date ............................................. 68
10.9     Withholding, Payment and Reporting Requirements With Respect to Distributions ........................................................................................ 68
10.10    Setoffs ................................................................................................. 69
10.11    No Distribution in Excess of Allowed Amounts .................................. 69
10.12    Allocation of Distributions .................................................................. 69
10.13    Forfeiture of Distributions ................................................................... 69

ARTICLE XI     PROVISIONS FOR CLAIMS OBJECTIONS AND ESTIMATION OF CLAIMS ................................................................................................. 70

11.1     Claims Administration Responsibility ................................................. 70
11.2     Claims Objections ............................................................................... 70
11.3     Estimation of Contingent or Unliquidated Claims .............................. 71
11.4     Distributions on Account of Disputed Claims ..................................... 71
11.5     Amendments to Claims ....................................................................... 71
11.6     Claims Paid and Payable by Third Parties .......................................... 71
11.7     Adjustment to Claims Without Objection ........................................... 71

ARTICLE XII     EXECUTORY CONTRACTS ................................................................. 72

12.1     Rejection of Executory Contracts ........................................................ 72
12.2     Claims Based on Rejection of Executory Contracts ............................ 72
12.3     Cure of Defaults for Assumed Executory Contracts ........................... 72
12.4     Modifications, Amendments, Supplements, Restatements, or Other Agreements .......................................................................................... 73
12.5     Reservation of Rights .......................................................................... 73
12.6     Insurance Neutrality ............................................................................ 73

ARTICLE XIII    CONFIRMATION AND CONSUMMATION OF THE PLAN ..................... 74

13.1     Conditions Precedent to the Effective Date ........................................ 74
13.2     Notice of Effective Date ...................................................................... 75
13.3     Waiver of Conditions Precedent to the Effective Date ........................ 75
13.4     Effect of Non-Occurrence of Effective Date ...................................... 75

**450**

ARTICLE XIV   EFFECTS OF CONFIRMATION ................................................. 75

    14.1   Exculpation, Releases, and Injunctions ................................. 75
    14.2   Term of Bankruptcy Injunction or Stays ............................... 79

ARTICLE XV   RETENTION OF JURISDICTION ................................................ 79

    15.1   Exclusive Jurisdiction of Bankruptcy Court ......................... 79

ARTICLE XVI   MISCELLANEOUS PROVISIONS ............................................. 81

    16.1   Modification of the Combined Disclosure Statement and Plan ............................ 81
    16.2   Revocation, Withdrawal, or Non-Confirmation of the Combined Disclosure Statement and Plan ................................................................. 82
    16.3   Binding Effect ...................................................................... 82
    16.4   SEC Matters ......................................................................... 82
    16.5   Subordination Rights ........................................................... 82
    16.6   Severability of Combined Disclosure Statement and Plan Provisions ................. 83
    16.7   Payment of Statutory Fees; Filing of Quarterly Reports ....................... 83
    16.8   Dissolution of the Committee ............................................. 83
    16.9   Exemption from Section 1146 ............................................ 84
    16.10  Filing of Additional Documents ......................................... 84
    16.11  Insurance ............................................................................. 84
    16.12  Successors and Assigns ....................................................... 84
    16.13  Governing Law .................................................................... 85
    16.14  Exhibits and Schedules ....................................................... 85
    16.15  Computation of Time ........................................................... 85
    16.16  Reservation of Rights .......................................................... 85

**451**

## DISCLAIMER

THIS COMBINED DISCLOSURE STATEMENT AND PLAN WAS COMPILED FROM INFORMATION OBTAINED FROM NUMEROUS SOURCES BELIEVED TO BE ACCURATE TO THE BEST OF THE DEBTORS' KNOWLEDGE, INFORMATION, AND BELIEF.   NO GOVERNMENTAL AUTHORITY HAS PASSED ON, CONFIRMED OR DETERMINED THE ACCURACY OR ADEQUACY OF THE INFORMATION CONTAINED HEREIN.

NOTHING STATED HEREIN SHALL BE (I) DEEMED OR CONSTRUED AS AN ADMISSION OF ANY FACT OR LIABILITY BY ANY PARTY, (II) ADMISSIBLE IN ANY PROCEEDING INVOLVING THE DEBTORS OR ANY OTHER PARTY, OR (III) DEEMED CONCLUSIVE EVIDENCE OF THE TAX OR OTHER LEGAL EFFECTS OF THE COMBINED DISCLOSURE STATEMENT AND PLAN ON THE DEBTORS OR HOLDERS OF CLAIMS OR INTERESTS.   CERTAIN STATEMENTS CONTAINED HEREIN, BY NATURE, ARE FORWARD-LOOKING AND CONTAIN ESTIMATES AND ASSUMPTIONS.   THERE CAN BE NO ASSURANCE THAT SUCH STATEMENTS WILL REFLECT ACTUAL OUTCOMES.

THE STATEMENTS CONTAINED HEREIN ARE MADE AS OF THE DATE HEREOF, UNLESS ANOTHER TIME IS SPECIFIED.   THE DELIVERY OF THIS COMBINED DISCLOSURE STATEMENT AND PLAN SHALL NOT BE DEEMED OR CONSTRUED TO CREATE ANY IMPLICATION THAT THE INFORMATION CONTAINED HEREIN IS CORRECT AT ANY TIME AFTER THE DATE HEREOF.   HOLDERS OF CLAIMS OR INTERESTS SHOULD NOT CONSTRUE THE CONTENTS OF THIS COMBINED DISCLOSURE STATEMENT AND PLAN AS PROVIDING ANY LEGAL, BUSINESS, FINANCIAL OR TAX ADVICE.   THEREFORE, EACH SUCH HOLDER SHOULD CONSULT WITH ITS OWN LEGAL, BUSINESS, FINANCIAL, AND TAX ADVISORS AS TO ANY SUCH MATTERS CONCERNING THIS COMBINED DISCLOSURE STATEMENT AND PLAN AND THE TRANSACTIONS CONTEMPLATED HEREBY.

NO PARTY IS AUTHORIZED TO GIVE ANY INFORMATION WITH RESPECT TO THIS COMBINED DISCLOSURE STATEMENT AND PLAN OTHER THAN THAT WHICH IS CONTAINED IN THIS COMBINED DISCLOSURE STATEMENT AND PLAN.   NO REPRESENTATIONS CONCERNING THE DEBTORS OR THE VALUE OF THEIR PROPERTY HAVE BEEN AUTHORIZED BY THE DEBTORS OTHER THAN AS SET FORTH IN THIS COMBINED DISCLOSURE STATEMENT AND PLAN.   ANY INFORMATION, REPRESENTATIONS OR INDUCEMENTS MADE TO OBTAIN AN ACCEPTANCE OF THIS COMBINED DISCLOSURE STATEMENT AND PLAN OTHER THAN, OR INCONSISTENT WITH, THE INFORMATION CONTAINED HEREIN SHOULD NOT BE RELIED UPON BY ANY HOLDER OF A CLAIM OR INTEREST.   THE COMBINED DISCLOSURE STATEMENT AND PLAN HAS BEEN PREPARED IN ACCORDANCE WITH SECTION 1125 OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE 3016(b) AND NOT IN ACCORDANCE WITH FEDERAL OR STATE SECURITIES LAWS OR OTHER NON-APPLICABLE BANKRUPTCY LAWS.

SEE ARTICLE V HEREIN, ENTITLED "CERTAIN RISK FACTORS TO BE CONSIDERED PRIOR TO VOTING," FOR A DISCUSSION OF CERTAIN CONSIDERATIONS IN CONNECTION WITH A DECISION BY A HOLDER OF AN IMPAIRED CLAIM TO ACCEPT THE COMBINED DISCLOSURE STATEMENT AND PLAN.

THE DEBTORS RESERVE THE RIGHT TO FILE AN AMENDED COMBINED DISCLOSURE STATEMENT AND PLAN FROM TIME TO TIME SUBJECT TO THE TERMS HEREIN.

## **INTRODUCTION[2]**

The Debtors hereby propose the following Combined Disclosure Statement and Plan for the liquidation of the Debtors' remaining Assets and distribution of the proceeds of the Sale and the remaining Assets to the Holders of Allowed Claims against the Debtors as set forth herein. Each Debtor is a proponent of the Combined Disclosure Statement and Plan within the meaning of section 1129 of the Bankruptcy Code.

This Combined Disclosure Statement and Plan contains, among other things, a discussion of the Debtors' history, businesses, properties, operations, the Chapter 11 Cases, risk factors, summary and analysis of the Combined Disclosure Statement and Plan, and certain other related matters.

**ALL HOLDERS OF CLAIMS AGAINST THE DEBTORS ARE ENCOURAGED TO READ THE COMBINED DISCLOSURE STATEMENT AND PLAN IN ITS ENTIRETY AND TO CONSULT WITH AN ATTORNEY BEFORE VOTING TO ACCEPT OR REJECT THE COMBINED DISCLOSURE STATEMENT AND PLAN. SUBJECT TO CERTAIN RESTRICTIONS AND REQUIREMENTS SET FORTH IN SECTION 1127 OF THE BANKRUPTCY CODE, BANKRUPTCY RULE 3019, AND IN THE COMBINED DISCLOSURE STATEMENT AND PLAN, THE DEBTORS RESERVE THE RIGHT TO ALTER, AMEND, MODIFY, REVOKE OR WITHDRAW THE COMBINED DISCLOSURE STATEMENT AND PLAN, OR ANY PART THEREOF, AT ANY TIME, INCLUDING PRIOR TO ITS SUBSTANTIAL CONSUMMATION.**

**THE DEBTORS BELIEVE THE COMBINED DISCLOSURE STATEMENT AND PLAN IS IN THE BEST INTERESTS OF CREDITORS AND THEREFORE RECOMMEND THAT ALL HOLDERS OF CLAIMS RECEIVING A BALLOT VOTE IN FAVOR OF THE COMBINED DISCLOSURE STATEMENT AND PLAN.**

**AS SET FORTH HEREIN, THE COMBINED DISCLOSURE STATEMENT AND PLAN MEMORIALIZES THE PLAN SETTLEMENT AMONG THE DEBTORS, THE COMMITTEE, THE PREPETITION SECURED LENDERS AND THE DIP LENDERS AND IS SUPPORTED BY THE COMMITTEE, THE PREPETITION SECURED LENDERS AND THE DIP LENDERS.**

---

[2]     Capitalized terms not defined in this Introduction shall have the meanings ascribed below.

**453**

# ARTICLE I
## DEFINED TERMS AND RULES OF INTERPRETATION

**Defined Terms**

**1.1**       **"503(b)(9) Claims"** shall mean Claims arising under section 503(b)(9) of the Bankruptcy Code.

**1.2**       **"Administrative Claim"** shall mean a Claim for costs and expenses of administration of the Chapter 11 Cases allowed under sections 503(b), 507(a)(2), 507(b) or, if applicable, 1114(e)(2) of the Bankruptcy Code, including but not limited to: (a) any actual and necessary costs and expenses incurred after the Petition Date of preserving the Estates and operating the businesses of the Debtors (including, but not limited to, wages, salaries, commissions for services and payments for inventories, leased equipment and premises) and Claims by Governmental Units for taxes (including Claims related to taxes which accrued after the Petition Date, but excluding Claims related to taxes which accrued on or before the Petition Date); (b) Professional Fee Claims; (c) U.S. Trustee Fees; (d) any 503(b)(9) Claims; (e) Prepetition Loan Adequate Protection Claims; and (f) any Claims that have been designated "Administrative Claims" by Final Order of the Bankruptcy Court (including the Final DIP Order).

**1.3**       **"Administrative Claim Bar Date"** shall mean the date that is thirty (30) days after the date the Effective Date Notice is Filed and served, which date shall be the deadline for filing requests for payment of Administrative Claims (other than as set forth in Section 6.1(a) hereof).

**1.4**       **"Affiliate"** shall mean "affiliate" as defined in section 101(2) of the Bankruptcy Code.

**1.5**       **"Allowed"** shall mean all or a portion of a Claim against the Debtors or an Interest in the Debtors (a) that has been listed by the Debtors in the Schedules as liquidated, non-contingent and undisputed, and is not superseded by a Proof of Claim, (b) as to which a proof of claim has been filed and as to which no objection or request for estimation has been Filed on or before the Claims Objection Deadline or the expiration of such other applicable period fixed by the Bankruptcy Court, (c) as to which any objection has been settled, waived, withdrawn or denied by a Final Order, or (d) that is allowed (i) by a Final Order, (ii) pursuant to the terms of the Plan, or (iii) by a stipulation between the Holder of such Claim or Interest and the Litigation Trustee on or after the Effective Date. For purposes of computing Distributions under the Plan, a Claim or Interest that has been deemed "Allowed" shall not (other than with respect to DIP Loan Claims and Prepetition Loan Claims) include interest, costs, fees or charges on such Claim or Interest from and after the Petition Date; provided that any (i) Claim paid in full by a purchaser pursuant to a Bankruptcy Court-approved purchase agreement or order approving a sale of certain of the Debtors' assets during the course of these Chapter 11 Cases or (ii) Claim listed in the Schedules that has been paid in full by the Debtors (w) after the Petition Date pursuant to an order of the Bankruptcy Court, (x) before the Petition Date and was inadvertently listed in the Schedules, or (y) paid in full by the Debtors or a Bankruptcy Court-approved purchaser pursuant to a Bankruptcy Court-approved

3

purchase agreement or order approving a sale of certain of the Debtors' assets during the course of these Chapter 11 Cases as an assumed liability, shall not be considered an Allowed Claim.

**1.6** **"Assets"** shall mean any and all right, title, and interest of the Debtors and the Estates in and to property of whatever type or nature, including their books and records and any and all rights and benefits under any purchase agreement with respect to the Sale.

**1.7** **"Assumption Schedule"** shall mean the schedule of Executory Contracts to be assumed and assigned by the Debtors pursuant to the Combined Disclosure Statement and Plan, sections 365 and 1123 of the Bankruptcy Code and Article VII hereof, which will be included in the Plan Supplement, as may be amended, modified, or supplemented from time to time in accordance with the Confirmation Order.

**1.8** **"Avoidance Actions"** shall mean any and all avoidance or equitable subordination or recovery actions under the Bankruptcy Code, including sections 105(a), 502(d), 510, 542 through 551, and 553, or any similar federal, state, or common law causes of action; provided, however, that any avoidance or equitable subordination or recovery actions sold or otherwise transferred in connection with the Sale shall not constitute Avoidance Actions for the purposes hereof.

**1.9** **"Ballot"** shall mean the ballot form distributed to each Holder of a Claim entitled to vote to accept or reject this Combined Disclosure Statement and Plan.

**1.10** **"Bankruptcy Code"** shall mean title 11 of the United States Code, 11 U.S.C. §§ 101–1532, and as such title has been, or may be, amended from time to time, to the extent that any such amendment is applicable to the Chapter 11 Cases.

**1.11** **"Bankruptcy Court"** shall mean the United States Bankruptcy Court for the District of Delaware.

**1.12** **"Bankruptcy Rules"** shall mean the Federal Rules of Bankruptcy Procedure, the Official Bankruptcy Forms, or the Local Rules, and as each has been, or may be, amended from time to time, to the extent that any such amendment is applicable to the Chapter 11 Cases.

**1.13** **"Bar Date"** shall mean, with respect to any particular Claim, the specific date set by the Bankruptcy Court (pursuant to the Bar Date Order, this Combined Disclosure Statement and Plan, the Confirmation Order or otherwise) as the last day by which Persons asserting a Claim against any Debtor must have filed a Proof of Claim or application for allowance of such Claim (as applicable) with the Bankruptcy Court against any such Debtor or be forever barred from asserting such Claim.

**1.14** **"Bar Date Order"** shall mean that certain *Order (A) Establishing Bar Dates and Related Procedures for Filing Proofs of Claim (Including for Claims Arising Under Section 503(b)(9) of the Bankruptcy Code) and (B) Approving the Form and Manner of Notice Thereof* [D.I. 137], dated January 9, 2024.

**1.15** **"Bidding Procedures Order"** shall mean that certain *Order (I) Approving Bidding Procedures for the Sale of Substantially All of the Debtors' Assets, (II) Scheduling an Auction and Approving the Form and Manner of Notice Thereof, (III) Approving Assumption and Assignment Procedures, (IV) Scheduling a Sale Hearing and Approving the Form and Manner of Notice Thereof and (V) Granting Related Relief* [D.I. 198], dated January 23, 2024.

**1.16** **"Blue Torch"** shall mean Blue Torch Finance, LLC.

**1.17** **"Business Day"** shall mean any day, other than a Saturday, Sunday or a legal holiday (as that term is defined in Bankruptcy Rule 9006(a)).

**1.18** **"Cash"** shall mean money that is legal tender of the United States of America.

**1.19** **"Causes of Action"** shall mean all Claims, actions, causes of action, choses in action, suits, debts, dues, damages, defenses, judgments, third-party claims, counterclaims, and cross claims that are or may be pending or existing on the Effective Date against any Entity, based in law or equity, including, but not limited to, under the Bankruptcy Code, whether direct, indirect, known or unknown, derivative, or otherwise and whether asserted or unasserted as of the date of entry of the Confirmation Order, and including the unknown Causes of Action that have not been released by the Combined Disclosure Statement and Plan or any order of the Bankruptcy Court or sold in connection with the Sale.

**1.20** **"Chapter 11 Cases"** shall mean the chapter 11 cases commenced by the Debtors and jointly administered under case number 23-11962 (TMH) in the Bankruptcy Court.

**1.21** **"Claim"** shall mean a claim against any Debtor, as such term is defined in section 101(5) of the Bankruptcy Code.

**1.22** **"Claims Agent"** shall mean the Debtors' court-approved claims, solicitation and noticing agent, Kroll Restructuring Administration LLC.

**1.23** **"Claims Objection Deadline"** shall mean the date that is one hundred eighty (180) days after the Effective Date, or such later date as may be ordered by the Bankruptcy Court; provided, however, that the Litigation Trustee may seek extensions of this date from the Bankruptcy Court at any time.

**1.24** **"Class"** shall mean each category or group of Holders of Claims or Interests that has been designated as a class in Article II of this Combined Disclosure Statement and Plan.

**1.25** **"Combined Disclosure Statement and Plan"** shall mean this combined disclosure statement and joint chapter 11 plan of liquidation, contained herein, including the exhibits hereto, as it may be altered, amended, modified or supplemented from time to time including in accordance with any documents submitted in support hereof and the Bankruptcy Code or the Bankruptcy Rules, which shall be in a form reasonably acceptable to the Debtors, the DIP Agent and the Prepetition Agent, and in consultation with the Committee.

**1.26** "**Committee**" shall mean the Official Committee of Unsecured Creditors appointed in the Chapter 11 Cases pursuant to the *Notice of Appointment of Committee of Unsecured Creditors* [D.I. 85], dated December 22, 2023.

**1.27** "**Committee Challenge Rights**" shall mean the Committee's rights to assert a Challenge (as defined in the Final DIP Order) against the Prepetition Secured Parties in accordance with the Final DIP Order.

**1.28** "**Confirmation**" shall mean entry of the Confirmation Order by the Bankruptcy Court on the docket of the Chapter 11 Cases.

**1.29** "**Confirmation Date**" shall mean the date upon which the Bankruptcy Court enters the Confirmation Order on the docket of the Chapter 11 Cases, within the meaning of Bankruptcy Rules 5003 and 9021.

**1.30** "**Confirmation Hearing**" shall mean the combined hearing held by the Bankruptcy Court to consider confirmation of the Combined Disclosure Statement and Plan and final approval of the adequacy of disclosures herein, as such hearing may be adjourned or continued from time to time.

**1.31** "**Confirmation Notice**" shall mean the notice of the Confirmation Hearing to be delivered pursuant to Bankruptcy Rules 2002(c)(3) and 2002(f).

**1.32** "**Confirmation Order**" shall mean the order of the Bankruptcy Court confirming the Combined Disclosure Statement and Plan pursuant to section 1129 of the Bankruptcy Code and approving the disclosures herein on a final basis, which shall be in a form and substance reasonably acceptable to the Debtors, the Prepetition Agent, and the DIP Agent, and in consultation with the Committee.

**1.33** "**Consummation**" shall mean the occurrence of the Effective Date.

**1.34** "**Contingent**" shall mean, with reference to a Claim, a Claim that has not accrued or is not otherwise payable and the accrual of which, or the obligation to make payment on which, is dependent upon a future event that may or may not occur.

**1.35** "**Convertible Debentures**" shall have the meaning ascribed to such term in Section 3.1(c)(ii)(B) herein.

**1.36** "**Creditor**" shall have the meaning ascribed to such term in section 101(10) of the Bankruptcy Code.

**1.37** "**Credit Bid Amount**" means, as set forth in the Stalking Horse Agreement, a credit bid equal to (a) all outstanding obligations under the DIP Facility and (b) $34,000,000 of the outstanding obligations under the Prepetition Financing Documents; provided, that the terms of the Stalking Horse Agreement, including the structure and amount of the Credit Bid Amount, are subject to modification in accordance with the Bidding Procedures Order.

**1.38** "**Credit Bid Transaction**" shall mean a Sale transaction pursuant to the Stalking Horse Agreement on account of a credit bid equal to the Credit Bid Amount, which credit bid was selected by the Debtors as the highest or otherwise best bid consistent with the Bidding Procedures Order, and as approved by the Bankruptcy Court pursuant to a Sale Order.

**1.39** "**Cure Obligation**" shall mean all (a) amounts required to cure any monetary defaults, and (b) other obligations required to cure any non-monetary defaults, in each case under any Executory Contract that is to be assumed or assumed and assigned by the Debtors pursuant to Article VII hereof and sections 365 and 1123 of the Bankruptcy Code.

**1.40** "**D&O Policy**" shall mean any insurance policy for, among others, directors, members, trustees, and officers liability (or any equivalents) maintained by the Debtors' Estates, and all agreements, documents or instruments relating thereto, including any runoff policies or tail coverage.

**1.41** "**Debtors**" shall mean, collectively, Near Intelligence, Inc., Near Intelligence LLC, Near North America, Inc. and Near Intelligence Pte. Ltd.

**1.42** "**DIP Agent**" shall mean Blue Torch, as administrative agent and collateral agent for the DIP Lenders under the DIP Loan Agreement and the Final DIP Order.

**1.43** "**DIP Facility**" shall mean that certain debtor-in-possession financing facility documented pursuant to the DIP Loan Documents and the Final DIP Order.

**1.44** "**DIP Lenders**" shall mean the lenders from time to time party to the DIP Loan Agreement.

**1.45** "**DIP Loan Agreement**" shall have the meaning ascribed to it in the Final DIP Order.

**1.46** "**DIP Loan Claims**" shall mean any DIP Obligations (as defined in the Final DIP Order) or other Claims of the DIP Secured Parties arising under or related to the DIP Loan Agreement, the Final DIP Order, or any other DIP Loan Document; provided, that, for the avoidance of doubt, the DIP Loan Claims shall not include the Prepetition Loan Adequate Protection Claims.

**1.47** "**DIP Loan Documents**" shall have the meaning ascribed to it in the Final DIP Order.

**1.48** "**DIP Secured Parties**" shall mean the DIP Lenders and the DIP Agent.

**1.49** "**Disallowed**" shall mean, with respect to any Claim or Interest or portion thereof, any Claim against or Interest in a Debtor which: (i) has been disallowed, in whole or part, by a Final Order; (ii) has been withdrawn, in whole or in part, by the Holder thereof; (iii) is listed in the Schedules as zero or as Disputed, Contingent or Unliquidated and in respect of which a Proof of Claim, as applicable, has not been timely Filed or deemed timely Filed pursuant to the Combined Disclosure Statement and Plan, the Bankruptcy Code or any Final Order or other applicable law; (iv) has been reclassified, expunged, subordinated or estimated to the

extent that such reclassification, expungement, subordination or estimation results in a reduction in the Filed amount of any Proof of Claim; (v) is evidenced by a Proof of Claim which has been Filed, or which has been deemed to be Filed under applicable law or order of the Bankruptcy Court or which is required to be Filed by order of the Bankruptcy Court but as to which such Proof of Claim was not timely or properly Filed; (vi) is unenforceable to the extent provided in section 502(b) of the Bankruptcy Code; or (vii) where the Holder of a Claim is an Entity from which property is recoverable under sections 542, 543, 550, or 553 of the Bankruptcy Code or that is a transferee of a transfer avoidable under sections 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code, unless such Entity or transferee has paid the amount, or turned over any such Property, for which such Entity or transferee is liable under sections 522(i), 542, 543, 550, or 553 of the Bankruptcy Code, and if required by the Bankruptcy Code, an Objection or adversary proceeding has been Filed.  In each case a Disallowed Claim or a Disallowed Interest is disallowed only to the extent of disallowance, withdrawal, reclassification, expungement, subordination, or estimation.

1.50    **"Disbursing Agent"** shall mean the entity selected to make Distributions at the direction of the Litigation Trustee, which may include the Litigation Trustee, the Claims Agent, the Debtors or the Wind-Down Estates.

1.51    **"Disputed"** shall mean any Claim (i) which has not yet been Allowed or Disallowed in accordance with the terms of the Combined Disclosure Statement and Plan, or (ii) held by a Person or Entity against whom or which any of the Debtors or the Litigation Trustee has commenced a proceeding, including an objection to such Claim.

1.52    **"Disputed Claim Reserve"** shall mean the reserve established and maintained by the Litigation Trustee for payment of Disputed Claims, which reserve shall be established in an amount equal to the face value of such Claims, or such other amount as may be ordered by the Bankruptcy Court.

1.53    **"Distribution"** shall mean a delivery of consideration by the Disbursing Agent to the Holders of Allowed Claims pursuant to the Combined Disclosure Statement and Plan.

1.54    **"Distribution Date"** shall mean the Effective Date.

1.55    **"Distribution Record Date"** shall mean the Confirmation Date; provided that, the Distribution Record Date shall not apply to any of the Debtors' securities deposited with DTC, the Holders of which shall receive a distribution in accordance with the customary procedures of DTC used in connection with such distributions.

1.56    **"DTC"** shall mean the Depository Trust Company.

1.57    **"Effective Date"** shall mean the date on which (a) all conditions in Article XIII of the Combined Disclosure Statement and Plan have been satisfied or waived in accordance with that Article and (b) no stay of the Confirmation Order is in effect.

1.58    **"Effective Date Notice"** shall mean the notice of the Effective Date, which shall be Filed with the Bankruptcy Court within two Business Days after its occurrence.

**1.59** **"Entity"** shall have the meaning ascribed to such term in section 101(15) of the Bankruptcy Code.

**1.60** **"Estate"** shall mean each of the Debtors' estates created by section 541 of the Bankruptcy Code upon the commencement of the Chapter 11 Cases on the Petition Date.

**1.61** **"Excess Sale Proceeds"** shall mean the portion of the Cash proceeds of the Sale, if any, in excess of the aggregate amount of (i) the DIP Loan Claims and (ii) the Prepetition Loan Claims.

**1.62** **"Exculpated Parties"** shall mean, each solely in their capacities as such, (a) the Debtors and their Estates, (b) to the extent they are or are acting as Estate fiduciaries at any time between the Petition Date and the Effective Date, the current and former directors, officers, agents, members of management and other employees of the Debtors, respectively; (c) the Professionals retained by the Debtors pursuant to a Final Order of the Bankruptcy Court; (d) the Committee; (e) the present and former members of the Committee; (f) the Professionals retained by the Committee pursuant to a Final Order of the Bankruptcy Court; and (g) to the extent they are or are acting as Estate fiduciaries at any time between the Petition Date and the Effective Date, the successors and assigns, subsidiaries, affiliates, members, partners, officers, directors, agents, attorneys, advisors, accountants, financial advisors, investment bankers, consultants, and other professionals, to the extent such parties are or were acting in such capacity of or for any of the Persons identified in (a) through (f) above on or after the Petition Date.  For the avoidance of doubt, notwithstanding anything to the contrary in the Combined Disclosure Statement and Plan, the Plan Supplement, the Confirmation Order, and/or the Litigation Trust Agreement, and notwithstanding whether any such individual is named as a defendant in the MobileFuse Litigation or in any Retained Causes of Action, Sherman Edmiston, Mark Greene, Richard Salute, Kathryn Petralia, John Faieta, Gladys Kong, Paul Gross, and Scott Slipy shall be deemed Exculpated Parties to the extent they are or are acting as Estate fiduciaries at any time between the Petition Date and the Effective Date.  Anil Mathews, Rahul Agarwal, Shobhit Shukla, Justin Joseph, Jeff Merage, Alissa Merage, Uniqequity Pte Ltd., Teemo Holdings Inc., Uniqequity Limited, AudienceQ Limited, Oriental Investment Advisors, Pte. Ltd., Godspeed Investments Pte. Ltd, all defendants in the MobileFuse Litigation, all defendants in connection with the Retained Causes of Action, all recipients of payments that are the subject of the MobileFuse Litigation or any Retained Causes of Action, all past or present Company auditors and all Company SPAC sponsors (and their Related Parties) shall not be deemed Exculpated Parties regardless of whether they would otherwise meet the definition of "Exculpated Parties."

**1.63** **"Executory Contract"** shall mean an executory contract or unexpired lease to which a Debtor is a party that is subject to assumption or rejection under sections 365 and 1123 of the Bankruptcy Code.

**1.64** **"Existing Securities Law Claims"** means any Claim, whether or not the subject of an existing lawsuit: (a) arising from rescission of a purchase or sale of any debt or equity securities of any Debtor or an affiliate of any Debtor; (b) for damages arising from the purchase or sale of any such security; (c) for violations of the securities laws, misrepresentations, or any similar Claims, including, to the extent related to the foregoing or

otherwise subject to subordination under section 510(b) of the Bankruptcy Code, any attorneys' fees, other charges, or costs incurred on account of the foregoing Claims; or (d) reimbursement, contribution, or indemnification on account of any such Claim.

**1.65** **"File," "Filed,"** or **"Filing"** shall mean, respectively, file, filed, or filing with the Bankruptcy Court or its authorized designee in the Chapter 11 Cases.

**1.66** **"Final DIP Order"** shall mean the *Final Order (I) Authorizing the Debtors to Obtain Postpetition Senior Secured Financing and the Use of Cash Collateral, (II) Granting Adequate Protection, (III) Granting Liens and Superpriority Administrative Expense Claims, (IV) Modifying the Automatic Stay, and (V) Granting Related Relief* [D.I. 197], dated January 23, 2024.

**1.67** **"Final Order"** shall mean an order or judgment of the Bankruptcy Court, or other court of competent jurisdiction, that is not subject to stay or appeal, and for which the applicable time within which to take such action has expired, or which has been adjudicated by the highest court with jurisdiction over the matter.

**1.68** **"First Day Declaration"** shall mean the *Declaration of John Faieta in Support of Chapter 11 Petitions and First Day Pleadings* [D.I. 14], dated December 8, 2023.

**1.69** **"General Bar Date**" shall mean 5:00 p.m. (prevailing Eastern Time) on February 8, 2024 as established by the Bar Date Order.

**1.70** **"General Unsecured Claim"** shall mean all unsecured, non-priority Claims against a Debtor, other than Intercompany Claims. For the avoidance of doubt, an unsecured, non-priority Claim held by a Governmental Unit against a Debtor shall be a General Unsecured Claim.

**1.71** **"Governmental Unit"** shall have the meaning ascribed to such term in section 101(27) of the Bankruptcy Code.

**1.72** **"GUC Cash Pool"** shall mean Cash in an amount equal to $750,000 that is available for distribution to Holders of Allowed General Unsecured Claims that do not elect to receive Litigation Trust Interests, under the Combined Disclosure Statement and Plan, in full and final satisfaction of such Allowed General Unsecured Claims.

**1.73** **"Holder"** shall mean any Entity holding a Claim or Interest.

**1.74** **"Impaired"** shall mean, when used in reference to a Claim or Interest, a Claim or Interest that is impaired within the meaning of section 1124 of the Bankruptcy Code.

**1.75** **"Impaired Class"** shall mean a Class of Claims or Interests that is Impaired.

**1.76** **"Insurance Contract"** shall mean all insurance policies that have been issued at any time to or provide coverage to any of the Debtors and all agreements, documents or instruments relating thereto.

**1.77**     **"Intercompany Claim"** shall mean a Claim held by a Debtor against another Debtor or a non-Debtor direct or indirect subsidiary of an affiliate.

**1.78**     **"Intercompany Interests"** shall mean an Interest held by a Debtor or a non-Debtor direct or indirect subsidiary or affiliate of a Debtor in another Debtor or a non- Debtor direct or indirect subsidiary or affiliate of a Debtor.

**1.79**     **"Interests"** shall mean the legal interests, equitable interests, contractual interests, equity interests or ownership interests, or other rights of any Entity in the Debtors including all capital stock, stock certificates, common stock, preferred stock, partnership interests, limited liability company or membership interests, rights, treasury stock, options, warrants, contingent warrants, convertible or exchangeable securities, investment securities, subscriptions or other agreements and contractual rights to acquire or obtain such an interest or share in the Debtors, partnership interests in the Debtors' stock appreciation rights, conversion rights, repurchase rights, redemption rights, dividend rights, preemptive rights, subscription rights and liquidation preferences, puts, calls, awards or commitments of any character whatsoever relating to any such equity, common stock, preferred stock, ownership interests or other shares of capital stock of the Debtors or obligating the Debtors to issue, transfer or sell any shares of capital stock whether or not certificated, transferable, voting or denominated "stock" or a similar security.

**1.80**     **"IRC"** shall mean the Internal Revenue Code of 1986, as amended.

**1.81**     **"IRS"** shall mean the Internal Revenue Service.

**1.82**     **"Litigation Trust"** shall mean the trust established under this Combined Disclosure Statement and Plan and the Litigation Trust Agreement to hold legal and equitable title to the Litigation Trust Assets.

**1.83**     **"Litigation Trust Agreement"** shall mean the trust agreement in the form and substance reasonably acceptable to the Debtors, the Prepetition Agent, the DIP Agent, and the Committee, that, together with the terms of the Combined Disclosure Statement and Plan, establishes the Litigation Trust and governs the powers, duties, and responsibilities of the Litigation Trustee.  The Litigation Trust Agreement shall be filed as part of the Plan Supplement.

**1.84**     **"Litigation Trust Assets"** shall consist of the following: (i) all remaining assets of each of the Debtors that have not been sold or abandoned prior to the Effective Date following payment of (or establishment of appropriate reserves for) all Allowed Administrative Claims, Allowed Priority Tax Claims, Allowed Priority Non-Tax Claims, Allowed Professional Fee Claims, Allowed Other Secured Claims, U.S. Trustee Fees and the amounts required to fund a wind-down of the Debtors' estates, (ii) all Retained Causes of Action, including the proceeds related thereto; (iii) all assets recovered by the Litigation Trustee on behalf of the Litigation Trust on or after the Effective Date through enforcement, resolution, settlement, collection, return, or otherwise; (iv) any proceeds resulting from the Litigation Trustee's investment of the Litigation Trust Assets on or after the Effective Date owned by the Debtors on the Effective Date; and (v) the Excess Sale Proceeds, if any.  For the avoidance of doubt, all

Avoidance Actions that are not Retained Causes of Action or set forth on Schedule 2.1(s) of the Stalking Horse Agreement shall not constitute Litigation Trust Assets.

**1.85** **"Litigation Trust Beneficiary"** shall mean a Holder of a Litigation Trust Interest, whether individually or as agent on behalf of one or more other Entities, which shall include (i) Holders of Allowed Prepetition Loan Claims; and (ii) Holders of Allowed General Unsecured Claims that elect to receive Litigation Trust Interests in accordance with Section 7.4 hereof.

**1.86** **"Litigation Trust Board"** shall mean the board that shall oversee the Litigation Trust in accordance with the Litigation Trust Agreement and the Combined Disclosure Statement and Plan, the initial composition of which shall consist of one member designated by the Committee, which member shall be reasonably acceptable to the DIP Agent and the Prepetition Agent, and two members designated by the DIP Agent and the Prepetition Agent, which members shall be selected in consultation with the Committee. The identities of the initial members of the Litigation Trust Board, to the extent known, shall be identified in the Plan Supplement.

**1.87** **"Litigation Trust Distribution Proceeds"** shall mean all Cash realizable from the Litigation Trust Assets after the payment of, and reserving for, Litigation Trust Expenses in accordance with the Litigation Trust Agreement.

**1.88** **"Litigation Trust Expenses"** shall mean all reasonable legal and other fees and expenses incurred by the Litigation Trustee on account of administration of the Litigation Trust, including, without limitation, reasonable attorneys' fees and expenses, insurance costs, taxes, escrow expenses and all other costs of administering the Litigation Trust in accordance with this Combined Disclosure Statement and Plan and the Litigation Trust Agreement.

**1.89** **"Litigation Trust Financing"** shall have the meaning ascribed to such term in Section 9.13 herein.

**1.90** **"Litigation Trust Interests"** shall mean the non-transferable interests in the Litigation Trust issued to the Litigation Trust Beneficiaries pursuant to this Combined Disclosure Statement and Plan and the Litigation Trust Agreement.

**1.91** **"Litigation Trust Lender"** shall have the meaning ascribed to such term in Section 9.13 herein.

**1.92** **"Litigation Trustee"** shall mean the Entity designated by the DIP Agent and Prepetition Agent, prior to the Effective Date, in consultation with the Committee and acceptable to the Debtors, and retained as the trustee to the Litigation Trust, as of the Effective Date or as soon as reasonably practicable thereafter, as the fiduciary responsible for administering the Litigation Trust, and any successor subsequently appointed pursuant to the Litigation Trust Agreement. The identity and compensation of the Litigation Trustee shall be disclosed in the Plan Supplement.

**1.93** **"Local Rules"** shall mean the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware.

**1.94**  **"MobileFuse"** shall mean MobileFuse, LLC.

**1.95**  **"MobileFuse Litigation"** shall mean the adversary proceeding or other action or other legal proceeding (and any appeals arising therefrom) that the Debtors or the Litigation Trustee commence during these Chapter 11 Cases or after the Effective Date against MobileFuse and other defendants related to transactions with MobileFuse.

**1.96**  **"Objection"** shall mean any objection, application, motion, complaint or any other legal proceeding seeking, in whole or in part, to disallow, determine, liquidate, classify, reclassify, or establish the priority, expunge, subordinate or estimate any Claim (including the resolution of any request for payment of any Administrative Claim).

**1.97**  **"OCP Order"** shall mean that certain *Order Authorizing (I) the Debtors to Retain, Employ, and Compensate Certain Professionals Utilized by the Debtors in the Ordinary Course of Business Effective As of the Petition Date and (II) Waiving Certain Information Requirements of Local Rule 2016-2, and (III) Granting Related Relief* [D.I. 148], dated January 9, 2024.

**1.98**  **"Other Secured Claim"** shall mean any Secured Claim other than a Prepetition Loan Claim or a DIP Loan Claim.

**1.99**  **"Paid in Full," "Payment in Full," or "Pay in Full"** shall mean, with respect to an Allowed Claim, payment in Cash or other consideration (with respect to any such other consideration to be paid on account of the Prepetition Loan Claims or Prepetition Loan Adequate Protection Claims, such consideration as is agreed to by the Prepetition Agent in its sole discretion) in an aggregate amount equal to the Allowed amount thereof.

**1.100**  **"Petition Date"** shall mean December 8, 2023, the date on which the Debtors commenced the Chapter 11 Cases in the Bankruptcy Court.

**1.101**  **"Plan Settlement"** shall mean the settlement of the Committee Challenge Rights as set forth in the Combined Disclosure Statement and Plan and the Confirmation Order.

**1.102**  **"Plan Supplement"** shall mean the ancillary documents necessary to the implementation and effectuation of the Combined Disclosure Statement and Plan to be filed no later than seven (7) calendar days prior to the Voting Deadline, containing draft forms, signed copies or summaries of material terms, as the case may be, of (i) the Litigation Trust Agreement; (ii) the identity of the Litigation Trustee; (iii) the identities of the members of the Litigation Trust Board; (iv) the Assumption Schedule; (v) the schedule of Retained Causes of Action; and (vi) any other document necessary or appropriate to implement the Combined Disclosure Statement and Plan, as each document may be amended from time to time in accordance with their terms; provided, that unless consent rights are otherwise expressly set forth in this Combined Disclosure Statement and Plan, each of the documents in the Plan Supplement (whether or not set forth above), including any alternation, restatement, modification or replacement thereto, shall be in form and substance reasonably acceptable to the Debtors, the DIP Agent and the Prepetition Agent.

**1.103** **"Prepetition Agent"** shall mean Blue Torch Finance LLC, as administrative agent and collateral agent for the Prepetition Lenders under the Prepetition Financing Documents.

**1.104** **"Prepetition Financing Documents"** shall mean the Prepetition First Lien Financing Agreement together with all other related documents, guarantees, and agreements, including, without limitation, security agreements, mortgages, pledge agreements, assignments, financing statements, and other agreements, documents, instruments, or certificates executed in connection with the Prepetition First Lien Financing Agreement.

**1.105** **"Prepetition First Lien Financing Agreement"** shall mean that certain Financing Agreement, dated as of November 4, 2022 (as amended, restated, amended and restated, supplemented or otherwise modified, and as the same may be further amended, restated, amended and restated, supplemented or otherwise modified from time to time).

**1.106** **"Prepetition Lenders"** shall mean the financial institutions in their capacities as prepetition lenders under the Prepetition First Lien Financing Agreement.

**1.107** **"Prepetition Loan Claims"** shall mean the secured Claims of the Prepetition Agent or the Prepetition Lenders arising under and related to the Prepetition Financing Documents in the Allowed amount of $81,177,686, less the Credit Bid Amount; provided, that the Prepetition Lenders may seek the allowance, subject to objection by the Debtors and the Committee, of additional amounts to be included in the Prepetition Loan Claims.

**1.108** **"Prepetition Loan Adequate Protection Claims"** shall mean any Adequate Protection Obligations and the Adequate Protection Claim (each as defined and provided the Final DIP Order) or other Claims of the Prepetition Secured Parties arising under or related to the Prepetition First Lien Financing Agreement, the Final DIP Order, or any other Prepetition Financing Document; provided, that, as long as the Plan Settlement is effective and in full force, the Prepetition Secured Parties have agreed to not assert the Prepetition Loan Adequate Protections Claims solely in connection with the allocation and distribution of Litigation Trust Distribution Proceeds.

**1.109** **"Prepetition Secured Parties"** shall mean the Prepetition Agent and the Prepetition Lenders.

**1.110** **"Priority Non-Tax Claim"** shall mean any and all Claims accorded priority in right of payment under sections 502(i) and 507(a) of the Bankruptcy Code, other than Priority Tax Claims and Administrative Claims.

**1.111** **"Priority Tax Claim"** shall mean a Claim or a portion of a Claim for which priority is asserted under section 507(a)(8) of the Bankruptcy Code.

**1.112** **"Pro Rata Share"** shall mean the proportion that an Allowed Claim in a particular Class bears to the aggregate amount of Allowed Claims within such Class.

**1.113** **"Professional"** shall mean an Entity (other than Entities retained pursuant to the OCP Order) retained pursuant to a Final Order in accordance with sections 327, 328, 330, 363, and 1103 of the Bankruptcy Code and to be compensated for services rendered prior to

the Confirmation Date, pursuant to sections 327, 328, 329, 330, and 331 of the Bankruptcy Code and orders of the Bankruptcy Court, or for which compensation and reimbursement has been allowed by the Bankruptcy Court pursuant to Bankruptcy Code section 503(b)(4).

**1.114** **"Professional Fee Claims"** shall mean all fees and expenses (including but not limited to, transaction fees and success fees) for services rendered by Professionals in connection with the Chapter 11 Cases from the Petition Date through and including the Effective Date.

**1.115** **"Professional Fee Claims Bar Date"** shall mean the deadline for Filing all applications for Professional Fee Claims, which shall be forty-five (45) days after the Filing and service of the Effective Date Notice.

**1.116** **"Professional Fee Reserve Account"** shall mean the reserve account held by Young Conaway Stargatt & Taylor, LLP and funded by the Debtors in Cash on the Effective Date pursuant to Section 6.1(d) of the Combined Disclosure Statement and Plan, in an amount equal to the Professional Fee Reserve Amount. For the avoidance of doubt, the Professional Fee Reserve Account shall be the "Pre-Carve Out Trigger Notice Reserve Account" as defined in and provided for in the Final DIP Order.

**1.117** **"Professional Fee Reserve Amount"** shall mean the aggregate amount of Professional Fee Claims and other unpaid fees and expenses that the Professionals estimate they have incurred or will incur in rendering services to the Debtors or the Committee prior to the Effective Date, which estimates Professionals shall deliver to the Debtors and the Committee as set forth in Article VI of the Combined Disclosure Statement and Plan.

**1.118** **"Proof of Claim"** shall mean a proof of Claim filed against any of the Debtors in the Chapter 11 Cases.

**1.119** **"Related Parties"** shall mean, with respect to any Person or Entity, such Person's or Entity's respective current and former (i) officers, (ii) managers, (iii) directors, (iv) employees, (v) partners, (vii) affiliates and subsidiaries, (iv) professionals, (v) advisors and advisory board members, (vi) agents, (vii) members and shareholders, (viii) owners, (ix) affiliated investment funds or investment vehicles, (x) managed, advised or sub-advised accounts, (xi) funds or other entities, (xii) investment advisors, sub-advisors or managers, and (xiii) other representatives, including, without limitation, attorneys, accountants, consultants, investment bankers and financial advisors and the predecessors, successors, assigns or heirs of such Person or Entity (in each case, in their respective capacities as such).

**1.120** **"Released Parties"** shall mean, collectively, and in each case, solely in their respective capacities as such, (a) the Debtors and the Estates, (b) the Prepetition Agent, (c) the Prepetition Lenders, (d) the DIP Agent, (e) the DIP Lenders, (f) the Committee and the members of the Committee, and (g) with respect to each of the foregoing, their Related Parties (except to the extent such Related Parties are defendants in the MobileFuse Litigation or defendants in connection with the Retained Causes of Action). For the avoidance of doubt, notwithstanding anything to the contrary in the Combined Disclosure Statement and Plan, the Plan Supplement, the Confirmation Order, and/or the Litigation Trust Agreement, and

notwithstanding whether any such individual is named as a defendant in the MobileFuse Litigation or in any Retained Causes of Action, Sherman Edmiston, Mark Greene, Richard Salute, Kathryn Petralia, John Faieta, Gladys Kong, Paul Gross, and Scott Slipy shall be deemed Released Parties. Anil Mathews, Rahul Agarwal, Shobhit Shukla, Justin Joseph, Jeff Merage, Alissa Merage, Uniqequity Pte Ltd., Teemo Holdings Inc., Uniqequity Limited, AudienceQ Limited, Oriental Investment Advisors, Pte. Ltd., Godspeed Investments Pte. Ltd, all defendants in the MobileFuse Litigation, all defendants in connection with the Retained Causes of Action, all recipients of payments that are the subject of the MobileFuse Litigation or any Retained Causes of Action, all past or present Company auditors and all Company SPAC sponsors shall not be deemed Released Parties regardless of whether they would otherwise meet the definition of "Released Parties."

**1.121**    **"Releasing Parties"** shall mean, collectively, and in each case, solely in their respective capacities as such: (a) the Released Parties, (b) all holders of Claims who (i) vote to accept or reject the Combined Disclosure Statement and Plan or (ii) abstain from voting and, in the case of either (i) or (ii), do not opt out of the voluntary release contained in Section 14.1 of the Combined Disclosure Statement and Plan by checking the "opt out" box on the ballot, and returning it in accordance with the instructions set forth thereon, indicating that they opt not to grant the releases provided in the Combined Disclosure Statement and Plan; (c) holders of Claims or Interests that are deemed to accept or reject this Combined Disclosure Statement and Plan and do not opt out of the voluntary release contained in Section 14.1 of the Combined Disclosure Statement and Plan by checking the "opt out" box on the opt-out election form and returning it in accordance with the instructions set forth thereon, indicating that they opt not to grant the releases contained in the Combined Disclosure Statement and Plan; and (d) with respect to any Person or entity in the foregoing clauses (a) through (c), the Related Party of such Person or Entity solely in their capacity as such (provided that with respect to any Related Party identified herein, each such Person constitutes a Releasing Party under this clause solely with respect to derivative claims that such Related Party could have properly asserted on behalf of a Person identified in clauses (a) through (c) of the definition of Releasing Parties).

**1.122**    **"Restructuring Advisors"** shall mean Willkie Farr & Gallagher LLP and Young Conaway Stargatt & Taylor, LLP as bankruptcy co-counsel, GLC Advisors & Company, as investment banker, Ernst & Young LLP, as financial advisor, and Kroll Restructuring Administration LLC, as claims, noticing, and administrative advisor.

**1.123**    **"Retained Causes of Action"** shall mean all Causes of Actions, including, without limitation, the rights and claims described in the schedule of Retained Causes of Action filed with the Plan Supplement, but excluding: (i) all Causes of Actions, rights and claims, including Avoidance Actions, sold to a purchaser under the Sale, (ii) claims released or exculpated pursuant to this Combined Disclosure Statement and Plan, and (iii) claims against Blue Torch, the Prepetition Secured Parties and the DIP Secured Parties released pursuant to the Final DIP Order and Sale Order. For the avoidance of doubt, those claims set forth on Schedule 2.1(s) of the Stalking Horse Agreement shall constitute Retained Causes of Action.

**1.124**    **"Sale"** shall mean the sale of all or substantially all of the Debtors' Assets to the Successful Bidder, pursuant to the Successful Bidder Agreement and the Sale Order.

**1.125** **"Sale Cash Consideration"** shall mean the cash consideration paid or payable by the Successful Bidder pursuant to the Successful Bidder Agreement.

**1.126** **"Sale Consideration"** shall mean, in the aggregate, the Sale Cash Consideration and the Sale Non-Cash Consideration.

**1.127** **"Sale Non-Cash Consideration"** shall mean the non-cash consideration paid or payable by the Successful Bidder pursuant to the Successful Bidder Agreement.

**1.128** **"Sale Order"** shall mean the order(s) of the Bankruptcy Court approving the Sale.

**1.129** **"Schedules"** shall mean the schedules of assets and liabilities and statements of financial affairs Filed by the Debtors pursuant to section 521 of the Bankruptcy Code and in substantial accordance with the Official Bankruptcy Forms, as the same may have been amended, modified, or supplemented from time to time [D.I. 114, 116, 118, 120], dated January 6, 2024.

**1.130** **"Secured Claim"** shall mean, pursuant to section 506 of the Bankruptcy Code, that portion of a Claim that is (a) secured by a valid, perfected and enforceable security interest, lien, mortgage, or other encumbrance, that is not subject to avoidance under applicable bankruptcy or non-bankruptcy law, in or upon any right, title or interest of the Debtors in and to property of the Estates, to the extent of the value of the Holder's interest in such property as of the relevant determination date, or (b) Allowed as such pursuant to the terms of the Combined Disclosure Statement and Plan (subject to the Confirmation Order becoming a Final Order).  The defined term Secured Claim includes any Claim that is (i) subject to an offset right under applicable law as of the Petition Date, and (ii) a secured claim against the Debtors pursuant to sections 506(a) and 553 of the Bankruptcy Code.

**1.131** **"Solicitation Procedures Order"** shall mean that certain *Order (I) Approving the Combined Disclosure Statement and Chapter 11 Plan of Liquidation of Near Intelligence, Inc. and Its Affiliated Debtors on an Interim Basis for Solicitation Purposes Only; (II) Establishing Solicitation and Tabulation Procedures; (III) Approving the Forms of Ballots and Solicitation Materials; (IV) Establishing the Voting Record Date; (V) Fixing the Date, Time, and Place for the Combined Hearing and the Deadline for Filing Objections Thereto; and (VI) Granting Related Relie*f [D.I. 236], dated February 2, 2024.

**1.132** **"Stalking Horse Bidder"** shall mean BTC Near HoldCo LLC, an acquisition vehicle formed by Blue Torch, together with each of its permitted successors, assigns and designees.

**1.133** **"Stalking Horse Agreement"** shall mean that certain Asset Purchase Agreement, dated as of December 8, 2023, by and among Debtors, as sellers, and the Stalking Horse Bidder, as buyer.

**1.134** **"Successful Bidder"** shall mean the Stalking Horse Bidder.

**1.135** **"Successful Bidder Agreement"** shall mean the Stalking Horse Agreement, as approved by the Sale Order.

1.136     **"Taxes"** shall mean all income, gross receipts, sales, use, transfer, payroll, employment, franchise, profits, property, excise, or other similar taxes, estimated import duties, fees, stamp taxes, and duties, value added taxes, assessments, or charges of any kind whatsoever (whether payable directly or by withholding), together with any interest and any penalties, additions to tax, or additional amounts imposed by any taxing authority of a Governmental Unit with respect thereto.

1.137     **"Unclassified Claims"** shall mean any Administrative Claims, Professional Fee Claims, Priority Tax Claims, DIP Loan Claims and U.S. Trustee Fees.

1.138     **"Unimpaired"** shall mean, when used in reference to a Claim or Interest, any Claim or Interest that is not impaired within the meaning of section 1124 of the Bankruptcy Code.

1.139     **"U.S. Trustee Fees"** shall mean fees payable pursuant to 28 U.S.C. § 1930.

1.140     **"Voting Deadline"** shall mean **March 5, 2024, at 5:00 p.m. (prevailing Eastern Time)**, the date and time by which ballots to accept or reject the Combined Disclosure Statement and Plan must be received to be counted, as set forth by the Solicitation Procedures Order.

1.141     **"Wind-Down Budget"** shall have the meaning ascribed to such term in Section 4.7 herein.

1.142     **"Wind-Down Estate"** shall mean the Estate of each Debtor after the Effective Date.

## RULES OF INTERPRETATION

For purposes of the Combined Disclosure Statement and Plan, except as expressly provided or unless the context otherwise requires, (a) any capitalized term used but not defined herein, but is defined in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning ascribed to that term in the Bankruptcy Code or the Bankruptcy Rules, as applicable, (b) whenever the context requires, each term stated in either the singular or the plural shall include the singular and the plural, and pronouns stated in the masculine, feminine, or neuter shall include the masculine, feminine and the neuter, (c) any reference in the Combined Disclosure Statement and Plan to a contract, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions, (d) any reference in the Combined Disclosure Statement and Plan to an existing document or exhibit means such document or exhibit as it may be amended, modified, or supplemented from time to time, (e) unless otherwise specified, all references in the Combined Disclosure Statement and Plan to sections, articles, schedules, and exhibits are references to sections, articles, schedules, and exhibits of or to the Combined Disclosure Statement and Plan, (f) the words "herein," "hereof," "hereto," "hereunder," and other words of similar import refer to the Combined Disclosure Statement and Plan in its entirety rather than to any particular paragraph, subparagraph, or clause contained in the Combined Disclosure Statement and Plan, (g) captions and headings to articles and sections are inserted for convenience of reference only and shall not limit or otherwise affect the provisions hereof or the interpretation

of the Combined Disclosure Statement and Plan, and (h) the rules of construction set forth in section 102 of the Bankruptcy Code and in the Bankruptcy Rules shall apply.

## ARTICLE II
## CLASSIFICATION OF CLAIMS AND INTERESTS AND ESTIMATED RECOVERIES

> **THE PROJECTED RECOVERIES SET FORTH IN THE TABLE BELOW ARE ESTIMATES ONLY AND ARE THEREFORE SUBJECT TO CHANGE.**

### 2.1    Classification.

The information in the table below is provided in summary form for illustrative purposes only and is subject to material change based on certain contingencies, including related to the claims reconciliation process and collection of, and amount of, Litigation Trust Distribution Proceeds. Actual recoveries may widely vary within these ranges, and any changes to any of the assumptions underlying these amounts could result in material adjustments to recovery estimates provided herein and/or the actual distribution received by creditors. The projected recoveries are based on information available to the Debtors as of the date hereof and reflect the Debtors' estimates as of the date hereof only. In addition to the cautionary notes contained elsewhere in this Combined Disclosure Statement and Plan, it is underscored that the Debtors make no representation as to the accuracy of these recovery estimates.

The Debtors expressly disclaim any obligation to update any estimates or assumptions after the date hereof on any basis (including new or different information received and/or errors discovered). A Claim or Interest is placed in a particular Class only to the extent that the Claim or Interest falls within the description of that Class and is classified in other Classes to the extent that any portion of the Claim or Interest falls within the description of such other Classes. A Claim or Interest is also placed in a particular Class for the purpose of receiving Distributions pursuant to the Combined Disclosure Statement and Plan only to the extent that such Claim or Interest is an Allowed Claim in that Class and such Claim or Interest has not been paid, released or otherwise settled prior to the Effective Date.

All Claims and Interests, except Administrative Claims, Professional Fee Claims, DIP Loan Claims, Priority Tax Claims and U.S. Trustee Fees, are placed in the Classes set forth below. In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims (including, without limitation, Professional Fee Claims), Priority Tax Claims, DIP Loan Claims, and U.S. Trustee Fees as described herein, have not been classified, and the respective treatment of such Unclassified Claims is set forth below in Article VI of the Combined Disclosure Statement and Plan. The categories of Claims and Interests listed below classify Claims and Interests for all purposes, including voting, confirmation and distribution pursuant to the Combined Disclosure Statement and Plan and pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code.

| Class/ Designation | Combined Disclosure Statement and Plan Treatment | Estimated Amount of Total Claims | Status / Voting Rights | Projected Recovery |
|---|---|---|---|---|
| **Class 1**: Priority Non-Tax Claims | Except to the extent that a holder of a Priority Non-Tax Claim against any of the Debtors has agreed to less favorable treatment of such Claim, each such holder shall receive, in full and final satisfaction of such Claim, Cash in an amount equal to such Claim, payable on the later of (i) forty five (45) calendar days after the Effective Date (or as soon as reasonably practicable thereafter) and (ii) the first Business Day after thirty (30) days from the date on which such Claim becomes an Allowed Priority Non-Tax Claim, or as soon as reasonably practical thereafter. | $0 | Unimpaired/ Deemed to accept Plan | 100% |
| **Class 2**: Other Secured Claims | Except to the extent that a holder of an Allowed Other Secured Claim against any of the Debtors has agreed to less favorable treatment of such Claim, each such holder shall receive, at the option of the Debtors or the Litigation Trustee, (i) payment in full in Cash in full and final satisfaction of such Claim, payable on the later of (A) forty five (45) calendar days after the Effective Date (or as soon as reasonably practicable thereafter) and (B) the first Business Day after thirty (30) days from the date on which such Other Secured Claim becomes an Allowed Other Secured Claim, or as soon as reasonably practical thereafter, (ii) delivery of the collateral securing such Allowed Other Secured Claim and payment of any interest required under section 506(b) of the Bankruptcy Code, or (iii) such other treatment necessary to satisfy section 1129 of the Bankruptcy Code. | $0 | Unimpaired/ Deemed to accept Plan | 100% |

| Class/ Designation | Combined Disclosure Statement and Plan Treatment | Estimated Amount of Total Claims | Status / Voting Rights | Projected Recovery |
|---|---|---|---|---|
| **Class 3:** Prepetition Loan Claims | After Payment in Full in Cash of all Administrative Claims, Other Secured Claims, Priority Tax Claims and Priority Non-Tax Claims and funding of any amounts required to fund a wind-down of the Debtors' estates, unless the applicable Holder agrees to less favorable treatment, each Holder of a Prepetition Loan Claim shall be entitled to receive Litigation Trust Interests entitling the Holder to its Pro Rata Share of the Litigation Trust Distribution Proceeds, in accordance with the distribution priorities set forth in Section 9.11 hereof, up to the Allowed amount of such Prepetition Loan Claim. | $81,177,686 | Impaired/ Entitled to vote | Undetermined[3] |

---

[3] Holders of Allowed Prepetition Loan Claims are projected to recover a portion of their Allowed Prepetition Loan Claims on account of the Credit Bid Amount.  The recovery for Holders of Allowed Prepetition Loan Claims may be modified depending on the ultimate amount of Litigation Trust Distribution Proceeds, which amount is undetermined as of the date of this Combined Disclosure Statement and Plan.

| Class/ Designation | Combined Disclosure Statement and Plan Treatment | Estimated Amount of Total Claims | Status / Voting Rights | Projected Recovery |
|---|---|---|---|---|
| **Class 4:** General Unsecured Claims | After Payment in Full in Cash of all Administrative Claims, Other Secured Claims, Priority Tax Claims and Priority Non-Tax Claims and funding of any amounts required to fund a wind-down of the Debtors' estates, unless the applicable Holder agrees to less favorable treatment, each Holder of an Allowed General Unsecured Claim shall be entitled to either:<br><br>(a) in full and final satisfaction of such Holder's Allowed General Unsecured Claim, the Holder's Pro Rata Share of the GUC Cash Pool; or<br><br>(b) at the election of such Holder, Litigation Trust Interests entitling the Holder to its Pro Rata Share of the Litigation Trust Distribution Proceeds, in accordance with the distribution priorities set forth in Section 9.11 hereof, up to the Allowed amount of such Allowed General Unsecured Claim; <u>provided</u>, that such election shall be made either prior to or following the Effective Date and in accordance with the Litigation Trust Agreement and Confirmation Order. | $30,321,000 | Impaired/ Entitled to vote | 2.5% - Undetermined[4] |
| **Class 5:** Existing Securities Law Claims | Holders of Existing Securities Law Claims shall not receive or retain any distribution under the Combined Disclosure Statement and Plan on account of such Existing Securities Law Claims. | $0 | Impaired/ Deemed to reject Plan | 0% |
| **Class 6:** Interests | Interests shall be extinguished, cancelled and released on the Effective Date and Holders of Interests shall not receive any distribution on account of such Interests. | N/A | Impaired/ Deemed to reject Plan | 0% |

---

[4]    The projected recovery for Holders of General Unsecured Claims depends on the ultimate amount of Litigation Trust Distribution Proceeds, which amount is undetermined as of the date of this Combined Disclosure Statement and Plan.

| Class/ Designation | Combined Disclosure Statement and Plan Treatment | Estimated Amount of Total Claims | Status / Voting Rights | Projected Recovery |
|---|---|---|---|---|
| **Class 7A and 7B:** Intercompany Claims and Intercompany Interests | On or after the Effective Date, all Allowed Intercompany Claims and Intercompany Interests shall be adjusted, continued, settled, reinstated, discharged, or eliminated, in each case to the extent determined to be appropriate by the Debtors or the Litigation Trustee (as applicable), with the prior consent of the Prepetition Agent. | N/A | Impaired/ Deemed to reject Plan | 0% |

## ARTICLE III
## BACKGROUND AND DISCLOSURES

### 3.1    General Background[5]

#### (a)    The Debtors' Business

The Debtors are a data intelligence company focused on providing their customers with data-driven marketing and operational intelligence offerings through a suite of software-as-a-service products.  The Debtors were founded in 2012 by Anil Mathews, the company's former Chief Executive Officer.  In 2016, the Debtors launched Allspark, their flagship software-as-a-service product and in April 2021, the Debtors acquired UberMedia—a mobile insights platform that powers advertising, location measurement, and business intelligence.  The acquisition of UberMedia greatly expanded the Debtors' operations and nearly doubled their total employee headcount.  Today, the Debtors service customers on a global scale, including throughout the United States, Europe, and Asia.

The Debtors maintain their headquarters in Pasadena, California, with additional offices and operations throughout Europe and Asia.  As a result of the Business Combination (as defined below), Near Intelligence Inc. is a publicly traded company with its shares and warrants listed on the Nasdaq Capital Market (ticker symbol: NIR and NIRWW, respectively).

The Debtors' primary software-as-a-service products are Allspark, a marketing intelligence product and Pinnacle, an operational intelligence product:

- **Allspark**.  Allspark is a marketing intelligence product that enables the Debtors' customers to leverage data-driven marketing intelligence, including the ability to measure the effectiveness of marketing campaigns.  Allspark is the Debtors' flagship software-as-a-service product and allows customers to curate audience segments based on real world behavior.  Allspark brings data from over 1.6 billion monthly active users and interactions across 70 million places to life in an intuitive

---

[5]    Additional information regarding the Debtors' business, assets, capital structure, and the circumstances leading to the filing of the Chapter 11 Cases is set forth in detail in the First Day Declaration.

and visual product.  Put simply, Allspark automates the entire marketing workflow, which typically consists of three parts:

- o **Audience curation:** Allspark allows users to curate audience segments based on particular rules, and to overlay multi-dimension data.  For example, a user could type in "women who frequently visit a gym in Sydney and also spend on air travel," and AllSpark would surface related live data.

- o **Activation:** Once an audience segment is curated, Allspark allows businesses to market directly to that audience through its integrated mobile advertising platform or they can export that audience and take it elsewhere.

- o **Measurement:** Users can also gauge changes in behavior in order to measure the success or failure of certain business decisions.  For instance, if a customer ran a marketing campaign with the goal of driving people to its store, Allspark can provide the user with metrics on how many people walked into the store as a result of the marketing campaign.

- • **Pinnacle**.  Pinnacle enables the Debtors' customers to access data that is focused on consumer behavior in and around places, such as restaurants, retail locations, and tourist attractions.  Pinnacle provides customers with an intuitive user interface and multiple ways of working with human movement data.  Pinnacle's interface offers instant charts and maps that can be used to focus on human movement data in a single location, or to compare multiple visitation patterns across geographies and time periods in numerous different countries.  Pinnacle allows the Debtors' customers to leverage consumer behavior data to understand how historical trends affected footfall for themselves and competitors, allowing them to make informed and strategic business decisions.

In addition to the United States, the Debtors and their non-Debtor subsidiaries operate throughout Europe and Asia.  While Near Intelligence Pte. Ltd. (based in Singapore) is a Debtor in these Chapter 11 Cases, none of the other corporate entities that comprise the Debtors' European and Asian business are chapter 11 Debtors.

### (b)   *The Debtors' Corporate Structure*

The Debtors' current corporate structure is the product of a "SPAC merger,"  and the business combination (the "Business Combination") contemplated by that certain Agreement and Plan of Merger, dated as of May 18, 2022 (the "Merger Agreement"), by and among KludeIn I Acquisition Corp., a special purpose acquisition company and Delaware corporation ("KludeIn"), Paas Merger Sub 1 Inc., a Delaware corporation and wholly owned subsidiary of KludeIn ("Merger Sub 1"), Paas Merger Sub 2 LLC, a Delaware limited liability company and wholly owned subsidiary of KludeIn ("Merger Sub 2"), and Near Intelligence Holdings Inc., a Delaware corporation ("Near Holdings").  Pursuant to the Merger Agreement, (i) Merger Sub 1 merged with and into Near Holdings, with Near Holdings surviving the merger as a wholly owned subsidiary of KludeIn (the "First Merger"), and (ii) immediately following the First Merger, Near Holdings,

as the surviving entity of the First Merger, merged with and into Merger Sub 2, with Merger Sub 2 being the surviving entity.

KludeIn stockholders approved the Business Combination at KludeIn's special meeting held on March 20, 2023 and the Business Combination was completed on March 23, 2023 (the "Closing Date"). On the Closing Date, in connection with the consummation of the Business Combination, KludeIn changed its name from KludeIn I Acquisition Corp. to Near Intelligence, Inc., and Merger Sub 2 changed its name from Merger Sub 2 to Near Intelligence LLC. Beginning on March 24, 2023, Near Intelligence, Inc.'s common stock and warrants started trading on the Nasdaq Capital Market under the ticker symbols "NIR" and "NIRWW," respectively.

### (c)    *Equity Ownership and Capital Structure*

#### i.    Equity Ownership

Debtor Near Intelligence, Inc. is a publicly traded company and its shares trade on the Nasdaq Capital Market under the ticker NIR. As of the Petition Date, Near Intelligence, Inc. has approximately 57 million issued and outstanding shares of common stock. Debtor Near Intelligence LLC is a wholly owned subsidiary of Near Intelligence, Inc., and Debtors Near North America, Inc. and Near Intelligence Pte. Ltd. are wholly owned subsidiaries of Near Intelligence LLC.

#### ii.    Capital Structure

As of the Petition Date, the Debtors have an aggregate principal amount of approximately $96 million in funded debt obligations, consisting of the outstanding principal obligations arising under the Prepetition First Lien Financing Agreement, the Convertible Debentures, and the Promissory Notes (each as defined below). Debtor Near Intelligence, Inc. is a borrower under the Convertible Debentures and the Promissory Notes. Debtor Near Intelligence LLC is a borrower under the Prepetition First Lien Financing Agreement. Debtors Near North America, Inc. and Near Intelligence Pte. Ltd. are guarantors under the Prepetition First Lien Financing Agreement.

#### (A)    *The Prepetition First Lien Financing Agreement*

Debtor Near Intelligence LLC (f/k/a Paas Merger Sub 2 LLC and successor in interest to Near Intelligence Holdings Inc.), as borrower, Debtor Near Intelligence, Inc., as parent, Debtors Near North America, Inc. and Near Intelligence Pte. Ltd., as guarantors, the lenders party to the Prepetition First Lien Financing Agreement, and Blue Torch Finance LLC, as administrative agent and collateral agent are parties to the Prepetition First Lien Financing Agreement, providing for the Debtors' first-lien term loan credit facility.

To secure the Prepetition First Lien Financing Agreement, the Debtors entered into various security and collateral documents in favor of the Prepetition Agent (for the benefit of the Prepetition Lenders) and various security and collateral documents, pursuant to which the Prepetition Lenders were granted first priority liens on substantially all of the Debtors' assets. The maturity date of the Prepetition First Financing Agreement is November 4, 2026. As of the Petition Date, approximately $76,742,047 of principal remained outstanding under the Prepetition First

Lien Financing Agreement, plus all accrued and outstanding interest (including interest paid in kind, accrued but unpaid interest payable in cash and interest at the default rate, each as applicable), fees (including the Deferred Consent Fee, as defined in the Prepetition Financing Documents), reimbursements, expenses and all other obligations outstanding under the Prepetition Financing Documents as of the Petition Date.

(B)     *The Convertible Debentures & Promissory Notes*

Debtor     Near     Intelligence,     Inc.     issued     certain convertible debentures     (the "Convertible Debentures") in a series of private placements (i.e., the Part A & Part B Convertible Debentures).   The Convertible Debentures are unsecured and subordinate to the Prepetition Lenders under the Prepetition First Lien Financing Agreement.   The maturity date of the Part A Convertible Debentures is February 2, 2027, and the maturity date of the Part B Convertible Debenture is the earlier of (a) February 2, 2027 or (b) the termination or repayment of the obligations under the Prepetition First Lien Financing Agreement.   As of the Petition Date, approximately $17 million of principal, in the aggregate, remains outstanding under the Convertible Debentures. Subject to Section 9.12 hereof, each of the Convertible Debentures are subject to the Subordination Agreements (as defined in the DIP Loan Agreement) by and among the Prepetition Agent and the holders of the Convertible Debentures.

In connection with the Business Combination, Debtor Near Intelligence, Inc. (f/k/a KludeIn I Acquisition Corp.) assumed a working capital loan (the "Working Capital Loan") issued by KludeIn Prime LLC (the "Sponsor") to KludeIn I Acquisition Corp. The Working Capital Loan is evidenced by a promissory note.   Separately, in connection with the Business Combination, Near Intelligence, Inc. also assumed a promissory note which was issued by the Sponsor to KludeIn I Acquisition Corp. to finance the Sponsor's transaction costs related to the Business Combination (together with the Working Capital Loan, the "Promissory Notes").   The Promissory Notes are unsecured, bear no interest and are currently due on December 31, 2023.  As of the Petition Date, approximately $2.5 million of principal, in the aggregate, remains outstanding under the Promissory Notes.

The Debtors also have numerous other unsecured claims outstanding as of the Petition Date, including vendor claims and litigation claims.

## 3.2     Events Leading to Chapter 11

(*a*)     *Recent Financial Performance and Liquidity Constraints*

The Debtors have incurred losses each year since their inception in 2012, having suffered a net loss of approximately $100 million for the fiscal year ended December 31, 2022.    As revenues have been modest, the Debtors have relied heavily on debt and equity financings to fund operations.    Despite the revenues generated from sales of their software products and management's best efforts to stabilize operations, the Debtors' business prospects significantly declined in the months leading up to the Petition Date.  Several factors, among others, contributed to this decline.

Competition in the data intelligence industry is robust and the market is saturated with competitors who are constantly developing new technologies and products for more efficiently

gathering, cataloging, and updating data.  The Debtors' inability to maintain the quality of their products in accordance with industry standards led to difficulties in retaining and obtaining customers, as customers have numerous firms to turn to for their data intelligence needs.

There have also been significant changes in regulatory and legal environments surrounding data protection and privacy.  The recent enactment of stricter data privacy regulations has generally caused headwinds throughout the industry, and it has become increasingly difficult for data intelligence providers to aggregate the accurate consumer and behavior data that they rely on to deliver their software products.

The Debtors have also faced difficulty in recent years raising capital in an amount sufficient to meet their liquidity needs and fund operations.  As a result, the Debtors were forced to undertake necessary cost reduction actions, including significant reductions in force.  These actions made it increasingly difficult for the Debtors to maintain their high standards for developing, maintaining, and delivering their software products.

The foregoing factors (among others) have made it increasingly difficult for the Debtors to maintain and grow their current customer base and realize net positive revenues.

(b)    ***Investigation of Improprieties and Appointment of Restructuring Committee***

On October 1, 2023, the Board of Directors of Debtor Near Intelligence, Inc. appointed a Restructuring Committee of the Board of Directors (the "Restructuring Committee") to oversee both the Debtors' restructuring efforts and an internal investigation conducted by Willkie Farr & Gallagher LLP, the Debtors' counsel, with respect to suspected financial mismanagement and fraudulent actions taken by the Debtors' former Chief Executive Officer (Mr. Mathews) and former Chief Financial Officer (Mr. Agarwal).  The Restructuring Committee also authorized and directed the Debtors to place Mr. Mathews, Mr. Agarwal, and several other employees on administrative leave pending the results of its investigation.[6]

Through the investigation, the Debtors uncovered a carefully concealed scheme that was perpetrated against the Debtors through which MobileFuse received tens of millions of dollars in fraudulent transfers and evaded tens of millions of dollars in contractual obligations.  Specifically, since as early as 2020, MobileFuse, Mr. Agarwal, Mr. Mathews, and others deliberately caused the Debtors to pay MobileFuse tens of millions of dollars for phony data services that MobileFuse never delivered under sham contracts that MobileFuse never performed.  MobileFuse then used that money—the Debtors' money—to "pay" the Debtors for tens of millions of dollars of services that the Debtors performed under real contracts.  As a result of this scheme, MobileFuse owes the Debtors at least $40 million in unpaid fees, and has caused significant additional damage to the Debtors and their stakeholders.  The Debtors believe that the motive of this scheme was, among

---

[6]    Additionally, on October 3, 2023, the Restructuring Committee determined that previously issued financial statements of the Debtors should not be relied upon, including the Debtors' financial statements as of and for each of the years ended December 31, 2022, 2021 and 2020 as well as the Debtors' quarterly financial statements for the periods ended March 31, 2023 and June 30, 2023.  The conclusion that the previously issued financial statements should not be relied upon resulted from the Restructuring Committee's assessment that certain revenue may have been overstated.

other things, to inflate both the Debtors' and MobileFuse's revenues as well as Mr. Mathews's and Mr. Agarwal's compensation.[7]

Based on the investigation results, in November 2023, the Restructuring Committee terminated the employment of Mr. Agarwal and Mr. Mathews for cause, effective immediately, pursuant to the terms of their respective employment agreements.  To maximize value for their stakeholders, the Debtors intend to pursue claims against the former CEO, former CFO, and MobileFuse during and or after the chapter 11 cases.

(c)    *Default Under Prepetition First Lien Financing Agreement and Forbearance Agreement*

In April 2023, the Debtors' liquidity was less than the minimum required under the Prepetition First Lien Financing Agreement and, as a result, the Debtors were in breach of applicable covenants under the Prepetition First Lien Financing Agreement and such breaches constituted events of default.  On May 5, 2023 and May 10, 2023, the Debtors entered into forbearance agreements with the Prepetition Lenders, pursuant to which the Prepetition Lenders agreed to temporarily forbear from exercising their default-related rights and remedies against the Debtors with respect to the liquidity and other specified events of default.

On May 18, 2023, the Debtors entered into that certain Waiver and Amendment No. 3 to the Prepetition First Lien Financing Agreement with the Prepetition Lenders, pursuant to which the Prepetition Lenders waived certain existing defaults and the parties agreed to amend certain terms of the Prepetition First Lien Financing Agreement relating to, among other things, the minimum liquidity requirements.   The Prepetition First Lien Financing Agreement was subsequently amended on July 18, 2023 and August 31, 2023, when the Prepetition Lenders agreed to further waive certain specified defaults under the facility.

In addition, on October 8, 2023, the Debtors entered into that certain Amendment No. 6 and Limited Forbearance to the Prepetition First Lien Financing Agreement with the Prepetition Lenders, pursuant to which the Prepetition Lenders agreed to temporarily forbear from exercising its default-related rights and remedies with respect to all existing events of defaults during the specified forbearance period.  During the forbearance period, as further discussed below, the Debtors engaged in fruitful discussions with the Prepetition Lenders regarding a holistic restructuring transaction to be effectuated through a chapter 11 process.

(d)    *Efforts to Negotiate a Comprehensive Restructuring*

In an attempt to mitigate the adverse economic and operational challenges facing them, in the months leading up to the bankruptcy filing, the Debtors initiated various cost-cutting measures to preserve liquidity.  These efforts included: implementing pay cuts, a hiring freeze, a workforce reduction consisting of approximately 56 employees, and reducing disbursements and expenses.

---

[7]    On November 29, 2023, Mr. Mathews filed a Statement of Claim and arbitration demand against Near Intelligence, Inc. The Statement of Claim asserts several causes of action against Near Intelligence, Inc., including (among others) defamation, intentional and negligent interference with prospective economic relations, and breach of contract.

While the Debtors have continued to generate revenues, these revenue streams, even when combined with their extensive cost-cutting measures, have been and will continue to be insufficient to cover the Debtors' ongoing cash requirements.

With the concerns discussed above in mind, and with their operating cash running low, the Debtors retained the Restructuring Advisors to pursue various strategic alternatives. The Debtors also engaged with the Prepetition Lenders regarding the proposed restructuring transactions discussed below, which include a stalking horse bid for substantially all of the Debtors' assets, this Combined Disclosure Statement and Plan, and the DIP Facility.

### *(e)    The Proposed Restructuring Transactions*

The Debtors and the Prepetition Lenders engaged in a series of negotiations over the course of several weeks to implement a comprehensive restructuring transaction involving the commencement of these Chapter 11 Cases to execute a value-maximizing section 363 sale of their assets free and clear of all claims and interests. The section 363 sale will be followed by the Combined Disclosure Statement and Plan to facilitate the transactions herein and wind-down the Chapter 11 Cases. The DIP Facility includes a wind-down amount to support the implementation of the plan and an orderly wind-down of the estates.

In connection with the proposed section 363 sales process, on the Petition Date, the Debtors filed a motion seeking, among other things, approval of sale procedures that provide for BTC Near HoldCo LLC (together with each of its permitted successors, assigns and designees) to serve as a Stalking Horse Bidder pursuant to the terms of the Stalking Horse Agreement, for substantially all of their assets, against which higher or otherwise better offers may be sought, providing a clear path to consummate a transaction (the "Bidding Procedures Motion") [D.I. 20]. On January 23, 2024, the Court entered an order [D.I. 198] approving the Bidding Procedures Motion. The stalking horse bid, as described in greater detail in the Bidding Procedures Motion, set the floor for a competitive bidding process where topping bids could have yielded additional value that would have inured to the benefit of all stakeholders. The Stalking Horse Agreement contemplates a purchase price for the assets that is valued at $50 million (plus certain assumed liabilities), which is in the form of the Credit Bid Amount.[8]

The bidding procedures enabled the Debtors to expeditiously sell their assets free and clear of liens, claims, rights, interests, pledges, obligations, restrictions, limitations, charges, encumbrances, and other interests. Time is of the essence in consummating a value-maximizing sale transaction. While the Debtors negotiated for as much runway as possible, the DIP Lenders emphasized the need for an expedited process given the Debtors' liquidity profile. Accordingly, the milestones set forth in the DIP Facility, consistent with the timeline set forth in the bid procedures, contemplated a brief but robust postpetition marketing process and sale.

---

[8]    Pursuant to the terms of the Bidding Procedures Order, in the event that the Committee commenced a Challenge (as defined in the Final DIP Order), the Stalking Horse Bidder had the option (with the agreement of the Debtors) to modify the purchase price of the Stalking Horse Agreement or, in the alternative, to not close the Sale.

### 3.3     The Chapter 11 Cases

#### (a)     Generally

On the Petition Date, the Debtors filed the Combined Disclosure Statement and Plan.  If confirmed, the Combined Disclosure Statement and Plan will allow for both the efficient wind-down of the Debtors' estates following the sale process and the realization of maximum value with respect to remaining assets for the benefit of their stakeholders.  The wind-down efforts will be facilitated by the Litigation Trust established under the Combined Disclosure Statement and Plan and overseen by the Litigation Trustee and Litigation Trust Board.  The purpose of the Litigation Trust will include pursuing and liquidating the Litigation Trust Assets, reconciling and objecting to claims, winding down the Debtors' estates, and making distributions to the beneficiaries of the Litigation Trust.

The Litigation Trust Assets will include, among other things, the Debtors' rights to pursue certain causes of action against third parties, including MobileFuse.  The beneficiaries of the trust will include holders of Prepetition Loan Claims and General Unsecured Claims.  To support the implementation of the Combined Disclosure Statement and Plan and the efficient wind-down of the Debtors' estates, proceeds of loans made pursuant to the Debtors' DIP Facility may be used to, among other things, fund wind-down costs.

#### (b)     Retention of Professional Advisors

Pursuant to Orders entered on January 9, 2024, the Bankruptcy Court authorized the Debtors to retain and employ (i) Willkie Farr & Gallagher LLP and (ii) Young Conaway Stargatt & Taylor, LLP as their bankruptcy co-counsel [D.I. 154 & 149]; (iii) GLC Advisors & Company, as investment banker [D.I. 143]; and (iv) Kroll Restructuring Administration LLC, as administrative advisor [D.I. 142].  Pursuant to the order entered on January 23, 2024, the Bankruptcy Court authorized the Debtors to retain and employ Ernst & Young, as financial advisor [D.I. 194].  The Bankruptcy Court also authorized the Debtors to retain and employ certain professionals utilized by the Debtors in the ordinary course of business prior to the Petition Date [D.I. 148].

#### (c)     "First Day" Motions and Related Applications

Commencing on the Petition Date, the Debtors filed the following "first-day" motions and applications designed to ease the Debtors' transition into chapter 11, maximize the value of the Assets, and minimize the effects of the commencement of the Chapter 11 Cases (collectively, the "First Day Motions"):

     i.     *Debtors' Motion for an Order Authorizing Joint Administration of the Debtors' Chapter 11 Cases* [D.I. 2] ("Joint Administration Motion").

     ii.     *Debtors' Application for Entry of an Order Appointing Kroll Restructuring Administration LLC as Claims and Noticing Agent* [D.I. 3] ("Claims Agent Retention Motion").

iii.   *Debtors' Motion for Entry of an Order (I) Restating and Enforcing Protections of 11 U.S.C. §§ 362, 365, 525, and 541(c), (II) Approving Notice Related to Non-Debtor Affiliates, and (III) Granting Related Relief* [D.I. 4] ("<u>Foreign Comfort Motion</u>").

iv.   *Debtors' Motion for Entry of an Order Authorizing the Debtors to (A) File a Consolidated List of Creditors in Lieu of Submitting a Separate Mailing Matrix for Each Debtor, (B) File a Consolidated List of the Debtors' Thirty Largest Unsecured Creditors and (C) File Under Seal Portions of the Creditor Matrix and Other Filings Containing Certain Personal Identification Information Filed by Near Intelligence, Inc.* [D.I. 5] ("<u>Creditor Matrix Motion</u>").

v.   *Debtors' Motion for Interim and Final Orders, Pursuant to Sections 105(a), 362(a)(3) and 541 of the Bankruptcy Code and Bankruptcy Rule 3001, Establishing Notice and Hearing Procedures for Trading in, or Certain Claims of Worthlessness With Respect to, Equity Securities in Debtor Near Intelligence, Inc.* [D.I. 6] ("<u>NOL Motion</u>").

vi.   *Debtors' Motion for Interim and Final Orders (I) Authorizing the Debtors to Pay Certain Prepetition Taxes and Fees and Related Obligations and (II) Authorizing the Banks to Honor and Process Check and Electronic Transfer Requests Related Thereto* [D.I. 7] ("<u>Taxes Motion</u>").

vii.   *Debtors' Motion for Interim and Final Orders (I) Prohibiting Utility Companies from Altering, Refusing, or Discontinuing Utility Services, (II) Deeming Utility Companies Adequately Assured of Future Payment, (III) Establishing Procedures for Resolving Objections by Utility Companies and Determining Any Additional Adequate Assurance of Payment, and (IV) Granting Related Relief* [D.I. 8] ("<u>Utilities Motion</u>").

viii.   *Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to Continue Their Insurance Policies and Pay All Obligations in Respect Thereof, (II) Authorizing the Debtors' Banks and Other Financial Institutions to Honor and Process Checks and Transfers Related to Such Obligations, and (III) Granting Related Relief* [D.I. 9] ("<u>Insurance Motion</u>").

ix.   *Debtors' Motion For Entry of Interim and Final Orders (I) Authorizing the Debtors to Maintain and Administer Their Existing Customer Programs and Honor Certain Prepetition Obligations Related Thereto, (II) Authorizing the Banks to Honor and Process Check and Electronic Transfer Requests Related Thereto, and (III) Granting Related Relief* [D.I. 10] ("<u>Customer Programs Motion</u>").

x.   *Debtors' Motion for Interim and Final Orders (I) Authorizing the Debtors to (A) Continue and Maintain Their Cash Management System, Including Bank Accounts and Business Forms, (B) Continue Intercompany Transactions, and (C) Honor Certain Prepetition Obligations Related Thereto; (II) Waiving Certain Operating Guidelines; (III) Extending the*

*Time to Comply With Section 345(B) of the Bankruptcy Code; and (IV) Granting Related Relief* [D.I. 11] ("Cash Management Motion").

xi. *Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing Debtors to (A) Pay Certain Prepetition Employment Obligations and (B) Maintain Employee Benefits Programs and (II) Granting Related Relief* [D.I. 12] ("Wage Motion").

xii. *Debtors' Motion for Interim and Final Orders (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Authorizing the Debtors to Use the Cash Collateral, (III) Granting Adequate Protection to Prepetition Secured Lenders, (IV) Granting Liens and Superpriority Claims, (V) Modifying the Automatic Stay, and (VI) Scheduling a Final Hearing* [D.I. 15] (the "DIP Motion").

On December 11, 2023, the Bankruptcy Court entered Orders (i) approving the relief requested in the Joint Administration Motion [D.I. 54], the Claims Agent Retention Application [D.I. 56], and the Foreign Comfort Motion [D.I. 58] on a final basis, and (ii) approving the relief requested in the DIP Motion [D.I. 66], the Insurance Motion [D.I. 58], the Utilities Motion [D.I. 55], the Taxes Motion [D.I. 63], the Creditor Matrix Motion [D.I. 64], the Customer Programs Motion [D.I. 60], the Wages Motion [D.I. 57], the Cash Management Motion [D.I. 62], and the NOL Motion [D.I. 61] on an interim basis.

On January 9, 2024, the Bankruptcy Court entered Orders approving, on a final basis, the relief requested in the Wages Motion [D.I. 159], the Insurance Motion [D.I. 144], the Utilities Motion [D.I. 140], the Taxes Motion [D.I. 141], the Creditor Matrix Motion [D.I. 145], the Customer Programs Motion [D.I. 146], the Cash Management Motion [D.I. 174], and the NOL Motion [D.I. 150].  On January 23, 2024, the Bankruptcy Court entered an Order approving, on a final basis, the relief requested in the DIP Motion [D.I. 197].

### (d)   *Appointment of Official Committee of Unsecured Creditors*

On December 22, 2023, the U.S. Trustee filed the Notice of Appointment of Unsecured Creditors Committee [D.I. 85], notifying parties in interest that the U.S. Trustee appointed the Committee in the Chapter 11 Cases. The Committee is comprised of the following members: (i) YA II PN, Ltd., and (ii) Magnite, Inc. The Committee serves as a representative and fiduciary for the interests of the unsecured creditors.  Counsel to the Committee is DLA Piper LLP (US) and the Committee's financial advisor is M3 Advisory Partners, LP.

On January 9, 2024, the U.S. Trustee held the meeting of creditors pursuant to section 341(a) of the Bankruptcy Code.

### (a)   *Schedules and Bar Dates*

On December 15, 2023, the Bankruptcy Court entered the Bar Date Order, granting the relief requested in the Bar Date Motion [D.I. 77].  The Bar Date Order established the General Bar Date as February 8, 2024 at 5:00 p.m. (prevailing Eastern Time).  The Bar Date Order also

established the Governmental Bar Date as June 5, 2024 at 5:00 p.m. (prevailing Eastern Time) (the "Governmental Bar Date").

On January 6, 2024, the Debtors filed the Schedules. Among other things, the Schedules set forth the Claims of known or putative creditors against the Debtors as of the Petition Date, based upon the Debtors' books and records.

On February 2, 2024, the Bankruptcy Court entered the Solicitation Procedures Order that, among other things, established certain deadlines with respect to the solicitation of votes and Confirmation of the Combined Disclosure Statement and Plan.

As described in greater detail below, the projected recoveries set forth herein are based on certain assumptions, including the Debtors' estimates of the Claims that will eventually be Allowed in various Classes. There is no guarantee that the ultimate amount of each of such categories of Claims will correspond to the Debtors' estimates. The Debtors or the Litigation Trustee, as applicable, and their respective professionals, will investigate Claims filed against the Debtors to determine the validity of such Claims. The Debtors or the Litigation Trustee, as applicable, may file objections to Claims that are filed in improper amounts or classifications, or are otherwise subject to objection under the Bankruptcy Code or other applicable law.

*(b)*        ***The Sale Process***

As set forth in the First Day Declaration, the Debtors' paramount goal in the Chapter 11 Cases is to maximize the value of the estates for the benefit of the Debtors' creditor constituencies and other stakeholders through the sale of substantially all of the Assets. To accomplish such, the Debtors began engaging with interested parties prior to the Petition Date and market tested the stalking horse bid during these Chapter 11 Cases to ensure that the Debtors obtain the highest or otherwise best offer or combination of offers for some or all of their assets. Specifically, in November 2023, the Debtors and their Restructuring Advisors commenced a targeted marketing and sale process for substantially all of the Debtors' assets. In connection with the prepetition marketing efforts, the Debtors and their Restructuring Advisors contacted over 100 parties that might be interested in pursuing a transaction for the Debtors' assets (including strategic and financial partners).

On the Petition Date, the Debtors filed a Bidding Procedures Motion seeking authority to proceed with a bidding and auction process to consummate the Sale through the Sale process that the Debtors expect will generate maximum value for their assets. To facilitate the Sale process, the Debtors, in consultation with the Restructuring Advisors proposed certain customary bidding procedures (the "Bidding Procedures") to preserve flexibility in the Sale process, generate the greatest level of interest in the Debtors' assets, and result in the highest or otherwise best value for those assets. Given the Debtors' liquidity situation at the outset of the Chapter 11 Cases, the Debtors believed that a timely sale of their assets would maximize value to the greatest extent possible under the circumstances, and generate the highest possible recoveries in the most efficient and expeditious manner possible, which will inure to the benefit of the Debtors' creditors and other stakeholders. The Debtors also believed that it would ensure, to the benefit of their estates, that the market has certainty around the parameters of the Sale process.

**484**

On January 23, 2024, the Bankruptcy Court entered the Bidding Procedure Orders approving the Bidding Procedures. Pursuant to the court-approved bidding procedures, the Debtors solicited topping bids to maximize value for their stakeholders. The Bidding Procedures provided the following key dates and deadlines with respect to the Sale Process:

| SALE PROCESS KEY DATES AND DEADLINES[9] | |
|---|---|
| **February 6, 2024, at 4:00 p.m. (ET)** | Sale Objection Deadline |
| **February 8, 2024, at 4:00 p.m. (ET)** | Bid Deadline |
| **February 9, 2024, at 4:00 p.m. (ET)** | Deadline for Debtors to Notify Bidders of Status as Qualified Bidders |
| **February 10, 2024, at 9:00 a.m. (ET)** | Auction (if any) |
| **February 12 2024, at 4:00 p.m. (ET)** | Post-Auction Objection Deadline |
| **February 15, 2024 at 4:00 p.m. (ET)** | Debtors' Reply Deadline to Post-Auction Objections |
| **February 16, 2024, at 10:00 a.m. (ET)** | Sale Hearing[10] |

As further described in the *Supplemental Declaration of Abraham T. Han in Support of Order Approving Sale of the Debtors' assets to the Successful Bidder* [D.I. 272], in furtherance of their efforts to achieve the highest or otherwise best bid for their Assets, the Debtors and the Restructuring Advisors continued to market the Assets on a postpetition basis in accordance with the Bidding Procedures Order. Following the Petition Date, the Debtors and the Restructuring Advisors contacted one hundred twenty-four (124) prospective buyers for the Assets, including parties that the Debtors had engaged with prior to the Petition Date and certain parties identified by the Committee. The Debtors executed non-disclosure agreements with eighteen (18) prospective buyers. Ultimately, however, the Debtors did not receive any Qualified Bid (as deined in the Bidding Procedures Order) from any party for the Assets (other than the Stalking Horse Bid) prior to the Bid Deadline on February 8, 2024.

Accordingly, the Debtors cancelled the auction [D.I. 254] and selected the Stalking Horse Bidder as the Successful Bidder for their Assets in accordance with the Bidding Procedures Order. The Debtors also determined that the Stalking Horse Agreement is the Successful Bidder Agreement.

---

[9]   Capitalized terms used in this summary of Sale Process Key Dates and Deadlines shall have the meanings given to them in the Bidding Procedures Order. Reference should be made to the Bidding Procedures Order for a complete summary of the key dates and deadlines in the Sale process.

[10]  Following entry of the Bidding Procedures Order, the Sale Hearing was adjourned to February 21, 2024 at 2:00 p.m. (EST).

(c)        *The Wind-Down of the Estates*

Following the closing of the Sale, the Debtors will focus principally on efficiently winding down their businesses, preserving Cash held in the Estates, monetizing their remaining Assets and pursuing confirmation of this Combined Disclosure Statement and Plan. The remaining Assets are expected to consist of, among other things, the Litigation Trust Assets. This Combined Disclosure Statement and Plan provides for the Assets (including the prosecution of Causes of Action), to the extent not already liquidated, to vest in the Litigation Trust and to be liquidated over time and the proceeds thereof to be distributed to Holders of Allowed Claims in accordance with the terms of the Plan and the treatment of Allowed Claims described more fully herein. The Litigation Trustee will effect such liquidation and distributions. The Debtors will be dissolved as soon as practicable after the Effective Date.

(d)        *The Committee's Investigation and Plan Settlement*

Following its appointment, the Committee commenced an investigation into the basis for certain stipulations made by the Debtors pursuant to the Final DIP Order. Pursuant to the Final DIP Order, the Debtors' stipulations with respect to the Prepetition Loan Claims become binding upon the estates, all creditors and other parties in interest, including the Committee, unless the Committee or another party in interest with appropriate standing commences a Challenge, as defined in and within the time limits set under the Final DIP Order.[11] In accordance with the Bidding Procedures Order, in the event that any Challenge was asserted, the Stalking Horse Bidder (1) would not be obligated to close the transactions set forth in the Stalking Horse Agreement until any such Challenge is resolved in its entirety to the satisfaction of the Prepetition Lenders or the DIP Lenders, as applicable; and (2) could have (with the consent of the Debtors) modified the terms of the Stalking Horse Agreement prior to the hearing to consider entry of the Sale Order, including, without limitation, the structure or amount of the Credit Bid Amount.

Following the commencement of the Committee's investigation, the Debtors, the Prepetition Lenders, and the Committee engaged in good faith settlement discussions regarding the treatment of the Prepetition Loan Claims and the allocation of Litigation Trust Distribution Proceeds among Holders of Claims in Class 3 (Prepetition Loan Claims) and Class 4 (General Unsecured Claims) under the Combined Disclosure Statement and Plan. Following weeks of dual-track settlement negotiations and litigation (which included the Committee serving deposition and discovery requests on both the Debtors and the Prepetition Lenders and sharing a draft Challenge pleading), the Debtors, the Committee, and the Prepetition Lenders reached the Plan Settlement memorialized in this Combined Disclosure Statement and Plan to resolve the Committee's Challenge Rights. Pursuant to the Plan Settlement, the Committee's Challenge Rights shall be deemed fully and finally settled, resolved, and waived.

As further described herein, the key components of the Plan Settlement include: the Prepetition Secured Parties' agreement to forego asserting the Prepetition Loan Adequate

---

[11] The Final DIP Order provides that the deadline to bring a challenge is the earlier of (i)(x) with respect to parties in interest with requisite standing other than the Committee, seventy-five (75) calendar days after entry of the Interim Order and (y) with respect to the Committee, sixty (60) calendar days after the appointment of the Committee, and (ii) the hearing to consider entry of the Sale Order.

Protection Claims in connection with the allocation and distribution of Litigation Trust Distribution Proceeds as set forth in Section 9.11 so long as the Plan Settlement remains in effect; an agreement between Committee and the Prepetition Lenders regarding the distribution priorities that will govern the allocation of Litigation Trust Distribution Proceeds among Holders of Claims in Class 3 (Prepetition Loan Claims) and Class 4 (General Unsecured Claims) (Section 9.11); the Prepetition Lenders' agreement to forego enforcing their subordination rights under the Subordination Agreements (as defined in the DIP Loan Agreement) against holders of the Convertible Debentures with respect to the recoveries on such Holders' Allowed General Unsecured Claims up to a maximum aggregate amount of $900,000 among all holders of Convertible Debentures in accordance with the terms set forth in Section 9.11; and the Litigation Trust Lender's Agreement to provide the Litigation Trust Financing (Section 9.13).

## ARTICLE IV
## CONFIRMATION AND VOTING PROCEDURES

**4.1    Confirmation Procedures.**    The Solicitation Procedures Order, among other things, conditionally approves the Combined Disclosure Statement and Plan for solicitation purposes only and authorizes the Debtors to solicit votes to accept or reject the Combined Disclosure Statement and Plan.   The Confirmation Hearing has been scheduled for March 12, 2024 at 10:00 a.m. (prevailing Eastern Time) at the Bankruptcy Court, 3rd Floor, Courtroom #5, 824 North Market Street, Courtroom 5, Wilmington, Delaware 19801 to consider (a) final approval of the Combined Disclosure Statement and Plan as providing adequate information pursuant to section 1125 of the Bankruptcy Code and (b) confirmation of the Combined Disclosure Statement and Plan pursuant to section 1129 of the Bankruptcy Code.   The Confirmation Hearing may be adjourned from time to time by the Debtors without further notice, except for an announcement of the adjourned date made at the Confirmation Hearing or by filing a notice with the Bankruptcy Court.

**4.2    Procedures for Objections.**    Any objection to final approval of the adequacy of disclosures in the Combined Disclosure Statement and Plan and confirmation of the Combined Disclosure Statement and Plan must be made in writing and filed with the Bankruptcy Court and served on (a) co-counsel to the Debtors, (i) Willkie Farr & Gallagher LLP, 787 Seventh Avenue, New York, NY 10019 (Attn: Rachel C. Strickland, Esq. (rstrickland@willkie.com), Andrew S. Mordkoff, Esq. (amordkoff@willkie.com) and Joseph R. Brandt, Esq. (jbrandt@willkie.com)) and (ii) Young Conaway Stargatt & Taylor, LLP, Rodney Square, 1000 North King Street, Wilmington, DE 19801 (Attn: Edmon L. Morton, Esq. (emorton@ycst.com), Matthew B. Lunn, Esq. (mlunn@ycst.com), Shane M. Reil, Esq. (sreil@ycst.com), and Carol E. Cox, Esq. (ccox@ycst.com)); (b) the Office of the United States Trustee for the District of Delaware, 844 King Street, Suite 2207, Wilmington, DE, 19801, (Attn: Benjamin Hackman, Esq. (Benjamin.a.hackman@usdoj.gov)); (c) counsel to the Committee, (i) DLA Piper LLP (US), 1201 North Market Street, Suite 2100, Wilmington, DE 19801 Attn: R. Craig Martin, Esq. (craig.martin@us.dlapiper.com), Aaron S. Applebaum, Esq. (aaron.applebaum@us.dlapiper.com) and (ii) DLA Piper LLP (US), 1251 Avenue of the Americas, New York, NY 10020 Attn: Dennis O'Donnell, Esq. (dennis.odonnell@us.dlapiper.com); and (d) counsel for (i) the Prepetition First Lien Agent for the Prepetition First Lien Lenders and (ii) the DIP Agent for the DIP Lenders, (x) King & Spalding LLP, 1185 Avenue of the Americas, 34th Floor, New York, NY 10036 (Attn: Roger Schwartz, Esq. (rschwartz@kslaw.com) and Geoffrey King, Esq. (gking@kslaw.com)), and (y) Morris, Nichols, Arsht & Tunnell LLP, 1201 North Market Street P.O. Box 1347 Wilmington,

DE 19899 (Attn: Robert Dehney, Esq. (rdehney@morrisnichols.com), Matthew Harvey, Esq. (mharvey@morrisnichols.com)) in each case, by no later than **March 5, 2024 at 4:00 p.m. (ET)** (prevailing Eastern Time).  Unless an objection is timely filed and served, it may not be considered by the Bankruptcy Court at the Confirmation Hearing**.**

**4.3    Requirements for Confirmation.**  The Bankruptcy Court will confirm the Combined Disclosure Statement and Plan only if it meets all the applicable requirements of section 1129 of the Bankruptcy Code.  Among other requirements, the Combined Disclosure Statement and Plan (i) must be accepted by all Impaired Classes of Claims or Interests or, if rejected by an Impaired Class, the Combined Disclosure Statement and Plan must not "discriminate unfairly" against, and be "fair and equitable" with respect to, such Class; and (ii) must be feasible.  The Bankruptcy Court must also find that: (i) the Combined Disclosure Statement and Plan has classified Claims and Interests in a permissible manner; (ii) the Combined Disclosure Statement and Plan complies with the technical requirements of chapter 11 of the Bankruptcy Code; and (iii) the Combined Disclosure Statement and Plan has been proposed in good faith.

**4.4    Classification of Claims and Interests**

Section 1123 of the Bankruptcy Code provides that a plan must classify the claims and interests of a debtor's creditors and equity interest holders.  In accordance with section 1123 of the Bankruptcy Code, the Combined Disclosure Statement and Plan divides Claims and Interests into Classes and sets forth the treatment for each Class (other than those claims which pursuant to section 1123(a)(1) of the Bankruptcy Code need not be and have not been classified).  The Debtors also are required, under section 1122 of the Bankruptcy Code, to classify Claims and Interests into Classes that contain Claims or Interests that are substantially similar to the other Claims or Interests in such Class.

The Bankruptcy Code also requires that a plan provide the same treatment for each claim or interest of a particular class unless the claim holder or interest holder agrees to a less favorable treatment of its claim or interest.  The Debtors believe that the Combined Disclosure Statement and Plan complies with such standard.  If the Bankruptcy Court finds otherwise, however, it could deny confirmation of the Combined Disclosure Statement and Plan if the holders of Claims or Interests affected do not consent to the treatment afforded them under the Plan.

A Claim or Interest is placed in a particular Class only to the extent that the Claim or Interest falls within the description of that Class and is classified in other Classes to the extent that any portion of the Claim or Interest falls within the description of such other Classes.  A Claim also is placed in a particular Class for the purpose of receiving distributions pursuant to the Combined Disclosure Statement and Plan only to the extent that such Claim is an Allowed Claim in that Class and such Claim has not been paid, released, or otherwise settled prior to the Effective Date.

The Debtors believe that the Combined Disclosure Statement and Plan has classified all Claims and Interests in compliance with the provisions of section 1122 of the Bankruptcy Code and applicable case law.  It is possible that a Holder of a Claim or Interest may challenge the Debtors' classification of Claims or Interests and that the Bankruptcy Court may find that a different classification is required for the Combined Disclosure Statement and Plan to be

confirmed.  If such a situation develops, the Debtors intend, in accordance with the terms of the Combined Disclosure Statement and Plan, to make such permissible modifications to the Combined Disclosure Statement and Plan as may be necessary to permit its confirmation.  Any such reclassification could adversely affect holders of Claims by changing the composition of one or more Classes and the vote required of such Class or Classes for approval of the Plan.

**EXCEPT AS SET FORTH IN THE COMBINED DISCLOSURE STATEMENT AND PLAN, UNLESS SUCH MODIFICATION OF CLASSIFICATION MATERIALLY ADVERSELY AFFECTS THE TREATMENT OF A HOLDER OF A CLAIM AND REQUIRES RE-SOLICITATION, ACCEPTANCE OF THE COMBINED DISCLOSURE STATEMENT AND PLAN BY ANY HOLDER OF A CLAIM PURSUANT TO THIS SOLICITATION WILL BE DEEMED TO BE A CONSENT TO THE PLAN'S TREATMENT OF SUCH HOLDER OF A CLAIM REGARDLESS OF THE CLASS AS TO WHICH SUCH HOLDER ULTIMATELY IS DEEMED TO BE A MEMBER.**

The amount of any Impaired Claim that ultimately is Allowed by the Bankruptcy Court may vary from any estimated Allowed amount of such Claim and, accordingly, the total Claims that are ultimately Allowed by the Bankruptcy Court with respect to each Impaired Class of Claims may also vary from any estimates contained herein with respect to the aggregate Claims in any Impaired Class.  Thus, the actual recovery ultimately received by a particular Holder of an Allowed Claim may be adversely or favorably affected by the aggregate amount of Claims Allowed in the applicable Class.  Additionally, any changes to any of the assumptions underlying the estimated Allowed amounts could result in material adjustments to recovery estimates provided herein or the actual Distribution received by creditors.  The projected recoveries are based on information available to the Debtors as of the date hereof and reflect the Debtors' views as of the date hereof only.

The classification of Claims and Interests and the nature of distributions to members of each Class are summarized herein.  The Debtors believe that the consideration, if any, provided under the Combined Disclosure Statement and Plan to holders of Claims and Interests reflects an appropriate resolution of their Claims and Interests taking into account the differing nature and priority (including applicable contractual subordination) of such Claims and Interests.  The Bankruptcy Court must find, however, that a number of statutory tests are met before it may confirm the Combined Disclosure Statement and Plan.  Many of these tests are designed to protect the interests of holders of Claims or Interests who are not entitled to vote on the Combined Disclosure Statement and Plan, or do not vote to accept the Combined Disclosure Statement and Plan, but who will be bound by the provisions of the Combined Disclosure Statement and Plan if it is confirmed by the Bankruptcy Court.

## 4.5   Unimpaired Claims and Impaired Claims or Interests

Pursuant to the provisions of the Bankruptcy Code, only classes of claims or interests that are "impaired" (as defined in section 1124 of the Bankruptcy Code) under a plan may vote to accept or reject such plan.  Generally, a claim or interest is impaired under a plan if the holder's legal, equitable, or contractual rights are changed under such plan.  In addition, if the holders of claims or interests in an impaired class do not receive or retain any property under a plan on account of such claims or interests, such impaired class is deemed to have rejected such plan under

section 1126(g) of the Bankruptcy Code and, therefore, such holders are not entitled to vote on such plan.

Under the Combined Disclosure Statement and Plan, Holders of Claims in Class 3 and Class 4 as of the Voting Record Date of January 30, 2024 are Impaired and are entitled to vote on the Plan.  Under the Plan, Holders of Claims or Interests in Classes 5, 6, 7A and 7B are Impaired and will not receive or retain any property under the Combined Disclosure Statement and Plan on account of such Claims or Interests and, therefore, are not entitled to vote on the Combined Disclosure Statement and Plan and are deemed to reject the Combined Disclosure Statement and Plan.

Under the Combined Disclosure Statement and Plan, Holders of Claims in Classes 1 and 2 are Unimpaired and, therefore, not entitled to vote on the Combined Disclosure Statement and Plan and are deemed to accept the Combined Disclosure Statement and Plan.

**ACCORDINGLY, A BALLOT FOR ACCEPTANCE OR REJECTION OF THE COMBINED DISCLOSURE STATEMENT AND PLAN IS BEING PROVIDED ONLY TO HOLDERS OF CLAIMS IN CLASS 3 AND CLASS 4.**

## 4.6    Confirmation Without Necessary Acceptances; Cramdown

In the event that any impaired class of claims or interests does not accept a plan, a debtor nevertheless may move for confirmation of the plan.  A plan may be confirmed, even if it is not accepted by all impaired classes, if the plan has been accepted by at least one impaired class of claims, and the plan meets the "cramdown" requirements set forth in section 1129(b) of the Bankruptcy Code.  Section 1129(b) of the Bankruptcy Code requires that a court find that a plan (a) "does not discriminate unfairly" and (b) is "fair and equitable," with respect to each non-accepting impaired class of claims or interests.  Here, because Holders of Claims and Interests in Classes 5, 6, and 7A and 7B are deemed to reject the Combined Disclosure Statement and Plan, the Debtors will seek confirmation of the Combined Disclosure Statement and Plan from the Bankruptcy Court by satisfying the "cramdown" requirements set forth in section 1129(b) of the Bankruptcy Code.  The Debtors believe that such requirements are satisfied, as no Holder of a Claim or Interest junior to those in Classes 5, 6, 7A or 7B are entitled to receive any property under the Plan and no Holders of Claims in senior Classes are receiving more than payment in full with respect to their Allowed Claims.

A plan does not "discriminate unfairly" if (a) the legal rights of a nonaccepting class are treated in a manner that is consistent with the treatment of other classes whose legal rights are similar to those of the nonaccepting class and (b) no class receives payments in excess of what it is legally entitled to receive for its claims or interests.  The Debtors believe that, under the Combined Disclosure Statement and Plan, all Impaired Classes of Claims or Interests are treated in a manner that is consistent with the treatment of other Classes of Claims or Interests that are similarly situated, if any, and no Class of Claims or Interests will receive payments or property with an aggregate value greater than the aggregate value of the Allowed Claims or Allowed Interests in such Class.  Accordingly, the Debtors believe that the Combined Disclosure Statement and Plan does not discriminate unfairly as to any Impaired Class of Claims or Interests.

The Bankruptcy Code provides a nonexclusive definition of the phrase "fair and equitable." To determine whether a plan is "fair and equitable," the Bankruptcy Code establishes "cramdown" tests for secured creditors, unsecured creditors and equity holders, as follows:

*(a)*    Secured Creditors.    Either (i) each impaired secured creditor retains its liens securing its secured claim and receives on account of its secured claim deferred Cash payments having a present value equal to the amount of its allowed secured claim, (ii) each impaired secured creditor realizes the "indubitable equivalent" of its allowed secured claim or (iii) the property securing the claim is sold free and clear of liens with such liens to attach to the proceeds of the sale and the treatment of such liens on proceeds to be as provided in clause (i) or (ii) above.

*(b)*    Unsecured Creditors.    Either (i) each impaired unsecured creditor receives or retains under the plan property of a value equal to the amount of its allowed claim or (ii) the holders of claims and interests that are junior to the claims of the dissenting class will not receive any property under the plan.

*(c)*    Interests.    Either (i) each holder of an equity interest will receive or retain under the plan property of a value equal to the greatest of the fixed liquidation preference to which such holder is entitled, the fixed redemption price to which such holder is entitled or the value of the interest or (ii) the holder of an interest that is junior to the nonaccepting class will not receive or retain any property under the plan.

As discussed above, the Debtors believe that the distributions provided under the Combined Disclosure Statement and Plan satisfy the absolute priority rule, where required.

## 4.7    Feasibility

Section 1129(a)(11) of the Bankruptcy Code requires that confirmation of a plan not be likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtors or any successor to the Debtors (unless such liquidation or reorganization is proposed in the Plan).  Inasmuch as the Assets have been, or will be, liquidated and the Combined Disclosure Statement and Plan provides for the Distribution of all of the Cash proceeds of the Assets to Holders of Claims that are Allowed in accordance with the Combined Disclosure Statement and Plan, for purposes of this test, the Debtors have analyzed the ability of the Litigation Trustee to meet its obligations under the Combined Disclosure Statement and Plan.  Based on the Debtors' analysis, the Litigation Trustee will have sufficient assets to accomplish its tasks under the Combined Disclosure Statement and Plan.  Specifically, the Current DIP Budget (as defined in the Final DIP Order) will provide the Debtors with sufficient cash on hand to make any required distributions on the Effective Date.  The Current DIP Budget also includes a wind-down budget in the amount of $750,000 (the "Wind-Down Budget") to facilitate the implementation of the Combined Disclosure Statement and Plan and an orderly wind-down of the estates.  For the avoidance of doubt, the Litigation Trust Assets include the full amount of the Wind-Down Budget

and such amount will be transferred to the Litigation Trust on the Effective Date. Moreover, the Litigation Trust Lender will provide the Litigation Trust Financing to fund the Litigation Trust.

Therefore, the Debtors believe that liquidation pursuant to the Combined Disclosure Statement and Plan and establishment of the Litigation Trust will meet the feasibility requirements of the Bankruptcy Code.

## 4.8    Best Interests Test and Liquidation Analysis

Even if a plan is accepted by the holders of each class of claims and interests, the Bankruptcy Code requires the Bankruptcy Court to determine that such plan is in the best interests of all holders of claims or interests that are impaired by that plan and that have not accepted the plan. The "best interests" test, as set forth in section 1129(a)(7) of the Bankruptcy Code, requires a court to find either that all members of an impaired class of claims or interests have accepted the plan or that the plan will provide a member who has not accepted the plan with a recovery of property of a value, as of the effective date of the plan, that is not less than the amount that such holder would recover if the debtor were liquidated under chapter 7 of the Bankruptcy Code. A liquidation analysis is attached hereto as **Exhibit A**.

To calculate the probable distribution to holders of each impaired class of claims and interests if the debtor was liquidated under chapter 7, a court must first determine the aggregate dollar amount that would be generated from a debtor's assets if its chapter 11 cases were converted to cases under chapter 7 of the Bankruptcy Code. To determine if a plan is in the best interests of each impaired class, the present value of the distributions from the proceeds of a liquidation of the debtor's unencumbered assets and properties, after subtracting the amounts attributable to the costs, expenses and administrative claims associated with a chapter 7 liquidation, must be compared with the value offered to such impaired classes under the plan. If the hypothetical liquidation distribution to holders of claims or interests in any impaired class is greater than the distributions to be received by such parties under the plan, then such plan is not in the best interests of the holders of claims or interests in such impaired class.

As set forth in the annexed liquidation analysis, because the Combined Disclosure Statement and Plan is a liquidating plan, the "liquidation value" in the hypothetical chapter 7 liquidation analysis for purposes of the "best interests" test is substantially similar to the estimates of the results of the chapter 11 liquidation contemplated by the Combined Disclosure Statement and Plan. However, the Debtors believe that in a chapter 7 liquidation, (i) Holders of Prepetition Loan Claims and General Unsecured Claims may not receive the value greater than the value being provided under this Combined Disclosure Statement and Plan, and (ii) there would be additional costs and expenses that the Estates would incur as a result of liquidating the Estates in a chapter 7 case.

The costs of liquidation under chapter 7 of the Bankruptcy Code would include the compensation of a trustee, as well as the costs of counsel and other professionals retained by the trustee. The Debtors believe such amount would exceed the amount of expenses that would be incurred in implementing the Combined Disclosure Statement and Plan and winding up the affairs of the Debtors and non-Debtors. Conversion also would likely delay the liquidation process and ultimate distribution of the Assets. The Estates would also be obligated to pay all unpaid expenses

incurred by the Debtors during the Chapter 11 Cases (such as compensation for Professionals) that are allowed in the chapter 7 cases.

Moreover, in a chapter 7 case, distributions to Holders of Allowed Claims would be diminished because the Stalking Horse Agreement would likely be terminated, as the conversion of the Chapter 11 Cases to a chapter 7 case is a termination event under the Stalking Horse Agreement and the Litigation Trust would not be established to liquidate and distribute the Litigation Trust Assets, including the Retained Causes of Action.

Accordingly, the Debtors believe that Holders of Allowed Claims would receive less than anticipated under the Combined Disclosure Statement and Plan if the Chapter 11 Cases were converted to chapter 7 cases, and therefore, the classification and treatment of Claims and Interests in the Combined Disclosure Statement and Plan complies with Bankruptcy Code section 1129(a)(7).

**4.9    Acceptance of the Plan**

The rules and procedures governing eligibility to vote on the Combined Disclosure Statement and Plan, solicitation of votes, and submission of ballots are set forth in the Solicitation Procedures Order.

For the Combined Disclosure Statement and Plan to be accepted by an Impaired Class of Claims, a majority in number and two-thirds in dollar amount of the Claims voting in such Class must vote to accept the Combined Disclosure Statement and Plan.  At least one Voting Class, excluding the votes of insiders, must actually vote to accept the Combined Disclosure Statement and Plan.

**IF YOU ARE ENTITLED TO VOTE ON THE COMBINED DISCLOSURE STATEMENT AND PLAN, YOU ARE URGED TO COMPLETE, DATE, SIGN, AND PROMPTLY SUBMIT THE BALLOT YOU RECEIVE ON OR BEFORE THE VOTING DEADLINE OF MARCH 5, 2024.  PLEASE BE SURE TO COMPLETE ALL BALLOT ITEMS PROPERLY AND LEGIBLY.  IF YOU ARE A HOLDER OF A CLAIM ENTITLED TO VOTE ON THE COMBINED DISCLOSURE STATEMENT AND PLAN AND YOU DID NOT RECEIVE A BALLOT, YOU RECEIVED A DAMAGED BALLOT, OR YOU LOST YOUR BALLOT, OR IF YOU HAVE ANY QUESTIONS CONCERNING THE COMBINED DISCLOSURE STATEMENT AND PLAN OR PROCEDURES FOR VOTING ON THE PLAN, PLEASE CONTACT THE SOLICITATION AND CLAIMS AGENT (I) BY TELEPHONE AT: (844) 344-0799 (U.S. AND CANADA TOLL FREE), OR +1(646) 651-1196 (OUTSIDE THE U.S.) OR (II) BY EMAIL AT: NEARINFO@RA.KROLL.COM (WITH "NEAR INTELLIGENCE SOLICITATION INQUIRY" IN THE SUBJECT LINE).  THE SOLICITATION AND CLAIMS AGENT IS NOT AUTHORIZED TO, AND WILL NOT, PROVIDE LEGAL ADVICE.**

**HOLDERS OF CLAIMS IN IMPAIRED VOTING CLASSES WHO DO NOT WISH TO PROVIDE THE RELEASES SET FORTH IN SECTION 14.1(c) HEREIN MUST AFFIRMATIVELY INDICATE SO BY CHECKING THE "OPT-OUT" BOX ON THEIR BALLOT OR OBJECTING TO THE RELEASES ON OR BEFORE THE DEADLINE TO**

OBJECT TO CONFIRMATION OF THE COMBINED DISCLOSURE STATEMENT AND PLAN.

PLEASE BE ADVISED THAT ALL HOLDERS OF CLAIMS IN IMPAIRED VOTING CLASSES THAT DO NOT ELECT TO OPT-OUT OF THE RELEASES SHALL BE DEEMED TO HAVE CONSENTED TO THE RELEASES SET FORTH IN SECTION 14.1(c).

## ARTICLE V
## CERTAIN RISK FACTORS TO BE CONSIDERED PRIOR TO VOTING

THE COMBINED DISCLOSURE STATEMENT AND PLAN AND ITS IMPLEMENTATION ARE SUBJECT TO CERTAIN RISKS, INCLUDING, BUT NOT LIMITED TO, THE RISK FACTORS SET FORTH BELOW. HOLDERS OF CLAIMS WHO ARE ENTITLED TO VOTE ON THE COMBINED DISCLOSURE STATEMENT AND PLAN SHOULD READ AND CAREFULLY CONSIDER THE RISK FACTORS, AS WELL AS THE OTHER INFORMATION SET FORTH IN THE COMBINED DISCLOSURE STATEMENT AND PLAN AND THE DOCUMENTS DELIVERED TOGETHER HEREWITH OR REFERRED TO OR INCORPORATED BY REFERENCE HEREIN, BEFORE DECIDING WHETHER TO VOTE TO ACCEPT OR REJECT THE COMBINED DISCLOSURE STATEMENT AND PLAN. THESE FACTORS SHOULD NOT, HOWEVER, BE REGARDED AS CONSTITUTING THE ONLY RISKS INVOLVED IN CONNECTION WITH THE COMBINED DISCLOSURE STATEMENT AND PLAN AND ITS IMPLEMENTATION.

**5.1    The Combined Disclosure Statement and Plan May Not Be Accepted**

The Debtors can make no assurances that the requisite acceptances to the Combined Disclosure Statement and Plan will be received, and the Debtors may need to obtain acceptances to an alternative plan for the Debtors, or otherwise, that may not have the support of the creditors and/or may be required to liquidate the Estates under chapter 7 of the Bankruptcy Code. There can be no assurance that the terms of any such alternative restructuring arrangement or plan would be similar to or as favorable to creditors as those proposed in the Plan.

**5.2    The Combined Disclosure Statement and Plan May Not Be Confirmed**

Even if the Debtors receive the requisite acceptances, there is no assurance that the Bankruptcy Court, which may exercise substantial discretion as a court of equity, will confirm the Combined Disclosure Statement and Plan. Even if the Bankruptcy Court determined that the Combined Disclosure Statement and Plan and the balloting procedures and results were appropriate, the Bankruptcy Court could still decline to confirm the Combined Disclosure Statement and Plan if it finds that any of the statutory requirements for confirmation had not been met. Moreover, there can be no assurance that modifications to the Combined Disclosure Statement and Plan will not be required for Confirmation or that such modifications would not necessitate the re-solicitation of votes. If the Combined Disclosure Statement and Plan is not confirmed, it is unclear what distributions Holders of Claims or Interests ultimately would receive with respect to their Claims or Interests in a subsequent plan.

If the Combined Disclosure Statement and Plan is not confirmed, the Combined Disclosure Statement and Plan will need to be revised, and it is unclear whether a chapter 11 reorganization or liquidation of the Debtors' assets could be implemented and what distribution the holders of Allowed Claims would receive. If an alternative could not be agreed to, it is possible that the Debtors would have to liquidate their remaining assets in chapter 7, in which case it is likely that the holders of Allowed Claims would receive substantially less favorable treatment than they would receive under the Combined Disclosure Statement and Plan. There can be no assurance that the terms of any such alternative would be similar to or as favorable to the Debtors' creditors as those proposed in the Combined Disclosure Statement and Plan.

## 5.3    Distributions to Holders of Allowed Claims Under the Combined Disclosure Statement and Plan May Be Inconsistent with Projections

Projected Distributions are based upon good faith estimates of the total amount of Claims ultimately Allowed and the funds available for Distribution. There can be no assurance that the estimated Claim amounts set forth in this Combined Disclosure Statement and Plan are correct. These estimated amounts are based on certain assumptions with respect to a variety of factors. Both the actual amount of Allowed Claims in a particular Class and the funds available for distribution to such Class may differ from the Debtors' estimates. If the total amount of Allowed Claims in a Class is higher than the Debtors' estimates, or the funds available for distribution to such Class are lower than the Debtors' estimates, the percentage recovery to Holders of Allowed Claims in such Class will be less than projected.

## 5.4    Objections to Classification of Claims

Section 1122 of the Bankruptcy Code requires that the Combined Disclosure Statement and Plan classify Claims and Interests. The Bankruptcy Code also provides that the Combined Disclosure Statement and Plan may place a Claim or Interest in a particular Class only if such Claim or Interest is substantially similar to the other Claims or Interests in such Class. The Debtors believe that all Claims and Interests have been appropriately classified in the Combined Disclosure Statement and Plan. To the extent that the Bankruptcy Court finds that a different classification is required for the Combined Disclosure Statement and Plan to be confirmed, the Debtors would seek to (i) modify the Combined Disclosure Statement and Plan to provide for whatever classification might be required for Confirmation and (ii) use the acceptances received from any Holder of Claims pursuant to this solicitation for the purpose of obtaining the approval of the Class or Classes of which such Holder ultimately is deemed to be a member. Any such reclassification of Claims, although subject to the notice and hearing requirements of the Bankruptcy Code, could adversely affect the Class in which such Holder was initially a member, or any other Class under the Combined Disclosure Statement and Plan, by changing the composition of such Class and the vote required for approval of the Combined Disclosure Statement and Plan. There can be no assurance that the Bankruptcy Court, after finding that a classification was inappropriate and requiring a reclassification, would approve the Combined Disclosure Statement and Plan based upon such reclassification. Except to the extent that modification of classification in the Combined Disclosure Statement and Plan requires re-solicitation, the Debtors will, in accordance with the Bankruptcy Code and the Bankruptcy Rules, seek a determination by the Bankruptcy Court that acceptance of the Combined Disclosure Statement and Plan by any Holder of Claims pursuant to this solicitation will constitute a consent to the Plan's treatment of such Holder, regardless of the

Class as to which such Holder is ultimately deemed to be a member.  The Debtors believe that under the Bankruptcy Rules, they would be required to resolicit votes for or against the Combined Disclosure Statement and Plan only when a modification adversely affects the treatment of the Claim or Interest of any Holder.

The Bankruptcy Code also requires that the Combined Disclosure Statement and Plan provide the same treatment for each Claim or Interest of a particular Class unless the Holder of a particular Claim or Interest agrees to a less favorable treatment of its Claim or Interest.  The Debtors believe that the Combined Disclosure Statement and Plan complies with the requirement of equal treatment.  To the extent that the Bankruptcy Court finds that the Combined Disclosure Statement and Plan does not satisfy such requirement, the Bankruptcy Court could deny confirmation of the Combined Disclosure Statement and Plan.  Issues or disputes relating to classification and/or treatment could result in a delay in the confirmation and consummation of the Combined Disclosure Statement and Plan and could increase the risk that the Combined Disclosure Statement and Plan will not be consummated.

## 5.5     Failure to Consummate the Combined Disclosure Statement and Plan

The Combined Disclosure Statement and Plan provides for certain conditions that must be satisfied (or waived) prior to the Confirmation Date and for certain other conditions that must be satisfied (or waived) prior to the Effective Date.  As of the date of the Combined Disclosure Statement and Plan, there can be no assurance that any or all of the conditions in the Combined Disclosure Statement and Plan will be satisfied (or waived).  Accordingly, there can be no assurance that the Combined Disclosure Statement and Plan will be confirmed by the Bankruptcy Court.  Further, if the Combined Disclosure Statement and Plan is confirmed, there can be no assurance that the Plan will be consummated.

## 5.6     Plan Releases May Not Be Approved

There can be no assurance that the releases, as provided in Article XIV of the Combined Disclosure Statement and Plan, will be granted.  Failure of the Bankruptcy Court to grant such relief may result in a plan of liquidation that differs from the Combined Disclosure Statement and Plan or the Combined Disclosure Statement and Plan not being confirmed.

## 5.7     Reductions to Estimated Creditor Recoveries

The Allowed amount of Claims in any Class could be greater than projected, which, in turn, could cause the amount of distributions to creditors in such Class to be reduced substantially. The amount of Cash realized from the liquidation of the Debtors' remaining Assets could be less than anticipated, which could cause the amount of distributions to creditors to be reduced substantially.

## 5.8     Sale Fails to Close

The Sale to the Successful Bidder fails to close resulting in no or different Sale Consideration to implement the Combined Disclosure Statement and Plan and make Distributions to Holders of Allowed Claims.

**5.9**     **Certain Tax Considerations**

There are a number of material income tax considerations, risks, and uncertainties associated with the plan of liquidation of the Debtors described in the Combined Disclosure Statement and Plan.

**THE U.S. FEDERAL INCOME TAX CONSEQUENCES OF THE COMBINED DISCLOSURE STATEMENT AND PLAN ARE COMPLEX. NOTHING HEREIN SHALL CONSTITUTE TAX ADVICE. THE TAX CONSEQUENCES ARE IN MANY CASES UNCERTAIN AND MAY VARY DEPENDING ON A HOLDER'S PARTICULAR CIRCUMSTANCES. ACCORDINGLY, HOLDERS ARE URGED TO CONSULT THEIR TAX ADVISORS ABOUT THE UNITED STATES FEDERAL, STATE AND LOCAL, AND APPLICABLE FOREIGN INCOME AND OTHER TAX CONSEQUENCES OF THE PLAN.**

**ARTICLE VI**
**TREATMENT OF UNCLASSIFIED CLAIMS**

**6.1**     **Administrative Claims.** Except as otherwise set forth in this Article VI, on the Effective Date, or as soon as reasonably practicable after an Administrative Claim becomes Allowed, each Holder of an Allowed Administrative Claim shall receive in full and final satisfaction, settlement, and release of and in exchange for such Allowed Administrative Claim: (i) Cash equal to the amount of such Allowed Administrative Claim; or (ii) such other treatment as to which the Debtors or the Litigation Trustee, as applicable, and the Holder of such Allowed Administrative Claim shall have agreed upon in writing.

     *(a)*     **Administrative Claim Bar Date.** Holders of Administrative Claims, other than: (i) Professional Fee Claims, (ii) an Administrative Claim that has been Allowed (including pursuant to the Final DIP Order) on or before the Effective Date, (iii) a 503(b)(9) Claim; (iv) any Claim, to the extent not previously paid, for the reasonable and documented out-of-pocket fees, expenses, costs and other charges incurred by the DIP Lenders or Prepetition Lenders, the Debtors' payment of which is provided for in the Final DIP Order and this Combined Disclosure Statement and Plan, which Claim shall be Allowed on the Effective Date; (v) an Administrative Claim for an expense or liability incurred prior to the Effective Date in the ordinary course of business; (vi) an Administrative Claim on account of fees and expenses incurred on or after the Petition Date but before the Effective Date by ordinary course professionals retained by the Debtors pursuant to an order of the Bankruptcy Court; (vii) an Administrative Claim arising, in the ordinary course of business, out of the employment by one or more Debtors of an individual from and after the Petition Date but before the Effective Date, but only to the extent that such Administrative Claim is solely for outstanding wages, commissions, accrued benefits, or reimbursement of business expenses; (viii) U.S. Trustee Fees; or (ix) an Intercompany Claim**,** shall file with the Bankruptcy Court and serve on the Debtors, the Litigation Trustee, the Claims Agent and the U.S. Trustee requests for payment, in writing, together with supporting documents, substantially complying with the Bankruptcy Code, the Bankruptcy Rules and the Local Rules, so as to actually be received on or before the Administrative Claim Bar Date. The Effective Date Notice shall set forth the

Administrative Claim Bar Date and shall constitute notice of such Bar Date. Absent further Court order, any Administrative Claim not filed by the Administrative Claim Bar Date shall be deemed waived and the Holder of such Administrative Claim shall be forever barred from receiving payment on account thereof.

*(b)* **Objections by the Litigation Trustee.** Objections to requests for payment of Administrative Claims, other than requests for payment of Professional Fee Claims, must be Filed and served on the requesting party by the Claims Objection Deadline.

*(c)* **Professional Fee Claims.** All applications for allowance and payment of Professional Fee Claims shall be Filed on or before the Professional Fee Claims Bar Date. If an application for a Professional Fee Claim is not Filed by the Professional Fee Claims Bar Date, such Professional Fee Claim shall be deemed waived and the Holder of such Claim shall be forever barred from receiving payment on account thereof. The Effective Date Notice shall set forth the Professional Fee Claims Bar Date and shall constitute notice of such Professional Fee Claim Bar Date. Objections to any Professional Fee Claims must be Filed and served on the Litigation Trustee and the requesting party by no later than twenty-one (21) days after service of the applicable final application for allowance and payment of Professional Fee Claims. Allowed Professional Fee Claims shall be paid in full, in Cash, in such amounts as are Allowed by the Bankruptcy Court upon the earlier of (i) the Effective Date or (ii) the date upon which an order relating to any such Allowed Professional Fee Claim is entered, and in each case, as soon as reasonably practicable. Unless required to file an application by the OCP Order, ordinary course professionals are not required to file a Professional Fee Claim.

No later than five (5) days before the anticipated Effective Date, Professionals shall provide a good faith estimate of their Professional Fee Claims projected to be outstanding as of the Effective Date and shall deliver such estimate to the Debtors. Such estimate shall not be considered an admission or limitation with respect to the fees and expenses of such Professional and such Professionals are not bound to any extent by the estimates. If a Professional does not provide an estimate, the Debtors may estimate the unbilled fees and expenses of such Professional. The total amount so estimated shall be utilized by the Debtors to determine the amount to be funded to the Professional Fee Reserve Account.

*(e)* **Source of Payment**. All Allowed Administrative Claims and U.S. Trustee Fees shall be paid from the Debtors' Cash or Litigation Trust Assets. With respect to Professional Fee Claims, on or prior to the Effective Date, the Debtors shall establish and fund the Professional Fee Reserve Account with Cash equal to the Professional Fee Reserve Amount and transfer custody of the Professional Fee Reserve Account to the Litigation Trust. The Professional Fee Reserve Account shall be maintained in trust for the Professionals (other than professionals retained pursuant to the OCP Order). Each Holder of an Allowed Professional Fee Claim shall be paid by the Debtors or the Litigation Trust in Cash from the Professional Fee Reserve Account. All amounts remaining in the Professional Fee Reserve Account after all Allowed Professional Fee Claims have been paid in full shall be distributed first to the DIP Agent for the benefit of the DIP Lenders on account of the applicable DIP Obligations until Paid in Full, and thereafter to the Prepetition First Lien Secured Parties, until the Prepetition Secured Claims and any

Allowed Prepetition Loan Adequate Protection Claims are Paid in Full, with any excess vesting in the Litigation Trust. Neither the Debtors' nor the Litigation Trust's obligations to pay Professional Fee Claims shall be limited nor be deemed limited to funds held in the Professional Fee Reserve Account. If the Professional Fee Reserve Account is insufficient to pay the full amount of all Allowed Professional Fee Claims, any remaining unpaid Allowed Professional Fee Claims may be promptly paid by the Litigation Trustee from the Litigation Trust Assets, subject to the consent of the Litigation Trust Board. Funds held in the Professional Fee Reserve Account shall not be considered Litigation Trust Assets or otherwise property of the Litigation Trust, the Debtors, or their Estates. The Professional Fee Reserve Account shall be treated as a trust account for the benefit of Holders of Professional Fee Claims and for no other parties until all Allowed Professional Fee Claims have been paid in full in Cash. No other liens, claims, or interests shall encumber the Professional Fee Reserve Account or Cash held in the Professional Fee Reserve Account in any way.

**6.2     DIP Loan Claims.**

In full and final satisfaction, compromise, settlement, release, and discharge of, and in exchange for, each Allowed DIP Loan Claim, the DIP Loan Claims shall be satisfied in full, and reduced to zero on a dollar-for-dollar basis, pursuant to the Credit Bid Transaction as of the consummation of the Sale.

As of the consummation of the Sale, the Debtors shall have no further obligation to the DIP Lenders or any other party with respect to the DIP Loan Claims. Pursuant to the Sale Order, all liens and security interests granted to secure the Allowed DIP Loan Claims shall be terminated and of no further force and effect without any further notice to or action, order, or approval of the Bankruptcy Court. For the avoidance of doubt, and notwithstanding anything to the contrary herein, any requests for payment or reimbursement of expenses issued by a professional pursuant to the Final DIP Order are not required to be Filed or served, and shall not be subject to review, other than as contemplated by the Final DIP Order.

**6.3     Priority Tax Claims.** Within the time period provided in Article X of the Combined Disclosure Statement and Plan, each Holder of an Allowed Priority Tax Claim shall receive in full and final satisfaction, settlement, and release of and in exchange for such Allowed Priority Tax Claim: (i) Cash equal to the amount of such Allowed Priority Tax Claim; or (ii) such other treatment as to which the Debtors or the Litigation Trustee, as applicable, and the Holder of such Allowed Priority Tax Claim shall have agreed upon in writing.

## ARTICLE VII
## TREATMENT OF CLASSIFIED CLAIMS AND INTERESTS

All Claims and Interests are classified in the Classes set forth below in accordance with sections 1122 and 1123(a)(1) of the Bankruptcy Code. A Claim or an Interest is classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of that Class and is classified in other Classes to the extent that any portion of the Claim or Interest qualifies within the description of such other Classes. A Claim or an Interest is classified in a particular Class for the purpose of receiving distributions under the Combined Disclosure

Statement and Plan only to the extent that such Claim or Interest is an Allowed Claim or Interest in that Class and has not been paid, released, or otherwise satisfied prior to the Effective Date.

Unless the Holder of an Allowed Claim and the Debtors or the Litigation Trustee, as applicable, agree to a different treatment, each Holder of an Allowed Claim shall receive the following Distributions in accordance with Article X of the Plan:

## 7.1    Class 1: Priority Non-Tax Claims.

*Classification:*  Class 1 consists of Allowed Priority Non-Tax Claims.

*Treatment*:  Except to the extent that a Holder of an Priority Non-Tax Claim against any of the Debtors has agreed to less favorable treatment of such Claim, each such holder shall receive, in full and final satisfaction of such Claim, Cash in an amount equal to such Claim, payable on the later of (i) forty five (45) calendar days after the Effective Date (or as soon as reasonably practicable thereafter) and (ii) the first Business Day after thirty (30) days from the date on which such Claim becomes an Allowed Priority Non-Tax Claim, or as soon as reasonably practical thereafter.

*Voting*:  Class 1 is Unimpaired, and the holders of Priority Non-Tax Claims are conclusively presumed to have accepted the Combined Disclosure Statement and Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, holders of Priority Non-Tax Claims are not entitled to vote to accept or reject the Combined Disclosure Statement and Plan, and the votes of such holders will not be solicited with respect to Priority Non-Tax Claims.

## 7.2    Class 2: Other Secured Claims.

*Classification:*  Class 2 consists of Other Secured Claims.

*Treatment:*  Except to the extent that a holder of an Allowed Other Secured Claim against any of the Debtors has agreed to less favorable treatment of such Claim, each such holder shall receive, at the option of the Debtors or the Litigation Trustee, (i) payment in full in Cash in full and final satisfaction of such Claim, payable on the later of (A) forty five (45) calendar days after the Effective Date (or as soon as reasonably practicable thereafter) and (B) the first Business Day after thirty (30) days from the date on which such Other Secured Claim becomes an Allowed Other Secured Claim, or as soon as reasonably practical thereafter, (ii) delivery of the collateral securing such Allowed Other Secured Claim and payment of any interest required under section 506(b) of the Bankruptcy Code, or (iii) such other treatment necessary to satisfy section 1129 of the Bankruptcy Code.

*Voting:*  Class 2 is Unimpaired, and the holders of Other Secured Claims are conclusively presumed to have accepted the Combined Disclosure Statement and Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, holders of Other Secured Claims are not entitled to vote to accept or reject the Combined Disclosure Statement and Plan, and the votes of such holders will not be solicited with respect to Other Secured Claims.

**7.3      Class 3:  Prepetition Loan Claims.**

*Classification:*  Class 3 consists of Prepetition Loan Claims.

*Treatment:*  After Payment in Full in Cash of all Administrative Claims, Other Secured Claims, Priority Tax Claims and Priority Non-Tax Claims and funding of any amounts required to fund a wind-down of the Debtors' estates, unless the applicable Holder agrees to less favorable treatment, each Holder of a Prepetition Loan Claim shall be entitled to receive Litigation Trust Interests entitling the Holder to its Pro Rata Share of the Litigation Trust Distribution Proceeds, in accordance with the distribution priorities set forth in Section 9.11 hereof, up to the Allowed amount of such Prepetition Loan Claim.

*Voting*:  Class 3 is Impaired and each holder of a Prepetition Loan Claim is entitled to vote to accept or reject the Combined Disclosure Statement and Plan.

**7.4      Class 4:  General Unsecured Claims.**

*Classification*:  Class 4 consists of General Unsecured Claims.

*Treatment*:  After Payment in Full in Cash of all Administrative Claims, Other Secured Claims, Priority Tax Claims and Priority Non-Tax Claims and funding of any amounts required to fund a wind-down of the Debtors' estates, unless the applicable Holder agrees to less favorable treatment, each Holder of an Allowed General Unsecured Claim shall be entitled to either:

> (a) in full and final satisfaction of such Holder's Allowed General Unsecured Claim, the Holder's Pro Rata Share of the GUC Cash Pool; or

> (b) at the election of such Holder, Litigation Trust Interests entitling the Holder to its Pro Rata Share of the Litigation Trust Distribution Proceeds, in accordance with the distribution priorities set forth in Section 9.11 hereof, up to the Allowed amount of such Allowed General Unsecured Claim; <u>provided</u>, that such election shall be made either prior to or following the Effective Date and in accordance with the Litigation Trust Agreement and Confirmation Order.

*Voting*:  Class 4 is Impaired, and the holders of General Unsecured Claims are entitled to vote to accept or reject the Plan.

**7.5      Class 5:  Existing Securities Law Claims.**

*Classification*:  Class 5 consists of Existing Securities Law Claims.

*Treatment*:  Holders of Existing Securities Law Claims shall not receive or retain any distribution under the Combined Disclosure Statement and Plan on account of such Existing Securities Law Claims.

*Voting*:  Class 5 is Impaired, and the holders of Existing Securities Law Claims are conclusively deemed to have rejected the Combined Disclosure Statement and Plan pursuant to section 1126(g) of the Bankruptcy Code. Therefore, the holders of Existing Securities Law Claims are not entitled

to vote to accept or reject the Combined Disclosure Statement and Plan, and the votes of such holders will not be solicited with respect to such Claims.

**7.6     Class 6:  Interests**

*Classification*: Class 6 consists of Interests in the Debtors.

*Treatment*:  Interests shall be extinguished, cancelled and released on the Effective Date and Holders of Interests shall not receive any distribution on account of such Interests.

*Voting*:  Class 6 is Impaired, and the holders of Interests are conclusively deemed to have rejected the Combined Disclosure Statement and Plan pursuant to section 1126(g) of the Bankruptcy Code. Therefore, the holders of Interests are not entitled to vote to accept or reject the Combined Disclosure Statement and Plan, and the votes of such holders will not be solicited with respect to such Interests.

**7.7     Class 7A and Class 7B:  Intercompany Claims and Intercompany Interests.**

*Classification*: Classes 7A and 7B consist of Intercompany Claims against and Intercompany Interests in the Debtors.

*Treatment*:  On or after the Effective Date, all Allowed Intercompany Claims and Intercompany Interests shall be adjusted, continued, settled, reinstated, discharged, or eliminated, in each case to the extent determined to be appropriate by the Debtors or the Litigation Trustee (as applicable), with the prior consent of the Prepetition Agent.

*Voting*:  Classes 7A and 7B are Impaired, and the holders of Intercompany Claims and Intercompany Interests are conclusively deemed to have rejected the Combined Disclosure Statement and Plan pursuant to section 1126(g) of the Bankruptcy Code. Therefore, the holders of Intercompany Claims and Intercompany Interests are not entitled to vote to accept or reject the Combined Disclosure Statement and Plan, and the votes of such holders will not be solicited with respect to such Claims or Interests.

*Reservation of Rights Regarding Claims and Interests*.  Except as otherwise explicitly provided in the Combined Disclosure Statement and Plan, nothing shall affect the Debtors' rights and defenses, both legal and equitable, with respect to any Claims or Interests, including, but not limited to, all rights with respect to legal and equitable defenses to alleged rights of setoff or recoupment.

## ARTICLE  VIII

## ACCEPTANCE OR REJECTION OF THE PLAN

**8.1     Class Entitled to Vote.** Because Claims in Class 3 and Class 4 are Impaired and Holders thereof will receive or retain property or an interest in property under the Combined Disclosure

Statement and Plan, only Holders of Claims in Class 3 and Class 4 shall be entitled to vote to accept or reject the Combined Disclosure Statement and Plan.

**8.2      Acceptance by Impaired Classes of Claims or Interests.**  In accordance with section 1126(c) of the Bankruptcy Code, and except as provided in 1126(e) of the Bankruptcy Code, an Impaired Class of Claims shall have accepted the Combined Disclosure Statement and Plan if the Combined Disclosure Statement and Plan is accepted by the Holders of at least two-thirds (2/3) in dollar amount and more than one-half (1/2) in number of the Allowed Claims in such Class that have timely and properly voted to accept or reject the Combined Disclosure Statement and Plan. In accordance with section 1126(d) of the Bankruptcy Code and except as provided in section 1126(e) of the Bankruptcy Code, an Impaired Class of Interests shall have accepted the Combined Disclosure Statement and Plan if such Combined Disclosure Statement and Plan is accepted by Holders of at least two-thirds (2/3) in amount of the Allowed Interests in such Class that have timely and properly voted to accept or reject the Combined Disclosure Statement and Plan.

**8.3      Deemed Acceptance by Unimpaired Classes.**  Because Claims in Classes 1 and 2 are Unimpaired pursuant to section 1126(f) of the Bankruptcy Code, Holders of Claims in Classes 1 and 2 are deemed to have accepted the Combined Disclosure Statement and Plan and, therefore, such Holders of Claims are not entitled to vote to accept or reject the Combined Disclosure Statement and Plan.

**8.4      Presumed Rejections by Impaired Classes.**  Because Holders of Claims or Interests in Classes 5, 6, and 7A and 7B are not entitled to receive or retain any property under the Combined Disclosure Statement and Plan, pursuant to section 1126(g) of the Bankruptcy Code, such Holders of Claims or Interests are presumed to have rejected the Combined Disclosure Statement and Plan and are not entitled to vote to accept or reject the Combined Disclosure Statement and Plan.

**8.5      Confirmation Pursuant to Section 1129(b) of the Bankruptcy Code.**  To the extent that any Impaired Class rejects the Combined Disclosure Statement and Plan or is deemed to have rejected the Combined Disclosure Statement and Plan, the Debtors reserve the right to request confirmation of the Combined Disclosure Statement and Plan, as it may be modified from time to time, under section 1129(b) of the Bankruptcy Code.  The Debtors reserve the right to alter, amend, modify, revoke, or withdraw the Combined Disclosure Statement and Plan, the documents submitted in support thereof or any schedule or exhibit, including to amend or modify such documents to satisfy the requirements of section 1129(b) of the Bankruptcy Code, if necessary.

**8.6      Controversy Concerning Impairment.**  If a controversy arises as to whether any Claim or Interest is Impaired under the Combined Disclosure Statement and Plan, the Bankruptcy Court shall, after notice and a hearing, determine such controversy on or before the Confirmation Date.

**8.7      Elimination of Vacant Classes.**  Any Class of Claims or Interests that does not contain, as of the date of the commencement of the Confirmation Hearing, a Holder of an Allowed Claim or Interest, or a Holder of a Claim temporarily allowed under Bankruptcy Rule 3018, shall be deemed deleted from the Combined Disclosure Statement and Plan for all purposes, including for purposes of determining acceptance of the Combined Disclosure Statement and Plan by such Class under section 1129(a)(8) of the Bankruptcy Code.

## ARTICLE IX
## IMPLEMENTATION OF THE PLAN AND THE LITIGATION TRUST

**9.1    Implementation of the Combined Disclosure Statement and Plan.**  The Combined Disclosure Statement and Plan will be implemented by, among other things, the establishment of the Litigation Trust, the vesting in and transfer to the Litigation Trust of the Litigation Trust Assets, and the making of Distributions by the Litigation Trust in accordance with the Combined Disclosure Statement and Plan, and the Litigation Trust Agreement.

**9.2    No Substantive Consolidation.**  The Combined Disclosure Statement and Plan is a joint plan that does not provide for substantive consolidation of the Debtors' Estates, and on the Effective Date, the Debtors' Estates shall not be deemed to be substantively consolidated for purposes hereof.  Except as specifically set forth herein, nothing in this Combined Disclosure Statement and Plan shall constitute or be deemed to constitute an admission that any one of the Debtors is subject to or liable for any claim against any other Debtor.  Notwithstanding the foregoing, solely for Distribution purposes, holders of Allowed Claims shall be entitled to a single Claim with respect to any particular debt owed.

**9.3    Combined Disclosure Statement and Plan Funding.**  Distributions under the Combined Disclosure Statement and Plan shall be funded from Cash on hand, the proceeds of the Sales and proceeds of the Litigation Trust.

**9.4    Debtors' Directors and Officers.**  On the Effective Date, each of the Debtors' directors and officers shall be terminated automatically without the need for any corporate action or approval and without the need for any corporate filings, and shall have no continuing obligations to the Debtors following the occurrence of the Effective Date.  From and after the Effective Date, the Litigation Trustee and Litigation Trust Board shall have the power to act for the Debtors in the same capacity as applicable to a board of directors and officers, subject to the provisions hereof, the Confirmation Order, and the Litigation Trust Agreement (and all charters, bylaws, and other corporate documents are deemed amended by this Combined Disclosure Statement and Plan to permit and authorize such admission and appointment).  The Litigation Trustee shall serve in such capacity through the earlier of the date the applicable Debtor is dissolved in accordance with this Combined Disclosure Statement and Plan and the Litigation Trust Agreement and the date that such Litigation Trustee resigns, is terminated, or is otherwise unable to serve, provided that any successor Litigation Trustee shall serve in such capacities after the effective date of such appointment as the Litigation Trustee.

**9.5    D&O Policy.**  As of the Effective Date, the Debtors shall be deemed to have assumed all of the D&O Policies pursuant to sections 105(a) and 365(a) of the Bankruptcy Code, and coverage for defense and indemnity under any of the D&O Policies shall remain in full force and effect subject to the terms and conditions of the D&O Policies.  Entry of the Confirmation Order will constitute the Bankruptcy Court's approval of the Debtors' foregoing assumption of each D&O Policy.  Notwithstanding anything to the contrary contained in the Combined Disclosure Statement and Plan, and except as otherwise may be provided in an order of the Bankruptcy Court, confirmation of the Combined Disclosure Statement and Plan shall not impair or otherwise modify any obligations assumed by the foregoing assumption of the D&O Policies, and each such obligation will be deemed and treated as an executory contract that has been assumed by the

Debtors under the Combined Disclosure Statement and Plan as to which no Proof of Claim need be filed. For the avoidance of doubt, the D&O Policies provide coverage for those insureds currently covered by such policies for the remaining term of such policies and runoff or tail coverage after the Effective Date to the fullest extent permitted by such policies. On and after the Effective Date, the Debtors, the Wind-Down Estates, or the Litigation Trustee shall not terminate or otherwise reduce the coverage under any of the D&O Policies in effect or purchased as of the Petition Date. The D&O Policies shall constitute Litigation Trust Assets, <u>provided</u> that, for the avoidance of doubt, the D&O Policies shall maintain coverage for those insureds currently covered by such policies for the remaining term of such policies and runoff or tail coverage after the Effective Date to the fullest extent permitted by such policies.

**9.6**     **Indemnification of Directors, Officers and Employees.**  For purposes of the Combined Disclosure Statement and Plan, the obligation of the Debtors to indemnify and reimburse any Person or entity serving at any time on or after the Petition Date as one of its directors, officers or employees by reason of such Person's or entity's service in such capacity, or as a director, officer or employee of any of the Debtors or any other corporation or legal entity, to the extent provided in such Debtor's constituent documents, a written agreement with the Debtor(s), in accordance with any applicable law, or any combination of the foregoing, shall survive confirmation of the Combined Disclosure Statement and Plan and the Effective Date solely to the extent of available insurance. For the avoidance of doubt, nothing herein shall be construed as the Debtors assuming any obligation with respect to any self-insured retention for which the applicable insurer has the ability to assert a prepetition Claim against the applicable Debtor in accordance with the order setting the Bar Date or other order of the Court. On and after the Effective Date, the coverage under any of the D&O Policies in effect on the Petition Date shall not be terminated or otherwise reduced by or on behalf of the Debtors, and all directors and officers of the Debtors at any time shall be entitled to the full benefits of any such policy for the full term of such policy regardless of whether such directors and/or officers remain in such positions after the Effective Date.

**9.7**     **Wind-Up and Dissolution of the Debtors.**  On the Effective Date or as soon thereafter as is reasonably practicable, the Litigation Trustee shall wind-up the affairs of the Debtors. Upon completion of the winding-up of the Debtors' affairs and without the need for any corporate action or approval and without the need for any corporate filings, the Litigation Trustee shall dissolve the Debtors and neither the Debtors nor the Litigation Trustee shall be required to pay any taxes or fees to cause such dissolution. The Litigation Trust shall bear the cost and expense of the wind-down of the affairs of the Debtors, if any, and the cost and expense of the preparation and filing of the final tax returns for the Debtors.

**9.8**     **Creation and Governance of the Litigation Trust.**  On the Effective Date, the Debtors and the Litigation Trustee shall execute the Litigation Trust Agreement and shall take all steps necessary to establish the Litigation Trust in accordance with the Combined Disclosure Statement and Plan and the beneficial interests therein, which shall be for the benefit of the Litigation Trust Beneficiaries. Additionally, on the Effective Date, the Debtors shall irrevocably transfer and shall be deemed to have irrevocably transferred to the Litigation Trust all of their rights, title, and interest in and to all of the Litigation Trust Assets, and in accordance with section 1141 of the Bankruptcy Code, except as specifically provided in the Combined Disclosure Statement and Plan or the Confirmation Order, the Litigation Trust Assets shall automatically vest in the Litigation Trust free and clear of all Claims, liens, encumbrances, or interests subject only to the Litigation

54

Trust Interests and the Litigation Trust Expenses, as provided for in the Combined Disclosure Statement and Plan and the Litigation Trust Agreement, and Claims required to be paid by the Litigation Trust pursuant to the Combined Disclosure Statement and Plan with priority over General Unsecured Claims, including, without limitation, Administrative Claims, Quarterly Fees, Priority Tax Claims, Priority Non-Tax Claims, Prepetition Loan Claims, and Professional Fee Claims; and such transfer shall be exempt from any stamp, real estate transfer, other transfer, mortgage reporting, sales, use, or other similar tax. The Litigation Trustee shall be the exclusive trustee of the Litigation Trust Assets for purposes of 31 U.S.C. § 3713(b) and 26 U.S.C. § 6012(b)(3), as well as the representative of the Estates appointed pursuant to section 1123(b)(3)(B) of the Bankruptcy Code. The Litigation Trust shall be governed by the Litigation Trust Agreement and administered by the Litigation Trustee. The powers, rights, and responsibilities of the Litigation Trustee shall be specified in the Litigation Trust Agreement and shall include the authority and responsibility to, among other things, take the actions set forth in Section 9 of this Combined Disclosure Statement and Plan. The Litigation Trust shall hold and distribute the Litigation Trust Assets in accordance with the provisions of the Combined Disclosure Statement and Plan and the Litigation Trust Agreement. Other rights and duties of the Litigation Trustee and the Litigation Trust Beneficiaries shall be as set forth in the Litigation Trust Agreement. For the avoidance of doubt, after the Effective Date, the Debtors and the Estates shall have no interest in the Litigation Trust Assets, the transfer of the Litigation Trust Assets to the Litigation Trust is absolute, and the Litigation Trust Assets shall not be held or deemed to be held in trust by the Litigation Trustee on behalf of any of the Debtors or the Estates.

**9.9    Purpose of the Litigation Trust.** The Litigation Trust shall be established for the purpose of: pursuing or liquidating the Litigation Trust Assets; reconciling and objecting to Claims, as provided for in the Combined Disclosure Statement and Plan; and making Distributions to the Litigation Trust Beneficiaries in accordance with Treasury Regulation section 301.7701-4(d), with no objective to continue or engage in the conduct of a trade or business; provided, that, the Litigation Trustee must obtain unanimous consent from the members of the Litigation Trust Board before pursuing (or refusing to pursue) any Claims objections and settlements with respect to General Unsecured Claims (excluding, for the avoidance of doubt, Retained Causes of Action), which are not Prepetition Loan Claims, that are asserted or scheduled in the amount of $200,000 or higher. Prior to the Effective Date, the Debtors, the Committee, and the Prepetition Lenders shall use reasonable efforts to identify and agree upon Claims that the Litigation Trustee will seek to object to and/or settle.

The Litigation Trust will retain counsel acceptable to the Prepetition Lenders in order to pursue and liquidate the Litigation Trust Assets.

The Litigation Trust Agreement shall provide that Holders of Allowed General Unsecured Claims may assign any applicable direct claims that such Holders have against third parties related to the Debtors (including any guaranties under the Convertible Debentures) to the Litigation Trust, which shall be subject to the distribution priorities set forth in Section 9.11 herein.

**9.10    Ability to Seek and Obtain Discovery**. From and after the Effective Date, the Litigation Trustee shall have the ability to seek and obtain examination (including document discovery and depositions) under Bankruptcy Rule 2004 against any Person or Entity in furtherance of the purpose of the Litigation Trust, and the Bankruptcy Court shall retain jurisdiction to order

**506**

examinations (including examinations under Bankruptcy Rule 2004) against any Person or Entity, and to hear all matters with respect to the same.

**9.11    Allocation of Litigation Trust Distribution Proceeds**.  In connection with the Plan Settlement, the Litigation Trust Distribution Proceeds, if any, shall be distributed to Holders of Allowed Prepetition Loan Claims and Allowed General Unsecured Claims (that have elected to receive Litigation Trust Interests) in accordance with the distribution priorities set forth below:

*First*, to the Litigation Trustee to pay the Litigation Trust Expenses;

*Second*, to repay the Litigation Trust Financing Facility until all obligations related to the Litigation Trust Financing are satisfied in full;

*Third*, after the Litigation Trust Financing Facility Obligations are satisfied in full, the next $5 million of Litigation Trust Distribution Proceeds, net of any Litigation Trust Expenses, shall be distributed as follows:

    a.  95% to Holders of Allowed Prepetition Loan Claims, solely to the extent such Claims have not been satisfied in full on account of Litigation Trust Distribution Proceeds or otherwise under the Combined Plan and Disclosure Statement; and

    b.  5% to Holders of Allowed General Unsecured Claims that have elected to receive Litigation Trust Interests, solely to the extent such Claims have not been satisfied in full;

*Fourth*, the next $15 million of Litigation Trust Distribution Proceeds, net of any Litigation Trust Expenses, shall be distributed as follows:

    a.  90% to Holders of Allowed Prepetition Loan Claims, solely to the extent such Claims have not been satisfied in full on account of Litigation Trust Distribution Proceeds or otherwise under the Combined Plan and Disclosure Statement; and

    b.  10% to Holders of Allowed General Unsecured Claims that have elected to receive Litigation Trust Interests, solely to the extent such Claims have not been satisfied in full;

*Fifth*, the next $15 million of Litigation Trust Distribution Proceeds, net of any Litigation Trust Expenses, shall be distributed as follows:

    a.  87.5% to Holders of Allowed Prepetition Loan Claims, solely to the extent such Claims have not been satisfied in full on account of Litigation Trust Distribution Proceeds or otherwise under the Combined Plan and Disclosure Statement; and

    b.  12.5% to Holders of Allowed General Unsecured Claims that have elected to receive Litigation Trust Interests, solely to the extent such Claims have not been satisfied in full; and

*Sixth*, any incremental Litigation Trust Distribution Proceeds, net of any Litigation Trust Expenses, shall be distributed as follows:

    a. 85% to Holders of Allowed Prepetition Loan Claims, solely to the extent such Claims have not been satisfied in full on account of Litigation Trust Distribution Proceeds or otherwise under the Combined Plan and Disclosure Statement; and

    b. 15% to Holders of Allowed General Unsecured Claims that have elected to receive Litigation Trust Interests, solely to the extent such Claims have not been satisfied in full.

**9.12    Availability of Litigation Trust Distribution Proceeds for Holders of Subordinated Convertible Debentures**.  In connection with the Plan Settlement, Holders of Allowed General Unsecured Claims that arise from obligations under the Convertible Debentures shall be entitled to recover up to $900,000 in Litigation Trust Distribution Proceeds (in the aggregate among all holders of Convertible Debentures), in accordance with Article 9.11 hereof, prior to and notwithstanding the Prepetition Lenders' enforcement of any rights under the Subordination Agreements (as defined in the DIP Loan Agreement) which subordinate such Allowed General Unsecured Claims to the Prepetition Loan Claims; provided, that, for the avoidance of doubt, except as provided in this Section 9.12, nothing herein shall alter, modify or otherwise limit the Prepetition Lenders' rights under the Subordination Agreements.

**9.13    Litigation Trust Financing.**  On, or as soon as reasonably practicable after the Effective Date, BTC Near HoldCo LLC or its affiliate (the "Litigation Trust Lender") shall provide a loan to the Litigation Trust (the "Litigation Trust Financing") in an initial amount sufficient to fund both the (i) GUC Cash Pool and (ii) start-up costs for the Litigation Trust in an amount to be determined by the Litigation Trust Lender in consultation with the Litigation Trustee and the Litigation Trust Board.  The Litigation Trust Lender shall provide the Litigation Trust Financing on terms that are set forth in the Litigation Trust Agreement and mutually acceptable to the Litigation Trust Lender and the Litigation Trustee.

The Litigation Trust Financing shall not constitute Loans (as defined in the DIP Financing Agreement) or increase or reduce the DIP Claims or Prepetition Loan Claims.  The Litigation Trust Financing  shall be repaid with Litigation Trust Distribution Proceeds in accordance with Section 9.11 hereof, and the Litigation Trust Lender's recourse with respect to the Litigation Trust Financing shall be solely against the Litigation Trust.

**9.14    Litigation Trustee and Litigation Trust Agreement.**  The Litigation Trust Agreement generally will provide for, among other things: (i) the payment of the Litigation Trust Expenses; (ii) the payment of other reasonable expenses of the Litigation Trust; (iii) the retention of counsel, accountants, financial advisors, or other professionals and the payment of their reasonable compensation; (iv) the investment of Cash by the Litigation Trustee within certain limitations, including those specified in the Combined Disclosure Statement and Plan; (v) the orderly liquidation of the Litigation Trust Assets; (vi) litigation of any Retained Causes of Action, which may include the prosecution, settlement, abandonment, or dismissal of any such Causes of Action; (vii) the prosecution and resolution of objections to Claims; (viii) the establishment of such Disputed Claim Reserves as the Litigation Trustee deems appropriate; and (ix) the appointment of

an oversight representative who shall oversee, and have certain approval and/or consultation rights over, the acts of the Litigation Trustee.

The Litigation Trustee, on behalf of the Litigation Trust, may employ, without further order of the Bankruptcy Court, professionals (including those previously retained by the Debtors or the Committee) to assist in carrying out the Litigation Trustee's duties hereunder and may compensate and reimburse the reasonable expenses of these professionals without further Order of the Bankruptcy Court from the Litigation Trust Assets in accordance with the Combined Disclosure Statement and Plan, and the Litigation Trust Agreement.

The Litigation Trust Agreement provides that the Litigation Trustee shall be indemnified by and receive reimbursement from the Litigation Trust Assets against and from any and all loss, liability, expense (including reasonable attorneys' fees), or damage which the Litigation Trustee incurs or sustains, in good faith and without either willful misconduct, gross negligence or fraud, acting as Litigation Trustee under or in connection with the Litigation Trust Agreement.

On and after the Effective Date, the Litigation Trustee shall have the power and responsibility to do all acts contemplated by the Combined Disclosure Statement and Plan to be done by the Litigation Trustee and all other acts that may be necessary or appropriate in connection with the disposition of the Litigation Trust Assets and the distribution of the proceeds thereof, as contemplated by the Combined Disclosure Statement and Plan and in accordance with the Litigation Trust Agreement. In all circumstances, the Litigation Trustee shall act in its reasonable discretion in the best interests of the Litigation Trust Beneficiaries pursuant to the terms of the Combined Disclosure Statement and Plan and the Litigation Trust Agreement.

**9.15 Compensation and Duties of Litigation Trustee.** The salient terms of the Litigation Trustee's employment, including the Litigation Trustee's duties and compensation, shall be set forth in the Litigation Trust Agreement. The Litigation Trustee shall be entitled to reasonable compensation in an amount consistent with that of similar functionaries in similar types of bankruptcy cases. The Litigation Trustee shall also be reimbursed for all documented, actual, reasonable, and necessary out-of-pocket expenses incurred in the performance of his or her duties under the Litigation Trust Agreement.

**9.16 Litigation Trust Board; Oversight.** In furtherance of and consistent with the purpose of the Litigation Trust and to effectuate the provisions of the Combined Disclosure Statement and Plan, the Litigation Trust Board shall oversee the activities of the Litigation Trustee as set forth in the Litigation Trust Agreement. The Litigation Trustee shall report material matters to, and seek approval for material decisions from, the Litigation Trust Board, as and to the extent set forth in the Litigation Trust Agreement, and consistent with the Combined Disclosure Statement and Plan and Confirmation Order. In all circumstances, the Litigation Trust Board shall act in accordance with the Litigation Trust Agreement. Litigation Trust Beneficiaries may seek injunctive or other relief from the Bankruptcy Court in the event a member of the Litigation Trust Board or the Litigation Trustee breaches any duty. The Litigation Trust Board shall remain in existence until

such time as the final Distributions hereunder have been made.  The initial members of the Litigation Trust Board will be set forth in the Litigation Trust Agreement and the Plan Supplement.

**9.17    Certain United States Federal Income Tax Considerations.**

(a)    *General.*    **HOLDERS CONCERNED WITH HOW THE COMBINED DISCLOSURE STATEMENT AND PLAN MAY AFFECT THEIR TAX LIABILITY SHOULD CONSULT WITH THEIR OWN TAX ADVISORS.   THE BELOW TAX SUMMARY HAS BEEN PROVIDED FOR GENERAL INFORMATIONAL PURPOSES ONLY.  THE U.S. FEDERAL INCOME TAX CONSEQUENCES OF THE COMBINED DISCLOSURE STATEMENT AND PLAN ARE COMPLEX.  NOTHING HEREIN SHALL CONSTITUTE TAX ADVICE.   THE TAX CONSEQUENCES ARE IN MANY CASES UNCERTAIN AND MAY VARY DEPENDING ON A HOLDER'S PARTICULAR CIRCUMSTANCES.**

The following discussion summarizes certain United States federal income tax consequences of the Combined Disclosure Statement and Plan to the Debtors and to certain holders of Claims.  This discussion is based on the IRC, the Treasury Regulations promulgated thereunder, judicial decisions, and published administrative rulings and pronouncements of the IRS, all as in effect on the date hereof.   Legislative, judicial, or administrative changes in law or its interpretation, as well as other events occurring after the date of this Combined Disclosure Statement and Plan, and which may be retroactive, could materially alter the tax treatment described below.  Furthermore, this discussion is not binding on the IRS or any other tax authority. There is no assurance that a tax authority will not take, or that a court will not sustain, a position with respect to the tax consequences of the Combined Disclosure Statement and Plan that differs from the tax consequences described below.  No ruling has been or will be sought from the IRS, no opinion of counsel has been or will be obtained, and no representations are made regarding any tax aspect of the Plan.

The following discussion assumes that the Claims are held as "capital assets" within the meaning of Section 1221 of the IRC (generally, property held for investment).  The discussion does not address all aspects of U.S. federal income taxation that may be relevant to a particular Holder in light of such Holder's facts and circumstances, or to certain types of Holders subject to special treatment under the IRC (for example, small business investment companies, governmental entities and entities exercising governmental authority, non-U.S. taxpayers, banks and certain other financial institutions, broker-dealers, insurance companies, tax-exempt organizations, real estate investment trusts, regulated investment companies, persons holding a Claim as part of a hedge, straddle, constructive sale, conversion transaction, or other integrated transaction, Holders that are or hold their Claims through S corporations, partnerships or other pass-through entities, traders that mark-to-market their securities and Persons that have a functional currency other than the U.S. dollar).  This summary does not address state, local, or non-United States tax consequences of the Combined Disclosure Statement and Plan, nor does this summary address federal taxes other than income taxes.  Furthermore, this discussion generally does not address U.S. federal income tax consequences to Holders that are unimpaired under the Combined Disclosure Statement and Plan

or that are not entitled to receive or retain any property under the Combined Disclosure Statement and Plan or to Persons who are deemed to have rejected the Plan.

      (b)     *Litigation Trust*.

          (i)     *Grantor Trust*. It is intended that the Litigation Trust qualify as a grantor trust for federal income tax purposes, and that the Litigation Trust Beneficiaries are treated as grantors. As described more fully in the Combined Disclosure Statement and Plan, the transfer of the Litigation Trust Assets will be treated for federal income tax purposes as a transfer to the Litigation Trust Beneficiaries, followed by a deemed transfer from such Litigation Trust Beneficiaries to the Litigation Trust. Accordingly, the Litigation Trust Beneficiaries will be treated for United States federal income tax purposes as the grantors and owners of their respective share of the Litigation Trust Assets. The foregoing treatment shall also apply, to the extent permitted by applicable law, for state and local income tax purposes. Generally, all items of income, gain, loss, deduction, and credit will be included in the income of the Litigation Trust Beneficiaries as if such items had been recognized directly by the Litigation Trust Beneficiaries in the proportions in which they own beneficial interests in the Litigation Trust. Unless indicated otherwise, the rest of this discussion assumes that the Litigation Trust will qualify as a grantor trust for federal income tax purposes, and that the Litigation Trust Beneficiaries are treated as grantors.

          (ii)     *Reporting*. The Litigation Trustee shall comply with all tax reporting requirements, including, without limitation, filing returns for the Litigation Trust as a grantor trust pursuant to Treasury Regulation § 1.671-4(a) and the guidelines set forth for a "liquidating trust" in Revenue Procedure 94-95, 1994-2 C.B. 684. In connection therewith, the Litigation Trustee may require Litigation Trust Beneficiaries to provide certain tax information as a condition to receipt of Distributions, including certification of the Litigation Trust Beneficiary's Taxpayer or Employer Identification Number.

          (iii)     *Valuation*. Except to the extent definitive guidance from the IRS or a court of competent jurisdiction (including the issuance of applicable Treasury Regulations or the receipt by the Litigation Trustee of a private letter ruling if the Litigation Trustee so requests one) indicates that such valuation is not necessary to maintain the treatment of the Litigation Trust as a liquidating trust for purposes of the IRC and applicable Treasury Regulations, as soon as reasonably practicable after the Litigation Trust Assets are transferred to the Litigation Trust, the Litigation Trustee shall make a good faith valuation of the Litigation Trust Assets. Such valuation shall be made available from time to time to all parties to the Litigation Trust Agreement and to all Litigation Trust Beneficiaries, to the extent relevant to such parties for tax purposes, and shall be used consistently by such parties for all United States federal income tax purposes.

          (iv)     *Tax Returns*. In accordance with the provisions of section 6012(b)(3) of the IRC, the Litigation Trustee shall cause to be prepared, at the cost and expense of the Litigation Trust, the income tax returns (federal, state and local) that the Debtors are required to file (to the extent such returns have not already been filed by the Effective Date). The Litigation Trustee shall timely file each such tax return with the appropriate taxing authority and shall pay out of the Litigation Trust Assets all taxes due with respect to the period covered by each such tax return.

(v)    *Disputed Ownership Fund Election.*  The Combined Disclosure Statement and Plan permits the Litigation Trustee to establish Disputed Claim Reserves.  The Litigation Trustee may, at the Litigation Trustee's sole discretion, file a tax election to treat any such Disputed Claim Reserve as a Disputed Ownership Fund as described in Treasury Regulation § 1.468B-9 or other taxable entity rather than as a part of the Litigation Trust for federal income tax purposes.  If such election is made, the Litigation Trust shall comply with all tax reporting and tax compliance requirements applicable to the Disputed Ownership Fund or other taxable entity, including, but not limited to, the filing of separate income tax returns for the Disputed Ownership Fund or other taxable entity and the payment of any federal, state or local income tax due.

(vi)    *Attribution of Income.*  Subject to definitive guidance from the IRS or a court of competent jurisdiction to the contrary (including the issuance of applicable Treasury Regulations, the receipt by the Litigation Trustee of a private letter ruling if the Litigation Trustee so requests one, or the receipt of an adverse determination by the IRS upon audit if not contested by the Litigation Trustee), attribution of Litigation Trust taxable income or loss shall be by reference to the manner in which any economic gain or loss would be borne immediately after a hypothetical liquidating distribution of the remaining Litigation Trust Assets.  The tax book value of the Litigation Trust Assets for purpose of this paragraph shall equal their fair market value on the date the Litigation Trust Assets are transferred to the Litigation Trust, adjusted in accordance with tax accounting principles prescribed by the IRC, the applicable Treasury Regulations, and other applicable administrative and judicial authorities and pronouncements.

(vii)    *Income Taxed on a Current Basis.*  All income of the Litigation Trust will be subject to tax on a current basis.  The Combined Disclosure Statement and Plan requires the Debtors, the Litigation Trust, and the Litigation Trust Beneficiaries to report consistently with characterization of the Litigation Trust as a grantor trust and requires the Litigation Trustee to file tax returns treating the Litigation Trust as a "grantor trust" pursuant to Treasury Regulation section 1.671-4(a) and to report to each Litigation Trust Beneficiary a statement of the Litigation Trust Beneficiary's share of Litigation Trust income, gain, loss, deduction, and credit for inclusion in the Litigation Trust Beneficiary's U.S. federal income tax return.  Litigation Trust Beneficiaries therefore may owe tax on Litigation Trust income, without regard to whether cash distributions are made to beneficial owners by the Litigation Trust.

(viii)    *Tax Identification Numbers.*  Amounts paid to Litigation Trust Beneficiaries are subject to generally applicable withholding, information, and backup withholding rules.  The Litigation Trustee may require any Litigation Trust Beneficiary to furnish to the Litigation Trustee its employer or Taxpayer Identification Number as assigned by the IRS or certify to the Litigation Trustee's satisfaction that Distributions to the Litigation Trust Beneficiary are exempt from backup withholding.  The Litigation Trustee may condition any Distribution to any Litigation Trust Beneficiary upon receipt of such identification number.  If after reasonable inquiry, any Litigation Trust Beneficiary fails to provide such identification number to the Litigation Trustee, the Litigation Trustee shall deem such Litigation Trust Beneficiary's Claim as Disallowed and no Distribution shall be made on account of such Litigation Trust Beneficiary's Claim.

(ix)    *Notices.*  The Litigation Trustee shall distribute such notices to the Litigation Trust Beneficiaries as the Litigation Trustee determines are necessary or desirable.

   (x) *Expedited Determination*.  The Litigation Trustee may request an expedited determination of taxes of the Debtors or of the Litigation Trust under section 505(b) of the Bankruptcy Code for all tax returns filed for, or on behalf of, the Debtors and the Litigation Trust for all taxable periods through the dissolution of the Litigation Trust.

   (c) *Federal Income Tax Consequences to the Debtors*.

   (i) *Sale of Assets*.  The Sale will constitute a taxable disposition of the Debtors' assets.  The Debtors will recognize gain or loss equal to the difference between the amount received for those assets in the Sale and the Debtors' adjusted tax basis in those assets.  The Debtors expect to have tax losses generated from other activities in the current year that may be used to offset gain from the Sale.  The Debtors also expect to have net operating losses ("NOL**s**") from prior taxable years available that may be carried forward to offset a portion of the gain from the Sale.  As of the Petition Date, the Debtors believe they have approximately $54 million of NOLs (some of which are subject to certain limitations set forth in the Internal Revenue Code).  For NOLs arising prior to 2018, such NOLs can generally be carried forward for 20 years to offset taxable income.  As a result of the enactment Tax Cuts and Jobs Act of 2017, NOLs arising in 2018 and thereafter can be carried forward indefinitely, but can only offset 80% of taxable income for a taxable year.  To the extent current year losses and NOLs and other tax deductions are not available to offset Debtors' gain from the Sale, Debtors will owe tax on such gains.  Any such tax will be an Administrative Claim.

   (ii) *Cancellation of Indebtedness and Reduction of Tax Attributes*.  For U.S. federal income tax purposes, gross income generally includes income from cancellation of indebtedness ("COD").  In general, the Debtors will have COD income equal to the excess of the amount of debt discharged pursuant to the Combined Disclosure Statement and Plan over the adjusted issue price of the debt, less the amount of cash and the fair market value of property distributed to holders of the debt.  Various statutory or judicial exceptions limit the incurrence of COD income (such as where payment of the cancelled debt would have given rise to a tax deduction).  COD income also includes interest accrued on obligations of the Debtors but unpaid at the time of discharge.  An exception to the recognition of COD income applies to a debtor in a chapter 11 bankruptcy proceeding.  Bankrupt debtors generally do not include COD in taxable income, but must instead reduce certain tax attributes (such as NOLs, capital losses, certain credits, and the excess of the tax basis of the debtor's property over the amount of liabilities outstanding after discharge) by the amount of COD income that was excluded under the bankruptcy exception.  Tax benefits are reduced after the tax is determined for the year of discharge.  Existing NOLs will therefore be available to offset gains on asset sales in the year of the discharge regardless of the amount by which NOLs are reduced due to COD income.  Also, where a debtor joins in the filing of a consolidated U.S. federal income tax return, applicable Treasury Regulations require, in certain circumstances, that the tax attributes of the consolidated subsidiaries of the debtor and other members of the group also be reduced.

   Consistent with the intended treatment of the Combined Disclosure Statement and Plan as a plan of liquidation for U.S. federal income tax purposes, the Debtors believe that no COD should be incurred by any Debtor as a result of the implementation of the Combined Disclosure Statement and Plan prior to the distribution by such Debtor of all of its assets.  In such case, the reduction of tax attributes resulting from such COD (which, as indicated above, only occurs as of

the end of the tax year in which the COD occurs) generally should not have a material impact on the Debtors.

     (d)    *Federal Income Tax Consequences to Holders.*

     (i)    *Characterization.*  The tax treatment of Holders, and the character, amount, and timing of income, gain, or loss recognized as a consequence of the Combined Disclosure Statement and Plan and any Distributions pursuant to the Combined Disclosure Statement and Plan may vary, depending upon, among other things: (A) whether the Claim (or a portion of a Claim) is for principal or interest; (B) the type of consideration the Holder receives for the Claim, (C) whether the Holder receives Distributions under the Combined Disclosure Statement and Plan in more than one taxable year; (D) the manner in which the Holder acquired the Claim; (E) the length of time that the Claim has been held; (F) whether the Claim was acquired at a discount; (G) whether the Holder of the Claim has taken a bad debt deduction with respect to part or all of the Claim; (H) whether the Holder of the Claim has previously included in income accrued but unpaid interest on the Claim; (I) the Holder's method of tax accounting; (J) whether the Claim is an installment obligation for U.S. federal income tax purposes; (K) whether the Claim, and any instrument received in exchange for the Claim, is a "security" for U.S. federal income tax purposes; and (L) whether and the manner in which the "market discount" rules of the IRC apply to the holder of the Claim.

     (ii)    *Gain and Loss Recognition.*  Holders that receive cash and property other than stock and securities for their Claim will recognize gain or loss for U.S. federal income tax purposes equal to the difference between the "amount realized" by the Holder and the Holder's tax basis in the Claim.  The "amount realized" is the sum of the amount of cash and the fair market value of any other property received under the Combined Disclosure Statement and Plan in respect of the Claim (other than amounts received in respect of a Claim for accrued unpaid interest).  The Holder's tax basis in the Claim (other than a Claim for accrued unpaid interest) is generally the Holder's cost, though tax basis could be more or less than cost depending on the specific facts of the Holder.  Gain or loss will generally be long-term capital gain or loss if the Claim disposed of has been held for more than one year.

     (iii)    *Interest.*  Holders that previously included in income accrued but unpaid interest on a Claim may be entitled to a deductible loss to the extent such interest is not satisfied under the Combined Disclosure Statement and Plan.  Conversely, a Holder has ordinary income to the extent of the amount of cash or the fair market value of property received in respect of a Claim for (or the portion of a Claim treated as allocable to) accrued unpaid interest that was not previously included in income by the Holder.  The Combined Disclosure Statement and Plan treats all amounts payable to a Holder as principal until the principal amount of the Claim has been paid in full.  The Debtors' tax returns will be filed in a manner consistent with this allocation, but it is uncertain whether this allocation will be respected by the IRS.  The IRS may take the position that payments should be allocated first to interest or should be pro-rated between principal and interest. If the IRS prevails in this assertion, Holders may be required to recognize ordinary interest income even though they have an overall loss (and possibly a capital loss, the deductibility of which may be limited) with respect to such Holder's Claims.  Each Holder is urged to consult such Holder's own tax advisor regarding the amount of such Holder's Claim allocable to accrued unpaid interest

and the character of any loss with respect to accrued but unpaid interest that the holder previously included in income.

(iv)     *Bad Debt and Worthless Security Deductions*.  A Holder who receives, in respect of such Holder's Claim, an amount that is less than such Holder's tax basis in the Claim may be entitled to a bad debt or worthless securities deduction. The rules governing the character, timing, and amount of these deductions depend upon the facts and circumstances of the Holder, the obligor, and the instrument with respect to which the deduction is claimed, including whether (i) the Holder is a corporation or (ii) the Claim constituted (a) a debt created or acquired (as the case may be) in connection with the Holder's trade or business or (b) a debt, the loss from worthlessness of which is incurred in the Holder's trade or business.  A Holder that has previously recognized a loss or deduction in respect of such Holder's Claim may be required to include in income amounts received under the Combined Disclosure Statement and Plan that exceed the Holder's adjusted basis in its Claim.

(v)     *Installment Obligations*.  A Holder of a Claim that is an installment obligation for U.S. federal income tax purposes may be required to recognize any gain remaining with respect to such obligation if, pursuant to the Combined Disclosure Statement and Plan, the obligation is considered to be satisfied at other than its face value, distributed, transmitted, sold, or otherwise disposed of within the meaning of Section 453B of the IRC.

(vi)     *Market Discount*.  A Holder of a Claim that acquires a Claim at a market discount generally is required to treat any gain realized on the disposition of the Claim as ordinary income to the extent of the market discount that accrued during the period the Claim was held by the Holder and that was not previously included in income by the Holder.

(vii)     *Withholding*.  Amounts paid to Holders are subject to generally applicable withholding, information, and backup withholding rules.  The Combined Disclosure Statement and Plan authorizes the Debtors and the Litigation Trustee, as applicable, to withhold and report amounts required by law to be withheld and reported.  Amounts properly withheld from Distributions to a Holder and paid over to the applicable taxing authority for the account of such Holder will be treated as amounts distributed to such Holder.  Holders are required to provide the Debtors and the Litigation Trustee, as applicable, with the information necessary to effect information reporting and withholding as required by law.  Notwithstanding any other provision of the Combined Disclosure Statement and Plan, Holders of Claims that receive a Distribution pursuant to the Combined Disclosure Statement and Plan are responsible for the payment and satisfaction of all tax obligations, including income, withholding, and other tax obligations imposed with respect to the Distribution, and no Distribution shall be made until Holders have made arrangements satisfactory to the Debtors or the Litigation Trustee, as applicable, for the payment and satisfaction of such obligations.

(viii)     *Backup Withholding*.  Holders may be subject to backup withholding on payments pursuant to the Combined Disclosure Statement and Plan unless the Holder (A) is not a corporation and is not otherwise exempt from backup withholding and, when required, demonstrates that or (B) provides a correct taxpayer identification and certifies under penalty of perjury that the taxpayer identification number is correct and that the Holder is not subject to backup withholding because of previous failure to report dividend and interest income.  Backup

withholding is not an additional tax.  Amounts withheld due to backup withholding will be credited against the Holder's federal income tax liability and excess withholding may be refunded if a timely claim for refund (generally, a U.S. federal income tax return) is filed with the IRS.

(ix)    *Certain Disclosure Requirements*.  Treasury regulations require tax return disclosure of certain types of transactions that result in the taxpayer claiming a loss in excess of specified thresholds.    Holders are urged to consult their own tax advisors regarding these regulations and whether the transactions contemplated by the Combined Disclosure Statement and Plan would be subject to these regulations and would require such disclosure.

**9.18    Abandonment, Disposal, and Destruction of Records.**  Upon the occurrence of the Effective Date, the Debtors and Litigation Trust and Litigation Trustee and any transferee or custodian, as applicable, shall continue to preserve all financial and operational books and records, emails, and other financial and operational documents relating to the Debtors' business that are currently in the Debtors' possession.  The Debtors and Litigation Trust and Litigation Trustee and any transferee or custodian, as applicable, shall not destroy or otherwise abandon any such documents or records without seeking further authorization from the Bankruptcy Court.

**9.19    Distributions by Litigation Trustee.**  Following the transfer of the Litigation Trust Assets to the Litigation Trust, the Litigation Trustee shall make continuing efforts to liquidate all Litigation Trust Assets in accordance with the Combined Disclosure Statement and Plan and the Litigation Trust Agreement, provided that the timing of all Distributions made by the Litigation Trustee to Litigation Trust Beneficiaries shall be in accordance with the Litigation Trust Agreement and the Combined Disclosure Statement and Plan.

**9.20    Cash Investments.**  Funds in the Litigation Trust shall be invested in demand and time deposits in banks or other savings institutions, or in other temporary, liquid investments, such as Treasury bills, consistent with the liquidity needs of the Litigation Trust as determined by the Litigation Trustee, in accordance with Bankruptcy Code section 345, unless the Bankruptcy Court otherwise requires; provided, however, that such investments are investments permitted to be made by a "liquidating trust" within the meaning of Treasury Regulation section 301.7701-4(d), as reflected therein, or under applicable IRS guidelines, rulings or other controlling authorities.

**9.21    Dissolution of the Litigation Trust.**  The Litigation Trustee shall be discharged and the Litigation Trust shall be terminated, at such time as: (a)(i) all Disputed Claims have been resolved; (ii) all of the Litigation Trust Assets have been liquidated; (iii) all duties and obligations of the Litigation Trustee under the Litigation Trust Agreement have been fulfilled; (iv) all Distributions required under the Combined Disclosure Statement and Plan and the Litigation Trust Agreement have been made; and (v) the Chapter 11 Cases have been closed, OR (b) as otherwise provided in the Litigation Trust Agreement.  Upon dissolution of the Litigation Trust, any remaining Litigation Trust Assets may be transferred by the Litigation Trustee to a charitable organization(s) or sold as part of a remnant asset sale.

**9.22    Control Provisions.**  To the extent there is any inconsistency between this Combined Disclosure Statement and Plan as it relates to the Litigation Trust and the Litigation Trust Agreement, the terms of the Combined Disclosure Statement and Plan shall control.

**9.23    Limitation of Liability; Indemnification.**  The Litigation Trustee and all of its respective designees, employees, agents, representatives or professionals shall not be liable for the act or omission of any other member, designees, agent or representative of the Litigation Trustee, nor shall they be liable for any act or omission taken or omitted to be taken in their respective capacities, other than acts or omission resulting from willful misconduct, gross negligence, or fraud.  The Litigation Trustee shall be entitled to enjoy all of the rights, powers, immunities and privileges applicable to a chapter 7 trustee.  The Litigation Trustee may, in connection with the performance of its functions, and in its sole and absolute discretion, consult with attorneys, accountants, financial advisors and agents, which consultation may act as a defense for any act taken, omitted to be taken, or suffered to be done in accordance with advice or opinions rendered by such persons.  Notwithstanding such authority, the Litigation Trustee shall not be under any obligation to consult with attorneys, accountants, financial advisors or agents, and their determination not to do so shall not result in the imposition of liability, unless such determination is based on willful misconduct, gross negligence or fraud.  The Litigation Trust shall indemnify and hold harmless the Litigation Trustee and its designees and professionals, and all duly designated agents and representatives thereof (in their capacity as such), from and against and in respect of all liabilities, losses, damages, claims, costs and expenses, including, but not limited to attorneys' fees and costs arising out of or due to such actions or omissions, or consequences of their actions or omissions with respect or related to the performance of their duties or the implementation or administration of the Combined Disclosure Statement and Plan; provided, however, that no such indemnification will be made to such persons for such actions or omissions as a result of willful misconduct, gross negligence or fraud.

**9.24    Corporate Action.**  On the Effective Date, all matters expressly provided for under this Combined Disclosure Statement and Plan that would otherwise require approval of the equity holders or directors of one or more of the Debtors, including but not limited to, the dissolution or merger of any of the Debtors, shall be deemed to have occurred and shall be in effect upon the Effective Date pursuant to the applicable general corporation law of the states in which the Debtors are incorporated without any requirement of action by the equity holders or directors of the Debtors.

**ARTICLE  X**
**PROVISIONS GOVERNING DISTRIBUTIONS**

**10.1    Distributions for Allowed Claims.**

Except as otherwise provided herein or as ordered by the Bankruptcy Court, all Distributions to Litigation Trust Beneficiaries as of the applicable distribution date shall be made on or as soon as practicable after the applicable distribution date.  Distributions on account of Claims that first become Allowed Claims after the applicable distribution date shall be made pursuant to the terms of this Combined Disclosure Statement and Plan and on the day selected by the Litigation Trustee.

The Litigation Trustee may accelerate any Distribution date with respect to Distributions if the facts and circumstances so warrant and to the extent not inconsistent with the Combined Disclosure Statement and Plan.

Distributions made as soon as reasonably practicable after the Effective Date or such other date set forth herein shall be deemed to have been made on such date**.**

**10.2    Interest on Claims**.  Except to the extent provided in section 506(b) of the Bankruptcy Code, the Combined Disclosure Statement and Plan, or the Confirmation Order, post-petition interest shall not accrue or be paid on Claims, and no Holder of an Allowed Claim shall be entitled to interest accruing on any Claim from and after the Petition Date.

**10.3    Distributions by Litigation Trustee as Disbursement Agent**.  From and after the Effective Date, the Litigation Trustee may serve as the Disbursement Agent under the Combined Disclosure Statement and Plan with respect to Distributions to Holders of Allowed Claims (provided that the Litigation Trustee may hire professionals or consultants to assist with making disbursements or to act as the Disbursement Agent).  The Litigation Trustee shall cause to be made all Distributions required to be made to such Holders of Allowed Claims pursuant to the Combined Disclosure Statement and Plan and the Litigation Trust Agreement.  The Litigation Trustee shall not be required to give any bond or surety or other security for the performance of the Litigation Trustee's duties as Disbursement Agent unless otherwise ordered by the Bankruptcy Court.

**10.4    Means of Cash Payment**.  Cash payments under the Combined Disclosure Statement and Plan shall be made, at the option, and in the sole discretion, of the Litigation Trustee, by wire, check, or such other method as the Litigation Trustee deems appropriate under the circumstances. Cash payments to foreign creditors may be made, at the option, and in the sole discretion, of the Litigation Trustee, in such funds and by such means as are necessary or customary in a particular foreign jurisdiction.  Pursuant to Section 10.7 of the Combined Disclosure Statement and Plan, cash payments in the form of checks issued by the Litigation Trustee shall be null and void if not cashed within ninety (90) days of the date of the issuance thereof and deemed undeliverable Distributions.  Following the expiration of ninety (90) days after issuance of such null and void checks, in accordance with Section 10.13 of the Combined Disclosure Statement and Plan, amounts in respect of these undeliverable Distributions shall be become unrestricted Litigation Trust Assets redistributed to the Litigation Trust Beneficiaries after reserving as necessary for payment of Litigation Trust Expenses.  Such Holder shall be deemed to have forfeited its right to any reserved and future Distributions from the Litigation Trust and any Litigation Trust Interests held by such Holder shall be deemed cancelled, and the Claims of such Holder shall be forever barred.  For purposes of effectuating Distributions under the Combined Disclosure Statement and Plan, any Claim denominated in foreign currency shall be converted to U.S. Dollars pursuant to the applicable published exchange rate in effect on the Petition Date.

**10.5    Fractional Distributions.**  Notwithstanding anything in the Combined Disclosure Statement and Plan to the contrary, no payment of fractional cents shall be made pursuant to the Combined Disclosure Statement and Plan.  Whenever any payment of a fraction of a cent under the Combined Disclosure Statement and Plan would otherwise be required, the actual Distribution made shall reflect a rounding of such fraction to the nearest whole penny (up or down), with half cents or more being rounded up and fractions less than half of a cent being rounded down.  For distribution purposes (including rounding), DTC will be treated as a single Holder.

**10.6    De Minimis Distributions.**  Notwithstanding anything to the contrary contained in the Combined Disclosure Statement and Plan, the Litigation Trustee shall not be required to distribute,

and shall not distribute, Cash or other property to the Holder of any Allowed Claim if the amount of Cash or other property to be distributed on account of such Claim is less than $100. Any Holder of an Allowed Claim on account of which the amount of Cash or other property to be distributed is less than $100 shall be forever barred from asserting such Claim against Litigation Trust Assets.

**10.7   Delivery of Distributions; Unclaimed Distributions.**   All Distributions to Holders of Allowed Claims shall be made at the address of such Holder as set forth in the claims register maintained in the Chapter 11 Cases (subject to any transfer effectuated pursuant to Bankruptcy Rule 3001(e) or, after the Effective Date, a change of address notification provided by a Holder in a manner reasonably acceptable to the Litigation Trustee) or, in the absence of a Filed Proof of Claim, the Schedules. The responsibility to provide the Litigation Trustee a current address of a Holder of Claims shall always be the responsibility of such Holder and at no time shall the Litigation Trustee have any obligation to determine a Holder's current address. Nothing contained in the Combined Disclosure Statement and Plan shall require the Litigation Trustee to attempt to locate any Holder of an Allowed Claim. Amounts in respect of undeliverable Distributions made by the Litigation Trustee shall be held in trust on behalf of the Holder of the Claim to which they are payable by the Litigation Trust until the earlier of the date that such undeliverable Distributions are claimed by such Holder and the date ninety (90) days after the date the undeliverable Distributions were made. Following the expiration of ninety (90) days after the date the undeliverable Distributions were made, the amounts in respect of undeliverable Distributions shall be become unrestricted Litigation Trust Assets redistributed to the Litigation Trust Beneficiaries after reserving as necessary for payment of Litigation Trust Expenses. Such Holder shall be deemed to have forfeited its right to any reserved and future Distributions from the Litigation Trust and any Litigation Trust Interests held by such Holder shall be deemed cancelled, and the Claims of such Holder shall be forever barred.

**10.8   Application of Distribution Record Date.**   At the close of business on the Distribution Record Date, without prejudice to the rights of any Government Unit to file a Claim by the Governmental Bar Date, the Debtors' claims registers shall be closed, and there shall be no further changes in the record holders of Claims or Interests. Beneficial interests in the Litigation Trust shall be non-transferable except upon death of the interest holder or by operation of law. Except as provided herein, the Litigation Trustee and the Litigation Trustee's respective agents, successors, and assigns shall have no obligation to recognize any transfer of any Claim or Interest occurring after the Distribution Record Date and shall be entitled instead to recognize and deal for all purposes hereunder with only those record holders stated on the claims registers as of the close of business on the Distribution Record Date irrespective of the number of Distributions to be made under the Combined Disclosure Statement and Plan to such Entities or the date of such Distributions. For the avoidance of doubt, the Distribution Record Date shall not apply to any of the Debtors' publicly-traded securities deposited with DTC, the Holders of which shall receive a distribution in accordance with the customary procedures of DTC used in connection with such distributions.

**10.9   Withholding, Payment and Reporting Requirements With Respect to Distributions.**
All Distributions under the Combined Disclosure Statement and Plan shall, to the extent applicable, comply with all tax withholding, payment, and reporting requirements imposed by any federal, state, provincial, local, or foreign taxing authority, and all Distributions shall be subject to any such withholding, payment, and reporting requirements. The Litigation Trustee shall be

authorized to take any and all actions that may be necessary or appropriate to comply with such withholding, payment, and reporting requirements. The Litigation Trustee may require, in the Litigation Trustee's sole and absolute discretion and as a condition to the receipt of any Distribution, that the Holder of an Allowed Claim complete and return to the Litigation Trust the appropriate Form W-8 or Form W-9, as applicable, to each Holder. Notwithstanding any other provision of the Combined Disclosure Statement and Plan, (a) each Holder of an Allowed Claim that is to receive a Distribution pursuant to the Combined Disclosure Statement and Plan shall have sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any governmental unit, including income, withholding, and other tax obligations, on account of such Distribution, and including, in the case of any Holder of a Disputed Claim that has become an Allowed Claim, any tax obligation that would be imposed upon the Litigation Trust in connection with such Distribution, and (b) no Distribution shall be made to or on behalf of such Holder pursuant to the Combined Disclosure Statement and Plan unless and until such Holder has made arrangements reasonably satisfactory to the Litigation Trustee for the payment and satisfaction of such withholding tax obligations or such tax obligation that would be imposed upon the Litigation Trust in connection with such Distribution.

**10.10   Setoffs.** The Litigation Trust may, but shall not be required to, set off against any Claim or any Allowed Claim, and the payments or other Distributions to be made pursuant to the Combined Disclosure Statement and Plan in respect of such Claim, claims of any nature whatsoever that the Debtors or the Litigation Trust may have against the Holder of such Claim; provided, however, that neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Litigation Trust of any such claim that it may have against such Holder.

**10.11   No Distribution in Excess of Allowed Amounts.** Notwithstanding anything to the contrary herein, no Holder of an Allowed Claim shall receive in respect of such Claim any Distribution of a value as of the Effective Date in excess of the Allowed amount of such Claim.

**10.12   Allocation of Distributions.** The Litigation Trustee may, in the Litigation Trustee's sole discretion, make Distributions jointly to any Holder of a Claim and any other Entity who has asserted, or whom the Litigation Trustee has determined to have, an interest in such Claim; provided, however, that the Litigation Trust shall provide notice of such Distribution to any Holder of a Claim or other Entity that has asserted an interest in such Claim.

**10.13   Forfeiture of Distributions.** If the Holder of a Claim fails to cash a check payable to it within the time period set forth in Section 10.4, fails to claim an undeliverable Distribution within the time limit set forth in Section 10.7, or fails to complete and return to the Litigation Trust the appropriate Form W-8 or Form W-9 within one hundred and twenty (120) days of the request by the Litigation Trust for the completion and return to it of the appropriate form pursuant to Section 10.9, then such Holder shall be deemed to have forfeited its right to any reserved and future Distributions from the Litigation Trust and any Litigation Trust Interests held by such Holder shall be deemed cancelled, and the Claims of such Holder shall be forever barred. The forfeited Distributions shall become unrestricted Litigation Trust Assets and shall be redistributed to the Litigation Trust Beneficiaries after reserving as necessary for payment of Litigation Trust Expenses and otherwise in compliance with the Combined Disclosure Statement and Plan and the Litigation Trust Agreement. In the event the Litigation Trustee determines, in the Litigation

Trustee's sole discretion, that any such amounts are too small in total to redistribute cost-effectively to the Litigation Trust Beneficiaries, the Litigation Trustee may instead donate them to a charitable organization(s) free of any restrictions thereon, notwithstanding any federal or state escheat laws to the contrary.

**Securities Registration Exemption.** The Debtors intend that beneficial interests in the Litigation Trust shall not be "securities" under applicable laws, but to the extent such units are deemed to be "securities," the Debtors believe the issuance of such units under the Combined Disclosure Statement and Plan is exempt, pursuant to section 1145 of the Bankruptcy Code (except with respect to an entity that is an "underwriter" as defined in subsection (b) of section 1145 of the Bankruptcy Code). Beneficial interests in the Litigation Trust shall not be represented by units or certificates, or be transferable or assignable, except by will or intestate succession or as otherwise determined by the Litigation Trustee in accordance with all applicable securities law.

## ARTICLE XI
## PROVISIONS FOR CLAIMS OBJECTIONS AND ESTIMATION OF CLAIMS

**11.1    Claims Administration Responsibility.** Except as otherwise specifically provided in the Combined Disclosure Statement and Plan and the Litigation Trust Agreement, after the Effective Date, the Litigation Trustee shall have the authority to (a) file, withdraw, or litigate to judgment objections to Claims, (b) settle, compromise, or Allow any Claim or Disputed Claim without any further notice to or action, order, or approval by the Bankruptcy Court, (c) amend the Schedules in accordance with the Bankruptcy Code, and (d) administer and adjust the Claims Register to reflect any such settlements or compromises without any further notice to or action, order, or approval by the Bankruptcy Court. Any agreement entered into by the Litigation Trustee (acting in accordance with the terms of the Litigation Trust Agreement) with respect to the Allowance of any Claim shall be conclusive evidence and a final determination of the Allowance of such Claim.

**11.2    Claims Objections.** All objections to Claims shall be Filed by the Litigation Trustee or other parties in interest on or before the Claims Objection Deadline, which date may be extended by the Bankruptcy Court upon a motion filed by the Litigation Trustee on or before the Claims Objection Deadline with notice only to those parties entitled to notice in the Chapter 11 Cases pursuant to Bankruptcy Rule 2002 as of the filing of such motion. If a timely objection has not been Filed to a Proof of Claim or the Schedules have not been amended with respect to a Claim that was scheduled by the Debtors but was not set forth in the Schedules by the Debtors as contingent, unliquidated, and/or disputed, then the Claim to which the Proof of Claim or the Claim set forth in the Schedules relates will be treated as an Allowed Claim.

The Litigation Trustee must obtain unanimous consent from the members of the Litigation Trust Board before pursuing (or refusing to pursue) any Claims objections and settlements with respect to General Unsecured Claims (excluding, for the avoidance of doubt, Retained Causes of Action), which are not Prepetition Loan Claims, that are asserted or scheduled in the amount of $200,000 or higher. Prior to the Effective Date, the Debtors, the Committee, and the Prepetition Lenders shall use reasonable efforts to identify and agree upon Claims that the Litigation Trustee will seek to object to and/or settle.

**11.3     Estimation of Contingent or Unliquidated Claims**.  The Litigation Trustee may, at any time, request that the Bankruptcy Court estimate any contingent or unliquidated Claim pursuant to section 502(c) of the Bankruptcy Code, regardless of whether the Debtors have previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including during the pendency of any appeal relating to any such objection.  In the event the Bankruptcy Court so estimates any contingent or unliquidated Claim, that estimated amount shall constitute the Allowed amount of such Claim.  All of the aforementioned Claims objection, estimation, and resolution procedures are cumulative and are not necessarily exclusive of one another.

**11.4     Distributions on Account of Disputed Claims.**  Distributions may be made on account of an undisputed portion of a Disputed Claim.  The Litigation Trustee shall, on the applicable distribution date, make Distributions on account of any Disputed Claim (or portion thereof) that has become an Allowed Claim.  Such Distributions shall be based upon the Distributions that would have been made to the Holder of such Claim under the Combined Disclosure Statement and Plan if such Claim had been an Allowed Claim on the Effective Date in the amount ultimately Allowed.

**11.5     Amendments to Claims.**  On or after the Bar Date, a Claim may not be filed or amended to increase liability or to assert new liabilities without the prior authorization of the Bankruptcy Court or the Litigation Trustee, and any such new or amended Claim filed without prior authorization shall be deemed Disallowed in full without any further action; provided that the foregoing shall not prejudice the rights of any Government Unit to file a Claim by the Government Bar Date.

**11.6     Claims Paid and Payable by Third Parties.**  A Claim shall be Disallowed without an Objection thereto having to be filed and without any further notice to or action, order, or approval of the Bankruptcy Court, to the extent that the Holder of such Claim receives payment in full on account of such Claim from a party that is not the Debtors, the Litigation Trust, or the Litigation Trustee.  Distributions under the Combined Disclosure Statement and Plan shall be made on account of any Allowed Claim that is payable pursuant to one of the Insurance Contract(s) solely up to the amount of the portion of such Allowed Claim that is (i) within the self-insured retention under such Insurance Contract(s) and/or (ii) in excess of any aggregate limits under such Insurance Contract(s).  No Entity shall have any other recourse against the Debtors, the Estates, the Litigation Trust, or any of their respective properties or assets on account of a self-insured retention under an Insurance Contract; provided, however, that, except as otherwise required under the applicable Insurance Contracts and applicable non-bankruptcy law, an Insurer shall not be obligated to pay amounts within any self-insured retention or other self-insured layer.

**11.7     Adjustment to Claims Without Objection.**  Any Claim that has been paid or otherwise satisfied may be designated on the Claims Register as such at the direction of the Litigation Trustee by the Filing of a notice of satisfaction by the Litigation Trustee, and without any further notice to or action, order, or approval of the Bankruptcy Court.

## ARTICLE XII
## EXECUTORY CONTRACTS

**12.1    Rejection of Executory Contracts.**  On the Effective Date, except as otherwise provided in the Combined Disclosure Statement and Plan, each Executory Contract not previously rejected, assumed, or assumed and assigned (including any Executory Contract assumed and assigned in connection with the Sale) shall be deemed automatically rejected pursuant to sections 365 and 1123 of the Bankruptcy Code, unless such Executory Contract: (i) as of the Effective Date is subject to a pending motion to assume such Executory Contract; (ii) is a contract, release, or other agreement or document entered into in connection with the Combined Disclosure Statement and Plan; (iii) is a D&O Policy or an insurance policy; or (iv) is identified for assumption on the Assumption Schedule included in the Plan Supplement.   For the avoidance of doubt, notwithstanding the rejection of any employment agreement pursuant to the Combined Disclosure Statement and Plan, the Debtors or the Litigation Trustee, as applicable, shall retain the right to enforce the rights and obligations under any rejected employment agreement that survive the termination of such agreement.

**12.2    Claims Based on Rejection of Executory Contracts.**  Unless otherwise provided by an order of the Bankruptcy Court, any Proofs of Claim based on the rejection of the Debtors' Executory Contracts pursuant to the Combined Disclosure Statement and Plan or otherwise must be filed with Bankruptcy Court and served on the Litigation Trustee no later than thirty (30) days after the earlier of (i) notice of entry of an order approving the rejection of such Executory Contract; and (ii) notice of occurrence of the Effective Date. The notice of occurrence of the Effective Date shall include the date by which Proofs of Claim based on the rejection of the Debtors' Executory Contracts must be filed.

Any Claims arising from the rejection of an Executory Contract not filed with the Bankruptcy Court within such time will be forever barred from assertion, and shall not be enforceable against the Debtors, the Litigation Trust, the Debtors' Estates, or the property for any of the foregoing, and any Claim arising out of the rejection of the Executory Contract shall be deemed fully compromised, settled, and released, notwithstanding anything in the Schedules or a Proof of Claim to the contrary.  All Allowed Claims arising from the rejection of the Debtors' Executory Contracts shall be classified as Class 4 General Unsecured Claims.

**12.3    Cure of Defaults for Assumed Executory Contracts.**  Any Cure Obligation due under each Executory Contract to be assumed or assumed and assigned pursuant to the Combined Disclosure Statement and Plan shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by payment in Cash on the Effective Date (or as soon as reasonably practicable thereafter), subject to the limitation described below, by the Debtors or the Litigation Trust, as applicable, or on such other terms as the parties to such Executory Contracts may otherwise agree.

In the event of a dispute regarding (i) the amount of the Cure Obligation, (ii) the ability of the Litigation Trust or any other applicable assignee to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the Executory Contract, or (iii) any other matter pertaining to assumption or assumption and assignment (as applicable), the obligations of section 365 of the Bankruptcy Code shall be deemed satisfied following the entry of a Final Order or orders resolving the dispute and approving the assumption

**523**

or assumption and assignment (as applicable); <u>provided</u>, that the Debtors or the Litigation Trust (as applicable) may settle any dispute regarding the amount of any Cure Obligation without any further notice to any party or any action, order, or approval of the Bankruptcy Court.

Assumption or assumption and assignment of any Executory Contract pursuant to the Combined Disclosure Statement and Plan, or otherwise, shall result in the full release and satisfaction of any defaults, subject to satisfaction of the Cure Obligations, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed Executory Contract at any time before the Effective Date of assumption and/or assignment. Any prepetition default amount set forth in the Schedules and/or any Proofs of Claim filed with respect to an Executory Contract that has been assumed or assumed and assigned shall be deemed Disallowed and expunged, without further notice to or action, order, or approval of the Bankruptcy Court or any other Entity.

**12.4    Modifications, Amendments, Supplements, Restatements, or Other Agreements.** Unless otherwise provided in the Combined Disclosure Statement and Plan, each assumed Executory Contract shall include all modifications, amendments, supplements, restatements, or other agreements that in any manner affect such Executory Contract, and all Executory Contracts related thereto, if any, including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, and any other interests, unless any of the foregoing agreements has been previously rejected or repudiated or is rejected or repudiated under the Plan.

Modifications, amendments, supplements, and restatements to prepetition Executory Contracts that have been executed by the Debtors during the Chapter 11 Cases shall not be deemed to alter the prepetition nature of the Executory Contract, or the validity, priority, or amount of any Claims that may arise in connection therewith.

**12.5    Reservation of Rights.** Neither the exclusion nor inclusion of any contract or lease in the Assumption Schedule or the Sale Order, nor anything contained in the Combined Disclosure Statement and Plan, shall constitute an admission by the Debtors that any such contract or lease is in fact an Executory Contract or that the Debtors' Estates have any liability thereunder. In the event of a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, the Debtors or the Litigation Trustee, as applicable, shall have sixty 60 days following entry of a Final Order resolving such dispute to alter the treatment of such contract or lease as otherwise provided in the Plan.

**12.6    Insurance Neutrality.** Nothing in the Combined Disclosure Statement and Plan or the Confirmation Order, shall in any way operate to, or have the effect of, impairing, altering, supplementing, changing, expanding, decreasing, or modifying (a) the rights or obligations of any insurer, or (b) any rights or obligations of the Debtors or the Litigation Trust arising out of or under any Insurance Contract. The insurers, Debtors, and Litigation Trust, as applicable, shall retain all rights and defenses under such Insurance Contracts, and such Insurance Contracts shall apply to, and be enforceable by and against, the insureds and the Debtors and the Litigation Trust.

## ARTICLE XIII
## CONFIRMATION AND CONSUMMATION OF THE PLAN

**13.1    Conditions Precedent to the Effective Date.**    Each of the following is a condition precedent to the occurrence of the Effective Date:

*(a)*    the Confirmation Order shall have been entered by the Bankruptcy Court and the Confirmation Order shall not be subject to any stay, modification, vacation on appeal, and shall have become a Final Order;

*(b)*    all funding, actions, documents and agreements necessary to implement and consummate the Combined Disclosure Statement and Plan and the transactions and other matters contemplated thereby, shall have been effected or executed, including the funding of the Professional Fee Reserve Account, and the wind-down amount;

*(c)*    the Sale Transaction shall have been consummated in accordance with the relevant acquisition agreement and Sale Order;

*(d)*    the Litigation Trust shall be established and validly existing and the Litigation Trust Agreement shall have been executed;

*(e)*    all professional fees and expenses of the Debtors, the Committee, and the DIP Lenders that, as of the Effective Date, were due and payable under an order of the Bankruptcy Court shall have been paid in full, other than any Professional Fee Claims subject to approval by the Bankruptcy Court;

*(f)*    the Debtors shall have funded the Professional Fee Account;

*(g)*    the Debtors shall have sufficient Cash on hand to pay in full, or reserve for, the projected Allowed Administrative Claims, Allowed Professional Fee Claims, Allowed Priority Tax Claims, Allowed Other Priority Claims, Allowed Other Secured Claims and U.S. Trustee Fees;

*(h)*    no governmental entity or federal or state court of competent jurisdiction shall have enacted, issued, promulgated, enforced or entered any law or order (whether temporary, preliminary or permanent), in any case which is in effect and which prevents or prohibits consummation of the Combined Disclosure Statement and Plan or any of the other transactions contemplated hereby and no governmental entity shall have instituted any action or proceeding (which remains pending at what would otherwise be the Effective Date) seeking to enjoin, restrain or otherwise prohibit consummation of the transactions contemplated by the Combined Disclosure Statement and Plan;

*(i)*    all authorizations, consents, regulatory approvals, rulings or documents that are necessary to implement and effectuate the Combined Disclosure Statement and Plan as of the Effective Date shall have been received, waived or otherwise resolved; and

*(j)*    all documents and agreements necessary to implement the Combined Disclosure Statement and Plan, including those set forth in the Plan Supplement, shall have (i) been

74

**525**

tendered for delivery and (ii) been effected or executed by all Entities party thereto, and all conditions precedent to the effectiveness of such documents and agreements shall have been satisfied or waived pursuant to the terms of such documents or agreements.

**13.2    Notice of Effective Date.**  On or before two (2) Business Days after the Effective Date, the Debtors or Litigation Trustee shall File in the Chapter 11 Cases and mail or cause to be mailed to all Holders of Claims a notice that informs such Entities of (a) the occurrence of the Effective Date, (b) notice of the Administrative Claim Bar Date, Professional Fee Claim Bar Date, and deadline to file rejection damages claims, and (c) such other matters as the Debtors or the Litigation Trustee deems appropriate or as may be ordered by the Bankruptcy Court.

**13.3    Waiver of Conditions Precedent to the Effective Date.**  The Debtors, with the prior written consent of the DIP Lenders and the Prepetition Lenders, may at any time, without notice or authorization of the Bankruptcy Court, waive in writing any or all of the conditions precedent to the Effective Date set forth in this Article, whereupon the Effective Date shall occur without further action by any Entity; provided, however, that the condition specified in section 13.1(a) may not be waived.  The Debtors and the Litigation Trustee reserve the right to assert that any appeal from the Confirmation Order shall be moot after the Effective Date of the Combined Disclosure Statement and Plan.

**13.4    Effect of Non-Occurrence of Effective Date.**  If each of the conditions specified in this Article XIII have not been satisfied or waived in the manner provided herein within sixty (60) calendar days after the Confirmation Date (or such later date as may be agreed to by the Debtors and the Prepetition Agent), then: (i) the Confirmation Order shall be vacated and of no further force or effect; (ii) no Distributions under the Combined Disclosure Statement and Plan shall be made; (iii) the Debtors and all Holders of Claims against or Interests in the Debtors shall be restored to the status quo as of the day immediately preceding the Confirmation Date as though the Confirmation Date had never occurred; and (iv) all of the Debtors' obligations with respect to Claims and Interests shall remain unaffected by the Combined Disclosure Statement and Plan and nothing contained herein shall be deemed to constitute a waiver or release of any Claims by or against the Debtors or any other Entity or to prejudice in any manner the rights of the Debtors or any Entity in any further proceedings involving the Debtors, and the Combined Disclosure Statement and Plan shall be deemed withdrawn.  Upon such occurrence, the Debtors shall File a written notification with the Bankruptcy Court and serve it upon such parties as the Bankruptcy Court may direct.

## ARTICLE XIV
## EFFECTS OF CONFIRMATION

**14.1    Exculpation, Releases, and Injunctions.**

**The exculpations, releases, and injunctions provided for in Section 14.1 of the Combined Disclosure Statement and Plan shall be effective upon the Effective Date.**

*(a)*    __Exculpation and Limitation of Liability.__  **Notwithstanding any other provision of the Combined Disclosure Statement and Plan, the Exculpated Parties shall not have or incur any liability to any Holder of a Claim or an Interest, or any other party in**

interest, or any of their respective agents, employees, representatives, financial advisors, attorneys, or agents acting in such capacity, or Affiliates, or any of their successors or assigns, for any act or omission occurring from the Petition Date through the Effective Date and relating in any way to: (i) the Chapter 11 Cases, (ii) formulating, negotiating or implementing the Combined Disclosure Statement and Plan; (iii) the solicitation of acceptances of the Combined Disclosure Statement and Plan, the pursuit of confirmation of the Combined Disclosure Statement and Plan, the Confirmation of the Combined Disclosure Statement and Plan, the Consummation of the Combined Disclosure Statement and Plan, or (iv) the administration of the Combined Disclosure Statement and Plan or the property to be distributed under the Combined Disclosure Statement and Plan, except for their gross negligence, willful misconduct, fraud or criminal acts as determined by a Final Order, and in all respects shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities under the Combined Disclosure Statement and Plan. This exculpation shall be in addition to, and not in limitation of, all other releases, indemnities, exculpations and any other applicable law or rules protecting the Exculpated Parties from liability.

*(b)*    **Releases by the Debtors**.    Except as otherwise expressly provided in the Combined Disclosure Statement and Plan or the Confirmation Order, on the Effective Date, for good and valuable consideration, each of the Debtors, on their own behalf and as a representative of their respective Estates, shall, and shall be deemed to, conclusively, absolutely, unconditionally, irrevocably, completely and forever release, waive, void, extinguish and discharge unconditionally, each and all of the Released Parties of and from any and all Claims, Causes of Action, obligations, suits, judgments, damages, debts, rights, remedies and liabilities of any nature whatsoever, whether liquidated or unliquidated, fixed or Contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity or otherwise, that are or may be based in whole or part on any act, omission, transaction, event or other circumstance taking place or existing on or prior to the Effective Date (including prior to the Petition Date) in connection with or related to any of the Debtors, their respective Assets, the Estates, the Chapter 11 Cases, the Prepetition Financing Documents, the DIP Loan Documents, the Final DIP Order, any of the Debtors' in- or out-of-court restructuring efforts, the Sale, the purchase, sale, or recission of the purchase or sale of any securities issued by the Debtors, the ownership of any securities issued by the Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Combined Disclosure Statement and Plan, the administration or implementation of the Combined Disclosure Statement and Plan, including the issuance or distribution of the Litigation Trust pursuant to the Combined Disclosure Statement and Plan that may be asserted by or on behalf of any of the Debtors or their respective Estates, against any of the Released Parties; **provided**, **however**, nothing in this section shall operate as a release, waiver or discharge of any causes of action or liabilities unknown to such Entity as of the Petition Date arising out of gross negligence, willful misconduct, fraud, or criminal acts of any such Released Party as determined by a Final Order.  Notwithstanding the foregoing release, the Debtors and their Estates are not releasing Claims or Causes of Action against Anil Mathews, Rahul Agarwal,

**527**

Shobhit Shukla, Justin Joseph, Jeff Merage, Alissa Merage, Uniqequity Pte Ltd., Teemo Holdings Inc., Uniqequity Limited, AudienceQ Limited, Oriental Investment Advisors, Pte. Ltd., Godspeed Investments Pte. Ltd, all defendants in the MobileFuse Litigation, all defendants in connection with the Retained Causes of Action (including, for the avoidance of doubt any Related Parties of the Debtors that are defendants in the MobileFuse Litigation or in connection with Retained Causes of Action), all recipients of payments that are the subject of the MobileFuse Litigation or any Retained Causes of Action, all past or present Company auditors all Company SPAC sponsors, and all Related Parties with respect to each of the foregoing. For the avoidance of doubt, such claims shall be treated as Retained Causes of Action and shall constitute Litigation Trust Assets.

*(c)*    <u>Consensual Third-Party Releases by Holders of Claims</u>.  As of the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, the Releasing Parties shall be deemed to conclusively, absolutely, unconditionally, irrevocably and forever release, waive and discharge the Released Parties of all claims, obligations, suits, judgments, damages, demands, debts, rights, remedies, causes of action and liabilities of any nature whatsoever in connection with or related to any of the Debtors, their respective Assets, the Estates, the Chapter 11 Cases, the Prepetition Financing Documents, the DIP Loan Documents, the Final DIP Order, any of the Debtors' in- or out-of-court restructuring efforts, the Sale, the purchase, sale, or recission of the purchase or sale of any securities issued by the Debtors, the ownership of any securities issued by the Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Combined Disclosure Statement and Plan, the administration or implementation of the Combined Disclosure Statement and Plan, including the issuance or distribution of the Litigation Trust pursuant to the Combined Disclosure Statement and Plan, or the Combined Disclosure Statement and Plan, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or hereafter arising, in law, equity, or otherwise that are or may be based in whole or in part upon any act, omission, transaction, event, or other occurrence taking place or existing on or prior to the Effective Date (other than the rights of Holders of Allowed Claims to enforce the obligations under the Confirmation Order and the Plan); <u>provided</u>, <u>however</u>, that nothing in this section shall be deemed a waiver or release of any right of such Releasing Party to receive a Distribution pursuant to the terms of the Combined Disclosure Statement and Plan or other rights set forth in the Combined Disclosure Statement and Plan or the Confirmation Order; <u>provided further</u>, <u>however</u>, nothing in this section shall operate as a release, waiver or discharge of any causes of action or liabilities unknown to such Entity as of the Petition Date arising out of gross negligence, willful misconduct, fraud, or criminal acts of any such Released Party as determined by a Final Order. For the avoidance of doubt, notwithstanding anything to the contrary in the Combined Disclosure Statement and Plan, the Plan Supplement, the Confirmation Order, and/or the Litigation Trust Agreement, and notwithstanding whether any such individual is named as a defendant in the MobileFuse Litigation or in any Retained Causes of Action, the Released Parties shall include Sherman Edmiston, Mark Greene, Richard Salute, Kathryn Petralia, John Faieta, Gladys Kong, Paul

**528**

Gross, and Scott Slipy.  Notwithstanding the foregoing release, Released Parties shall not include Anil Mathews, Rahul Agarwal, Shobhit Shukla, Justin Joseph, Jeff Merage, Alissa Merage, Uniqequity Pte Ltd., Teemo Holdings Inc., Uniqequity Limited, AudienceQ Limited, Oriental Investment Advisors, Pte. Ltd., Godspeed Investments Pte. Ltd, all defendants in the MobileFuse Litigation, all defendants in connection with the Retained Causes of Action (including, for the avoidance of doubt any Related Parties of the Debtors that are defendants in the MobileFuse Litigation or in connection with Retained Causes of Action), all recipients of payments that are the subject of the MobileFuse Litigation or any Retained Causes of Action, all past or present Company auditors, all Company SPAC sponsors, and all Related Parties with respect to each of the foregoing.

The foregoing release provisions in Section 14.1(c) of the Combined Disclosure Statement and Plan shall not operate to waive, release or otherwise impair the rights of creditors with setoff, subrogation or recoupment rights against the Debtors.

For the avoidance of doubt, unless a Related Party receives notice and is a Releasing Party under the Combined Disclosure Statement and Plan or other than to the extent that a Releasing Party has the power and authority to grant a release on behalf of the Related Party, direct claims of Related Parties against the Released Parties are not released pursuant to Section 14.1(c) of the Plan.

*(d)*     <u>Non-Discharge of the Debtors; Injunction</u>.   In accordance with section 1141(d)(3) of the Bankruptcy Code, the Combined Disclosure Statement and Plan does not discharge the Debtors.  Section 1141(c) of the Bankruptcy Code nevertheless provides, among other things, that the property dealt with by the Combined Disclosure Statement and Plan is free and clear of all Claims and Interests against the Debtors.  As such, no Entity holding a Claim against the Debtors may receive any payment from, or seek recourse against, any assets that are to be distributed under the Combined Disclosure Statement and Plan other than assets required to be distributed to that Entity under the Combined Disclosure Statement and Plan.  All parties are precluded from asserting against any property to be distributed under the Combined Disclosure Statement and Plan any Claims, rights, Causes of Action, liabilities, or Interests based upon any act, omission, transaction, or other activity that occurred before the Effective Date except as expressly provided in the Combined Disclosure Statement and Plan or the Confirmation Order.

Except as otherwise expressly provided for in the Combined Disclosure Statement and Plan or in obligations issued pursuant to the Combined Disclosure Statement and Plan, all Entities are permanently enjoined, on and after the Effective Date, on account of any Claim or Interest, from:

> (1)     commencing or continuing in any manner any action or other proceeding of any kind against any of the Estates, the Litigation Trust, their successors and assigns, and any of their assets and properties;

(2)     enforcing, attaching, collecting or recovering by any manner or means any judgment, award, decree or order against any Estate, the Litigation Trust, their successors and assigns, and any of their assets and properties;

(3)     creating, perfecting or enforcing any encumbrance of any kind against any Estate, the Litigation Trust, their successors and assigns, and any of their assets and properties;

(4)     asserting any right of setoff or subrogation of any kind against any obligation due from any Estate, the Litigation Trust or their successors and assigns, or against any of their assets and properties, except to the extent a right to setoff or subrogation is asserted with respect to a timely filed Proof of Claim; or

(5)     commencing or continuing in any manner any action or other proceeding of any kind in respect of any Claim or Interest or Cause of Action released under Article XIV of the Plan.

Any Entity injured by any willful violation of such injunction may seek actual damages and, in appropriate circumstances, may seek punitive damages from the willful violator.

**14.2     Term of Bankruptcy Injunction or Stays.**  All injunctions or stays provided for in the Chapter 11 Cases under sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the closing of the Chapter 11 Cases.

### ARTICLE XV
### RETENTION OF JURISDICTION

**15.1     Exclusive Jurisdiction of Bankruptcy Court.**  Pursuant to sections 105(a) and 1142 of the Bankruptcy Code, and notwithstanding entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of, and related to, the Chapter 11 Cases and the Combined Disclosure Statement and Plan to the fullest extent permitted by law, including, among other things, jurisdiction to:

*(a)*     allow, disallow, determine, subordinate, liquidate, classify, estimate or establish the priority or secured or unsecured status of any Claim or Interest (whether filed before or after the Effective Date and whether or not Contingent, Disputed or unliquidated or for contribution, indemnification or reimbursement), including the compromise, settlement and resolution of any request for payment of any Claims or Interests, the resolution of any Objections to the allowance or priority of Claims or Interests and to hear and determine any other issue presented hereby or arising hereunder, including during the pendency of any appeal relating to any Objection to such Claim or Interest to the extent permitted under applicable law;

*(b)* grant or deny any applications for allowance of compensation or reimbursement of expenses authorized pursuant to the Bankruptcy Code or the Combined Disclosure Statement and Plan, for periods ending on or before the Effective Date;

*(c)* hear and determine any and all adversary proceedings, motions, applications, and contested or litigated matters, including, but not limited to, all Causes of Action, and consider and act upon the compromise and settlement of any Claim or Interest, or Cause of Action;

*(d)* determine and resolve any matters related to the assumption, assumption and assignment or rejection of any Executory Contract to which the Debtors are a party or with respect to which the Debtors may be liable, and to hear, determine and, if necessary, liquidate any Claims arising there from;

*(e)* ensure that all Distributions to Holders of Allowed Claims under the Combined Disclosure Statement and Plan and the performance of the provisions of the Combined Disclosure Statement and Plan are accomplished as provided herein and resolve any issues relating to Distributions to Holders of Allowed Claims pursuant to the provisions of the Combined Disclosure Statement and Plan;

*(f)* construe, take any action and issue such orders, prior to and following the Confirmation Date and consistent with section 1142 of the Bankruptcy Code, as may be necessary for the enforcement, implementation, execution and Consummation of the Combined Disclosure Statement and Plan and all contracts, instruments, releases, other agreements or documents created in connection with the Combined Disclosure Statement and Plan, including, without limitation, the Plan Supplement and the Confirmation Order, for the maintenance of the integrity of the Combined Disclosure Statement and Plan in accordance with sections 524 and 1141 of the Bankruptcy Code following the occurrence of the Effective Date;

*(g)* determine and resolve any cases, controversies, suits or disputes that may arise in connection with the Consummation, interpretation, implementation or enforcement of the Combined Disclosure Statement and Plan (and all exhibits and schedules to the Plan) or the Confirmation Order, including the releases and injunction provisions set forth in and contemplated by the Combined Disclosure Statement and Plan or the Confirmation Order, or any entity's rights arising under or obligations incurred in connection therewith;

*(h)* modify the Combined Disclosure Statement and Plan or the Confirmation Order before or after the Effective Date, pursuant to section 1127 of the Bankruptcy Code, as well as any contract, instrument, release, or other agreement or document created in connection with the Combined Disclosure Statement and Plan, or the Confirmation Order, or remedy any defect or omission or reconcile any inconsistency in any Bankruptcy Court order, the Combined Disclosure Statement and Plan, the Confirmation Order, or any contract, instrument, release, or other agreement or document created in connection with the Combined Disclosure Statement and Plan or the Confirmation Order, in such manner as may be necessary or appropriate to consummate the Combined Disclosure Statement and

Plan, to the extent authorized by the Bankruptcy Code and the Combined Disclosure Statement and Plan;

*(i)* issue injunctions, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any entity with Consummation, implementation or enforcement of the Combined Disclosure Statement and Plan or the Confirmation Order;

*(j)* enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked or vacated;

*(k)* determine any other matters that may arise in connection with or relating to the Combined Disclosure Statement and Plan, the Confirmation Order or any contract, instrument, release, or other agreement or document created in connection with the combined Disclosure Statement and Plan or the Confirmation Order;

*(l)* determine such other matters and for such other purposes as may be provided in the Confirmation Order;

*(m)* hear and determine matters concerning state, local and federal taxes in accordance with sections 346, 505 and 1146 of the Bankruptcy Code;

*(n)* enforce all orders, judgments, injunctions, releases, exculpations, indemnifications and rulings entered in connection with the Chapter 11 Cases;

*(o)* determine and resolve controversies related to the Estates, the Debtors, or the Litigation Trust from and after the Effective Date;

*(p)* hear and determine any other matter relating to the Combined Disclosure Statement and Plan; and

*(q)* enter a final decree closing any or all the Chapter 11 Cases.

provided, however, that if the Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction or otherwise lacks jurisdiction over any matter arising in, arising under, or related to the Chapter 11 Cases, including the matters set forth in Article XV of the Combined Disclosure Statement and Plan, the provisions of Article XV of the Combined Disclosure Statement and Plan shall have no effect on and shall not control, limit, or prohibit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such matter.

**ARTICLE  XVI**
**MISCELLANEOUS PROVISIONS**

**16.1    Modification of the Combined Disclosure Statement and Plan.**  The Debtors may alter, amend, or modify the Combined Disclosure Statement and Plan or any exhibits or schedules hereto under section 1127(a) of the Bankruptcy Code at any time prior to or after the Confirmation Date but prior to the substantial Consummation of the Combined Disclosure Statement and Plan; provided, however, that any such alteration, amendment or modification does not materially and

adversely affect the treatment of Holders of Claims or Interests under the Combined Disclosure Statement and Plan.  Any Holder of a Claim that has accepted the Combined Disclosure Statement and Plan shall be deemed to have accepted the Combined Disclosure Statement and Plan, as altered, amended, or modified, if the proposed alteration, amendment, or modification does not materially and adversely change the treatment of the Claim of such Holder.

**16.2    Revocation, Withdrawal, or Non-Confirmation of the Combined Disclosure Statement and Plan.**  The Debtors reserve the right to revoke or withdraw the Combined Disclosure Statement and Plan prior to the Confirmation Hearing.  If the Plan is revoked or withdrawn prior to the Confirmation Hearing, or if the Combined Disclosure Statement and Plan is not confirmed by the Bankruptcy Court, then:

    *(a)*    the Combined Disclosure Statement and Plan shall be null and void in all respects, and

    *(b)*    nothing contained in the Combined Disclosure Statement and Plan shall (i) constitute a waiver or release of any Claims by or against, or any Interests in, the Debtors or any other Entity, (ii) prejudice in any manner the rights of the Debtors or any other Entity, or (iii) constitute an admission of any sort by the Debtors or any other Entity.

**16.3    Binding Effect.**  Except as otherwise provided in section 1141(d)(3) of the Bankruptcy Code and subject to the occurrence of the Effective Date, on and after the Confirmation Date, the provisions of the Combined Disclosure Statement and Plan shall bind any Holder of a Claim against, or Interest in, the Debtors and such Holder's respective successors and assigns, whether or not the Claim or Interest of such Holder is Impaired under the Combined Disclosure Statement and Plan and whether or not such Holder has accepted the Combined Disclosure Statement and Plan.

Pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the classification, distributions, releases, and other benefits provided under the Plan, the Plan Settlement is hereby settled and resolved.  The Plan shall be deemed a motion to approve the Plan Settlement and good faith compromise and settlement of the Committee Challenge Rights pursuant to Bankruptcy Rule 9019, and entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the Plan Settlement under section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, as well as a finding by the Bankruptcy Court that the Plan Settlement is fair, equitable, reasonable, and in the best interests of the Debtors, the Estates, and all parties in interest.

**16.4    SEC Matters.**  Notwithstanding any language to the contrary in the Combined Disclosure Statement and Plan and/or Confirmation Order, no provision shall (i) preclude the United States Securities and Exchange Commission ("SEC") from enforcing its police or regulatory powers; or (ii) enjoin, limit, impair or delay the SEC from commencing or continuing any claims, causes of action, proceeding or investigations against any non-debtor person or non-debtor entity in any forum.

**16.5    Subordination Rights.**  The classification and manner of satisfying all Claims and the respective Distributions and treatments hereunder take into account and/or conform to the relative

priority and rights of the Claims in each Class in connection with the contractual, legal and equitable subordination rights relating thereto, whether arising under contract, general principles of equitable subordination, section 510(b) of the Bankruptcy Code or otherwise. All subordination rights that a Holder of a Claim may have with respect to any Distribution to be made under the Combined Disclosure Statement and Plan shall be implemented through the Combined Disclosure Statement and Plan, and all actions by such Holder of a Claim related to the enforcement of such subordination rights shall be enjoined permanently. Subject to Section 9.12 hereof, the provisions of any contractual or structural subordination of Claims shall remain enforceable by the Litigation Trustee on behalf of the Estates after the occurrence of the Effective Date. Without limitation hereunder, the Litigation Trustee, on behalf of the Estates, may likewise enforce any right of the Debtors or the Estates to equitably or otherwise subordinate Claims under section 510 of the Bankruptcy Code, which rights are deemed transferred to, remain and are preserved in the Litigation Trust, except as otherwise expressly set forth herein or as expressly provided in a Final Order of the Bankruptcy Court in the Chapter 11 Cases.

**16.6     Severability of Combined Disclosure Statement and Plan Provisions.** If, prior to Confirmation, any term or provision of the Combined Disclosure Statement and Plan is held by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court, at the request of the Debtors, shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of the Combined Disclosure Statement and Plan shall remain in full force and effect and shall in no way be affected, impaired or invalidated by such holding, alteration or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Combined Disclosure Statement and Plan, as it may be altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

**16.7     Payment of Statutory Fees; Filing of Quarterly Reports.** All fees due and payable pursuant to section 1930 of Title 28 of the U.S. Code, together with the statutory rate of interest set forth in section 3717 of Title 31 of the U.S. Code to the extent applicable ("Quarterly Fees") prior to the Effective Date shall be paid by the Debtors on the Effective Date. After the Effective Date, the Debtors' wind-down estates and the Litigation Trust shall be jointly and severally liable to pay any and all Quarterly Fees when due and payable. The Debtors shall file all monthly operating reports due prior to the Effective Date when they become due, using UST Form 11-MOR. After the Effective Date, the Debtors' wind-down estates and Litigation Trust shall file with the Bankruptcy Court separate UST Form 11-PCR reports when they become due. Notwithstanding anything called for in the Combined Disclosure Statement and Plan to the contrary, each and every one of the Debtors and the Litigation Trust, as applicable, shall remain obligated to pay Quarterly Fees to the Office of the U.S. Trustee and make such reports until the earliest of any such Debtor case being closed, dismissed, or converted to a case under Chapter 7 of the Bankruptcy Code. The U.S. Trustee shall not be required to file any Administrative Claim in the case and shall not be treated as providing any release under the Plan.

**16.8     Dissolution of the Committee.** The Committee shall dissolve on the Effective Date and the members of such Committee shall be released and discharged from all further rights and duties

arising from or related to the Chapter 11 Cases, except with respect to, and to the extent of any applications for Professional Fee Claims or expense reimbursements for members of such Committee.  The Committee and its retained Professionals may also participate in any appeal pending as of the Effective Date or filed thereafter, the outcome of which could affect the treatment of prepetition creditors (including Holders of Allowed Priority Claims and 503(b)(9) Claims), including, but not limited to, any cases, controversies, suits or disputes arising in connection with the Consummation, interpretation, implementation or enforcement of the Combined Disclosure Statement and Plan or the Confirmation Order.  The Professionals retained by the Committee shall not be entitled to assert any Administrative Claims nor shall they have an Allowed Administrative Claims for any services rendered or expenses incurred after the Effective Date except in respect of the preparation and prosecution of or any objection to any Filed fee application and participation in any appeals.

**16.9    Exemption from Section 1146.**  Pursuant to section 1146(a) of the Bankruptcy Code, under the Combined Disclosure Statement and Plan, (i) the issuance, distribution, transfer or exchange of any debt, equity security or other interest in the Debtors; or (ii) the making, delivery or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Combined Disclosure Statement and Plan, including any deeds, bills of sale, assignments or other instrument of transfer executed in connection with any transaction arising out of, contemplated by, or in any way related to the Combined Disclosure Statement and Plan, shall not be taxed under any law imposing a stamp tax or similar tax.  To the extent that the Debtors or Litigation Trustee elect to sell any property prior to or after the Confirmation Date, such sales of property will be exempt from any transfer taxes in accordance with section 1146(c) of the Bankruptcy Code.  All subsequent issuances, transfers or exchanges of securities, or the subsequent making or delivery of any instrument of transfer by the Debtors in the Chapter 11 Cases shall be deemed to be or have been done in furtherance of the Combined Disclosure Statement and Plan.

**16.10   Filing of Additional Documents.**  On or before the Effective Date, the Debtors may issue, execute, deliver, and File with the Bankruptcy Court or record any agreements and other documents, and take any action as may be necessary or appropriate to effectuate, consummate and further evidence the terms and conditions of the Plan.

**16.11   Insurance.**  Confirmation of the Combined Disclosure Statement and Plan and the occurrence of the Effective Date shall have no effect on insurance policies of the Debtors in which the Debtors are or were insured parties.  Each insurance company is prohibited from, and the Confirmation Order shall include an injunction against, denying, refusing, altering, or delaying coverage on any basis regarding or related to the Chapter 11 Cases, the Combined Disclosure Statement and Plan or any provision within the Combined Disclosure Statement and Plan, including the treatment or means of liquidation set out within the Combined Disclosure Statement and Plan for insured Claims.

**16.12   Successors and Assigns.**  The rights, benefits and obligations of any Entity named or referred to in the Combined Disclosure Statement and Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor, or assign of such Entity.

**535**

**16.13   Governing Law.**  Except to the extent that the Bankruptcy Code or Bankruptcy Rules or other federal laws is applicable, and subject to the provisions of any contract, instrument, release, or other agreement or document entered into in connection with the Combined Disclosure Statement and Plan, the construction, implementation and enforcement of the Combined Disclosure Statement and Plan and all rights and obligations arising under the Combined Disclosure Statement and Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of Delaware, without giving effect to conflicts of law principles which would apply the law of a jurisdiction other than the State of Delaware or the United States of America.

**16.14   Exhibits and Schedules.**  All exhibits and schedules annexed hereto, and all documents submitted in support hereof, are incorporated into and are a part of the Combined Disclosure Statement and Plan as if set forth in full herein.  Holders of Claims and Interests may obtain copies of the Filed exhibits and schedules upon written request to the Debtors.  Upon their Filing, the exhibits and schedules may be inspected in the Office of the Clerk of the Bankruptcy Court or its designee during normal business hours.  The documents contained in the exhibits and schedules shall be approved by the Bankruptcy Court pursuant to the Confirmation Order.  To the extent any exhibit or schedule annexed hereto is inconsistent with the Combined Disclosure Statement and Plan, the contents of the Combined Disclosure Statement and Plan shall control.

**16.15   Computation of Time.**  In computing any period of time prescribed or allowed by the Combined Disclosure Statement and Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

**16.16   Reservation of Rights.**  The Filing of the Combined Disclosure Statement and Plan, any statement or provision contained in the Combined Disclosure Statement and Plan, or the taking of any action by the Debtors with respect to the Combined Disclosure Statement and Plan shall not be, and shall not be deemed to be, an admission or waiver of any rights of the Debtors with respect to the Holders of Claims and Interests.


Dated: March 13, 2024

By:     _/s/ John Faieta_
Name:  John Faieta
Title:   Chief Financial Officer

## **EXHIBIT A**

**Liquidation Analysis**

[Filed at D.I. 245, **Exhibit A**]

**<u>Exhibit B</u>**

**Notice of Confirmation and Effective Date**

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re:<br><br>NEAR INTELLIGENCE, INC., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 22-11292 (JKS)<br><br>(Jointly Administered)<br><br>**Re: D.I. [●]**<br><br>**Administrative Claims Bar Date**:<br>**[●], 2024 at 5:00 p.m. (ET)**<br><br>**Professional Fee Claims Bar Date**:<br>**[●], 2024**<br><br>**Rejection Damages Bar Date**:<br>**[●], 2024** |

## NOTICE OF (I) EFFECTIVE DATE OF THIRD AMENDED COMBINED DISCLOSURE STATEMENT AND CHAPTER 11 PLAN OF LIQUIDATION OF NEAR INTELLIGENCE, INC. AND ITS AFFILIATED DEBTORS PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE AND (II) CERTAIN CLAIMS BAR DATES

**PLEASE TAKE NOTICE THAT:**

**Entry of Confirmation Order**. On [●], 2024, the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") entered the *Findings of Fact, Conclusions of Law, and Order Approving Adequacy of Disclosures on a Final Basis and Confirming the Third Amended Combined Disclosure Statement and Chapter 11 Plan of Liquidation of Near Intelligence, Inc. and Its Affiliated Debtors Pursuant to Chapter 11 of the Bankruptcy Code* [D.I. [●]] (the "Confirmation Order"), pursuant to which the Bankruptcy Court approved and confirmed the *Third Amended Combined Disclosure Statement and Chapter 11 Plan of Liquidation of Near*

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of their federal tax identification numbers, to the extent applicable, are Near Intelligence, Inc. (7857), Near Intelligence LLC (7857), Near North America, Inc. (9078), and Near Intelligence Pte. Ltd. The Debtors' headquarters is located at 100 W Walnut St., Suite A-4, Pasadena, CA 91124.

*Intelligence, Inc. and Its Affiliated Debtors*, dated February 27, 2024 [D.I. 304] (the "<u>Combined Disclosure Statement and Plan</u>").[2]

**Effective Date**.   The Effective Date, as defined in the Combined Disclosure Statement and Plan, occurred on **[●], 2024**.

**Administrative Claims Bar Date.** Holders of Administrative Claims, other than: (i) Professional Fee Claims, (ii) an Administrative Claim that has been Allowed (including pursuant to the Final DIP Order) on or before the Effective Date, (iii) a 503(b)(9) Claim; (iv) any Claim, to the extent not previously paid, for the reasonable and documented out-of-pocket fees, expenses, costs and other charges incurred by the DIP Lenders or Prepetition Lenders, the Debtors' payment of which is provided for in the Final DIP Order and this Combined Disclosure Statement and Plan, which Claim shall be Allowed on the Effective Date; (v) an Administrative Claim for an expense or liability incurred prior to the Effective Date in the ordinary course of business; (vi) an Administrative Claim on account of fees and expenses incurred on or after the Petition Date but before the Effective Date by ordinary course professionals retained by the Debtors pursuant to an order of the Bankruptcy Court; (vii) an Administrative Claim arising, in the ordinary course of business, out of the employment by one or more Debtors of an individual from and after the Petition Date but before the Effective Date, but only to the extent that such Administrative Claim is solely for outstanding wages, commissions, accrued benefits, or reimbursement of business expenses; (viii) U.S. Trustee Fees; or (ix) an Intercompany Claim, shall file with the Bankruptcy Court and serve on the Debtors, the Litigation Trustee, the Claims Agent and the U.S. Trustee requests for payment, in writing, together with supporting documents, substantially complying with the Bankruptcy Code, the Bankruptcy Rules and the Local Rules, so as to actually be received on or before **5:00 p.m. (EST) on [●], 2024**.

As defined in the Combined Disclosure Statement and Plan, an "<u>Administrative Claim</u>" is any Claim for costs and expenses of administration of the Chapter 11 Cases allowed under sections 503(b), 507(a)(2), 507(b) or, if applicable, 1114(e)(2) of the Bankruptcy Code, including but not limited to: (a) any actual and necessary costs and expenses incurred after the Petition Date of preserving the Estates and operating the businesses of the Debtors (including, but not limited to, wages, salaries, commissions for services and payments for inventories, leased equipment and premises) and Claims by Governmental Units for taxes (including Claims related to taxes which accrued after the Petition Date, but excluding Claims related to taxes which accrued on or before the Petition Date); (b) Professional Fee Claims; (c) U.S. Trustee Fees; (d) any 503(b)(9) Claims; (e) Prepetition Loan Adequate Protection Claims; and (f) any Claims that have been designated "Administrative Claims" by Final Order of the Bankruptcy Court (including the Final DIP Order). **FAILURE TO FILE AND SERVE SUCH PROOF OF ADMINISTRATIVE CLAIM TIMELY AND PROPERLY SHALL RESULT IN THE ADMINISTRATIVE CLAIM BEING FOREVER BARRED AND RELEASED.**

**Professional Fee Claims Bar Date.** All requests for compensation or payment of Professional Fee Claims incurred through and including the Effective Date must be filed with the

---

[2]   Capitalized terms used but not defined herein are defined in the Combined Disclosure Statement and Plan or Confirmation Order, as applicable.

Bankruptcy Court and served in accordance with the procedures prescribed by the Combined Disclosure Statement and Plan, the Confirmation Order, the Bankruptcy Rules, and other rules and orders of the Bankruptcy Court on or before **[●], 2024**.  As defined by the Combined Disclosure Statement and Plan, a "Professional Fee Claim" is a Claim for all fees and expenses (including but not limited to, transaction fees and success fees) for services rendered by Professionals in connection with the Chapter 11 Cases from the Petition Date through and including the Effective Date. Objections to such Fee Claims, if any, must be filed and served no later than twenty (20) calendar days after the filing of such fee application or such other date as established by the Bankruptcy Court.

**Procedures Relating to Assumption and Rejection of Executory Contracts.**  Pursuant to Section 12 of the Combined Disclosure Statement and Plan, each Executory Contract not previously rejected, assumed, or assumed and assigned (including any Executory Contract assumed and assigned in connection with a Sale) shall be deemed automatically rejected pursuant to sections 365 and 1123 of the Bankruptcy Code, unless such Executory Contract: (i) as of the Effective Date is subject to a pending motion to assume such Executory Contract; (ii) is a contract, release, or other agreement or document entered into in connection with the Combined Disclosure Statement and Plan; (iii) is a D&O Policy or an insurance policy; or (iv) is identified for assumption on the Assumption Schedule included in the Plan Supplement.

**Rejection Damages Claim Bar Date.**  Unless otherwise provided by an order of the Bankruptcy Court, any Proofs of Claim based on the rejection of the Debtors' Executory Contracts pursuant to the Combined Disclosure Statement and Plan or otherwise, must be filed with Bankruptcy Court and served on the Litigation Trustee no later than thirty (30) days after the earlier of (i) notice of entry of an order approving the rejection of such Executory Contract and (ii) the occurrence of the Effective Date. **Any Claims arising from the rejection of an Executory Contract not filed with the Bankruptcy Court within such time will be forever barred from assertion, and shall not be enforceable against the Debtors, the Litigation Trust, the Debtors' Estates, or the property for any of the foregoing, and any Claim arising out of the rejection of the Executory Contract shall be deemed fully compromised, settled, and released, notwithstanding anything in the Schedules or a Proof of Claim to the contrary.** All Allowed Claims arising from the rejection of the Debtors' Executory Contracts shall be classified as Class 4 General Unsecured Claims, except as otherwise provided by order of the Bankruptcy Court.

**Class 4 General Unsecured Claims Election Option**.  The Combined Disclosure Statement and Plan provides that Holders of Allowed Class 4 General Unsecured Claims may elect to receive their Pro Rata Share of the Litigation Trust Proceeds on account of their Allowed Claims.  If no such election is made, each  Holder will receive, in full and final satisfaction of such Holder's Allowed General Unsecured Claim, such Holder's Pro Rata Share of the GUC Cash Pool. Within five (5) business days after a Class 4 General Unsecured Claim becomes an Allowed Claim under the Combined Disclosure Statement and Plan, the Debtors will serve a notice on each Holder of an Allowed Class 4 Claim with respect to such election option.  Each Holder of an Allowed Class 4 General Unsecured Claim must make the election within thirty (30) days of such notice, which election may be made either via submission of an election form via U.S. Mail or by online submission through the Debtors' claims agent's website.

**541**

**Copies of Plan Related Documents.** Copies of the Confirmation Order and the Combined Disclosure Statement and Plan, together with all pleadings and orders of the Bankruptcy Court in the above-captioned Chapter 11 Cases, are publicly available by accessing the Bankruptcy Court's website, http://www.deb.uscourts.gov, for a nominal charge (a PACER account is required), or by accessing Kroll's website, https://cases.ra.kroll.com/near/Home-DocketInfo, free of charge.

**Binding Effect of Combined Disclosure Statement and Plan and Confirmation Order.** The provisions of the Combined Disclosure Statement and Plan and the Confirmation Order shall be binding and inure to the benefit of the Debtors, the Litigation Trustee, the Released Parties, all present and former holders of Claims and Interests, and their respective successors and assigns. Except as expressly provided in the Combined Disclosure Statement and Plan, all agreements, instruments and other documents filed in connection with the Combined Disclosure Statement and Plan shall be given full force and effect, and shall bind all parties referred to therein as of the Effective Date, whether or not such agreements are actually issued, delivered, or recorded on the Effective Date or thereafter and whether or not a party has actually executed such agreement. Effective as of and subject to the occurrence of the Effective Date and subject to the terms of the Combined Disclosure Statement and Plan and the Confirmation Order, all prior orders entered in the Chapter 11 Cases, all documents and agreements executed by the Debtors as authorized and directed thereunder and all motions or requests for relief by the Debtors pending before the Court as of the Effective Date that ultimately are granted shall be binding upon and shall inure to the benefit of the Debtors, the Litigation Trustee, and their respective successors and assigns.

Dated: March [•], 2024
Wilmington, Delaware

**YOUNG CONAWAY STARGATT & TAYLOR, LLP**

*/s/ DRAFT*
Edmon L. Morton (No. 3856)
Matthew B. Lunn (No. 4119)
Shane M. Reil (No. 6195)
Carol E. Cox (No. 6936)
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253
emorton@ycst.com
mlunn@ycst.com
sreil@ycst.com
ccox@ycst.com

-and-

**WILLKIE FARR & GALLAGHER LLP**
Rachel C. Strickland (admitted *pro hac vice*)
Andrew S. Mordkoff (admitted *pro hac vice*)
Joseph R. Brandt (admitted *pro hac vice*)
787 Seventh Avenue
New York, New York 10019
Telephone:  (212) 728-8000
Facsimile:  (212) 728-8111
rstrickland@willkie.com
amordkoff@willkie.com
jbrandt@willkie.com

*Co-Counsel to the Debtors and Debtors in Possession*

**543**

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| NEAR INTELLIGENCE, INC., *et al.*,[1] | Case No. 23-11962 (TMH) |
| Debtors. | (Jointly Administered) |
| | **Ref. Docket No. 243 & 304** |

## NOTICE OF FILING OF PLAN SUPPLEMENT
## TO THIRD AMENDED COMBINED DISCLOSURE
## STATEMENT AND CHAPTER 11 PLAN OF LIQUIDATION
## OF NEAR INTELLIGENCE, INC. AND ITS AFFILIATED DEBTORS

**PLEASE TAKE NOTICE** that on February 5, 2024, the Court entered the *[Amended] Order (I) Approving the Combined Disclosure Statement and Plan on an Interim Basis for Solicitation Purposes Only; (II) Establishing Solicitation and Tabulation Procedures; (III) Approving the Forms of Ballots and Solicitation Materials; (IV) Establishing the Voting Record Date; (V) Fixing the Date, Time, and Place for the Combined Hearing and the Deadline for Filing Objections Thereto; and (VI) Granting Related Relief* [D.I. 243] (the "Solicitation Procedures Order").

**PLEASE TAKE FURTHER NOTICE** that on February 5, 2024, the Debtors filed the solicitation version of the *First Amended Combined Disclosure Statement and Chapter 11 Plan of Liquidation of Near Intelligence, Inc. and Its Affiliated Debtors* (as may be amended, modified or supplemented from time to time, the "Combined Disclosure Statement and Plan").[2]

**PLEASE TAKE FURTHER NOTICE** that on February 21, 2024, the Debtors filed the *Notice of Filing of (I) Second Amended Combined Disclosure Statement and Chapter 11 Plan of Liquidation of Near Intelligence, Inc. and Its Affiliated Debtors and (II) Blackline Thereof* [D.I. 288]. On February 27, 2024, the Debtors filed the *Notice of Filing of (I) Third Amended Combined Disclosure Statement and Chapter 11 Plan of Liquidation of Near Intelligence, Inc. and Its Affiliated Debtors and (II) Blackline Thereof* [D.I. 304].

**PLEASE TAKE FURTHER NOTICE** that the Combined Disclosure Statement and Plan contemplates the submission of certain documents (or forms of summaries thereof), to the extent known (the "Plan Supplement") in advance of the Confirmation Hearing.

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of their federal tax identification numbers, to the extent applicable, are Near Intelligence, Inc. (7857), Near Intelligence LLC (7857), Near North America, Inc. (9078), and Near Intelligence Pte. Ltd. The Debtors' headquarters is located at 100 W Walnut St., Suite A-4, Pasadena, CA 91124.

[2]     Capitalized terms used but not defined herein are defined in the Combined Disclosure Statement and Plan.

\

**544**

PLEASE TAKE FURTHER NOTICE that, in accordance with the Solicitation Procedures Order, the Debtors hereby file the following Plan Supplement documents:

| Exhibit | Document |
|---------|----------|
| A | Summary of Material Terms of the Litigation Trust Agreement |
| B | Identification of Litigation Trustee |
| C | Identification of Members of the Litigation Trust Board |
| D | Assumption Schedule |
| E | Retained Causes of Action |

PLEASE TAKE FURTHER NOTICE that the documents contained in this Plan Supplement are integral to, and considered part of, the Combined Disclosure Statement and Plan. If the Combined Disclosure Statement and Plan is confirmed, the documents contained in the Plan Supplement will be approved by the Bankruptcy Court pursuant to the order confirming the Combined Disclosure Statement and Plan.

PLEASE TAKE FURTHER NOTICE that the documents contained in the Plan Supplement are not final and remain subject to continuing negotiations among the Debtors and other interested parties. Accordingly, the Debtors reserve the right to alter, amend, modify, or supplement any document of, or add any document to, the Plan Supplement subject to the terms and conditions of the Combined Disclosure Statement and Plan.

PLEASE TAKE FURTHER NOTICE that the deadline to file objections to confirmation of the Combined Disclosure Statement and Plan and final approval of the adequacy of the disclosures therein is **March 5, 2024 at 4:00 p.m. (ET)**. Any objections must (a) be in writing, (b) comply with the Bankruptcy Rules, and (c) be filed with the Court and served upon the notice parties identified in the Solicitation Procedures Order.

PLEASE TAKE FURTHER NOTICE that the deadline to file objections to the assumption of, or proposed cure amounts for, the Executory Contracts identified on Exhibit D hereto, is **March 12, 2024**. Any objections must (a) be in writing, (b) comply with the Bankruptcy Rules and the Local Rules, (c) state with specificity the nature of the objection and, if the objection pertains to the proposed cure amounts, the correct cure amount alleged to be owed together with any applicable and appropriate documentation in support thereof, and (d) be filed with the Court and served upon the notice parties identified in the Solicitation Procedures Order. If no objection to the assumption of, or proposed cure amounts for, the Executory Contracts is filed by the objection deadline, then (i) the contract counterparty will be deemed to have stipulated that the cure amounts as determined by the Debtors is correct, (ii) the contract counterparty will be forever barred, estopped, and enjoined from asserting any additional cure amount under the contract, and (iii) the contract counterparty will be forever barred, estopped, and enjoined from objecting to such proposed assignment to the Litigation Trust.

PLEASE TAKE FURTHER NOTICE that copies of the Plan Supplement, the Combined Disclosure Statement and Plan, the Solicitation Procedures Order, and all other documents filed in the Chapter 11 Cases may be obtained and reviewed without charge at https://cases.ra.kroll.com/near/, or upon request to Kroll Restructuring Administration LLC

**545**

("Kroll" or the "Voting Agent"), by (i) telephone at (844) 344-0799 (U.S./Canada, toll free) or +1 (646) 651-1196 (international, toll), or (ii) email at NearInfo@ra.kroll.com (with "Near Intelligence Inc. Solicitation Inquiry" in the subject line).

**PLEASE TAKE FURTHER NOTICE** that the Confirmation Hearing on confirmation of the Combined Disclosure Statement and Plan and adequacy of the disclosures therein has been scheduled for **March 12, 2024 at 1:00 p.m. (ET)** before The Honorable J. Thomas M. Horan, United States Bankruptcy Judge, at the United States Bankruptcy Court for the District of Delaware, 5th Floor, Courtroom #5, 824 North Market Street, Wilmington, Delaware 19801. The Confirmation Hearing may be further continued from time to time without further notice other than the announcement of the adjourned date(s) by the Debtors in open court or by notice on the docket.

*[Remainder of page intentionally left blank.]*

**546**

Dated: February 27, 2024
　　　　Wilmington, Delaware

**YOUNG CONAWAY STARGATT & TAYLOR, LLP**

*/s/ Carol E. Cox*
Edmon L. Morton (No. 3856)
Matthew B. Lunn (No. 4119)
Shane M. Reil (No. 6195)
Carol E. Cox (No. 6936)
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253
emorton@ycst.com
mlunn@ycst.com
sreil@ycst.com
ccox@ycst.com

-and-

**WILLKIE FARR & GALLAGHER LLP**
Rachel C. Strickland (admitted *pro hac vice*)
Andrew S. Mordkoff (admitted *pro hac vice*)
Joseph R. Brandt (admitted *pro hac vice*)
787 Seventh Avenue
New York, New York 10019
Telephone:  (212) 728-8000
Facsimile:  (212) 728-8111
rstrickland@willkie.com
amordkoff@willkie.com
jbrandt@willkie.com

*Co-Counsel to the Debtors and Debtors in Possession*

**547**

**Exhibit A**

**Summary of Material Terms of the Litigation Trust Agreement**

**548**

Material Terms of the Litigation Trust Agreement[1]

| | |
|---|---|
| **Purpose of the Litigation Trust** | The Litigation Trust shall be established for the purpose of: pursuing or liquidating the Litigation Trust Assets; reconciling and objecting to Claims, as provided for in the Combined Disclosure Statement and Plan; and making Distributions to the Litigation Trust Beneficiaries in accordance with Treasury Regulation section 301.7701-4(d), with no objective to continue or engage in the conduct of a trade or business. |
| **Litigation Trust Assets** | The assets of the Litigation Trust shall consist of the following: (i) all remaining assets of each of the Debtors that have not been sold or abandoned prior to the Effective Date following payment of (or establishment of appropriate reserves for) all Allowed Administrative Claims, Allowed Priority Tax Claims, Allowed Priority Non-Tax Claims, Allowed Professional Fee Claims, Allowed Other Secured Claims, U.S. Trustee Fees and the amounts required to fund a wind-down of the Debtors' estates; (ii) all Retained Causes of Action, including the proceeds related thereto; (iii) all assets recovered by the Litigation Trustee on behalf of the Litigation Trust on or after the Effective Date through enforcement, judgment, resolution, settlement, collection, return, or otherwise; and (iv) any proceeds resulting from the Litigation Trustee's investment of the Litigation Trust Assets on or after the Effective Date owned by the Debtors on the Effective Date.

The Litigation Trust will retain counsel acceptable to the Prepetition Lenders in order to pursue and liquidate the Litigation Trust Assets.

For the avoidance of doubt, all Avoidance Actions that are not Retained Causes of Action or set forth on Schedule 2.1(s) of the Stalking Horse Agreement shall not constitute Litigation Trust Assets.
After the Effective Date, the Debtors and the Estates shall have no interest in the Litigation Trust Assets, the transfer of the Litigation Trust Assets to the Litigation Trust is absolute, and the Litigation Trust Assets shall not be held or deemed to be held in trust by the Litigation Trustee on behalf of any of the Debtors or the Estates. |
| **Litigation Trust Interests** | The Litigation Trust interests shall be non-transferable interests issued to the Litigation Trust Beneficiaries. |

---

[1]  This summary describes the material terms of the Litigation Trust Agreement and does not summarize all of the terms, conditions and other provisions of the Litigation Trust Agreement. In the event of any inconsistency between this summary and the Litigation Trust Agreement, the Litigation Trust Agreement shall control.

| Litigation Trust Beneficiaries | The beneficiaries of the Litigation Trust shall be Holders of Litigation Trust Interests, whether individually or as agent on behalf of one or more other Entities, which shall include (i) Holders of Allowed Prepetition Loan Claims; and (ii) Holders of Allowed General Unsecured Claims that elect to receive Litigation Trust Interests in lieu of the GUC Cash Pool. |
|---|---|
| Assignment of Direct Claims | The Litigation Trust Agreement shall provide that Holders of Allowed General Unsecured Claims may assign any applicable direct claims that such Holders have against third parties related to the Debtors (including any guaranties under the Convertible Debentures) to the Litigation Trust, which shall be subject to the distribution priorities set forth in Section 9.11 of the Combined Disclosure Statement and Plan. |
| Allocation of Litigation Trust Distribution Proceeds | The Litigation Trust Distribution Proceeds shall be distributed to Holders of Allowed Prepetition Loan Claims and Allowed General Unsecured Claims (that have elected to receive Litigation Trust Interests) in accordance with the distribution priorities set forth in Section 9.11 of the Combined Disclosure Statement and Plan. |
| Availability of Litigation Trust Distribution Proceeds for Holders of Subordinated Convertible Debentures | In connection with the Plan Settlement, Holders of Allowed General Unsecured Claims that arise from obligations under the Convertible Debentures shall be entitled to recover up to $900,000 in Litigation Trust Distribution Proceeds (in the aggregate among all holders of Convertible Debentures), in accordance with Section 9.11 of the Combined Disclosure Statement and Plan, notwithstanding the Prepetition Lenders' enforcement of any rights under any subordination agreements (including the Subordination Agreements (as defined in the DIP Loan Agreement)) which subordinate such Allowed General Unsecured Claims to the Prepetition Loan Claims; provided, that, for the avoidance of doubt, except as provided in Section 9.12 of the Combined Disclosure Statement and Plan, nothing shall alter, modify or otherwise limit the Prepetition Lenders' rights under any subordination agreements or related agreements (including the Subordination Agreements). |
| Litigation Trust Financing | On, or as soon as reasonably practicable after the Effective Date, the Litigation Trust Lender shall provide a loan to the Litigation Trust in an initial amount sufficient to fund both the (i) GUC Cash Pool and (ii) start-up costs for the Litigation Trust in an amount to be determined by the Litigation Trust Lender in consultation with the Litigation Trustee and the Litigation Trust Board. The Litigation Trust Lender shall provide the Litigation Trust Financing on terms that are set forth in the Litigation Trust |

**550**

| | Agreement and mutually acceptable to the Litigation Trust Lender and the Litigation Trustee. |
|---|---|
| **Ability to Seek and Obtain Discovery** | From and after the Effective Date, the Litigation Trustee shall have the ability to seek and obtain examination (including document discovery and depositions) under Bankruptcy Rule 2004 against any Person or Entity in furtherance of the purpose of the Litigation Trust, and the Bankruptcy Court shall retain jurisdiction to order examinations (including examinations under Bankruptcy Rule 2004) against any Person or Entity, and to hear all matters with respect to the same. |
| **Disputed Claims Reserve** | The Litigation Trustee may establish and maintain the Disputed Claim Reserve for payment of Disputed Claims, which reserve shall be established in an amount equal to the face value of such Claims, or such other amount as may be ordered by the Bankruptcy Court. |
| **Cash Investments** | Funds in the Litigation Trust shall be invested in demand and time deposits in banks or other savings institutions, or in other temporary, liquid investments, such as Treasury bills, consistent with the liquidity needs of the Litigation Trust as determined by the Litigation Trustee, in accordance with Bankruptcy Code section 345, unless the Bankruptcy Court otherwise requires; provided, however, that such investments are investments permitted to be made by a "liquidating trust" within the meaning of Treasury Regulation section 301.7701-4(d), as reflected therein, or under applicable IRS guidelines, rulings or other controlling authorities. |
| **Tax Considerations** | The Litigation Trust shall be established in accordance with the provisions set forth in Section 9.17(b) of the Combined Disclosure Statement and Plan. |
| **Dissolution** | The Litigation Trustee shall be discharged and the Litigation Trust shall be terminated, at such time as: (a)(i) all Disputed Claims have been resolved; (ii) all of the Litigation Trust Assets have been liquidated; (iii) all duties and obligations of the Litigation Trustee under the Litigation Trust Agreement have been fulfilled; (iv) all Distributions required under the Combined Disclosure Statement and Plan and the Litigation Trust Agreement have been made; and (v) the Chapter 11 Cases have been closed, OR (b) as otherwise provided in the Litigation Trust Agreement. |

| | Upon dissolution of the Litigation Trust, any remaining Litigation Trust Assets may be transferred by the Litigation Trustee to a charitable organization(s) or sold as part of a remnant asset sale. |
|---|---|
| **The Litigation Trustee** | |
| **Identity** | In accordance with Section 1.92 of the Combined Disclosure statement and Plan, the Litigation Trustee shall be designated by the DIP Agent and Prepetition Agent prior to the Confirmation Hearing, in consultation with the Committee, and shall be acceptable to the Debtors. |
| **Powers** | On and after the Effective Date, the Litigation Trustee shall have the power and responsibility to do all acts contemplated by the Combined Disclosure Statement and Plan to be done by the Litigation Trustee and all other acts that may be necessary or appropriate in connection with the disposition of the Litigation Trust Assets and the distribution of the proceeds thereof, as contemplated by the Combined Disclosure Statement and Plan and in accordance with the Litigation Trust Agreement. In all circumstances, the Litigation Trustee shall act in its reasonable discretion in the best interests of the Litigation Trust Beneficiaries pursuant to the terms of the Combined Disclosure Statement and Plan and the Litigation Trust Agreement. |
| **Compensation** | The Litigation Trustee shall be entitled to reasonable compensation in the amount consistent with that of similar functionaries in similar types of bankruptcy cases as set forth in the Litigation Trust Agreement. The Litigation Trustee shall be reimbursed for all documented, actual, reasonable, and necessary out-of-pocket expenses incurred in the performance of his or her duties. |
| **Indemnification** | In accordance with the terms of the Litigation Trust Agreement, the Litigation Trustee shall receive indemnification rights in connection with service as Litigation Trustee. |
| **Employment of Professionals** | The Litigation Trustee, on behalf of the Litigation Trust, may employ, without further order of the Bankruptcy Court, professionals (including those previously retained by the Debtors or the Committee) to assist in carrying out the Litigation Trustee's duties hereunder and may compensate and reimburse the reasonable expenses of these professionals without further Order of the Bankruptcy Court from the Litigation Trust Assets in accordance with the Combined Disclosure Statement and Plan, and the Litigation Trust Agreement. |

**552**

| The Litigation Trust Board | |
|---|---|
| **Identity** | The initial composition of the Litigation Trust Board shall consist of one member designated by the Committee, which member shall be reasonably acceptable to the DIP Agent and the Prepetition Agent, and two members designated by the DIP Agent and the Prepetition Agent, which members shall be selected in consultation with the Committee. |
| **Purpose** | The Litigation Trust Board shall oversee the activities of the Litigation Trustee as set forth in the Litigation Trust Agreement. The Litigation Trustee shall report material matters to, and seek approval for material decisions from, the Litigation Trust Board, as and to the extent set forth in the Litigation Trust Agreement, and consistent with the Combined Disclosure Statement and Plan and Confirmation Order.<br><br>In all circumstances, the Litigation Trust Board shall act in accordance with the Litigation Trust Agreement. Litigation Trust Beneficiaries may seek injunctive or other relief from the Bankruptcy Court in the event a member of the Litigation Trust Board or the Litigation Trustee breaches any duty. The Litigation Trust Board shall remain in existence until such time as the final Distributions hereunder have been made. |
| **Consent Rights Over Claims Objections** | The Litigation Trustee must obtain unanimous consent from the members of the Litigation Trust Board before pursuing (or refusing to pursue) any Claims objections and settlements with respect to General Unsecured Claims, which are not Prepetition Loan Claims or Retained Causes of Action, that are asserted or scheduled in the amount of $200,000 or higher. |

**553**

**Exhibit B**

**Identification of Litigation Trustee**

In accordance with Section 1.92 of the Combined Disclosure Statement and Plan, the Litigation Trustee shall be designated by the DIP Agent and the Prepetition Agent prior to the Confirmation Hearing, in consultation with the Committee, and shall be acceptable to the Debtors.

**554**

**Exhibit C**

**Identification of Members of the Litigation Trust Board**

In accordance with Section 1.86 of the Combined Disclosure Statement and Plan, the initial composition of the Litigation Trust Board shall consist of one member designated by the Committee, which member shall be reasonably acceptable to the DIP Agent and the Prepetition Agent, and two members designated by the DIP Agent and the Prepetition Agent, which members shall be selected in consultation with the Committee.

**555**

**Exhibit D**

**Assumption Schedule**

**Notes on the Assumption Schedule**

1. Neither the exclusion nor inclusion by the Debtors of any contract on the Assumption Schedule shall constitute an admission by the Debtors that any such contract is or is not an Executory Contract or that the Debtors or the Litigation Trustee have any liability thereunder.

   The Debtors, consistent with the terms of the Combined Disclosure Statement and Plan, reserve the right to amend, supplement, or modify the Assumption Schedule, including by adding or removing Executory Contracts, or by modifying any proposed cure amount.

2. As a matter of administrative convenience, in certain cases the Debtors may have listed on the Assumption Schedule the original parties to the Executory Contracts without taking into account any succession, transfer, or assignments from one party to another. The fact that the current parties to a particular Executory Contract may not be named in the Assumption Schedule is not intended to change the treatment of such Executory Contract.

3. References to any Executory Contract on the Assumption Schedule are to the applicable agreement and other operative documents as of the date hereof, as they may have been amended, modified, or supplemented by the parties thereto between such date and the effective date of assumption of such contract or lease.

4. In addition to the Executory Contracts listed on the Assumption Schedule, consistent with the terms of the Combined Disclosure Statement and Plan, all of the Debtors' D&O Policies shall be assumed, including but not limited to those listed herein, regardless of whether such policies are listed on the Assumption Schedule.

**Near Intelligence Inc., et al.**
*($USD)*

**556**

*Current Total:*          **$0**

| ID | Debtor Name | Contract Counterparty | Contract Title & Description | Date of Contract or Lease | Current Estimated Cure |
|----|-------------|----------------------|----------------------------|--------------------------|------------------------|
| 2052 | Near Intelligence, Inc. | Contact Discovery Services, LLC | Statement of Work | 10/2/2023 | 0 |
| 2053 | Near Intelligence, Inc. | Blue Torch Finance, LLC | Asset Purchase Agreement | 12/8/2023 | 0 |
| 2054 | Near Intelligence, Inc. | Blue Torch Finance, LLC | Disclosure Schedules | 12/8/2023 | 0 |

**557**

<u>Exhibit E</u>

**Retained Causes of Action**

1. Subject to the Combined Disclosure Statement and Plan, any current or future claims against the current or former directors and officers of the Debtors and their subsidiaries.

2. Any current or future claims arising out of or related to the investigations into financial mismanagement and fraudulent actions of former CEO and CFO of the Debtors and other Persons, including, without limitation, claims against MobileFuse, Godspeed Investments Pte. Ltd, Oriental Investment Advisors, Pte. Ltd., Jeff Merage, Alissa Merage, and any auditor of the Debtors.

3. Any current or future claims against any of the following and any of their Related Parties: Anil Mathews, Rahul Agarwal, MobileFuse, Kenneth Harlan, Matthew Sessanta, Godspeed Investments Pte. Ltd, Oriental Investment Advisors, Pte. Ltd., Jeff Merage, Alissa Merage, any auditor of the Debtors, Shobhit Shukla, Justin Joseph, Uniqequity Pte Ltd., Teemo Holdings Inc., Uniqequity Limited, AudienceQ Limited, all defendants in connection with the Retained Causes of Action, all recipients of payments that are subject of the MobileFuse Litigation or any Retained Causes of Action, and all of the Debtors' SPAC sponsors.

4. Any other current or future claims that are Retained Causes of Action.

**558**

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| NEAR INTELLIGENCE, INC., *et al.*,[1] | Case No. 23-11962 (TMH) |
| Debtors. | (Jointly Administered) |

## NOTICE OF FILING OF AMENDED PLAN SUPPLEMENT
## TO MODIFIED THIRD AMENDED COMBINED DISCLOSURE
## STATEMENT AND CHAPTER 11 PLAN OF LIQUIDATION
## OF NEAR INTELLIGENCE, INC. AND ITS AFFILIATED DEBTORS

**PLEASE TAKE NOTICE** that on February 5, 2024, the Court entered the *[Amended] Order (I) Approving the Combined Disclosure Statement and Plan on an Interim Basis for Solicitation Purposes Only; (II) Establishing Solicitation and Tabulation Procedures; (III) Approving the Forms of Ballots and Solicitation Materials; (IV) Establishing the Voting Record Date; (V) Fixing the Date, Time, and Place for the Combined Hearing and the Deadline for Filing Objections Thereto; and (VI) Granting Related Relief* [D.I. 243] (the "Solicitation Procedures Order").

**PLEASE TAKE FURTHER NOTICE** that on February 5, 2024, the Debtors filed the solicitation version of the *First Amended Combined Disclosure Statement and Chapter 11 Plan of Liquidation of Near Intelligence, Inc. and Its Affiliated Debtors* [D.I. 245] (as may be amended, modified or supplemented from time to time, the "Combined Disclosure Statement and Plan").[2]

**PLEASE TAKE FURTHER NOTICE** that on February 21, 2024, the Debtors filed the *Notice of Filing of (I) Second Amended Combined Disclosure Statement and Chapter 11 Plan of Liquidation of Near Intelligence, Inc. and Its Affiliated Debtors and (II) Blackline Thereof* [D.I. 288].

**PLEASE TAKE FURTHER NOTICE** that on February 27, 2024, the Debtors filed the *Notice of Filing of (I) Third Amended Combined Disclosure Statement and Chapter 11 Plan of Liquidation of Near Intelligence, Inc. and Its Affiliated Debtors and (II) Blackline Thereof* [D.I. 304].

**PLEASE TAKE FURTHER NOTICE** that on March 8, 2024, the Debtors filed the *Notice of Filing of (I) Modified Third Amended Combined Disclosure Statement and Chapter*

---

[1]   The Debtors in these chapter 11 cases, along with the last four digits of their federal tax identification numbers, to the extent applicable, are Near Intelligence, Inc. (7857), Near Intelligence LLC (7857), Near North America, Inc. (9078), and Near Intelligence Pte. Ltd. The Debtors' headquarters is located at 100 W Walnut St., Suite A-4, Pasadena, CA 91124.

[2]   Capitalized terms used but not defined herein are defined in the Combined Disclosure Statement and Plan.

**559**

*11 Plan of Liquidation of Near Intelligence, Inc. and Its Affiliated Debtors and (II) Blackline Thereof* [D.I. 323].

**PLEASE TAKE FURTHER NOTICE** that the Combined Disclosure Statement and Plan contemplates the submission of certain documents (or forms of summaries thereof), to the extent known in advance of the Confirmation Hearing.

**PLEASE TAKE FURTHER NOTICE** that on February 27, 2024, the Debtors filed the *Notice of Filing of Plan Supplement to Third Amended Combined Disclosure Statement and Chapter 11 Plan of Liquidation of Near Intelligence, Inc. and Its Affiliated Debtors* [D.I. 305] (as may be amended, modified or supplemented from time to time, the "Plan Supplement").

**PLEASE TAKE FURTHER NOTICE** that, in accordance with the Solicitation Procedures Order, the Debtors hereby file the following amended Plan Supplement documents:

| Exhibit | Document |
|---------|----------|
| A | Litigation Trust Agreement |
| B | Amended Identification of Members of the Litigation Trust Board |

**PLEASE TAKE FURTHER NOTICE** that the documents contained in this Plan Supplement are integral to, and considered part of, the Combined Disclosure Statement and Plan. If the Combined Disclosure Statement and Plan is confirmed, the documents contained in the Plan Supplement will be approved by the Bankruptcy Court pursuant to the Confirmation Order.

**PLEASE TAKE FURTHER NOTICE** that the documents contained in the Plan Supplement are not final and remain subject to continuing negotiations among the Debtors and other interested parties. Accordingly, the Debtors reserve the right to alter, amend, modify, or supplement any document of, or add any document to, the Plan Supplement subject to the terms and conditions of the Combined Disclosure Statement and Plan.

**PLEASE TAKE FURTHER NOTICE** that the Confirmation Hearing on confirmation of the Combined Disclosure Statement and Plan and adequacy of the disclosures therein has been scheduled for **March 14, 2024 at 3:00 p.m. (ET)**[3] before The Honorable J. Thomas M. Horan, United States Bankruptcy Judge, at the United States Bankruptcy Court for the District of Delaware, 5th Floor, Courtroom #5, 824 North Market Street, Wilmington, Delaware 19801. The Confirmation Hearing may be further continued from time to time without further notice other than the announcement of the adjourned date(s) by the Debtors in open court or by notice on the docket.

**PLEASE TAKE FURTHER NOTICE** that copies of the Plan Supplement, the Combined Disclosure Statement and Plan, the Solicitation Procedures Order, and all other documents filed in the Chapter 11 Cases may be obtained and reviewed without charge at https://cases.ra.kroll.com/near/, or upon request to Kroll Restructuring Administration LLC ("Kroll" or the "Voting Agent"), by (i) telephone at (844) 344-0799 (U.S./Canada, toll free) or +1

---

[3] The Confirmation Hearing was adjourned from March 12, 2024 at 1:00 p.m. (ET) to March 14, 2024 at 3:00 p.m. (ET).

**560**

(646) 651-1196 (international, toll), or (ii) email at NearInfo@ra.kroll.com (with "Near Intelligence Inc. Solicitation Inquiry" in the subject line).

[*Remainder of Page Intentionally Left Blank*]

Dated: March 11, 2024
Wilmington, Delaware

**YOUNG CONAWAY STARGATT & TAYLOR, LLP**

*/s/ Shane M. Reil*
Edmon L. Morton (No. 3856)
Matthew B. Lunn (No. 4119)
Shane M. Reil (No. 6195)
Carol E. Cox (No. 6936)
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253
emorton@ycst.com
mlunn@ycst.com
sreil@ycst.com
ccox@ycst.com

-and-

**WILLKIE FARR & GALLAGHER LLP**
Rachel C. Strickland (admitted *pro hac vice*)
Andrew S. Mordkoff (admitted *pro hac vice*)
Joseph R. Brandt (admitted *pro hac vice*)
787 Seventh Avenue
New York, New York 10019
Telephone:  (212) 728-8000
Facsimile:  (212) 728-8111
rstrickland@willkie.com
amordkoff@willkie.com
jbrandt@willkie.com

*Co-Counsel to the Debtors and Debtors in Possession*

**Exhibit A**

**Litigation Trust Agreement**

DRAFT – REMAINS SUBJECT TO REVIEW IN ALL RESPECTS BY PARTIES
IN INTEREST, INCLUDING PREPETITION LENDERS AND THE COMMITTEE

**563**

### NEAR INTELLIGENCE, INC., *ET AL*. LITIGATION TRUST AGREEMENT

This *Near Intelligence, Inc., et al. Litigation Trust Agreement* (the "Litigation Trust Agreement") dated as of March [●], 2024, is entered into by and between Near Intelligence, Inc., Near Intelligence LLC, Near North America, Inc., and Near Intelligence Pte. Ltd. (collectively, the Debtors"), on the one hand, and [●] (the "Litigation Trustee"), on the other hand, for the benefit of the Beneficiaries (defined below) pursuant to the terms of the *Combined Disclosure Statement and Chapter 11 Plan of Liquidation of Near Intelligence, Inc. and Its Affiliated Debtors* [Docket No. 22] (as amended, restated, supplemented or otherwise modified from time to time. the "Combined Disclosure Statement and Plan"), which Combined Disclosure Statement and Plan was confirmed by the *Findings of Fact, Conclusions of Law, and Order Approving Adequacy of Disclosures on a Final Basis and Confirming the Third Amended Combined Disclosure Statement and Chapter 11 Plan of Liquidation of Near Intelligence, Inc. and Its Affiliated Debtors Pursuant to Chapter 11 of the Bankruptcy Code*, entered on March [●], 2024 [Docket No. ●] (the "Confirmation Order") entered by the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") in the jointly administered Chapter 11 cases captioned *In re Near Intelligence, Inc., et al.*, Case No. 23-11962 (TMH) (collectively, the "Chapter 11 Cases").

### WITNESSETH

**WHEREAS,** the Litigation Trust is created pursuant to, and to effectuate, certain of the purposes set forth in the Combined Disclosure Statement and Plan and the Confirmation Order; and

**WHEREAS,** the Litigation Trust is created on behalf, and for the sole benefit, of the Beneficiaries pursuant to the Combined Disclosure Statement and Plan and the Confirmation Order; and

**WHEREAS,** the Litigation Trust is established as a liquidating trust in accordance with Treasury Regulation Section 301.7701-4(d) for the sole purpose of collecting, liquidating, and distributing the proceeds of the Litigation Trust Assets in an expeditious and orderly manner for the benefit of the Beneficiaries in accordance with the terms of this Litigation Trust Agreement and the Combined Disclosure Statement and Plan with no objective to continue or engage in the conduct of a trade or business;

**WHEREAS,** the Litigation Trust is intended to qualify and be treated as a grantor trust for U.S. federal income tax purposes pursuant to Sections 671 through 677 of the Internal Revenue Code of 1986, as amended;

**WHEREAS,** pursuant to the Combined Disclosure Statement and Plan and this Litigation Trust Agreement, the Debtors, the Litigation Trustee and the Beneficiaries are required to treat the transfer of the Litigation Trust Assets to the Litigation Trust, for all U.S. federal income tax purposes, as a transfer of the Litigation Trust Assets by the Debtors to the Beneficiaries in satisfaction of their Allowed Claims followed by a transfer of the Litigation Trust Distribution Proceeds by the Beneficiaries to the Litigation Trust in exchange for their Litigation Trust Interests herein, and to treat the Beneficiaries as the grantors and owners of the Litigation Trust in accordance with Treasury Regulation section 301.7701-4; and

**564**

NOW, THEREFORE, in consideration of the promises and the mutual covenants contained herein and in the Combined Disclosure Statement and Plan, the Debtors and the Litigation Trustee agree as follows:

## ARTICLE I

## DEFINITIONS AND INTERPRETATIONS

1.1    <u>Definitions</u>.

1.1.1   "<u>Allowed Claim</u>" means a General Unsecured Claim or claim held by, or any portion thereof, (a) that has been allowed by a Final Order of the Bankruptcy Court (or such court as the Debtors (or successor estate representative), the Litigation Trustee and the holder of any such claim agree may adjudicate such claim and any objections thereto), including by the Confirmation Order, or (b) that either (x) has been scheduled as a liquidated, non-contingent, and undisputed claim in an amount greater than zero on the Debtors' schedules, or (y) is the subject of a timely filed proof of claim as to which either (i) no objection to its allowance has been filed (either by way of objection or amendment to the schedules) within the periods of limitation fixed by the Bankruptcy Code or by any Final Order of the Bankruptcy Court or (ii) any objection to its allowance has been settled, waived through payment, or withdrawn, or has been denied by a Final Order; *provided*, *however*, that for purposes of determining the status of a particular claim, any such claim which has not been previously allowed or disallowed by a Final Order of the Bankruptcy Court shall be deemed a Disputed Claim unless such claim is specifically identified by the Debtors (or successor estate representative) and/or the Litigation Trustee as being an Allowed Claim.

1.1.2   "<u>Assigned Direct Creditor Claims</u>" means any Direct Creditor Claims held by General Unsecured Creditors which are assigned to the Litigation Trust in accordance with <u>Section 3.2</u> hereof, which in each case are subject to the distribution priorities set forth in <u>Section 4.1</u> herein.

1.1.3   "<u>Available Litigation Trust Cash</u>" means the gross proceeds generated through the liquidation and monetization of Distributable Assets or any portion thereof, less (a) charges, costs and expenses that are rightly deducted and attributable to the liquidation and monetization of the Distributable Assets including, but not limited to, all Litigation Trust Expenses; and (b) the Disputed Claims Reserve.

1.1.4   "<u>Beneficiaries</u>" means, collectively, Holders of a Litigation Trust Interest, whether individually or as agent on behalf of one or more other Entities, which shall include (i) Holders of Allowed Prepetition Loan Claims and/or any Deficiency Claims on account thereof; and (ii) Holders of Allowed General Unsecured Claims that elect to receive Litigation Trust Interests in accordance with the Combined Disclosure Statement and Plan entitling such Holders to their Pro Rata Share of the Litigation Trust Distribution Proceeds, in accordance with the distribution priorities set forth in <u>Section 4.1</u> hereof, up to the Allowed amount of such Allowed General Unsecured Claim or Allowed Prepetition Loan Claim and/or any Deficiency Claim, as applicable.

1.1.5   "<u>Confirmation Date</u>" means March 14, 2024.

**565**

1.1.6   "Deficiency Claim" means any deficiency Prepetition Loan Claims held by the Prepetition Lenders on account of the Prepetition Financing Documents that are not satisfied from the proceeds of the Prepetition Lenders' collateral.

1.1.7   "Disallowed Claim" means a General Unsecured Claim that is disallowed by Final Order or agreement between the Debtors and/or Litigation Trustee and the applicable claimant.

1.1.8   "Disputed Claims Reserve" means cash in an amount equal to the Distributions which would have been made to Beneficiaries on account of Disputed Claims if such claims were Allowed or such other amount as may be ordered by the Bankruptcy Court.

1.1.9   "Disputed Claims" means the General Unsecured Claims that are not Allowed Claims or Disallowed Claims.

1.1.10   "Distributable Assets" means the Litigation Trust Assets and any assets that are available or will become available for Distribution (and the proceeds thereof) transferred to and vested in the Litigation Trust on the Effective Date (as defined below) and any other funds or assets that are available for the benefit of the Beneficiaries and/or are subsequently transferred to or recovered by the Litigation Trust, including by the Debtors and, with respect to the Assigned Direct Creditor Claims, the applicable General Unsecured Creditors, including the Litigation Trust Assets and the Retained Causes of Action, all as in accordance with the Combined Disclosure Statement and Plan and this Litigation Trust Agreement.

1.1.11   "Distribution" means a distribution of property to a Beneficiary in accordance with this Litigation Trust Agreement.

1.1.12   "Distribution Date" means any date on which Distributions are made in accordance with this Litigation Trust Agreement.

1.1.13   "Distribution Record Date" means the date for determining which Holders of Claims are eligible to receive distributions hereunder and shall be the Confirmation Date or such other date as designated in an order of the Bankruptcy Court.

1.1.14   "Direct Creditor Claims" any direct claims or causes of action that any General Unsecured Creditor may have against third parties related to the Debtors or any of the Debtors' current or former officers or directors , including, for the avoidance of doubt, any guaranties in favor of the Subordinated Noteholders in connection with the Subordinated Convertible Debentures.

1.1.15   "Final Order" means an order of the Bankruptcy Court or any other court of competent jurisdiction (a) as to which the time to appeal shall have expired and as to which no appeal shall then be pending or (b) if a timely appeal shall have been filed, such appeal has been resolved by a Final Order or agreement of all the parties to such appeal.

1.1.16   "General Unsecured Claim" means a general unsecured claim filed or scheduled against any of the Debtors.

1.1.17   "General Unsecured Creditor" means a holder of an Allowed General Unsecured Claim.

1.1.18   "GUC Cash Pool" means Cash in an amount equal to $750,000 that is available for distribution to Holders of Allowed General Unsecured Claims that do not elect to

# 566

receive Litigation Trust Interests, under the Combined Disclosure Statement and Plan, in full and final satisfaction of such Allowed General Unsecured Claims.

1.1.19 "Litigation Trust" means the liquidating trust established pursuant to the terms of this Litigation Trust Agreement, the Combined Disclosure Statement and Plan, and the Confirmation Order.

1.1.20 "Litigation Trustee" means (a) initially, the person or corporation defined as the "Litigation Trustee" above, and (b) any successors or replacements duly appointed under the terms of this Litigation Trust Agreement, and is the person referred to as the "Litigation Trustee" in the Combined Disclosure Statement and Plan.

1.1.21 "Litigation Trust Counsel" means [●] or successor counsel as acceptable to the Prepetition Lenders, engaged by the Litigation Trust in order to pursue the Retained Causes of Causes and, if applicable, any Assigned Direct Creditor Claims.

1.1.22 "Litigation Trust Board" means the board that shall oversee the Litigation Trust in accordance with the Litigation Trust Agreement and the Combined Disclosure Statement and Plan, the initial composition of which shall consist of one (1) member designated by the Committee, which member shall be reasonably acceptable to the DIP Agent and the Prepetition Agent (the "Committee Board Member"), and two (2) members designated by the DIP Agent and the Prepetition Agent, which members shall be selected in consultation with the Committee.

1.1.23 "Litigation Trust Financing Facility" means that certain [Credit Agreement] by and between the Litigation Trust Lenders and the Litigation Trust, in form and substance acceptable to the Prepetition Lenders and the Litigation Trustee in consultation with the Litigation Trust Board.

1.1.24 "Permitted Investments" shall include (a) short-term direct obligations of, or obligations guaranteed by, the United States of America, (b) short-term obligations of any agency or corporation which is or may hereafter be created by or pursuant to an act of the Congress of the United States as an agency or instrumentality thereof, (c) such other investments as the Bankruptcy Court may approve from time to time, or (d) demand deposits, money market account, or certificates of deposit at any bank or trust company that has, at the time of the deposit, a capital stock and surplus aggregating at least $1,000,000,000, *provided*, *however*, that the scope of any Permitted Investments shall be limited to include only those investments that a liquidating trust, within the meaning of Treas. Reg. § 301.7701-4(d), may be permitted to hold, pursuant to Treasury Regulations, or any modification in the IRS guidelines, whether set forth in IRS rulings, other IRS pronouncements, or otherwise, and to the investment guidelines of section 345 of the Bankruptcy Code, *provided*, *further*, *however*, the requirement of complying with the investment guidelines of section 345 of the Bankruptcy Code may be waived by the Litigation Trustee with the approval of the Litigation Trust Board.

1.1.25 "Subordinated Convertible Debentures" has the meaning ascribed to "Convertible Debentures" in the Combined Disclosure Statement and Plan, which are subject to the Subordination Agreements other than to the extent expressly set forth in the Combined Disclosure Statement and Plan or in this Litigation Trust Agreement.

1.1.26 "Subordinated Noteholders" means, collectively, the holders and any other beneficiary of the Subordinated Convertible Debentures.

**567**

1.1.27 "Subordination Agreements" means those certain Subordination Agreements, dated as of March 31 and May 18, 2023, by and among the Prepetition Agent and the Prepetition Subordinated Noteholders with respect to the Convertible Debentures.

1.2     Use of Plan Definitions.   All terms which are used in this Litigation Trust Agreement but not defined herein shall have the meaning set forth in the Combined Disclosure Statement and Plan or Confirmation Order.

1.3     Headings; Interpretation.   The headings in this Litigation Trust Agreement are for convenience of reference only and shall not limit or otherwise affect the provisions of this Litigation Trust Agreement. Words denoting the singular number shall include the plural number and vice versa, and words denoting one gender shall include the other gender.

1.4     Particular Words.   Reference in this Litigation Trust Agreement to any Section or Article is, unless otherwise specified, to that Section or Article under this Litigation Trust Agreement. The words "hereof," "herein," "hereunder," and similar terms shall refer to this Litigation Trust Agreement and not to any particular Section or Article of this Litigation Trust Agreement.

## ARTICLE II

## DECLARATION OF TRUST

2.1     Creation and Name.   As contemplated by the Combined Disclosure Statement and Plan and the Confirmation Order, the Debtors hereby establish and create the Litigation Trust, on behalf of, and for the benefit of the Beneficiaries as of the date hereof (the "Effective Date"). The Litigation Trustee may conduct the affairs of the Litigation Trust under the name "Near Intelligence, Inc., *et al*. Litigation Trust," and the trust so named is the Litigation Trust referred to as the "Litigation Trust" in the Combined Disclosure Statement and Plan.

2.2     Purpose of Litigation Trust.   This Litigation Trust is intended to be a grantor trust for United States federal income tax purposes and, to the extent provided by law, shall be governed and construed in all respects as such a grantor trust. The Debtors and the Litigation Trustee, as contemplated by the Combined Disclosure Statement and Plan and Confirmation Order hereby create the Litigation Trust solely for the purpose of, liquidating and distributing the Distributable Assets in accordance with the terms of this Litigation Trust Agreement, the Plan and Confirmation Order with no objective to continue or engage in the conduct of a trade or business. The Litigation Trustee shall engage only in activities reasonably necessary to, and consistent with the liquidating purpose of the Litigation Trust including, but not limited to, (a) investigating and, if appropriate, pursuing, settling or abandoning the Retained Causes of Action not otherwise released under the Combined Disclosure Statement and Plan, (b) administering and liquidating the Distributable Assets, (c) reconciling, objecting to, settling or otherwise resolving any Disputed Claims, as provided for in the Combined Disclosure Statement and Plan and subject to the limitation set forth in Section 3.9 hereof, and (d) making Distributions to the Beneficiaries from the Litigation Trust as provided for in the Combined Disclosure Statement and Plan and this Litigation Trust Agreement in accordance with Section 4.1 hereof. The activities of the Litigation Trust shall be limited to those activities set forth in this Litigation Trust Agreement.

2.3     Transfer of Distributable Assets.   As contemplated by the Combined Disclosure Statement and Plan and the Confirmation Order, the Debtors hereby grant, release, assign, convey,

**568**

transfer and deliver, on behalf of the Beneficiaries, all of the Debtors' rights, title and interest in the Distributable Assets in trust for the benefit of the Beneficiaries, free and clear of all Encumbrances of all other Entities for the uses and purposes as specified in the Combined Disclosure Statement and Plan and this Litigation Trust Agreement. For the avoidance of doubt, the costs and expenses of the Litigation Trust shall be funded exclusively from the Distributable Assets and the Litigation Trust Credit Facility.

2.4     Securities Law.  It is intended that the interests of the Beneficiaries in the Litigation Trust and the entitlements hereunder (the "Beneficial Interests"), if any, of such Beneficiaries, shall not constitute "securities."  To the extent applicable and to the extent the Beneficial Interests or any entitlements of the Beneficiaries are deemed to be "securities," the issuance of the Beneficial Interests or the entitlements hereunder or under any Combined Disclosure Statement and Plan shall be exempt, pursuant to section 1145 of the Bankruptcy Code from Section 4(a)(2) of the Securities Act and any state and local laws requiring registration of securities.  If the Litigation Trustee determines, with the advice of counsel, that the Litigation Trust is required to comply with the registration and reporting requirements of the Securities Act of 1933, as amended, the Securities and Exchange Act of 1934, as amended (collectively, the "Securities Act), the Trust Indenture Act of 1939, as amended (the "Trust Indenture Act"), or the Investment Company Act of 1940, as amended (the "Investment Company Act"), then the Litigation Trustee shall take any and all actions to comply with such registration and reporting requirements and file necessary periodic reports with the Securities and Exchange Commission.  Notwithstanding the foregoing, nothing contained herein shall be deemed to preclude the Litigation Trustee from amending this Litigation Trust Agreement to make such changes as are deemed necessary or appropriate by the Litigation Trustee, with the advice of counsel, to ensure that the Litigation Trust is not subject to registration and/or reporting requirement of the Securities Act, the Trust Indenture Act or the Investment Company Act, provided that such amendments do not adversely affect the Distributions to be made under the terms of this Litigation Trust Agreement.

2.5     Appointment and Acceptance of Litigation Trustee.  The Litigation Trustee accepts the Litigation Trust created by this Litigation Trust Agreement and the grant, assignment, transfer, conveyance, and delivery to the Litigation Trustee, on behalf, and for the benefit, of the Beneficiaries, by the Debtors of all of their respective right, title, and interest in the Distributable Assets, upon and subject to the terms and conditions set forth in this Litigation Trust Agreement, the Combined Disclosure Statement and Plan and the Confirmation Order and any subsequent order of the Bankruptcy Court that is consistent with the terms and purpose of the Combined Disclosure Statement and Plan.

2.6     Transfer of Retained Causes of Action.  The Debtors transfer to, and agree and authorize the Litigation Trustee to prosecute, settle, compromise and/or dismiss the Retained Causes of Action, including any claims against current or former officers or directors for breach of fiduciary duties, on behalf of, and in the name of, the Debtors and their estates for the benefit of the Litigation Trust Beneficiaries.  To the extent that Debtors or their estates receive any recovery from the prosecution of the Retained Causes of Action, including, without limitation, from any applicable insurance provider, the Debtors agree to promptly turn such recovery over to the Litigation Trust for distribution in accordance with the terms of this Litigation Trust Agreement.

2.7     No Reversion to Debtors or Others.  The Distributable Assets shall be free and clear of all Encumbrances of the Debtors or any other Entity.

**569**

    2.8    <u>Funding of the Litigation Trust</u>.  On or after the Effective Date and in accordance with the Combined Disclosure Statement and Plan, the Litigation Trust shall be funded with the Litigation Trust Financing.

**ARTICLE III**

**ADMINISTRATION OF THE LITIGATION TRUST**

<u>**General Provisions**</u>

    3.1    <u>Rights, Powers, and Privileges</u>.  The Litigation Trust shall be administered by the Litigation Trustee and the Litigation Trust Board. For such purposes, the Litigation Trustee shall have only the rights, powers and privileges expressly provided in this Litigation Trust Agreement, the Combined Disclosure Statement and Plan and in any other order of the Bankruptcy Court that is not, absent the consent of the Litigation Trustee, inconsistent with the terms and purpose of the Combined Disclosure Statement and Plan and Litigation Trust Agreement.  Subject to the terms of this Litigation Trust Agreement, Litigation Trustee shall have the power to take the actions specified in this <u>Section 3.1</u> and any actions reasonably incidental thereto, which the Litigation Trustee reasonably determines to be necessary or appropriate to fulfill the purpose of the Litigation Trust, including but not limited to:

    A.    exercise all power and authority that may be necessary to implement the Combined Disclosure Statement and Plan on behalf of the Litigation Trust and enforce all provisions thereof;

    B.    open and maintain bank accounts, make Distributions and take other actions consistent with the Combined Disclosure Statement and Plan and this Litigation Trust Agreement, including the maintenance of appropriate reserves (including the Disputed Claim Reserve), in the name of the Litigation Trust;

    C.    maintain the books and records of the Litigation Trust, including any books and records of the Debtors transferred to the Litigation Trust;

    D.    incur and pay reasonable and necessary expenses in connection with the implementation and consummation of the Combined Disclosure Statement and Plan;

    E.    make decisions without court approval, regarding the retention or engagement of professionals or other Entities (subject to approval of such retention by a majority of the Litigation Trust Board), and to pay, without court approval, all reasonable fees and expenses of the Litigation Trust accruing from and after the Effective Date;

    F.    negotiate and, with the approval of the majority of the Litigation Trust Board, enter into any financing arrangement for purposes of carrying out the purposes of the Litigation Trust and duties set forth herein;

    G.    collect and liquidate all Litigation Trust Assets or Assigned Direct Creditor Claims, if any, transferred or to be transferred to the Litigation Trust;

**570**

H.    prepare and file tax returns and related forms and filings on behalf of the Litigation Trust;

I.    investigate, prosecute and/or settle or abandon without court approval Retained Causes of Action or Assigned Direct Creditor Claims, if any, transferred to the Litigation Trust not otherwise released pursuant to the Combined Disclosure Statement and Plan, including, but not limited to, any claims against current or former officers or directors for breach of fiduciary duties;

J.    seek a determination of tax liability under section 505 of the Bankruptcy Code or otherwise and to pay, or cause to be paid, from the Distributable Assets any taxes incurred by the Litigation Trustee on or after the Effective Date;

K.    invest, or cause to be invested, cash as deemed appropriate by the Litigation Trustee, provided, however, such investments shall be Permitted Investments;

L.    enter, or cause to be entered, into any agreement or execute any document required by or consistent with this Litigation Trust Agreement and the Combined Disclosure Statement and Plan;

M.    abandon, or cause to be abandoned, in any commercially reasonable manner any Distributable Assets that the Litigation Trustee reasonably concludes are burdensome or of inconsequential value and benefit to the Litigation Trust without any need for Bankruptcy Court approval;

N.    prepare and file post-Effective Date operating reports, if any, as required by the Bankruptcy Court, the Combined Disclosure Statement and Plan, applicable local rules, or this Litigation Trust Agreement;

O.    take all other actions not inconsistent with the provisions of this Litigation Trust Agreement and the Combined Disclosure Statement and Plan which the Litigation Trustee deems reasonably necessary or desirable in connection with the administration and consummation of the Litigation Trust and Combined Disclosure Statement and Plan; and

P.    exercise such other powers as may be vested in the Litigation Trustee, consistent with the intent and purpose of the Litigation Trust Agreement and Combined Disclosure Statement and Plan, by order of the Bankruptcy Court.

*provided*, for the avoidance of doubt and notwithstanding anything to the contrary herein, the Litigation Trustee shall have no authority to take any action in contravention of the Combined Disclosure Statement and Plan, the Confirmation Order, or this Litigation Trust Agreement, or to take any action which would make it impossible to carry on the activities of the Litigation Trust.

3.2    <u>Assignment of Direct Creditor Claims</u>.  Subject in each case to diligence and prior written approval by the Litigation Trustee, on or after the Effective Date, any General Unsecured Creditor holding a Direct Creditor Claim may assign any such Direct Creditor Claim to the

**571**

Litigation Trust. Any transfer of an Assigned Direct Creditor Claim shall be documented in an assignment and assumption agreement, which agreement shall be in form and substance reasonably acceptable to the Litigation Trustee and provide that (i) the applicable General Unsecured Creditor transfers all rights, title and interests in any such Assigned Direct Creditor Claim to the Litigation Trustee and further agrees and authorizes the Litigation Trustee to (a) prosecute, settle, compromise and/or dismiss the Assigned Direct Creditor Claims, on behalf of, and in the name of, such General Unsecured Creditor for the benefit of the Beneficiaries, and (ii) any recoveries with respect to the applicable Assigned Direct Creditor Claims shall in case be subject to terms of this Litigation Trust Agreement, including without limitation the distribution priorities set forth in Section 4.1 and, if applicable, the Subordinated Noteholder Carve Out in Section 4.2 of this Litigation Trust Agreement. For the avoidance of doubt, no General Unsecured Creditor holding a Direct Creditor Claim is required to assign any such claims to the Litigation Trust.

3.3     Transfer of Privileges.  On the Effective Date, the Debtors shall be deemed, without waiver, to assign, deliver, and transfer to the Litigation Trust and the Litigation Trustee the Debtors' and the Estates' evidentiary privileges, including the attorney/client privilege, that relate solely to the Distributable Assets transferred to the Litigation Trust.  From and after such transfer, the Debtors and their Estates shall have no further rights or obligations with respect to such Distributable Assets, other than with respect to ongoing obligations to reasonably cooperate, including to provide access to documents and personnel, as reasonably requested by the Litigation Trustee.  Such privileged communications may be shared among the Litigation Trustee, attorneys, financial advisors, accountants or other professionals and employees of the Litigation Trustee and the Litigation Trust Board without compromising the privileged nature of such communications, in accordance with the "joint interest" doctrine. From and after the Effective Date, the Litigation Trustee shall have the ability to seek and obtain examination (including document discovery and depositions) under Bankruptcy Rule 2004 against any Person or Entity in furtherance of the purpose of the Litigation Trust, and the Bankruptcy Court shall retain jurisdiction to order examinations (including examinations under Bankruptcy Rule 2004) against any Person or Entity, and to hear all matters with respect to the same.

3.4     Litigation Trust Counsel; Agents and Professionals.  The Litigation Trustee shall retain Litigation Trust Counsel on terms acceptable to a majority of the Litigation Trust Board in order to pursue the Retained Causes of Causes and, if applicable, any Assigned Direct Creditor Claims. In addition to the Litigation Trust Counsel, the Litigation Trustee may, but shall not be required to, retain attorneys, disbursing agent, financial advisors, accountants or other professionals and employees as the Litigation Trustee deems appropriate and with the approval of such retention by a majority of the Litigation Trust Board.  Subject to Section 7.9 of this Litigation Trust Agreement, the Litigation Trustee may pay the reasonable fees, costs and expenses of such persons out of the Distributable Assets in the ordinary course of business and, except as set forth below, without any further notice to any party or action, order or approval of the Bankruptcy Court. Professionals retained by the Litigation Trustee shall receive compensation and reimbursement of expenses in a manner to be determined by the Litigation Trustee, with approval by a majority of the Litigation Trust Board, and in accordance with the payment procedures set forth in Section 7.9 of this Litigation Trust Agreement.

3.5     Safekeeping of Distributable Assets.   All Distributable Assets shall, until distributed as provided herein, be held in trust for the benefit of the Beneficiaries in accordance with the Combined Disclosure Statement and Plan and this Litigation Trust Agreement.  The

Litigation Trustee shall be under no liability for interest or producing income on any Distributable Assets received by it hereunder and held for Distribution to the Beneficiaries, except as such interest or income shall actually be received by the Litigation Trustee.

3.6     Insurance.  The Litigation Trustee may use Distributable Assets in the Litigation Trustee's reasonable business judgment to maintain customary insurance coverage, if available, for the protection of the Distributable Assets, with the approval of a majority of the Litigation Trust Board.  The Litigation Trustee shall obtain insurance coverage with respect to the liabilities and obligations of the Litigation Trustee and the Litigation Trust Board (in the form of an errors and omissions policy or otherwise) with the approval of a majority of the Litigation Trust Board unless both the Litigation Trustee and Litigation Trust Board agree that such insurance shall not be required.

3.7     Confidentiality.  Any Litigation Trustee and members of the Litigation Trust Board shall, during the period that they serve in such capacity under this Litigation Trust Agreement, after removal, incapacitation or resignation, and after dissolution of the Litigation Trust, hold strictly confidential and not use for personal gain any material, non-public information of or pertaining to any Entity to which any of the Distributable Assets relates or which it has become aware of in its capacity as Litigation Trustee or Litigation Trust Board member.

**Litigation Trustee**

3.8     Fiduciary Duties of the Litigation Trustee.  The Litigation Trustee shall act in a fiduciary capacity on behalf of the interests of all Beneficiaries who are entitled to receive Distributions pursuant to the terms of the Combined Disclosure Statement and Plan and this Litigation Trust Agreement.  For the avoidance of doubt, the Litigation Trustee is not an officer, director or fiduciary of the Debtors or the Estates.

3.9     Limitations on Rights of Litigation Trustee.  The Litigation Trustee shall not at any time, on behalf of the Litigation Trust or the Beneficiaries, enter into or engage in any trade or business, and no part of the Distributable Assets, revenue, or income therefrom shall be used or disposed of by the Litigation Trust in furtherance of any trade or business.  The Litigation Trustee shall not pursue, commence or settle any Retained Causes of Action not otherwise released pursuant to the Combined Disclosure Statement and Plan without the prior consent of a majority of the Litigation Trust Board, including, but not limited to, any claims against current or former officers or directors for breach of fiduciary duties.  A majority of the Litigation Trust Board, however, may authorize settlement parameters for the Litigation Trustee to settle certain Retained Causes of Action without having to seek further authority from the Litigation Trust Board.

3.10    Objection to Claims. The Committee Board Member shall have consultation rights with respect to any objections, settlements or other resolutions of any Disputed Claims, which are not Prepetition Loan Claims or Deficiency Claims, pursued by the Litigation Trustee; provided, that, the Litigation Trustee must obtain unanimous consent from the members of the Litigation Trust Board before pursuing (or refusing to pursue) any objections or settlements with respect to Disputed Claims, which are not Prepetition Loan Claims, Deficiency Claims or Retained Causes of Action, that are asserted or scheduled in an amount equal to or in excess of $200,000.

3.11    Other Activities.  Any individual serving as the Litigation Trustee, other than in his or her individual capacity as such, shall be entitled to perform services for and be employed by

third parties, *provided*, *however*, that such performance or employment affords such individual sufficient time to carry out his or her responsibilities as the Litigation Trustee. In addition, the Litigation Trustee shall not be prohibited from engaging in any trade or business on its own account, provided that such activity does not interfere or conflict with the Litigation Trustee's administration of the Litigation Trust.

 3.12 <u>Investments by Litigation Trustee</u>. The Litigation Trustee may only invest funds held in the Litigation Trust in Permitted Investments and, provided that the Litigation Trustee does so, it shall have no liability in the event of insolvency of any institution in which the Litigation Trustee has invested any of the Distributable Assets or any proceeds, revenue, or income therefrom. The Litigation Trustee may expend the cash of the Litigation Trust (a) as reasonably necessary to meet contingent liabilities and to maintain the value of the Distributable Assets during liquidation, (b) to pay reasonable administrative expenses (including, but not limited to, any taxes imposed on the Litigation Trust) and (c) to satisfy other liabilities incurred by the Litigation Trust in accordance with the Combined Disclosure Statement and Plan and this Litigation Trust Agreement (including, without limitation, the payment of any taxes).

 3.13 <u>Litigation Trustee Action</u>. The Litigation Trustee shall hold, collect, conserve, protect and administer the Litigation Trust in accordance with the provisions of this Litigation Trust Agreement and the Combined Disclosure Statement and Plan, and pay and distribute amounts as set forth herein for the purposes set forth in this Litigation Trust Agreement and the Combined Disclosure Statement and Plan. The Litigation Trustee shall exercise its business judgment for the benefit of the Beneficiaries in order to maximize the value of the Distributable Assets and Distributions, giving due regard to the cost, risk, and delay of any course of action. Any good faith determination by the Litigation Trustee as to what actions are in the best interests of the Litigation Trust shall be determinative.

 3.14 <u>Bankruptcy Court Approval of Litigation Trustee Actions</u>. Except as provided in this Litigation Trust Agreement or the Combined Disclosure Statement and Plan, the Litigation Trustee need not seek or obtain an order or approval of the Bankruptcy Court or any other court in the exercise of any power, rights, or discretion conferred hereunder, or account to the Bankruptcy Court or any other court as to the results of its actions. Notwithstanding the foregoing, the Litigation Trustee may submit to the Bankruptcy Court any matter regarding which the Litigation Trustee may desire to have explicit approval of the Bankruptcy Court for the taking of any specific action proposed to be taken by the Litigation Trustee with respect to the Distributable Assets, Disputed Claims, the Litigation Trust, the Litigation Trust Agreement, the Combined Disclosure Statement and Plan, or the Debtors, including the administration and Distribution of the Distributable Assets and the resolution of Disputed Claims. The Bankruptcy Court shall retain jurisdiction for such purposes and may approve or disapprove any such proposed action upon a motion filed by the Litigation Trustee. In addition, the Litigation Trustee shall have the authority, but not the obligation, to seek Bankruptcy Court approval to sell any Asset free and clear of any and all Encumbrances (to the extent any Asset is not already free and clear of any all such Encumbrances).

**Litigation Trust Board**

 3.15 <u>Litigation Trust Board</u>. The Litigation Trust Board shall be established on the Effective Date and will remain and continue in full force and effect until the Litigation Trust is

dissolved in accordance with the terms of this Litigation Trust Agreement. The Litigation Trust Board shall have the rights and obligations set forth in this Litigation Trust Agreement. In all circumstances, the Litigation Trust Board shall act in the best interests of all Beneficiaries and in furtherance of the purpose of the Litigation Trust. Notwithstanding anything contained in this Litigation Trust Agreement, the Litigation Trust Board shall not take any action which will cause the Litigation Trust to fail to qualify as a "liquidating trust" for U.S. federal income tax purposes.

3.16    Litigation Trust Board Compensation. Members of the Litigation Trust Board shall serve [without compensation], provided, however, members of the Litigation Trust Board shall be entitled to reimbursement from the Litigation Trust for their reasonable and necessary out of pocket expenses incurred in connection with their service as members of the Litigation Trust Board.

3.17    Litigation Trust Board Tenure and Replacement. Each member of the Litigation Trust Board will serve until death, incapacitation or resignation. A member of the Litigation Trust Board may resign at any time by providing a written notice of resignation to the Litigation Trustee and remaining members of the Litigation Trust Board. Upon the resignation, death or incapacity of a Litigation Trust Board member, a successor member may, but shall not be required to, be appointed by a majority of the remaining members of the Litigation Trust Board, provided that any such successor member must be approved by either (i) the Prepetition Lenders, or (ii) at least one member of the Litigation Trust Board appointed by the Prepetition Lenders.

3.18    Litigation Trust Board Action. Except as may otherwise be provided herein, a majority of the members of the Litigation Trust Board shall constitute a quorum for any action by the Litigation Trust Board, and the act of a majority of those present at any meeting at which a quorum is present, shall be the act of the Litigation Trust Board. In the event of a tie vote, the Litigation Trustee shall be deemed a voting member for the sole purpose of breaking any such tie vote of the Litigation Trust Board. Any or all members of the Litigation Trust Board may participate in a regular or special meeting by use of telephone, or similar communications equipment by means of which all persons participating in the meeting may hear each other. The Litigation Trust Board may adopt, by majority vote of all members, by-laws or other rules of procedure that are not inconsistent with the terms of this Litigation Trust Agreement. Notwithstanding anything contained in this Section 3.18, a Litigation Trust Board member shall be recused from the Litigation Trust Board's deliberations and votes on any matters as to which such member has a conflicting interest as determined by both the Litigation Trustee and the other members of the Litigation Trust Board.

3.19    Litigation Trust Board Action Without a Meeting. Any action required or permitted to be taken by the Litigation Trust Board may be taken without a meeting if the action is taken by unanimous written consent, as evidenced by one or more written consents describing the action taken, signed by the members of the Litigation Trust Board or by such other procedures as may be agreed upon by a majority of the Litigation Trust Board, including negative notice procedures.

3.20    Periodic Consultation with Litigation Trust Board. In addition to any other consultation and reporting requirements set forth in this Litigation Trust Agreement, the Litigation Trustee shall report and consult with the Litigation Trust Board at its discretion or as reasonably requested by the Litigation Trust Board or any member thereof concerning the status and administration of the Litigation Trust and the Distributable Assets.

# ARTICLE IV

## DISTRIBUTIONS FROM THE LITIGATION TRUST

4.1 <u>Priority of Distributions</u>. Except as provided herein, Distributions of Available Litigation Trust Cash shall be distributed to Beneficiaries as follows:

a) *First*, to the Litigation Trustee to pay the Litigation Trust Expenses and for compensation and reimbursement of reasonable and documented expenses to Litigation Trust Board Members;

b) *Second*, to repay the Litigation Trust Financing Facility until all obligations related to the Litigation Trust Financing are satisfied in full; Third, after the Litigation Trust Financing Facility Obligations are satisfied in full, the next $5 million of Litigation Trust Distribution Proceeds, net of any Litigation Trust Expenses, shall be distributed as follows:

> i) 95% to Holders of Allowed Prepetition Loan Claims, solely to the extent such Claims have not been satisfied in full on account of Litigation Trust Distribution Proceeds or otherwise under the Combined Disclosure Statement and Plan; and

> ii) 5% to Holders of Allowed General Unsecured Claims that have elected to receive Litigation Trust Interests, solely to the extent such Claims have not been satisfied in full;

c) *Fourth*, the next $15 million of Litigation Trust Distribution Proceeds, net of any Litigation Trust Expenses, shall be distributed as follows:

> i) 90% to Holders of Allowed Prepetition Loan Claims, solely to the extent such Claims have not been satisfied in full on account of Litigation Trust Distribution Proceeds or otherwise under the Combined Disclosure Statement and Plan; and

> ii) 10% to Holders of Allowed General Unsecured Claims that have elected to receive Litigation Trust Interests, solely to the extent such Claims have not been satisfied in full;

d) *Fifth*, the next $15 million of Litigation Trust Distribution Proceeds, net of any Litigation Trust Expenses, shall be distributed as follows:

> i) 87.5% to Holders of Allowed Prepetition Loan Claims, solely to the extent such Claims have not been satisfied in full on account of Litigation Trust Distribution Proceeds or otherwise under the Combined Disclosure Statement and Plan; and

> ii) 12.5% to Holders of Allowed General Unsecured Claims that have elected to receive Litigation Trust Interests, solely to the extent such Claims have not been satisfied in full; and

e) *Sixth*, any incremental Litigation Trust Distribution Proceeds, net of any Litigation Trust Expenses, shall be distributed as follows:

**576**

  i) 85% to Holders of Allowed Prepetition Loan Claims, solely to the extent such Claims have not been satisfied in full on account of Litigation Trust Distribution Proceeds or otherwise under the Combined Disclosure Statement and Plan; and

  ii) 15% to Holders of Allowed General Unsecured Claims that have elected to receive Litigation Trust Interests, solely to the extent such Claims have not been satisfied in full.

  4.2 <u>Subordination Agreement Carve Out</u>.  Solely with respect to Distributions of Available Litigation Trust Cash in accordance with <u>Section 4.1</u> of this Litigation Trust Agreement, Subordinated Noteholders constituting Beneficiaries hereunder shall be entitled to receive up to an aggregate amount of $900,000 in Litigation Trust Distribution Proceeds (in the aggregate among all Subordinated Noteholders and any assignees constituting Beneficiaries), prior to and notwithstanding the Prepetition Lenders' enforcement of any rights under the Subordination Agreements (the "<u>Subordinated Noteholder Carve Out</u>"); <u>provided</u>, <u>that</u>, for the avoidance of doubt, except as provided in this <u>Section 4.2</u>, nothing herein shall alter, modify or otherwise limit the Prepetition Lenders' rights under the Subordination Agreements.

  4.3 <u>Payments and Distributions on Disputed Claims</u>.  Except as otherwise provided in the Combined Disclosure Statement and Plan, a Final Order or as agreed to by the relevant parties, distributions under the Combined Disclosure Statement and Plan on account of a Disputed Claim that becomes an Allowed Claim after the Effective Date shall be made on the day selected by the Litigation Trustee pursuant to the terms of the Combined Disclosure Statement and Plan and this Litigation Trust Agreement.  Notwithstanding any provision otherwise provided herein, and except as otherwise agreed to by the relevant parties, no partial payments and no partial distributions shall be made with respect to a Disputed Claim until all such disputes in connection with such Disputed Claim have been resolved by settlement or Final Order.  In the event that there are Disputed Claims requiring adjudication and resolution, the Litigation Trustee, with the approval of a majority of the Litigation Trust Board, shall establish appropriate Disputed Claim Reserves for potential payment of such Disputed Claims if such claims were Allowed or such other amount as may be ordered by the Bankruptcy Court.

  4.4 <u>Distributions in General</u>.  All Distributions to Beneficiaries hereunder as of the applicable distribution date shall be made on or as soon as practicable after the applicable distribution date pursuant and subject to the terms of Article X of the Combined Disclosure Statement and Plan, which is incorporated, *mutatis mutandis*, into and is part of this Litigation Trust Agreement as if set forth in full herein.

  4.5 <u>Calculation of Amounts to Be Distributed</u>.  Each Holder of an Allowed Claim against the Debtors shall receive the distributions that the Combined Disclosure Statement and Plan provides for Allowed Claims in the applicable Class.  Except as otherwise provided herein, Holders of Claims shall not be entitled to interest, dividends or accruals on the distributions provided for herein, regardless of whether such distributions are delivered on or at any time after the Effective Date.

## ARTICLE V

## BENEFICIARIES

5.1     Incidents of Ownership.  The Beneficiaries shall be the sole beneficiaries of the Litigation Trust and the Distributable Assets, and the Litigation Trustee shall retain only such incidents of ownership as are necessary to undertake the actions and transactions authorized in this Litigation Trust Agreement and Combined Disclosure Statement and Plan and distribute the Distributable Assets to the Beneficiaries.

5.2     Interest Beneficial Only.  The ownership of the Litigation Trust Interests shall not entitle any Beneficiary or the Debtors to any title in or to the Distributable Assets or to any right to call for a partition or division of such Distributable Assets or to require an accounting, except as may specifically be provided herein or in any order of the Bankruptcy Court.

5.3     Evidence of Beneficial Interest.   Ownership of a beneficial interest in the Distributable Assets shall not be evidenced by any certificate, security, or receipt, or in any other form or manner whatsoever, except as maintained on the books and records of the Litigation Trust by the Litigation Trustee as Litigation Trust Interests held by the Beneficiaries.  In maintaining the Litigation Trustee's register of Litigation Trust Interests, the Litigation Trustee may rely upon the Debtors' schedules and the official claims register maintained in the Chapter 11 Cases.

5.4     Limits on Transfers and Notice of Transfer of Beneficial Interest.  The interests of Beneficiaries are not negotiable and not transferable except (a) pursuant to applicable laws of descent and distribution or (b) by operation of law.  The Litigation Trustee shall not be required to record any transfer which, in the Litigation Trustee's sole discretion may be construed to create any uncertainty or ambiguity as to the identity of the holder of the interest in the Litigation Trust. Until appropriate notification and proof thereof, in a form satisfactory to the Litigation Trustee in the exercise of its reasonable discretion, is submitted to the Litigation Trustee by registered or certified United States mail, return receipt requested, the Litigation Trustee may continue to pay all amounts to or for the benefit of the original Beneficiary.  The Litigation Trustee may rely without any further investigation upon any notification and proof of a transfer of a beneficial interest in the Litigation Trust submitted in accordance with this Section 5.4  that the Litigation Trustee reasonably believes to be genuine.

## ARTICLE VI

## THIRD PARTY RIGHTS AND LIMITATION OF LIABILITY

6.1     Reliance.  The Litigation Trustee may absolutely and unconditionally rely, and shall be protected in acting upon any resolution, statement, instrument, opinion, report, notice, request, consent, order, or other paper or document that the Litigation Trustee reasonably believes in good faith to be genuine.

6.2     Parties Dealing with the Litigation Trustee.  In the absence of actual knowledge to the contrary, any Entity dealing with the Litigation Trust or the Litigation Trustee shall be entitled to rely on the authority of the Litigation Trustee or any of the Litigation Trustee's agents to act in connection with the Distributable Assets and this Litigation Trust Agreement.  There shall be no obligation on any Entity dealing with the Litigation Trustee to inquire into the validity, expediency or propriety of any transaction by the Litigation Trustee or any agent of the Litigation Trustee.

6.3     Limited Recourse.     Except as otherwise provided in this Litigation Trust Agreement, Entities (including any professionals retained by the Litigation Trustee in accordance with this Litigation Trust Agreement) engaged in transactions with the Litigation Trust or the Litigation Trustee shall look only to the Distributable Assets to satisfy any liability incurred in connection with carrying out the terms of this Litigation Trust Agreement.

6.4     Limitation of Liability.     Except as expressly set forth in this Litigation Trust Agreement, on and after the Effective Date, the Litigation Trust shall have no liability on account of any claims.  Neither the Litigation Trustee, the Litigation Trust Board, their respective members, designees or professionals, or any of their duly designated agents or representatives (collectively, the "Covered Persons"), shall be held personally liable for any claim asserted against them or the Litigation Trust in connection with their duties and responsibilities relating to the Distributable Assets and Litigation Trust.  Without limiting the generality of the foregoing, none of the Covered Persons shall be liable for any action taken or omitted to be taken in furtherance of their responsibilities hereunder, except to the extent that their conduct is determined by Final Order to be due to their own willful misconduct, gross negligence, or fraud.  The Litigation Trust Board shall be entitled to enjoy all of the rights, powers, immunities and privileges of an official committee of unsecured creditors.  All Entities dealing with the Litigation Trustee, Litigation Trust or Litigation Trust Board shall only look to the Distributable Assets, or any insurance that may cover such claim, to satisfy any liability incurred by the Litigation Trustee or Litigation Trust Board.  Nothing contained in this Litigation Trust Agreement or the Combined Disclosure Statement and Plan shall be deemed to be an assumption by the Beneficiaries, Litigation Trust or Litigation Trustee of any of the liabilities, obligations or duties of the Debtors or the Beneficiaries.

6.5     Non-Liability for Acts of Others.     The Litigation Trustee and the Litigation Trust Board may, in connection with the performance of their functions, and in their sole and absolute discretion, consult with attorneys, accountants, financial advisors and agents, and shall not be liable for any act taken, omitted to be taken, or suffered to be done in accordance with advice or opinions rendered by such persons, regardless of whether such advice or opinions are provided in writing.  Notwithstanding such authority, neither the Litigation Trustee nor the Litigation Trust Board shall be under any obligation to consult with attorneys, accountants, financial advisors or agents, and their determination not to do so shall not result in the imposition of liability on the Litigation Trustee or Litigation Trust Board or their respective members and/or designees.  Any successor Litigation Trustee may accept and rely upon any accounting made by or on behalf of any predecessor Litigation Trustee hereunder, and any statement or representation made by a predecessor Litigation Trustee or its agents as to the Distributable Assets or as to any other fact bearing upon the prior administration of the Litigation Trust, so long as it has a good faith basis to do so.  A successor Litigation Trustee shall not be liable for having accepted and relied in good faith upon any such accounting, statement, or representation if it is later proved to be incomplete, inaccurate, or untrue.  A successor Litigation Trustee shall not be liable for any act or omission of any predecessor Litigation Trustee, nor have a duty to enforce any claims against any predecessor Litigation Trustee on account of any such act or omission.

6.6     Indemnification.     The Litigation Trust shall indemnify and hold harmless, to the fullest extent permitted by law, the Litigation Trustee, the Litigation Trust Board and their employees, members, designees and professionals, and all duly designated agents and representatives thereof (in their capacity as such; each, an "Indemnified Party" and collectively, the "Indemnified Parties"), from and against and in respect of all liabilities, losses, damages,

claims, costs and expenses (including reasonable attorneys' fees, disbursements, and related expenses) which such Indemnified Parties may incur or to which such Indemnified Parties may become subject in connection with any action, suit, proceeding or investigation brought by or threatened against such Indemnified Party arising out of or due to their acts or omissions, or consequences of such acts or omissions, with respect to the implementation or administration of the Litigation Trust or the Combined Disclosure Statement and Plan or the discharge of their duties under this Litigation Trust Agreement; *provided*, *however*, that no such indemnification will be made to such persons for actions or omissions that are determined by a Final Order to be a result of such persons' willful misconduct, gross negligence, or fraud. Entities dealing with the Litigation Trustee and Litigation Trust Board may only look to the Distributable Assets and any applicable insurance coverage to satisfy any liability incurred by the Litigation Trustee or the Litigation Trust Board to such Entity in carrying out the terms of this Litigation Trust Agreement, and neither the Litigation Trustee nor the Litigation Trust Board shall have any personal obligation to satisfy any such liability. Notwithstanding any provision in this Litigation Trust Agreement to the contrary, an Indemnified Party shall be entitled to request advances from the Litigation Trust to cover reasonable fees and necessary expenses incurred in connection with defending itself in any action brought against it as a result of the acts or omissions, actual or alleged, of an Indemnified Party in its capacity as such; provided, however, that the Litigation Trustee shall not be required to make any such advances; provided further, however, that any Indemnified Parties receiving such advances shall repay the amounts so advanced to the Litigation Trust upon the entry of a Final Order of a court of competent jurisdiction finding that such Indemnified Parties were not entitled to such indemnity under the provisions of this Section 6.6. This indemnification shall survive the death, dissolution, resignation, or removal, as may be applicable, of the Indemnified Parties, or the termination of the Litigation Trust, and shall inure to the benefit of the Indemnified Parties' heirs and assigns.

## ARTICLE VII

## SELECTION, REMOVAL AND COMPENSATION OF THE LITIGATION TRUSTEE

7.1     Initial Litigation Trustee. As contemplated by the Combined Disclosure Statement and Plan, the initial Litigation Trustee was selected by the DIP Agent and Prepetition Agent, in consultation with Committee.

7.2     Term of Service. The Litigation, Trustee shall serve until (a) the completion of all the Litigation Trustee's duties, responsibilities and obligations under this Litigation Trust Agreement (b) termination of the Litigation Trust in accordance with this Litigation Trust Agreement, or (c) the Litigation Trustee's death or dissolution, incapacitation, resignation, or removal.

7.3     Removal of a Litigation Trustee. Any Entity serving as Litigation Trustee may be removed at any time and for any reason by action of a majority of the Litigation Trust Board or upon the determination of the Bankruptcy Court on a motion for cause shown. Any Litigation Trustee so removed is entitled to payment of fees and expenses accrued prior to removal subject to the terms of this Litigation Trust Agreement. Any dispute regarding the compensation to be paid shall be determined by the Bankruptcy Court.

7.4     Resignation of Litigation Trustee. The Litigation Trustee may resign at any time by giving the Litigation Trust Board at least thirty (30) days' written notice of the Litigation

Trustee's intention to do so or such shorter time as agreed to by the Litigation Trust Board. Any resigning Litigation Trustee is entitled to payment of fees and expenses accrued prior to resignation subject to the terms of this Litigation Trust Agreement. Any dispute regarding the compensation to be paid shall be determined by the Bankruptcy Court.

7.5     Accounting in the Event of Removal or Resignation. In the event of removal or resignation, the removed or resigning Litigation Trustee shall render to the Litigation Trust Board a full and complete accounting of monies and Distributable Assets received, disbursed, and held during the term of office of that Litigation Trustee and such other information reasonably requested by the Litigation Trust Board. Unless an earlier date is agreed to by the removed or resigning Litigation Trustee, the removal or resignation shall be effective on the later of (a) the date specified in the notice; (b) the date that is 30 days after the date the notice is delivered; or (c) the date the accounting described in the preceding sentence is delivered.

7.6     Appointment of Successor Litigation Trustee. Upon the resignation, death, incapacity, or removal of a Litigation Trustee, the Litigation Trust Board shall appoint a successor Litigation Trustee to fill the vacancy so created. Any successor Litigation Trustee so appointed shall consent to and accept in writing the terms of this Litigation Trust Agreement and agree that the provisions of this Litigation Trust Agreement shall be binding upon and inure to the benefit of the successor Litigation Trustee and all of the successor Litigation Trustee's heirs and legal and personal representatives, successors or assigns. Notwithstanding anything in this Litigation Trust Agreement, in the event that a successor Litigation Trustee is not appointed within 60 days of the occurrence or effectiveness, as applicable, of the prior Litigation Trustee's resignation, death, incapacity, or removal, the Bankruptcy Court, upon the motion of any party-in-interest, including counsel to the Litigation Trust, shall approve a successor to serve as the Litigation Trustee.

7.7     Powers and Duties of Successor Litigation Trustee. A successor Litigation Trustee shall have all the rights, privileges, powers, and duties of the predecessor Litigation Trustee under this Litigation Trust Agreement, the Combined Disclosure Statement and Plan, or as provided in a further order of the Bankruptcy Court.

7.8     Litigation Trust Continuance. The death, incapacity, resignation or removal of the Litigation Trustee shall not terminate the Litigation Trust or revoke any existing agency created pursuant to this Litigation Trust Agreement or invalidate any action theretofore taken by the Litigation Trustee.

7.9     Compensation and Costs of Administration. The Litigation Trustee shall be compensated as follows: [(i) all administrative services, including those related to claims administration, non-substantive claim objections and distributions be included within a fixed monthly payment of $[●], payable in arrears (which fee will only be charged in the months these services are provided), and (ii) all other services, including related to claim litigation and potential recoveries of assets, including, prosecuting litigation, be billed hourly at a rate of $[_] per hour and paid if, and when, those assets are recovered. In addition to the above fees, Litigation Trustee will be entitled to reimbursement for all out-of-pocket expenses, *provided*, *however*, that the Litigation Trustee shall be compensated and reimbursed, as applicable, for services provided and reasonable and documented expenses incurred in connection with the formation and implementation of the Litigation Trust prior to the Effective Date, on such terms as previously agreed to by the Litigation Trust Board and the Litigation Trustee.]

# 581

7.10    <u>Payment of Compensation</u>. The Litigation Trustee shall retain the Litigation Trust Counsel and may retain and compensate other professionals as provided for in <u>Section 3.4</u> of this Litigation Trust Agreement which such retention, for the avoidance of doubt, shall be subject to approval by a majority of the Litigation Trust Board.  Other than Litigation Trust Counsel, which shall be retained on terms and compensation paid in accordance with procedures acceptable to a majority of the Litigation Trust Board, the reasonable fees and actual and necessary expenses of such professionals, the Litigation Trustee himself, and any disbursing agent shall be paid by the Litigation Trustee upon submission of a monthly fee statement to the Litigation Trustee and/or the Litigation Trust Board, as applicable, in accordance with the following procedures.  The Litigation Trustee shall deliver his or her invoices or fee statements to the Litigation Trust Board before payment from the Distributable Assets therefor shall be allowed, and such invoices or fee statement shall be approved by a majority of the Litigation Trust Board prior to payment.  Any professionals retained by the Litigation Trustee pursuant to this Litigation Trust Agreement shall deliver their invoices or fee statements to the Litigation Trustee and the Litigation Trust Board before payment from the Distributable Assets therefor shall be allowed, and such invoices or fee statement shall be approved by a majority of the Litigation Trust Board prior to payment.  Any Entity selected as disbursing agent by the Litigation Trustee pursuant to this Litigation Trust Agreement and the Combined Disclosure Statement and Plan shall deliver their invoices or fee statements to the Litigation Trustee and the Litigation Trust Board before payment from the Distributable Assets therefor shall be allowed, and such invoices or fee statement shall be approved by a majority of the Litigation Trust Board prior to payment.  The Litigation Trustee and Litigation Trust Board, as applicable, shall have fifteen (15) days from the delivery of any invoice or fee statement to provide notice of an objection to the fee statement to the professional or Entity seeking compensation or reimbursement of expenses (including the Litigation Trustee).  For an objection to be valid, it shall be in writing and set forth in detail the specific fees objected to and the basis for the objection.  The uncontested portion of each invoice shall be paid within twenty-five (25) days after its original delivery to the Litigation Trustee.  Any objection that remains unresolved fifteen (15) days after it is made shall be submitted to the Bankruptcy Court for resolution.

## ARTICLE VIII

## REPORTING AND TAX MATTERS

8.1    <u>Reporting and Filing Requirements</u>.  The Litigation Trustee shall prepare and file post-Effective Date operating reports, if any, as required by the Bankruptcy Court, the Combined Disclosure Statement and Plan, applicable local rules, or this Litigation Trust Agreement.

8.2    <u>Filing of Tax Returns</u>. The Litigation Trustee shall file tax returns for the Litigation Trust as a grantor trust pursuant to Treasury Regulation Section 1.671-4(a) and any other applicable laws or regulations; *provided*, *however*, that the Litigation Trustee may, in the Litigation Trustee's reasonable discretion, determine the best way to report for tax purposes with respect to the Disputed Claims Reserve, including (i) filing a tax election to treat any and all reserves for Disputed Claims as a disputed ownership fund ("<u>DOF</u>") within the meaning of Treasury Income Tax Regulation Section 1.468B-9 for federal income tax purposes rather than to tax such reserve as a part of the Litigation Trust or (ii) electing to report as a separate trust or sub-trust or other entity.  If an election is made to report the Disputed Claims Reserve as a DOF, the Litigation Trust shall comply with all federal and state tax reporting and tax compliance requirements of the DOF,

**582**

including but not limited to the filing of a separate federal tax return for the DOF and the payment of federal and/or state income tax due.

8.3 <u>Preparation of Statements</u>. To the extent reasonably practicable, the Litigation Trustee shall, in conjunction with filing the Litigation Trust's annual tax return, send to each Beneficiary a statement setting forth the Beneficiary's share of items of income, gain, loss, deduction, or credit and will instruct all such Beneficiaries to report such items on their federal income tax returns. A final such statement shall also be sent to each Beneficiary within seventy-five (75) days after the dissolution of the Litigation Trust. The Litigation Trust's taxable income, gain, loss, deduction, or credit will be allocated (subject to provisions of the Combined Disclosure Statement and Plan and any confirmation order entered by the Bankruptcy Court relating to Disputed Claims) to the Beneficiaries in accordance with their relative beneficial interests in the Litigation Trust, as determined pursuant to this Litigation Trust Agreement and the Combined Disclosure Statement and Plan.

8.4 <u>Valuation of Distributable Assets</u>. As soon as practicable after the Effective Date, the Litigation Trustee, to the extent that it deems it necessary or appropriate in the reasonable exercise of its discretion, shall, in good faith, value the Distributable Assets, and such valuation shall be made available from time to time, to the extent relevant, and shall be used consistently by all parties (including the Debtors, the Litigation Trustee and the Beneficiaries) for all federal income tax purposes. The Litigation Trustee shall be under no obligation to hire an expert to make such a valuation.

**ARTICLE IX**

**MAINTENANCE OF AND ACCESS TO RECORDS**

9.1 <u>Books and Records</u>. The Litigation Trustee shall maintain books and records containing a description of all property from time to time constituting the Distributable Assets and an accounting of all receipts and disbursements. Said books and records shall be open to inspection by any Beneficiary at any reasonable time during normal business hours and after reasonable advance notice. The Litigation Trustee shall furnish to any Beneficiary upon written request an annual statement of receipts and disbursements, including a summary of all income and expenses of the Litigation Trust. The Debtors and Liquidating Debtors shall reasonably cooperate with the Litigation Trustee to effectuate the terms of this Litigation Trust Agreement, including executing such further documents and instruments as may be required from time to time and providing reasonable access and information to the Litigation Trustee on a timely basis

9.2 <u>Cooperation by Debtors</u>. The Debtors shall reasonably cooperate with the Litigation Trustee to effectuate the terms of this Agreement, including providing reasonable access and information to the Litigation Trustee on a timely basis. Notwithstanding the foregoing, the Debtors or other furnishing party shall provide such documents or other materials described in this paragraph only upon reasonable request by the Litigation Trustee and only if they can be reasonably provided by the Debtors or other furnishing party without significant effort or material expense; provided, that in the event that the furnishing party believes that the requested information cannot be provided without significant effort or material expense, the furnishing party and the Litigation Trustee shall confer in good faith to agree upon appropriate consideration for the furnishing party to provide such information.

**583**

## ARTICLE X

## DURATION OF TRUST

10.1  <u>Duration</u>.  The Litigation Trust shall become effective upon the Effective Date of the Combined Disclosure Statement and Plan, and the Litigation Trust and its provisions herein shall remain and continue in full force and effect until the Litigation Trust is terminated.

10.2  <u>Termination</u>.  The Litigation Trust shall terminate upon the occurrence of the earlier of (a) the final liquidation, administration, and Distribution of the Distributable Assets in accordance with this Litigation Trust Agreement and the Combined Disclosure Statement and Plan and the full performance of all other duties and functions of the Litigation Trustee set forth in this Litigation Trust Agreement and any further order of the Bankruptcy Court, and (b) the fifth (5th) anniversary of the Effective Date.  Notwithstanding the foregoing, the duration of the Litigation Trust may be extended with the approval of the Bankruptcy Court, upon motion made within the six-month period before such fifth anniversary (and, in the event of further extension, by order of the Bankruptcy Court, upon motion made at least six (6) months before the end of the preceding extension). The aggregate of all such extensions shall not exceed three years, unless the Litigation Trustee receives a favorable ruling from the IRS that any further extension would not adversely affect the status of the Litigation Trust as a liquidating trust within the meaning of section 301.7701-4(d) of the Treasury Regulations for federal income tax purposes.  After (i) the final Distributions pursuant to the Combined Disclosure Statement and Plan, (ii) the filing by or on behalf of the Litigation Trust of a certification of dissolution with the Bankruptcy Court and (iii) any other action deemed appropriate by the Litigation Trustee in consultation with the Litigation Trust Board, the Litigation Trust shall be deemed dissolved for all purposes without the necessity for any other or further actions.

10.3  <u>Continuance of Litigation Trust for Winding Up</u>.  After the termination of the Litigation Trust and for the purpose of liquidating and winding up the affairs of the Litigation Trust, the Litigation Trustee shall continue to act as such until the Litigation Trustee's duties have been fully performed, including, without limitation, such tasks as necessary to wind-up the affairs of the Litigation Trust.  After the termination of the Litigation Trust, the Litigation Trustee shall retain for a period of six (6) months the books, records, Beneficiary lists, and certificates and other documents and files which shall have been delivered to or created by the Litigation Trustee.  At the Litigation Trustee's discretion, all of such records and documents may, but need not, be destroyed at any time after such six (6) month period.  Except as otherwise specifically provided herein, upon the discharge of all liabilities of the Litigation Trust and final Distributions pursuant to this Litigation Trust Agreement, the Litigation Trustee shall have no further duties or obligations hereunder.  For the avoidance of doubt, the limitations on liability contained in this Litigation Trust Agreement shall apply to any actions taken by the Litigation Trustee during the course of winding up the affairs of the Litigation Trust.

## ARTICLE XI

## MISCELLANEOUS

11.1  <u>Jurisdiction</u>.  The Bankruptcy Court shall have exclusive jurisdiction over (a) the Litigation Trust and the Litigation Trustee with respect to the administration of and activities relating to the Litigation Trust, and (b) any issues or disputes arising out of this Litigation Trust

**584**

Agreement; *provided*, *however*, that notwithstanding the foregoing, the Litigation Trustee shall have the power and authority to bring any action in any court of competent jurisdiction to prosecute any Retained Causes of Action (or Assigned Direct Creditor Claims, if any) not otherwise released pursuant to the Combined Disclosure Statement and Plan, including, but not limited to, any claims against current or former officers or directors for breach of fiduciary duties.

11.2  <u>Notices</u>.  All notices to be given to Beneficiaries may be given by ordinary mail, or may be delivered personally, to the holders at the addresses appearing on the books kept by the Litigation Trustee.  Any notice or other communication which may be or is required to be given, served, or sent to the Litigation Trustee or the members of the Litigation Trust Board shall be in writing and shall be sent by registered or certified United States mail, return receipt requested, postage prepaid, or transmitted by email, telex, or facsimile (if receipt is confirmed) addressed as follows:

> If to the Litigation Trust/Litigation Trustee:
>
> [●]
> [ADDRESS]
> [EMAIL]
> [PHONE]
>
> With a copy to:
>
> [●]
> [ADDRESS]
> [EMAIL]
> [PHONE]
>
> If to the members of the Litigation Trust Board:
>
> [●]
> [ADDRESS]
> [EMAIL]
> [PHONE]
>
> [●]
> [ADDRESS]
> [EMAIL]
> [PHONE]
>
>
> [ADDRESS]
> [EMAIL]
> [PHONE]

or to such other address as may from time to time be provided in a written notice by the members of the Litigation Trust Board or to such other address as may from time to time be provided in a written notice by the Litigation Trustee.

**585**

11.3   <u>Bond</u>.  The Litigation Trustee may serve without a bond.

11.4   <u>Governing Law</u>.   This Litigation Trust Agreement shall be governed by and construed in accordance with the laws of the State of Delaware, without giving effect to conflicts of law principles.

11.5   <u>Successors and Assigns</u>.  This Litigation Trust Agreement shall inure to the benefit of and shall be binding upon the parties hereto and their respective successors and assigns.

11.6   <u>No Execution</u>.  All funds in the Litigation Trust shall be deemed *in custodia legis* until such times as the funds have actually been paid to or for the benefit of a Beneficiary, and no Beneficiary or any other Entity can bind, pledge, encumber, execute upon, garnish, or attach the Distributable Assets in any manner or compel payment from the Litigation Trust except by Final Order of the Bankruptcy Court.

11.7   <u>Amendment</u>.  The Litigation Trustee, with the prior written approval of a majority of the existing members of the Litigation Trust Board may amend, supplement, or waive any provision of this Litigation Trust Agreement, without notice to or the consent of any Beneficiary or the approval of the Bankruptcy Court, in order to: (i) cure any ambiguity, omission, defect, or inconsistency in this Litigation Trust Agreement; *provided*, *however*, that such amendments, supplements or waivers shall not be inconsistent with the terms of the Combined Disclosure Statement and Plan or adversely affect the Distributions to any of the Beneficiaries or adversely affect the federal income tax status of the Litigation Trust as a "liquidating trust"; (ii) comply with any requirements in connection with the federal income tax status of the Litigation Trust as a "liquidating trust"; and (iii) comply with any requirements in connection with maintaining that the Litigation Trust is not subject to registration or reporting requirements of the Securities Act, the Trust Indenture Act, or the Investment Company Act.  Any substantive provision of this Litigation Trust Agreement may be amended or waived by the Litigation Trustee and the approval of a majority of the Litigation Trust Board; *provided*, *however*, that no change may be made to this Agreement that would (a) adversely affect the (i) Distributions to any of the Beneficiaries, or (ii) the federal income tax status of the Trust as a "liquidating trust" or (b) modify the stated purpose of the Litigation Trust as described in this Litigation Trust Agreement.  Notwithstanding this <u>Section 11.7</u>, any amendments or modifications to this Litigation Trust Agreement shall not be inconsistent with the purpose and intention of the Litigation Trust to liquidate in an expeditious but orderly manner the Distributable Assets in accordance with Treasury Regulation Section 301.7701-4(d).

11.8   <u>Severability</u>.  If any term, provision, covenant or restriction contained in this Litigation Trust Agreement is held by a court of competent jurisdiction or other authority to be invalid, void, unenforceable or against its regulatory policy, the remainder of the terms, provisions, covenants and restrictions contained in this Litigation Trust Agreement shall remain in full force and effect and shall in no way be affected, impaired or invalidated.

11.9   <u>Counterparts</u>.  This Litigation Trust Agreement may be executed in any number of counterparts, each of which shall be deemed an original, and such counterparts shall together constitute one and the same instrument.  A facsimile or electronic mail signature of any party shall be considered to have the same binding effect as an original signature.

11.10   <u>Relationship to, and Incorporation of, the Plan</u>.  The principal purpose of this Litigation Trust Agreement is to aid in the implementation of the Combined Disclosure Statement

**586**

and Plan and the Confirmation Order, and, therefore, this Litigation Trust Agreement incorporates the provisions of the Combined Disclosure Statement and Plan and the Confirmation Order, *mutatis mutandis*, as if set forth in full herein.  As among the Litigation Trust, the Litigation Trustee, the Litigation Trust Board, the Beneficiaries, and the Debtors, if any provisions of this Litigation Trust Agreement are found to be inconsistent with the provisions of the Combined Disclosure Statement and Plan or the Confirmation Order, each such document shall have controlling effect in the following rank order: (a) the Confirmation Order; (b) the Combined Disclosure Statement and Plan; and (c) this Litigation Trust Agreement.

**587**

IN WITNESS WHEREOF, the parties have executed this Litigation Trust Agreement (or are deemed to have so executed this Litigation Trust Agreement) as of the day and year written above.

[●], as the Litigation Trustee

**Near Intelligence, Inc.,** *et al.***,** for itself and its affiliated Debtors

By: _____
Name: [●]

By: _____
Name: [●]
Title:  [●]

**588**

## Exhibit B

### Amended Identification of Members of the Litigation Trust Board

Lee Haspel, Dermott O'Flanagan, and Troy Rillo shall be appointed as the members of the Litigation Trust Board.

**589**

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| NEAR INTELLIGENCE, INC., *et al.*,[1] | Case No. 23-11962 (TMH) |
| Debtors. | (Jointly Administered) |

## NOTICE OF FILING OF SECOND AMENDED PLAN SUPPLEMENT TO MODIFIED THIRD AMENDED COMBINED DISCLOSURE STATEMENT AND CHAPTER 11 PLAN OF LIQUIDATION OF NEAR INTELLIGENCE, INC. AND ITS AFFILIATED DEBTORS

**PLEASE TAKE NOTICE** that on February 5, 2024, the Court entered the *[Amended] Order (I) Approving the Combined Disclosure Statement and Plan on an Interim Basis for Solicitation Purposes Only; (II) Establishing Solicitation and Tabulation Procedures; (III) Approving the Forms of Ballots and Solicitation Materials; (IV) Establishing the Voting Record Date; (V) Fixing the Date, Time, and Place for the Combined Hearing and the Deadline for Filing Objections Thereto; and (VI) Granting Related Relief* [D.I. 243] (the "Solicitation Procedures Order").

**PLEASE TAKE FURTHER NOTICE** that on February 5, 2024, the Debtors filed the solicitation version of the *First Amended Combined Disclosure Statement and Chapter 11 Plan of Liquidation of Near Intelligence, Inc. and Its Affiliated Debtors* [D.I. 245] (as may be amended, modified or supplemented from time to time, the "Combined Disclosure Statement and Plan").[2]

**PLEASE TAKE FURTHER NOTICE** that on February 21, 2024, the Debtors filed the *Notice of Filing of (I) Second Amended Combined Disclosure Statement and Chapter 11 Plan of Liquidation of Near Intelligence, Inc. and Its Affiliated Debtors and (II) Blackline Thereof* [D.I. 288].

**PLEASE TAKE FURTHER NOTICE** that on February 27, 2024, the Debtors filed the *Notice of Filing of (I) Third Amended Combined Disclosure Statement and Chapter 11 Plan of Liquidation of Near Intelligence, Inc. and Its Affiliated Debtors and (II) Blackline Thereof* [D.I. 304].

**PLEASE TAKE FURTHER NOTICE** that on March 8, 2024, the Debtors filed the *Notice of Filing of (I) Modified Third Amended Combined Disclosure Statement and Chapter*

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of their federal tax identification numbers, to the extent applicable, are Near Intelligence, Inc. (7857), Near Intelligence LLC (7857), Near North America, Inc. (9078), and Near Intelligence Pte. Ltd. The Debtors' headquarters is located at 100 W Walnut St., Suite A-4, Pasadena, CA 91124.

[2]    Capitalized terms used but not defined herein are defined in the Combined Disclosure Statement and Plan.

*11 Plan of Liquidation of Near Intelligence, Inc. and Its Affiliated Debtors and (II) Blackline Thereof* [D.I. 323].

**PLEASE TAKE FURTHER NOTICE** that on March 13, 2024, the Debtors filed the *Notice of Filing of (I) Further Modified Third Amended Combined Disclosure Statement and Chapter 11 Plan of Liquidation of Near Intelligence, Inc. and Its Affiliated Debtors and (II) Blackline Thereof* [D.I. 336].

**PLEASE TAKE FURTHER NOTICE** that the Combined Disclosure Statement and Plan contemplates the submission of certain documents (or forms of summaries thereof), to the extent known in advance of the Confirmation Hearing.

**PLEASE TAKE FURTHER NOTICE** that on February 27, 2024, the Debtors filed the *Notice of Filing of Plan Supplement to Third Amended Combined Disclosure Statement and Chapter 11 Plan of Liquidation of Near Intelligence, Inc. and Its Affiliated Debtors* [D.I. 305] (as may be amended, modified or supplemented from time to time, the "Plan Supplement").

**PLEASE TAKE FURTHER NOTICE** that on March 11, 2024, the Debtors filed the *Notice of Filing of Amended Plan Supplement to Modified Third Amended Combined Disclosure Statement and Chapter 11 Plan of Liquidation of Near Intelligence, Inc. and Its Affiliated Debtors* [D.I. 328].

**PLEASE TAKE FURTHER NOTICE** that, in accordance with the Solicitation Procedures Order, the Debtors hereby file the following amended Plan Supplement documents:

| Exhibit | Document |
|---------|----------|
| A | Amended Litigation Trust Agreement |
| A-1 | Redline of Amended Litigation Trust Agreement |
| B | Amended Identification of Litigation Trustee |

**PLEASE TAKE FURTHER NOTICE** that the documents contained in this Plan Supplement are integral to, and considered part of, the Combined Disclosure Statement and Plan. If the Combined Disclosure Statement and Plan is confirmed, the documents contained in the Plan Supplement will be approved by the Bankruptcy Court pursuant to the Confirmation Order.

**PLEASE TAKE FURTHER NOTICE** that the documents contained in the Plan Supplement are not final and remain subject to continuing negotiations among the Debtors and other interested parties. Accordingly, the Debtors reserve the right to alter, amend, modify, or supplement any document of, or add any document to, the Plan Supplement subject to the terms and conditions of the Combined Disclosure Statement and Plan.

**PLEASE TAKE FURTHER NOTICE** that the Confirmation Hearing on confirmation of the Combined Disclosure Statement and Plan and adequacy of the disclosures therein has been scheduled for **March 14, 2024 at 3:00 p.m. (ET)** before The Honorable J. Thomas M. Horan, United States Bankruptcy Judge, at the United States Bankruptcy Court for the District of Delaware, 3rd Floor, Courtroom #7, 824 North Market Street, Wilmington, Delaware

**591**

19801.  The Confirmation Hearing may be further continued from time to time without further notice other than the announcement of the adjourned date(s) by the Debtors in open court or by notice on the docket.

**PLEASE TAKE FURTHER NOTICE** that copies of the Plan Supplement, the Combined Disclosure Statement and Plan, the Solicitation Procedures Order, and all other documents filed in the Chapter 11 Cases may be obtained and reviewed without charge at https://cases.ra.kroll.com/near/, or upon request to Kroll Restructuring Administration LLC ("<u>Kroll</u>" or the "<u>Voting Agent</u>"), by (i) telephone at (844) 344-0799 (U.S./Canada, toll free) or +1 (646) 651-1196 (international, toll), or (ii) email at NearInfo@ra.kroll.com (with "Near Intelligence Inc. Solicitation Inquiry" in the subject line).

*[Remainder of Page Intentionally Left Blank]*

**592**

Dated: March 13, 2024
Wilmington, Delaware

**YOUNG CONAWAY STARGATT & TAYLOR, LLP**

*/s/ Carol E. Cox*
Edmon L. Morton (No. 3856)
Matthew B. Lunn (No. 4119)
Shane M. Reil (No. 6195)
Carol E. Cox (No. 6936)
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253
emorton@ycst.com
mlunn@ycst.com
sreil@ycst.com
ccox@ycst.com

-and-

**WILLKIE FARR & GALLAGHER LLP**
Rachel C. Strickland (admitted *pro hac vice*)
Andrew S. Mordkoff (admitted *pro hac vice*)
Joseph R. Brandt (admitted *pro hac vice*)
787 Seventh Avenue
New York, New York 10019
Telephone:  (212) 728-8000
Facsimile:  (212) 728-8111
rstrickland@willkie.com
amordkoff@willkie.com
jbrandt@willkie.com

*Co-Counsel to the Debtors and Debtors in Possession*

- 4 -

**593**

## Exhibit A

**Amended Litigation Trust Agreement**

DRAFT – REMAINS SUBJECT TO REVIEW IN ALL RESPECTS BY PARTIES
IN INTEREST, INCLUDING PREPETITION LENDERS AND THE COMMITTEE

**594**

# NEAR INTELLIGENCE, INC., *ET AL.* LITIGATION TRUST AGREEMENT

This *Near Intelligence, Inc., et al. Litigation Trust Agreement* (the "Litigation Trust Agreement"), dated as of March [●], 2024, is entered into by and between Near Intelligence, Inc., Near Intelligence LLC, Near North America, Inc., and Near Intelligence Pte. Ltd. (collectively, the Debtors"), on the one hand, and [●] (the "Litigation Trustee"), on the other hand, for the benefit of the Beneficiaries (defined below) pursuant to the terms of the *Modified Third Amended Combined Disclosure Statement and Chapter 11 Plan of Liquidation of Near Intelligence, Inc. and Its Affiliated Debtors* [Docket No. 336] (as amended, restated, supplemented or otherwise modified from time to time, the "Combined Disclosure Statement and Plan"), which Combined Disclosure Statement and Plan was confirmed by the *Findings of Fact, Conclusions of Law, and Order Approving Adequacy of Disclosures on a Final Basis and Confirming the Third Amended Combined Disclosure Statement and Chapter 11 Plan of Liquidation of Near Intelligence, Inc. and Its Affiliated Debtors Pursuant to Chapter 11 of the Bankruptcy Code*, entered on March [14], 2024 [Docket No. ●] (the "Confirmation Order") by the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") in the jointly administered Chapter 11 cases captioned *In re Near Intelligence, Inc., et al.*, Case No. 23-11962 (TMH) (collectively, the "Chapter 11 Cases").

## WITNESSETH

**WHEREAS,** the Litigation Trust is created pursuant to, and to effectuate, certain of the purposes set forth in the Combined Disclosure Statement and Plan and the Confirmation Order; and

**WHEREAS,** the Litigation Trust is created on behalf, and for the sole benefit, of the Beneficiaries pursuant to the Combined Disclosure Statement and Plan and the Confirmation Order; and

**WHEREAS,** the Litigation Trust is established as a liquidating trust in accordance with Treasury Regulation Section 301.7701-4(d) for the sole purpose of collecting, liquidating, and distributing the proceeds of the Litigation Trust Assets in an expeditious and orderly manner for the benefit of the Beneficiaries in accordance with the terms of this Litigation Trust Agreement and the Combined Disclosure Statement and Plan with no objective to continue or engage in the conduct of a trade or business; and

**WHEREAS,** the Litigation Trust is intended to qualify and be treated as a grantor trust for U.S. federal income tax purposes pursuant to Sections 671 through 677 of the Internal Revenue Code of 1986, as amended; and

**WHEREAS,** pursuant to the Combined Disclosure Statement and Plan and this Litigation Trust Agreement, the Debtors, the Litigation Trustee and the Beneficiaries are required to treat the transfer of the Litigation Trust Assets to the Litigation Trust, for all U.S. federal income tax purposes, as a transfer of the Litigation Trust Assets by the Debtors to the Beneficiaries in satisfaction of their Allowed Claims followed by a transfer of the Litigation Trust Distribution Proceeds by the Beneficiaries to the Litigation Trust in exchange for their Litigation Trust Interests herein, and to treat the Beneficiaries as the grantors and owners of the Litigation Trust in accordance with Treasury Regulation section 301.7701-4; and

**NOW, THEREFORE,** in consideration of the promises and the mutual covenants contained herein and in the Combined Disclosure Statement and Plan, the Debtors and the Litigation Trustee agree as follows:

<h2 style="text-align:center">ARTICLE I</h2>

<h2 style="text-align:center">DEFINITIONS AND INTERPRETATIONS</h2>

1.1    <u>Definitions</u>.

1.1.1    "<u>Assigned Direct Creditor Claims</u>" means any Direct Creditor Claims held by General Unsecured Creditors which are assigned to the Litigation Trust in accordance with <u>Section 3.2</u> hereof, which in each case are subject to the distribution priorities set forth in <u>Section 4.1</u> herein.

1.1.2    "<u>Available Litigation Trust Cash</u>" means the gross proceeds generated through the liquidation and monetization of Distributable Assets or any portion thereof, less (a) charges, costs and expenses that are rightly deducted and attributable to the liquidation and monetization of the Distributable Assets including, but not limited to, all Litigation Trust Expenses; and (b) the Disputed Claims Reserve.

1.1.3    "<u>Beneficiaries</u>" means, collectively, Holders of a Litigation Trust Interest, whether individually or as agent on behalf of one or more other Entities, which shall include (i) Holders of Allowed Prepetition Loan Claims on account thereof; and (ii) Holders of Allowed General Unsecured Claims that elect to receive Litigation Trust Interests in accordance with the Combined Disclosure Statement and Plan entitling such Holders to their Pro Rata Share of the Litigation Trust Distribution Proceeds, in accordance with the distribution priorities set forth in <u>Section 4.1</u> hereof, up to the Allowed amount of such Allowed General Unsecured Claim or Allowed Prepetition Loan Claim, as applicable.

1.1.4    "<u>Confirmation Date</u>" means March [14], 2024.

1.1.5    "<u>Disputed Claim</u>" means any Claim (i) which has not yet been Allowed or Disallowed in accordance with the terms of the Combined Disclosure Statement and Plan, or (ii) held by a Person or Entity against whom or which any of the Debtors or the Litigation Trustee has commenced a proceeding, including an objection to such Claim.

1.1.6    "<u>Disputed Claims Reserve</u>" means cash in an amount equal to the Distributions which would have been made to Beneficiaries on account of Disputed Claims if such claims were Allowed or such other amount as may be ordered by the Bankruptcy Court.

1.1.7    "<u>Distributable Assets</u>" means the Litigation Trust Assets and any assets that are available or will become available for Distribution (and the proceeds thereof) transferred to and vested in the Litigation Trust on the Effective Date and any other funds or assets that are available for the benefit of the Beneficiaries and/or are subsequently transferred to or recovered by the Litigation Trust, including by the Debtors and, with respect to the Assigned Direct Creditor Claims, the applicable General Unsecured Creditors, including the Litigation Trust Assets and the Retained Causes of Action, all as in accordance with the Combined Disclosure Statement and Plan and this Litigation Trust Agreement.

1.1.8    "<u>Distribution</u>" means a distribution of property to a Beneficiary in accordance with this Litigation Trust Agreement.

1.1.9    "Direct Creditor Claims" any direct claims or causes of action that any General Unsecured Creditor may have against third parties related to the Debtors or any of the Debtors' current or former officers or directors, including, for the avoidance of doubt, any guaranties in favor of the Subordinated Noteholders in connection with the Subordinated Convertible Debentures.

1.1.10    "Final Order" means an order of the Bankruptcy Court or any other court of competent jurisdiction (a) as to which the time to appeal shall have expired and as to which no appeal shall then be pending or (b) if a timely appeal shall have been filed, such appeal has been resolved by a Final Order or agreement of all the parties to such appeal.

1.1.11    "General Unsecured Claim" means an Allowed General Unsecured Claim under the Combined Disclosure Statement and Plan that is not a Prepetition Loan Claim.

1.1.12    "General Unsecured Creditor" means a holder of an Allowed General Unsecured Claim.

1.1.13    "Litigation Trust" means the liquidating trust established pursuant to the terms of this Litigation Trust Agreement, the Combined Disclosure Statement and Plan, and the Confirmation Order.

1.1.14    "Litigation Trustee" means (a) initially, the person or corporation defined as the "Litigation Trustee" above, and (b) any successors or replacements duly appointed under the terms of this Litigation Trust Agreement, and is the person referred to as the "Litigation Trustee" in the Combined Disclosure Statement and Plan.

1.1.15    "Litigation Trust Counsel" means counsel acceptable to the Prepetition Lenders, engaged by the Litigation Trust in order to pursue the Retained Causes of Causes and, if applicable, any Assigned Direct Creditor Claims.

1.1.16    "Litigation Trust Board" means the board that shall oversee the Litigation Trust in accordance with the Litigation Trust Agreement and the Combined Disclosure Statement and Plan, the initial composition of which shall consist of one (1) member designated by the Committee, which member shall be reasonably acceptable to the DIP Agent and the Prepetition Agent (the "Committee Board Member"), and two (2) members designated by the DIP Agent and the Prepetition Agent, which members shall be selected in consultation with the Committee, which members are listed in Section 11.2 hereof.

1.1.17    "Litigation Trust Financing Facility" means that certain agreement by and between the Litigation Trust Lenders and the Litigation Trust in form and substance acceptable to the Prepetition Lenders and the Litigation Trustee in consultation with the Litigation Trust Board.

1.1.18    "Permitted Investments" shall include (a) short-term direct obligations of, or obligations guaranteed by, the United States of America, (b) short-term obligations of any agency or corporation which is or may hereafter be created by or pursuant to an act of the Congress of the United States as an agency or instrumentality thereof, (c) such other investments as the Bankruptcy Court may approve from time to time, or (d) demand deposits, money market account, or certificates of deposit at any bank or trust company that has, at the time of the deposit, a capital stock and surplus aggregating at least $1,000,000,000, *provided*, *however*, that the scope of any Permitted Investments shall be limited to include only those investments that a liquidating trust, within the meaning of Treas. Reg. § 301.7701-4(d), may be permitted to hold, pursuant to Treasury

Regulations, or any modification in the IRS guidelines, whether set forth in IRS rulings, other IRS pronouncements, or otherwise, and to the investment guidelines of section 345 of the Bankruptcy Code, *provided*, *further*, *however*, the requirement of complying with the investment guidelines of section 345 of the Bankruptcy Code may be waived by the Litigation Trustee with the approval of the Litigation Trust Board.

1.1.19  "Subordinated Convertible Debentures" has the meaning ascribed to "Convertible Debentures" in the Combined Disclosure Statement and Plan.  The Subordinated Convertible Debentures are subject to the Subordination Agreements other than to the extent expressly set forth in the Combined Disclosure Statement and Plan or in this Litigation Trust Agreement.

1.1.20  "Subordinated Noteholders" means, collectively, the holders and any other beneficiary of the Subordinated Convertible Debentures.

1.1.21  "Subordination Agreements" means those certain Subordination Agreements, dated as of March 31, 2023 and May 18, 2023, by and among the Prepetition Agent and the Subordinated Noteholders  with respect to the Convertible Debentures.

1.2  Use of Plan Definitions.  All terms which are used in this Litigation Trust Agreement but not defined herein shall have the meaning set forth in the Combined Disclosure Statement and Plan or Confirmation Order, as applicable.

1.3  Headings; Interpretation.  The headings in this Litigation Trust Agreement are for convenience of reference only and shall not limit or otherwise affect the provisions of this Litigation Trust Agreement.  Words denoting the singular number shall include the plural number and vice versa, and words denoting one gender shall include the other gender.

1.4  Particular Words.  Reference in this Litigation Trust Agreement to any Section or Article is, unless otherwise specified, to that Section or Article under this Litigation Trust Agreement.  The words "hereof," "herein," "hereunder," and similar terms shall refer to this Litigation Trust Agreement and not to any particular Section or Article of this Litigation Trust Agreement.

## ARTICLE II

## DECLARATION OF TRUST

2.1  Creation and Name.  As contemplated by the Combined Disclosure Statement and Plan and the Confirmation Order, the Debtors hereby establish and create the Litigation Trust, on behalf of, and for the benefit of the Beneficiaries as of the date hereof (the "Effective Date").  The Litigation Trustee may conduct the affairs of the Litigation Trust under the name "Near Intelligence, Inc., *et al*. Litigation Trust," and the trust so named is the Litigation Trust referred to as the "Litigation Trust" in the Combined Disclosure Statement and Plan and Confirmation Order.

2.2  Purpose of Litigation Trust.  This Litigation Trust is intended to be a grantor trust for United States federal income tax purposes and, to the extent provided by law, shall be governed and construed in all respects as such a grantor trust.  The Debtors and the Litigation Trustee, as contemplated by the Combined Disclosure Statement and Plan and Confirmation Order, hereby create the Litigation Trust solely for the purpose of, liquidating and distributing the Distributable Assets in accordance with the terms of this Litigation Trust Agreement, the Plan and Confirmation

**598**

Order with no objective to continue or engage in the conduct of a trade or business. The Litigation Trustee shall engage only in activities reasonably necessary to, and consistent with the liquidating purpose of the Litigation Trust including, but not limited to, (a) investigating and, if appropriate, pursuing, settling or abandoning the Retained Causes of Action not otherwise released under the Combined Disclosure Statement and Plan, (b) administering and liquidating the Distributable Assets, (c) reconciling, objecting to, settling or otherwise resolving any Disputed Claims, as provided for in the Combined Disclosure Statement and Plan and subject to the limitation set forth in <u>Section 3.7</u> hereof, and (d) making Distributions to the Beneficiaries from the Litigation Trust as provided for in the Combined Disclosure Statement and Plan and this Litigation Trust Agreement in accordance with <u>Section 4.1</u> hereof. The activities of the Litigation Trust shall be limited to those activities set forth in this Litigation Trust Agreement.

2.3     <u>Transfer of Distributable Assets</u>. As contemplated by the Combined Disclosure Statement and Plan and the Confirmation Order, the Debtors hereby grant, release, assign, convey, transfer and deliver, on behalf of the Beneficiaries, all of the Debtors' rights, title and interest in the Distributable Assets in trust for the benefit of the Beneficiaries, free and clear of all encumbrances of all other Entities for the uses and purposes as specified in the Combined Disclosure Statement and Plan and this Litigation Trust Agreement. For the avoidance of doubt, the Distributable Assets include the full amount of the Wind-Down Budget. For the further avoidance of doubt, the costs and expenses of the Litigation Trust shall be funded exclusively from the Wind-Down Budget, the Distributable Assets and the Litigation Trust Financing Facility.

2.4     <u>Securities Law</u>. It is intended that the interests of the Beneficiaries in the Litigation Trust and the entitlements hereunder (the "<u>Beneficial Interests</u>"), if any, of such Beneficiaries, shall not constitute "securities." To the extent applicable and to the extent the Beneficial Interests or any entitlements of the Beneficiaries are deemed to be "securities," the issuance of the Beneficial Interests or the entitlements hereunder or under any Combined Disclosure Statement and Plan shall be exempt, pursuant to section 1145 of the Bankruptcy Code from Section 4(a)(2) of the Securities Act and any state and local laws requiring registration of securities. If the Litigation Trustee determines, with the advice of counsel, that the Litigation Trust is required to comply with the registration and reporting requirements of the Securities Act of 1933, as amended, the Securities and Exchange Act of 1934, as amended (collectively, the "<u>Securities Act</u>), the Trust Indenture Act of 1939, as amended (the "<u>Trust Indenture Act</u>"), or the Investment Company Act of 1940, as amended (the "<u>Investment Company Act</u>"), then the Litigation Trustee shall take any and all actions to comply with such registration and reporting requirements and file necessary periodic reports with the Securities and Exchange Commission. Notwithstanding the foregoing, nothing contained herein shall be deemed to preclude the Litigation Trustee from amending this Litigation Trust Agreement to make such changes as are deemed necessary or appropriate by the Litigation Trustee, with the advice of counsel, to ensure that the Litigation Trust is not subject to registration and/or reporting requirement of the Securities Act, the Trust Indenture Act or the Investment Company Act, provided that such amendments do not adversely affect the Distributions to be made under the terms of this Litigation Trust Agreement.

2.5     <u>Appointment and Acceptance of Litigation Trustee</u>. The Litigation Trustee accepts the Litigation Trust created by this Litigation Trust Agreement and the grant, assignment, transfer, conveyance, and delivery to the Litigation Trustee, on behalf, and for the benefit, of the Beneficiaries, by the Debtors of all of their respective right, title, and interest in the Distributable Assets, upon and subject to the terms and conditions set forth in this Litigation Trust Agreement,

the Combined Disclosure Statement and Plan and the Confirmation Order and any subsequent order of the Bankruptcy Court that is consistent with the terms and purpose of the Combined Disclosure Statement and Plan.

2.6     Transfer of Retained Causes of Action.  The Debtors transfer to, and agree and authorize the Litigation Trustee to prosecute, settle, compromise and/or dismiss the Retained Causes of Action, including any claims against current or former officers or directors for breach of fiduciary duties, on behalf of, and in the name of, the Debtors and their estates for the benefit of the Litigation Trust Beneficiaries.   To the extent that Debtors or their estates receive any recovery from the prosecution of the Retained Causes of Action, including, without limitation, from any applicable insurance provider, the Debtors agree to promptly turn such recovery over to the Litigation Trust for distribution in accordance with the terms of this Litigation Trust Agreement.

2.7     No Reversion to Debtors or Others.  The Distributable Assets shall be free and clear of all encumbrances of the Debtors or any other Entity.

2.8     Funding of the Litigation Trust.  On or after the Effective Date and in accordance with the Combined Disclosure Statement and Plan, the Litigation Trust shall be funded with the Litigation Trust Financing Facility.

## ARTICLE III

## ADMINISTRATION OF THE LITIGATION TRUST

**General Provisions**

3.1     Rights, Powers, and Privileges.  The Litigation Trust shall be administered by the Litigation Trustee and the Litigation Trust Board. For such purposes, the Litigation Trustee shall have only the rights, powers and privileges expressly provided in this Litigation Trust Agreement, the Combined Disclosure Statement and Plan and in any other order of the Bankruptcy Court that is not, absent the consent of the Litigation Trustee, inconsistent with the terms and purpose of the Combined Disclosure Statement and Plan and Litigation Trust Agreement.  Subject to the terms of this Litigation Trust Agreement, the Litigation Trustee shall have the power to take the actions specified in this Section 3.1 and any actions reasonably incidental thereto, which the Litigation Trustee reasonably determines to be necessary or appropriate to fulfill the purpose of the Litigation Trust, including but not limited to:

A.      exercise all power and authority that may be necessary to implement the Combined Disclosure Statement and Plan on behalf of the Litigation Trust and enforce all provisions thereof;

B.      open and maintain bank accounts, make Distributions and take other actions consistent with the Combined Disclosure Statement and Plan and this Litigation Trust Agreement, including the maintenance of appropriate reserves (including the Disputed Claim Reserve), in the name of the Litigation Trust;

C.      maintain the books and records of the Litigation Trust, including any books and records of the Debtors transferred to the Litigation Trust;

D.   incur and pay reasonable and necessary expenses in connection with the implementation and consummation of the Combined Disclosure Statement and Plan;

E.   make decisions without court approval, regarding the retention or engagement of professionals or other Entities (subject to approval of such retention by a majority of the Litigation Trust Board), and to pay, without court approval, all reasonable fees and expenses of the Litigation Trust accruing from and after the Effective Date;

F.   negotiate and, with the approval of the majority of the Litigation Trust Board, enter into any financing arrangement for purposes of carrying out the purposes of the Litigation Trust and duties set forth herein, including, but not limited to, the Litigation Trust Financing Facility;

G.   collect and liquidate all Litigation Trust Assets or Assigned Direct Creditor Claims, if any, transferred or to be transferred to the Litigation Trust;

H.   prepare and file tax returns and related forms and filings on behalf of the Litigation Trust;

I.   investigate, prosecute and/or settle or abandon without court approval Retained Causes of Action or Assigned Direct Creditor Claims, if any, transferred to the Litigation Trust not otherwise released pursuant to the Combined Disclosure Statement and Plan, including, but not limited to, any claims (not otherwise released under the Combined Disclosure Statement and Plan) against current or former officers or directors for breach of fiduciary duties;

J.   seek a determination of tax liability under section 505 of the Bankruptcy Code or otherwise and to pay, or cause to be paid, from the Distributable Assets any taxes incurred by the Litigation Trustee on or after the Effective Date;

K.   invest, or cause to be invested, cash as deemed appropriate by the Litigation Trustee, provided, however, such investments shall be Permitted Investments;

L.   enter, or cause to be entered, into any agreement or execute any document required by or consistent with this Litigation Trust Agreement and the Combined Disclosure Statement and Plan;

M.   abandon, or cause to be abandoned, in any commercially reasonable manner any Distributable Assets that the Litigation Trustee reasonably concludes are burdensome or of inconsequential value and benefit to the Litigation Trust without any need for Bankruptcy Court approval;

N.   prepare and file post-Effective Date operating reports, if any, as required by the Bankruptcy Court, the Combined Disclosure Statement and Plan, applicable local rules, or this Litigation Trust Agreement;

O.   take all other actions not inconsistent with the provisions of this Litigation Trust Agreement and the Combined Disclosure Statement and Plan which

**601**

the Litigation Trustee deems reasonably necessary or desirable in connection with the administration and consummation of the Litigation Trust and Combined Disclosure Statement and Plan;

P.    exercise such other powers as may be vested in the Litigation Trustee, consistent with the intent and purpose of the Litigation Trust Agreement and Combined Disclosure Statement and Plan, by order of the Bankruptcy Court;

Q.    wind down the affairs of the Debtors and each of their subsidiaries and if, to the extent necessary, take any steps to dissolve, liquidate, bankrupt, or take other similar action with respect to each Debtor and each subsidiary of the Debtors, including by terminating the corporate or organizational existence of each such Debtor and each other subsidiary of the Debtors; and

R.    prepare and file appropriate tax returns and other reports on behalf of the Debtors and pay taxes or other obligations owed by the Debtors.

*provided*, for the avoidance of doubt and notwithstanding anything to the contrary herein, the Litigation Trustee shall have no authority to take any action in contravention of the Combined Disclosure Statement and Plan, the Confirmation Order, or this Litigation Trust Agreement, or to take any action which would make it impossible to carry on the activities of the Litigation Trust. The Litigation Trustee agrees that the purposes of the Litigation Trust as set forth in this Section 3.1 shall be fulfilled utilizing the "Wind-Down Budget" amounts in the Current DIP Budget (as defined in the Final DIP Order), except as may otherwise be provided in the Litigation Trust Financing Facility.

The Litigation Trustee and Litigation Trust Board shall have the power to act for the Debtors in the same capacity as applicable to a board of directors and officers, subject to the provisions in the Combined Disclosure Statement and Plan, Confirmation Order, and this Litigation Trust Agreement (and all articles of incorporation or amendments, by-laws, governing documents, and related documents, as applicable, are deemed amended pursuant to the Combined Disclosure Statement and Plan to permit and authorize the same). From and after the Effective Date, the Litigation Trustee and Litigation Trust Board shall be representatives of and shall act for the Debtors and their Wind-Down Estates.

3.2    <u>Assignment of Direct Creditor Claims</u>. Subject in each case to diligence and prior written approval by the Litigation Trustee, on or after the Effective Date, any General Unsecured Creditor holding a Direct Creditor Claim may assign any such Direct Creditor Claim to the Litigation Trust. Any transfer of an Assigned Direct Creditor Claim shall be documented in an assignment and assumption agreement, which agreement shall be in form and substance reasonably acceptable to the Litigation Trustee and provide that (i) the applicable General Unsecured Creditor transfers all rights, title and interests in any such Assigned Direct Creditor Claim to the Litigation Trustee and further agrees and authorizes the Litigation Trustee to (a) prosecute, settle, compromise and/or dismiss the Assigned Direct Creditor Claims, on behalf of, and in the name of, such General Unsecured Creditor for the benefit of the Beneficiaries, and (ii) any recoveries with respect to the applicable Assigned Direct Creditor Claims shall in case be subject to terms of this Litigation Trust Agreement, including without limitation the distribution priorities set forth in

Section 4.1 and, if applicable, the Subordinated Noteholder Carve Out in Section 4.2 of this Litigation Trust Agreement. For the avoidance of doubt, no General Unsecured Creditor holding a Direct Creditor Claim is required to assign any such claims to the Litigation Trust.

3.3     Transfer of Privileges.  On the Effective Date, the Debtors shall be deemed, without waiver, to assign, deliver, and transfer to the Litigation Trust and the Litigation Trustee the Debtors' and the Estates' evidentiary privileges, including the attorney/client privilege, that relate solely to the Distributable Assets transferred to the Litigation Trust.  From and after such transfer, the Debtors and their Estates shall have no further rights or obligations with respect to such Distributable Assets, other than with respect to ongoing obligations to reasonably cooperate, including to provide access to documents and personnel, as reasonably requested by the Litigation Trustee.  Such privileged communications may be shared among the Litigation Trustee, attorneys, financial advisors, accountants or other professionals and employees of the Litigation Trustee and the Litigation Trust Board without compromising the privileged nature of such communications, in accordance with the "joint interest" doctrine. From and after the Effective Date, the Litigation Trustee shall have the ability to seek and obtain examination (including document discovery and depositions) under Bankruptcy Rule 2004 against any Person or Entity in furtherance of the purpose of the Litigation Trust, and the Bankruptcy Court shall retain jurisdiction to order examinations (including examinations under Bankruptcy Rule 2004) against any Person or Entity, and to hear all matters with respect to the same.

3.4     Litigation Trust Counsel; Agents and Professionals.  The Litigation Trustee shall retain Litigation Trust Counsel on terms acceptable to a majority of the Litigation Trust Board in order to pursue the Retained Causes of Causes and, if applicable, any Assigned Direct Creditor Claims. In addition to the Litigation Trust Counsel, the Litigation Trustee may, but shall not be required to, retain attorneys, disbursing agent, financial advisors, accountants or other professionals and employees as the Litigation Trustee deems appropriate and with the approval of such retention by a majority of the Litigation Trust Board.  Subject to Section 7.9 of this Litigation Trust Agreement, the Litigation Trustee may pay the reasonable fees, costs and expenses of such persons out of the Distributable Assets in the ordinary course of business and, except as set forth below, without any further notice to any party or action, order or approval of the Bankruptcy Court. Professionals retained by the Litigation Trustee shall receive compensation and reimbursement of expenses in a manner to be determined by the Litigation Trustee, with approval by a majority of the Litigation Trust Board, and in accordance with the payment procedures set forth in Section 7.9 of this Litigation Trust Agreement.

3.5     Safekeeping of Distributable Assets.   All Distributable Assets shall, until distributed as provided herein, be held in trust for the benefit of the Beneficiaries in accordance with the Combined Disclosure Statement and Plan and this Litigation Trust Agreement.  The Litigation Trustee shall be under no liability for interest or producing income on any Distributable Assets received by it hereunder and held for Distribution to the Beneficiaries, except as such interest or income shall actually be received by the Litigation Trustee.

3.6     Insurance.  The Litigation Trustee may use Distributable Assets in the Litigation Trustee's reasonable business judgment to maintain customary insurance coverage, if available, for the protection of the Distributable Assets, with the approval of a majority of the Litigation Trust Board.  The Litigation Trustee shall obtain insurance coverage with respect to the liabilities and obligations of the Litigation Trustee and the Litigation Trust Board (in the form of an errors and omissions policy or otherwise) with the approval of a majority of the Litigation Trust Board

**603**

unless both the Litigation Trustee and Litigation Trust Board agree that such insurance shall not be required.

3.7    Confidentiality.  Any Litigation Trustee and members of the Litigation Trust Board shall, during the period that they serve in such capacity under this Litigation Trust Agreement, after removal, incapacitation or resignation, and after dissolution of the Litigation Trust, hold strictly confidential and not use for personal gain any material, non-public information of or pertaining to any Entity to which any of the Distributable Assets relates or which it has become aware of in its capacity as Litigation Trustee or Litigation Trust Board member.

**Litigation Trustee**

3.8    Fiduciary Duties of the Litigation Trustee.  The Litigation Trustee shall act in a fiduciary capacity on behalf of the interests of all Beneficiaries who are entitled to receive Distributions pursuant to the terms of the Combined Disclosure Statement and Plan and this Litigation Trust Agreement.  For the avoidance of doubt, the Litigation Trustee is not an officer, director or fiduciary of the Debtors or the Estates.

3.9    Limitations on Rights of Litigation Trustee.  The Litigation Trustee shall not at any time, on behalf of the Litigation Trust or the Beneficiaries, enter into or engage in any trade or business, and no part of the Distributable Assets, revenue, or income therefrom shall be used or disposed of by the Litigation Trust in furtherance of any trade or business.  The Litigation Trustee shall not pursue, commence or settle any Retained Causes of Action not otherwise released pursuant to the Combined Disclosure Statement and Plan without the prior consent of a majority of the Litigation Trust Board, including, but not limited to, any claims (not otherwise released under the Combined Disclosure Statement and Plan) against current or former officers or directors for breach of fiduciary duties.  A majority of the Litigation Trust Board, however, may authorize settlement parameters for the Litigation Trustee to settle certain Retained Causes of Action without having to seek further authority from the Litigation Trust Board.

3.10    Objection to Claims. The Committee Board Member shall have consultation rights with respect to any objections, settlements or other resolutions of any Disputed Claims, which are not Prepetition Loan Claims, pursued by the Litigation Trustee; provided, that, the Litigation Trustee must obtain unanimous consent from the members of the Litigation Trust Board before pursuing (or refusing to pursue) any objections or settlements with respect to Disputed Claims, which are not Prepetition Loan Claims, or Retained Causes of Action, that are asserted or scheduled in an amount equal to or in excess of $200,000.

3.11    Other Activities.  Any individual serving as the Litigation Trustee, other than in his or her individual capacity as such, shall be entitled to perform services for and be employed by third parties, provided, however, that such performance or employment affords such individual sufficient time to carry out his or her responsibilities as the Litigation Trustee.  In addition, the Litigation Trustee shall not be prohibited from engaging in any trade or business on its own account, provided that such activity does not interfere or conflict with the Litigation Trustee's administration of the Litigation Trust.

3.12    Investments by Litigation Trustee.  The Litigation Trustee may only invest funds held in the Litigation Trust in Permitted Investments and, provided that the Litigation Trustee does so, it shall have no liability in the event of insolvency of any institution in which the Litigation

-10-

Trustee has invested any of the Distributable Assets or any proceeds, revenue, or income therefrom. The Litigation Trustee may expend the cash of the Litigation Trust (a) as reasonably necessary to meet contingent liabilities and to maintain the value of the Distributable Assets during liquidation, (b) to pay reasonable administrative expenses (including, but not limited to, any taxes imposed on the Litigation Trust) and (c) to satisfy other liabilities incurred by the Litigation Trust in accordance with the Combined Disclosure Statement and Plan and this Litigation Trust Agreement (including, without limitation, the payment of any taxes).

3.13    <u>Litigation Trustee Action</u>. The Litigation Trustee shall hold, collect, conserve, protect and administer the Litigation Trust in accordance with the provisions of this Litigation Trust Agreement and the Combined Disclosure Statement and Plan, and pay and distribute amounts as set forth herein for the purposes set forth in this Litigation Trust Agreement and the Combined Disclosure Statement and Plan. The Litigation Trustee shall exercise its business judgment for the benefit of the Beneficiaries in order to maximize the value of the Distributable Assets and Distributions, giving due regard to the cost, risk, and delay of any course of action. Any good faith determination by the Litigation Trustee as to what actions are in the best interests of the Litigation Trust shall be determinative.

3.14    <u>Bankruptcy Court Approval of Litigation Trustee Actions</u>. Except as provided in this Litigation Trust Agreement or the Combined Disclosure Statement and Plan, the Litigation Trustee need not seek or obtain an order or approval of the Bankruptcy Court or any other court in the exercise of any power, rights, or discretion conferred hereunder, or account to the Bankruptcy Court or any other court as to the results of its actions. Notwithstanding the foregoing, the Litigation Trustee may submit to the Bankruptcy Court any matter regarding which the Litigation Trustee may desire to have explicit approval of the Bankruptcy Court for the taking of any specific action proposed to be taken by the Litigation Trustee with respect to the Distributable Assets, Disputed Claims, the Litigation Trust, the Litigation Trust Agreement, the Combined Disclosure Statement and Plan, or the Debtors, including the administration and Distribution of the Distributable Assets and the resolution of Disputed Claims. The Bankruptcy Court shall retain jurisdiction for such purposes and may approve or disapprove any such proposed action upon a motion filed by the Litigation Trustee. In addition, the Litigation Trustee shall have the authority, but not the obligation, to seek Bankruptcy Court approval to sell any Asset free and clear of any and all encumbrances (to the extent any Asset is not already free and clear of any all such encumbrances).

**<u>Litigation Trust Board</u>**

3.15    <u>Litigation Trust Board</u>. The Litigation Trust Board shall be established on the Effective Date and will remain and continue in full force and effect until the Litigation Trust is dissolved in accordance with the terms of this Litigation Trust Agreement. The Litigation Trust Board shall have the rights and obligations set forth in this Litigation Trust Agreement. In all circumstances, the Litigation Trust Board shall act in the best interests of all Beneficiaries and in furtherance of the purpose of the Litigation Trust. Notwithstanding anything contained in this Litigation Trust Agreement, the Litigation Trust Board shall not take any action which will cause the Litigation Trust to fail to qualify as a "liquidating trust" for U.S. federal income tax purposes.

3.16    <u>Litigation Trust Board Compensation</u>. Members of the Litigation Trust Board shall serve [without compensation], provided, however, members of the Litigation Trust Board shall be

entitled to reimbursement from the Litigation Trust for their reasonable and necessary out of pocket expenses incurred in connection with their service as members of the Litigation Trust Board.

3.17    <u>Litigation Trust Board Tenure and Replacement</u>.  Each member of the Litigation Trust Board will serve until death, incapacitation or resignation.  A member of the Litigation Trust Board may resign at any time by providing a written notice of resignation to the Litigation Trustee and remaining members of the Litigation Trust Board.  Upon the resignation, death or incapacity of a Litigation Trust Board member, a successor member may, but shall not be required to, be appointed by a majority of the remaining members of the Litigation Trust Board, provided that any such successor member must be approved by either (i) the Prepetition Lenders, or (ii) at least one member of the Litigation Trust Board appointed by the Prepetition Lenders.

3.18    <u>Litigation Trust Board Action</u>.  Except as may otherwise be provided herein, a majority of the members of the Litigation Trust Board shall constitute a quorum for any action by the Litigation Trust Board, and the act of a majority of those present at any meeting at which a quorum is present, shall be the act of the Litigation Trust Board.  In the event of a tie vote, the Litigation Trustee shall be deemed a voting member for the sole purpose of breaking any such tie vote of the Litigation Trust Board.  Any or all members of the Litigation Trust Board may participate in a regular or special meeting by use of telephone, or similar communications equipment by means of which all persons participating in the meeting may hear each other.  The Litigation Trust Board may adopt, by majority vote of all members, by-laws or other rules of procedure that are not inconsistent with the terms of this Litigation Trust Agreement.  Notwithstanding anything contained in this <u>Section 3.18</u>, a Litigation Trust Board member shall be recused from the Litigation Trust Board's deliberations and votes on any matters as to which such member has a conflicting interest as determined by both the Litigation Trustee and the other members of the Litigation Trust Board.

3.19    <u>Litigation Trust Board Action Without a Meeting</u>.  Any action required or permitted to be taken by the Litigation Trust Board may be taken without a meeting if the action is taken by unanimous written consent, as evidenced by one or more written consents describing the action taken, signed by the members of the Litigation Trust Board or by such other procedures as may be agreed upon by a majority of the Litigation Trust Board, including negative notice procedures.

3.20    <u>Periodic Consultation with Litigation Trust Board</u>.  In addition to any other consultation and reporting requirements set forth in this Litigation Trust Agreement, the Litigation Trustee shall report and consult with the Litigation Trust Board at its discretion or as reasonably requested by the Litigation Trust Board or any member thereof concerning the status and administration of the Litigation Trust and the Distributable Assets.

## ARTICLE IV

## DISTRIBUTIONS FROM THE LITIGATION TRUST

4.1    <u>Litigation Trust Election</u>.  In accordance with the Combined Disclosure Statement and Plan, within five (5) business days after a General Unsecured Claim becomes an Allowed Claim under the Combined Disclosure Statement and Plan, the Debtors or the Litigation Trustee, as applicable, shall cause a notice to be served on the holder of such Allowed General Unsecured Claim informing such holder of its right under the Combined Disclosure Statement and Plan to elect to receive Litigation Trust Interests on account of its Allowed General Unsecured Claim, and

that not timely making such election will result in such Holder receiving, in full and final satisfaction of such Holder's Allowed General Unsecured Claim, such Holder's Pro Rata Share of the GUC Cash Pool in accordance with the Combined Disclosure Statement and Plan. Such notice must provide no less than thirty (30) days for each Holder to make the election, which election may be made either via submission of an election form via U.S. Mail or by online submission through the Debtors' claims agent's website.

4.2 <u>Priority of Distributions</u>. Except as provided herein, Distributions of Available Litigation Trust Cash shall be distributed to Beneficiaries as follows:

a) *First*, to the Litigation Trustee to pay the Litigation Trust Expenses and for compensation and reimbursement of reasonable and documented expenses to Litigation Trust Board;

b) *Second*, to repay the Litigation Trust Financing Facility until all obligations related to the Litigation Trust Financing Facility are satisfied in full;

c) *Third*, after all obligations related to the Litigation Trust Financing Facility are satisfied in full, the next $5 million of Litigation Trust Distribution Proceeds, net of any Litigation Trust Expenses, shall be distributed as follows:

    i) 95% to Holders of Allowed Prepetition Loan Claims, solely to the extent such Claims have not been satisfied in full on account of Litigation Trust Distribution Proceeds or otherwise under the Combined Disclosure Statement and Plan; and

    ii) 5% to Holders of Allowed General Unsecured Claims that have elected to receive Litigation Trust Interests, solely to the extent such Claims have not been satisfied in full;

d) *Fourth*, the next $15 million of Litigation Trust Distribution Proceeds, net of any Litigation Trust Expenses, shall be distributed as follows:

    i) 90% to Holders of Allowed Prepetition Loan Claims, solely to the extent such Claims have not been satisfied in full on account of Litigation Trust Distribution Proceeds or otherwise under the Combined Disclosure Statement and Plan; and

    ii) 10% to Holders of Allowed General Unsecured Claims that have elected to receive Litigation Trust Interests, solely to the extent such Claims have not been satisfied in full;

e) *Fifth*, the next $15 million of Litigation Trust Distribution Proceeds, net of any Litigation Trust Expenses, shall be distributed as follows:

    i) 87.5% to Holders of Allowed Prepetition Loan Claims, solely to the extent such Claims have not been satisfied in full on account of Litigation Trust Distribution Proceeds or otherwise under the Combined Disclosure Statement and Plan; and

ii) 12.5% to Holders of Allowed General Unsecured Claims that have elected to receive Litigation Trust Interests, solely to the extent such Claims have not been satisfied in full; and

f)     *Sixth*, any incremental Litigation Trust Distribution Proceeds, net of any Litigation Trust Expenses, shall be distributed as follows:

i) 85% to Holders of Allowed Prepetition Loan Claims, solely to the extent such Claims have not been satisfied in full on account of Litigation Trust Distribution Proceeds or otherwise under the Combined Disclosure Statement and Plan; and

ii) 15% to Holders of Allowed General Unsecured Claims that have elected to receive Litigation Trust Interests, solely to the extent such Claims have not been satisfied in full.

4.3     <u>Subordination Agreement Carve Out</u>.    Solely with respect to Distributions of Available Litigation Trust Cash in accordance with <u>Section 4.1</u> of this Litigation Trust Agreement, Subordinated Noteholders constituting Beneficiaries hereunder shall be entitled to receive up to an aggregate amount of $900,000 in Litigation Trust Distribution Proceeds (in the aggregate among all Subordinated Noteholders and any assignees constituting Beneficiaries), prior to and notwithstanding the Prepetition Lenders' enforcement of any rights under the Subordination Agreements (the "<u>Subordinated Noteholder Carve Out</u>"); <u>provided</u>, <u>that</u>, for the avoidance of doubt, except as provided in this <u>Section 4.2</u>, nothing herein shall alter, modify or otherwise limit the Prepetition Lenders' rights under the Subordination Agreements.

4.4     <u>Payments and Distributions on Disputed Claims</u>.    Except as otherwise provided in the Combined Disclosure Statement and Plan, a Final Order or as agreed to by the relevant parties, distributions under the Combined Disclosure Statement and Plan on account of a Disputed Claim that becomes an Allowed Claim after the Effective Date shall be made on the day selected by the Litigation Trustee pursuant to the terms of the Combined Disclosure Statement and Plan and this Litigation Trust Agreement.    Notwithstanding any provision otherwise provided herein, and except as otherwise agreed to by the relevant parties, no partial payments and no partial distributions shall be made with respect to a Disputed Claim until all such disputes in connection with such Disputed Claim have been resolved by settlement or Final Order.    In the event that there are Disputed Claims requiring adjudication and resolution, the Litigation Trustee, with the approval of a majority of the Litigation Trust Board, shall establish appropriate Disputed Claim Reserves for potential payment of such Disputed Claims if such claims were Allowed or such other amount as may be ordered by the Bankruptcy Court.

4.5     <u>Distributions in General</u>.    All Distributions to Beneficiaries hereunder as of the applicable distribution date shall be made on or as soon as practicable after the applicable distribution date pursuant and subject to the terms of Article X of the Combined Disclosure Statement and Plan, which is incorporated, *mutatis mutandis*, into and is part of this Litigation Trust Agreement as if set forth in full herein.

4.6     <u>Calculation of Amounts to Be Distributed</u>.    Each Holder of an Allowed Claim against the Debtors shall receive the distributions that the Combined Disclosure Statement and Plan provides for Allowed Claims in the applicable Class.    Except as otherwise provided herein, Holders of Claims shall not be entitled to interest, dividends or accruals on the distributions

**608**

provided for herein, regardless of whether such distributions are delivered on or at any time after the Effective Date.

## ARTICLE V

## BENEFICIARIES

5.1     <u>Incidents of Ownership</u>.  The Beneficiaries shall be the sole beneficiaries of the Litigation Trust and the Distributable Assets, and the Litigation Trustee shall retain only such incidents of ownership as are necessary to undertake the actions and transactions authorized in this Litigation Trust Agreement and Combined Disclosure Statement and Plan and distribute the Distributable Assets to the Beneficiaries.

5.2     <u>Interest Beneficial Only</u>.  The ownership of the Litigation Trust Interests shall not entitle any Beneficiary or the Debtors to any title in or to the Distributable Assets or to any right to call for a partition or division of such Distributable Assets or to require an accounting, except as may specifically be provided herein or in any order of the Bankruptcy Court.

5.3     <u>Evidence of Beneficial Interest</u>.  Ownership of a beneficial interest in the Distributable Assets shall not be evidenced by any certificate, security, or receipt, or in any other form or manner whatsoever, except as maintained on the books and records of the Litigation Trust by the Litigation Trustee as Litigation Trust Interests held by the Beneficiaries.  In maintaining the Litigation Trustee's register of Litigation Trust Interests, the Litigation Trustee may rely upon the Debtors' schedules and the official claims register maintained in the Chapter 11 Cases.

5.4     <u>Limits on Transfers and Notice of Transfer of Beneficial Interest</u>.  The interests of Beneficiaries are not negotiable and not transferable except (a) pursuant to applicable laws of descent and distribution or (b) by operation of law.  The Litigation Trustee shall not be required to record any transfer which, in the Litigation Trustee's sole discretion may be construed to create any uncertainty or ambiguity as to the identity of the holder of the interest in the Litigation Trust. Until appropriate notification and proof thereof, in a form satisfactory to the Litigation Trustee in the exercise of its reasonable discretion, is submitted to the Litigation Trustee by registered or certified United States mail, return receipt requested, the Litigation Trustee may continue to pay all amounts to or for the benefit of the original Beneficiary.  The Litigation Trustee may rely without any further investigation upon any notification and proof of a transfer of a beneficial interest in the Litigation Trust submitted in accordance with this <u>Section 5.4</u>  that the Litigation Trustee reasonably believes to be genuine.

## ARTICLE VI

## THIRD PARTY RIGHTS AND LIMITATION OF LIABILITY

6.1     <u>Reliance</u>.  The Litigation Trustee may absolutely and unconditionally rely, and shall be protected in acting upon any resolution, statement, instrument, opinion, report, notice, request, consent, order, or other paper or document that the Litigation Trustee reasonably believes in good faith to be genuine.

6.2     <u>Parties Dealing with the Litigation Trustee</u>.  In the absence of actual knowledge to the contrary, any Entity dealing with the Litigation Trust or the Litigation Trustee shall be entitled to rely on the authority of the Litigation Trustee or any of the Litigation Trustee's agents to act in connection with the Distributable Assets and this Litigation Trust Agreement.  There shall be no

obligation on any Entity dealing with the Litigation Trustee to inquire into the validity, expediency or propriety of any transaction by the Litigation Trustee or any agent of the Litigation Trustee.

6.3     Limited Recourse.     Except as otherwise provided in this Litigation Trust Agreement, Entities (including any professionals retained by the Litigation Trustee in accordance with this Litigation Trust Agreement) engaged in transactions with the Litigation Trust or the Litigation Trustee shall look only to the Distributable Assets to satisfy any liability incurred in connection with carrying out the terms of this Litigation Trust Agreement.

6.4     Limitation of Liability.     Except as expressly set forth in this Litigation Trust Agreement, on and after the Effective Date, the Litigation Trust shall have no liability on account of any claims.  Neither the Litigation Trustee, the Litigation Trust Board, their respective members, designees or professionals, or any of their duly designated agents or representatives (collectively, the "Covered Persons"), shall be held personally liable for any claim asserted against them or the Litigation Trust in connection with their duties and responsibilities relating to the Distributable Assets and Litigation Trust.  Without limiting the generality of the foregoing, none of the Covered Persons shall be liable for any action taken or omitted to be taken in furtherance of their responsibilities hereunder, except to the extent that their conduct is determined by Final Order to be due to their own willful misconduct, gross negligence, or fraud.  The Litigation Trust Board shall be entitled to enjoy all of the rights, powers, immunities and privileges of an official committee of unsecured creditors.  All Entities dealing with the Litigation Trustee, Litigation Trust or Litigation Trust Board shall only look to the Distributable Assets, or any insurance that may cover such claim, to satisfy any liability incurred by the Litigation Trustee or Litigation Trust Board.  Nothing contained in this Litigation Trust Agreement or the Combined Disclosure Statement and Plan shall be deemed to be an assumption by the Beneficiaries, Litigation Trust or Litigation Trustee of any of the liabilities, obligations or duties of the Debtors or the Beneficiaries.

6.5     Non-Liability for Acts of Others.  The Litigation Trustee and the Litigation Trust Board may, in connection with the performance of their functions, and in their sole and absolute discretion, consult with attorneys, accountants, financial advisors and agents, and shall not be liable for any act taken, omitted to be taken, or suffered to be done in accordance with advice or opinions rendered by such persons, regardless of whether such advice or opinions are provided in writing.  Notwithstanding such authority, neither the Litigation Trustee nor the Litigation Trust Board shall be under any obligation to consult with attorneys, accountants, financial advisors or agents, and their determination not to do so shall not result in the imposition of liability on the Litigation Trustee or Litigation Trust Board or their respective members and/or designees.  Any successor Litigation Trustee may accept and rely upon any accounting made by or on behalf of any predecessor Litigation Trustee hereunder, and any statement or representation made by a predecessor Litigation Trustee or its agents as to the Distributable Assets or as to any other fact bearing upon the prior administration of the Litigation Trust, so long as it has a good faith basis to do so.  A successor Litigation Trustee shall not be liable for having accepted and relied in good faith upon any such accounting, statement, or representation if it is later proved to be incomplete, inaccurate, or untrue.  A successor Litigation Trustee shall not be liable for any act or omission of any predecessor Litigation Trustee, nor have a duty to enforce any claims against any predecessor Litigation Trustee on account of any such act or omission.

6.6     Indemnification.  The Litigation Trust shall indemnify and hold harmless, to the fullest extent permitted by law, the Litigation Trustee, the Litigation Trust Board and their employees, members, designees and professionals, and all duly designated agents and

**610**

representatives thereof (in their capacity as such; each, an "Indemnified Party" and collectively, the "Indemnified Parties"), from and against and in respect of all liabilities, losses, damages, claims, costs and expenses (including reasonable attorneys' fees, disbursements, and related expenses) which such Indemnified Parties may incur or to which such Indemnified Parties may become subject in connection with any action, suit, proceeding or investigation brought by or threatened against such Indemnified Party arising out of or due to their acts or omissions, or consequences of such acts or omissions, with respect to the implementation or administration of the Litigation Trust or the Combined Disclosure Statement and Plan or the discharge of their duties under this Litigation Trust Agreement; *provided*, *however*, that no such indemnification will be made to such persons for actions or omissions that are determined by a Final Order to be a result of such persons' willful misconduct, gross negligence, or fraud. Entities dealing with the Litigation Trustee and Litigation Trust Board may only look to the Distributable Assets and any applicable insurance coverage to satisfy any liability incurred by the Litigation Trustee or the Litigation Trust Board to such Entity in carrying out the terms of this Litigation Trust Agreement, and neither the Litigation Trustee nor the Litigation Trust Board shall have any personal obligation to satisfy any such liability. Notwithstanding any provision in this Litigation Trust Agreement to the contrary, an Indemnified Party shall be entitled to request advances from the Litigation Trust to cover reasonable fees and necessary expenses incurred in connection with defending itself in any action brought against it as a result of the acts or omissions, actual or alleged, of an Indemnified Party in its capacity as such; provided, however, that the Litigation Trustee shall not be required to make any such advances; provided further, however, that any Indemnified Parties receiving such advances shall repay the amounts so advanced to the Litigation Trust upon the entry of a Final Order of a court of competent jurisdiction finding that such Indemnified Parties were not entitled to such indemnity under the provisions of this Section 6.6. This indemnification shall survive the death, dissolution, resignation, or removal, as may be applicable, of the Indemnified Parties, or the termination of the Litigation Trust, and shall inure to the benefit of the Indemnified Parties' heirs and assigns.

## ARTICLE VII

## SELECTION, REMOVAL AND COMPENSATION OF THE LITIGATION TRUSTEE

7.1     Initial Litigation Trustee. As contemplated by the Combined Disclosure Statement and Plan, the initial Litigation Trustee was selected by the DIP Agent and Prepetition Agent, in consultation with Committee.

7.2     Term of Service. The Litigation Trustee shall serve until (a) the completion of all the Litigation Trustee's duties, responsibilities and obligations under this Litigation Trust Agreement, (b) termination of the Litigation Trust in accordance with this Litigation Trust Agreement, or (c) the Litigation Trustee's death or dissolution, incapacitation, resignation, or removal.

7.3     Removal of a Litigation Trustee. Any Entity serving as Litigation Trustee may be removed at any time and for any reason by action of a majority of the Litigation Trust Board or upon the determination of the Bankruptcy Court on a motion for cause shown. Any Litigation Trustee so removed is entitled to payment of fees and expenses accrued prior to removal subject to the terms of this Litigation Trust Agreement. Any dispute regarding the compensation to be paid shall be determined by the Bankruptcy Court.

**611**

7.4     Resignation of Litigation Trustee.  The Litigation Trustee may resign at any time by giving the Litigation Trust Board at least thirty (30) days' written notice of the Litigation Trustee's intention to do so or such shorter time as agreed to by the Litigation Trust Board.  Any resigning Litigation Trustee is entitled to payment of fees and expenses accrued prior to resignation subject to the terms of this Litigation Trust Agreement.  Any dispute regarding the compensation to be paid shall be determined by the Bankruptcy Court.

7.5     Accounting in the Event of Removal or Resignation.  In the event of removal or resignation, the removed or resigning Litigation Trustee shall render to the Litigation Trust Board a full and complete accounting of monies and Distributable Assets received, disbursed, and held during the term of office of that Litigation Trustee and such other information reasonably requested by the Litigation Trust Board.  Unless an earlier date is agreed to by the removed or resigning Litigation Trustee, the removal or resignation shall be effective on the later of (a) the date specified in the notice; (b) the date that is 30 days after the date the notice is delivered; or (c) the date the accounting described in the preceding sentence is delivered.

7.6     Appointment of Successor Litigation Trustee.  Upon the resignation, death, incapacity, or removal of a Litigation Trustee, the Litigation Trust Board shall appoint a successor Litigation Trustee to fill the vacancy so created.  Any successor Litigation Trustee so appointed shall consent to and accept in writing the terms of this Litigation Trust Agreement and agree that the provisions of this Litigation Trust Agreement shall be binding upon and inure to the benefit of the successor Litigation Trustee and all of the successor Litigation Trustee's heirs and legal and personal representatives, successors or assigns.  Notwithstanding anything in this Litigation Trust Agreement, in the event that a successor Litigation Trustee is not appointed within 60 days of the occurrence or effectiveness, as applicable, of the prior Litigation Trustee's resignation, death, incapacity, or removal, the Bankruptcy Court, upon the motion of any party-in-interest, including counsel to the Litigation Trust, shall approve a successor to serve as the Litigation Trustee.

7.7     Powers and Duties of Successor Litigation Trustee.  A successor Litigation Trustee shall have all the rights, privileges, powers, and duties of the predecessor Litigation Trustee under this Litigation Trust Agreement, the Combined Disclosure Statement and Plan, or as provided in a further order of the Bankruptcy Court.

7.8     Litigation Trust Continuance.  The death, incapacity, resignation or removal of the Litigation Trustee shall not terminate the Litigation Trust or revoke any existing agency created pursuant to this Litigation Trust Agreement or invalidate any action theretofore taken by the Litigation Trustee.

7.9     Compensation and Costs of Administration.  The Litigation Trustee shall be compensated as follows: [(i) all administrative services, including those related to claims administration, non-substantive claim objections and distributions be included within a fixed monthly payment of $[●], payable in arrears (which fee will only be charged in the months these services are provided), and (ii) all other services, including related to claim litigation and potential recoveries of assets, including, prosecuting litigation, be billed hourly at a rate of $[●] per hour and paid if, and when, those assets are recovered. In addition to the above fees, Litigation Trustee will be entitled to reimbursement for all out-of-pocket expenses, *provided*, *however*, that the Litigation Trustee shall be compensated and reimbursed, as applicable, for services provided and reasonable and documented expenses incurred in connection with the formation and

implementation of the Litigation Trust prior to the Effective Date, on such terms as previously agreed to by the Litigation Trust Board and the Litigation Trustee.]

7.10    Payment of Compensation. The Litigation Trustee shall retain the Litigation Trust Counsel and may retain and compensate other professionals as provided for in Section 3.4 of this Litigation Trust Agreement which such retention, for the avoidance of doubt, shall be subject to approval by a majority of the Litigation Trust Board.  Other than Litigation Trust Counsel, which shall be retained on terms and compensation paid in accordance with procedures acceptable to a majority of the Litigation Trust Board, the reasonable fees and actual and necessary expenses of such professionals, the Litigation Trustee himself, and any disbursing agent shall be paid by the Litigation Trustee upon submission of a monthly fee statement to the Litigation Trustee and/or the Litigation Trust Board, as applicable, in accordance with the following procedures.  The Litigation Trustee shall deliver his or her invoices or fee statements to the Litigation Trust Board before payment from the Distributable Assets therefor shall be allowed, and such invoices or fee statement shall be approved by a majority of the Litigation Trust Board prior to payment.  Any professionals retained by the Litigation Trustee pursuant to this Litigation Trust Agreement shall deliver their invoices or fee statements to the Litigation Trustee and the Litigation Trust Board before payment from the Distributable Assets therefor shall be allowed, and such invoices or fee statement shall be approved by a majority of the Litigation Trust Board prior to payment.  Any Entity selected as disbursing agent by the Litigation Trustee pursuant to this Litigation Trust Agreement and the Combined Disclosure Statement and Plan shall deliver their invoices or fee statements to the Litigation Trustee and the Litigation Trust Board before payment from the Distributable Assets therefor shall be allowed, and such invoices or fee statement shall be approved by a majority of the Litigation Trust Board prior to payment.  The Litigation Trustee and Litigation Trust Board, as applicable, shall have fifteen (15) days from the delivery of any invoice or fee statement to provide notice of an objection to the fee statement to the professional or Entity seeking compensation or reimbursement of expenses (including the Litigation Trustee).  For an objection to be valid, it shall be in writing and set forth in detail the specific fees objected to and the basis for the objection.  The uncontested portion of each invoice shall be paid within twenty-five (25) days after its original delivery to the Litigation Trustee.  Any objection that remains unresolved fifteen (15) days after it is made shall be submitted to the Bankruptcy Court for resolution.

## ARTICLE VIII

## REPORTING AND TAX MATTERS

8.1    Reporting and Filing Requirements.  The Litigation Trustee shall prepare and file post-Effective Date operating reports, if any, as required by the Bankruptcy Court, the Combined Disclosure Statement and Plan, applicable local rules, or this Litigation Trust Agreement.

8.2    Filing of Tax Returns.  The Litigation Trustee shall file tax returns for the Litigation Trust as a grantor trust pursuant to Treasury Regulation Section 1.671-4(a) and any other applicable laws or regulations; *provided*, *however*, that the Litigation Trustee may, in the Litigation Trustee's reasonable discretion, determine the best way to report for tax purposes with respect to the Disputed Claims Reserve, including (i) filing a tax election to treat any and all reserves for Disputed Claims as a disputed ownership fund ("DOF") within the meaning of Treasury Income Tax Regulation Section 1.468B-9 for federal income tax purposes rather than to tax such reserve as a part of the Litigation Trust or (ii) electing to report as a separate trust or sub-trust or other entity.  If an election is made to report the Disputed Claims Reserve as a DOF, the Litigation Trust

shall comply with all federal and state tax reporting and tax compliance requirements of the DOF, including but not limited to the filing of a separate federal tax return for the DOF and the payment of federal and/or state income tax due.

8.3     <u>Preparation of Statements</u>.  To the extent reasonably practicable, the Litigation Trustee shall, in conjunction with filing the Litigation Trust's annual tax return, send to each Beneficiary a statement setting forth the Beneficiary's share of items of income, gain, loss, deduction, or credit and will instruct all such Beneficiaries to report such items on their federal income tax returns.  A final statement shall also be sent to each Beneficiary within seventy-five (75) days after the dissolution of the Litigation Trust.  The Litigation Trust's taxable income, gain, loss, deduction, or credit will be allocated (subject to provisions of the Combined Disclosure Statement and Plan and any confirmation order entered by the Bankruptcy Court relating to Disputed Claims) to the Beneficiaries in accordance with their relative beneficial interests in the Litigation Trust, as determined pursuant to this Litigation Trust Agreement and the Combined Disclosure Statement and Plan.

8.4     <u>Valuation of Distributable Assets</u>.  As soon as practicable after the Effective Date, the Litigation Trustee, to the extent that it deems it necessary or appropriate in the reasonable exercise of its discretion, shall, in good faith, value the Distributable Assets, and such valuation shall be made available from time to time, to the extent relevant, and shall be used consistently by all parties (including the Debtors, the Litigation Trustee and the Beneficiaries) for all federal income tax purposes.  The Litigation Trustee shall be under no obligation to hire an expert to make such a valuation.

## ARTICLE IX

## MAINTENANCE OF AND ACCESS TO RECORDS

9.1     <u>Books and Records</u>.  The Litigation Trustee shall maintain books and records containing a description of all property from time to time constituting the Distributable Assets and an accounting of all receipts and disbursements.  Said books and records shall be open to inspection by any Beneficiary at any reasonable time during normal business hours and after reasonable advance notice.  The Litigation Trustee shall furnish to any Beneficiary upon written request an annual statement of receipts and disbursements, including a summary of all income and expenses of the Litigation Trust.  The Debtors and Liquidating Debtors shall reasonably cooperate with the Litigation Trustee to effectuate the terms of this Litigation Trust Agreement, including executing such further documents and instruments as may be required from time to time and providing reasonable access and information to the Litigation Trustee on a timely basis

9.2     <u>Cooperation by Debtors</u>. The Debtors shall reasonably cooperate with the Litigation Trustee to effectuate the terms of this Agreement, including providing reasonable access and information to the Litigation Trustee on a timely basis.  Notwithstanding the foregoing, the Debtors or other furnishing party shall provide such documents or other materials described in this paragraph only upon reasonable request by the Litigation Trustee and only if they can be reasonably provided by the Debtors or other furnishing party without significant effort or material expense; provided, that in the event that the furnishing party believes that the requested information cannot be provided without significant effort or material expense, the furnishing party and the Litigation Trustee shall confer in good faith to agree upon appropriate consideration for the furnishing party to provide such information.

**614**

# ARTICLE X

## DURATION OF TRUST

10.1    Duration.  The Litigation Trust shall become effective upon the Effective Date of the Combined Disclosure Statement and Plan, and the Litigation Trust and its provisions herein shall remain and continue in full force and effect until the Litigation Trust is terminated.

10.2    Termination.  The Litigation Trust shall terminate upon the occurrence of the earlier of (a) the final liquidation, administration, and Distribution of the Distributable Assets in accordance with this Litigation Trust Agreement and the Combined Disclosure Statement and Plan and the full performance of all other duties and functions of the Litigation Trustee set forth in this Litigation Trust Agreement and any further order of the Bankruptcy Court, and (b) the fifth (5th) anniversary of the Effective Date.  Notwithstanding the foregoing, the duration of the Litigation Trust may be extended with the approval of the Bankruptcy Court, upon motion made within the six-month period before such fifth anniversary (and, in the event of further extension, by order of the Bankruptcy Court, upon motion made at least six (6) months before the end of the preceding extension). The aggregate of all such extensions shall not exceed three years, unless the Litigation Trustee receives a favorable ruling from the IRS that any further extension would not adversely affect the status of the Litigation Trust as a liquidating trust within the meaning of section 301.7701-4(d) of the Treasury Regulations for federal income tax purposes.  After (i) the final Distributions pursuant to the Combined Disclosure Statement and Plan, (ii) the filing by or on behalf of the Litigation Trust of a certification of dissolution with the Bankruptcy Court and (iii) any other action deemed appropriate by the Litigation Trustee in consultation with the Litigation Trust Board, the Litigation Trust shall be deemed dissolved for all purposes without the necessity for any other or further actions.

10.3    Continuance of Litigation Trust for Winding Up.  After the termination of the Litigation Trust and for the purpose of liquidating and winding up the affairs of the Litigation Trust, the Litigation Trustee shall continue to act as such until the Litigation Trustee's duties have been fully performed, including, without limitation, such tasks as necessary to wind-up the affairs of the Litigation Trust.  After the termination of the Litigation Trust, the Litigation Trustee shall retain for a period of six (6) months the books, records, Beneficiary lists, and certificates and other documents and files which shall have been delivered to or created by the Litigation Trustee.  At the Litigation Trustee's discretion, all of such records and documents may, but need not, be destroyed at any time after such six (6) month period.  Except as otherwise specifically provided herein, upon the discharge of all liabilities of the Litigation Trust and final Distributions pursuant to this Litigation Trust Agreement, the Litigation Trustee shall have no further duties or obligations hereunder.  For the avoidance of doubt, the limitations on liability contained in this Litigation Trust Agreement shall apply to any actions taken by the Litigation Trustee during the course of winding up the affairs of the Litigation Trust.

# ARTICLE XI

## MISCELLANEOUS

11.1    Jurisdiction.  The Bankruptcy Court shall have exclusive jurisdiction over, the fullest extent permitted by law, (a) the Litigation Trust and the Litigation Trustee with respect to the administration of and activities relating to the Litigation Trust, and (b) any issues or disputes

**615**

arising out of this Litigation Trust Agreement; *provided, however*, that notwithstanding the foregoing, the Litigation Trustee shall have the power and authority to bring any action in any court of competent jurisdiction to prosecute any Retained Causes of Action (or Assigned Direct Creditor Claims, if any) not otherwise released pursuant to the Combined Disclosure Statement and Plan, including, but not limited to, any claims (not otherwise released pursuant to the Combined Disclosure Statement and Plan) against current or former officers or directors for breach of fiduciary duties.

11.2    Notices.  All notices to be given to Beneficiaries may be given by ordinary mail, or may be delivered personally, to the holders at the addresses appearing on the books kept by the Litigation Trustee.  Any notice or other communication which may be or is required to be given, served, or sent to the Litigation Trustee or the members of the Litigation Trust Board shall be in writing and shall be sent by registered or certified United States mail, return receipt requested, postage prepaid, or transmitted by email, telex, or facsimile (if receipt is confirmed) addressed as follows:

> If to the Litigation Trust/Litigation Trustee:
>
> [●]
> [ADDRESS]
> [EMAIL]
> [PHONE]
>
> With a copy to:
>
> [●]
> [ADDRESS]
> [EMAIL]
> [PHONE]
>
> [If to the members of the Litigation Trust Board:]
>
> [●]
> [ADDRESS]
> [EMAIL]
> [PHONE]
>
> [●]
> [ADDRESS]
> [EMAIL]
> [PHONE]
>
> [ADDRESS]
> [EMAIL]
> [PHONE]

or to such other address as may from time to time be provided in a written notice by the members of the Litigation Trust Board or to such other address as may from time to time be provided in a written notice by the Litigation Trustee.

11.3     Bond.  The Litigation Trustee may serve without a bond.

11.4     Governing Law.   This Litigation Trust Agreement shall be governed by and construed in accordance with the laws of the State of Delaware, without giving effect to conflicts of law principles.

11.5     Successors and Assigns.  This Litigation Trust Agreement shall inure to the benefit of and shall be binding upon the parties hereto and their respective successors and assigns.

11.6     No Execution.  All funds in the Litigation Trust shall be deemed *in custodia legis* until such times as the funds have actually been paid to or for the benefit of a Beneficiary, and no Beneficiary or any other Entity can bind, pledge, encumber, execute upon, garnish, or attach the Distributable Assets in any manner or compel payment from the Litigation Trust except by Final Order of the Bankruptcy Court.

11.7     Amendment.  The Litigation Trustee, with the prior written approval of a majority of the existing members of the Litigation Trust Board may amend, supplement, or waive any provision of this Litigation Trust Agreement, without notice to or the consent of any Beneficiary or the approval of the Bankruptcy Court, in order to: (i) cure any ambiguity, omission, defect, or inconsistency in this Litigation Trust Agreement; *provided*, *however*, that such amendments, supplements or waivers shall not be inconsistent with the terms of the Combined Disclosure Statement and Plan or adversely affect the Distributions to any of the Beneficiaries or adversely affect the federal income tax status of the Litigation Trust as a "liquidating trust"; (ii) comply with any requirements in connection with the federal income tax status of the Litigation Trust as a "liquidating trust"; and (iii) comply with any requirements in connection with maintaining that the Litigation Trust is not subject to registration or reporting requirements of the Securities Act, the Trust Indenture Act, or the Investment Company Act.  Any substantive provision of this Litigation Trust Agreement may be amended or waived by the Litigation Trustee and the approval of a majority of the Litigation Trust Board; *provided*, *however*, that no change may be made to this Agreement that would (a) adversely affect the (i) Distributions to any of the Beneficiaries, or (ii) the federal income tax status of the Trust as a "liquidating trust" or (b) modify the stated purpose of the Litigation Trust as described in this Litigation Trust Agreement.  Notwithstanding this Section 11.7, any amendments or modifications to this Litigation Trust Agreement shall not be inconsistent with the purpose and intention of the Litigation Trust to liquidate in an expeditious but orderly manner the Distributable Assets in accordance with Treasury Regulation Section 301.7701-4(d).

11.8     Severability.   If any term, provision, covenant or restriction contained in this Litigation Trust Agreement is held by a court of competent jurisdiction or other authority to be invalid, void, unenforceable or against its regulatory policy, the remainder of the terms, provisions, covenants and restrictions contained in this Litigation Trust Agreement shall remain in full force and effect and shall in no way be affected, impaired or invalidated.

11.9     Counterparts.  This Litigation Trust Agreement may be executed in any number of counterparts, each of which shall be deemed an original, and such counterparts shall together

**617**

constitute one and the same instrument. A facsimile or electronic mail signature of any party shall be considered to have the same binding effect as an original signature.

11.10 <u>Relationship to, and Incorporation of, the Plan</u>. The principal purpose of this Litigation Trust Agreement is to aid in the implementation of the Combined Disclosure Statement and Plan and the Confirmation Order, and, therefore, this Litigation Trust Agreement incorporates the provisions of the Combined Disclosure Statement and Plan and the Confirmation Order, *mutatis mutandis*, as if set forth in full herein. As among the Litigation Trust, the Litigation Trustee, the Litigation Trust Board, the Beneficiaries, and the Debtors, if any provisions of this Litigation Trust Agreement are found to be inconsistent with the provisions of the Combined Disclosure Statement and Plan or the Confirmation Order, each such document shall have controlling effect in the following rank order: (a) the Confirmation Order; (b) the Combined Disclosure Statement and Plan; and (c) this Litigation Trust Agreement.

**618**

IN WITNESS WHEREOF, the parties have executed this Litigation Trust Agreement (or are deemed to have so executed this Litigation Trust Agreement) as of the day and year written above.

**[●]**, as the Litigation Trustee

**Near Intelligence, Inc.,** *et al.***,** for itself and its affiliated Debtors

By: _____
Name: [●]

By: _____
Name: [●]
Title: [●]

**619**

<u>**Exhibit A-1**</u>

**Redline of Amended Litigation Trust Agreement**

DRAFT – REMAINS SUBJECT TO REVIEW IN ALL RESPECTS BY PARTIES
IN INTEREST, INCLUDING PREPETITION LENDERS AND THE COMMITTEE **620**

**NEAR INTELLIGENCE, INC.,** *ET AL.* **LITIGATION TRUST AGREEMENT**

This *Near Intelligence, Inc., et al. Litigation Trust Agreement* (the "Litigation Trust
Agreement")**,** dated as of March [●], 2024, is entered into by and between Near Intelligence,
Inc., Near Intelligence LLC, Near North America, Inc., and Near Intelligence Pte. Ltd.
(collectively, the Debtors"), on the one hand, and [●] (the "Litigation Trustee"), on the other
hand, for the benefit of the Beneficiaries (defined below) pursuant to the terms of the ***Modified
Third Amended*** *Combined Disclosure Statement and Chapter 11 Plan of Liquidation of Near
Intelligence, Inc. and Its Affiliated Debtors* [Docket No. ~~22~~**336**] (as amended, restated,
supplemented or otherwise modified from time to time**,**, the "Combined Disclosure Statement
and Plan"), which Combined Disclosure Statement and Plan was confirmed by the *Findings of
Fact, Conclusions of Law, and Order Approving Adequacy of Disclosures on a Final Basis and
Confirming the Third Amended Combined Disclosure Statement and Chapter 11 Plan of
Liquidation of Near Intelligence, Inc. and Its Affiliated Debtors Pursuant to Chapter 11 of the
Bankruptcy Code*, entered on March [~~●~~**14**], 2024 [Docket No. ●] (the "Confirmation Order")
~~entered~~ by the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy
Court") in the jointly administered Chapter 11 cases captioned *In re Near Intelligence, Inc., et
al.*, Case No. 23-11962 (TMH) (collectively, the "Chapter 11 Cases").

## WITNESSETH

**WHEREAS,** the Litigation Trust is created pursuant to, and to effectuate, certain of the
purposes set forth in the Combined Disclosure Statement and Plan and the Confirmation Order;
and

**WHEREAS,** the Litigation Trust is created on behalf, and for the sole benefit, of the
Beneficiaries pursuant to the Combined Disclosure Statement and Plan and the Confirmation
Order; and

**WHEREAS,** the Litigation Trust is established as a liquidating trust in accordance with
Treasury Regulation Section 301.7701-4(d) for the sole purpose of collecting, liquidating, and
distributing the proceeds of the Litigation Trust Assets in an expeditious and orderly manner for
the benefit of the Beneficiaries in accordance with the terms of this Litigation Trust Agreement
and the Combined Disclosure Statement and Plan with no objective to continue or engage in the
conduct of a trade or business; **and**

**WHEREAS,** the Litigation Trust is intended to qualify and be treated as a grantor trust
for U.S. federal income tax purposes pursuant to Sections 671 through 677 of the Internal
Revenue Code of 1986, as amended; **and**

**WHEREAS,** pursuant to the Combined Disclosure Statement and Plan and this
Litigation Trust Agreement, the Debtors, the Litigation Trustee and the Beneficiaries are
required to treat the transfer of the Litigation Trust Assets to the Litigation Trust, for all
U.S. federal income tax purposes, as a transfer of the Litigation Trust Assets by the Debtors to
the Beneficiaries in satisfaction of their Allowed Claims followed by a transfer of the Litigation
Trust Distribution Proceeds by the Beneficiaries to the Litigation Trust in exchange for their
Litigation Trust Interests herein, and to treat the Beneficiaries as the grantors and owners of the
Litigation Trust in accordance with Treasury Regulation section 301.7701-4; and

# 621

NOW, THEREFORE, in consideration of the promises and the mutual covenants contained herein and in the Combined Disclosure Statement and Plan, the Debtors and the Litigation Trustee agree as follows:

## ARTICLE I

## DEFINITIONS AND INTERPRETATIONS

1.1     Definitions.

~~1.1.1 "Allowed Claim" means a General Unsecured Claim or claim held by, or any portion thereof, (a) that has been allowed by a Final Order of the Bankruptcy Court (or such court as the Debtors (or successor estate representative), the Litigation Trustee and the holder of any such claim agree may adjudicate such claim and any objections thereto), including by the Confirmation Order, or (b) that either (x) has been scheduled as a liquidated, non-contingent, and undisputed claim in an amount greater than zero on the Debtors' schedules, or (y) is the subject of a timely filed proof of claim as to which either (i) no objection to its allowance has been filed (either by way of objection or amendment to the schedules) within the periods of limitation fixed by the Bankruptcy Code or by any Final Order of the Bankruptcy Court or (ii) any objection to its allowance has been settled, waived through payment, or withdrawn, or has been denied by a Final Order; *provided*, *however*, that for purposes of determining the status of a particular claim, any such claim which has not been previously allowed or disallowed by a Final Order of the Bankruptcy Court shall be deemed a Disputed Claim unless such claim is specifically identified by the Debtors (or successor estate representative) and/or the Litigation Trustee as being an Allowed Claim.~~

**1.1.1**   ~~1.1.2~~ "Assigned Direct Creditor Claims" means any Direct Creditor Claims held by General Unsecured Creditors which are assigned to the Litigation Trust in accordance with Section 3.2 hereof, which in each case are subject to the distribution priorities set forth in Section 4.1 herein.

**1.1.2**   ~~1.1.3~~ "Available Litigation Trust Cash" means the gross proceeds generated through the liquidation and monetization of Distributable Assets or any portion thereof, less (a) charges, costs and expenses that are rightly deducted and attributable to the liquidation and monetization of the Distributable Assets including, but not limited to, all Litigation Trust Expenses; and (b) the Disputed Claims Reserve.

**1.1.3**   ~~1.1.4~~ "Beneficiaries" means, collectively, Holders of a Litigation Trust Interest, whether individually or as agent on behalf of one or more other Entities, which shall include (i) Holders of Allowed Prepetition Loan Claims ~~and/or any Deficiency Claims~~ on account thereof; and (ii) Holders of Allowed General Unsecured Claims that elect to receive Litigation Trust Interests in accordance with the Combined Disclosure Statement and Plan entitling such Holders to their Pro Rata Share of the Litigation Trust Distribution Proceeds, in accordance with the distribution priorities set forth in Section 4.1 hereof, up to the Allowed amount of such Allowed General Unsecured Claim or Allowed Prepetition Loan Claim ~~and/or any Deficiency Claim,~~ as applicable.

**1.1.4**   ~~1.1.5~~ "Confirmation Date" means March [14], 2024.

# 622

**1.1.5  "Disputed Claim" means any Claim (i) which has not yet been Allowed or Disallowed in accordance with the terms of the Combined Disclosure Statement and Plan, or (ii) held by a Person or Entity against whom or which any of the Debtors or the Litigation Trustee has commenced a proceeding, including an objection to such Claim.**

~~1.1.6 "Deficiency Claim" means any deficiency Prepetition Loan Claims held by the Prepetition Lenders on account of the Prepetition Financing Documents that are not satisfied from the proceeds of the Prepetition Lenders' collateral.~~

~~1.1.7 "Disallowed Claim" means a General Unsecured Claim that is disallowed by Final Order or agreement between the Debtors and/or Litigation Trustee and the applicable claimant.~~

**1.1.6** ~~1.1.8~~ "Disputed Claims Reserve" means cash in an amount equal to the Distributions which would have been made to Beneficiaries on account of Disputed Claims if such claims were Allowed or such other amount as may be ordered by the Bankruptcy Court.

~~1.1.9 "Disputed Claims" means the General Unsecured Claims that are not Allowed Claims or Disallowed Claims.~~

**1.1.7** ~~1.1.10~~ "Distributable Assets" means the Litigation Trust Assets and any assets that are available or will become available for Distribution (and the proceeds thereof) transferred to and vested in the Litigation Trust on the Effective Date ~~(as defined below)~~ and any other funds or assets that are available for the benefit of the Beneficiaries and/or are subsequently transferred to or recovered by the Litigation Trust, including by the Debtors and, with respect to the Assigned Direct Creditor Claims, the applicable General Unsecured Creditors, including the Litigation Trust Assets and the Retained Causes of Action, all as in accordance with the Combined Disclosure Statement and Plan and this Litigation Trust Agreement.

**1.1.8** ~~1.1.11~~ "Distribution" means a distribution of property to a Beneficiary in accordance with this Litigation Trust Agreement.

~~1.1.12 "Distribution Date" means any date on which Distributions are made in accordance with this Litigation Trust Agreement.~~

~~1.1.13 "Distribution Record Date" means the date for determining which Holders of Claims are eligible to receive distributions hereunder and shall be the Confirmation Date or such other date as designated in an order of the Bankruptcy Court.~~

**1.1.9** ~~1.1.14~~ "Direct Creditor Claims" any direct claims or causes of action that any General Unsecured Creditor may have against third parties related to the Debtors or any of the Debtors' current or former officers or directors, including, for the avoidance of doubt, any guaranties in favor of the Subordinated Noteholders in connection with the Subordinated Convertible Debentures.

**1.1.10** ~~1.1.15~~ "Final Order" means an order of the Bankruptcy Court or any other court of competent jurisdiction (a) as to which the time to appeal shall have expired and as to which no appeal shall then be pending or (b) if a timely appeal shall have been filed, such appeal has been resolved by a Final Order or agreement of all the parties to such appeal.

1.1.11 ~~1.1.16~~ "General Unsecured Claim" means ~~a general unsecured claim filed or scheduled against any of the Debtors~~**an Allowed General Unsecured Claim under the Combined Disclosure Statement and Plan that is not a Prepetition Loan Claim**.

1.1.12 ~~1.1.17~~ "General Unsecured Creditor" means a holder of an Allowed General Unsecured Claim.

~~1.1.18 "GUC Cash Pool" means Cash in an amount equal to $750,000 that is available for distribution to Holders of Allowed General Unsecured Claims that do not elect to receive Litigation Trust Interests, under the Combined Disclosure Statement and Plan, in full and final satisfaction of such **Allowed General Unsecured Claims.**~~

1.1.13 ~~1.1.19~~ "Litigation Trust" means the liquidating trust established pursuant to the terms of this Litigation Trust Agreement, the Combined Disclosure Statement and Plan, and the Confirmation Order.

1.1.14 ~~1.1.20~~ "Litigation Trustee" means (a) initially, the person or corporation defined as the "Litigation Trustee" above, and (b) any successors or replacements duly appointed under the terms of this Litigation Trust Agreement, and is the person referred to as the "Litigation Trustee" in the Combined Disclosure Statement and Plan.

1.1.15 ~~1.1.21~~ "Litigation Trust Counsel" means **[●] or successor** counsel ~~as~~ acceptable to the Prepetition Lenders, engaged by the Litigation Trust in order to pursue the Retained Causes of Causes and, if applicable, any Assigned Direct Creditor Claims.

1.1.16 ~~1.1.22~~ "Litigation Trust Board" means the board that shall oversee the Litigation Trust in accordance with the Litigation Trust Agreement and the Combined Disclosure Statement and Plan, the initial composition of which shall consist of one (1) member designated by the Committee, which member shall be reasonably acceptable to the DIP Agent and the Prepetition Agent (the "Committee Board Member"), and two (2) members designated by the DIP Agent and the Prepetition Agent, which members shall be selected in consultation with the Committee**, which members are listed in Section 11.2 hereof**.

1.1.17 ~~1.1.23~~ "Litigation Trust Financing Facility" means that certain **[Credit Agreement]agreement** by and between the Litigation Trust Lenders and the Litigation Trust~~,~~ in form and substance acceptable to the Prepetition Lenders and the Litigation Trustee in consultation with the Litigation Trust Board.

1.1.18 ~~1.1.24~~ "Permitted Investments" shall include (a) short-term direct obligations of, or obligations guaranteed by, the United States of America, (b) short-term obligations of any agency or corporation which is or may hereafter be created by or pursuant to an act of the Congress of the United States as an agency or instrumentality thereof, (c) such other investments as the Bankruptcy Court may approve from time to time, or (d) demand deposits, money market account, or certificates of deposit at any bank or trust company that has, at the time of the deposit, a capital stock and surplus aggregating at least $1,000,000,000, *provided*, *however*, that the scope of any Permitted Investments shall be limited to include only those investments that a liquidating trust, within the meaning of Treas. Reg. § 301.7701-4(d), may be permitted to hold, pursuant to Treasury Regulations, or any modification in the IRS guidelines, whether set forth in IRS rulings, other IRS pronouncements, or otherwise, and to the investment guidelines of section 345 of the Bankruptcy Code, *provided*, *further*, *however*, the requirement

**624**

of complying with the investment guidelines of section 345 of the Bankruptcy Code may be waived by the Litigation Trustee with the approval of the Litigation Trust Board.

1.1.19 ~~1.1.25~~ "Subordinated Convertible Debentures" has the meaning ascribed to "Convertible Debentures" in the Combined Disclosure Statement and Plan~~, which~~. **The Subordinated Convertible Debentures** are subject to the Subordination Agreements other than to the extent expressly set forth in the Combined Disclosure Statement and Plan or in this Litigation Trust Agreement.

1.1.20 ~~1.1.26~~ "Subordinated Noteholders" means, collectively, the holders and any other beneficiary of the Subordinated Convertible Debentures.

1.1.21 ~~1.1.27~~ "Subordination Agreements" means those certain Subordination Agreements, dated as of March 31**, 2023** and May 18, 2023, by and among the Prepetition Agent and the ~~Prepetition~~ Subordinated Noteholders  with respect to the Convertible Debentures.

1.2     Use of Plan Definitions.  All terms which are used in this Litigation Trust Agreement but not defined herein shall have the meaning set forth in the Combined Disclosure Statement and Plan or Confirmation Order**, as applicable**.

1.3     Headings; Interpretation.  The headings in this Litigation Trust Agreement are for convenience of reference only and shall not limit or otherwise affect the provisions of this Litigation Trust Agreement.  Words denoting the singular number shall include the plural number and vice versa, and words denoting one gender shall include the other gender.

1.4     Particular Words.  Reference in this Litigation Trust Agreement to any Section or Article is, unless otherwise specified, to that Section or Article under this Litigation Trust Agreement.  The words "hereof," "herein," "hereunder," and similar terms shall refer to this Litigation Trust Agreement and not to any particular Section or Article of this Litigation Trust Agreement.

## ARTICLE II

## DECLARATION OF TRUST

2.1     Creation and Name.  As contemplated by the Combined Disclosure Statement and Plan and the Confirmation Order, the Debtors hereby establish and create the Litigation Trust, on behalf of, and for the benefit of the Beneficiaries as of the date hereof (the "Effective Date").  The Litigation Trustee may conduct the affairs of the Litigation Trust under the name "Near Intelligence, Inc., *et al*. Litigation Trust," and the trust so named is the Litigation Trust referred to as the "Litigation Trust" in the Combined Disclosure Statement and Plan **and Confirmation Order**.

2.2     Purpose of Litigation Trust.  This Litigation Trust is intended to be a grantor trust for United States federal income tax purposes and, to the extent provided by law, shall be governed and construed in all respects as such a grantor trust.  The Debtors and the Litigation Trustee, as contemplated by the Combined Disclosure Statement and Plan and Confirmation Order**,** hereby create the Litigation Trust solely for the purpose of, liquidating and distributing the Distributable Assets in accordance with the terms of this Litigation Trust Agreement, the Plan and Confirmation Order with no objective to continue or engage in the conduct of a trade or business.  The Litigation Trustee shall engage only in activities reasonably necessary to, and

consistent with the liquidating purpose of the Litigation Trust including, but not limited to, (a) investigating and, if appropriate, pursuing, settling or abandoning the Retained Causes of Action not otherwise released under the Combined Disclosure Statement and Plan, (b) administering and liquidating the Distributable Assets, (c) reconciling, objecting to, settling or otherwise resolving any Disputed Claims, as provided for in the Combined Disclosure Statement and Plan and subject to the limitation set forth in Section 3.7 hereof, and (d) making Distributions to the Beneficiaries from the Litigation Trust as provided for in the Combined Disclosure Statement and Plan and this Litigation Trust Agreement in accordance with Section 4.1 hereof. The activities of the Litigation Trust shall be limited to those activities set forth in this Litigation Trust Agreement.

2.3 <u>Transfer of Distributable Assets</u>. As contemplated by the Combined Disclosure Statement and Plan and the Confirmation Order, the Debtors hereby grant, release, assign, convey, transfer and deliver, on behalf of the Beneficiaries, all of the Debtors' rights, title and interest in the Distributable Assets in trust for the benefit of the Beneficiaries, free and clear of all ~~Encumbrances~~encumbrances of all other Entities for the uses and purposes as specified in the Combined Disclosure Statement and Plan and this Litigation Trust Agreement. For the avoidance of doubt, the **Distributable Assets include the full amount of the Wind-Down Budget. For the further avoidance of doubt, the** costs and expenses of the Litigation Trust shall be funded exclusively from the **Wind-Down Budget, the** Distributable Assets and the Litigation Trust ~~Credit~~**Financing** Facility.

2.4 <u>Securities Law</u>. It is intended that the interests of the Beneficiaries in the Litigation Trust and the entitlements hereunder (the "<u>Beneficial Interests</u>"), if any, of such Beneficiaries, shall not constitute "securities." To the extent applicable and to the extent the Beneficial Interests or any entitlements of the Beneficiaries are deemed to be "securities," the issuance of the Beneficial Interests or the entitlements hereunder or under any Combined Disclosure Statement and Plan shall be exempt, pursuant to section 1145 of the Bankruptcy Code from Section 4(a)(2) of the Securities Act and any state and local laws requiring registration of securities. If the Litigation Trustee determines, with the advice of counsel, that the Litigation Trust is required to comply with the registration and reporting requirements of the Securities Act of 1933, as amended, the Securities and Exchange Act of 1934, as amended (collectively, the "<u>Securities Act</u>), the Trust Indenture Act of 1939, as amended (the "<u>Trust Indenture Act</u>"), or the Investment Company Act of 1940, as amended (the "<u>Investment Company Act</u>"), then the Litigation Trustee shall take any and all actions to comply with such registration and reporting requirements and file necessary periodic reports with the Securities and Exchange Commission. Notwithstanding the foregoing, nothing contained herein shall be deemed to preclude the Litigation Trustee from amending this Litigation Trust Agreement to make such changes as are deemed necessary or appropriate by the Litigation Trustee, with the advice of counsel, to ensure that the Litigation Trust is not subject to registration and/or reporting requirement of the Securities Act, the Trust Indenture Act or the Investment Company Act, provided that such amendments do not adversely affect the Distributions to be made under the terms of this Litigation Trust Agreement.

2.5 <u>Appointment and Acceptance of Litigation Trustee</u>. The Litigation Trustee accepts the Litigation Trust created by this Litigation Trust Agreement and the grant, assignment, transfer, conveyance, and delivery to the Litigation Trustee, on behalf, and for the benefit, of the Beneficiaries, by the Debtors of all of their respective right, title, and interest in the Distributable

**626**

Assets, upon and subject to the terms and conditions set forth in this Litigation Trust Agreement, the Combined Disclosure Statement and Plan and the Confirmation Order and any subsequent order of the Bankruptcy Court that is consistent with the terms and purpose of the Combined Disclosure Statement and Plan.

2.6    <u>Transfer of Retained Causes of Action</u>.  The Debtors transfer to, and agree and authorize the Litigation Trustee to prosecute, settle, compromise and/or dismiss the Retained Causes of Action, including any claims against current or former officers or directors for breach of fiduciary duties, on behalf of, and in the name of, the Debtors and their estates for the benefit of the Litigation Trust Beneficiaries.  To the extent that Debtors or their estates receive any recovery from the prosecution of the Retained Causes of Action, including, without limitation, from any applicable insurance provider, the Debtors agree to promptly turn such recovery over to the Litigation Trust for distribution in accordance with the terms of this Litigation Trust Agreement.

2.7    <u>No Reversion to Debtors or Others</u>.  The Distributable Assets shall be free and clear of all ~~Encumbrances~~**<u>encumbrances</u>** of the Debtors or any other Entity.

2.8    <u>Funding of the Litigation Trust</u>.  On or after the Effective Date and in accordance with the Combined Disclosure Statement and Plan, the Litigation Trust shall be funded with the Litigation Trust Financing **<u>Facility</u>**.

## ARTICLE III

## ADMINISTRATION OF THE LITIGATION TRUST

**<u>General Provisions</u>**

3.1    <u>Rights, Powers, and Privileges</u>.  The Litigation Trust shall be administered by the Litigation Trustee and the Litigation Trust Board. For such purposes, the Litigation Trustee shall have only the rights, powers and privileges expressly provided in this Litigation Trust Agreement, the Combined Disclosure Statement and Plan and in any other order of the Bankruptcy Court that is not, absent the consent of the Litigation Trustee, inconsistent with the terms and purpose of the Combined Disclosure Statement and Plan and Litigation Trust Agreement.  Subject to the terms of this Litigation Trust Agreement, **<u>the</u>** Litigation Trustee shall have the power to take the actions specified in this <u>Section 3.1</u> and any actions reasonably incidental thereto, which the Litigation Trustee reasonably determines to be necessary or appropriate to fulfill the purpose of the Litigation Trust, including but not limited to:

A.    exercise all power and authority that may be necessary to implement the Combined Disclosure Statement and Plan on behalf of the Litigation Trust and enforce all provisions thereof;

B.    open and maintain bank accounts, make Distributions and take other actions consistent with the Combined Disclosure Statement and Plan and this Litigation Trust Agreement, including the maintenance of appropriate reserves (including the Disputed Claim Reserve), in the name of the Litigation Trust;

**627**

C.       maintain the books and records of the Litigation Trust, including any books and records of the Debtors transferred to the Litigation Trust;

D.       incur and pay reasonable and necessary expenses in connection with the implementation and consummation of the Combined Disclosure Statement and Plan;

E.       make decisions without court approval, regarding the retention or engagement of professionals or other Entities (subject to approval of such retention by a majority of the Litigation Trust Board), and to pay, without court approval, all reasonable fees and expenses of the Litigation Trust accruing from and after the Effective Date;

F.       negotiate and, with the approval of the majority of the Litigation Trust Board, enter into any financing arrangement for purposes of carrying out the purposes of the Litigation Trust and duties set forth herein**, including, but not limited to, the Litigation Trust Financing Facility**;

G.       collect and liquidate all Litigation Trust Assets or Assigned Direct Creditor Claims, if any, transferred or to be transferred to the Litigation Trust;

H.       prepare and file tax returns and related forms and filings on behalf of the Litigation Trust;

I.       investigate, prosecute and/or settle or abandon without court approval Retained Causes of Action or Assigned Direct Creditor Claims, if any, transferred to the Litigation Trust not otherwise released pursuant to the Combined Disclosure Statement and Plan, including, but not limited to, any claims **(not otherwise released under the Combined Disclosure Statement and Plan)** against current or former officers or directors for breach of fiduciary duties;

J.       seek a determination of tax liability under section 505 of the Bankruptcy Code or otherwise and to pay, or cause to be paid, from the Distributable Assets any taxes incurred by the Litigation Trustee on or after the Effective Date;

K.       invest, or cause to be invested, cash as deemed appropriate by the Litigation Trustee, provided, however, such investments shall be Permitted Investments;

L.       enter, or cause to be entered, into any agreement or execute any document required by or consistent with this Litigation Trust Agreement and the Combined Disclosure Statement and Plan;

M.       abandon, or cause to be abandoned, in any commercially reasonable manner any Distributable Assets that the Litigation Trustee reasonably

# 628

concludes are burdensome or of inconsequential value and benefit to the Litigation Trust without any need for Bankruptcy Court approval;

N.  prepare and file post-Effective Date operating reports, if any, as required by the Bankruptcy Court, the Combined Disclosure Statement and Plan, applicable local rules, or this Litigation Trust Agreement;

O.  take all other actions not inconsistent with the provisions of this Litigation Trust Agreement and the Combined Disclosure Statement and Plan which the Litigation Trustee deems reasonably necessary or desirable in connection with the administration and consummation of the Litigation Trust and Combined Disclosure Statement and Plan; ~~and~~

P.  exercise such other powers as may be vested in the Litigation Trustee, consistent with the intent and purpose of the Litigation Trust Agreement and Combined Disclosure Statement and Plan, by order of the Bankruptcy Court~~.~~**;**

Q.  **wind down the affairs of the Debtors and each of their subsidiaries and if, to the extent necessary, take any steps to dissolve, liquidate, bankrupt, or take other similar action with respect to each Debtor and each subsidiary of the Debtors, including by terminating the corporate or organizational existence of each such Debtor and each other subsidiary of the Debtors; and**

R.  **prepare and file appropriate tax returns and other reports on behalf of the Debtors and pay taxes or other obligations owed by the Debtors.**

*provided*, for the avoidance of doubt and notwithstanding anything to the contrary herein, the Litigation Trustee shall have no authority to take any action in contravention of the Combined Disclosure Statement and Plan, the Confirmation Order, or this Litigation Trust Agreement, or to take any action which would make it impossible to carry on the activities of the Litigation Trust. **The Litigation Trustee agrees that the purposes of the Litigation Trust as set forth in this Section 3.1 shall be fulfilled utilizing the "Wind-Down Budget" amounts in the Current DIP Budget (as defined in the Final DIP Order), except as may otherwise be provided in the Litigation Trust Financing Facility.**

**The Litigation Trustee and Litigation Trust Board shall have the power to act for the Debtors in the same capacity as applicable to a board of directors and officers, subject to the provisions in the Combined Disclosure Statement and Plan, Confirmation Order, and this Litigation Trust Agreement (and all articles of incorporation or amendments, by-laws, governing documents, and related documents, as applicable, are deemed amended pursuant to the Combined Disclosure Statement and Plan to permit and authorize the same). From and after the Effective Date, the Litigation Trustee and Litigation Trust Board shall be representatives of and shall act for the Debtors and their Wind-Down Estates.**

3.2    Assignment of Direct Creditor Claims.  Subject in each case to diligence and prior written approval by the Litigation Trustee, on or after the Effective Date, any General Unsecured Creditor holding a Direct Creditor Claim may assign any such Direct Creditor Claim to the Litigation Trust. Any transfer of an Assigned Direct Creditor Claim shall be documented in an assignment and assumption agreement, which agreement shall be in form and substance reasonably acceptable to the Litigation Trustee and provide that (i) the applicable General Unsecured Creditor transfers all rights, title and interests in any such Assigned Direct Creditor Claim to the Litigation Trustee and further agrees and authorizes the Litigation Trustee to (a) prosecute, settle, compromise and/or dismiss the Assigned Direct Creditor Claims, on behalf of, and in the name of, such General Unsecured Creditor for the benefit of the Beneficiaries, and (ii) any recoveries with respect to the applicable Assigned Direct Creditor Claims shall in case be subject to terms of this Litigation Trust Agreement, including without limitation the distribution priorities set forth in Section 4.1 and, if applicable, the Subordinated Noteholder Carve Out in Section 4.2 of this Litigation Trust Agreement. For the avoidance of doubt, no General Unsecured Creditor holding a Direct Creditor Claim is required to assign any such claims to the Litigation Trust.

3.3    Transfer of Privileges.  On the Effective Date, the Debtors shall be deemed, without waiver, to assign, deliver, and transfer to the Litigation Trust and the Litigation Trustee the Debtors' and the Estates' evidentiary privileges, including the attorney/client privilege, that relate solely to the Distributable Assets transferred to the Litigation Trust.  From and after such transfer, the Debtors and their Estates shall have no further rights or obligations with respect to such Distributable Assets, other than with respect to ongoing obligations to reasonably cooperate, including to provide access to documents and personnel, as reasonably requested by the Litigation Trustee.  Such privileged communications may be shared among the Litigation Trustee, attorneys, financial advisors, accountants or other professionals and employees of the Litigation Trustee and the Litigation Trust Board without compromising the privileged nature of such communications, in accordance with the "joint interest" doctrine. From and after the Effective Date, the Litigation Trustee shall have the ability to seek and obtain examination (including document discovery and depositions) under Bankruptcy Rule 2004 against any Person or Entity in furtherance of the purpose of the Litigation Trust, and the Bankruptcy Court shall retain jurisdiction to order examinations (including examinations under Bankruptcy Rule 2004) against any Person or Entity, and to hear all matters with respect to the same.

3.4    Litigation Trust Counsel; Agents and Professionals.  The Litigation Trustee shall retain Litigation Trust Counsel on terms acceptable to a majority of the Litigation Trust Board in order to pursue the Retained Causes of Causes and, if applicable, any Assigned Direct Creditor Claims. In addition to the Litigation Trust Counsel, the Litigation Trustee may, but shall not be required to, retain attorneys, disbursing agent, financial advisors, accountants or other professionals and employees as the Litigation Trustee deems appropriate and with the approval of such retention by a majority of the Litigation Trust Board.  Subject to Section 7.9 of this Litigation Trust Agreement, the Litigation Trustee may pay the reasonable fees, costs and expenses of such persons out of the Distributable Assets in the ordinary course of business and, except as set forth below, without any further notice to any party or action, order or approval of the Bankruptcy Court.  Professionals retained by the Litigation Trustee shall receive compensation and reimbursement of expenses in a manner to be determined by the Litigation

**630**

Trustee, with approval by a majority of the Litigation Trust Board, and in accordance with the payment procedures set forth in <u>Section 7.9</u> of this Litigation Trust Agreement.

    3.5   <u>Safekeeping of Distributable Assets.</u>  All Distributable Assets shall, until distributed as provided herein, be held in trust for the benefit of the Beneficiaries in accordance with the Combined Disclosure Statement and Plan and this Litigation Trust Agreement. The Litigation Trustee shall be under no liability for interest or producing income on any Distributable Assets received by it hereunder and held for Distribution to the Beneficiaries, except as such interest or income shall actually be received by the Litigation Trustee.

    3.6   <u>Insurance</u>.  The Litigation Trustee may use Distributable Assets in the Litigation Trustee's reasonable business judgment to maintain customary insurance coverage, if available, for the protection of the Distributable Assets, with the approval of a majority of the Litigation Trust Board. The Litigation Trustee shall obtain insurance coverage with respect to the liabilities and obligations of the Litigation Trustee and the Litigation Trust Board (in the form of an errors and omissions policy or otherwise) with the approval of a majority of the Litigation Trust Board unless both the Litigation Trustee and Litigation Trust Board agree that such insurance shall not be required.

    3.7   <u>Confidentiality</u>.  Any Litigation Trustee and members of the Litigation Trust Board shall, during the period that they serve in such capacity under this Litigation Trust Agreement, after removal, incapacitation or resignation, and after dissolution of the Litigation Trust, hold strictly confidential and not use for personal gain any material, non-public information of or pertaining to any Entity to which any of the Distributable Assets relates or which it has become aware of in its capacity as Litigation Trustee or Litigation Trust Board member.

**<u>Litigation Trustee</u>**

    3.8   <u>Fiduciary Duties of the Litigation Trustee</u>.  The Litigation Trustee shall act in a fiduciary capacity on behalf of the interests of all Beneficiaries who are entitled to receive Distributions pursuant to the terms of the Combined Disclosure Statement and Plan and this Litigation Trust Agreement. For the avoidance of doubt, the Litigation Trustee is not an officer, director or fiduciary of the Debtors or the Estates.

    3.9   <u>Limitations on Rights of Litigation Trustee</u>.  The Litigation Trustee shall not at any time, on behalf of the Litigation Trust or the Beneficiaries, enter into or engage in any trade or business, and no part of the Distributable Assets, revenue, or income therefrom shall be used or disposed of by the Litigation Trust in furtherance of any trade or business. The Litigation Trustee shall not pursue, commence or settle any Retained Causes of Action not otherwise released pursuant to the Combined Disclosure Statement and Plan without the prior consent of a majority of the Litigation Trust Board, including, but not limited to, any claims **(not otherwise released under the Combined Disclosure Statement and Plan)** against current or former officers or directors for breach of fiduciary duties. A majority of the Litigation Trust Board, however, may authorize settlement parameters for the Litigation Trustee to settle certain Retained Causes of Action without having to seek further authority from the Litigation Trust Board.

3.10   Objection to Claims. The Committee Board Member shall have consultation rights with respect to any objections, settlements or other resolutions of any Disputed Claims, which are not Prepetition Loan Claims ~~or Deficiency Claims~~, pursued by the Litigation Trustee; provided, that, the Litigation Trustee must obtain unanimous consent from the members of the Litigation Trust Board before pursuing (or refusing to pursue) any objections or settlements with respect to Disputed Claims, which are not Prepetition Loan Claims, ~~Deficiency Claims~~ or Retained Causes of Action, that are asserted or scheduled in an amount equal to or in excess of $200,000.

3.11   Other Activities.  Any individual serving as the Litigation Trustee, other than in his or her individual capacity as such, shall be entitled to perform services for and be employed by third parties, *provided*, *however*, that such performance or employment affords such individual sufficient time to carry out his or her responsibilities as the Litigation Trustee.  In addition, the Litigation Trustee shall not be prohibited from engaging in any trade or business on its own account, provided that such activity does not interfere or conflict with the Litigation Trustee's administration of the Litigation Trust.

3.12   Investments by Litigation Trustee.  The Litigation Trustee may only invest funds held in the Litigation Trust in Permitted Investments and, provided that the Litigation Trustee does so, it shall have no liability in the event of insolvency of any institution in which the Litigation Trustee has invested any of the Distributable Assets or any proceeds, revenue, or income therefrom.  The Litigation Trustee may expend the cash of the Litigation Trust (a) as reasonably necessary to meet contingent liabilities and to maintain the value of the Distributable Assets during liquidation, (b) to pay reasonable administrative expenses (including, but not limited to, any taxes imposed on the Litigation Trust) and (c) to satisfy other liabilities incurred by the Litigation Trust in accordance with the Combined Disclosure Statement and Plan and this Litigation Trust Agreement (including, without limitation, the payment of any taxes).

3.13   Litigation Trustee Action.  The Litigation Trustee shall hold, collect, conserve, protect and administer the Litigation Trust in accordance with the provisions of this Litigation Trust Agreement and the Combined Disclosure Statement and Plan, and pay and distribute amounts as set forth herein for the purposes set forth in this Litigation Trust Agreement and the Combined Disclosure Statement and Plan.  The Litigation Trustee shall exercise its business judgment for the benefit of the Beneficiaries in order to maximize the value of the Distributable Assets and Distributions, giving due regard to the cost, risk, and delay of any course of action.  Any good faith determination by the Litigation Trustee as to what actions are in the best interests of the Litigation Trust shall be determinative.

3.14   Bankruptcy Court Approval of Litigation Trustee Actions.  Except as provided in this Litigation Trust Agreement or the Combined Disclosure Statement and Plan, the Litigation Trustee need not seek or obtain an order or approval of the Bankruptcy Court or any other court in the exercise of any power, rights, or discretion conferred hereunder, or account to the Bankruptcy Court or any other court as to the results of its actions.  Notwithstanding the foregoing, the Litigation Trustee may submit to the Bankruptcy Court any matter regarding which the Litigation Trustee may desire to have explicit approval of the Bankruptcy Court for the taking of any specific action proposed to be taken by the Litigation Trustee with respect to the Distributable Assets, Disputed Claims, the Litigation Trust, the Litigation Trust Agreement, the

Combined Disclosure Statement and Plan, or the Debtors, including the administration and Distribution of the Distributable Assets and the resolution of Disputed Claims. The Bankruptcy Court shall retain jurisdiction for such purposes and may approve or disapprove any such proposed action upon a motion filed by the Litigation Trustee. In addition, the Litigation Trustee shall have the authority, but not the obligation, to seek Bankruptcy Court approval to sell any Asset free and clear of any and all ~~Encumbrances~~encumbrances (to the extent any Asset is not already free and clear of any all such ~~Encumbrances~~encumbrances).

## Litigation Trust Board

3.15    <u>Litigation Trust Board</u>. The Litigation Trust Board shall be established on the Effective Date and will remain and continue in full force and effect until the Litigation Trust is dissolved in accordance with the terms of this Litigation Trust Agreement. The Litigation Trust Board shall have the rights and obligations set forth in this Litigation Trust Agreement. In all circumstances, the Litigation Trust Board shall act in the best interests of all Beneficiaries and in furtherance of the purpose of the Litigation Trust. Notwithstanding anything contained in this Litigation Trust Agreement, the Litigation Trust Board shall not take any action which will cause the Litigation Trust to fail to qualify as a "liquidating trust" for U.S. federal income tax purposes.

3.16    <u>Litigation Trust Board Compensation</u>. Members of the Litigation Trust Board shall serve [without compensation], provided, however, members of the Litigation Trust Board shall be entitled to reimbursement from the Litigation Trust for their reasonable and necessary out of pocket expenses incurred in connection with their service as members of the Litigation Trust Board.

3.17    <u>Litigation Trust Board Tenure and Replacement</u>. Each member of the Litigation Trust Board will serve until death, incapacitation or resignation. A member of the Litigation Trust Board may resign at any time by providing a written notice of resignation to the Litigation Trustee and remaining members of the Litigation Trust Board. Upon the resignation, death or incapacity of a Litigation Trust Board member, a successor member may, but shall not be required to, be appointed by a majority of the remaining members of the Litigation Trust Board, provided that any such successor member must be approved by either (i) the Prepetition Lenders, or (ii) at least one member of the Litigation Trust Board appointed by the Prepetition Lenders.

3.18    <u>Litigation Trust Board Action</u>. Except as may otherwise be provided herein, a majority of the members of the Litigation Trust Board shall constitute a quorum for any action by the Litigation Trust Board, and the act of a majority of those present at any meeting at which a quorum is present, shall be the act of the Litigation Trust Board. In the event of a tie vote, the Litigation Trustee shall be deemed a voting member for the sole purpose of breaking any such tie vote of the Litigation Trust Board. Any or all members of the Litigation Trust Board may participate in a regular or special meeting by use of telephone, or similar communications equipment by means of which all persons participating in the meeting may hear each other. The Litigation Trust Board may adopt, by majority vote of all members, by-laws or other rules of procedure that are not inconsistent with the terms of this Litigation Trust Agreement. Notwithstanding anything contained in this <u>Section 3.18</u>, a Litigation Trust Board member shall be recused from the Litigation Trust Board's deliberations and votes on any matters as to which

**633**

such member has a conflicting interest as determined by both the Litigation Trustee and the other members of the Litigation Trust Board.

3.19    Litigation Trust Board Action Without a Meeting.    Any action required or permitted to be taken by the Litigation Trust Board may be taken without a meeting if the action is taken by unanimous written consent, as evidenced by one or more written consents describing the action taken, signed by the members of the Litigation Trust Board or by such other procedures as may be agreed upon by a majority of the Litigation Trust Board, including negative notice procedures.

3.20    Periodic Consultation with Litigation Trust Board.    In addition to any other consultation and reporting requirements set forth in this Litigation Trust Agreement, the Litigation Trustee shall report and consult with the Litigation Trust Board at its discretion or as reasonably requested by the Litigation Trust Board or any member thereof concerning the status and administration of the Litigation Trust and the Distributable Assets.

**ARTICLE IV**

**DISTRIBUTIONS FROM THE LITIGATION TRUST**

**4.1    Litigation Trust Election.    In accordance with the Combined Disclosure Statement and Plan, within five (5) business days after a General Unsecured Claim becomes an Allowed Claim** under the Combined Disclosure Statement and Plan, **the Debtors or the Litigation Trustee, as applicable, shall cause a notice to be served on the holder of such Allowed General Unsecured Claim informing such holder of its right under the Combined Disclosure Statement and Plan to** elect to receive Litigation Trust Interests **on account of its Allowed General Unsecured Claim, and that not timely making such election will result in such Holder receiving,** in full and final satisfaction of such **Holder's Allowed General Unsecured Claim, such Holder's Pro Rata Share of the GUC Cash Pool in accordance with the Combined Disclosure Statement and Plan.  Such notice must provide no less than thirty (30) days for each Holder to make the election, which election may be made either via submission of an election form via U.S. Mail or by online submission through the Debtors' claims agent's website.**

**4.2**    ~~4.1~~ Priority of Distributions.    Except as provided herein, Distributions of Available Litigation Trust Cash shall be distributed to Beneficiaries as follows:

a)    *First*, to the Litigation Trustee to pay the Litigation Trust Expenses and for compensation and reimbursement of reasonable and documented expenses to Litigation Trust Board ~~**Members**~~;

**b)**    *Second*, to repay the Litigation Trust Financing Facility until all obligations related to the Litigation Trust Financing **Facility** are satisfied in full;

**c)**    *Third*, after **all obligations related to** the Litigation Trust Financing Facility ~~**Obligations**~~ are satisfied in full, the next $5 million of Litigation Trust Distribution Proceeds, net of any Litigation Trust Expenses, shall be distributed as follows:

**634**

    i) 95% to Holders of Allowed Prepetition Loan Claims, solely to the extent such Claims have not been satisfied in full on account of Litigation Trust Distribution Proceeds or otherwise under the Combined Disclosure Statement and Plan; and

    ii) 5% to Holders of Allowed General Unsecured Claims that have elected to receive Litigation Trust Interests, solely to the extent such Claims have not been satisfied in full;

**d)** ~~c)~~ *Fourth*, the next $15 million of Litigation Trust Distribution Proceeds, net of any Litigation Trust Expenses, shall be distributed as follows:

    i) 90% to Holders of Allowed Prepetition Loan Claims, solely to the extent such Claims have not been satisfied in full on account of Litigation Trust Distribution Proceeds or otherwise under the Combined Disclosure Statement and Plan; and

    ii) 10% to Holders of Allowed General Unsecured Claims that have elected to receive Litigation Trust Interests, solely to the extent such Claims have not been satisfied in full;

**e)** ~~d)~~ *Fifth*, the next $15 million of Litigation Trust Distribution Proceeds, net of any Litigation Trust Expenses, shall be distributed as follows:

    i) 87.5% to Holders of Allowed Prepetition Loan Claims, solely to the extent such Claims have not been satisfied in full on account of Litigation Trust Distribution Proceeds or otherwise under the Combined Disclosure Statement and Plan; and

    ii) 12.5% to Holders of Allowed General Unsecured Claims that have elected to receive Litigation Trust Interests, solely to the extent such Claims have not been satisfied in full; and

**f)** ~~e)~~ *Sixth*, any incremental Litigation Trust Distribution Proceeds, net of any Litigation Trust Expenses, shall be distributed as follows:

    i) 85% to Holders of Allowed Prepetition Loan Claims, solely to the extent such Claims have not been satisfied in full on account of Litigation Trust Distribution Proceeds or otherwise under the Combined Disclosure Statement and Plan; and

    ii) 15% to Holders of Allowed General Unsecured Claims that have elected to receive Litigation Trust Interests, solely to the extent such Claims have not been satisfied in full.

**4.3** ~~4.2~~ Subordination Agreement Carve Out. Solely with respect to Distributions of Available Litigation Trust Cash in accordance with <u>Section 4.1</u> of this Litigation Trust Agreement, Subordinated Noteholders constituting Beneficiaries hereunder shall be entitled to

**635**

receive up to an aggregate amount of $900,000 in Litigation Trust Distribution Proceeds (in the aggregate among all Subordinated Noteholders and any assignees constituting Beneficiaries), prior to and notwithstanding the Prepetition Lenders' enforcement of any rights under the Subordination Agreements (the "Subordinated Noteholder Carve Out"); provided, that, for the avoidance of doubt, except as provided in this Section 4.2, nothing herein shall alter, modify or otherwise limit the Prepetition Lenders' rights under the Subordination Agreements.

**4.4**   ~~4.3~~  Payments and Distributions on Disputed Claims.   Except as otherwise provided in the Combined Disclosure Statement and Plan, a Final Order or as agreed to by the relevant parties, distributions under the Combined Disclosure Statement and Plan on account of a Disputed Claim that becomes an Allowed Claim after the Effective Date shall be made on the day selected by the Litigation Trustee pursuant to the terms of the Combined Disclosure Statement and Plan and this Litigation Trust Agreement.   Notwithstanding any provision otherwise provided herein, and except as otherwise agreed to by the relevant parties, no partial payments and no partial distributions shall be made with respect to a Disputed Claim until all such disputes in connection with such Disputed Claim have been resolved by settlement or Final Order.   In the event that there are Disputed Claims requiring adjudication and resolution, the Litigation Trustee, with the approval of a majority of the Litigation Trust Board, shall establish appropriate Disputed Claim Reserves for potential payment of such Disputed Claims if such claims were Allowed or such other amount as may be ordered by the Bankruptcy Court.

**4.5**   ~~4.4~~  Distributions in General.   All Distributions to Beneficiaries hereunder as of the applicable distribution date shall be made on or as soon as practicable after the applicable distribution date pursuant and subject to the terms of Article X of the Combined Disclosure Statement and Plan, which is incorporated, *mutatis mutandis*, into and is part of this Litigation Trust Agreement as if set forth in full herein.

**4.6**   ~~4.5~~  Calculation of Amounts to Be Distributed.   Each Holder of an Allowed Claim against the Debtors shall receive the distributions that the Combined Disclosure Statement and Plan provides for Allowed Claims in the applicable Class.   Except as otherwise provided herein, Holders of Claims shall not be entitled to interest, dividends or accruals on the distributions provided for herein, regardless of whether such distributions are delivered on or at any time after the Effective Date.

**ARTICLE V**

**BENEFICIARIES**

5.1   Incidents of Ownership.   The Beneficiaries shall be the sole beneficiaries of the Litigation Trust and the Distributable Assets, and the Litigation Trustee shall retain only such incidents of ownership as are necessary to undertake the actions and transactions authorized in this Litigation Trust Agreement and Combined Disclosure Statement and Plan and distribute the Distributable Assets to the Beneficiaries.

5.2   Interest Beneficial Only.   The ownership of the Litigation Trust Interests shall not entitle any Beneficiary or the Debtors to any title in or to the Distributable Assets or to any right

to call for a partition or division of such Distributable Assets or to require an accounting, except as may specifically be provided herein or in any order of the Bankruptcy Court.

5.3     Evidence of Beneficial Interest.    Ownership of a beneficial interest in the Distributable Assets shall not be evidenced by any certificate, security, or receipt, or in any other form or manner whatsoever, except as maintained on the books and records of the Litigation Trust by the Litigation Trustee as Litigation Trust Interests held by the Beneficiaries.    In maintaining the Litigation Trustee's register of Litigation Trust Interests, the Litigation Trustee may rely upon the Debtors' schedules and the official claims register maintained in the Chapter 11 Cases.

5.4     Limits on Transfers and Notice of Transfer of Beneficial Interest.    The interests of Beneficiaries are not negotiable and not transferable except (a) pursuant to applicable laws of descent and distribution or (b) by operation of law.    The Litigation Trustee shall not be required to record any transfer which, in the Litigation Trustee's sole discretion may be construed to create any uncertainty or ambiguity as to the identity of the holder of the interest in the Litigation Trust.    Until appropriate notification and proof thereof, in a form satisfactory to the Litigation Trustee in the exercise of its reasonable discretion, is submitted to the Litigation Trustee by registered or certified United States mail, return receipt requested, the Litigation Trustee may continue to pay all amounts to or for the benefit of the original Beneficiary.    The Litigation Trustee may rely without any further investigation upon any notification and proof of a transfer of a beneficial interest in the Litigation Trust submitted in accordance with this Section 5.4 that the Litigation Trustee reasonably believes to be genuine.

## ARTICLE VI

## THIRD PARTY RIGHTS AND LIMITATION OF LIABILITY

6.1     Reliance.    The Litigation Trustee may absolutely and unconditionally rely, and shall be protected in acting upon any resolution, statement, instrument, opinion, report, notice, request, consent, order, or other paper or document that the Litigation Trustee reasonably believes in good faith to be genuine.

6.2     Parties Dealing with the Litigation Trustee.    In the absence of actual knowledge to the contrary, any Entity dealing with the Litigation Trust or the Litigation Trustee shall be entitled to rely on the authority of the Litigation Trustee or any of the Litigation Trustee's agents to act in connection with the Distributable Assets and this Litigation Trust Agreement.    There shall be no obligation on any Entity dealing with the Litigation Trustee to inquire into the validity, expediency or propriety of any transaction by the Litigation Trustee or any agent of the Litigation Trustee.

6.3     Limited Recourse.    Except as otherwise provided in this Litigation Trust Agreement, Entities (including any professionals retained by the Litigation Trustee in accordance with this Litigation Trust Agreement) engaged in transactions with the Litigation Trust or the Litigation Trustee shall look only to the Distributable Assets to satisfy any liability incurred in connection with carrying out the terms of this Litigation Trust Agreement.

6.4     Limitation of Liability.   Except as expressly set forth in this Litigation Trust Agreement, on and after the Effective Date, the Litigation Trust shall have no liability on account of any claims.   Neither the Litigation Trustee, the Litigation Trust Board, their respective members, designees or professionals, or any of their duly designated agents or representatives (collectively, the "Covered Persons"), shall be held personally liable for any claim asserted against them or the Litigation Trust in connection with their duties and responsibilities relating to the Distributable Assets and Litigation Trust.   Without limiting the generality of the foregoing, none of the Covered Persons shall be liable for any action taken or omitted to be taken in furtherance of their responsibilities hereunder, except to the extent that their conduct is determined by Final Order to be due to their own willful misconduct, gross negligence, or fraud.   The Litigation Trust Board shall be entitled to enjoy all of the rights, powers, immunities and privileges of an official committee of unsecured creditors.   All Entities dealing with the Litigation Trustee, Litigation Trust or Litigation Trust Board shall only look to the Distributable Assets, or any insurance that may cover such claim, to satisfy any liability incurred by the Litigation Trustee or Litigation Trust Board.   Nothing contained in this Litigation Trust Agreement or the Combined Disclosure Statement and Plan shall be deemed to be an assumption by the Beneficiaries, Litigation Trust or Litigation Trustee of any of the liabilities, obligations or duties of the Debtors or the Beneficiaries.

6.5     Non-Liability for Acts of Others.   The Litigation Trustee and the Litigation Trust Board may, in connection with the performance of their functions, and in their sole and absolute discretion, consult with attorneys, accountants, financial advisors and agents, and shall not be liable for any act taken, omitted to be taken, or suffered to be done in accordance with advice or opinions rendered by such persons, regardless of whether such advice or opinions are provided in writing.   Notwithstanding such authority, neither the Litigation Trustee nor the Litigation Trust Board shall be under any obligation to consult with attorneys, accountants, financial advisors or agents, and their determination not to do so shall not result in the imposition of liability on the Litigation Trustee or Litigation Trust Board or their respective members and/or designees.   Any successor Litigation Trustee may accept and rely upon any accounting made by or on behalf of any predecessor Litigation Trustee hereunder, and any statement or representation made by a predecessor Litigation Trustee or its agents as to the Distributable Assets or as to any other fact bearing upon the prior administration of the Litigation Trust, so long as it has a good faith basis to do so.   A successor Litigation Trustee shall not be liable for having accepted and relied in good faith upon any such accounting, statement, or representation if it is later proved to be incomplete, inaccurate, or untrue.   A successor Litigation Trustee shall not be liable for any act or omission of any predecessor Litigation Trustee, nor have a duty to enforce any claims against any predecessor Litigation Trustee on account of any such act or omission.

6.6     Indemnification.   The Litigation Trust shall indemnify and hold harmless, to the fullest extent permitted by law, the Litigation Trustee, the Litigation Trust Board and their employees, members, designees and professionals, and all duly designated agents and representatives thereof (in their capacity as such; each, an "Indemnified Party" and collectively, the "Indemnified Parties"), from and against and in respect of all liabilities, losses, damages, claims, costs and expenses (including reasonable attorneys' fees, disbursements, and related expenses) which such Indemnified Parties may incur or to which such Indemnified Parties may become subject in connection with any action, suit, proceeding or investigation brought by or

threatened against such Indemnified Party arising out of or due to their acts or omissions, or consequences of such acts or omissions, with respect to the implementation or administration of the Litigation Trust or the Combined Disclosure Statement and Plan or the discharge of their duties under this Litigation Trust Agreement; *provided*, *however*, that no such indemnification will be made to such persons for actions or omissions that are determined by a Final Order to be a result of such persons' willful misconduct, gross negligence, or fraud. Entities dealing with the Litigation Trustee and Litigation Trust Board may only look to the Distributable Assets and any applicable insurance coverage to satisfy any liability incurred by the Litigation Trustee or the Litigation Trust Board to such Entity in carrying out the terms of this Litigation Trust Agreement, and neither the Litigation Trustee nor the Litigation Trust Board shall have any personal obligation to satisfy any such liability. Notwithstanding any provision in this Litigation Trust Agreement to the contrary, an Indemnified Party shall be entitled to request advances from the Litigation Trust to cover reasonable fees and necessary expenses incurred in connection with defending itself in any action brought against it as a result of the acts or omissions, actual or alleged, of an Indemnified Party in its capacity as such; <u>provided</u>, <u>however</u>, that the Litigation Trustee shall not be required to make any such advances; <u>provided further</u>, <u>however</u>, that any Indemnified Parties receiving such advances shall repay the amounts so advanced to the Litigation Trust upon the entry of a Final Order of a court of competent jurisdiction finding that such Indemnified Parties were not entitled to such indemnity under the provisions of this <u>Section 6.6</u>. This indemnification shall survive the death, dissolution, resignation, or removal, as may be applicable, of the Indemnified Parties, or the termination of the Litigation Trust, and shall inure to the benefit of the Indemnified Parties' heirs and assigns.

**ARTICLE VII**

**SELECTION, REMOVAL AND COMPENSATION OF THE LITIGATION TRUSTEE**

7.1     <u>Initial Litigation Trustee</u>.   As contemplated by the Combined Disclosure Statement and Plan, the initial Litigation Trustee was selected by the DIP Agent and Prepetition Agent, in consultation with Committee.

7.2     <u>Term of Service</u>.  The Litigation Trustee shall serve until (a) the completion of all the Litigation Trustee's duties, responsibilities and obligations under this Litigation Trust Agreement, (b) termination of the Litigation Trust in accordance with this Litigation Trust Agreement, or (c) the Litigation Trustee's death or dissolution, incapacitation, resignation, or removal.

7.3     <u>Removal of a Litigation Trustee</u>.  Any Entity serving as Litigation Trustee may be removed at any time and for any reason by action of a majority of the Litigation Trust Board or upon the determination of the Bankruptcy Court on a motion for cause shown.  Any Litigation Trustee so removed is entitled to payment of fees and expenses accrued prior to removal subject to the terms of this Litigation Trust Agreement.  Any dispute regarding the compensation to be paid shall be determined by the Bankruptcy Court.

7.4     <u>Resignation of Litigation Trustee</u>.  The Litigation Trustee may resign at any time by giving the Litigation Trust Board at least thirty (30) days' written notice of the Litigation Trustee's intention to do so or such shorter time as agreed to by the Litigation Trust Board.  Any

resigning Litigation Trustee is entitled to payment of fees and expenses accrued prior to resignation subject to the terms of this Litigation Trust Agreement. Any dispute regarding the compensation to be paid shall be determined by the Bankruptcy Court.

7.5     Accounting in the Event of Removal or Resignation. In the event of removal or resignation, the removed or resigning Litigation Trustee shall render to the Litigation Trust Board a full and complete accounting of monies and Distributable Assets received, disbursed, and held during the term of office of that Litigation Trustee and such other information reasonably requested by the Litigation Trust Board. Unless an earlier date is agreed to by the removed or resigning Litigation Trustee, the removal or resignation shall be effective on the later of (a) the date specified in the notice; (b) the date that is 30 days after the date the notice is delivered; or (c) the date the accounting described in the preceding sentence is delivered.

7.6     Appointment of Successor Litigation Trustee. Upon the resignation, death, incapacity, or removal of a Litigation Trustee, the Litigation Trust Board shall appoint a successor Litigation Trustee to fill the vacancy so created. Any successor Litigation Trustee so appointed shall consent to and accept in writing the terms of this Litigation Trust Agreement and agree that the provisions of this Litigation Trust Agreement shall be binding upon and inure to the benefit of the successor Litigation Trustee and all of the successor Litigation Trustee's heirs and legal and personal representatives, successors or assigns. Notwithstanding anything in this Litigation Trust Agreement, in the event that a successor Litigation Trustee is not appointed within 60 days of the occurrence or effectiveness, as applicable, of the prior Litigation Trustee's resignation, death, incapacity, or removal, the Bankruptcy Court, upon the motion of any party-in-interest, including counsel to the Litigation Trust, shall approve a successor to serve as the Litigation Trustee.

7.7     Powers and Duties of Successor Litigation Trustee. A successor Litigation Trustee shall have all the rights, privileges, powers, and duties of the predecessor Litigation Trustee under this Litigation Trust Agreement, the Combined Disclosure Statement and Plan, or as provided in a further order of the Bankruptcy Court.

7.8     Litigation Trust Continuance. The death, incapacity, resignation or removal of the Litigation Trustee shall not terminate the Litigation Trust or revoke any existing agency created pursuant to this Litigation Trust Agreement or invalidate any action theretofore taken by the Litigation Trustee.

7.9     Compensation and Costs of Administration. The Litigation Trustee shall be compensated as follows: [(i) all administrative services, including those related to claims administration, non-substantive claim objections and distributions be included within a fixed monthly payment of $[●], payable in arrears (which fee will only be charged in the months these services are provided), and (ii) all other services, including related to claim litigation and potential recoveries of assets, including, prosecuting litigation, be billed hourly at a rate of $[−●] per hour and paid if, and when, those assets are recovered. In addition to the above fees, Litigation Trustee will be entitled to reimbursement for all out-of-pocket expenses, *provided*, *however*, that the Litigation Trustee shall be compensated and reimbursed, as applicable, for services provided and reasonable and documented expenses incurred in connection with the

formation and implementation of the Litigation Trust prior to the Effective Date, on such terms as previously agreed to by the Litigation Trust Board and the Litigation Trustee.]

7.10    Payment of Compensation. The Litigation Trustee shall retain the Litigation Trust Counsel and may retain and compensate other professionals as provided for in Section 3.4 of this Litigation Trust Agreement which such retention, for the avoidance of doubt, shall be subject to approval by a majority of the Litigation Trust Board.  Other than Litigation Trust Counsel, which shall be retained on terms and compensation paid in accordance with procedures acceptable to a majority of the Litigation Trust Board, the reasonable fees and actual and necessary expenses of such professionals, the Litigation Trustee himself, and any disbursing agent shall be paid by the Litigation Trustee upon submission of a monthly fee statement to the Litigation Trustee and/or the Litigation Trust Board, as applicable, in accordance with the following procedures.  The Litigation Trustee shall deliver his or her invoices or fee statements to the Litigation Trust Board before payment from the Distributable Assets therefor shall be allowed, and such invoices or fee statement shall be approved by a majority of the Litigation Trust Board prior to payment.  Any professionals retained by the Litigation Trustee pursuant to this Litigation Trust Agreement shall deliver their invoices or fee statements to the Litigation Trustee and the Litigation Trust Board before payment from the Distributable Assets therefor shall be allowed, and such invoices or fee statement shall be approved by a majority of the Litigation Trust Board prior to payment.  Any Entity selected as disbursing agent by the Litigation Trustee pursuant to this Litigation Trust Agreement and the Combined Disclosure Statement and Plan shall deliver their invoices or fee statements to the Litigation Trustee and the Litigation Trust Board before payment from the Distributable Assets therefor shall be allowed, and such invoices or fee statement shall be approved by a majority of the Litigation Trust Board prior to payment.  The Litigation Trustee and Litigation Trust Board, as applicable, shall have fifteen (15) days from the delivery of any invoice or fee statement to provide notice of an objection to the fee statement to the professional or Entity seeking compensation or reimbursement of expenses (including the Litigation Trustee). For an objection to be valid, it shall be in writing and set forth in detail the specific fees objected to and the basis for the objection.  The uncontested portion of each invoice shall be paid within twenty-five (25) days after its original delivery to the Litigation Trustee.  Any objection that remains unresolved fifteen (15) days after it is made shall be submitted to the Bankruptcy Court for resolution.

## ARTICLE VIII

## REPORTING AND TAX MATTERS

8.1    Reporting and Filing Requirements.  The Litigation Trustee shall prepare and file post-Effective Date operating reports, if any, as required by the Bankruptcy Court, the Combined Disclosure Statement and Plan, applicable local rules, or this Litigation Trust Agreement.

8.2    Filing of Tax Returns.  The Litigation Trustee shall file tax returns for the Litigation Trust as a grantor trust pursuant to Treasury Regulation Section 1.671-4(a) and any other applicable laws or regulations; *provided*, *however*, that the Litigation Trustee may, in the Litigation Trustee's reasonable discretion, determine the best way to report for tax purposes with respect to the Disputed Claims Reserve, including (i) filing a tax election to treat any and all reserves for Disputed Claims as a disputed ownership fund ("DOF") within the meaning of

**641**

Treasury Income Tax Regulation Section 1.468B-9 for federal income tax purposes rather than to tax such reserve as a part of the Litigation Trust or (ii) electing to report as a separate trust or sub-trust or other entity. If an election is made to report the Disputed Claims Reserve as a DOF, the Litigation Trust shall comply with all federal and state tax reporting and tax compliance requirements of the DOF, including but not limited to the filing of a separate federal tax return for the DOF and the payment of federal and/or state income tax due.

8.3    <u>Preparation of Statements</u>.  To the extent reasonably practicable, the Litigation Trustee shall, in conjunction with filing the Litigation Trust's annual tax return, send to each Beneficiary a statement setting forth the Beneficiary's share of items of income, gain, loss, deduction, or credit and will instruct all such Beneficiaries to report such items on their federal income tax returns.  A final ~~such~~ statement shall also be sent to each Beneficiary within seventy-five (75) days after the dissolution of the Litigation Trust.  The Litigation Trust's taxable income, gain, loss, deduction, or credit will be allocated (subject to provisions of the Combined Disclosure Statement and Plan and any confirmation order entered by the Bankruptcy Court relating to Disputed Claims) to the Beneficiaries in accordance with their relative beneficial interests in the Litigation Trust, as determined pursuant to this Litigation Trust Agreement and the Combined Disclosure Statement and Plan.

8.4    <u>Valuation of Distributable Assets</u>.  As soon as practicable after the Effective Date, the Litigation Trustee, to the extent that it deems it necessary or appropriate in the reasonable exercise of its discretion, shall, in good faith, value the Distributable Assets, and such valuation shall be made available from time to time, to the extent relevant, and shall be used consistently by all parties (including the Debtors, the Litigation Trustee and the Beneficiaries) for all federal income tax purposes.  The Litigation Trustee shall be under no obligation to hire an expert to make such a valuation.

## ARTICLE IX

## MAINTENANCE OF AND ACCESS TO RECORDS

9.1    <u>Books and Records</u>.  The Litigation Trustee shall maintain books and records containing a description of all property from time to time constituting the Distributable Assets and an accounting of all receipts and disbursements.  Said books and records shall be open to inspection by any Beneficiary at any reasonable time during normal business hours and after reasonable advance notice.  The Litigation Trustee shall furnish to any Beneficiary upon written request an annual statement of receipts and disbursements, including a summary of all income and expenses of the Litigation Trust.  The Debtors and Liquidating Debtors shall reasonably cooperate with the Litigation Trustee to effectuate the terms of this Litigation Trust Agreement, including executing such further documents and instruments as may be required from time to time and providing reasonable access and information to the Litigation Trustee on a timely basis

9.2    <u>Cooperation by Debtors</u>. The Debtors shall reasonably cooperate with the Litigation Trustee to effectuate the terms of this Agreement, including providing reasonable access and information to the Litigation Trustee on a timely basis.  Notwithstanding the foregoing, the Debtors or other furnishing party shall provide such documents or other materials described in this paragraph only upon reasonable request by the Litigation Trustee and only if

**642**

they can be reasonably provided by the Debtors or other furnishing party without significant effort or material expense; provided, that in the event that the furnishing party believes that the requested information cannot be provided without significant effort or material expense, the furnishing party and the Litigation Trustee shall confer in good faith to agree upon appropriate consideration for the furnishing party to provide such information.

## ARTICLE X

## DURATION OF TRUST

10.1    Duration.  The Litigation Trust shall become effective upon the Effective Date of the Combined Disclosure Statement and Plan, and the Litigation Trust and its provisions herein shall remain and continue in full force and effect until the Litigation Trust is terminated.

10.2    Termination.  The Litigation Trust shall terminate upon the occurrence of the earlier of (a) the final liquidation, administration, and Distribution of the Distributable Assets in accordance with this Litigation Trust Agreement and the Combined Disclosure Statement and Plan and the full performance of all other duties and functions of the Litigation Trustee set forth in this Litigation Trust Agreement and any further order of the Bankruptcy Court, and (b) the fifth (5th) anniversary of the Effective Date.  Notwithstanding the foregoing, the duration of the Litigation Trust may be extended with the approval of the Bankruptcy Court, upon motion made within the six-month period before such fifth anniversary (and, in the event of further extension, by order of the Bankruptcy Court, upon motion made at least six (6) months before the end of the preceding extension). The aggregate of all such extensions shall not exceed three years, unless the Litigation Trustee receives a favorable ruling from the IRS that any further extension would not adversely affect the status of the Litigation Trust as a liquidating trust within the meaning of section 301.7701-4(d) of the Treasury Regulations for federal income tax purposes.  After (i) the final Distributions pursuant to the Combined Disclosure Statement and Plan, (ii) the filing by or on behalf of the Litigation Trust of a certification of dissolution with the Bankruptcy Court and (iii) any other action deemed appropriate by the Litigation Trustee in consultation with the Litigation Trust Board, the Litigation Trust shall be deemed dissolved for all purposes without the necessity for any other or further actions.

10.3    Continuance of Litigation Trust for Winding Up.  After the termination of the Litigation Trust and for the purpose of liquidating and winding up the affairs of the Litigation Trust, the Litigation Trustee shall continue to act as such until the Litigation Trustee's duties have been fully performed, including, without limitation, such tasks as necessary to wind-up the affairs of the Litigation Trust.  After the termination of the Litigation Trust, the Litigation Trustee shall retain for a period of six (6) months the books, records, Beneficiary lists, and certificates and other documents and files which shall have been delivered to or created by the Litigation Trustee.  At the Litigation Trustee's discretion, all of such records and documents may, but need not, be destroyed at any time after such six (6) month period.  Except as otherwise specifically provided herein, upon the discharge of all liabilities of the Litigation Trust and final Distributions pursuant to this Litigation Trust Agreement, the Litigation Trustee shall have no further duties or obligations hereunder.  For the avoidance of doubt, the limitations on liability contained in this Litigation Trust Agreement shall apply to any actions taken by the Litigation Trustee during the course of winding up the affairs of the Litigation Trust.

**643**

## ARTICLE XI

## MISCELLANEOUS

11.1     Jurisdiction.   The Bankruptcy Court shall have exclusive jurisdiction over**, the fullest extent permitted by law,** (a) the Litigation Trust and the Litigation Trustee with respect to the administration of and activities relating to the Litigation Trust, and (b) any issues or disputes arising out of this Litigation Trust Agreement; *provided*, *however*, that notwithstanding the foregoing, the Litigation Trustee shall have the power and authority to bring any action in any court of competent jurisdiction to prosecute any Retained Causes of Action (or Assigned Direct Creditor Claims, if any) not otherwise released pursuant to the Combined Disclosure Statement and Plan, including, but not limited to, any claims **(not otherwise released pursuant to the Combined Disclosure Statement and Plan)** against current or former officers or directors for breach of fiduciary duties.

11.2     Notices.   All notices to be given to Beneficiaries may be given by ordinary mail, or may be delivered personally, to the holders at the addresses appearing on the books kept by the Litigation Trustee.  Any notice or other communication which may be or is required to be given, served, or sent to the Litigation Trustee or the members of the Litigation Trust Board shall be in writing and shall be sent by registered or certified United States mail, return receipt requested, postage prepaid, or transmitted by email, telex, or facsimile (if receipt is confirmed) addressed as follows:

If to the Litigation Trust/Litigation Trustee:

[●]
[ADDRESS]
[EMAIL]
[PHONE]

With a copy to:

[●]
[ADDRESS]
[EMAIL]
[PHONE]

**[**If to the members of the Litigation Trust Board:**]**

[●]
[ADDRESS]
[EMAIL]
[PHONE]

**644**

[●]
[ADDRESS]
[EMAIL]
[PHONE]


[ADDRESS]
[EMAIL]
[PHONE]

or to such other address as may from time to time be provided in a written notice by the members of the Litigation Trust Board or to such other address as may from time to time be provided in a written notice by the Litigation Trustee.

11.3    Bond.  The Litigation Trustee may serve without a bond.

11.4    Governing Law.   This Litigation Trust Agreement shall be governed by and construed in accordance with the laws of the State of Delaware, without giving effect to conflicts of law principles.

11.5    Successors and Assigns.   This Litigation Trust Agreement shall inure to the benefit of and shall be binding upon the parties hereto and their respective successors and assigns.

11.6    No Execution.  All funds in the Litigation Trust shall be deemed *in custodia legis* until such times as the funds have actually been paid to or for the benefit of a Beneficiary, and no Beneficiary or any other Entity can bind, pledge, encumber, execute upon, garnish, or attach the Distributable Assets in any manner or compel payment from the Litigation Trust except by Final Order of the Bankruptcy Court.

11.7    Amendment.  The Litigation Trustee, with the prior written approval of a majority of the existing members of the Litigation Trust Board may amend, supplement, or waive any provision of this Litigation Trust Agreement, without notice to or the consent of any Beneficiary or the approval of the Bankruptcy Court, in order to: (i) cure any ambiguity, omission, defect, or inconsistency in this Litigation Trust Agreement; *provided*, *however*, that such amendments, supplements or waivers shall not be inconsistent with the terms of the Combined Disclosure Statement and Plan or adversely affect the Distributions to any of the Beneficiaries or adversely affect the federal income tax status of the Litigation Trust as a "liquidating trust"; (ii) comply with any requirements in connection with the federal income tax status of the Litigation Trust as a "liquidating trust"; and (iii) comply with any requirements in connection with maintaining that the Litigation Trust is not subject to registration or reporting requirements of the Securities Act, the Trust Indenture Act, or the Investment Company Act.   Any substantive provision of this Litigation Trust Agreement may be amended or waived by the Litigation Trustee and the approval of a majority of the Litigation Trust Board; *provided*, *however*, that no change may be made to this Agreement that would (a) adversely affect the (i) Distributions to any of the Beneficiaries, or (ii) the federal income tax status of the Trust as a "liquidating trust" or (b) modify the stated purpose of the Litigation Trust as described in this Litigation Trust Agreement.   Notwithstanding this Section 11.7, any amendments or modifications to this Litigation Trust Agreement shall not be inconsistent with the purpose and intention of the

**645**

Litigation Trust to liquidate in an expeditious but orderly manner the Distributable Assets in accordance with Treasury Regulation Section 301.7701-4(d).

11.8    <u>Severability</u>.  If any term, provision, covenant or restriction contained in this Litigation Trust Agreement is held by a court of competent jurisdiction or other authority to be invalid, void, unenforceable or against its regulatory policy, the remainder of the terms, provisions, covenants and restrictions contained in this Litigation Trust Agreement shall remain in full force and effect and shall in no way be affected, impaired or invalidated.

11.9    <u>Counterparts</u>.  This Litigation Trust Agreement may be executed in any number of counterparts, each of which shall be deemed an original, and such counterparts shall together constitute one and the same instrument.  A facsimile or electronic mail signature of any party shall be considered to have the same binding effect as an original signature.

11.10    <u>Relationship to, and Incorporation of, the Plan</u>.  The principal purpose of this Litigation Trust Agreement is to aid in the implementation of the Combined Disclosure Statement and Plan and the Confirmation Order, and, therefore, this Litigation Trust Agreement incorporates the provisions of the Combined Disclosure Statement and Plan and the Confirmation Order, *mutatis mutandis*, as if set forth in full herein.  As among the Litigation Trust, the Litigation Trustee, the Litigation Trust Board, the Beneficiaries, and the Debtors, if any provisions of this Litigation Trust Agreement are found to be inconsistent with the provisions of the Combined Disclosure Statement and Plan or the Confirmation Order, each such document shall have controlling effect in the following rank order: (a) the Confirmation Order; (b) the Combined Disclosure Statement and Plan; and (c) this Litigation Trust Agreement.

**646**

IN WITNESS WHEREOF, the parties have executed this Litigation Trust Agreement (or are deemed to have so executed this Litigation Trust Agreement) as of the day and year written above.

[●], as the Litigation Trustee

**Near Intelligence, Inc.,** *et al.*, for itself and its affiliated Debtors

By: _____
Name: [●]

By: _____
Name: [●]
Title: [●]

**647**

**Exhibit B**

**Amended Identification of Litigation Trustee**

In accordance with Section 1.92 of the Combined Disclosure Statement and Plan, the Litigation Trustee shall be designated by the DIP Agent and the Prepetition Agent prior to the Effective Date, in consultation with the Committee, and shall be acceptable to the Debtors.

## NEAR INTELLIGENCE, INC., *ET AL.* LITIGATION TRUST AGREEMENT

This *Near Intelligence, Inc., et al. Litigation Trust Agreement* (the "Litigation Trust Agreement"), dated as of March 26, 2024, is entered into by and between Near Intelligence, Inc., Near Intelligence LLC, Near North America, Inc., and Near Intelligence Pte. Ltd. (collectively, the "Debtors"), on the one hand, and Drivetrain, LLC (the "Litigation Trustee"), on the other hand, for the benefit of the Beneficiaries (defined below) pursuant to the terms of the *Modified Third Amended Combined Disclosure Statement and Chapter 11 Plan of Liquidation of Near Intelligence, Inc. and Its Affiliated Debtors* [Docket No. 336] (as amended, restated, supplemented or otherwise modified from time to time, the "Combined Disclosure Statement and Plan"), which Combined Disclosure Statement and Plan was confirmed by the *Findings of Fact, Conclusions of Law, and Order Approving Adequacy of Disclosures on a Final Basis and Confirming the Third Amended Combined Disclosure Statement and Chapter 11 Plan of Liquidation of Near Intelligence, Inc. and Its Affiliated Debtors Pursuant to Chapter 11 of the Bankruptcy Code*, entered on March 15, 2024 [Docket No. 346] (the "Confirmation Order") by the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") in the jointly administered Chapter 11 cases captioned *In re Near Intelligence, Inc., et al.*, Case No. 23-11962 (TMH) (collectively, the "Chapter 11 Cases").

## WITNESSETH

**WHEREAS,** the Litigation Trust is created pursuant to, and to effectuate, certain of the purposes set forth in the Combined Disclosure Statement and Plan and the Confirmation Order; and

**WHEREAS,** the Litigation Trust is created on behalf, and for the sole benefit, of the Beneficiaries pursuant to the Combined Disclosure Statement and Plan and the Confirmation Order; and

**WHEREAS,** the Litigation Trust is established as a liquidating trust in accordance with Treasury Regulation Section 301.7701-4(d) for the sole purpose of collecting, liquidating, and distributing the proceeds of the Litigation Trust Assets in an expeditious and orderly manner for the benefit of the Beneficiaries in accordance with the terms of this Litigation Trust Agreement and the Combined Disclosure Statement and Plan with no objective to continue or engage in the conduct of a trade or business; and

**WHEREAS,** the Litigation Trust is intended to qualify and be treated as a grantor trust for U.S. federal income tax purposes pursuant to Sections 671 through 677 of the Internal Revenue Code of 1986, as amended; and

**WHEREAS,** pursuant to the Combined Disclosure Statement and Plan and this Litigation Trust Agreement, the Debtors, the Litigation Trustee and the Beneficiaries are required to treat the transfer of the Litigation Trust Assets to the Litigation Trust, for all U.S. federal income tax purposes, as a transfer of the Litigation Trust Assets by the Debtors to the Beneficiaries in satisfaction of their Allowed Claims followed by a transfer of the Litigation Trust Distribution Proceeds by the Beneficiaries to the Litigation Trust in exchange for their Litigation Trust Interests herein, and to treat the Beneficiaries as the grantors and owners of the Litigation Trust in accordance with Treasury Regulation section 301.7701-4; and

**649**

NOW, THEREFORE, in consideration of the promises and the mutual covenants contained herein and in the Combined Disclosure Statement and Plan, the Debtors and the Litigation Trustee agree as follows:

## ARTICLE I

## DEFINITIONS AND INTERPRETATIONS

1.1    <u>Definitions</u>.

1.1.1    "<u>Assigned Direct Creditor Claims</u>" means any Direct Creditor Claims held by General Unsecured Creditors which are assigned to the Litigation Trust in accordance with <u>Section 3.2</u> hereof, which in each case are subject to the distribution priorities set forth in <u>Section 4.1</u> herein.

1.1.2    "<u>Available Litigation Trust Cash</u>" means the gross proceeds generated through the liquidation and monetization of Distributable Assets or any portion thereof, less (a) charges, costs and expenses that are rightly deducted and attributable to the liquidation and monetization of the Distributable Assets including, but not limited to, all Litigation Trust Expenses; and (b) the Disputed Claims Reserve.

1.1.3    "<u>Beneficiaries</u>" means, collectively, Holders of a Litigation Trust Interest, whether individually or as agent on behalf of one or more other Entities, which shall include (i) Holders of Allowed Prepetition Loan Claims on account thereof; and (ii) Holders of Allowed General Unsecured Claims that elect to receive Litigation Trust Interests in accordance with the Combined Disclosure Statement and Plan entitling such Holders to their Pro Rata Share of the Litigation Trust Distribution Proceeds, in accordance with the distribution priorities set forth in <u>Section 4.1</u> hereof, up to the Allowed amount of such Allowed General Unsecured Claim or Allowed Prepetition Loan Claim, as applicable.

1.1.4    "<u>Disputed Claim</u>" means any Claim (i) which has not yet been Allowed or Disallowed in accordance with the terms of the Combined Disclosure Statement and Plan, or (ii) held by a Person or Entity against whom or which any of the Debtors or the Litigation Trustee has commenced a proceeding, including an objection to such Claim.

1.1.5    "<u>Disputed Claims Reserve</u>" means cash in an amount equal to the Distributions which would have been made to Beneficiaries on account of Disputed Claims if such claims were Allowed or such other amount as may be ordered by the Bankruptcy Court.

1.1.6    "<u>Distributable Assets</u>" means the Litigation Trust Assets and any assets that are available or will become available for Distribution (and the proceeds thereof) transferred to and vested in the Litigation Trust on the Effective Date and any other funds or assets that are available for the benefit of the Beneficiaries and/or are subsequently transferred to or recovered by the Litigation Trust, including by the Debtors and, with respect to the Assigned Direct Creditor Claims, the applicable General Unsecured Creditors, including the Litigation Trust Assets and the Retained Causes of Action, all as in accordance with the Combined Disclosure Statement and Plan and this Litigation Trust Agreement.

1.1.7    "<u>Distribution</u>" means a distribution of property to a Beneficiary in accordance with this Litigation Trust Agreement.

1.1.8    "<u>Direct Creditor Claims</u>" any direct claims or causes of action that any General Unsecured Creditor may have against third parties related to the Debtors or any of the Debtors' current or former officers or directors, including, for the avoidance of doubt, any guaranties in favor of the Subordinated Noteholders in connection with the Subordinated Convertible Debentures.

1.1.9    "<u>Final Order</u>" means an order of the Bankruptcy Court or any other court of competent jurisdiction (a) as to which the time to appeal shall have expired and as to which no appeal shall then be pending or (b) if a timely appeal shall have been filed, such appeal has been resolved by a Final Order or agreement of all the parties to such appeal.

1.1.10    "<u>General Unsecured Claim</u>" means an Allowed General Unsecured Claim under the Combined Disclosure Statement and Plan that is not a Prepetition Loan Claim.

1.1.11    "<u>General Unsecured Creditor</u>" means a holder of an Allowed General Unsecured Claim.

1.1.12    "<u>Litigation Trust</u>" means the liquidating trust established pursuant to the terms of this Litigation Trust Agreement, the Combined Disclosure Statement and Plan, and the Confirmation Order.

1.1.13    "<u>Litigation Trustee</u>" means (a) initially, the person or corporation defined as the "Litigation Trustee" above, and (b) any successors or replacements duly appointed under the terms of this Litigation Trust Agreement, and is the person referred to as the "Litigation Trustee" in the Combined Disclosure Statement and Plan.

1.1.14    "<u>Litigation Trust Counsel</u>" means counsel acceptable to the Prepetition Lenders, engaged by the Litigation Trust in order to pursue the Retained Causes of Causes and, if applicable, any Assigned Direct Creditor Claims.

1.1.15    "<u>Litigation Trust Board</u>" means the board that shall oversee the Litigation Trust in accordance with the Litigation Trust Agreement and the Combined Disclosure Statement and Plan, the initial composition of which shall consist of one (1) member designated by the Committee, which member shall be reasonably acceptable to the DIP Agent and the Prepetition Agent (the "<u>Committee Board Member</u>"), and two (2) members designated by the DIP Agent and the Prepetition Agent, which members shall be selected in consultation with the Committee, which members are listed in Section 11.2 hereof.

1.1.16    "<u>Litigation Trust Financing Facility</u>" means that certain agreement by and between the Litigation Trust Lenders and the Litigation Trust in form and substance acceptable to the Prepetition Lenders and the Litigation Trustee in consultation with the Litigation Trust Board.

1.1.17    "<u>Permitted Investments</u>" shall include (a) short-term direct obligations of, or obligations guaranteed by, the United States of America, (b) short-term obligations of any agency or corporation which is or may hereafter be created by or pursuant to an act of the Congress of the United States as an agency or instrumentality thereof, (c) such other investments as the Bankruptcy Court may approve from time to time, or (d) demand deposits, money market account, or certificates of deposit at any bank or trust company that has, at the time of the deposit, a capital stock and surplus aggregating at least $1,000,000,000, *provided*, *however*, that the scope of any Permitted Investments shall be limited to include only those investments that a liquidating trust, within the meaning of Treas. Reg. § 301.7701-4(d), may be permitted to hold, pursuant to Treasury

Regulations, or any modification in the IRS guidelines, whether set forth in IRS rulings, other IRS pronouncements, or otherwise, and to the investment guidelines of section 345 of the Bankruptcy Code, *provided*, *further*, *however*, the requirement of complying with the investment guidelines of section 345 of the Bankruptcy Code may be waived by the Litigation Trustee with the approval of the Litigation Trust Board.

1.1.18 "<u>Subordinated Convertible Debentures</u>" has the meaning ascribed to "Convertible Debentures" in the Combined Disclosure Statement and Plan.  The Subordinated Convertible Debentures are subject to the Subordination Agreements other than to the extent expressly set forth in the Combined Disclosure Statement and Plan or in this Litigation Trust Agreement.

1.1.19 "<u>Subordinated Noteholders</u>" means, collectively, the holders and any other beneficiary of the Subordinated Convertible Debentures.

1.1.20 "<u>Subordination Agreements</u>" means those certain Subordination Agreements, dated as of March 31, 2023 and May 18, 2023, by and among the Prepetition Agent and the Subordinated Noteholders with respect to the Convertible Debentures

1.2    <u>Use of Plan Definitions</u>.  All terms which are used in this Litigation Trust Agreement but not defined herein shall have the meaning set forth in the Combined Disclosure Statement and Plan or Confirmation Order, as applicable.

1.3    <u>Headings; Interpretation</u>.  The headings in this Litigation Trust Agreement are for convenience of reference only and shall not limit or otherwise affect the provisions of this Litigation Trust Agreement.  Words denoting the singular number shall include the plural number and vice versa, and words denoting one gender shall include the other gender.

1.4    <u>Particular Words</u>.  Reference in this Litigation Trust Agreement to any Section or Article is, unless otherwise specified, to that Section or Article under this Litigation Trust Agreement.  The words "hereof," "herein," "hereunder," and similar terms shall refer to this Litigation Trust Agreement and not to any particular Section or Article of this Litigation Trust Agreement.

## ARTICLE II

## DECLARATION OF TRUST

2.1    <u>Creation and Name</u>.  As contemplated by the Combined Disclosure Statement and Plan and the Confirmation Order, the Debtors hereby establish and create the Litigation Trust, on behalf of, and for the benefit of the Beneficiaries as of the date hereof (the "<u>Effective Date</u>").  The Litigation Trustee may conduct the affairs of the Litigation Trust under the name "Near Intelligence, Inc., *et al*. Litigation Trust," and the trust so named is the Litigation Trust referred to as the "Litigation Trust" in the Combined Disclosure Statement and Plan and Confirmation Order.

2.2    <u>Purpose of Litigation Trust</u>.  This Litigation Trust is intended to be a grantor trust for United States federal income tax purposes and, to the extent provided by law, shall be governed and construed in all respects as such a grantor trust.  The Debtors and the Litigation Trustee, as contemplated by the Combined Disclosure Statement and Plan and Confirmation Order, hereby create the Litigation Trust solely for the purpose of, liquidating and distributing the Distributable Assets in accordance with the terms of this Litigation Trust Agreement, the Plan and Confirmation

Order with no objective to continue or engage in the conduct of a trade or business. The Litigation Trustee shall engage only in activities reasonably necessary to, and consistent with the liquidating purpose of the Litigation Trust including, but not limited to, (a) investigating and, if appropriate, pursuing, settling or abandoning the Retained Causes of Action not otherwise released under the Combined Disclosure Statement and Plan, (b) administering and liquidating the Distributable Assets, (c) reconciling, objecting to, settling or otherwise resolving any Disputed Claims, as provided for in the Combined Disclosure Statement and Plan and subject to the limitation set forth in <u>Section 3.9</u> hereof, and (d) making Distributions to the Beneficiaries from the Litigation Trust as provided for in the Combined Disclosure Statement and Plan and this Litigation Trust Agreement in accordance with <u>Section 4.1</u> hereof. The activities of the Litigation Trust shall be limited to those activities set forth in this Litigation Trust Agreement.

2.3    <u>Transfer of Distributable Assets</u>. As contemplated by the Combined Disclosure Statement and Plan and the Confirmation Order, the Debtors hereby grant, release, assign, convey, transfer and deliver, on behalf of the Beneficiaries, all of the Debtors' rights, title and interest in the Distributable Assets in trust for the benefit of the Beneficiaries, free and clear of all encumbrances of all other Entities for the uses and purposes as specified in the Combined Disclosure Statement and Plan and this Litigation Trust Agreement. For the avoidance of doubt, the Distributable Assets include the full amount of the Wind-Down Budget. For the further avoidance of doubt, the costs and expenses of the Litigation Trust shall be funded exclusively from the Wind-Down Budget, the Distributable Assets and the Litigation Trust Financing Facility.

2.4    <u>Securities Law</u>. It is intended that the interests of the Beneficiaries in the Litigation Trust and the entitlements hereunder (the "<u>Beneficial Interests</u>"), if any, of such Beneficiaries, shall not constitute "securities." To the extent applicable and to the extent the Beneficial Interests or any entitlements of the Beneficiaries are deemed to be "securities," the issuance of the Beneficial Interests or the entitlements hereunder or under any Combined Disclosure Statement and Plan shall be exempt, pursuant to section 1145 of the Bankruptcy Code from Section 4(a)(2) of the Securities Act and any state and local laws requiring registration of securities. If the Litigation Trustee determines, with the advice of counsel, that the Litigation Trust is required to comply with the registration and reporting requirements of the Securities Act of 1933, as amended, the Securities and Exchange Act of 1934, as amended (collectively, the "<u>Securities Act</u>), the Trust Indenture Act of 1939, as amended (the "<u>Trust Indenture Act</u>"), or the Investment Company Act of 1940, as amended (the "<u>Investment Company Act</u>"), then the Litigation Trustee shall take any and all actions to comply with such registration and reporting requirements and file necessary periodic reports with the Securities and Exchange Commission. Notwithstanding the foregoing, nothing contained herein shall be deemed to preclude the Litigation Trustee from amending this Litigation Trust Agreement to make such changes as are deemed necessary or appropriate by the Litigation Trustee, with the advice of counsel, to ensure that the Litigation Trust is not subject to registration and/or reporting requirement of the Securities Act, the Trust Indenture Act or the Investment Company Act, provided that such amendments do not adversely affect the Distributions to be made under the terms of this Litigation Trust Agreement.

2.5    <u>Appointment and Acceptance of Litigation Trustee</u>. The Litigation Trustee accepts the Litigation Trust created by this Litigation Trust Agreement and the grant, assignment, transfer, conveyance, and delivery to the Litigation Trustee, on behalf, and for the benefit, of the Beneficiaries, by the Debtors of all of their respective right, title, and interest in the Distributable Assets, upon and subject to the terms and conditions set forth in this Litigation Trust Agreement,

the Combined Disclosure Statement and Plan and the Confirmation Order and any subsequent order of the Bankruptcy Court that is consistent with the terms and purpose of the Combined Disclosure Statement and Plan.

      2.6    <u>Transfer of Retained Causes of Action</u>.  The Debtors transfer to, and agree and authorize the Litigation Trustee to prosecute, settle, compromise and/or dismiss the Retained Causes of Action, including any claims against current or former officers or directors for breach of fiduciary duties, on behalf of, and in the name of, the Debtors and their estates for the benefit of the Litigation Trust Beneficiaries.  To the extent that Debtors or their estates receive any recovery from the prosecution of the Retained Causes of Action, including, without limitation, from any applicable insurance provider, the Debtors agree to promptly turn such recovery over to the Litigation Trust for distribution in accordance with the terms of this Litigation Trust Agreement.

      2.7    <u>No Reversion to Debtors or Others</u>.  The Distributable Assets shall be free and clear of all encumbrances of the Debtors or any other Entity.

      2.8    <u>Funding of the Litigation Trust</u>.  On or after the Effective Date and in accordance with the Combined Disclosure Statement and Plan, the Litigation Trust shall be funded with the Litigation Trust Financing Facility.

## ARTICLE III

## ADMINISTRATION OF THE LITIGATION TRUST

### General Provisions

      3.1    <u>Rights, Powers, and Privileges</u>.  The Litigation Trust shall be administered by the Litigation Trustee and the Litigation Trust Board.  For such purposes, the Litigation Trustee shall have only the rights, powers and privileges expressly provided in this Litigation Trust Agreement, the Combined Disclosure Statement and Plan and in any other order of the Bankruptcy Court that is not, absent the consent of the Litigation Trustee, inconsistent with the terms and purpose of the Combined Disclosure Statement and Plan and Litigation Trust Agreement.  Subject to the terms of this Litigation Trust Agreement, the Litigation Trustee shall have the power to take the actions specified in this <u>Section 3.1</u>, and any actions reasonably incidental thereto, which the Litigation Trustee reasonably determines to be necessary or appropriate to fulfill the purpose of the Litigation Trust.

      3.1.1    <u>Plan Administration Activities</u>.  The Litigation Trustee shall have the power to take the following actions, and any actions reasonably incidental thereto, related to the administration of the Plan and winddown of the Debtors' estates (collectively, the "<u>Plan Administration Activities</u>"):

      A.    exercise all power and authority that may be necessary to implement the Combined Disclosure Statement and Plan on behalf of the Litigation Trust and enforce all provisions thereof;

      B.    open and maintain bank accounts, make Distributions and take other actions consistent with the Combined Disclosure Statement and Plan and this Litigation Trust Agreement, including the maintenance of appropriate

reserves (including the Disputed Claim Reserve), in the name of the Litigation Trust;

C.    maintain the books and records of the Litigation Trust, including any books and records of the Debtors transferred to the Litigation Trust;

D.    incur and pay reasonable and necessary expenses in connection with the implementation and consummation of the Combined Disclosure Statement and Plan;

E.    make decisions without court approval, regarding the retention or engagement of professionals or other Entities (subject to approval of such retention by a majority of the Litigation Trust Board), and to pay, without court approval, all reasonable fees and expenses of the Litigation Trust accruing from and after the Effective Date with respect to such Plan Administration Activities;

F.    collect and liquidate all Litigation Trust Assets or Assigned Direct Creditor Claims, if any, transferred or to be transferred to the Litigation Trust; as contemplated by Section 11.1 of the Combined Disclosure Statement and Plan, (a) file, withdraw, or litigate to judgment objections to Claims, (b) settle, compromise, or Allow any Claim or Disputed Claim without any further notice to or action, order, or approval by the Bankruptcy Court, (c) amend the Schedules in accordance with the Bankruptcy Code, and (d) administer and adjust the Claims Register to reflect any such settlements or compromises without any further notice to or action, order, or approval by the Bankruptcy Court;

G.    prepare and file tax returns and related forms and filings on behalf of the Litigation Trust;

H.    seek a determination of tax liability under section 505 of the Bankruptcy Code or otherwise and to pay, or cause to be paid, from the Distributable Assets any taxes incurred by the Litigation Trustee on or after the Effective Date;

I.    invest, or cause to be invested, cash as deemed appropriate by the Litigation Trustee, provided, however, such investments shall be Permitted Investments;

J.    enter, or cause to be entered, into any agreement or execute any document required by or consistent with this Litigation Trust Agreement and the Combined Disclosure Statement and Plan;

K.    abandon, or cause to be abandoned, in any commercially reasonable manner any Distributable Assets that the Litigation Trustee reasonably concludes are burdensome or of inconsequential value and benefit to the Litigation Trust without any need for Bankruptcy Court approval;

L.    prepare and file post-Effective Date operating reports, if any, as required by the Bankruptcy Court, the Combined Disclosure Statement and Plan, applicable local rules, or this Litigation Trust Agreement;

M.    take all other actions not inconsistent with the provisions of this Litigation Trust Agreement and the Combined Disclosure Statement and Plan which the Litigation Trustee deems reasonably necessary or desirable in connection with the administration and consummation of the Litigation Trust and Combined Disclosure Statement and Plan;

N.    exercise such other powers as may be vested in the Litigation Trustee, consistent with the intent and purpose of the Litigation Trust Agreement and Combined Disclosure Statement and Plan, by order of the Bankruptcy Court;

O.    wind down the affairs of the Debtors and each of their subsidiaries and if, to the extent necessary, take any steps to dissolve, liquidate, bankrupt, or take other similar action with respect to each Debtor and each subsidiary of the Debtors, including by terminating the corporate or organizational existence of each such Debtor and each other subsidiary of the Debtors; and

P.    prepare and file appropriate tax returns and other reports on behalf of the Debtors and pay taxes or other obligations owed by the Debtors.

3.1.2   <u>Litigation Activities</u>.  The Litigation Trustee shall have the power to take the following actions, and any actions reasonably incidental thereto, related to prosecuting the Retained Causes of Action (collectively, the "<u>Litigation Activities</u>"):

A.    open and maintain bank accounts, make Distributions and take other actions consistent with the Combined Disclosure Statement and Plan and this Litigation Trust Agreement, including the maintenance of appropriate reserves (including the Disputed Claim Reserve), in the name of the Litigation Trust, in connection with prosecution and administration of the Retained Causes of Action;

B.    incur and pay reasonable and necessary expenses in connection with prosecuting and administering the Retained Causes of Action;

C.    make decisions without court approval, regarding the retention or engagement of experts (subject to approval of such retention by a majority of the Litigation Trust Board), and to pay, without court approval, all reasonable fees and expenses of the Litigation Trust accruing from and after the Effective Date (subject to approval of such retention by a majority of the Litigation Trust Board) solely with respect to prosecuting and administering the Retained Causes of Actions;

D.    negotiate and, with the approval of the majority of the Litigation Trust Board, enter into any financing arrangement for purposes of carrying out prosecuting and administering the Retained Causes of Action, including, but not limited to, the Litigation Trust Financing Facility;

E.    investigate, prosecute and/or settle or abandon without court approval Retained Causes of Action or Assigned Direct Creditor Claims, if any, transferred to the Litigation Trust not otherwise released pursuant to the Combined Disclosure Statement and Plan, including, but not limited to, any

claims (not otherwise released under the Combined Disclosure Statement and Plan) against current or former officers or directors for breach of fiduciary duties;

F.    abandon, or cause to be abandoned, in any commercially reasonable manner any Retained Causes of Action or Assigned Direct Creditor Claims, if applicable, that the Litigation Trustee reasonably concludes are burdensome or of inconsequential value and benefit to the Litigation Trust without any need for Bankruptcy Court approval (with the approval of a majority of the Litigation Trust Board); and

G.    take all other actions not inconsistent with the provisions of this Litigation Trust Agreement and the Combined Disclosure Statement and Plan which the Litigation Trustee deems reasonably necessary or desirable in connection with the prosecution and administration of the Retained Causes of Action.

3.1.3    <u>Non-Contravention</u>.    For the avoidance of doubt and notwithstanding anything to the contrary herein, the Litigation Trustee shall have no authority to take any action in contravention of the Combined Disclosure Statement and Plan, the Confirmation Order, or this Litigation Trust Agreement, or to take any action which would make it impossible to carry on the activities of the Litigation Trust.  The Litigation Trustee agrees that the purposes of the Litigation Trust as set forth in Section 3.1.1 shall be fulfilled utilizing the Wind-Down Budget.

3.1.4    The Litigation Trustee and Litigation Trust Board shall have the power to act for the Debtors in the same capacity as applicable to a board of directors and officers, subject to the provisions in the Combined Disclosure Statement and Plan, Confirmation Order, and this Litigation Trust Agreement (and all articles of incorporation or amendments, by-laws, governing documents, and related documents, as applicable, are deemed amended pursuant to the Combined Disclosure Statement and Plan to permit and authorize the same).  From and after the Effective Date, the Litigation Trustee and Litigation Trust Board shall be representatives of and shall act for the Debtors and their Wind-Down Estates.

3.2    <u>Assignment of Direct Creditor Claims</u>.  Subject in each case to diligence and prior written approval by the Litigation Trustee, on or after the Effective Date, any General Unsecured Creditor holding a Direct Creditor Claim may assign any such Direct Creditor Claim to the Litigation Trust.  Any transfer of an Assigned Direct Creditor Claim shall be documented in an assignment and assumption agreement, which agreement shall be in form and substance reasonably acceptable to the Litigation Trustee and provide that (i) the applicable General Unsecured Creditor transfers all rights, title and interests in any such Assigned Direct Creditor Claim to the Litigation Trustee and further agrees and authorizes the Litigation Trustee to (a) prosecute, settle, compromise and/or dismiss the Assigned Direct Creditor Claims, on behalf of, and in the name of, such General Unsecured Creditor for the benefit of the Beneficiaries, and (ii) any recoveries with respect to the applicable Assigned Direct Creditor Claims shall in case be subject to terms of this Litigation Trust Agreement, including without limitation the distribution priorities set forth in <u>Section 4.1</u> and, if applicable, the Subordinated Noteholder Carve Out in <u>Section 4.3</u> of this Litigation Trust Agreement.  For the avoidance of doubt, no General Unsecured Creditor holding a Direct Creditor Claim is required to assign any such claims to the Litigation Trust.

3.3     Transfer of Privileges.  On the Effective Date, the Debtors shall be deemed, without waiver, to assign, deliver, and transfer to the Litigation Trust and the Litigation Trustee the Debtors' and the Estates' evidentiary privileges, including the attorney/client privilege, that relate solely to the Distributable Assets transferred to the Litigation Trust.  From and after such transfer, the Debtors and their Estates shall have no further rights or obligations with respect to such Distributable Assets, other than with respect to ongoing obligations to reasonably cooperate, including to provide access to documents and personnel, as reasonably requested by the Litigation Trustee.  Such privileged communications may be shared among the Litigation Trustee, attorneys, financial advisors, accountants or other professionals and employees of the Litigation Trustee and the Litigation Trust Board without compromising the privileged nature of such communications, in accordance with the "joint interest" doctrine.  From and after the Effective Date, the Litigation Trustee shall have the ability to seek and obtain examination (including document discovery and depositions) under Bankruptcy Rule 2004 against any Person or Entity in furtherance of the purpose of the Litigation Trust, and the Bankruptcy Court shall retain jurisdiction to order examinations (including examinations under Bankruptcy Rule 2004) against any Person or Entity, and to hear all matters with respect to the same.

3.4     Litigation Trust Counsel; Agents and Professionals.  The Litigation Trustee shall retain Litigation Trust Counsel on terms acceptable to a majority of the Litigation Trust Board in connection with the Litigation Activities.  In addition to the Litigation Trust Counsel, the Litigation Trustee may, but shall not be required to, retain attorneys, disbursing agent, financial advisors, accountants or other professionals and employees as the Litigation Trustee deems appropriate and with the approval of such retention by a majority of the Litigation Trust Board in connection with the Plan Administration Activities, which shall be funded solely from the Wind-Down Budget.  Professionals retained by the Litigation Trustee shall receive compensation and reimbursement of expenses in a manner to be determined by the Litigation Trustee, with approval by a majority of the Litigation Trust Board, and in accordance with the payment procedures set forth in Section 7.9 of this Litigation Trust Agreement.

3.5     Safekeeping of Distributable Assets.   All Distributable Assets shall, until distributed as provided herein, be held in trust for the benefit of the Beneficiaries in accordance with the Combined Disclosure Statement and Plan and this Litigation Trust Agreement.  The Litigation Trustee shall be under no liability for interest or producing income on any Distributable Assets received by it hereunder and held for Distribution to the Beneficiaries, except as such interest or income shall actually be received by the Litigation Trustee.

3.6     Insurance.  The Litigation Trustee may use Distributable Assets in the Litigation Trustee's reasonable business judgment to maintain customary insurance coverage, if available, for the protection of the Distributable Assets, with the approval of a majority of the Litigation Trust Board.  The Litigation Trustee shall obtain insurance coverage with respect to the liabilities and obligations of the Litigation Trustee and the Litigation Trust Board (in the form of an errors and omissions policy or otherwise) with the approval of a majority of the Litigation Trust Board unless both the Litigation Trustee and Litigation Trust Board agree that such insurance shall not be required.

3.7     Confidentiality.  Any Litigation Trustee and members of the Litigation Trust Board shall, during the period that they serve in such capacity under this Litigation Trust Agreement, after removal, incapacitation or resignation, and after dissolution of the Litigation Trust, hold strictly confidential and not use for personal gain any material, non-public information of or

pertaining to any Entity to which any of the Distributable Assets relates or which it has become aware of in its capacity as Litigation Trustee or Litigation Trust Board member.

**Litigation Trustee**

3.8     _Fiduciary Duties of the Litigation Trustee._  The Litigation Trustee shall act in a fiduciary capacity on behalf of the interests of all Beneficiaries who are entitled to receive Distributions pursuant to the terms of the Combined Disclosure Statement and Plan and this Litigation Trust Agreement.  For the avoidance of doubt, the Litigation Trustee is not an officer, director or fiduciary of the Debtors or the Estates.

3.9     _Limitations on Rights of Litigation Trustee._  The Litigation Trustee shall not at any time, on behalf of the Litigation Trust or the Beneficiaries, enter into or engage in any trade or business, and no part of the Distributable Assets, revenue, or income therefrom shall be used or disposed of by the Litigation Trust in furtherance of any trade or business.  The Litigation Trustee shall not pursue, commence or settle any Retained Causes of Action not otherwise released pursuant to the Combined Disclosure Statement and Plan without the prior consent of a majority of the Litigation Trust Board, including, but not limited to, any claims (not otherwise released under the Combined Disclosure Statement and Plan) against current or former officers or directors for breach of fiduciary duties.  A majority of the Litigation Trust Board, however, may authorize settlement parameters for the Litigation Trustee to settle certain Retained Causes of Action without having to seek further authority from the Litigation Trust Board.

3.10     _Objection to Claims._  The Committee Board Member shall have consultation rights with respect to any objections, settlements or other resolutions of any Disputed Claims, which are not Prepetition Loan Claims, pursued by the Litigation Trustee; _provided_, _that_, the Litigation Trustee must obtain unanimous consent from the members of the Litigation Trust Board before pursuing (or refusing to pursue) any objections or settlements with respect to Disputed Claims, which are not Prepetition Loan Claims, or Retained Causes of Action, that are asserted or scheduled in an amount equal to or in excess of $200,000.

3.11     _Other Activities._  Any individual serving as the Litigation Trustee, other than in his or her individual capacity as such, shall be entitled to perform services for and be employed by third parties, _provided_, _however_, that such performance or employment affords such individual sufficient time to carry out his or her responsibilities as the Litigation Trustee.  In addition, the Litigation Trustee shall not be prohibited from engaging in any trade or business on its own account, provided that such activity does not interfere or conflict with the Litigation Trustee's administration of the Litigation Trust.

3.12     _Investments by Litigation Trustee._  The Litigation Trustee may only invest funds held in the Litigation Trust in Permitted Investments and, provided that the Litigation Trustee does so, it shall have no liability in the event of insolvency of any institution in which the Litigation Trustee has invested any of the Distributable Assets or any proceeds, revenue, or income therefrom.  The Litigation Trustee may expend the cash of the Litigation Trust (a) as reasonably necessary to meet contingent liabilities and to maintain the value of the Distributable Assets during liquidation, (b) to pay reasonable administrative expenses (including, but not limited to, any taxes imposed on the Litigation Trust) and (c) to satisfy other liabilities incurred by the Litigation Trust in accordance with the Combined Disclosure Statement and Plan and this Litigation Trust Agreement (including, without limitation, the payment of any taxes).

**659**

3.13    Litigation Trustee Action.  The Litigation Trustee shall hold, collect, conserve, protect and administer the Litigation Trust in accordance with the provisions of this Litigation Trust Agreement and the Combined Disclosure Statement and Plan, and pay and distribute amounts as set forth herein for the purposes set forth in this Litigation Trust Agreement and the Combined Disclosure Statement and Plan, provided that, for the avoidance of doubt, (a) amounts incurred in connection with Plan Administration Activities shall be paid solely from the Wind-Down Budget, and (ii) amounts incurred in connection with Litigation Activities shall be paid with Distributable Assets and the Litigation Trust Financing Facility (subject to the terms of the Litigation Financing Facility).  The Litigation Trustee shall exercise its business judgment for the benefit of the Beneficiaries in order to maximize the value of the Distributable Assets and Distributions, giving due regard to the cost, risk, and delay of any course of action.  Any good faith determination by the Litigation Trustee as to what actions are in the best interests of the Litigation Trust shall be determinative.

3.14    Bankruptcy Court Approval of Litigation Trustee Actions.  Except as provided in this Litigation Trust Agreement or the Combined Disclosure Statement and Plan, the Litigation Trustee need not seek or obtain an order or approval of the Bankruptcy Court or any other court in the exercise of any power, rights, or discretion conferred hereunder, or account to the Bankruptcy Court or any other court as to the results of its actions.  Notwithstanding the foregoing, the Litigation Trustee may submit to the Bankruptcy Court any matter regarding which the Litigation Trustee may desire to have explicit approval of the Bankruptcy Court for the taking of any specific action proposed to be taken by the Litigation Trustee with respect to the Distributable Assets, Disputed Claims, the Litigation Trust, the Litigation Trust Agreement, the Combined Disclosure Statement and Plan, or the Debtors, including the administration and Distribution of the Distributable Assets and the resolution of Disputed Claims.  The Bankruptcy Court shall retain jurisdiction for such purposes and may approve or disapprove any such proposed action upon a motion filed by the Litigation Trustee.  In addition, the Litigation Trustee shall have the authority, but not the obligation, to seek Bankruptcy Court approval to sell any Asset free and clear of any and all encumbrances (to the extent any Asset is not already free and clear of any all such encumbrances).

**Litigation Trust Board**

3.15    Litigation Trust Board.  The Litigation Trust Board shall be established on the Effective Date and will remain and continue in full force and effect until the Litigation Trust is dissolved in accordance with the terms of this Litigation Trust Agreement.  The Litigation Trust Board shall have the rights and obligations set forth in this Litigation Trust Agreement.  In all circumstances, the Litigation Trust Board shall act in the best interests of all Beneficiaries and in furtherance of the purpose of the Litigation Trust.  Notwithstanding anything contained in this Litigation Trust Agreement, the Litigation Trust Board shall not take any action which will cause the Litigation Trust to fail to qualify as a "liquidating trust" for U.S. federal income tax purposes.

3.16    Litigation Trust Board Compensation.  Members of the Litigation Trust Board shall serve without compensation, provided, however, members of the Litigation Trust Board shall be entitled to reimbursement from the Litigation Trust for their reasonable and necessary out of pocket expenses incurred in connection with their service as members of the Litigation Trust Board.

3.17    <u>Litigation Trust Board Tenure and Replacement</u>.  Each member of the Litigation Trust Board will serve until death, incapacitation or resignation.  A member of the Litigation Trust Board may resign at any time by providing a written notice of resignation to the Litigation Trustee and remaining members of the Litigation Trust Board.  Upon the resignation, death or incapacity of a Litigation Trust Board member, a successor member may, but shall not be required to, be appointed by a majority of the remaining members of the Litigation Trust Board, provided that any such successor member must be approved by either (i) the Prepetition Lenders, or (ii) at least one member of the Litigation Trust Board appointed by the Prepetition Lenders.

3.18    <u>Litigation Trust Board Action</u>.  Except as may otherwise be provided herein, a majority of the members of the Litigation Trust Board shall constitute a quorum for any action by the Litigation Trust Board, and the act of a majority of those present at any meeting at which a quorum is present, shall be the act of the Litigation Trust Board.  In the event of a tie vote, the Litigation Trustee shall be deemed a voting member for the sole purpose of breaking any such tie vote of the Litigation Trust Board.  Any or all members of the Litigation Trust Board may participate in a regular or special meeting by use of telephone, or similar communications equipment by means of which all persons participating in the meeting may hear each other.  The Litigation Trust Board may adopt, by majority vote of all members, by-laws or other rules of procedure that are not inconsistent with the terms of this Litigation Trust Agreement.  Notwithstanding anything contained in this <u>Section 3.18</u>, a Litigation Trust Board member shall be recused from the Litigation Trust Board's deliberations and votes on any matters as to which such member has a conflicting interest as determined by both the Litigation Trustee and the other members of the Litigation Trust Board.

3.19    <u>Litigation Trust Board Action Without a Meeting</u>.  Any action required or permitted to be taken by the Litigation Trust Board may be taken without a meeting if the action is taken by unanimous written consent, as evidenced by one or more written consents describing the action taken, signed by the members of the Litigation Trust Board or by such other procedures as may be agreed upon by a majority of the Litigation Trust Board, including negative notice procedures.

3.20    <u>Periodic Consultation with Litigation Trust Board</u>.  In addition to any other consultation and reporting requirements set forth in this Litigation Trust Agreement, the Litigation Trustee shall report and consult with the Litigation Trust Board at its discretion or as reasonably requested by the Litigation Trust Board or any member thereof concerning the status and administration of the Litigation Trust and the Distributable Assets.

## ARTICLE IV

## DISTRIBUTIONS FROM THE LITIGATION TRUST

4.1    <u>Litigation Trust Election</u>.  In accordance with the Combined Disclosure Statement and Plan, within five (5) business days after a General Unsecured Claim becomes an Allowed Claim under the Combined Disclosure Statement and Plan, the Debtors or the Litigation Trustee, as applicable, shall cause a notice to be served on the holder of such Allowed General Unsecured Claim informing such holder of its right under the Combined Disclosure Statement and Plan to elect to receive Litigation Trust Interests on account of its Allowed General Unsecured Claim, and that not timely making such election will result in such Holder receiving, in full and final satisfaction of such Holder's Allowed General Unsecured Claim, such Holder's Pro Rata Share of the GUC Cash Pool in accordance with the Combined Disclosure Statement and Plan.  Such notice

must provide no less than thirty (30) days for each Holder to make the election, which election may be made either via submission of an election form via U.S. Mail or by online submission through the Debtors' claims agent's website.

4.2 <u>Priority of Distributions</u>. Except as provided herein, Distributions of Available Litigation Trust Cash shall be distributed to Beneficiaries as follows:

a) *First*, to the Litigation Trustee to pay the Litigation Trust Expenses and for compensation and reimbursement of reasonable and documented expenses to Litigation Trust Board;

b) *Second*, to repay the Litigation Trust Financing Facility until all obligations related to the Litigation Trust Financing Facility are satisfied in full;

c) *Third*, after all obligations related to the Litigation Trust Financing Facility are satisfied in full, the next $5 million of Litigation Trust Distribution Proceeds, net of any Litigation Trust Expenses, shall be distributed as follows:

    i) 95% to Holders of Allowed Prepetition Loan Claims, solely to the extent such Claims have not been satisfied in full on account of Litigation Trust Distribution Proceeds or otherwise under the Combined Disclosure Statement and Plan; and

    ii) 5% to Holders of Allowed General Unsecured Claims that have elected to receive Litigation Trust Interests, solely to the extent such Claims have not been satisfied in full;

d) *Fourth*, the next $15 million of Litigation Trust Distribution Proceeds, net of any Litigation Trust Expenses, shall be distributed as follows:

    i) 90% to Holders of Allowed Prepetition Loan Claims, solely to the extent such Claims have not been satisfied in full on account of Litigation Trust Distribution Proceeds or otherwise under the Combined Disclosure Statement and Plan; and

    ii) 10% to Holders of Allowed General Unsecured Claims that have elected to receive Litigation Trust Interests, solely to the extent such Claims have not been satisfied in full;

e) *Fifth*, the next $15 million of Litigation Trust Distribution Proceeds, net of any Litigation Trust Expenses, shall be distributed as follows:

    i) 87.5% to Holders of Allowed Prepetition Loan Claims, solely to the extent such Claims have not been satisfied in full on account of Litigation Trust Distribution Proceeds or otherwise under the Combined Disclosure Statement and Plan; and

    ii) 12.5% to Holders of Allowed General Unsecured Claims that have elected to receive Litigation Trust Interests, solely to the extent such Claims have not been satisfied in full; and

f) *Sixth*, any incremental Litigation Trust Distribution Proceeds, net of any Litigation Trust Expenses, shall be distributed as follows:

    i)  85% to Holders of Allowed Prepetition Loan Claims, solely to the extent such Claims have not been satisfied in full on account of Litigation Trust Distribution Proceeds or otherwise under the Combined Disclosure Statement and Plan; and

    ii)  15% to Holders of Allowed General Unsecured Claims that have elected to receive Litigation Trust Interests, solely to the extent such Claims have not been satisfied in full.

    4.3    <u>Subordination Agreement Carve Out</u>.  Solely with respect to Distributions of Available Litigation Trust Cash in accordance with <u>Section 4.2</u> of this Litigation Trust Agreement, Subordinated Noteholders constituting Beneficiaries hereunder shall be entitled to receive up to an aggregate amount of $900,000 in Litigation Trust Distribution Proceeds (in the aggregate among all Subordinated Noteholders and any assignees constituting Beneficiaries), prior to and notwithstanding the Prepetition Lenders' enforcement of any rights under the Subordination Agreements (the "<u>Subordinated Noteholder Carve Out</u>"); <u>provided</u>, <u>that</u>, for the avoidance of doubt, except as provided in this <u>Section 4.3</u>, nothing herein shall alter, modify or otherwise limit the Prepetition Lenders' rights under the Subordination Agreements.

    4.4    <u>Payments and Distributions on Disputed Claims</u>.  Except as otherwise provided in the Combined Disclosure Statement and Plan, a Final Order or as agreed to by the relevant parties, distributions under the Combined Disclosure Statement and Plan on account of a Disputed Claim that becomes an Allowed Claim after the Effective Date shall be made on the day selected by the Litigation Trustee pursuant to the terms of the Combined Disclosure Statement and Plan and this Litigation Trust Agreement.  Notwithstanding any provision otherwise provided herein, and except as otherwise agreed to by the relevant parties, no partial payments and no partial distributions shall be made with respect to a Disputed Claim until all such disputes in connection with such Disputed Claim have been resolved by settlement or Final Order.  In the event that there are Disputed Claims requiring adjudication and resolution, the Litigation Trustee, with the approval of a majority of the Litigation Trust Board, shall establish appropriate Disputed Claim Reserves for potential payment of such Disputed Claims if such claims were Allowed or such other amount as may be ordered by the Bankruptcy Court.

    4.5    <u>Distributions in General</u>.  All Distributions to Beneficiaries hereunder as of the applicable distribution date shall be made on or as soon as practicable after the applicable distribution date pursuant and subject to the terms of Article X of the Combined Disclosure Statement and Plan, which is incorporated, *mutatis mutandis*, into and is part of this Litigation Trust Agreement as if set forth in full herein.

    4.6    <u>Calculation of Amounts to Be Distributed</u>.  Each Holder of an Allowed Claim against the Debtors shall receive the distributions that the Combined Disclosure Statement and Plan provides for Allowed Claims in the applicable Class.  Except as otherwise provided herein, Holders of Claims shall not be entitled to interest, dividends or accruals on the distributions provided for herein, regardless of whether such distributions are delivered on or at any time after the Effective Date.

## ARTICLE V

## BENEFICIARIES

5.1    <u>Incidents of Ownership</u>.  The Beneficiaries shall be the sole beneficiaries of the Litigation Trust and the Distributable Assets, and the Litigation Trustee shall retain only such incidents of ownership as are necessary to undertake the actions and transactions authorized in this Litigation Trust Agreement and Combined Disclosure Statement and Plan and distribute the Distributable Assets to the Beneficiaries.

5.2    <u>Interest Beneficial Only</u>.  The ownership of the Litigation Trust Interests shall not entitle any Beneficiary or the Debtors to any title in or to the Distributable Assets or to any right to call for a partition or division of such Distributable Assets or to require an accounting, except as may specifically be provided herein or in any order of the Bankruptcy Court.

5.3    <u>Evidence of Beneficial Interest</u>.  Ownership of a beneficial interest in the Distributable Assets shall not be evidenced by any certificate, security, or receipt, or in any other form or manner whatsoever, except as maintained on the books and records of the Litigation Trust by the Litigation Trustee as Litigation Trust Interests held by the Beneficiaries.  In maintaining the Litigation Trustee's register of Litigation Trust Interests, the Litigation Trustee may rely upon the Debtors' schedules and the official claims register maintained in the Chapter 11 Cases.

5.4    <u>Limits on Transfers and Notice of Transfer of Beneficial Interest</u>.  The interests of Beneficiaries are not negotiable and not transferable except (a) pursuant to applicable laws of descent and distribution or (b) by operation of law.  The Litigation Trustee shall not be required to record any transfer which, in the Litigation Trustee's sole discretion may be construed to create any uncertainty or ambiguity as to the identity of the holder of the interest in the Litigation Trust.  Until appropriate notification and proof thereof, in a form satisfactory to the Litigation Trustee in the exercise of its reasonable discretion, is submitted to the Litigation Trustee by registered or certified United States mail, return receipt requested, the Litigation Trustee may continue to pay all amounts to or for the benefit of the original Beneficiary.  The Litigation Trustee may rely without any further investigation upon any notification and proof of a transfer of a beneficial interest in the Litigation Trust submitted in accordance with this <u>Section 5.4</u>  that the Litigation Trustee reasonably believes to be genuine.

## ARTICLE VI

## THIRD PARTY RIGHTS AND LIMITATION OF LIABILITY

6.1    <u>Reliance</u>.  The Litigation Trustee may absolutely and unconditionally rely, and shall be protected in acting upon any resolution, statement, instrument, opinion, report, notice, request, consent, order, or other paper or document that the Litigation Trustee reasonably believes in good faith to be genuine.

6.2    <u>Parties Dealing with the Litigation Trustee</u>.  In the absence of actual knowledge to the contrary, any Entity dealing with the Litigation Trust or the Litigation Trustee shall be entitled to rely on the authority of the Litigation Trustee or any of the Litigation Trustee's agents to act in connection with the Distributable Assets and this Litigation Trust Agreement.  There shall be no obligation on any Entity dealing with the Litigation Trustee to inquire into the validity, expediency or propriety of any transaction by the Litigation Trustee or any agent of the Litigation Trustee.

6.3    <u>Limited Recourse</u>.    Except as otherwise provided in this Litigation Trust Agreement, Entities (including any professionals retained by the Litigation Trustee in accordance with this Litigation Trust Agreement) engaged in transactions with the Litigation Trust or the Litigation Trustee shall look only to the Distributable Assets to satisfy any liability incurred in connection with carrying out the terms of this Litigation Trust Agreement.

6.4    <u>Limitation of Liability</u>.    Except as expressly set forth in this Litigation Trust Agreement, on and after the Effective Date, the Litigation Trust shall have no liability on account of any claims.  Neither the Litigation Trustee, the Litigation Trust Board, their respective members, designees or professionals, or any of their duly designated agents or representatives (collectively, the "<u>Covered Persons</u>"), shall be held personally liable for any claim asserted against them or the Litigation Trust in connection with their duties and responsibilities relating to the Distributable Assets and Litigation Trust.  Without limiting the generality of the foregoing, none of the Covered Persons shall be liable for any action taken or omitted to be taken in furtherance of their responsibilities hereunder, except to the extent that their conduct is determined by Final Order to be due to their own willful misconduct, gross negligence, or fraud.  The Litigation Trust Board shall be entitled to enjoy all of the rights, powers, immunities and privileges of an official committee of unsecured creditors.  All Entities dealing with the Litigation Trustee, Litigation Trust or Litigation Trust Board shall only look to the Distributable Assets, or any insurance that may cover such claim, to satisfy any liability incurred by the Litigation Trustee or Litigation Trust Board.  Nothing contained in this Litigation Trust Agreement or the Combined Disclosure Statement and Plan shall be deemed to be an assumption by the Beneficiaries, Litigation Trust or Litigation Trustee of any of the liabilities, obligations or duties of the Debtors or the Beneficiaries.

6.5    <u>Non-Liability for Acts of Others</u>.    The Litigation Trustee and the Litigation Trust Board may, in connection with the performance of their functions, and in their sole and absolute discretion, consult with attorneys, accountants, financial advisors and agents, and shall not be liable for any act taken, omitted to be taken, or suffered to be done in accordance with advice or opinions rendered by such persons, regardless of whether such advice or opinions are provided in writing.  Notwithstanding such authority, neither the Litigation Trustee nor the Litigation Trust Board shall be under any obligation to consult with attorneys, accountants, financial advisors or agents, and their determination not to do so shall not result in the imposition of liability on the Litigation Trustee or Litigation Trust Board or their respective members and/or designees.  Any successor Litigation Trustee may accept and rely upon any accounting made by or on behalf of any predecessor Litigation Trustee hereunder, and any statement or representation made by a predecessor Litigation Trustee or its agents as to the Distributable Assets or as to any other fact bearing upon the prior administration of the Litigation Trust, so long as it has a good faith basis to do so.  A successor Litigation Trustee shall not be liable for having accepted and relied in good faith upon any such accounting, statement, or representation if it is later proved to be incomplete, inaccurate, or untrue.  A successor Litigation Trustee shall not be liable for any act or omission of any predecessor Litigation Trustee, nor have a duty to enforce any claims against any predecessor Litigation Trustee on account of any such act or omission.

6.6    <u>Indemnification</u>.    The Litigation Trust shall indemnify and hold harmless, to the fullest extent permitted by law, the Litigation Trustee, the Litigation Trust Board and their employees, members, designees and professionals, and all duly designated agents and representatives thereof (in their capacity as such; each, an "<u>Indemnified Party</u>" and collectively, the "<u>Indemnified Parties</u>"), from and against and in respect of all liabilities, losses, damages,

claims, costs and expenses (including reasonable attorneys' fees, disbursements, and related expenses) which such Indemnified Parties may incur or to which such Indemnified Parties may become subject in connection with any action, suit, proceeding or investigation brought by or threatened against such Indemnified Party arising out of or due to their acts or omissions, or consequences of such acts or omissions, with respect to the implementation or administration of the Litigation Trust or the Combined Disclosure Statement and Plan or the discharge of their duties under this Litigation Trust Agreement; *provided*, *however*, that no such indemnification will be made to such persons for actions or omissions that are determined by a Final Order to be a result of such persons' willful misconduct, gross negligence, or fraud. Entities dealing with the Litigation Trustee and Litigation Trust Board may only look to the Distributable Assets and any applicable insurance coverage to satisfy any liability incurred by the Litigation Trustee or the Litigation Trust Board to such Entity in carrying out the terms of this Litigation Trust Agreement, and neither the Litigation Trustee nor the Litigation Trust Board shall have any personal obligation to satisfy any such liability. Notwithstanding any provision in this Litigation Trust Agreement to the contrary, an Indemnified Party shall be entitled to request advances from the Litigation Trust to cover reasonable fees and necessary expenses incurred in connection with defending itself in any action brought against it as a result of the acts or omissions, actual or alleged, of an Indemnified Party in its capacity as such; provided, however, that the Litigation Trustee shall not be required to make any such advances; provided further, however, that any Indemnified Parties receiving such advances shall repay the amounts so advanced to the Litigation Trust upon the entry of a Final Order of a court of competent jurisdiction finding that such Indemnified Parties were not entitled to such indemnity under the provisions of this Section 6.6. This indemnification shall survive the death, dissolution, resignation, or removal, as may be applicable, of the Indemnified Parties, or the termination of the Litigation Trust, and shall inure to the benefit of the Indemnified Parties' heirs and assigns.

## ARTICLE VII

## SELECTION, REMOVAL AND COMPENSATION OF THE LITIGATION TRUSTEE

7.1    Initial Litigation Trustee. As contemplated by the Combined Disclosure Statement and Plan, the initial Litigation Trustee was selected by the DIP Agent and Prepetition Agent, in consultation with Committee.

7.2    Term of Service. The Litigation Trustee shall serve until (a) the completion of all the Litigation Trustee's duties, responsibilities and obligations under this Litigation Trust Agreement, (b) termination of the Litigation Trust in accordance with this Litigation Trust Agreement, or (c) the Litigation Trustee's death or dissolution, incapacitation, resignation, or removal.

7.3    Removal of a Litigation Trustee. Any Entity serving as Litigation Trustee may be removed at any time and for any reason by action of a majority of the Litigation Trust Board or upon the determination of the Bankruptcy Court on a motion for cause shown. Any Litigation Trustee so removed is entitled to payment of fees and expenses accrued prior to removal subject to the terms of this Litigation Trust Agreement. Any dispute regarding the compensation to be paid shall be determined by the Bankruptcy Court.

7.4    Resignation of Litigation Trustee. The Litigation Trustee may resign at any time by giving the Litigation Trust Board at least thirty (30) days' written notice of the Litigation

Trustee's intention to do so or such shorter time as agreed to by the Litigation Trust Board. Any resigning Litigation Trustee is entitled to payment of fees and expenses accrued prior to resignation subject to the terms of this Litigation Trust Agreement. Any dispute regarding the compensation to be paid shall be determined by the Bankruptcy Court.

7.5     Accounting in the Event of Removal or Resignation.  In the event of removal or resignation, the removed or resigning Litigation Trustee shall render to the Litigation Trust Board a full and complete accounting of monies and Distributable Assets received, disbursed, and held during the term of office of that Litigation Trustee and such other information reasonably requested by the Litigation Trust Board.  Unless an earlier date is agreed to by the removed or resigning Litigation Trustee, the removal or resignation shall be effective on the later of (a) the date specified in the notice; (b) the date that is 30 days after the date the notice is delivered; or (c) the date the accounting described in the preceding sentence is delivered.

7.6     Appointment of Successor Litigation Trustee.  Upon the resignation, death, incapacity, or removal of a Litigation Trustee, the Litigation Trust Board shall appoint a successor Litigation Trustee to fill the vacancy so created.  Any successor Litigation Trustee so appointed shall consent to and accept in writing the terms of this Litigation Trust Agreement and agree that the provisions of this Litigation Trust Agreement shall be binding upon and inure to the benefit of the successor Litigation Trustee and all of the successor Litigation Trustee's heirs and legal and personal representatives, successors or assigns.  Notwithstanding anything in this Litigation Trust Agreement, in the event that a successor Litigation Trustee is not appointed within 60 days of the occurrence or effectiveness, as applicable, of the prior Litigation Trustee's resignation, death, incapacity, or removal, the Bankruptcy Court, upon the motion of any party-in-interest, including counsel to the Litigation Trust, shall approve a successor to serve as the Litigation Trustee.

7.7     Powers and Duties of Successor Litigation Trustee.  A successor Litigation Trustee shall have all the rights, privileges, powers, and duties of the predecessor Litigation Trustee under this Litigation Trust Agreement, the Combined Disclosure Statement and Plan, or as provided in a further order of the Bankruptcy Court.

7.8     Litigation Trust Continuance.  The death, incapacity, resignation or removal of the Litigation Trustee shall not terminate the Litigation Trust or revoke any existing agency created pursuant to this Litigation Trust Agreement or invalidate any action theretofore taken by the Litigation Trustee.

7.9     Compensation and Costs of Administration.  The Litigation Trustee shall be compensated as follows: (i) all Plan Administration Activities (including any expense reimbursement) to be paid solely out of the Wind-Down Budget and pursuant to the terms set forth in Exhibit 2 herein, and (ii) all Litigation Activities (including any expense reimbursement) to be paid pursuant to the terms of Exhibit 1 herein.

7.10     Payment of Compensation.  The Litigation Trustee shall retain the Litigation Trust Counsel and may retain and compensate other professionals as provided for in Section 3.4 of this Litigation Trust Agreement which such retention, for the avoidance of doubt, shall be subject to approval by a majority of the Litigation Trust Board.  Other than Litigation Trust Counsel, which shall be retained on terms and compensation paid in accordance with procedures acceptable to a majority of the Litigation Trust Board, the reasonable fees and actual and necessary expenses of such professionals, the Litigation Trustee himself, and any disbursing agent shall be paid by the Litigation Trustee upon submission of a monthly fee statement to the Litigation Trustee and/or the

Litigation Trust Board, as applicable, in accordance with the following procedures. The Litigation Trustee shall deliver his or her invoices or fee statements to the Litigation Trust Board before payment from the Distributable Assets therefor shall be allowed, and such invoices or fee statement shall be approved by a majority of the Litigation Trust Board prior to payment. Any professionals retained by the Litigation Trustee pursuant to this Litigation Trust Agreement shall deliver their invoices or fee statements to the Litigation Trustee and the Litigation Trust Board before payment from the Distributable Assets (provided, that, for the avoidance of doubt, any such professionals engaged in connection with Plan Administration Activities shall be paid solely out of the Wind-Down Budget) therefor shall be allowed, and such invoices or fee statement shall be approved by a majority of the Litigation Trust Board prior to payment. Following payment of any such approved invoice or fee statement, the Litigation Trustee shall provide confirmation that (i) with respect to such professionals engaged in connection with Plan Administration Activities, such approved invoice or fee statement has been paid from the Wind-Down Budget, and (ii) with respect to such professionals engaged in connection with Litigation Activities, such approved invoice or fee statement has been paid from Distributable Assets or the Litigation Trust Financing Facility, as applicable. Any Entity selected as disbursing agent by the Litigation Trustee pursuant to this Litigation Trust Agreement and the Combined Disclosure Statement and Plan shall deliver their invoices or fee statements to the Litigation Trustee and the Litigation Trust Board before payment from the Distributable Assets therefor shall be allowed, and such invoices or fee statement shall be approved by a majority of the Litigation Trust Board prior to payment. The Litigation Trustee and Litigation Trust Board, as applicable, shall have fifteen (15) days from the delivery of any invoice or fee statement to provide notice of an objection to the fee statement to the professional or Entity seeking compensation or reimbursement of expenses (including the Litigation Trustee). For an objection to be valid, it shall be in writing and set forth in detail the specific fees objected to and the basis for the objection. The uncontested portion of each invoice shall be paid within twenty-five (25) days after its original delivery to the Litigation Trustee. Any objection that remains unresolved fifteen (15) days after it is made shall be submitted to the Bankruptcy Court for resolution.

## ARTICLE VIII

## REPORTING AND TAX MATTERS

8.1  <u>Reporting and Filing Requirements</u>. The Litigation Trustee shall prepare and file post-Effective Date operating reports, if any, as required by the Bankruptcy Court, the Combined Disclosure Statement and Plan, applicable local rules, or this Litigation Trust Agreement.

8.2  <u>Filing of Tax Returns</u>. The Litigation Trustee shall file tax returns for the Litigation Trust as a grantor trust pursuant to Treasury Regulation Section 1.671-4(a) and any other applicable laws or regulations; *provided*, *however*, that the Litigation Trustee may, in the Litigation Trustee's reasonable discretion, determine the best way to report for tax purposes with respect to the Disputed Claims Reserve, including (i) filing a tax election to treat any and all reserves for Disputed Claims as a disputed ownership fund ("<u>DOF</u>") within the meaning of Treasury Income Tax Regulation Section 1.468B-9 for federal income tax purposes rather than to tax such reserve as a part of the Litigation Trust or (ii) electing to report as a separate trust or sub-trust or other entity. If an election is made to report the Disputed Claims Reserve as a DOF, the Litigation Trust shall comply with all federal and state tax reporting and tax compliance requirements of the DOF,

DocuSign Envelope ID: 3F7AC87C-076A-4726-8437-48E3510B00BC

**668**

including but not limited to the filing of a separate federal tax return for the DOF and the payment of federal and/or state income tax due.

8.3    <u>Preparation of Statements</u>.  To the extent reasonably practicable, the Litigation Trustee shall, in conjunction with filing the Litigation Trust's annual tax return, send to each Beneficiary a statement setting forth the Beneficiary's share of items of income, gain, loss, deduction, or credit and will instruct all such Beneficiaries to report such items on their federal income tax returns.  A final statement shall also be sent to each Beneficiary within seventy-five (75) days after the dissolution of the Litigation Trust.  The Litigation Trust's taxable income, gain, loss, deduction, or credit will be allocated (subject to provisions of the Combined Disclosure Statement and Plan and any confirmation order entered by the Bankruptcy Court relating to Disputed Claims) to the Beneficiaries in accordance with their relative beneficial interests in the Litigation Trust, as determined pursuant to this Litigation Trust Agreement and the Combined Disclosure Statement and Plan.

8.4    <u>Valuation of Distributable Assets</u>.  As soon as practicable after the Effective Date, the Litigation Trustee, to the extent that it deems it necessary or appropriate in the reasonable exercise of its discretion, shall, in good faith, value the Distributable Assets, and such valuation shall be made available from time to time, to the extent relevant, and shall be used consistently by all parties (including the Debtors, the Litigation Trustee and the Beneficiaries) for all federal income tax purposes.  The Litigation Trustee shall be under no obligation to hire an expert to make such a valuation.

## ARTICLE IX

## MAINTENANCE OF AND ACCESS TO RECORDS

9.1    <u>Books and Records</u>.  The Litigation Trustee shall maintain books and records containing a description of all property from time to time constituting the Distributable Assets and an accounting of all receipts and disbursements.  Said books and records shall be open to inspection by any Beneficiary at any reasonable time during normal business hours and after reasonable advance notice.  The Litigation Trustee shall furnish to any Beneficiary upon written request an annual statement of receipts and disbursements, including a summary of all income and expenses of the Litigation Trust.  The Debtors and Liquidating Debtors shall reasonably cooperate with the Litigation Trustee to effectuate the terms of this Litigation Trust Agreement, including executing such further documents and instruments as may be required from time to time and providing reasonable access and information to the Litigation Trustee on a timely basis.

9.2    <u>Cooperation by Debtors</u>.  The Debtors shall reasonably cooperate with the Litigation Trustee to effectuate the terms of this Agreement, including providing reasonable access and information to the Litigation Trustee on a timely basis.  Notwithstanding the foregoing, the Debtors or other furnishing party shall provide such documents or other materials described in this paragraph only upon reasonable request by the Litigation Trustee and only if they can be reasonably provided by the Debtors or other furnishing party without significant effort or material expense; provided, that in the event that the furnishing party believes that the requested information cannot be provided without significant effort or material expense, the furnishing party and the Litigation Trustee shall confer in good faith to agree upon appropriate consideration for the furnishing party to provide such information.

## ARTICLE X

## DURATION OF TRUST

10.1    Duration.  The Litigation Trust shall become effective upon the Effective Date of the Combined Disclosure Statement and Plan, and the Litigation Trust and its provisions herein shall remain and continue in full force and effect until the Litigation Trust is terminated.

10.2    Termination.  The Litigation Trust shall terminate upon the occurrence of the earlier of (a) the final liquidation, administration, and Distribution of the Distributable Assets in accordance with this Litigation Trust Agreement and the Combined Disclosure Statement and Plan and the full performance of all other duties and functions of the Litigation Trustee set forth in this Litigation Trust Agreement and any further order of the Bankruptcy Court, and (b) the fifth (5th) anniversary of the Effective Date.  Notwithstanding the foregoing, the duration of the Litigation Trust may be extended with the approval of the Bankruptcy Court, upon motion made within the six-month period before such fifth anniversary (and, in the event of further extension, by order of the Bankruptcy Court, upon motion made at least six (6) months before the end of the preceding extension).  The aggregate of all such extensions shall not exceed three years, unless the Litigation Trustee receives a favorable ruling from the IRS that any further extension would not adversely affect the status of the Litigation Trust as a liquidating trust within the meaning of section 301.7701-4(d) of the Treasury Regulations for federal income tax purposes.  After (i) the final Distributions pursuant to the Combined Disclosure Statement and Plan, (ii) the filing by or on behalf of the Litigation Trust of a certification of dissolution with the Bankruptcy Court and (iii) any other action deemed appropriate by the Litigation Trustee in consultation with the Litigation Trust Board, the Litigation Trust shall be deemed dissolved for all purposes without the necessity for any other or further actions.

10.3    Continuance of Litigation Trust for Winding Up.  After the termination of the Litigation Trust and for the purpose of liquidating and winding up the affairs of the Litigation Trust, the Litigation Trustee shall continue to act as such until the Litigation Trustee's duties have been fully performed, including, without limitation, such tasks as necessary to wind-up the affairs of the Litigation Trust.  After the termination of the Litigation Trust, the Litigation Trustee shall retain for a period of six (6) months the books, records, Beneficiary lists, and certificates and other documents and files which shall have been delivered to or created by the Litigation Trustee.  At the Litigation Trustee's discretion, all of such records and documents may, but need not, be destroyed at any time after such six (6) month period.  Except as otherwise specifically provided herein, upon the discharge of all liabilities of the Litigation Trust and final Distributions pursuant to this Litigation Trust Agreement, the Litigation Trustee shall have no further duties or obligations hereunder.  For the avoidance of doubt, the limitations on liability contained in this Litigation Trust Agreement shall apply to any actions taken by the Litigation Trustee during the course of winding up the affairs of the Litigation Trust.

## ARTICLE XI

## MISCELLANEOUS

11.1    Jurisdiction.  The Bankruptcy Court shall have exclusive jurisdiction over, the fullest extent permitted by law, (a) the Litigation Trust and the Litigation Trustee with respect to the administration of and activities relating to the Litigation Trust, and (b) any issues or disputes

DocuSign Envelope ID: 3F7AC87C-076A-4726-8437-4853A510B00BC

**670**

arising out of this Litigation Trust Agreement; *provided*, *however*, that notwithstanding the foregoing, the Litigation Trustee shall have the power and authority to bring any action in any court of competent jurisdiction to prosecute any Retained Causes of Action (or Assigned Direct Creditor Claims, if any) not otherwise released pursuant to the Combined Disclosure Statement and Plan, including, but not limited to, any claims (not otherwise released pursuant to the Combined Disclosure Statement and Plan) against current or former officers or directors for breach of fiduciary duties.

    11.2   <u>Notices</u>.  All notices to be given to Beneficiaries may be given by ordinary mail, or may be delivered personally, to the holders at the addresses appearing on the books kept by the Litigation Trustee.  Any notice or other communication which may be or is required to be given, served, or sent to the Litigation Trustee or the members of the Litigation Trust Board shall be in writing and shall be sent by registered or certified United States mail, return receipt requested, postage prepaid, or transmitted by email, telex, or facsimile (if receipt is confirmed) addressed as follows:

If to the Litigation Trust/Litigation Trustee:

Drivetrain, LLC
Attn: Tim Daileader
410 Park Ave., Suite 900
New York, NY 10022
(212) 856-9700

With a copy to:

Geoffrey King
110 N Wacker Drive
Suite 3800
Chicago, IL 60606
GKing@KSLAW.com
(312) 706-8049

If to the members of the Litigation Trust Board:

Lee Haspel
Blue Torch Finance LLC
c/o Blue Torch Capital LP
150 East 58th Street, 39th Floor
New York, NY 10155
LHaspel@bluetorchcapital.com
(212) 503-5868

Dermott O'Flanagan
Blue Torch Finance LLC
c/o Blue Torch Capital LP
150 East 58th Street, 39th Floor
New York, NY 10155

doflanagan@bluetorchcapital.com
(212) 503-5873

Troy Rillo, Esq.
1012 Springfield Avenue
Mountainside, NJ 07092
trillo@yorkvilleadvisors.com
(908) 906-5127

or to such other address as may from time to time be provided in a written notice by the members of the Litigation Trust Board or to such other address as may from time to time be provided in a written notice by the Litigation Trustee.

11.3    <u>Bond</u>.  The Litigation Trustee may serve without a bond.

11.4    <u>Governing Law</u>.  This Litigation Trust Agreement shall be governed by and construed in accordance with the laws of the State of Delaware, without giving effect to conflicts of law principles.

11.5    <u>Successors and Assigns</u>.  This Litigation Trust Agreement shall inure to the benefit of and shall be binding upon the parties hereto and their respective successors and assigns.

11.6    <u>No Execution</u>.  All funds in the Litigation Trust shall be deemed *in custodia legis* until such times as the funds have actually been paid to or for the benefit of a Beneficiary, and no Beneficiary or any other Entity can bind, pledge, encumber, execute upon, garnish, or attach the Distributable Assets in any manner or compel payment from the Litigation Trust except by Final Order of the Bankruptcy Court.

11.7    <u>Amendment</u>.  The Litigation Trustee, with the prior written approval of a majority of the existing members of the Litigation Trust Board may amend, supplement, or waive any provision of this Litigation Trust Agreement, without notice to or the consent of any Beneficiary or the approval of the Bankruptcy Court, in order to: (i) cure any ambiguity, omission, defect, or inconsistency in this Litigation Trust Agreement; *provided*, *however*, that such amendments, supplements or waivers shall not be inconsistent with the terms of the Combined Disclosure Statement and Plan or adversely affect the Distributions to any of the Beneficiaries or adversely affect the federal income tax status of the Litigation Trust as a "liquidating trust"; (ii) comply with any requirements in connection with the federal income tax status of the Litigation Trust as a "liquidating trust"; and (iii) comply with any requirements in connection with maintaining that the Litigation Trust is not subject to registration or reporting requirements of the Securities Act, the Trust Indenture Act, or the Investment Company Act.  Any substantive provision of this Litigation Trust Agreement may be amended or waived by the Litigation Trustee and the approval of a majority of the Litigation Trust Board; *provided*, *however*, that no change may be made to this Agreement that would (a) adversely affect the (i) Distributions to any of the Beneficiaries, or (ii) the federal income tax status of the Trust as a "liquidating trust" or (b) modify the stated purpose of the Litigation Trust as described in this Litigation Trust Agreement.  Notwithstanding this <u>Section 11.7</u>, any amendments or modifications to this Litigation Trust Agreement shall not be inconsistent with the purpose and intention of the Litigation Trust to liquidate in an expeditious but orderly manner the Distributable Assets in accordance with Treasury Regulation Section 301.7701-4(d).

**672**

11.8    <u>Severability</u>.  If any term, provision, covenant or restriction contained in this Litigation Trust Agreement is held by a court of competent jurisdiction or other authority to be invalid, void, unenforceable or against its regulatory policy, the remainder of the terms, provisions, covenants and restrictions contained in this Litigation Trust Agreement shall remain in full force and effect and shall in no way be affected, impaired or invalidated.

11.9    <u>Counterparts</u>.  This Litigation Trust Agreement may be executed in any number of counterparts, each of which shall be deemed an original, and such counterparts shall together constitute one and the same instrument.  A facsimile or electronic mail signature of any party shall be considered to have the same binding effect as an original signature.

11.10    <u>Relationship to, and Incorporation of, the Plan</u>.  The principal purpose of this Litigation Trust Agreement is to aid in the implementation of the Combined Disclosure Statement and Plan and the Confirmation Order, and, therefore, this Litigation Trust Agreement incorporates the provisions of the Combined Disclosure Statement and Plan and the Confirmation Order, *mutatis mutandis*, as if set forth in full herein.  As among the Litigation Trust, the Litigation Trustee, the Litigation Trust Board, the Beneficiaries, and the Debtors, if any provisions of this Litigation Trust Agreement are found to be inconsistent with the provisions of the Combined Disclosure Statement and Plan or the Confirmation Order, each such document shall have controlling effect in the following rank order: (a) the Confirmation Order; (b) the Combined Disclosure Statement and Plan; and (c) this Litigation Trust Agreement.

*[Signature Page Follows]*

**673**

IN WITNESS WHEREOF, the parties have executed this Litigation Trust Agreement (or are deemed to have so executed this Litigation Trust Agreement) as of the day and year written above.

**Drivetrain, LLC**, as the Litigation Trustee

By: _Tim Daileader_
Name: Tim Daileader

**Near Intelligence, Inc.,** *et al.*, for itself and its affiliated Debtors

By: _John Faieta_
Name: John Faieta

## EXHIBIT 1

### Drivetrain, LLC Compensation Terms
### Near Intelligence, Inc., *et al*. Litigation Trust

Drivetrain, LLC ("Drivetrain") shall be entitled to the following compensation and expense reimbursement as consideration for, and in connection with, the services it will provide as Litigation Trustee for "Litigation Services" as defined under the Litigation Trust Agreement:[1]

- Fees. The Litigation Trust shall pay Drivetrain a fixed monthly fee (the "Monthly Fees") at a rate equal to $15,000 per month.  The Monthly Fees shall be payable in advance each month on the first day of each month until the termination of Drivetrain's appointment pursuant to the Litigation Trust Agreement, the Combined Disclosure Statement and Plan, and the Confirmation Order; provided, that the Monthly Fee payable for the first and last month of Drivetrain's engagement shall be prorated for the actual number of days Drivetrain is engaged during each such month.  The Monthly Fees shall be fully earned as of the first day of each month.

  The Monthly Fees shall adjust in the first month following each successive year after the first anniversary of the Effective Date to adjust for the most current annual rate of inflation (as defined at https://www.bls.gov/cpi/).

- Expense Reimbursement.  In addition to the Monthly Fees and the Additional Compensation payable to Drivetrain, the Litigation Trust shall promptly reimburse Drivetrain for all reasonable, documented out-of-pocket expenses (including reasonable expenses of counsel and other professionals), travel and lodging, data processing and communications charges, courier services and other expenditures incurred in connection with, or arising out of Litigation Activities in accordance with the terms of the Litigation Trust Agreement ("Expense Reimbursement").

- Additional Compensation.  In addition to the Monthly Fees and Expense Reimbursement, the Litigation Trust shall pay Drivetrain the following (the "Additional Compensation"):

  1. As used herein, "Net Litigation Trust Proceeds" means, on any date of determination, the aggregate amount of Litigation Trust Proceeds actually received by the Litigation Trust, less the aggregate amount of all direct costs and expenses, as set forth in the Litigation Trust's books and records, actually incurred (whether or not paid) by the Litigation Trust in connection with investigating, prosecuting, settling, liquidating, or disposing of the Litigation Trust Causes of Action including, without limitation, the fees and expenses of Litigation Counsel and any experts retained in connection with prosecuting, settling, liquidating, or disposing of the Litigation Trust Causes of Action.

---

[1] Capitalized terms that are not otherwise defined herein have the meanings given to such terms in the Litigation Trust Agreement, to which this Exhibit is attached, or the Combined Disclosure Statement and Plan, as applicable.

2.  When (i) Net Litigation Trust Proceeds are equal to or exceed $10,000,000 but are less than $15,000,000, an amount in Cash equal to 1.0% of the Net Litigation Trust Proceeds as determined on such Distribution Date, shall be earned as Additional Compensation and paid to the Litigation Trustee.

3.  When (i) Net Litigation Trust Proceeds are equal to or exceed $15,000,000 but are less than $20,000,000, an amount in Cash equal to 1.5% of the Net Litigation Trust Proceeds as determined on such Distribution Date, shall be earned as Additional Compensation and paid to the Litigation Trustee.

4.  When (i) Net Litigation Trust Proceeds are equal to or exceed $20,000,000, an amount in Cash equal to 2.0% of the Net Litigation Trust Proceeds as determined on such Distribution Date, shall be earned as Additional Compensation and paid to the Litigation Trustee.

5.  Notwithstanding the foregoing, Additional Compensation earned by Drivetrain on or after the third anniversary, but prior to the fourth anniversary of the Effective Date shall be reduced by 10%, and (ii) Additional Compensation earned by Drivetrain on or after the fourth anniversary of the Effective Date shall be reduced in total by 25%.

6.  Additional Compensation shall be paid to the Litigation Trustee within five (5) days of being earned; provided, however, that no earned Additional Compensation shall be paid (i) in the event Drivetrain is terminated for cause (A) as Litigation Trustee either pursuant to Section 7.3 of the Litigation Trust Agreement, or (B) a Final Order of the Bankruptcy Court, or (ii) Drivetrain resigns as Litigation Trustee.

- General Terms.

  o It is expected that Tim Daileader and Marc Rosenberg will have primary responsibility for this matter.

  o No amounts payable hereunder shall be subject to reduction, setoff, disgorgement or reimbursement, other than pursuant to a Final Order or with the prior written consent of Drivetrain.

  o Except as set forth in the Litigation Trust Agreement, no fee or amount paid or payable to any other Entity by the Litigation Trust or by any other Entity shall reduce or otherwise affect the Monthly Fees, Additional Compensation, or Expense Reimbursement paid or payable to Drivetrain.

  o All amounts paid to Drivetrain shall be in cash, in United States currency, and on or by the dates set forth herein.

  o All other terms of Drivetrain's engagement are set forth in the Litigation Trust Agreement, the Plan, and the Confirmation Order.

## EXHIBIT 2

## Drivetrain, LLC Compensation Terms
## Plan Administrator

Drivetrain, LLC ("Drivetrain") shall be entitled to the following compensation and expense reimbursement as consideration for, and in connection with Plan Administration Activities pursuant to the Litigation Trust Agreement:[1]

- Fees. The Debtors shall pay Drivetrain a fixed monthly fee (the "Plan Administrator Monthly Fees") at a rate equal to $8,000 per month. The Plan Administrator Monthly Fees shall be payable in advance each month on the first day of each month until the termination of Drivetrain's appointment pursuant to the Combined Disclosure Statement and Plan and the Confirmation Order; provided, that the Plan Administrator Monthly Fee payable for the first and last month of Drivetrain's engagement shall be prorated for the actual number of days Drivetrain is engaged during each such month. The Plan Administrator Monthly Fees shall be fully earned as of the first day of each month.

  The Plan Administrator Monthly Fees shall adjust in the first month following each successive year after the first anniversary of the Effective Date to adjust for the most current annual rate of inflation (as defined at https://www.bls.gov/cpi/).

- Expense Reimbursement. In addition to the Plan Administrator Monthly Fees payable to Drivetrain, the Debtors shall promptly reimburse Drivetrain for all reasonable, documented out-of-pocket expenses (including reasonable expenses of counsel and other professionals), travel and lodging, data processing and communications charges, courier services and other expenditures incurred in connection with, or arising out of the Plan Administration Activities ("Plan Administrator Expense Reimbursement").

- A designated bank account (the "Wind-Down Account") shall be established for purposes of funding the Wind-Down Budget. The Prepetition Lenders, DIP Lenders, Litigation Trust Board and Debtors shall have no obligation to fund the Wind-Down Account at any time. For the avoidance of doubt, the Plan Administrator Monthly Fees and Plan Administrator Expense Reimbursement shall be paid only by funds from the Wind-Down Account, and there shall be no recourse to the Litigation Trust Assets with respect to the Plan Administrator Monthly Fees and Plan Administrator Expense Reimbursement.

- General Terms.
  - It is expected that Tim Daileader and Marc Rosenberg will have primary responsibility for this matter.

---

[1] Capitalized terms that are not otherwise defined herein have the meanings given to such terms in the Litigation Trust Agreement, to which this Exhibit is attached, or the Combined Disclosure Statement and Plan, as applicable.

DocuSign Envelope ID: 3F7AC87C-076A-4726-8437-4853510B00BC

**677**

o   No amounts payable hereunder shall be subject to reduction, setoff, disgorgement or reimbursement, other than pursuant to a Final Order or with the prior written consent of Drivetrain.

o   Except as set forth in the Litigation Trust Agreement, no fee or amount paid or payable to any other Entity by the Debtors or by any other Entity shall reduce or otherwise affect the Plan Administrator Monthly Fees or Plan Administrator Expense Reimbursement paid or payable to Drivetrain.

o   All amounts paid to Drivetrain shall be in cash, in United States currency, and on or by the dates set forth herein.

o   All other terms of Drivetrain's engagement are set forth in the Litigation Trust Agreement.

**678**

# TAB 7

**679**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>NEAR INTELLIGENCE, INC., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 23-11962 (TMH)<br><br>(Jointly Administered)<br><br>**Re: D.I. 336, 346**<br><br>**Administrative Claims Bar Date:**<br>**April 26, 2024 at 5:00 p.m. (ET)**<br><br>**Professional Fee Claims Bar Date:**<br>**May 13, 2024**<br><br>**Rejection Damages Bar Date:**<br>**See below.** |

### NOTICE OF (I) EFFECTIVE DATE OF MODIFIED
### THIRD AMENDED COMBINED DISCLOSURE STATEMENT
### AND CHAPTER 11 PLAN OF LIQUIDATION OF NEAR INTELLIGENCE, INC.
### AND ITS AFFILIATED DEBTORS PURSUANT TO CHAPTER 11 OF THE
### BANKRUPTCY CODE, (II) CERTAIN CLAIMS BAR DATES, AND
### (III) IDENTIFICATION OF THE LITIGATION TRUSTEE

**PLEASE TAKE NOTICE THAT:**

**Entry of Confirmation Order.** On **March 15, 2024**, the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") entered the *Findings of Fact, Conclusions of Law, and Order Approving Adequacy of Disclosures on a Final Basis and Confirming the Modified Third Amended Combined Disclosure Statement and Chapter 11 Plan of Liquidation of Near Intelligence, Inc. and Its Affiliated Debtors Pursuant to Chapter 11 of the Bankruptcy Code* [D.I. 346] (the "Confirmation Order"), pursuant to which the Bankruptcy Court approved and confirmed the *Modified Third Amended Combined Disclosure Statement and Chapter 11 Plan of Liquidation of Near Intelligence, Inc. and Its Affiliated Debtors*, dated March 13, 2024 [D.I. 336] (the "Combined Disclosure Statement and Plan").[2]

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of their federal tax identification numbers, to the extent applicable, are Near Intelligence, Inc. (7857), Near Intelligence LLC (7857), Near North America, Inc. (9078), and Near Intelligence Pte. Ltd. The Debtors' headquarters is located at 100 W Walnut St., Suite A-4, Pasadena, CA 91124.

[2]     Capitalized terms used but not defined herein are defined in the Combined Disclosure Statement and Plan or Confirmation Order, as applicable.

**Effective Date.** The Effective Date, as defined in the Combined Disclosure Statement and Plan, occurred on **March 27, 2024**.

**Administrative Claims Bar Date.** Holders of Administrative Claims, other than: (i) Professional Fee Claims, (ii) an Administrative Claim that has been Allowed (including pursuant to the Final DIP Order) on or before the Effective Date, (iii) a 503(b)(9) Claim; (iv) any Claim, to the extent not previously paid, for the reasonable and documented out-of-pocket fees, expenses, costs and other charges incurred by the DIP Lenders or Prepetition Lenders, the Debtors' payment of which is provided for in the Final DIP Order and Combined Disclosure Statement and Plan, which Claim shall be Allowed on the Effective Date; (v) an Administrative Claim for an expense or liability incurred prior to the Effective Date in the ordinary course of business; (vi) an Administrative Claim on account of fees and expenses incurred on or after the Petition Date but before the Effective Date by ordinary course professionals retained by the Debtors pursuant to an order of the Bankruptcy Court; (vii) an Administrative Claim arising, in the ordinary course of business, out of the employment by one or more Debtors of an individual from and after the Petition Date but before the Effective Date, but only to the extent that such Administrative Claim is solely for outstanding wages, commissions, accrued benefits, or reimbursement of business expenses; (viii) U.S. Trustee Fees; or (ix) an Intercompany Claim, shall file with the Bankruptcy Court and serve on the Debtors, the Litigation Trustee, the Claims Agent and the U.S. Trustee requests for payment, in writing, together with supporting documents, substantially complying with the Bankruptcy Code, the Bankruptcy Rules and the Local Rules, so as to actually be received on or before **5:00 p.m. (EST) on April 26, 2024**.

As defined in the Combined Disclosure Statement and Plan, an "Administrative Claim" is any Claim for costs and expenses of administration of the Chapter 11 Cases allowed under sections 503(b), 507(a)(2), 507(b) or, if applicable, 1114(e)(2) of the Bankruptcy Code, including but not limited to: (a) any actual and necessary costs and expenses incurred after the Petition Date of preserving the Estates and operating the businesses of the Debtors (including, but not limited to, wages, salaries, commissions for services and payments for inventories, leased equipment and premises) and Claims by Governmental Units for taxes (including Claims related to taxes which accrued after the Petition Date, but excluding Claims related to taxes which accrued on or before the Petition Date); (b) Professional Fee Claims; (c) U.S. Trustee Fees; (d) any 503(b)(9) Claims; (e) Prepetition Loan Adequate Protection Claims; and (f) any Claims that have been designated "Administrative Claims" by Final Order of the Bankruptcy Court (including the Final DIP Order). **FAILURE TO FILE AND SERVE SUCH PROOF OF ADMINISTRATIVE CLAIM TIMELY AND PROPERLY SHALL RESULT IN THE ADMINISTRATIVE CLAIM BEING FOREVER BARRED AND RELEASED.**

**Professional Fee Claims Bar Date.** All requests for compensation or payment of Professional Fee Claims incurred through and including the Effective Date must be filed with the Bankruptcy Court and served in accordance with the procedures prescribed by the Combined Disclosure Statement and Plan, the Confirmation Order, the Bankruptcy Rules, and other rules and orders of the Bankruptcy Court on or before **May 13, 2024**. As defined by the Combined Disclosure Statement and Plan, a "Professional Fee Claim" is a Claim for all fees and expenses (including but not limited to, transaction fees and success fees) for services rendered by Professionals in connection with the Chapter 11 Cases from the Petition Date through and including the Effective Date. Objections to such Professional Fee Claims, if any, must be filed

and served no later than twenty-one (21) calendar days after the filing of such fee application or such other date as established by the Bankruptcy Court.

**Procedures Relating to Assumption and Rejection of Executory Contracts.** Pursuant to Section 12 of the Combined Disclosure Statement and Plan, each Executory Contract not previously rejected, assumed, or assumed and assigned (including any Executory Contract assumed and assigned in connection with a Sale) shall be deemed automatically rejected pursuant to sections 365 and 1123 of the Bankruptcy Code, unless such Executory Contract: (i) as of the Effective Date is subject to a pending motion to assume such Executory Contract; (ii) is a contract, release, or other agreement or document entered into in connection with the Combined Disclosure Statement and Plan; (iii) is a D&O Policy or an insurance policy; or (iv) is identified for assumption on the Assumption Schedule included in the Plan Supplement.

**Rejection Damages Claim Bar Date.** Unless otherwise provided by an order of the Bankruptcy Court, any Proofs of Claim based on the rejection of the Debtors' Executory Contracts pursuant to the Combined Disclosure Statement and Plan or otherwise, must be filed with Bankruptcy Court and served on the Litigation Trustee no later than thirty (30) days after the earlier of (i) notice of entry of an order approving the rejection of such Executory Contract and (ii) the occurrence of the Effective Date. **Any Claims arising from the rejection of an Executory Contract not filed with the Bankruptcy Court within such time will be forever barred from assertion, and shall not be enforceable against the Debtors, the Litigation Trust, the Debtors' Estates, or the property for any of the foregoing, and any Claim arising out of the rejection of the Executory Contract shall be deemed fully compromised, settled, and released, notwithstanding anything in the Schedules or a Proof of Claim to the contrary.** All Allowed Claims arising from the rejection of the Debtors' Executory Contracts shall be classified as Class 4 General Unsecured Claims, except as otherwise provided by order of the Bankruptcy Court.

**Class 4 General Unsecured Claims Election Option.** The Combined Disclosure Statement and Plan provides that Holders of Allowed Class 4 General Unsecured Claims may elect to receive their Pro Rata Share of the Litigation Trust Proceeds on account of their Allowed Claims. If no such election is made, each Holder will receive, in full and final satisfaction of such Holder's Allowed General Unsecured Claim, such Holder's Pro Rata Share of the GUC Cash Pool. Within five (5) business days after a Class 4 General Unsecured Claim becomes an Allowed Claim under the Combined Disclosure Statement and Plan, the Debtors will serve a notice on each Holder of an Allowed Class 4 Claim with respect to such election option. Each Holder of an Allowed Class 4 General Unsecured Claim must make the election within thirty (30) days of such notice, which election may be made either via submission of an election form via U.S. Mail or by online submission through the Debtors' claims agent's website.

**Copies of Plan Related Documents.** Copies of the Confirmation Order and the Combined Disclosure Statement and Plan, together with all pleadings and orders of the Bankruptcy Court in the above-captioned Chapter 11 Cases, are publicly available by accessing the Bankruptcy Court's website, http://www.deb.uscourts.gov, for a nominal charge (a PACER account is required), or by accessing Kroll's website, https://cases.ra.kroll.com/near/Home-DocketInfo, free of charge.

**Binding Effect of Combined Disclosure Statement and Plan and Confirmation Order.** The provisions of the Combined Disclosure Statement and Plan and the Confirmation Order shall

be binding and inure to the benefit of the Debtors, the Litigation Trustee, the Released Parties, all present and former holders of Claims and Interests, and their respective successors and assigns. Except as expressly provided in the Combined Disclosure Statement and Plan, all agreements, instruments and other documents filed in connection with the Combined Disclosure Statement and Plan shall be given full force and effect, and shall bind all parties referred to therein as of the Effective Date, whether or not such agreements are actually issued, delivered, or recorded on the Effective Date or thereafter and whether or not a party has actually executed such agreement. Effective as of and subject to the occurrence of the Effective Date and subject to the terms of the Combined Disclosure Statement and Plan and the Confirmation Order, all prior orders entered in the Chapter 11 Cases, all documents and agreements executed by the Debtors as authorized and directed thereunder and all motions or requests for relief by the Debtors pending before the Court as of the Effective Date that ultimately are granted shall be binding upon and shall inure to the benefit of the Debtors, the Litigation Trustee, and their respective successors and assigns.

**Identification and Compensation of the Litigation Trustee.** Drivetrain, LLC has been designated as the Litigation Trustee. The Litigation Trustee will be compensated on the terms set forth in **Exhibit 1** hereto.

*[Remainder of Page Intentionally Left Blank]*

**683**

Dated: March 27, 2024
    Wilmington, Delaware

**YOUNG CONAWAY STARGATT & TAYLOR, LLP**

/s/ Shane M. Reil
Edmon L. Morton (No. 3856)
Matthew B. Lunn (No. 4119)
Shane M. Reil (No. 6195)
Carol E. Cox (No. 6936)
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253
emorton@ycst.com
mlunn@ycst.com
sreil@ycst.com
ccox@ycst.com

-and-

**WILLKIE FARR & GALLAGHER LLP**
Rachel C. Strickland (admitted *pro hac vice*)
Andrew S. Mordkoff (admitted *pro hac vice*)
Joseph R. Brandt (admitted *pro hac vice*)
787 Seventh Avenue
New York, New York 10019
Telephone:  (212) 728-8000
Facsimile:  (212) 728-8111
rstrickland@willkie.com
amordkoff@willkie.com
jbrandt@willkie.com

*Co-Counsel to the Debtors and Debtors in Possession*

- 5 -

**Exhibit 1**

**Litigation Trustee Compensation Terms**

Drivetrain, LLC ("Drivetrain") shall be entitled to the following compensation and expense reimbursement as consideration for, and in connection with, the services it will provide as Litigation Trustee for Litigation Services pursuant to the Litigation Trust Agreement:

- Fees. The Litigation Trust shall pay Drivetrain a fixed monthly fee (the "Monthly Fees") at a rate equal to $15,000 per month. The Monthly Fees shall be payable in advance each month on the first day of each month until the termination of Drivetrain's appointment pursuant to the Litigation Trust Agreement, the Combined Disclosure Statement and Plan, and the Confirmation Order; provided, that the Monthly Fee payable for the first and last month of Drivetrain's engagement shall be prorated for the actual number of days Drivetrain is engaged during each such month. The Monthly Fees shall be fully earned as of the first day of each month.

  The Monthly Fees shall adjust in the first month following each successive year after the first anniversary of the Effective Date to adjust for the most current annual rate of inflation (as defined at https://www.bls.gov/cpi/).

- Expense Reimbursement.  In addition to the Monthly Fees and the Additional Compensation payable to Drivetrain, the Litigation Trust shall promptly reimburse Drivetrain for all reasonable, documented out-of-pocket expenses (including reasonable expenses of counsel and other professionals), travel and lodging, data processing and communications charges, courier services and other expenditures incurred in connection with, or arising out of Litigation Activities in accordance with the terms of the Litigation Trust Agreement ("Expense Reimbursement").

- Additional Compensation. In addition to the Monthly Fees and Expense Reimbursement, the Litigation Trust shall pay Drivetrain the following (the "Additional Compensation"):

  1. As used herein, "Net Litigation Trust Proceeds" means, on any date of determination, the aggregate amount of Litigation Trust Proceeds actually received by the Litigation Trust, less the aggregate amount of all direct costs and expenses, as set forth in the Litigation Trust's books and records, actually incurred (whether or not paid) by the Litigation Trust in connection with investigating, prosecuting, settling, liquidating, or disposing of the Litigation Trust Causes of Action including, without limitation, the fees and expenses of Litigation Counsel and any experts retained in connection with prosecuting, settling, liquidating, or disposing of the Litigation Trust Causes of Action.

  2. When (i) Net Litigation Trust Proceeds are equal to or exceed $10,000,000 but are less than $15,000,000, an amount in Cash equal to 1.0% of the Net Litigation Trust Proceeds as determined on such Distribution Date, shall be earned as Additional Compensation and paid to the Litigation Trustee.

3. When (i) Net Litigation Trust Proceeds are equal to or exceed $15,000,000 but are less than $20,000,000, an amount in Cash equal to 1.5% of the Net Litigation Trust Proceeds as determined on such Distribution Date, shall be earned as Additional Compensation and paid to the Litigation Trustee.

4. When (i) Net Litigation Trust Proceeds are equal to or exceed $20,000,000, an amount in Cash equal to 2.0% of the Net Litigation Trust Proceeds as determined on such Distribution Date, shall be earned as Additional Compensation and paid to the Litigation Trustee.

5. Notwithstanding the foregoing, Additional Compensation earned by Drivetrain on or after the third anniversary, but prior to the fourth anniversary of the Effective Date shall be reduced by 10%, and (ii) Additional Compensation earned by Drivetrain on or after the fourth anniversary of the Effective Date shall be reduced in total by 25%.

6. Additional Compensation shall be paid to the Litigation Trustee within five (5) days of being earned; provided, however, that no earned Additional Compensation shall be paid (i) in the event Drivetrain is terminated for cause (A) as Litigation Trustee either pursuant to Section 7.3 of the Litigation Trust Agreement, or (B) a Final Order of the Bankruptcy Court, or (ii) Drivetrain resigns as Litigation Trustee

Drivetrain shall also be entitled to the following compensation and expense reimbursement as consideration for, and in connection with Plan Administration Activities pursuant to the Litigation Trust Agreement:

- Fees. The Debtors shall pay Drivetrain a fixed monthly fee (the "Plan Administrator Monthly Fees") at a rate equal to $8,000 per month. The Plan Administrator Monthly Fees shall be payable in advance each month on the first day of each month until the termination of Drivetrain's appointment pursuant to the Combined Disclosure Statement and Plan and the Confirmation Order; provided, that the Plan Administrator Monthly Fee payable for the first and last month of Drivetrain's engagement shall be prorated for the actual number of days Drivetrain is engaged during each such month. The Plan Administrator Monthly Fees shall be fully earned as of the first day of each month.

  The Plan Administrator Monthly Fees shall adjust in the first month following each successive year after the first anniversary of the Effective Date to adjust for the most current annual rate of inflation (as defined at https://www.bls.gov/cpi/).

- Expense Reimbursement. In addition to the Plan Administrator Monthly Fees payable to Drivetrain, the Debtors shall promptly reimburse Drivetrain for all reasonable, documented out-of-pocket expenses (including reasonable expenses of counsel and other professionals), travel and lodging, data processing and communications charges, courier services and other expenditures incurred in connection with, or arising out of the Plan Administration Activities ("Plan Administrator Expense Reimbursement").

# TAB 8

**687**

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| NEAR INTELLIGENCE, INC., *et al.*, | Case No. 23-11962 (TMH) |
| Debtors.[1] | (Jointly Administered) |
| | **Re: Docket No. 553** |

CERTIFIED:
AS A TRUE COPY:
ATTEST:
STEPHEN L. GRANT
U.S. BANKRUPTCY COURT
Deputy Clerk
By

## ORDER AUTHORIZING DRIVETRAIN, LLC TO ACT AS FOREIGN REPRESENTATIVE AND GRANTING RELATED RELIEF

Upon the motion (the "Motion")[2] of the Plan Administrator and Litigation Trustee for entry of an order (this "Order"), (a) authorizing, but not directing Drivetrain, LLC to act as foreign representative (a "Foreign Representative") on behalf of the Near Intelligence, Inc. and its debtor affiliates (collectively, the "Debtors") in any judicial or other proceedings in a foreign country (a "Foreign Proceeding"); and (b) granting related relief, all as more fully set forth in the Motion; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. § 1334; and this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and this Court having found that it may enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in the Motion is in the best interests of the Plan Administrator and Litigation Trustee of the Near Intelligence, Inc., *et al.*, Litigation Trust, the Debtors' estates, creditors, and other parties in interest; and this Court having found that notice of the Motion and opportunity

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of their federal tax identification numbers, to the extent applicable, are Near Intelligence, Inc. (7857), Near Intelligence LLC (9004), Near North America, Inc. (9078), and Near Intelligence Pte. Ltd. The Debtors' headquarters is located at 100 W Walnut St., Suite A 4, Pasadena, CA 91124.

[2]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

for a hearing on the Motion were appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Motion; and this Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1.     The Motion is granted as set forth herein.

2.     The Debtors' filing of voluntary petitions for relief under chapter 11 of the Bankruptcy Code constitutes a "foreign proceeding" as that term is used in Article II(a) of the Model Law on Cross-Border Insolvency adopted by the United Nations Commission on International Trade Law.  These Chapter 11 Cases have been commenced by the filing of the Debtors' petitions for relief with this Court.

3.     Drivetrain is authorized and empowered to (i) act as the "foreign representative" of the Debtors in any non-U.S. court as it deems necessary or beneficial (any such courts, "Additional Courts"), (ii) to seek recognition by any Additional Courts of these Chapter 11 Cases and of certain others made by this Court in these Chapter 11 Cases from time to time, (iii) to request that any Additional Courts lend assistance to this Court and (iv) to seek any other appropriate relief from any Additional Courts or any other court, tribunal, regulatory bodies, or administrative bodies having its jurisdiction as Drivetrain deems just and proper.

4.     All Additional Courts are hereby respectfully requested (i) to grant representative status to Drivetrain in any Foreign Proceeding, (ii) to make such orders and to provide such assistance to Drivetrain as the Foreign Representative and an officer of this Court, as may be necessary or desirable to give effect to this Order and all applicable provisions of the Bankruptcy

Code, and (iii) to assist the Debtors' estates, Drivetrain in its capacity as the Foreign Representative, and its respective agents in carrying out the terms of this Order, any other order of this Court, and the provisions of the Bankruptcy Code, including, for the avoidance of doubt, the Plan.

5.    Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion, and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

6.    Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Order are immediately effective and enforceable upon its entry.

7.    Drivetrain, LLC, in its capacity as Plan Administrator and Litigation Trustee, is authorized to take all actions necessary to effectuate the relief granted in this Order in accordance with the Motion.

8.    This Court retains jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

Dated: July 21st, 2025
Wilmington, Delaware

*Thomas M. Horan*
**THOMAS M. HORAN**
**UNITED STATES BANKRUPTCY JUDGE**

# TAB 9

**691**

# BEFORE THE NATIONAL COMPANY LAW TRIBUNAL AT BENGALURU

*PRESENTATION FORM*

## COMPANY PETITION No.      /2025

Serial No.                              **District:** Bengaluru

Advocates

**Between**

**Ⅱ TRILEGAL**                          **Near Intelligence  Pte. Ltd**

6th Floor, Markssquare,
61, St. Marks Road,                     **And**
Bangalore-560 001                       **Near Intelligence  Pvt. Ltd**
**Ph.8123507619**                       **& Ors**

| Sl. No | Description of Paper Presented | Court fee Affixed On the Paper | |
|---|---|---|---|
| 1. | Company Petition Under Section 98(1) of the Companies Act,2013 Read with Rule 11 of the National Company Law Tribunal Rules 2016 | | |
| 2. | | | |
| 3. | **VOLUME-I** | | |

Number of copies furnished                    Other side Served

Presented by

*Advocate for Petitioner*                      *Received Paper with*

                                               *Court Fees as above*

Advocate's clerk

**Date: 27.01.2025          Bengaluru                  Receiving clerk**

**692**

## BEFORE THE NATIONAL COMPANY LAW TRIBUNAL
## BENGALURU BENCH, AT BENGALURU

### C. P. No. _____ / 2025

**IN THE MATTER OF:**

Near Intelligence Pte. Ltd.                    ...Petitioner

*Versus*

Near Intelligence Pvt. Ltd. and Ors.          ...Respondents

### INDEX
### VOLUME - I

| Sl. No. | Particulars | Page no. |
|---------|-------------|----------|
| 1. | Memo of Parties | 1 – 2 |
| 2. | List of Dates and Synopsis | 3 – 5 |
| 2. | Petition under Section 98(1) of the Companies Act, 2013 read with Rule 11 of the National Company Law Tribunal Rules, 2016 | 6 – 17 |
| 3. | Verifying Affidavit | 18 – 20 |
| 4. | **Annexure A:** Copy of Certificate of Incorporation of Respondent No. 1. | 21 |
| 5. | **Annexure B:** Copy of Memorandum of Association of Respondent No. 1. | 22 – 25 |
| 6. | **Annexure C:** Copy of Memorandum of Association of Respondent No. 1. | 26 – 36 |
| 7. | **Annexure D:** Copy of MCA Master Data of Respondent No. 1. | 37 – 38 |
| 8. | **Annexure E:** Copy of Form MGT-6 of Respondent No. 1. | 39 – 46 |
| 9. | **Annexure F:** Copy of Form MGT-7 of Respondent No. 1. | 47 – 60 |
| 10. | **Annexure G:** Copy of Form AOC-4 of Respondent No. 1. | 61 – 74 |
| 11. | **Annexure H:** Copy of Financial Statements of Respondent No. 1. | 75 – 118 |

| | | |
|---|---|---|
| 12. | **Annexure J:** Copy of notice 7 June 2024 issued by Petitioner to Respondent Nos. 2 and 3. | 119 – 122 |
| 13. | **Annexure K:** Copy of response 10 June 2024 issued by Respondent No. 2 to the Petitioner. | 123 |
| 14. | **Annexure L:** Copy of notice dated 14 June 2024 issued by the Petitioner to Respondent No. 2. | 124 – 126 |
| 15. | **Annexure M:** Copy of response dated 15 June 2024 issued by Respondent No. 2 to the Petitioner. | 127 |
| 16. | **Annexure N:** Copy of response dated 18 June 2024 issued by Respondent No. 2 to the Petitioner. | 128 – 209 |

**Filed at:** Bengaluru

**Executed on:** 25.01.2025

**Filed on:** 27.01.2025

Through Counsel:

**TRILEGAL**

Advocates for the Petitioner

**1**

**694**

## BEFORE THE NATIONAL COMPANY LAW TRIBUNAL
## BENGALURU BENCH, AT BENGALURU

C. P. No. _____ / 2025

<u>IN THE MATTER OF:</u>

**Near Intelligence Pte. Ltd.**                                    ...Petitioner

*Versus*

**Near Intelligence Pvt. Ltd. and Ors.**                    ...Respondents

## <u>MEMO OF PARTIES</u>

<u>BETWEEN</u>

1.    **Near Intelligence Pte. Limited,**
      Represented by Nitin Agarwal,
      Having its registered office at 1,
      Philip Street, #05-01 Royal One Philip,
      Singapore – 048692
      PAN Number: Not applicable
      Email: Nitin@azira.com
      Ph No: 9899117837                                        ...PETITIONER

<u>AND:</u>

1.    **Near Intelligence Pvt. Ltd.,**
      #1, Kathalipalya Main Road,
      Koramangala, 6th Block,
      Bengaluru – 560 095.
      PAN Number: AAHCN8319D
      GST Number: 29AAHCN8319D1ZA
      Email: justin@near.com
      Ph No: +918951944160                          ...RESPONDENT NO. 1

2.   **Justin Joseph,**

A 208, Vijetha Lapis Lazuli Apartment

1st Main Road, Brookfield,

Kundalahalli,

Bengaluru, Karnataka – 560 037.

Email: justinpj2000@yahoo.com

Ph No: 9916510399

...**RESPONDENT NO. 2**

3.   **Anil Mathews,**

Apartment No. 102, RJ Manor

Apartments, 355, 80 feet road,

Koramangala, 3rd Block,

Bengaluru, Karnataka – 560 095.

Email: anilmatt@gmail.com

Ph No: 9886234660                                    ...**RESPONDENT NO. 3**

**Filed at:** BENGALURU

**Executed on:** 25.01.2025

**Filed on:** 27.01.2025

**Advocates for the Petitioner**

**696**

BEFORE THE NATIONAL COMPANY LAW TRIBUNAL

BENGALURU BENCH, AT BENGALURU

C. P. No. _____ / 2025

**IN THE MATTER OF:**

Near Intelligence Pte. Ltd.                                                      ...Petitioner

*Versus*

Near Intelligence Pvt. Ltd. and Ors.                                  ...Respondents

**LIST OF DATES AND SYNOPSIS**

| Sl. No. | Date | Event |
|---------|------|-------|
| 1. | 29 September 2021 | Respondent No. 1 was incorporated under the Companies Act, 2013. |
| 2. | 2 December 2021 | Respondent No. 2 was appointed as a director of the Company. |
| 3. | 7 June 2024 | The Petitioner issued a notice to the Present Directors, calling upon them to perform their obligations as directors of the Company, especially with respect to making the requisite statutory filings. |
| 4. | 10 June 2024 | Respondent No. 2 issued a response to the Petitioner, seeking more time to respond. The tone and tenor of this response demonstrated Respondent No. 2's intention to not comply with his duties as a director of the Company. |
| 5. | 14 June 2024 | The Petitioner issued a communication to Respondent No. 2, reminding him of the urgency in fulfilling the compliances and specifically seeking his immediate cooperation to trigger GST return filings. |
| 6. | 15 June 2024 | Respondent No. 2 issued a response to the Petitioner which extensively referred to unrelated and inconclusive settlement discussions in the past, cited as an excuse for continued non-compliance with directorial duties. |
| 7. | 18 June 2024 | Respondent No. 2 issued a response to the Petitioner. It was evident that Respondent No. 2 did not intend |



| | | |
|---|---|---|
| | | on fulfilling his obligations as a director of the Company, regardless of the statutory/penal consequences to the Company. |
| 8. | 27 June 2024 | The Petitioner issued a notice calling upon Respondent No. 2 to perform the compliances. The notice reminded Respondent No. 2 that his conduct in seeking to extract a settlement as a condition for performing his duties as a director violates Section 166 of the Companies Act. |
| 9. | 28 June 2024 | Respondent No. 2 issued a response to the Petitioner making unsubstantiated and baseless allegations without addressing his non-compliance with obligations and duties as a director of the Company. |
| 10. | 2 September 2024 | The Petitioner issued a notice to Respondent No. 2. |
| 11. | 9 September 2024 | Respondent No. 2 issued a response to the Petitioner's notice dated 9 September 2024. |
| 12. | 20 September 2024 | The Petitioner issued a notice to Respondent No. 2, requesting compliance with his obligations and providing necessary documents for fulfilment of his obligations. |
| 13. | 26 September 2024 | Respondent No. 2 issued a response to the Petitioner, stating he would come to the office of the Company physically and take charge as an officer and director of the Company and Chief People Officer of the Group. |
| 14. | 1 October 2024 | The Petitioner issued a notice conveying that all past correspondence with Respondent No. 2 has been fruitless and that it no longer wishes to engage with Respondent No. 2 on the compliances. |
| 15. | 30 October 2024 | The Petitioner issued a notice under Section 100 of the Companies Act to the Present Directors, requisitioning the board of directors to call an EGM. The proposed agenda for the EGM was the appointment of three nominee directors. |
| 16. | 25 November 2024 | The Petitioner issued a notice of the EGM to the shareholders including Respondent No. 2, informing them that the EGM would be held on 18 December 2024. |
| 17. | 20 November 2024 | The Petitioner issued another notice of the EGM to the shareholders, including Respondent No. 2. The notice informed them that the EGM would be held on December 20, 2024. |



**698**

| 18. | 20 December 2024 | The EGM was held. Respondent No. 2 did not attend the EGM. |
|-----|------------------|----------------------------------------------------------|
| 19. | 2 January 2025   | It was conveyed to Respondent No. 2 and 3 that the EGM could not be held because of the lack of quorum. |

## SYNOPSIS

The Petitioner holds 9,999 equity shares in the Respondent No. 1 Company and is the beneficial owner of 1 share registered under Respondent No. 2's name, effectively owning 100% of Respondent No. 1's share capital and hence has a substantial interest in its affairs. Respondent No. 2 and 3 are the present directors of Respondent No. 1.

There were several instances of non-performance of statutory and legal obligations on the part of Respondent No. 2 and 3, which was brought to their attention through a series of legal notices issued by the Petitioner between 7 June 2024 to 1 October 2024. Respondent No. 2's responses to these notices were unsatisfactory and suggestive of an intention to leverage the situation for monetary gain. Respondent No. 3 remained unresponsive. Owing to the failure of these efforts, the Petitioner requisitioned an EGM on 30 October 2024, under Section 100 of the Companies Act, to appoint new directors. Respondent No. 2 and 3 failed to respond or call the EGM within the stipulated 21 days. The Petitioner then issued notices for an EGM on 25 November 2024, which was later superseded by a second notice on November 28, 2024. However, Respondent No. 2 failed to attend the EGM which was conducted on 20 December 2024, preventing the meeting from achieving the required quorum.

Since it has become impractical to hold the EGM with the required quorum and with a view to maintain Respondent No. 1 as a going concern, the present Petition has been filed by the Petitioner against the Respondent No. 1 Company and its present directors, Respondent No. 2 and Respondent No. 3, seeking a direction under Section 98(1) of the Companies Act, 2013, to convene an Extraordinary General Meeting (EGM) with a quorum of one member.

**Place:** BENGALURU

**Date:** 27. 01. 2025

**ADVOCATE FOR THE PETITIONER**

6

**699**

**BEFORE THE NATIONAL COMPANY LAW TRIBUNAL**

**BENGALURU BENCH, AT BENGALURU**

**C. P. No. _____ / 2025**

**IN THE MATTER OF:**

**Near Intelligence Pte. Ltd.**                                    **…Petitioner**

*Versus*

**Near Intelligence Pvt. Ltd. and Ors.**                          **…Respondents**

**PETITION UNDER SECTION 98(1) OF THE COMPANIES ACT, 2013
READ WITH RULE 11 OF THE NATIONAL COMPANY LAW TRIBUNAL
RULES, 2016**

1.    The present Petition is being filed by Near Intelligence Pte. Ltd. (**Petitioner**)
      under Section 98(1) of the Companies Act, 2013 (**Companies Act**) read with
      Rule 11 of the National Company Law Tribunal Rules, 2016 (**NCLT Rules**)
      seeking directions from the Hon'ble National Company Law Tribunal
      (**NCLT**) to order the convening of an Extraordinary General Meeting
      (**EGM**), fixing the quorum of the EGM as 1 (one) member, i.e. the Petitioner
      herein.

I.    **DESCRIPTION OF PARTIES**

2.    The Petitioner herein is the registered and beneficial owner of 9,999 (nine
      thousand nine hundred and ninety-nine) equity shares of Near Intelligence
      Private Limited, i.e., Respondent No. 1 (**the Company**), and beneficial owner
      of 1 (one) equity share of the Company, representing an aggregate of 100%
      (one hundred percent) of the issued and paid-up share capital of the Company.

3.    The Respondent No. 1 is a company incorporated on 29 September 2021,
      having its registered office at #1, Kathalipalya Main Road, Koramangala, 6th
      Block, Bengaluru, Karnataka – 560095.  The Company is a software
      company specializing in privacy-lead data intelligence.

4.     The Respondent No. 2 is a director on the Board of Directors of the Company, having DIN 02838539. He was appointed as a director of the Company on 2 December 2021. Respondent No. 2 is the registered owner of 1 (one) equity share (**Beneficial Share**) of the Company and holds this share for and on behalf of the Petitioner who is the beneficial owner, as mentioned above.

5.     The Respondent No. 3 is a director on the Board of Directors of the Company, having DIN 01741174. He was appointed as a director of the Company on 29 September 2021.

## II.     JURISDICTION OF THE BENCH

6.     The registered office of the Company is situated within the state of Karnataka i.e., at #1, Kathalipalya Main Road, Koramangala 6th Block, Bengaluru, Karnataka - 560095, and thereby falls within the jurisdiction of the Hon'ble NCLT, Bengaluru Bench. The Petitioner further declares that the subject matter of the above Petition is within the jurisdiction of the Hon'ble NCLT, Bengaluru Bench.

## III.     LIMITATION

7.     The cause of action for the filing of this Petition arose on 30 October 2024 when the Petitioner issued the Requisition Notice (defined below) to requisition the board of directors to call an EGM. Thereafter, the cause of action arose on 21 November 2024, the date on which the Present Directors (defined below) were required to respond by calling an EGM, but they failed to do so. Thereafter, the cause of action once again arose on 28 November 2024 at 5:47 PM (Pacific Time) when the Petitioner issued the 2nd EGM Notice (defined below) calling for an EGM on 20 December 2024 at 10:00AM. However, the Respondent No. 2 failed to attend this EGM. Therefore, the instant Petition has been filed to seek permission of this Hon'ble NCLT to consider the quorum of the EGM to be 1 (one) member. The Petition is within the applicable period of limitation prescribed under Section 433 of the Companies Act read with Article 137 of the Limitation Act, 1963.

**701**

## IV.   FACTS OF THE CASE

## A.   BACKGROUND OF THE PETITIONER'S SHAREHOLDING IN THE COMPANY

8.   The Company was incorporated on 29 September 2021 under the Companies Act, 2013, *inter-alia* with the objective to carry on the business of design, manufacture, development, programing, testing, distribution, import, export, acting as agents, to install, license, lease, alter, sell or otherwise deal in computer software, applications, hardware and programs of any and all descriptions including mobile applications and software, voice and messaging software, setting up client interaction centers, and / or call centers and or technical development center, software application and software for internet and web services, entertainment, provide for software, hardware related to the preparation, installation and maintenance and data backup. Respondent No. 2 and one Mr. Vinod Desai were subscribers to the Memorandum of Association and Articles of Association of the Company. A copy of the Certificate of Incorporation, Memorandum of Association, Articles of Association and MCA Master Data are produced herewith as **Annexures A, B, C** and **D,** respectively.

9.   The authorised capital of the Company is INR 15,00,000 and paid-up capital is INR 1,00,000/-. The current shareholding pattern of the Company is as follows:

| Sl. No. | Name of Shareholders | Number of shares held |
|---------|----------------------|------------------------|
| 1. | Near Intelligence Pte. Ltd. (i.e. the **Petitioner**) | • 9,999 shares (beneficial and registered owner)<br>• 1 share (beneficial owner) |
| 2. | Justin Joseph (i.e. **Respondent No. 1**) | • 1 share (registered owner but not beneficial owner) |
| **Total** | | 10,000 |

The above shareholding is undisputed and is also reflected in the Financial Statements and the Annual Return filed for the FY 2020-21. Copy of Form

MGT-6, MGT-7 and Copy of Form AOC-4 and the Financial Statements are herewith furnished as **Annexure E, F, G and H.**

10.   It is submitted that the registered ownership of the Beneficial Share being held by Respondent No. 2 was only for the limited purpose of fulfilling the minimum shareholding requirement under Section 3 (1) (b) of the Companies Act which requires that a private company is to be formed by a minimum of two persons or more. The Petitioner owns the beneficial interest in the share registered in the name of Respondent No. 2. For the sake of clarity, it is submitted that the concept of "beneficial interest" is found in Section 89 of the Companies Act.  Section 89(10) reads as follows:

> *(10) For the purposes of this section and section 90, **beneficial interest** in a share includes, directly or indirectly, through any contract, arrangement or otherwise, the right or entitlement of a person alone or together with any other person to—*
> *(i) exercise or cause to be exercised any or all of the rights attached to such share; or*
> *(ii) receive or participate in any dividend or other distribution in respect of such share.*

11.   Therefore, the Petitioner is the beneficial owner of 100% of the issued and paid-up share capital of the Company and therefore the Company is a wholly owned subsidiary of the Petitioner. This being the case, the Petitioner clearly has a direct and substantial interest in the way in which the affairs of the Company are conducted. It is in furtherance of this that the Petitioner has taken the steps detailed below, which has ultimately culminated in the present Petition.

**B.    NON-PERFORMANCE OF OBLIGATIONS BY THE DIRECTORS OF THE COMPANY**

12.   Starting from the month of October 2023, the Directors of the Company, i.e. the Respondent No. 2 and the Respondent No. 3 (collectively **Present Directors**) have failed to fulfil their duties and have been unconcerned with performing their obligations as directors of the Company. Due to this, the Petitioner issued several correspondences (as detailed below) calling upon

the Present Directors to perform their obligations as the directors of the Company especially with respect to making the requisite statutory filings on behalf of the Company, which only they are authorized to do.

13.   In light of the above, the Petitioner with the *bona fide* intention of soliciting the Present Directors' immediate attention to ensure that these obligations are met without any further delay, issued a notice dated 7 June 2024 (**First Notice**). A copy of the First Notice is produced herewith as **Annexure J**. In the First Notice, the Petitioner set out a non-exhaustive list of statutory and other legal obligations of the Company for which the Present Directors' active participation was sought (**Compliances**) and the potential consequence which will follow owing to their continued non-participation. The Compliances sought were as follows:

(i)     To provide assistance to the Company to access the GST portal by updating the password and retrieve all notices issued by the GST authorities to the Company, in months prior to the First Notice.

(ii)    To file replies to notices issued by the GST authorities threatening cancellation of the Company's GSTN registration.

(iii)   To sign the pending monthly GST returns and the annual returns for FY 2022-23 so that the filings can be regularized, which was required to avoid cancellation of the Company's GSTN registration.

(iv)    To file GST refund applications so that the Company can take benefit of an amount of approximately USD 1,70,000/- in the form of accumulated input tax credits.

(v)     To assist the Company with adding additional signatories on the GST portal so that routine GST filings can be made.

(vi)    To file a letter of undertaking and a renewal application on the GST portal so that the Company can continue to export services without paying GST.

(vii)   To file the annual returns and financial statements for FY 2022-23 with the Ministry of Corporate Affairs.

(viii)  To conduct quarterly board meetings as per the Companies Act, 2013 and regularize the past lapses in conducting quarterly board meetings.

(ix)    To process applications of ex-employees to transfer their Provident Fund accounts to their new employer's Provident Fund account.

(x)   To approve the fund transfer from one of the Company's bank accounts to other bank accounts of the Company to enable working capital use.

14.   While the Respondent No. 2 issued a response to the First Notice dated 10 June 2024 (**First Response**), seeking more time to respond to the First Notice, despite the time-sensitive nature of the same – the Respondent No. 3 has till date not responded to the First Notice. Further it may be noted that the tone and tenor of the First Response was demonstrative of Respondent No. 2's intention to not comply with his duties as a director of the Company. A copy of the First Response is produced herewith as **Annexure K.**

15.   In response to the First Response, the Petitioner issued a communication to Respondent No. 2 dated 14 June 2024 (**Second Notice**), reminding Respondent No. 2 of the urgency in fulfilling the Compliances and specifically seeking Respondent No. 2's immediate cooperation to trigger GST return filings. A copy of the Second Notice is produced herewith as **Annexure L.**

16.   Despite this, Respondent No. 2 issued another response dated 15 June 2024 (**Second Response**) ignoring the requirement for immediate performance of the Compliances. Instead, to the Petitioner's shock the Second Response extensively referred to unrelated and inconclusive settlement discussions in the past, that were cited as an excuse for continued non-compliance with Respondent No. 2's directorial duties. It was evident that the Respondent No. 2 was holding the Petitioner at ransom in exchange for performing his fiduciary and statutory duties to the Company. A copy of the Second Response is produced herewith as **Annexure M.**

17.   On 18 June 2024, the Petitioner received another response to the First Notice (**Third Response**). From the Third Response, it was evident that Respondent No. 2 did not intend on fulfilling his obligations as a director of the Company, regardless of the statutory / penal consequences to the Company. Additionally, the Second Response read with the Third Response – makes it evident that the Respondent No. 2's intention was only to make unjust gains at the cost of the Petitioner by holding the Company at ransom. A copy of the Third Response is produced herewith as **Annexure N.**

12

18.   On 27 June 2024, the Petitioner again issued a notice responding to the Second Response and once again calling upon Respondent No. 2 to perform the Compliances (**Third Notice)** and reminding Respondent No. 2 that his conduct in seeking to extract a settlement as a condition for performing his duties as a director violates Section 166 of the Companies Act, which reads as follows:

> *166. Duties of directors.—*
>
> *(1) Subject to the provisions of this Act, a director of a company shall act in accordance with the articles of the company.*
>
> *(2) A director of a company shall act in good faith in order to promote the objects of the company for the benefit of its members as a whole, and in the best interests of the company, its employees, the shareholders, the community and for the protection of environment.*
>
> *(3) A director of a company shall exercise his duties with due and reasonable care, skill and diligence and shall exercise independent judgment.*
>
> *(4) A director of a company shall not involve in a situation in which he may have a direct or indirect interest that conflicts, or possibly may conflict, with the interest of the company.*
>
> *(5) A director of a company shall not achieve or attempt to achieve any undue gain or advantage either to himself or to his relatives, partners, or associates and if such director is found guilty of making any undue gain, he shall be liable to pay an amount equal to that gain to the company.*
>
> *(6) A director of a company shall not assign his office and any assignment so made shall be void.*
>
> *(7) If a director of the company contravenes the provisions of this section such director shall be punishable with fine which shall not be less than one lakh rupees but which may extend to five lakh rupees.*

A copy of the Third Notice is produced herewith as **Annexure P**.

19.   Despite the Third Notice, the Respondent No. 2 issued a response dated 28 June 2024 (**Fourth Response)**, once again making unsubstantiated and baseless allegations without actually addressing the fact that he has been non-

compliant with his obligations and duties as a director of the Company. The Respondent No. 2, even at this point did not extend his cooperation to fulfil the Compliances. A copy of the Fourth Response is produced herewith as **Annexure Q.**

20.   In a similar vein, the parties exchanged the following correspondence with the ultimate result being that the Respondent No. 2 has till date failed to cooperate with the Petitioner and has failed to comply with his fiduciary and statutory obligations as a director of the Company:

(i)    On 2 September 2024, the Petitioner issued a notice dated 2 September 2024 (**Fourth Notice**) in response to the Third and Fourth Response and the same is produced herewith as **Annexure R**.

(ii)   The Respondent No. 2 issued a response dated 9 September 2024 (**Fifth Response**) to the Fourth Notice and the same is produced herewith as **Annexure S**.

(iii)  The Petitioner issued a notice dated 20 September 2024 (**Fifth Notice**) to the Respondent No. 2 and requested for compliance of his obligations and also provided the necessary documents required by him for fulfillment of his obligations. A copy of the Fifth Notice is produced herewith as **Annexure T**.

(iv)   The Respondent No. 2 issued a response dated 26 September 2024 to the Fifth Notice (**Sixth Response**) stating that he would come to the office of the Company physically and take charge as an "officer and director of the Company and Chief People Officer of the Group". This is despite the fact that he had failed to perform his duties for a period of almost one year. Evidently, this correspondence was issued with the intention to set false record and whitewash his recorded non-cooperation and non-compliance with his obligations as a director of the Company. A copy of the Sixth Response is produced herewith as **Annexure U**.

21.   It is pertinent to note that despite the Petitioner reiterating, in every notice that it had issued since June 2024, that it will provide all necessary assistance to Respondent No. 2 to fulfil his obligations as a director of the Company and perform the Compliances set out in the Petitioner's notices – the Respondent

No. 2 never came forward to perform the same or signified his intention to do so. Instead, the intention of the Respondent No. 2 to hold the Company at ransom to make unjust gains at the cost of the Petitioner – is evident. Considering this and the continued silence from the Respondent No. 3, expecting Respondent Nos. 2 and 3 to cooperate with any aspect of the affairs of the Company will be an exercise in futility.

22.     In light of this, further to the Sixth Response, the Petitioner issued a notice dated 1 October 2024 (**Sixth Notice**) conveying that all past correspondence with Respondent No. 2 has been fruitless and that it has indicated that he has no intention of cooperating or performing his obligations. In light of this, the Petitioner conveyed that it no longer wishes to engage with Respondent No. 2 on the Compliances. A copy of the Sixth Notice is produced herewith as **Annexure V.**

**C.     NOTICES TO REQUISITION THE BOARD AND FOR CALLING AN EGM**

23.     In view of the above conduct of the Present Directors, it has become imperative that the Petitioner appoints directors on the board of directors of the Company to manage the affairs of the Company and make the appropriate statutory filings (which is of critical and utmost importance). It is evident that the Present Directors are unconcerned with performing their duties and obligations and this has caused severe prejudice to the affairs of the Company.

24.     Having no other option, the Petitioner was constrained to issue a notice dated 30 October 2024 under Section 100 of the Companies Act to the Present Directors (**Requisition Notice**), requisitioning the board of directors to call an EGM. The proposed agenda for the EGM was the appointment of three nominee directors, namely Mr. John Donato Faieta, Ms. Gladys Kong and Mr. Nitin Agarwal on the Board of Directors of the Company (**Proposed Directors**). In addition to calling for an EGM, the Requisition Notice also called upon the Respondent No. 2 in his capacity as the registered owner of the Beneficial Share to attend the EGM and exercise his voting rights with respect to the same, on behalf of the Petitioner. The Requisition Notice dated 30 October 2024, along with the duly executed forms namely DIR-2; DIR-8 and MBP-1 and the email issuing the Requisition Notice are produced

15

**708**

herewith as **Annexure W (Colly)**. However, the Present Directors did not respond to the Requisition Notice and neither did they call for an EGM within the prescribed period of 21 days of receipt of the Requisition Notice (i.e. on or before 21 November 2024).

25. Since the board of directors did not call the EGM (as mentioned above), in accordance with Section 100(4) of the Companies Act, the Petitioner (i.e., the "requisitionist") issued a notice of the EGM to the shareholders including Respondent No. 2 on 25 November 2024 (**1st EGM Notice**). In the 1st EGM Notice, the Petitioner informed the shareholders of the Company that the EGM would be held on 18 December 2024. The EGM Notice was issued in compliance with Section 101 of the Companies Act. A copy of the 1st EGM Notice (along with the annexures and the email through which it was sent) is produced herewith as **Annexure X (Colly.)**.

26. However, due to some technical issues with the 1st EGM Notice and to avoid any technical objections from the Respondents, the Petitioner was constrained to issue another notice of the EGM to the shareholders including the Respondent No. 2 on 28 November 2024 (**2nd EGM Notice**) for the very same agenda as that of the 1st EGM Notice in suppression of the 1st EGM Notice. In the 2nd EGM Notice, the Petitioner informed the shareholders of the Company that the EGM would be held on 20 December 2024 at 10:00AM through video conferencing / other audio-visual means in accordance with General Circular No. 09 / 2024 issued by the Ministry of Corporate Affairs on 19 September 2024. The 2nd EGM Notice was also issued in compliance with Section 101 of the Companies Act. A copy of the 2nd EGM Notice (along with the annexures and the email through which it was sent) is produced herewith as **Annexure Y (Colly.)**. A copy of the General Circular No. 09 / 2024 issued by the Ministry of Corporate Affairs on 19 September 2024 is produced herewith as **Annexure Z**.

27. However, Respondent No. 2 did not attend the EGM held on 20 December 2024. Due to the Respondent No. 2's absence during the EGM, the prescribed quorum under Section 103 of the Companies Act to hold an EGM was not met. This was conveyed to Respondent No. 2 and 3 by the Petitioner *vide* email dated 2 January 2025. A copy of the email dated 2 January 2025 is produced herewith as **Annexure AA**.

28.    Given the past conduct of the Respondent Nos. 2 and 3, it will be futile to expect them (specifically the Respondent No. 2) to cooperate with the Petitioner in convening the EGM. In light of this and the documented non-cooperation of the Respondent No. 2, it has become impracticable for an EGM to be conducted with the requisite quorum of 2 (two) members being met. This being the case, it has become imperative that this Hon'ble NCLT passes an order under Section 98 of the Companies Act, in the manner prayed for in this petition.

29.    Considering the urgency for the Proposed Directors to take charge of the affairs of the Company in order to make the requisite statutory filings / compliances and manage the affairs of the Company – it is imperative that an EGM be held to appoint these Proposed Directors. Hence, it is humbly submitted that this Hon'ble NCLT be pleased to permit the Petitioner to conduct the EGM with the quorum of such EGM being fixed as 1 (one) member, i.e. the Petitioner – in accordance with the Proviso to Section 98 (1) (b) of the Companies Act.

30.    It is submitted that the Petitioner would be put to great hardship and prejudice if the instant Petition is not allowed. On the other hand, no such hardship or prejudice will be caused to the Respondents if the instant Petition is allowed. If the reliefs as sought are granted by this Hon'ble NCLT, this will aid the functioning of the Company and enable the Petitioner to work towards maintaining the Company as a going-concern and meeting statutory compliances, failing which the Petitioner's interests in the Company will be severely impaired and the Company's employees may also be adversely affected.

## V.    RELIEFS SOUGHT:

31.    In view of the facts and circumstances stated hereinabove, the Petitioner prays that this Hon'ble Tribunal may be pleased to:

   **(a)**    Direct that an Extra-ordinary General Meeting of the Company for the consideration and passing of resolutions with respect to the items mentioned in the 2nd EGM Notice dated 27 November 2024, by fixing

the quorum for such meeting as 1 (one) member, i.e. the Petitioner herein; and

**(b)**     Pass such other order as this Hon'ble Tribunal may deem fit and proper in the facts and circumstances of the case, to meet the ends of justice.

**Advocates for the Petitioner**                                                  **PETITIONER**

## VERIFICATION

I, Nitin Agarwal, authorized representative of the Petitioner herein, do hereby affirm that this is my signature and that the averments made in the above paragraphs are true to the best of my knowledge, information and belief and based on the records provided by the Petitioner.

Verified at _Bengaluru_ on this _28_ day of January 2025.

**Place:** _Bengaluru_
**Date:** _27 January 2025_

                                                                          **DEPONENT**

**711**

## BEFORE THE NATIONAL COMPANY LAW TRIBUNAL
## BENGALURU BENCH, AT BENGALURU

### CP NO.       / 2025

**IN THE MATTER OF:**

**Near Intelligence Pte. Ltd.**                                    …Petitioner

*Versus*

**Near Intelligence Pvt. Ltd. and Ors.**                          …Respondents

### VERIFICATION AFFIDAVIT

I, Nitin Agarwal, aged about 45 years, son of Rajkumar Agarwal, currently at #1, Kathalipalya Main Road, Koramangala 6th Block, Bengaluru – 560 095 do hereby state as follows:

1. I am authorized by the Petitioner to file the present application, and I am conversant with the facts and circumstances of the above case. I am competent to swear to this affidavit.

2. I state that the averments made in Paragraphs 1 to 51 of the accompanying Petition are true to the best of my knowledge, information and belief and are based on the records provided to me by the Petitioner.

3. I state that Annexure A to AA  produced along with this Petition are true copies of originals and are derived from the records of the Petitioner.

*Identified by me*                                                **DEPONENT**

Advocate

19

**712**

## VERIFICATION

I, Nitin Agarwal, authorized representative of the Petitioner herein, do hereby affirm that this is my signature and that the averments made in the above paragraphs are true to the best of my knowledge, information and belief and based on the records provided by the Petitioner.

Verified at _Bangalore_ on this _28_ day of January 2025.

**Place:**

**Date:**

**DEPONENT**



**INDIA NON JUDICIAL**



**Government of Karnataka**

e-Stamp

| | | |
|---|---|---|
| Certificate No. | : | IN-KA33638753256857X |
| Certificate Issued Date | : | 27-Jan-2025 11:15 AM |
| Account Reference | : | NONACC (FI)/ kakscsa08/ JOGUPALYA/ KA-JY |
| Unique Doc. Reference | : | SUBIN-KAKAKSCSA0801657955710376X |
| Purchased by | : | NITIN AGARWAL |
| Description of Document | : | Article 4 Affidavit |
| Property Description | : | AFFIDAVIT |
| Consideration Price (Rs.) | : | 0 |
| | | (Zero) |
| First Party | : | NITIN AGARWAL |
| Second Party | : | N A |
| Stamp Duty Paid By | : | NITIN AGARWAL |
| Stamp Duty Amount(Rs.) | : | 100 |
| | | (One Hundred only) |





.......... Please write or type below this line ..........

BEFORE THE NATIONAL COMPANY LAW TRIBUNAL
BENGALURU BENCH, AT BENGALURU

C.P. No. _____ /2025

IN THE MATTER OF.

NEAR INTELLIGENCE PTE. LTD.                    ...PETITIONER

VERSE

NEAR INTELLIGENCE PVT. LTD. & ORS.       RESPONDENT.

**Statutory Alert:**
1. The authenticity of this Stamp certificate should be verified at 'www.shcilestamp.com' or using e-Stamp Mobile App of Stock Holding.
   Any discrepancy in the details on this Certificate and as available on the website / Mobile App renders it invalid.
2. The onus of checking the legitimacy is on the users of the certificate.
3. In case of any discrepancy please inform the Competent Authority.

21                          ANNEXURE A

**714**



सत्यमेव जयते
### GOVERNMENT OF INDIA
### MINISTRY OF CORPORATE AFFAIRS
Central Registration Centre

# Certificate of Incorporation

[Pursuant to sub-section (2) of section 7 and sub-section (1) of section 8 of the Companies Act rule 18 of the Companies (Incorporation) Rules, 2014]

I hereby certify that NEAR INTELLIGENCE PRIVATE LIMITED is incorporated on this Twenty ninth day of September Two thousand twenty-one under the Companies Act, 2013 (18 of 2013) and that the company is limited by shares.

The Corporate Identity Number of the cor U72200KA2021PTC152422.

The Permanent Account Number (PAN) of the company is  **AAHCN8319D**        *

The Tax Deduction and Collection Account Number (TAN) of the company is **BLRN16415A**        *

Given under my hand at Manesar this Twenty ninth day of September Two thousand twenty-one .



Digital Signature Certifi
ALOK TANDON
Deputy Registrar Of Companies
For and on behalf of the Jurisdictional Registrar of
Registrar of Compa
Central Registration Cε

Disclaimer: This certificate only evidences incorporation of the company on the basis of documen the applicant(s). This certificate is neither a license nor permission to conduct business or solicit public. Permission of sector regulator is necessary wherever required. Registration status and oth company can be verified www.mca.gov.in

Mailing Address as per record available in Registrar of Compan

NEAR INTELLIGENCE PRIVATE LIMITED
#1, Kathalipalya Main Road, Koramangala, 6th Block,, Bangalore, Bangalore
Karnataka, India, 560095

* as issued by the Income Tax Depε



**ANNEXURE B** **715**

22

[Pursuant to Schedule I (see sections 4 and 5) to the Companies Act, 2013] FORM NO. INC-33

**SPIC *e+*MOA**
(e-Memorandum of Association)

\* **Table applicable to company as notified under schedule I of the companies Act, 2013** | A

<u>Table A</u>- MEMORANDUM OF ASSOCIATION OF A COMPANY LIMITED BY SHARES

1. The Name of the Company is | NEAR INTELLIGENCE PRIVATE LIMITED

2. The Registered office of the company will be situated in the state of | Karnataka-KA

3.(a) The objects to be pursued by the company on its incorporation are

To carry on the business of design, manufacture, develop, program, test, distribute, import, export, act as agents, install, license, lease, alter, sell or otherwise deal in computer software, applications, hardware and programs of any and all kinds and description including mobile applications and software, voice and messaging software, setting up client interaction centres and or call centers and or technical development center, software applications and software for internet and web services, entertainment, provide for software, hardware related to the preparation installation and maintenance and data back-up.

3.(b) Matters which are necessary for furtherance of the objects specified in clause 3(a) are

1. To enter into agreements and contracts with Indian or foreign individuals, Companies, Firms or other organizations for technical, financial or any other assistance for carrying out all or any of the objects of the Company.
2. To establish branches, offices, agencies anywhere in India or outside India for the purpose of enabling the company to carry on its business and to discontinue, if necessary at any time and reconstitute such branches, offices or agencies.
3. To invest, acquire, set up, or participate, directly or indirectly, in certain special purpose vehicles, companies and/or other entities having identical or similar objects as the Company whether situated in India or abroad.
4. Subject to the provisions of the Companies Act, 2013 to borrow or raise money by the issue or sale of any bonds, mortgages, debentures or debenture stocks of the Company, whether perpetual or otherwise and to deploy the money so raised to pursue any of the objects of the Company.
5. To open and operate current and deposit account with Banks.
6. To acquire and undertake the whole or any part of the business, assets and liabilities of any person(s) or company carrying on any business, and in any form whatsoever, which the Company is authorized to carry on.
7. To enter into partnership or any arrangements for sharing profits, union of interest, co-operations, joint venture, reciprocal concession or otherwise, with any person(s) or company carrying on or engaged in or about to carry on or engage in any business or transaction which the Company is authorized to carry on, enter into contract or otherwise, assist any such person or Company and to sell, hold, reissue, with or without guarantee, or otherwise deal with the same.
8. To spend money on experimenting and testing and in improving or seeking to improve any patents, rights, inventions, discoveries, processes or information of the Company which the Company may acquire or propose to acquire.
9. To apply for, purchase or otherwise acquire any patents, invention, license, concessions, and the like conferring any exclusive or nonexclusive or limited right to use or any secret or other information as to any invention which may seem capable of being used for any of the purposes of the Company or the acquisition of which may seem calculated directly or indirectly to benefit the Company and to use, exercise, develop or grant license in respect or otherwise turn to account the property rights or information so acquired.
10. To enter into any arrangements with any Governments or any authorities, municipal, local or others which may seem conducive to the Companys objects or any of them and to obtain from any such Government or authorities, any rights, privileges and concessions which the



Company may think desirable to obtain and to carry out, exercise and comply with such arrangements, rights, privileges and concessions.

11. To grant pensions and allowances, and to make payments towards insurance, and to subscribe or guarantee money for any national, charitable or benevolent objects, or for any exhibition or for any public, general or useful object subject to the provisions of the Companies Act, 2013.

12. To promote any company or companies for the purpose of acquiring the whole or any part of the business or property and undertaking any of the assets and liabilities of this company or undertaking any business operations which enhance the value of any property or business or operations of this Company and to place or guarantee the placing or under-write, subscribe for or otherwise acquire all or any part of the shares in or securities of any such company, firm, association or any other form of business organization.

13. To subscribe for, take, purchase or otherwise acquire and hold shares or other interest in or securities of any other company having objects altogether or in part similar to those of this company for carrying on or capable of being carried on any business so as directly to benefit the company.

14. Generally to purchase, take on lease or in exchange, hire or otherwise acquire any real estate and personal property and any rights and privileges attached thereto, which the Company may think necessary or convenient for the purpose of its business to construct, maintain and alter, take on hire, enter into agreement for developing any land and/or buildings or works necessary or convenient for the purposes of the Company.

15. To sub-let all or any contracts from time to time and upon such terms and conditions as may be thought expedient for the purpose of its business.

16. Subject to the provisions of the Act, to invest and deal with the surplus monies of the Company, not immediately required, in such manner as may from time to time be determined.

17. To accumulate funds, invest, or otherwise employ monies belonging to or entrusted to the company upon securities and shares or without securities and upon such investments, upon such terms as can be thought proper and from time to time to vary such transactions and investments in such manner as may be thought fit.

18. To borrow or raise or secure the payment of money in such manner as the Company shall think fit, and in particular by the issue of debentures or debenture stock perpetual or otherwise charged upon all or any of the Companys property both present and future, including its uncalled Capital, and to purchase, redeem or pay off any such securities, but the Company shall not do business of Banking as defined in the Banking Regulations Act, 1949.

19. To remunerate any person or company rendering services to this Company either by cash payment or by the allotment to him or them shares or securities of the Company credited as paid up in full or in part or otherwise as may be thought expedient.

20. To draw, make, accept, endorse, discount, execute and issue cheques, promissory notes, bills of lading, warrants, debentures and other negotiable or transferable instruments.

21. To sell or dispose of the undertaking of the Company or any part thereof for such consideration as the Company may think fit and in particular for shares, debentures or securities of any other company having objects altogether or in part similar to those of the Company.

22. To sell, manage exchange, dispose of, turn to account or otherwise, deal with all or any part of the property and rights of the Company.

23. Subject to the provisions of the Companies Act, 2013 to amalgamate with any other company having objects altogether or in part similar to those of the Company.

24. Subject to the provisions of the Companies Act, 2013, to distribute among the members of the Company any property of the Company upon winding up in specie or kind or otherwise, and in particular any shares or debentures or securities of other companies belonging to this Company of which this Company may have the power of disposing.

25. To undertake, promote, encourage, initiate, assist and engage in all kinds of research and development work and to set up laboratories, purchase and acquire any instruments required for the same and/or give endowments, scholarships or any other assistance either monetary or otherwise to whomsoever for this purpose.

26. To undertake and execute any trust, the undertakings whereof may seem desirable either gratuitously or otherwise.

27. To advertise, exhibit, broadcast, and adopt means of making known the business activities of the company in any way as may be expedient including posting of bills in relation thereto and the issue of circulars, book pamphlets, exhibitions, demonstrations, and workshops.

28. To pay out of the funds of the company either in cash, fully paid shares or otherwise, all expenses of all parties incidental to the promotion, formation and registration of the Company and generally, all preliminary expenses of whatever nature.

29. To insure all or any of the assets, properties, undertakings, contracts, guarantees and obligations of the Company in any manner whatsoever, on such terms and conditions as may be reasonable.

30. To open and keep register or registers of members in any country or countries where it may deem advisable to do so and to allocate any number of shares in the company, to such members.

31. To create any Depreciation Fund, Reserve Fund, Insurance Fund, Sinking Fund or any other Special Fund whether for any depreciation or repairs, replacement, improving, extending or maintaining any of the properties of the Company or for any other purposes conducive to the interests of the Company.

32. To distribute as dividend or bonus among the members or otherwise and to apply, as the Company from time to time may think fit, any moneys received by way of premium on shares or debentures issued by the Company and any moneys received in respect of dividends accrued or forfeited shares and moneys arising from the sale by the Company any of the forfeited shares.

33. To capitalize its free reserves and issue bonus shares.

34. To adopt such means of making known the business of the Company in any way as may seem expedient and in particular by advertising in the press by issue of circulars, pamphlets, demonstrations, and publication of books and periodicals.

35. To provide grants of money pensions, allowance, bonus or other payments, or be creating and from time to time subscribing or contributing to provident fund or other associations, institutions, funds or trust, and by providing or subscribing or contributing towards places of instruction and recreation, hospitals and dispensaries, medical and other attendants and other assistance as the Company may think fit.

36. Subject to the provisions of Sections 73 and Section 179 of the Companies Act, 2013 rules made there under and direction issued by the Reserve Bank of India from time to time to borrow or raise money, or receive monies on deposit, interest or otherwise in such manner as the Company may think fit for the business of the Company including by issue of debentures perpetual or otherwise including debentures convertible into shares or perpetual annuities and on security of any such money borrowed, raised or received, to mortgage, pledge the assets of the company, present or future, including its uncalled capital by special assignment or otherwise or to transfer or convey the same absolutely or in trust and to give the lenders power of sale of the property except uncalled capital and other powers as



**717**

may seem expedient and to purchase, redeem or pay off any such securities.

37. To carry on all kinds of agency business and to take part in the management, supervision or control of the business, or operations of any other company, association firm or person and in connection therewith to appoint and remunerate any Director, accountants and other experts or agents but not to act as Managers or Managing Agents for any other Company.

4. The liability of the member(s) is limited and this liability is limited to the amount unpaid, if any, on the shares held by them.

5. The share capital of the company is [ 1,500,000.00 ] rupees, divided into,

| 150,000.00 | Equity | shares of | 10.00 | rupees each | ,and |
|---|---|---|---|---|---|

6   ☒   We, the several persons, whose names and addresses are subscribed, are desirous of being formed into a company in pursuance of this memorandum of association, and we respectively agree to take the number of shares in the capital of the company set against our respective names:

     ☐   I, whose name and address is given below, am desirous of forming a company in pursuance of this memorandum of association and agree to take all the shares in the capital of the company (Applicable in case of one person company):

**718**

25

| S.No. | Subscriber Details | | | | |
|---|---|---|---|---|---|
| | Name, Address, Description and Occupation | DIN/PAN/Passport Number | No. of shares taken | | DSC | Dated |
| 1 | Mr. Justin Joseph S/o. Ouseph Palakkattuthottathil Mathew Address: A 208, Vijetha Lapis Lazuli Apartment 1st Main Road, Brookfield, Kundalahalli Bangalore 560037 Occupation: Employed Qualification: Master of Computer Application Dob: 20/02/1976 Nationality: Indian Place of Birth: Kundukad PAN: AFRPJ8255J Email Id: justin@near.com Mobile No: 9916510399 | 02838539 | 9999 | Equity | JUSTIN JOSEPH (Digitally signed by JUSTIN JOSEPH Date: 2021.03.27 15:16:40 +05'30') | 27/09/21 |
| | | | | Preference | | |
| 2 | Mr. Vinod Desai S/o. Kallappa Desai Address: Flat No 107, Sri Someshwara Arcade, Moodalapalya Circle, Nagarabhavi Main Road Bangalore 560072 Occupation: Employed Qualification: Bachelor of Commerce Dob: 01/05/1975 Nationality: Indian Place of Birth: Belagavi PAN: ACSPD8985F Email Id: vinod@near.com Mobile No: 9945059100 | ACSPD8985F | 1 | Equity | VINOD DESAI (Digitally signed by VINOD DESAI Date: 2021.09.27 15:22:55 +05'30') | 27/09/21 |
| | | | | Preference | | |
| | Total Shares taken | | 10,000.0 | Equity | | |
| | | | | Preference | | |

| Signed before Me | | | | | |
|---|---|---|---|---|---|
| Name | | Address, Description and Occupation | DIN/PAN/Passport Number/ Membership Number | DSC | Dated |
| FCS | CS I B Harikrishna | No.44/38, 1st Floor, Veerabadran Street, Nungambakkam, Chennai - 600 034 Practicing Company Secretary CP 5302 | 5829 | I B HARI KRIS HNA (Digitally signed by I B HARIKRISHNA Date: 2021.09.27 15:23:22 +05'30') | 27/09/21 |

[ Modify ]     [ Check Form ]

**719**

ANNEXURE C

26

[Pursuant to Schedule I (see Sections 4 and 5) to the Companies Act, 2013)] FORM NO. INC-34

SPIC $e^+$ AOA

(e-Articles of Association)

*Table | F | as notified under schedule I of the companies Act, 2013 is applicable to the company

| NEAR INTELLIGENCE PRIVATE LIMITED |
| :---: |

| A COMPANY LIMITED BY SHARES |
| :---: |

| Check if not applicable | Check if altered | Article No | Description |
| :---: | :---: | :---: | :--- |
| | | | *Interpretation* |
| ☐ | ☒ | I | (a) Words importing the singular number also include the plural number and vice versa.<br>(b) Words including the masculine gender also include the other genders.<br>(c) The headings are inserted for convenience and shall not affect the construction hereof.<br><br>Except as provided above and unless the context otherwise requires, words or expressions contained in these Articles shall bear the same meaning as in the Act or any statutory modification thereof in force.<br><br>In these regulations the following terms used shall have the meanings assigned against them:<br>(a) "Act" means the Companies Act 2013 including any statutory modification or re enactment thereof for the time being in force;<br>(b) "Articles" means these articles of association of the Company;<br>(c) "Board" or the "Board of Directors" means the board of Directors of the Company;<br>(d) "Company" means "Near Intelligence Private Limited".<br>(e) "Director" means a Director for the time being of the Company and includes a Person occupying the position of a Director by whatever name called and shall, unless the context otherwise requires, include an alternate Director;<br>(f) "General Meeting" means a duly convened and constituted meeting of the Shareholders of the Company and shall include Extraordinary General Meetings and Annual General Meetings held in accordance with the provisions of the Act and these regulations;<br>(g) "Memorandum" means the Memorandum of Association of the Company;<br>(h) "Seal" means the normal round Seal of the Company;<br>(i) "Shareholder" or "Member" means a member whose name is entered in the register of members as the holder of the Shares;<br><br>PRIVATE COMPANY<br>The Company is a private company within the meaning of Section 2(68) of the Companies Act, 2013, with such minimum paid-up capital as determined by the company or as may be prescribed from time to time and accordingly: -<br><br>a) The right to transfer Shares in the Company shall be restricted in the manner and to the extent hereinafter provided;<br>b) The number of Members of the Company shall be limited to two hundred not including:<br>i) Persons who are in the employment of the Company, and<br>ii) Persons who, having been formerly in the employment of the Company, were Members of the Company while in that employment and have continued to be Members after the employment ceased.<br>Provided that where two or more Persons hold one or more Shares in the Company jointly, they shall for the purpose of this definition, be treated as a single Member; and<br>c) No invitation shall be issued to the public to subscribe to any securities of the Company. |
| | | | *Share capital and variation of rights* |
| ☐ | ☒ | II 1 | (i) The authorised share capital of the Company shall be such as is mentioned in clause 5 of the Memorandum from time to time, payable in the manner as may be determined by the Board, from time to time, subject to the provisions of the Act.<br><br>(ii) Subject to the provisions of the Act and these Articles, the shares in the capital of the Company shall be under the control of the Board who may issue, allot or otherwise dispose of the same or any of them to such persons, in such |



**720**

| | | | |
|---|---|---|---|
| ☐ | ☒ | | proportion and on such terms and conditions and either at a premium or at par and at such time as they may from time to time think fit. |
| ☐ | ☒ | 2 | Without affecting the generality of the provisions in Article 1 given above, the Board shall have the right to issue and allot Shares as either fully or partly paid-up against any goods received or services rendered to the Company or property acquired by the Company or in settlement of any debt or claim of the Company and subject to the provisions of the Act and without prejudice to any rights attached to any existing Shares, Shares may be issued with such rights or restrictions as the Board may determine, including issuing at a premium or at a discount. |
| ☐ | ☒ | 3 | (i) Subject to the provisions of the Act and other applicable regulations in this regard, the Company shall have the power to buy back its Shares on such terms and conditions as may be decided by the Board and approved by the Shareholders.<br><br>(ii) The rights conferred upon the holders of the shares of any class issued with preferred or other rights shall not, unless otherwise expressly provided by the terms of issue of the shares of that class, be deemed to be varied by the creation or issue of further shares ranking pari passu therewith.<br><br>(iii) Subject to the provisions of section 55, any preference shares may, with the sanction of an ordinary resolution, be issued on the terms that they are to be redeemed on such terms and in such manner as the company before the issue of the shares may, by special resolution, determine. |
| ☐ | ☒ | 4 | (i) If at any time the share capital is divided into different classes of Shares the rights attached to any class (unless otherwise provided by the terms of issue of the Shares of that class) may, whether or not the Company is being wound up, be varied with the consent in writing of the holders of three-fourths of the issued Shares of that class, or with the sanction of a special resolution passed at a separate meeting of the holders of the Shares of that class. The rights conferred upon the holders of the Shares of any class issued with preferred or other rights shall not, unless otherwise expressly provided by the terms of issue of the Shares of that class, be deemed to be varied by the creation or issue of further Shares ranking pari passu therewith.<br><br>(ii) To every such separate meeting the provision of these Articles relating to General Meetings shall apply, but so that the necessary quorum shall be two Persons at least holding or representing by proxy one-tenth of the issued Shares of the class but so that if at any adjourned meeting of such holders a quorum as defined above is not present, those Members who are present shall be a quorum and that any holder of Shares of the class present in person or by proxy or representative may demand a poll, and shall have one vote for each Share of the class of which he is the holder. |
| ☐ | ☒ | 5 | (i) Every person whose name is entered as a member in the register of members shall be entitled to receive within two months after incorporation, in case of subscribers to the memorandum or after allotment or within one month after the application for the registration of transfer or transmission or within such other period as the conditions of issue shall be provided, --<br>(a) one certificate for all his shares without payment of any charges; or<br>(b) several certificates, each for one or more of his shares, upon payment of twenty rupees for each certificate after the first.<br>(ii) Every certificate shall be under the seal and shall specify the shares to which it relates and the amount paid-up thereon.<br>(iii) In respect of any share or shares held jointly by several persons, the company shall not be bound to issue more than one certificate, and delivery of a certificate for a share to one of several joint holders shall be sufficient delivery to all such holders. |
| ☐ | ☒ | 6 | (i) If any share certificate be worn out, defaced, mutilated or torn or if there be no further space on the back for endorsement of transfer, then upon production and surrender thereof to the company, a new certificate may be issued in lieu thereof, and if any certificate is lost or destroyed then upon proof thereof to the satisfaction of the company and on execution of such indemnity as the company deem adequate, a new certificate in lieu thereof shall be given. Every certificate under this Article shall be issued on payment of twenty rupees for each certificate.<br>(ii) Except as required by law, no person shall be recognised by the company as holding any share upon any trust, and the company shall not be bound by, or be compelled in any way to recognise (even when having notice thereof) any equitable, contingent, future or partial interest in any share, or any interest in any fractional part of a share, or (except only as by these regulations or by law otherwise provided) any other rights in respect of any share except an absolute right to the entirety thereof in the registered holder. |
| ☐ | ☒ | 7 | The provisions of Articles (5) and (6) shall mutatis mutandis apply to debentures of the company. |
| ☐ | ☒ | 8 | i) The company may exercise the powers of paying commissions conferred by sub-section (6) of section 40, provided that the rate per cent or the amount of the commission paid or agreed to be paid shall be disclosed in the manner required by that section and rules made thereunder.<br>(ii) The rate or amount of the commission shall not exceed the rate or amount prescribed in rules made under sub-section (6) of section 40.<br>iii) The commission may be satisfied by the payment of cash or the allotment of fully or partly paid shares or partly in the one way and partly in the other. |
| | | | *Lien* |



| | | | |
|---|---|---|---|
| ☐ | ☐ | 9 | (i) The company shall have a first and paramount lien-<br>(a) on every share (not being a fully paid share), for all monies (whether presently payable or not) called, or payable at a fixed time, in respect of that share; and<br>(b) on all shares (not being fully paid shares) standing registered in the name of a single person, for all monies presently payable by him or his estate to the company:<br>Provided that the Board of directors may at any time declare any share to be wholly or in part exempt from the provisions of this clause.<br>(ii) The company?s lien, if any, on a share shall extend to all dividends payable and bonuses declared from time to time in respect of such shares. |
| ☐ | ☐ | 10 | The company may sell, in such manner as the Board thinks fit, any shares on which the company has a lien:<br>Provided that no sale shall be made-<br>(a) unless a sum in respect of which the lien exists is presently payable; or<br>(b) until the expiration of fourteen days after a notice in writing stating and demanding payment of such part of the amount in respect of which the lien exists as is presently payable, has been given to the registered holder for the time being of the share or the person entitled thereto by reason of his death or insolvency. |
| ☐ | ☐ | 11 | (i) To give effect to any such sale, the Board may authorise some person to transfer the shares sold to the purchaser thereof.<br>(ii) The purchaser shall be registered as the holder of the shares comprised in any such transfer.<br>(iii) The purchaser shall not be bound to see to the application of the purchase money, nor shall his title to the shares be affected by any irregularity or invalidity in the proceedings in reference to the sale. |
| ☐ | ☐ | 12 | (i) The proceeds of the sale shall be received by the company and applied in payment of such part of the amount in respect of which the lien exists as is presently payable.<br>(ii) The residue, if any, shall, subject to a like lien for sums not presently payable as existed upon the shares before the sale, be paid to the person entitled to the shares at the date of the sale. |
| | | | ***Calls on shares*** |
| ☐ | ☐ | 13 | (i) The Board may, from time to time, make calls upon the members in respect of any monies unpaid on their shares (whether on account of the nominal value of the shares or by way of premium) and not by the conditions of allotment thereof made payable at fixed times:<br>Provided that no call shall exceed one-fourth of the nominal value of the share or be payable at less than one month from the date fixed for the payment of the last preceding call.<br>(ii) Each member shall, subject to receiving at least fourteen days? notice specifying the time or times and place of payment, pay to the company, at the time or times and place so specified, the amount called on his shares.<br>(iii) A call may be revoked or postponed at the discretion of the Board. |
| ☐ | ☐ | 14 | A call shall be deemed to have been made at the time when the resolution of the Board authorizing the call was passed and may be required to be paid by instalments. |
| ☐ | ☐ | 15 | The joint holders of a share shall be jointly and severally liable to pay all calls in respect thereof. |
| ☐ | ☐ | 16 | (i) If a sum called in respect of a share is not paid before or on the day appointed for payment thereof, the person from whom the sum is due shall pay interest thereon from the day appointed for payment thereof to the time of actual payment at ten per cent per annum or at such lower rate, if any, as the Board may determine.<br>(ii) The Board shall be at liberty to waive payment of any such interest wholly or in part. |
| ☐ | ☐ | 17 | (i) Any sum which by the terms of issue of a share becomes payable on allotment or at any fixed date, whether on account of the nominal value of the share or by way of premium, shall, for the purposes of these regulations, be deemed to be a call duly made and payable on the date on which by the terms of issue such sum becomes payable.<br>(ii) In case of non-payment of such sum, all the relevant provisions of these regulations as to payment of interest and expenses, forfeiture or otherwise shall apply as if such sum had become payable by virtue of a call duly made and notified. |
| ☐ | ☐ | 18 | The Board-<br>(a) may, if it thinks fit, receive from any member willing to advance the same, all or any part of the monies uncalled and unpaid upon any shares held by him; and<br>(b) upon all or any of the monies so advanced, may (until the same would, but for such advance, become presently payable) pay interest at such rate not exceeding, unless the company in general meeting shall otherwise direct, twelve per cent per annum, as may be agreed upon between the Board and the member paying the sum in advance. |
| | | | ***Transfer of shares*** |
| ☐ | ☐ | 19 | (i) The instrument of transfer of any share in the company shall be executed by or on behalf of both the transferor and transferee.<br>(ii) The transferor shall be deemed to remain a holder of the share until the name of the transferee is entered in the register of members in respect thereof. |
| ☐ | ☐ | 20 | The Board may, subject to the right of appeal conferred by section 58 decline to register-<br>(a) the transfer of a share, not being a fully paid share, to a person of whom they do not approve; or<br>(b) any transfer of shares on which the company has a lien. |



| | | | |
|---|---|---|---|
| ☐ | ☐ | 21 | The Board may decline to recognise any instrument of transfer unless- (a) the instrument of transfer is in the form as prescribed in rules made under sub-section (1) of section 56; (b) the instrument of transfer is accompanied by the certificate of the shares to which it relates, and such other evidence as the Board may reasonably require to show the right of the transferor to make the transfer; and (c) the instrument of transfer is in respect of only one class of shares. |
| ☐ | ☐ | 22 | On giving not less than seven days? previous notice in accordance with section 91 and rules made thereunder, the registration of transfers may be suspended at such times and for such periods as the Board may from time to time determine: Provided that such registration shall not be suspended for more than thirty days at any one time or for more than forty-five days in the aggregate in any year. |
| | | | *Transmission of shares* |
| ☐ | ☐ | 23 | (i) On the death of a member, the survivor or survivors where the member was a joint holder, and his nominee or nominees or legal representatives where he was a sole member, shall be the only persons recognised by the company as having any title to his interest in the shares (ii) Nothing in clause (i) shall release the estate of a deceased joint holder from any liability in respect of any share which had been jointly held by him with other persons. |
| ☐ | ☐ | 24 | (i) Any person becoming entitled to a share in consequence of the death or insolvency of a member may, upon such evidence being produced as may from time to time properly be required by the Board and subject as hereinafter provided, elect, either- (a) to be registered himself as holder of the share; or (b) to make such transfer of the share as the deceased or insolvent member could have made. (ii) The Board shall, in either case, have the same right to decline or suspend registration as it would have had, if the deceased or insolvent member had transferred the share before his death or insolvency. |
| ☐ | ☐ | 25 | (i) If the person so becoming entitled shall elect to be registered as holder of the share himself, he shall deliver or send to the company a notice in writing signed by him stating that he so elects. (ii) If the person aforesaid shall elect to transfer the share, he shall testify his election by executing a transfer of the share. (iii) All the limitations, restrictions and provisions of these regulations relating to the right to transfer and the registration of transfers of shares shall be applicable to any such notice or transfer as aforesaid as if the death or insolvency of the member had not occurred and the notice or transfer were a transfer signed by that member. |
| ☐ | ☐ | 26 | A person becoming entitled to a share by reason of the death or insolvency of the holder shall be entitled to the same dividends and other advantages to which he would be entitled if he were the registered holder of the share, except that he shall not, before being registered as a member in respect of the share, be entitled in respect of it to exercise any right conferred by membership in relation to meetings of the company: Provided that the Board may, at any time, give notice requiring any such person to elect either to be registered himself or to transfer the share, and if the notice is not complied with within ninety days, the Board may thereafter withhold payment of all dividends, bonuses or other monies payable in respect of the share, until the requirements of the notice have been complied with. |
| ☒ | ☐ | 27 | |
| ☒ | ☐ | 28 | |
| ☒ | ☐ | 29 | |
| ☒ | ☐ | 30 | |
| ☒ | ☐ | 31 | |
| ☒ | ☐ | 32 | |
| ☒ | ☐ | 33 | |
| | | | *Alteration of capital* |
| ☐ | ☒ | 34 | (i) The company may, from time to time, by ordinary resolution increase the share capital by such sum, to be divided into shares of such amount, as may be specified in the resolution. (ii) Subject to the provisions of section 61, the company may, by ordinary resolution, -- (a) consolidate and divide all or any of its share capital into shares of larger amount than its existing shares; |



30

| | | | |
|---|---|---|---|
| | | | (b) convert all or any of its fully paid-up shares into stock, and reconvert that stock into fully paid-up shares of any denomination;<br><br>(c) sub-divide its existing shares or any of them into shares of smaller amount than is fixed by the memorandum;<br><br>(d) cancel any shares which, at the date of the passing of the resolution, have not been taken or agreed to be taken by any person. |
| ☐ | ☒ | 35 | (i) The Company may, by special resolution, reduce in any manner subject to the provisions of the Act, its Share capital, any capital redemption reserve account or any share premium account.<br><br>(ii) If at any time the share capital is divided into different classes of shares, the rights attached to any class (unless otherwise provided by the terms of issue of the shares of that class) may, subject to the provisions of section 48, and whether or not the company is being wound up, be varied with the consent in writing of the holders of three-fourths of the issued shares of that class, or with the sanction of a special resolution passed at a separate meeting of the holders of the shares of that class.<br><br>(iii) To every such separate meeting, the provisions of these regulations relating to general meetings shall mutatis mutandis apply, but so that the necessary quorum shall be at least two persons holding at least one-third of the issued shares of the class in question. |
| ☐ | ☒ | 36 | A further issue of shares may be made in any manner whatsoever as the Board may determine including by way of preferential offer or private placement, subject to and in accordance with the provisions of section 42 and 62 of and any other applicable provision of the Act or any other law for the time being in force and the Rules and SEBI guidelines. |
| ☐ | ☒ | 37 | The company may, by special resolution, reduce in any manner and with, and subject to, any incident authorised and consent required by law, --<br>(a) its share capital;<br>(b) any capital redemption reserve account; or<br>(c) any share premium account. |
| | | | *Capitalisation of profits* |
| ☐ | ☐ | 38 | (i) The company in general meeting may, upon the recommendation of the Board, resolve-<br>(a) that it is desirable to capitalise any part of the amount for the time being standing to the credit of any of the company?s reserve accounts, or to the credit of the, profit and loss account, or otherwise available for distribution; and<br>(b) that such sum be accordingly set free for distribution in the manner specified in clause (ii) amongst the members who would have been entitled thereto, if distributed by way of dividend and in the same proportions.<br>(ii) The sum aforesaid shall not be paid in cash but shall be applied, subject to the provision contained in clause (iii), either in or towards-<br>(A) paying up any amounts for the time being unpaid on any shares held by such members respectively;<br>(B) paying up in full, unissued shares of the company to be allotted and distributed, credited as fully paid-up, to and amongst such members in the proportions aforesaid;<br>(C) partly in the way specified in sub-clause (A) and partly in that specified in sub-clause (B);<br>(D) A securities premium account and a capital redemption reserve account may, for the purposes of this regulation, be applied in the paying up of unissued shares to be issued to members of the company as fully paid bonus shares;<br>(E) The Board shall give effect to the resolution passed by the company in pursuance of this regulation. |
| ☐ | ☐ | 39 | (i) Whenever such a resolution as aforesaid shall have been passed, the Board shall-<br>(a) make all appropriations and applications of the undivided profits resolved to be capitalised thereby, and all allotments and issues of fully paid shares if any; and<br>(b) generally do all acts and things required to give effect thereto.<br>(ii) The Board shall have power-<br>(a) to make such provisions, by the issue of fractional certificates or by payment in cash or otherwise as it thinks fit, for the case of shares becoming distributable in fractions; and<br>(b) to authorise any person to enter, on behalf of all the members entitled thereto, into an agreement with the company providing for the allotment to them respectively, credited as fully paid-up, of any further shares to which they may be entitled upon such capitalisation, or as the case may require, for the payment by the company on their behalf, by the application thereto of their respective proportions of profits resolved to be capitalised, of the amount or any part of the amounts remaining unpaid on their existing shares;<br>(iii) Any agreement made under such authority shall be effective and binding on such members. |
| | | | *Buy-back of shares* |
| ☐ | ☐ | 40 | Notwithstanding anything contained in these articles but subject to the provisions of sections 68 to 70 and any other applicable provision of the Act or any other law for the time being in force, the company may purchase its own shares or other specified securities. |
| | | | *General meetings* |



**724**

| | | | |
|---|---|---|---|
| ☐ | ☒ | 41 | (i) The Company shall once a year hold a General Meeting to be known as an Annual General Meeting in accordance with the provisions of the Act.  All other meetings  shall be referred to as Extraordinary General Meetings.<br><br>(ii) The Board may, whenever it thinks fit, call an Extraordinary General Meeting.  A meeting may also be requisitioned by the Members pursuant to Section 100 of the Act. |
| ☐ | ☒ | 42 | A General Meeting (including an Extraordinary General Meeting) may be convened by giving not less than Seven days written notice to all Members whose names appear on the Register of Members at their registered address as appearing in the said Register of Members with the Company whether within or outside India, specifying the days, date and the hour of the meeting and shall contain a statement of the business to be transacted thereat.  In case of special business, the general nature of that business and other particulars may be given if so desired by the Board.  A General Meeting may be held by giving shorter notice with the consent of all the Shareholders of the Company. |
| | | | ***Proceedings at general meetings*** |
| ☐ | ☒ | 43 | The Chairman, if any, of the Board shall preside as chairperson at every general meeting of the Company. If there is no such chairperson, the Members present shall choose one of their Members to be the chairperson of the meeting. |
| ☐ | ☒ | 44 | Accidental omission to give notice of a General Meeting to any Member or such other Person entitled to receive notice of any General Meeting, or the non-receipt of the notice of any General Meeting by any Person so entitled shall not under any circumstances invalidate the proceedings of that meeting.The chairperson, if any, of the Board shall preside as Chairperson at every general meeting of the company. |
| ☐ | ☒ | 45 | No business shall be transacted at any General Meeting unless a quorum of Members are present at the time when the meeting is to proceed to business, or within half an hour thereof.  The quorum for a General Meeting shall be at least two Members present in person or through an authorised representative in case where the Member is a corporation. |
| ☐ | ☒ | 46 | (i) Where no quorum is constituted, the meeting shall be adjourned to be held at the same time and place one week later. If at such adjourned meeting also no quorum is present, the Members present shall constitute a quorum.<br><br>(ii) The Chairperson may, with the consent of any meeting at which a quorum is present, and shall, if so directed by the meeting, adjourn the meeting from time to time and from place to place. |
| | | | ***Adjournment of meeting*** |
| ☐ | ☐ | 47 | (i) The Chairperson may, with the consent of any meeting at which a quorum is present, and shall, if so directed by the meeting, adjourn the meeting from time to time and from place to place.<br>(ii) No business shall be transacted at any adjourned meeting other than the business left unfinished at the meeting from which the adjournment took place.<br>(iii) When a meeting is adjourned for thirty days or more, notice of the adjourned meeting shall be given as in the case of an original meeting.<br>(iv) Save as aforesaid, and as provided in section 103 of the Act, it shall not be necessary to give any notice of an adjournment or of the business to be transacted at an adjourned meeting. |
| | | | ***Voting rights*** |
| ☐ | ☐ | 48 | Subject to any rights or restrictions for the time being attached to any class or classes of shares,-<br>(a) on a show of hands, every member present in person shall have one vote; and<br>(b) on a poll, the voting rights of members shall be in proportion to his share in the paid-up equity share capital of the company. |
| ☐ | ☐ | 49 | A member may exercise his vote at a meeting by electronic means in accordance with section 108 and shall vote only once. |
| ☐ | ☐ | 50 | (i) In the case of joint holders, the vote of the senior who tenders a vote, whether in person or by proxy, shall be accepted to the exclusion of the votes of the other joint holders.<br>(ii) For this purpose, seniority shall be determined by the order in which the names stand in the register of members. |
| ☐ | ☐ | 51 | A member of unsound mind, or in respect of whom an order has been made by any court having jurisdiction in lunacy, may vote, whether on a show of hands or on a poll, by his committee or other legal guardian, and any such committee or guardian may, on a poll, vote by proxy. |
| ☐ | ☐ | 52 | Any business other than that upon which a poll has been demanded may be proceeded with, pending the taking of the poll. |
| ☐ | ☐ | 53 | No member shall be entitled to vote at any general meeting unless all calls or other sums presently payable by him in respect of shares in the company have been paid |
| ☐ | ☐ | 54 | (i) No objection shall be raised to the qualification of any voter except at the meeting or adjourned meeting at which the vote objected to is given or tendered, and every vote not disallowed at such meeting shall be valid for all purposes.<br>(ii) Any such objection made in due time shall be referred to the Chairperson of the meeting, whose decision shall be final and conclusive. |
| | | | ***Proxy*** |



**725**

| | | | |
|---|---|---|---|
| ☐ | ☐ | 55 | The instrument appointing a proxy and the power of attorney or other authority, if any, under which it is signed or a notarised copy of that power or authority, shall be deposited at the registered office of the company not less than 48 hours before the time for holding the meeting or adjourned meeting at which the person named in the instrument proposes to vote, or, in the case of a poll, not less than 24 hours before the time appointed for the taking of the poll; and in default the instrument of proxy shall not be treated as valid. |
| ☐ | ☒ | 56 | Notwithstanding anything mentioned in the Section 105 of the Act, a proxy shall be entitled to speak at a meeting and may vote both on a show of hands and on a poll subject to the provisions of these Articles. |
| ☐ | ☐ | 57 | A vote given in accordance with the terms of an instrument of proxy shall be valid, notwithstanding the previous death or insanity of the principal or the revocation of the proxy or of the authority under which the proxy was executed, or the transfer of the shares in respect of which the proxy is given:Provided that no intimation in writing of such death, insanity, revocation or transfer shall have been received by the company at its office before the commencement of the meeting or adjourned meeting at which the proxy is used. |
| | | | ***Board of Directors*** |
| ☐ | ☒ | 58 | (i) The number of Directors shall not be less than two and not more than Fifteen, including all kinds of Directors.<br><br>(ii) The following shall be the first Directors of the Company:<br><br>a)Mr. Justin Joseph<br>b)Mr. Vinod Desai<br><br>(iii) The Directors shall not be required to hold any qualification Shares in the Company.<br><br>(iv) The Directors shall not be liable to retire by rotation.<br><br>(v)The Directors shall be eligible for such remuneration as may be decided by the Board from time to time. |
| ☐ | ☒ | 59 | i) The Directors shall have the power at any time and from time to time, to appoint any Person (other than a person who fails to get appointed as a director in a general meeting) as an additional Director in addition to the existing Directors so that the total number of Directors shall not at any time exceed the number fixed for Directors in these Articles. Any Director so appointed, shall hold office only until the next following Annual General Meeting, but shall be eligible thereat for election as Director.<br><br>(ii) Subject to the provisions of the Act, such of the Directors as the Board may decide, may be paid such remuneration as may be decided by the Board for any services rendered. Such remuneration shall not be a percentage of the net profits or sales or any other measure of the Company's business.<br><br>(iii) The Directors may be paid all travelling, hotel and other expenses properly and actually incurred by them in attending meetings of the Board of Directors or any adjourned meeting thereof or General Meetings of the Company or any adjourned meeting thereof or any Committee thereof or to attend to some other business of the Company and return to their usual residence or to the place from where they come to attend such meeting for transacting the business of the Company.The Board may pay all expenses incurred in getting up and registering the company. |
| ☐ | ☒ | 60 | The Directors may appoint any Person to fill a casual vacancy on the Board of Directors. A Person appointed as a Director to fill a casual vacancy on the Board shall hold office only up to the date upto which the Director whose vacancy he has filled would have held office. |
| ☐ | ☒ | 61 | The company may exercise the powers conferred on it by section 88 with regard to the keeping of a foreign register; and the Board may (subject to the provisions of that section) make and vary such regulations as it may thinks fit respecting the keeping of any such register. |
| ☐ | ☒ | 62 | An Alternate Director shall be entitled to receive notice of all meetings of Directors and of all meetings of Committees of Directors of which the Original Director is a member, to attend and count towards a quorum and vote at any such meeting at which the Original Director is not personally present, and generally to perform all the functions of the Original Director in his absence. |
| ☐ | ☒ | 63 | A Person acting as an Alternate Director shall not be deemed to be the agent of the Original Director whom he represents. The remuneration of any Alternate Director shall be such proportion of the remuneration payable to the Original Director recommending him for appointment as he and that Original Director shall agree. |
| ☐ | ☒ | 64 | Subject to the provisions of the Act requiring certain actions to be taken only by the Board, the Board may, from time to time, delegate any of its powers to any committee consisting of one or more Directors (a "Committee"). The Board may also delegate to any Managing Director or any Director holding any other executive office such of its powers as they consider desirable to be exercised by him. Any such delegation may be made subject to any conditions the Board may impose and collaterally with the power of the Board and any such delegation of power may be at any time revoked or altered by the Board. The Board may also decide on the amount of remuneration and/or reimbursement of expenses to be paid by the Company to the members of the Committee. |
| | | | ***Proceedings of the Board*** |

