| | | | |
|---|---|---|---|
| ☐ | ☐ | 65 | (i) The Board of Directors may meet for the conduct of business, adjourn and otherwise regulate its meetings, as it thinks fit.<br>(ii) A director may, and the manager or secretary on the requisition of a director shall, at any time, summon a meeting of the Board. |
| ☐ | ☒ | 66 | Any of the Directors may at any time summon a meeting of the Board by giving a written notice of not less than seven days to all Directors, whether in India or outside India.  Notices shall also be sent to all Alternate Directors of the Company.  In the case of a Director residing outside India, notice of such meeting shall be sent to him either by cable, telex, email or telefax or any such other mode of communication available at the disposal of the Company at his usual address and communication numbers outside India or at his address, if any, in India. A Director may consent to a shorter notice for a Board meeting or a meeting of the Committee of the Board and a presence of a Director at a meeting of the Board or Committee would be considered as consent for shorter notice. |
| ☐ | ☒ | 67 | (i) The quorum necessary for the transaction of business at meetings of the Board of Directors shall be a minimum of two directors or one-third of the total strength of the Board, whichever is higher. Where no quorum is constituted, the meeting shall be adjourned to be held on the same time and place in the next succeeding day.<br>(ii) The continuing Directors may act notwithstanding any vacancy in the Board; but if and so long as their number is reduced below the quorum fixed under these Articles for a meeting of the Board, the continuing Directors or Director may act only for the purpose of increasing the number of Directors to that fixed for the quorum, or for summoning a General Meeting of the Company for appointing Directors, but for no other purpose.<br>(iii) A meeting of the Directors at which a quorum is present shall be competent to exercise all or any of the authorities, powers and discretions by or under the Act and these Articles vested in or exercisable by the Board. |
| ☐ | ☒ | 68 | (i) The Board may decide matters by majority affirmative vote of the Directors and/or Alternate Directors present at a Board meeting, or the majority affirmative vote of the Directors, if a matter is decided by circular resolution.<br><br>(ii) In case of equality of votes, the Chairman of the meeting shall have a casting vote. |
| ☐ | ☒ | 69 | Subject to the provisions of the Act, the Board or any Committee thereof may decide matters by passing a circular resolution.  A resolution shall be deemed to have been duly passed by the Board or by a Committee thereof by circulation, if the resolution, has been circulated in draft together with necessary papers, if any, to all the Directors, or to all the members of the Committee and has been approved by a majority of the Directors entitled to vote on the resolution.  Any failure or refusal by any Director to sign such circular resolution within seven days, shall be deemed to mean that such Director has signed against that resolution.  A circular resolution shall take effect on being signed by the required majority notwithstanding the fact that all Directors have not voted thereon. |
| ☐ | ☒ | 70 | Subject to the provisions of the Act, a Director or his Alternate Director may participate in a meeting of the Board or a Committee of Directors by videoconferencing or similar form of communication equipment if all Persons participating in the meeting are able to hear and speak to each other throughout the meeting in terms of Companies (Meetings of Board and its Powers) Rules, 2014 or any amendment thereof from time to time. A Person participating in this way is deemed to be present in person at the meeting and is counted in a quorum and entitled to vote.  Subject to the Act, all business transacted in this way by the Board or a Committee of Directors is for the purposes of the Articles deemed to be validly and effectively transacted at a meeting of the Board or a Committee thereof.  The meeting is deemed to take place where the largest group of those participating is assembled or, if there is no such group, where the Chairman of the meeting is present. |
| ☐ | ☒ | 71 | Save as otherwise expressly provided in the Act, a resolution in writing, signed by all the Directors of the Board or of a committee thereof, for the time being entitled to receive notice of a meeting of the Board or committee, shall be valid and effective as if it had been passed at a meeting of the Board or committee, duly convened and held. |
| ☐ | ☒ | 72 | All acts done in any meeting of the Board or of a committee thereof or by any person acting as a director, shall, notwithstanding that it may be afterwards discovered that there was some defect in the appointment of any one or more of such directors or of any person acting as aforesaid, or that they or any of them were disqualified, be as valid as if every such director or such person had been duly appointed and was qualified to be a director. |
| ☐ | ☒ | 73 | Subject to the conditions imposed by the Board and unless any specific directions to the contrary are issued by the Board constituting the Committee, the proceedings of a Committee shall be governed by the provisions of the Articles regulating the proceedings of Directors so far as they are capable of applying.  Where a provision of the Articles refers to the exercise of a power, authority or discretion by the Board and that power, authority or discretion has been delegated by the Board to a Committee, the provision shall be construed as permitting the exercise of the power, authority or discretion by the Committee. |
| | | | ***Chief Executive Officer, Manager, Company Secretary or Chief Financial Officer*** |
| ☐ | ☐ | 74 | Subject to the provisions of the Act,-<br>(i) A chief executive officer, manager, company secretary or chief financial officer may be appointed by the Board for such term, at such remuneration and upon such conditions as it may thinks fit; and any chief executive officer, manager, company secretary or chief financial officer so appointed may be removed by means of a resolution of the Board;<br>(ii) A director may be appointed as chief executive officer, manager, company secretary or chief financial officer |
| ☐ | ☐ | 75 | A provision of the Act or these regulations requiring or authorising a thing to be done by or to a director and chief executive officer, manager, company secretary or chief financial officer shall not be satisfied by its being done by or to the same person acting both as director and as, or in place of, chief executive officer, manager, company secretary or chief financial officer. |



**727**

## 34  *The Seal*

| | | | |
|---|---|---|---|
| ☐ | ☐ | 76 | i) The Board shall provide for the safe custody of the seal.<br>(ii) The seal of the company shall not be affixed to any instrument except by the authority of a resolution of the Board or of a committee of the Board authorised by it in that behalf, and except in the presence of at least two directors and of the secretary or such other person as the Board may appoint for the purpose; and those two directors and the secretary or other person aforesaid shall sign every instrument to which the seal of the company is so affixed in their presence. |

### *Dividends and Reserve*

| | | | |
|---|---|---|---|
| ☐ | ☐ | 77 | The company in general meeting may declare dividends, but no dividend shall exceed the amount recommended by the Board. |
| ☐ | ☐ | 78 | Subject to the provisions of section 123, the Board may from time to time pay to the members such interim dividends as appear to it to be justified by the profits of the company. |
| ☐ | ☐ | 79 | (i) The Board may, before recommending any dividend, set aside out of the profits of the company such sums as it thinks fit as a reserve or reserves which shall, at the discretion of the Board, be applicable for any purpose to which the profits of the company may be properly applied, including provision for meeting contingencies or for equalizing dividends; and pending such application, may, at the like discretion, either be employed in the business of the company or be invested in such investments (other than shares of the company) as the Board may, from time to time, thinks fit.<br>(ii) The Board may also carry forward any profits which it may consider necessary not to divide, without setting them aside as a reserve. |
| ☐ | ☐ | 80 | (i) Subject to the rights of persons, if any, entitled to shares with special rights as to dividends, all dividends shall be declared and paid according to the amounts paid or credited as paid on the shares in respect whereof the dividend is paid, but if and so long as nothing is paid upon any of the shares in the company, dividends may be declared and paid according to the amounts of the shares.<br>(ii) No amount paid or credited as paid on a share in advance of calls shall be treated for the purposes of this regulation as paid on the share.<br>(iii) All dividends shall be apportioned and paid proportionately to the amounts paid or credited as paid on the shares during any portion or portions of the period in respect of which the dividend is paid; but if any share is issued on terms providing that it shall rank for dividend as from a particular date such share shall rank for dividend accordingly. |
| ☐ | ☐ | 81 | The Board may deduct from any dividend payable to any member all sums of money, if any, presently payable by him to the company on account of calls or otherwise in relation to the shares of the company. |
| ☐ | ☐ | 82 | (i) Any dividend, interest or other monies payable in cash in respect of shares may be paid by cheque or warrant sent through the post directed to the registered address of the holder or, in the case of joint holders, to the registered address of that one of the joint holders who is first named on the register of members, or to such person and to such address as the holder or joint holders may in writing direct.<br>(ii) Every such cheque or warrant shall be made payable to the order of the person to whom it is sent. |
| ☐ | ☐ | 83 | Any one of two or more joint holders of a share may give effective receipts for any dividends, bonuses or other monies payable in respect of such share. |
| ☐ | ☐ | 84 | Notice of any dividend that may have been declared shall be given to the persons entitled to share therein in the manner mentioned in the Act. |
| ☐ | ☒ | 85 | (i) No dividend or other monies payable in respect of a Share shall bear interest against the Company unless otherwise provided by the rights attached to the Share.<br><br>(ii) Any dividend remaining unpaid or unclaimed after having been declared shall be dealt in accordance with Sections 123 and 124 of the Act and rules made thereunder. |

### *Accounts*

| | | | |
|---|---|---|---|
| ☐ | ☐ | 86 | (i) The Board shall from time to time determine whether and to what extent and at what times and places and under what conditions or regulations, the accounts and books of the company, or any of them, shall be open to the inspection of members not being directors.<br>(ii) No member (not being a director) shall have any right of inspecting any account or book or document of the company except as conferred by law or authorised by the Board or by the company in general meeting. |

### *Winding up*

| | | | |
|---|---|---|---|
| ☐ | ☒ | 87 | (i) Upon the winding-up of the company, the holders of preference Shares, if any, shall be entitled to be paid such amounts as may have been provided for in the terms of issue of such Shares subject as aforesaid and to the rights of any other holders of Shares entitled to receive preferential payment over the equity Shares. The holders of the equity Shares shall be entitled to be repaid the amount of capital paid-up or credited as paid-up on such Shares and all surplus assets thereafter shall belong to the holders of the equity Shares in proportion to the amount of capital paid-up or credited as paid up on such equity Shares respectively, at the commencement of the winding-up. If the assets shall be |



**728**

| | | | |
|---|---|---|---|
| | | | insufficient to repay the whole of the paid-up equity capital such assets shall be distributed so that, as nearly as may be, the losses shall be borne by the Members holding equity Shares in proportion to the capital paid-up or which ought to have been paid-up on the equity Shares held by them respectively at the commencement of the winding-up other than the amount paid by them in advance of calls.<br><br>(ii) If the Company shall be wound up, whether voluntarily or otherwise, the liquidators, may with the sanction of a special resolution of the Company and any other sanction required by the Act, divide among the Members in specie or in kind, and may with like sanction vest any part of the assets of the Company in trustees upon such trusts for the benefit of the Members, or any of them, as the liquidator with the like sanction shall think fit.<br><br>(iii) In all respects the winding up proceedings of the Company when taken up shall be governed by the Act. |
| | | | *Indemnity* |
| ☐ | ☒ | 88 | Subject to the provisions of Section 197 of the Act, the Directors, Manager, auditors, Secretary and other officers of the Company and trustees for the time being acting in relation to any of the affairs of the Company and their heirs, executors and administrators respectively may be indemnified out of the assets of the Company for and against all bonafide suits, proceedings, costs, charges, losses, damages and expenses which they or any of them shall or may incur or sustain by reason of any act done or omitted to be done in or about the execution of their duty in their respective offices or trust except  such as they shall incur or sustain by or through their own willful neglect or default respectively and no such officer or trustee shall be answerable for the acts, receipts, neglects or defaults of any other officer or trustee or for joining in any receipts for the sake of conformity or for the solvency or honesty of any bankers or other Persons with whom any money or effects belonging to the Company may be lodged or deposited for safe custody or for any insufficiency of any security upon which any money of the Company shall be invested or which may happen in or about the execution of the details of his office or trust unless the same shall happen through the willful neglect or default of such officer or trustee. |



**729**

**36**

| | Subscriber Details | | | | |
|---|---|---|---|---|---|
| S. NO | Name, Address, Description and Occupation | DIN/PAN/Passport Number | Place | DSC | Dated |
| 1 | Mr. Justin Joseph S/o. Ouseph Palakkattuthottathil Mathew Address: A 208, Vijetha Lapis Lazuli Apartment 1st Main Road, Brookfield, Kundalahalli Bangalore 560037 Occupation: Employed Qualification: Master of Computer Application Dob: 20/02/1976 Nationality: Indian Place of Birth: Kundukad PAN: AFRPJ8255J Email Id: justin@near.com Mobile No: 9916510399 | 02838539 | Bengaluru | JUSTIN JOSEPH Digitally signed by JUSTIN JOSEPH Date: 2021.09.27 13:36:32 +05:30 | 27/09/2021 |
| 2 | Mr. Vinod Desai S/o. Kallappa Desai Address: Flat No 107, Sri Someshwara Arcade, Moodalapalya Circle, Nagarabhavi Main Road Bangalore 560072 Occupation: Employed Qualification: Bachelor of Commerce Dob: 01/05/1975 Nationality: Indian Place of Birth: Belagavi PAN: ACSPD8985F Email Id: vinod@near.com Mobile No: 9945059100 | ACSPD8985F | Bengaluru | VINOD DESAI Digitally signed by VINOD DESAI Date: 2021.09.27 14:03:56 +05:30 | 27/09/2021 |

| | Signed Before Me | | | | |
|---|---|---|---|---|---|
| | Name | Address, Description and Occupation | DIN/PAN/ Passport Number/ Membership Number | Place | DSC | Dated |
| FCS | CS I B Harikrishna | No.44/38, 1st Floor, Veerabadran Street, Nungambakkam, Chennai - 600 034 Practicing Company Secretary CP 5302 | 5829 | Bengaluru | I B HARI KRIS HNA Digitally signed by I B Harikrishna Date: 2021.09.27 14:05:53 +05:30 | 27/09/2021 |

[ Checkform ]          [ Modify ]

37

# Ministry Of Corporate Affairs

 ANNEXURE D
730

Date : 08-11-2024 2:29:29 pm

**Company Information**

| | |
|---|---|
| **CIN** | U72200KA2021PTC152422 |
| **Company Name** | NEAR INTELLIGENCE PRIVATE LIMITED |
| **ROC Name** | ROC Bangalore |
| **Registration Number** | 152422 |
| **Date of Incorporation** | 29/09/2021 |
| **Email Id** | justin@near.com |
| **Registered Address** | #1, Kathalipalya Main Road, Koramangala 6th Block, Bangalore, Bangalore, Karnataka, India, 560095 |
| **Address at which the books of account are to be maintained** | - |
| **Listed in Stock Exchange(s) (Y/N)** | No |
| **Category of Company** | Company limited by shares |
| **Subcategory of the Company** | Non-government company |
| **Class of Company** | Private |
| **ACTIVE compliance** | - |
| **Authorised Capital (Rs)** | 15,00,000 |
| **Paid up Capital (Rs)** | 1,00,000 |
| **Date of last AGM** | 14/11/2022 |
| **Date of Balance Sheet** | 31/03/2022 |
| **Company Status** | Active |

| | |
|---|---|
| **Jurisdiction** | |
| **ROC (name and office)** | ROC Bangalore |
| **RD (name and Region)** | RD, South East Region |

Index of Charges

38

**731**



No Records Found

### Director/Signatory Details

| Sr. No | DIN/PAN | Name | Designation | Date of Appointment | Cessation Date | Signatory |
|--------|---------|------|-------------|---------------------|----------------|-----------|
| 1 | 01741174 | ANIL MATHEWS | Director | 02/12/2021 | - | Yes |
| 2 | 02838539 | JUSTIN JOSEPH | Director | 29/09/2021 | - | Yes |



39

**732**

# FORM NO. MGT-6

[Pursuant to section 89(6) of The Companies Act, 2013 and pursuant to rule 9(3) of The Companies (Management and Administration) Rules, 2014]



Return to the Registrar in respect of declaration under section 89 received by the company

**Form language**  ● English   ○ Hindi

**Note: Refer the instruction kit for filing the form.**

1.(a) *Corporate identity number (CIN) of company   U72200KA2021PTC152422   [Pre-Fill]

(b) Global location number (GLN) of company

2.(a) Name of the company   NEAR INTELLIGENCE PRIVATE LIMITED

(b) Address of the registered office of the company
#1, Kathalipalya Main Road, Koramangala
6th Block,
Bangalore
Bangalore
Karnataka
560095

I.  Particulars of shares in respect of which the person whose name is entered in the register of members of the company as a holder of shares does not hold the beneficial interest in such shares

1.(a) *Number of shares   1

(b) Distinctive number of shares   From 10000   To 10000

(c) *Kind of shares   Equity Shares

(d) *Face value of shares   (Rs.)   10.00

(e) *Paid-up value of shares (Rs.)   10.00

2.(a) *Name of the person in whose name the above shares have been registered as holder in the register of members

Justin Joseph

(b) *Address Line I   Flat No A 208, Vijetha Lapis Lazuli Apartment

Line II   1st Main Road, Brookfield, Kundalahalli, Bangalore

(c) *City   Bangalore

(d) *State   Karnataka-KA

(e) *Country   IN

(f) *Pin code   560037

(g) *Nationality   IN

(h) Father's name or Husband's name   ● Father's name   ○ Husband's name

Ouseph Palakkattuthottathil Mathew

(i) Name of the Authorized person

(j) *Date of entry of name in register   05/01/2022   (DD/MM/YYYY)

(k) *Date of declaration   05/01/2022   (DD/MM/YYYY)

(l) *Date of receipt of declaration by the company   05/01/2022   (DD/MM/YYYY)



40

**733**

3.(a) *Name of person who holds a beneficial interest in such shares

Near Intelligence Pte Ltd

(b) *Address    Line I    160 Robinson Road, # 20-30

Line II

(c) *City    Singapore

(d) *State    NA

(e) *Country    SI

(f) *Pin code    2030

(g) *Nationality    SI

(h) *Date of declaration    05/01/2022    (DD/MM/YYYY)

(i) *Date of receipt of declaration by the company    05/01/2022    (DD/MM/YYYY)

---

II.  Particulars of shares in respect of which the person whose name is entered in the register of members of the company as a holder of shares does not hold the beneficial interest in such shares

1.(a) Number of shares

(b) Distinctive number of shares    From    To

(c) Kind of shares

(d) Face value of shares    (Rs.)

(e) Paid-up value of shares  (Rs.)

2.(a) Name of the person in whose name the above shares have been registered as holder in the register of members

(b) Address  Line I

Line II

(c) City

(d) State

(e) Country

(f) Pin code

(g) Nationality

(h) Father's name or Husband's name    ◯ Father's name    ◯ Husband's name

[                                                                    ]

(i) Name of the Authorized person    [                                        ]

(j) Date of entry of name in register    [                    ] (DD/MM/YYYY)

(k) Date of declaration    [                    ] (DD/MM/YYYY)

(l) Date of receipt of declaration by the company    [                    ] (DD/MM/YYYY)

3(a) Name of person who holds a beneficial interest in such shares

[                                                                    ]

(b) Address  Line I    [                                                    ]

          Line II    [                                                    ]

(c) City    [                                        ]

(d) State    [                                        ]

(e) Country    [                        ]

(f) Pin code    [                        ]

(g) Nationality    [                        ]

(h) Date of declaration    [                    ] (DD/MM/YYYY)

(i) Date of receipt of declaration by the company    [                    ] (DD/MM/YYYY)

III.    Particulars of shares in respect of which the person whose name is entered in the register of members of the company as a holder of shares does not hold the beneficial interest in such shares

1.(a) Number of shares    [                    ]

(b) Distinctive number of shares  From [                    ]    To [                    ]

(c) Kind of shares    [                                        ]

(d) Face value of shares    (Rs.) [                    ]

(e) Paid-up value of shares    (Rs.) [                    ]

2.(a)  Name of the person in whose name the above shares have been registered as holder in the register of members

[                                                                    ]

(b)  Address    Line I    [                                                ]

          Line II    [                                                ]

(c) City    [                                        ]

(d) State    [                                        ]

(e) Country    [                        ]

Page 3 of 8

42

**735**

(f) Pin code

(g) Nationality

(h) Father's name or Husband's name  ◯  Father's name     ◯  Husband's name

(i)  Name of the Authorized person

(j) Date of entry of name in register                (DD/MM/YYYY)

(k) Date of declaration                (DD/MM/YYYY)

(l) Date of receipt of declaration by the company                (DD/MM/YYYY)

3(a) Name of person who holds a beneficial interest in such shares

(b) Address     Line I

          Line II

(c) City

(d) State

(e) Country

(f) Pin code

(g) Nationality

(h) Date of declaration                (DD/MM/YYYY)

(i) Date of receipt of declaration by the company                (DD/MM/YYYY)

---

IV. Particulars of shares in respect of which the person whose name is entered in the register of members of the company as a holder of shares does not hold the beneficial interest in such shares

1(a). Number of shares

(b). Distinctive number of shares        From                    To

(c). Kind of shares

(d). Face value of shares        (Rs.)

(e). Paid-up value of shares        (Rs.)

2(a) Name of the person in whose name the above shares have been registered as holder in the register of members

(b) Address    Line I

             Line II

(c) City

(d) State

(e) Country

(f) Pin code

(g) Nationality

(h) Father's name or Husband's name      ◯ Father's name      ◯ Husband's name

(i) Name of the Authorized person

(j) Date of entry of name in register      (DD/MM/YYYY)

(k) Date of declaration      (DD/MM/YYYY)

(l) Date of receipt of declaration by the company      (DD/MM/YYYY)

3(a) Name of person who holds a beneficial interest in such shares

(b) Address    Line I

             Line II

(c) City

(d) State

(e) Country

(f) Pin code

(g) Nationality

(h) Date of declaration      (DD/MM/YYYY)

(i) Date of receipt of declaration by the company      (DD/MM/YYYY)

V.  Particulars of shares in respect of which the person whose name is entered in the register of members of the company as a holder of shares does not hold the beneficial interest in such shares

1(a) Number of shares

(b) Distinctive number of shares      From              To

(c) Kind of shares

(d) Face value of shares      (Rs.)

(e) Paid-up value of shares  (Rs.)

44

**737**

2.(a) Name of the person in whose name the above shares have been registered as holder in the register of members

(b). Address    Line I

Line II

(c) City

(d) State

(e) Country

(f) Pin code

(g) Nationality

(h) Father's name or Husband's name    ◯ Father's name    ◯ Husband's name

(i) Name of the Authorized person

(j) Date of entry of name in register            (DD/MM/YYYY)

(k) Date of declaration            (DD/MM/YYYY)

(l) Date of receipt of declaration by the company            (DD/MM/YYYY)

3.(a) Name of person who holds a beneficial interest in such shares

(b) Address    Line I

Line II

(c) City

(d) State

(e) Country

(f) Pin code

(g) Nationality

(h) Date of declaration            (DD/MM/YYYY)

(i) Date of receipt of declaration by the company            (DD/MM/YYYY)

VI. Particulars of shares in respect of which the person whose name is entered in the register of members of the company as a holder of shares does not hold the beneficial interest in such shares

1(a) Number of shares

(b) Distinctive number of shares    From            To

(c) Kind of shares

(d) Face value of shares    (Rs.)

(e) Paid-up value of shares    (Rs.)

2.(a) Name of the person in whose name the above shares have been registered as holder in the register of members

[_____]

(b). Address    Line I    [_____]

Line II    [_____]

(c) City    [_____]

(d) State    [_____]

(e) Country    [_____]

(f)  Pin code    [_____]

(g) Nationality    [_____]

(h)  Father's name or Husband's name    ◯ Father's name    ◯ Husband's name

[_____]

(i)  Name of the Authorized person    [_____]

(j) Date of entry of name in register    [_____]  (DD/MM/YYYY)

(k) Date of declaration    [_____]  (DD/MM/YYYY)

(l) Date of receipt of declaration by the company    [_____]  (DD/MM/YYYY)

3.(a) Name of person who holds a beneficial interest in such shares

[_____]

(b) Address    Line I    [_____]

Line II    [_____]

(c) City    [_____]

(d) State    [_____]

(e) Country    [_____]

(f)  Pin code    [_____]

(g) Nationality    [_____]

(h) Date of declaration    [_____]  (DD/MM/YYYY)

(i) Date of receipt of declaration by the company    [_____]  (DD/MM/YYYY)


**Attachments**

1.*Declaration by person referred to in Section 89(1)    [ Attach ]

2.* Declaration by person referred to in Section 89(2) or 89(3)    [ Attach ]


3. Optional attachment(s) - if any    [ Attach ]

List of attachments

| |
|---|
| MGT_4.pdf |
| MGT - 5.pdf |

[ Remove attachment ]

**Declaration**

To the best of my knowledge and belief, the information given in this form and its attachments is correct and complete

I have been authorised by the board of directors' resolution dated * `05/01/2022` (DD/MM/YYYY) to sign and submit this form

*To be digitally signed by

| ANIL MATHE WS |
|---|

*Designation    `Director`

*Director identification number of the director; or DIN or PAN of the manager or CEO or CFO; or Membership number of the Company secretary

`01741174`

**Note: Attention is also drawn to provisions of Section 448 and 449 which provide for punishment for false statement and punishment for false evidence respectively**

Entrenchment of articles

[ Modify ]    [ Check Form ]    [ Prescrutiny ]    [ Submit ]

This eForm has been taken on file maintained by the Registrar of Companies through electronic mode and on the basis of statement of correctness given by the company

ANNEXURE F **740**



47

| **FORM NO. MGT-7**<br>[Pursuant to sub-Section(1) of section 92 of the Companies Act, 2013 and sub-rule (1) of rule 11of the Companies (Management and Administration) Rules, 2014] | | **Annual Return**<br>(other than OPCs and Small Companies) |
| --- | --- | --- |

सत्यमेव जयते

**Form language**   ◉ English   ○ Hindi

**Refer the instruction kit for filing the form.**

## I. REGISTRATION AND OTHER DETAILS

(i) * Corporate Identification Number (CIN) of the company

U72200KA2021PTC152422    `Pre-fill`

Global Location Number (GLN) of the company

* Permanent Account Number (PAN) of the company

AAHCN8319D

(ii) (a) Name of the company

NEAR INTELLIGENCE PRIVATE LI

(b) Registered office address

#1, Kathalipalya Main Road, Koramangala
6th Block,
Bangalore
Bangalore
Karnataka
560095

(c) *e-mail ID of the company

justin@near.com

(d) *Telephone number with STD code

+919919916510399

(e) Website

(iii) Date of Incorporation

29/09/2021

(iv)

| Type of the Company | Category of the Company | Sub-category of the Company |
| --- | --- | --- |
| Private Company | Company limited by shares | Indian Non-Government company |

(v) Whether company is having share capital          ◉ Yes     ○ No

(vi) *Whether shares listed on recognized Stock Exchange(s)     ○ Yes     ◉ No



**741**

(vii) *Financial year From date  29/09/2021  (DD/MM/YYYY)  To date  31/03/2022  (DD/MM/YYYY)

(viii) *Whether Annual general meeting (AGM) held  ◉ Yes  ○ No

    (a) If yes, date of AGM  14/11/2022

    (b) Due date of AGM  31/12/2022

    (c) Whether any extension for AGM granted  ○ Yes  ◉ No

## II. PRINCIPAL BUSINESS ACTIVITIES OF THE COMPANY

*Number of business activities  1

| S.No | Main Activity group code | Description of Main Activity group | Business Activity Code | Description of Business Activity | % of turnover of the company |
|------|------|------|------|------|------|
| 1 | N | Support service to Organizations | N7 | Other support services to organizations | 100 |

## III. PARTICULARS OF HOLDING, SUBSIDIARY AND ASSOCIATE COMPANIES (INCLUDING JOINT VENTURES)

*No. of Companies for which information is to  1    [Pre-fill All]

| S.No | Name of the company | CIN / FCRN | Holding/ Subsidiary/Associate/ Joint Venture | % of shares held |
|------|------|------|------|------|
| 1 | Near Intelligence Pte Ltd | | Holding | 100 |

## IV. SHARE CAPITAL, DEBENTURES AND OTHER SECURITIES OF THE COMPANY

(i) *SHARE CAPITAL

  (a) Equity share capital

| Particulars | Authorised capital | Issued capital | Subscribed capital | Paid up capital |
|------|------|------|------|------|
| Total number of equity shares | 150,000 | 10,000 | 10,000 | 10,000 |
| Total amount of equity shares (in Rupees) | 1,500,000 | 100,000 | 100,000 | 100,000 |

Number of classes  1

| Class of Shares / Equity | Authorised capital | Issued capital | Subscribed capital | Paid up capital |
|------|------|------|------|------|
| Number of equity shares | 150,000 | 10,000 | 10,000 | 10,000 |

**742**

| | | | | |
|---|---|---|---|---|
| Nominal value per share (in rupees) | 10 | 10 | 10 | 10 |
| Total amount of equity shares (in rupees) | 1,500,000 | 100,000 | 100,000 | 100,000 |

**(b) Preference share capital**

| Particulars | Authorised capital | Issued capital | Subscribed capital | Paid-up capital |
|---|---|---|---|---|
| Total number of preference shares | 0 | 0 | 0 | 0 |
| Total amount of preference shares (in rupees) | 0 | 0 | 0 | 0 |

Number of classes      | 0 |

| Class of shares | Authorised capital | Issued capital | Subscribed capital | Paid up capital |
|---|---|---|---|---|
| Number of preference shares | | | | |
| Nominal value per share (in rupees) | | | | |
| Total amount of preference shares (in rupees) | | | | |

**(c) Unclassified share capital**

| Particulars | Authorised Capital |
|---|---|
| Total amount of unclassified shares | 0 |

**(d) Break-up of paid-up share capital**

| Class of shares | Number of shares | | | Total nominal amount | Total Paid-up amount | Total premium |
|---|---|---|---|---|---|---|
| **Equity shares** | Physical | DEMAT | Total | | | |
| **At the beginning of the year** | 10,000 | 0 | 10000 | 100,000 | 100,000 | |
| **Increase during the year** | 0 | 0 | 0 | 0 | 0 | 0 |
| i. Pubic Issues | 0 | 0 | 0 | 0 | 0 | 0 |
| ii. Rights issue | 0 | 0 | 0 | 0 | 0 | 0 |
| iii. Bonus issue | 0 | 0 | 0 | 0 | 0 | 0 |
| iv. Private Placement/ Preferential allotment | 0 | 0 | 0 | 0 | 0 | 0 |
| v. ESOPs | 0 | 0 | 0 | 0 | 0 | 0 |
| vi. Sweat equity shares allotted | 0 | 0 | 0 | 0 | 0 | 0 |
| vii. Conversion of Preference share | 0 | 0 | 0 | 0 | 0 | 0 |



**743**

| | | | | | | |
|---|---|---|---|---|---|---|
| viii. Conversion of Debentures | 0 | 50 0 | 0 | 0 | 0 | 0 |
| ix. GDRs/ADRs | 0 | 0 | 0 | 0 | 0 | 0 |
| x. Others, specify | | | | | | |
| Decrease during the year | 0 | 0 | 0 | 0 | 0 | 0 |
| i. Buy-back of shares | 0 | 0 | 0 | 0 | 0 | 0 |
| ii. Shares forfeited | 0 | 0 | 0 | 0 | 0 | 0 |
| iii. Reduction of share capital | 0 | 0 | 0 | 0 | 0 | 0 |
| iv. Others, specify | | | | | | |
| At the end of the year | 10,000 | 0 | 10000 | 100,000 | 100,000 | |

**Preference shares**

| | | | | | | |
|---|---|---|---|---|---|---|
| At the beginning of the year | 0 | 0 | 0 | 0 | 0 | |
| Increase during the year | 0 | 0 | 0 | 0 | 0 | 0 |
| i. Issues of shares | 0 | 0 | 0 | 0 | 0 | 0 |
| ii. Re-issue of forfeited shares | 0 | 0 | 0 | 0 | 0 | 0 |
| iii. Others, specify | | | | | | |
| Decrease during the year | 0 | 0 | 0 | 0 | 0 | 0 |
| i. Redemption of shares | 0 | 0 | 0 | 0 | 0 | 0 |
| ii. Shares forfeited | 0 | 0 | 0 | 0 | 0 | 0 |
| iii. Reduction of share capital | 0 | 0 | 0 | 0 | 0 | 0 |
| iv. Others, specify | | | | | | |
| At the end of the year | 0 | 0 | 0 | 0 | 0 | |

ISIN of the equity shares of the company

**(ii)** Details of stock split/consolidation during the year (for each class of shar| 0



**744**

| Class of shares | | 51 | (ii) | (iii) |
|---|---|---|---|---|
| Before split / Consolidation | Number of shares | | | |
| | Face value per shar | | | |
| After split / Consolidation | Number of shares | | | |
| | Face value per shar | | | |

**(iii) Details of shares/Debentures Transfers since closure date of last financial year (or in the case of the first return at any time since the incorporation of the company) ***

☐ Nil

[Details being provided in a CD/Digital Media]        ○ Yes    ⦿ No    ○ Not Applicable

Separate sheet attached for details of transfers        ⦿ Yes    ○ No

Note: In case list of transfer exceeds 10, option for submission as a separate sheet attachment or submission in a CD/Digital Media may be shown.

| Date of the previous annual general meeting | |
|---|---|

| Date of registration of transfer (Date Month Year) | |
|---|---|

| Type of transfer | | 1 - Equity, 2- Preference Shares,3 - Debentures, 4 - Stock |
|---|---|---|

| Number of Shares/ Debentures/ Units Transferred | | Amount per Share/ Debenture/Unit (in Rs.) | |
|---|---|---|---|

| Ledger Folio of Transferor | |
|---|---|

| Transferor's Name | | | |
|---|---|---|---|
| | Surname | middle name | first name |

| Ledger Folio of Transferee | |
|---|---|



**745**

52

| Transferee's Name | | | |
|---|---|---|---|
| | | | |
| | Surname | middle name | first name |

| Date of registration of transfer (Date Month Year) | |
|---|---|
| | |

| Type of transfer | | 1 - Equity, 2- Preference Shares,3 - Debentures, 4 - Stock |
|---|---|---|

| Number of Shares/ Debentures/ Units Transferred | | Amount per Share/ Debenture/Unit (in Rs.) | |
|---|---|---|---|

| Ledger Folio of Transferor | |
|---|---|

| Transferor's Name | | | |
|---|---|---|---|
| | | | |
| | Surname | middle name | first name |

| Ledger Folio of Transferee | |
|---|---|

| Transferee's Name | | | |
|---|---|---|---|
| | | | |
| | Surname | middle name | first name |

**(iv) *Debentures (Outstanding as at the end of financial year)**

| Particulars | Number of units | Nominal value per unit | Total value |
|---|---|---|---|
| Non-convertible debentures | 0 | 0 | 0 |
| Partly convertible debentures | 0 | 0 | 0 |
| Fully convertible debentures | 0 | 0 | 0 |
| Total | | | 0 |

**Details of debentures**



**746**

| Class of debentures | Outstanding as at the beginning of the year | Increase during the year | Decrease during the year | Outstanding as at the end of the year |
|---|---|---|---|---|
| Non-convertible debentures | 0 | 0 | 0 | 0 |
| Partly convertible debentures | 0 | 0 | 0 | 0 |
| Fully convertible debentures | 0 | 0 | 0 | 0 |

(v)  Securities (other than shares and debentures)　　0

| Type of Securities | Number of Securities | Nominal Value of each Unit | Total Nominal Value | Paid up Value of each Unit | Total Paid up Value |
|---|---|---|---|---|---|
|  |  |  |  |  |  |
|  |  |  |  |  |  |
| Total |  |  |  |  |  |

## V. *Turnover and net worth of the company (as defined in the Companies Act, 2013)

**(i) Turnover**　　198,119,200

**(ii) Net worth of the Company**　　19,509,900

### VI. (a) *SHARE HOLDING PATTERN - Promoters

| S. No. | Category | Equity | | Preference | |
|---|---|---|---|---|---|
|  |  | Number of shares | Percentage | Number of shares | Percentage |
| 1. | Individual/Hindu Undivided Family |  |  |  |  |
|  | (i) Indian | 1 | 0.01 | 0 |  |
|  | (ii) Non-resident Indian (NRI) | 0 | 0 | 0 |  |
|  | (iii) Foreign national (other than NRI) | 0 | 0 | 0 |  |
| 2. | Government |  |  |  |  |
|  | (i) Central Government | 0 | 0 | 0 |  |
|  | (ii) State Government | 0 | 0 | 0 |  |
|  | (iii) Government companies | 0 | 0 | 0 |  |
| 3. | Insurance companies | 0 | 0 | 0 |  |
| 4. | Banks | 0 | 0 | 0 |  |
| 5. | Financial institutions | 0 | 0 | 0 |  |



**747**

| | | | | | |
|---|---|---|---|---|---|
| 6. | Foreign institutional investors | 0 | 0 | 0 | |
| 7. | Mutual funds | 0 | 0 | 0 | |
| 8. | Venture capital | 0 | 0 | 0 | |
| 9. | Body corporate (not mentioned above) | 9,999 | 99.99 | 0 | |
| 10. | Others | 0 | 0 | 0 | |
| | **Total** | 10,000 | 100 | 0 | 0 |

**Total number of shareholders (promoters)**   2

## (b) *SHARE HOLDING PATTERN -   Public/Other than promoters

| S. No. | Category | Equity | | Preference | |
|---|---|---|---|---|---|
| | | Number of shares | Percentage | Number of shares | Percentage |
| 1. | Individual/Hindu Undivided Family | | | | |
| | (i) Indian | 0 | 0 | 0 | |
| | (ii) Non-resident Indian (NRI) | 0 | 0 | 0 | |
| | (iii) Foreign national (other than NRI) | 0 | 0 | 0 | |
| 2. | Government | | | | |
| | (i) Central Government | 0 | 0 | 0 | |
| | (ii) State Government | 0 | 0 | 0 | |
| | (iii) Government companies | 0 | 0 | 0 | |
| 3. | Insurance companies | 0 | 0 | 0 | |
| 4. | Banks | 0 | 0 | 0 | |
| 5. | Financial institutions | 0 | 0 | 0 | |
| 6. | Foreign institutional investors | 0 | 0 | 0 | |
| 7. | Mutual funds | 0 | 0 | 0 | |
| 8. | Venture capital | 0 | 0 | 0 | |
| 9. | Body corporate (not mentioned above) | 0 | 0 | 0 | |
| 10. | Others | 0 | 0 | 0 | |



**748**

| | | Total | 55 | 0 | 0 | 0 |
|---|---|---|---|---|---|---|

Total number of shareholders (other than promo | 0 |

Total number of shareholders (Promoters+Public
Other than promoters) | 2 |

## VII. *NUMBER OF PROMOTERS, MEMBERS, DEBENTURE HOLDERS
(Details, Promoters, Members (other than promoters), Debenture holders)

| Details | At the beginning of the y | At the end of the year |
|---|---|---|
| Promoters | 2 | 2 |
| Members (other than promoters) | 0 | 0 |
| Debenture holders | 0 | 0 |

## VIII. DETAILS OF DIRECTORS AND KEY MANAGERIAL PERSONNEL

### (A) *Composition of Board of Directors

| Category | Number of directors at the beginning of the year | | Number of directors at the end of the year | | Percentage of shares held by directors as at the end of y | |
|---|---|---|---|---|---|---|
| | Executive | Non-executiv | Executive | Non-executiv | Executive | Non-executiv |
| A. Promoter | 1 | 1 | 1 | 1 | 0 | 0 |
| B. Non-Promoter | 0 | 0 | 0 | 0 | 0 | 0 |
| (i) Non-Independent | 0 | 0 | 0 | 0 | 0 | 0 |
| (ii) Independent | 0 | 0 | 0 | 0 | 0 | 0 |
| C. Nominee Directors representing | 0 | 0 | 0 | 0 | 0 | 0 |
| (i) Banks & FIs | 0 | 0 | 0 | 0 | 0 | 0 |
| (ii) Investing institutions | 0 | 0 | 0 | 0 | 0 | 0 |
| (iii) Government | 0 | 0 | 0 | 0 | 0 | 0 |
| (iv) Small share holders | 0 | 0 | 0 | 0 | 0 | 0 |
| (v) Others | 0 | 0 | 0 | 0 | 0 | 0 |
| Total | 1 | 1 | 1 | 1 | 0 | 0 |

Number of Directors and Key managerial personnel (who is not director) as on the financial ye | 2 |

**(B) (i) *Details of directors and Key managerial personn56 as on the closure of financial year**

| Name | DIN/PAN | Designation | Number of equity share(s) held | Date of cessation (after closure of financial year : If any) |
|------|---------|-------------|-------------------------------|----------------------------------------------------------|
| ANIL MATHEWS | 01741174 | Additional director | 0 | |
| JUSTIN JOSEPH | 02838539 | Director | 1 | |

**(ii) Particulars of change in director(s) and Key managerial personnel during the year**                2

| Name | DIN/PAN | Designation at the beginning / during the financial year | Date of appointment/ change in designation/ cessation | Nature of change (Appointment/ Change in designation/ Cessation) |
|------|---------|----------------------------------------------------------|-------------------------------------------------------|------------------------------------------------------------------|
| Vinod Desai | 09338642 | Director | 02/12/2021 | Cessation |
| ANIL MATHEWS | 01741174 | Additional director | 02/12/2021 | Appointment |

## IX. MEETINGS OF MEMBERS/CLASS OF MEMBERS/BOARD/COMMITTEES OF THE BOARD OF DIRECTORS

**A.** MEMBERS/CLASS /REQUISITIONED/NCLT/COURT CONVENED MEETINGS

Number of meetings held      2

| Type of meeting | Date of meeting | Total Number of Members entitled to attend meeting | Attendance | |
|-----------------|-----------------|---------------------------------------------------|------------|---|
| | | | Number of members attended | % of total shareholding |
| EGM | 20/10/2021 | 2 | 2 | 100 |
| EGM | 21/01/2022 | 2 | 2 | 100 |

**B. BOARD MEETINGS**

*Number of meetings held      5

| S. No. | Date of meeting | Total Number of directors associated as on the date of meeting | Attendance | |
|--------|-----------------|----------------------------------------------------------------|------------|---|
| | | | Number of directors attended | % of attendance |
| 1 | 01/10/2021 | 2 | 2 | 100 |
| 2 | 12/10/2021 | 2 | 2 | 100 |
| 3 | 02/12/2021 | 2 | 2 | 100 |
| 4 | 05/01/2022 | 2 | 2 | 100 |
| 5 | 12/03/2022 | 2 | 2 | 100 |

**750**

## C. COMMITTEE MEETINGS

*57*

Number of meetings held: 0

| S. No. | Type of meeting | Date of meeting | Total Number of Members as on the date of the meeting | Attendance | |
|---|---|---|---|---|---|
| | | | | Number of members attended | % of attendance |
| 1 | | | | | |

## D. *ATTENDANCE OF DIRECTORS

| S. No. | Name of the director | Board Meetings | | | Committee Meetings | | | Whether attended AGM held on 14/11/2022 (Y/N/NA) |
|---|---|---|---|---|---|---|---|---|
| | | Number of Meetings which director was entitled to attend | Number of Meetings attended | % of attendance | Number of Meetings which director was entitled to attend | Number of Meetings attended | % of attendance | |
| 1 | ANIL MATHEW | 3 | 3 | 100 | 0 | 0 | 0 | Yes |
| 2 | JUSTIN JOSEF | 5 | 5 | 100 | 0 | 0 | 0 | Yes |

## X. *REMUNERATION OF DIRECTORS AND KEY MANAGERIAL PERSONNEL

☐ Nil

Number of Managing Director, Whole-time Directors and/or Manager whose remuneration details to be entered: 0

| S. No. | Name | Designation | Gross Salary | Commission | Stock Option/ Sweat equity | Others | Total Amount |
|---|---|---|---|---|---|---|---|
| 1 | | | | | | | 0 |
| | Total | | | | | | |

Number of CEO, CFO and Company secretary whose remuneration details to be entered: 0

| S. No. | Name | Designation | Gross Salary | Commission | Stock Option/ Sweat equity | Others | Total Amount |
|---|---|---|---|---|---|---|---|
| 1 | | | | | | | 0 |
| | Total | | | | | | |

Number of other directors whose remuneration details to be entered: 1

| S. No. | Name | Designation | Gross Salary | Commission | Stock Option/ Sweat equity | Others | Total Amount |
|---|---|---|---|---|---|---|---|
| 1 | Justin Joseph | Director | 5,591,000 | 0 | 0 | 0 | 5,591,000 |
| | Total | | 5,591,000 | 0 | 0 | 0 | 5,591,000 |



**751**

## XI. MATTERS RELATED TO CERTIFICATION OF COMPLIANCES AND DISCLOSURES

\* A. Whether the company has made compliances and disclosures in respect of applicable provisions of the Companies Act, 2013 during the year ⦿ Yes   ◯ No

B. If No, give reasons/observations

## XII. PENALTY AND PUNISHMENT - DETAILS THEREOF

(A) DETAILS OF PENALTIES / PUNISHMENT IMPOSED ON COMPANY/DIRECTORS /OFFICERS ☒ Nil

| Name of the company/ directors/ officers | Name of the court/ concerned Authority | Date of Order | Name of the Act and section under which penalised / punished | Details of penalty/ punishment | Details of appeal (if any) including present status |
|---|---|---|---|---|---|
|  |  |  |  |  |  |

(B) DETAILS OF COMPOUNDING OF OFFENCES ☒ Nil

| Name of the company/ directors/ officers | Name of the court/ concerned Authority | Date of Order | Name of the Act and section under which offence committed | Particulars of offence | Amount of compounding (in Rupees) |
|---|---|---|---|---|---|
|  |  |  |  |  |  |

### XIII. Whether complete list of shareholders, debenture holders has been enclosed as an attachment

⦿ Yes   ◯ No

### XIV. COMPLIANCE OF SUB-SECTION (2) OF SECTION 92, IN CASE OF LISTED COMPANIES

In case of a listed company or a company having paid up share capital of Ten Crore rupees or more or turnover of Fifty Crore rupees or more, details of company secretary in whole time practice certifying the annual return in Form MGT-8.

Name

Whether associate or fellow   ◯ Associate   ◯ Fellow

Certificate of practice number

**752**

I/We certify that:

59

(a) The return states the facts, as they stood on the date of the closure of the financial year aforesaid correctly and adequately.

(b) Unless otherwise expressly stated to the contrary elsewhere in this Return, the Company has complied with all the provisions of the Act during the financial year.

(c) The company has not, since the date of the closure of the last financial year with reference to which the last return was submitted or in the case of a first return since the date of the incorporation of the company, issued any invitation to the public to subscribe for any securities of the company.

(d) Where the annual return discloses the fact that the number of members, (except in case of a one person company), of the company exceeds two hundred, the excess consists wholly of persons who under second proviso to clause (ii) of sub-section (68) of section 2 of the Act are not to be included in reckoning the number of two hundred.

### Declaration

I am Authorised by the Board of Directors of the company vide resolution no. ..  `04`  dated  `28/10/2022`

(DD/MM/YYYY) to sign this form and declare that all the requirements of the Companies Act, 2013 and the rules made thereunder in respect of the subject matter of this form and matters incidental thereto have been complied with. I further declare that:

1.      Whatever is stated in this form and in the attachments thereto is true, correct and complete and no information material to the subject matter of this form has been suppressed or concealed and is as per the original records maintained by the company.

2. All the required attachments have been completely and legibly attached to this form.

**Note: Attention is also drawn to the provisions of Section 447, section 448 and 449 of the Companies Act, 2013 which provide for punishment for fraud, punishment for false statement and punishment for false evidence respectively.**

**To be digitally signed by**

Director    `JUSTIN JOSEPH` Digitally signed by JUSTIN JOSEPH Date: 2023.01.30 13:29:25 +05'30'

DIN of the director    `02838539`

**To be digitally signed by**    `INNA BHIMASENA HARIKRISHNA` Digitally signed by INNA BHIMASENA HARIKRISHNA Date: 2023.01.31 17:27:35 +05'30'

○ Company Secretary
◉ Company secretary in practice

Membership number    `5829`        Certificate of practice number    `5302`

#### Attachments

#### List of attachments

1. List of share holders, debenture holders      `Attach`

2. Approval letter for extension of AGM;      `Attach`

3. Copy of MGT-8;      `Attach`

4. Optional Attachment(s), if any      `Attach`

List of shareholders.pdf
Details of share trasfers.pdf
UDIN Details.pdf

`Remove attachment`

`Modify`    `Check Form`    `Prescrutiny`    `Submit`

**This eForm has been taken on file maintained by the Registrar of Companies through electronic mode and on the basis of statement of correctness given by the company**



**753**

60

Auto-approved By

DS GOVERNMENT OF INDIA 1



ANNEXURE G **754**

# FORM NO. AOC-4

[Pursuant to section 137 of the Companies Act, 2013 and
sub-rule (1) of Rule 12 of Companies (Accounts) Rules,
2014]



**Form for filing financial statement
and other documents with the
Registrar**

---

**Form Language**    ⦿ English    ◯ Hindi
**Refer the instruction kit for filing the form.**

Note-
-All fields marked in * are to be mandatorily filled.
-Figures appearing in the e-Form should be entered in Absolute Rupees only. Figures should not be rounded off in any
other unit like hundreds, thousands, lakhs, millions or crores.

Authorized capital of the company as on the date of filing    | 1,500,000 |

Number of members of the company as on the date of filing    | |

**SEGMENT- I: INFORMATION AND PARTICULARS IN RESPECT OF BALANCE SHEET**

**Part A**

**I. General information of the company**

1. (a) *Corporate identity number (CIN) of company    | U72200KA2021PTC152422 |    [ Pre-Fill ]

   (b) Global location number (GLN) of company    | |

2. (a) Name of the company    | NEAR INTELLIGENCE PRIVATE LIMITED |

   (b) Address of the registered
   office of the company    | #1, Kathalipalya Main Road, Koramangala
   6th Block,
   Bangalore
   Bangalore
   Karnataka |

   (c) *e-mail ID of the company    | justin@near.com |

3. * Financial year to which financial statements relates

   From    | 29/09/2021 |  (DD/MM/YYYY)    To    | 31/03/2022 |  (DD/MM/YYYY)

4. (a)* Date of Board of directors' meeting in which financial statements are approved    | 28/10/2022 |    (DD/MM/YYYY)

   (b) (i) *Nature of financial statements    | Adopted Financial statements |

   (iii) Whether provisional financial statements filed earlier  ◯ Yes  ⦿ No  ◯ Not applicable

   (iv) Whether adopted in adjourned AGM  ◯ Yes  ⦿ No  ◯ Not applicable

   (c) Details of director(s), manager, secretary, CEO, CFO of the company who have signed the financial statements

   Provide Director Identification number (DIN) in case of director, Managing Director and Income -tax permanent account number
   (Income-tax PAN) in case of manager, secretary, CEO, CFO.    [ Pre-fill All ]

**755**

| DIN or Income-tax PAN | Name | 62 Designation | Date of signing of financial statements |
|---|---|---|---|
| 01741174 | ANIL MATHEWS | Additional Director | 28/10/2022 |
| 02838539 | JUSTIN JOSEPH | Director | 28/10/2022 |
| | | | |
| | | | |
| | | | |

5. (a)*Date of Board of directors' meeting in which boards' report referred under section 134 was approved    28/10/2022   (DD/MM/YYYY)

(b) Details of director(s) who have signed the Boards' report    Pre-fill All

| DIN | Name | Designation | Date of signing of Boards' report |
|---|---|---|---|
| 01741174 | ANIL MATHEWS | Additional Director | 28/10/2022 |
| 02838539 | JUSTIN JOSEPH | Director | 28/10/2022 |
| | | | |

6. * Date of signing of reports on the financial statements by the auditors    28/10/2022   (DD/MM/YYYY)

7.
(a)* Whether annual general meeting (AGM) held    ⦿ Yes   ◯ No   ◯ Not applicable

(b) If yes, date of AGM    14/11/2022   (DD/MM/YYYY)

(c) *Due date of AGM    31/12/2022   (DD/MM/YYYY)

(d)* Whether any extension for financial year or AGM granted    ◯ Yes   ⦿ No

8.
(a)* Whether the company is a subsidiary company as defined under clause (87) of section 2    ⦿ Yes   ◯ No

(b) CIN of the holding company, if applicable                         Pre-Fill

(c) Name of the holding company    Near Intelligence Pte Ltd

(d) Provision pursuant to which the company has become a subsidiary    Section 2(87)(ii)

9. (a)* Whether the company has a subsidiary company as defined under clause (87) of section 2    ◯ Yes   ⦿ No

(b) If yes, then indicate number of subsidiary company(ies)                    Pre-fill All

| | CIN of subsidiary company | |
|---|---|---|
| | Name of the subsidiary company | |
| | Provisions pursuant to which the company has become a subsidiary | |

10. *Number of Auditors    1

**756**

63

| I. | *(a) | Income-tax PAN of auditor or auditor's firm | ADYFS0498P |
|---|---|---|---|
| | *(b) | Category of auditor | ◯ Individual    ◉ Auditor's firm |
| | *(c) | Membership number of auditor or auditor's firm's registration number | 003867S |
| | *(d) | SRN of Form ADT-1 | T85453744    Pre-Fill |
| | *(e) | Name of the auditor or auditor's firm | SINGHVI DEV & UNNI |
| | *(f) | Address of the auditor or auditor's firm<br>Line I | 29/4, Trade Centre, Race Course Road |
| | | Line II | |
| | | *City | Bengaluru |
| | | *State | Karnataka |
| | | Country | India |
| | | *Pin code | 560001 |
| | (g) | Details of the member signing for the above firm | |
| | | Name of the member | Manoj Nair |
| | | Membership number | 049426 |

11. (a) *Whether Schedule III of the Companies Act, 2013 is applicable    ◉ Yes    ◯ No

(b) *Type of Industry    Commercial & Industrial

**Note: In case the type of industry is other than Banking or Power or Insurance or NBFC, then select Commercial and Industrial (C&I).**

12. *Whether consolidated financial statements required or not    ◯ Yes    ◉ No

13. (a) *Whether company is maintaining books of account and other relevant books and papers in electronic form    ◉ Yes    ◯ No

(b) Complete Postal Address of the Place of maintenance of computer servers (Storing Accounting Data)

| *Line I | # 1, Kathalipalya Main Road, Koramangala 6th Block |
|---|---|
| Line II | |
| *City | Bangalore |
| *State/Union Territory | Karnataka-KA    *Pin code 560095 |
| *District | Bangalore |
| *ISO Country code | IN |
| Country | INDIA |
| *Phone (with STD/ISD code) | 080 - 45559555 |



**757**

(c) Particulars of the service provider (if any)    64

(i)Name of the service provider    SAP B1

(ii)Internet protocol address of service provider

(iii)Location of the service provider

(iv)Whether books of account and other books and papers are maintained on cloud    ◯ Yes  ⦿ No

Address as provided by the service provider

**I. Balance Sheet**    **Part-B**

| | Particulars | Figures as at the end of (Current reporting period) (in Rs.) | Figures as at the end of (Previous reporting period) (inRs.) |
|---|---|---|---|
| | | 31/03/2022    (DD/MM/YYYY) | (DD/MM/YYYY) |
| I. (1) | **EQUITY AND LIABILITIES** **Shareholder's Fund** (a) Share capital | 100,000.00 | 0.00 |
| | (b) Reserves and surplus | 19,409,900.00 | 0.00 |
| | (c) Money received against share warrants | 0.00 | 0.00 |
| (2) | **Share application money pending allotment** | 0.00 | 0.00 |
| (3) | **Non - current liabilities** | | |
| | (a) Long term borrowings | 0.00 | 0.00 |
| | (b) Deferred tax liabilities (net) | 0.00 | 0.00 |
| | (c) Other long term liabilities | 0.00 | 0.00 |
| | (d) Long term provisions | 0.00 | 0.00 |
| (4) | **Current liabilities** | | |
| | (a) Short term borrowings | 0.00 | 0.00 |
| | (b) Trade payables | 888,900.00 | 0.00 |
| | (c) Other current liabilities | 54,694,600.00 | 0.00 |
| | (d) Short term provisions | 20,777,900.00 | 0.00 |
| | Total | 95,871,300.00 | 0.00 |
| II. | **ASSETS** | | |
| (1) | **Non-current assets** | | |
| | (a) Fixed assets | | |
| | (i) Tangible assets | 30,080,800.00 | 0.00 |
| | (ii) Intangible assets | 0.00 | 0.00 |
| | (iii) Capital work-in-progress | 0.00 | 0.00 |
| | (iv) Intangible assets under development | 0.00 | 0.00 |
| | (b) Non-current Investments | 0.00 | 0.00 |
| | (c) Deferred tax assets (net) | 664,300.00 | 0.00 |
| | (d) Long term loans and advances | 0.00 | 0.00 |
| | (e) Other non-current assets | 20,053,500.00 | 0.00 |
| (2) | **Current assets** | | |
| | (a) Current Investment | 0.00 | 0.00 |
| | (b) Inventories | 0.00 | 0.00 |
| | (c) Trade receivables | 32,026,800.00 | 0.00 |
| | (d) Cash and cash equivalents | 4,720,300.00 | 0.00 |
| | (e) Short term loans and advances | 7,197,100.00 | 0.00 |
| | (f) Other current assets | 1,128,500.00 | 0.00 |
| | Total | 95,871,300.00 | 0.00 |



**758**

II. Detailed Balance sheet items (Amount in Rupees)          65

A. Details of long term borrowings (unsecured)

| Particulars | Current reporting period | Previous reporting period |
|---|---|---|
| Bonds/ debentures | 0.00 | 0.00 |
| Term Loans | | |
| -From banks | 0.00 | 0.00 |
| -From other parties | 0.00 | 0.00 |
| Deferred payment liabilities | 0.00 | 0.00 |
| Deposits | 0.00 | 0.00 |
| Loans and advances from related parties | 0.00 | 0.00 |
| Long term maturities of financial lease Obligations | 0.00 | 0.00 |
| Other loans & advances | 0.00 | 0.00 |
| Total long term borrowings (unsecured) | 0.00 | 0.00 |
| Out of above total, aggregate amount guaranteed by directors | 0.00 | 0.00 |

B. Details of short term borrowings (unsecured)

| Particulars | Current reporting period | Previous reporting period |
|---|---|---|
| Loans repayable on demand | | |
| -From banks | 0.00 | 0.00 |
| -From other parties | 0.00 | 0.00 |
| Loans and advances from related parties | 0.00 | 0.00 |
| Deposits | 0.00 | 0.00 |
| Other loans and advances | 0.00 | 0.00 |
| Total short term borrowings (unsecured) | 0.00 | 0.00 |
| Out of above total, aggregate amount guaranteed by directors | 0.00 | 0.00 |

C. Details of long term loans and advances (unsecured, considered good)

| Particulars | Currents reporting period | Previous reporting period |
|---|---|---|
| Capital advances | 0.00 | 0.00 |
| Security deposits | 0.00 | 0.00 |
| Loans and advances to other related parties | 0.00 | 0.00 |
| Other loans and advances | 0.00 | 0.00 |
| Total long term loan and advances | 0.00 | 0.00 |
| Less: Provision/ allowance for bad and doubtful loans and advances | | |
| -From related parties | 0.00 | 0.00 |
| -From others | 0.00 | 0.00 |
| Net long term loan and advances (unsecured, considered good) | 0.00 | 0.00 |
| Loans and advances due by directors/ other officers of the company | 0.00 | 0.00 |



**759**

**D. Details of long term loans and advances (doubtful)**    66

| Particulars | Currents reporting period | Previous reporting period |
|---|---|---|
| Capital advances | 0.00 | 0.00 |
| Security deposits | 0.00 | 0.00 |
| Loans and advances to other related parties | 0.00 | 0.00 |
| Other loans and advances | 0.00 | 0.00 |
| Total long term loan and advances | 0.00 | 0.00 |
| Less: Provision/ allowance for bad and doubtful loans and advances | | |
| -From related parties | 0.00 | 0.00 |
| -From others | 0.00 | 0.00 |
| Net long term loan and advances (doubtful) | 0.00 | 0.00 |
| Loans and advances due by directors/ other officers of the company | 0.00 | 0.00 |

**E. Details of trade receivables**

| Particulars | Current reporting period | | Previous reporting period | |
|---|---|---|---|---|
| | Exceeding six months | Within six months | Exceeding six months | Within six months |
| Secured, considered good | 0.00 | 0.00 | 0.00 | 0.00 |
| Unsecured, considered good | 0.00 | 32,026,800.00 | 0.00 | 0.00 |
| Doubtful | 0.00 | 0.00 | 0.00 | 0.00 |
| Total trade receivables | 0.00 | 32,026,800.00 | 0.00 | 0.00 |
| Less: Provision/ allowance for bad and doubtful debts | 0.00 | 0.00 | 0.00 | 0.00 |
| Net trade receivables | 0.00 | 32,026,800.00 | 0.00 | 0.00 |
| Debt due by directors/ others officers of the company | 0.00 | 0.00 | 0.00 | 0.00 |



III. *Financial parameters - Balance sheet items (Amount in Rupees) as on financial year end date

67

| 1 | Amount of issue allotted for contracts without payment received in cash during reporting periods | 0.00 | | |
|---|---|---|---|---|
| 2 | Share application money given | 0.00 | | |
| 3 | Share application money given during the reporting period | 0.00 | | |
| 4 | Share application money received during the reporting period | 0.00 | | |
| 5 | Share application money received and due for refund | 0.00 | | |
| 6 | Paid – up capital held by foreign company | 0.00 | 0.00 | % |
| 7 | Paid-up capital held by foreign holding company and/ or through its subsidiaries | 100,000.00 | 100.00 | % |
| 8 | Number of shares bought back during the reporting period | 0.00 | | |
| 9 | Deposits accepted or renewed during the reporting period | 0.00 | | |
| 10 | Deposits matured and claimed but not paid during the reporting period | 0.00 | | |
| 11 | Deposits matured and claimed but not paid | 0.00 | | |
| 12 | Deposits matured, but not claimed | 0.00 | | |
| 13 | Unclaimed matured debentures | 0.00 | | |
| 14 | Debentures claimed but not paid | 0.00 | | |
| 15 | Interest on deposits accrued and due but not paid | 0.00 | | |
| 16 | Unpaid dividend | 0.00 | | |
| 17 | Investment in subsidiary companies | 0.00 | | |
| 18 | Investment in government companies | 0.00 | | |
| 19 | Capital Reserves | 0.00 | | |
| 20 | Amount due for transfer to Investor Education and Protection Fund (IEPF) | 0.00 | | |
| 21 | Inter- corporate deposits | 0.00 | | |
| 22 | Gross value of transaction as per AS18 (If applicable) | 25,400,000.00 | | |
| 23 | Capital subsidies/ grants received from government authority(ies) | 0.00 | | |
| 24 | Calls unpaid by directors | 0.00 | | |
| 25 | Calls unpaid by others | 0.00 | | |
| 26 | Forfeited shares (amount originally paid-up) | 0.00 | | |
| 27 | Forfeited shares reissued | 0.00 | | |
| 28 | Borrowing from foreign institutional agencies | 0.00 | | |
| 29 | Borrowing from foreign companies | 0.00 | | |
| 30 | Inter-corporate borrowings - secured | 0.00 | | |
| 31 | Inter-corporate borrowings - unsecured | **0.00** | | |
| 32 | Commercial Paper | 0.00 | | |
| 33 | Conversion of warrants into equity shares during the reporting period | 0.00 | | |
| 34 | Conversion of warrants into preference shares during the reporting period | 0.00 | | |
| 35 | Conversion of warrants into debentures during the reporting period | 0.00 | | |
| 36 | Warrants issued during the reporting period (In foreign currency) | 0.00 | | |
| 37 | Warrants issued during the reporting period (In Rupees) | 0.00 | | |
| 38 | Default in payment of short term borrowings and interest thereon | 0.00 | | |
| 39 | Default in payment of long term borrowings and interest thereon | 0.00 | | |
| 40 | Whether any operating lease has been converted to financial lease or vice-versa | ○Yes ◉No | | |
| | Provide details of such conversion | | | |
| | | | | |



**761**

| 41 | Net worth of company | 68 | 19,509,900.00 |
|----|----------------------|-----|---------------|
| 42 | Number of shareholders to whom shares allotted under private placement during the reporting period | | 0 |
| 43 | Secured Loan | | 0.00 |
| 44 | Gross fixed assets (including intangible assets) | | 33,748,100.00 |
| 45 | Depreciation and amortization | | 3,667,300.00 |
| 46 | Miscellaneous expenditure to the extent not written off or adjusted | | 0.00 |
| 47 | Unhedged Foreign Exchange Exposure | | 0.00 |

**IV. Share capital raised during the reporting period (Amount in Rupees)**

| Particulars | Equity Shares | Preference Shares | Total |
|-------------|---------------|-------------------|-------|
| (a) Public issue | 0.00 | 0.00 | 0.00 |
| (b) Bonus issue | 0.00 | 0.00 | 0.00 |
| (c) Right issue | 0.00 | 0.00 | 0.00 |
| (d) Private placement arising out of conversion of debentures or preference shares | 0.00 | 0.00 | 0.00 |
| (e) Other private placement | 0.00 | 0.00 | 0.00 |
| (f) Preferential allotment arising out of conversion of debentures or preference shares | 0.00 | 0.00 | 0.00 |
| (g) Other preferential allotment | 0.00 | 0.00 | 0.00 |
| (h) Employee Stock Option Plan (ESOP) | 0.00 | 0.00 | 0.00 |
| (i) Others | 0.00 | 0.00 | 0.00 |
| (j) Total amount of share capital raised during the reporting period | 0.00 | 0.00 | 0.00 |

**VI. Details related to cost records and cost audit**

1. *Whether maintenance of cost records by the company has been mandated under Companies (Cost Records and Audit) Rules, 2014          ◯ Yes  ⦿ No

SEGMENT II:  INFORMATION AND PARTICULARS IN RESPECT OF PROFIT AND LOSS ACCOUNT

I. Statement Of Profit And Loss

| | Particulars | Figures for the period (Current reporting period) | | | Figures for the period (Previous reporting period) | | |
|---|---|---|---|---|---|---|---|
| | | From | 29/09/2021 | (DD/MM/YYYY) | From | | (DD/MM/YYYY) |
| | | To | 31/03/2022 | (DD/MM/YYYY) | To | | (DD/MM/YYYY) |
| (I) | **Revenue from operations** | | | | | | |
| | Domestic Turnover | | | | | | |
| | (i) Sales of goods manufactured | 0.00 | | | 0.00 | | |
| | (ii) Sales of goods traded | 0.00 | | | 0.00 | | |
| | (iii) Sales or supply of services | 0.00 | | | 0.00 | | |
| | Export turnover | | | | | | |
| | (i) Sales of goods manufactured | 0.00 | | | 0.00 | | |
| | (ii) Sales of goods traded | 0.00 | | | 0.00 | | |
| | (iii) Sales or supply of services | 198,119,200.00 | | | 0.00 | | |
| (II) | Other income | 1,129,000.00 | | | 0.00 | | |
| (III) | **Total Revenue (I+II)** | 199,248,200.00 | | | 0.00 | | |
| (IV) | **Expenses** | | | | | | |
| | Cost of material consumed | 0.00 | | | 0.00 | | |
| | Purchases of stock in trade | 0.00 | | | 0.00 | | |
| | Changes in inventories of | 0.00 | | | 0.00 | | |
| | -Finished goods | | | | | | |
| | -Work-in-progress | 0.00 | | | 0.00 | | |
| | -Stock in trade | 0.00 | | | 0.00 | | |
| | Employee benefit Expense | 136,095,700.00 | | | 0.00 | | |
| | Managerial remuneration | 5,591,000.00 | | | 0.00 | | |
| | Payment to Auditors | 400,000.00 | | | 0.00 | | |
| | Insurance expenses | 1,744,500.00 | | | 0.00 | | |
| | Power and fuel | 1,965,800.00 | | | 0.00 | | |
| | Finance cost | 144,400.00 | | | 0.00 | | |
| | Depreciation and Amortisation expense | 3,667,300.00 | | | 0.00 | | |
| | Other expenses | 22,668,900.00 | | | 0.00 | | |
| | **Total expenses** | 172,277,600.00 | | | 0.00 | | |
| (V) | Profit before exceptional and extraordinary items and tax (III-IV) | 26,970,600.00 | | | 0.00 | | |
| (VI) | Exceptional items | 0.00 | | | 0.00 | | |
| (VII) | Profit before extraordinary items and tax (V-VI) | 26,970,600.00 | | | 0.00 | | |
| (VIII) | Extraordinary items | 0.00 | | | 0.00 | | |
| (IX) | Profit before tax (VII-VIII) | 26,970,600.00 | | | 0.00 | | |
| (X) | **Tax Expense** | | | | | | |
| | (1) Current tax | 8,225,000.00 | | | 0.00 | | |
| | (2) Deferred tax | -664,300.00 | | | 0.00 | | |
| (XI) | **Profit (Loss) for the period from continuing  Operations (IX-X)** | 19,409,900.00 | | | 0.00 | | |
| (XII) | **Profit/(Loss) from discontinuing operations** | 0.00 | | | 0.00 | | |
| (XIII) | Tax expense of discontinuing operations | 0.00 | | | 0.00 | | |
| (XIV) | Profit /(Loss) from discontinuing operations (after tax) (XII-XIII) | 0.00 | | | 0.00 | | |
| (XV) | Profit/ (Loss) (XI+XIV) | 19,409,900.00 | | | 0.00 | | |



**763**

| (XVI) | Earnings per equity share before extraordinary items | 70 | |
|---|---|---|---|
| | (1) Basic | 3.85 | 0.00 |
| | (2) Diluted | 3.85 | 0.00 |
| (XVII) | Earnings per equity share after extraordinary items | | |
| | (1) Basic | 3.85 | 0.00 |
| | (2) Diluted | 3.85 | 0.00 |

## II. Detailed Profit and Loss items (Amount in Rupees)

### A. Details of earning in foreign exchange

| Particulars | Current reporting period | Previous reporting period |
|---|---|---|
| Export of goods calculated on FOB basis | 0.00 | 0.00 |
| Interest and dividend | 0.00 | 0.00 |
| Royalty | 0.00 | 0.00 |
| Know-how | 0.00 | 0.00 |
| Professional and consultation fees | 0.00 | 0.00 |
| Other income | 191,600,000.00 | 0.00 |
| Total Earning in Foreign Exchange | 191,600,000.00 | 0.00 |

### B. Details of expenditure in foreign exchange

| Particulars | Current reporting period | Previous reporting period |
|---|---|---|
| Import of goods calculated on CIF basis | | |
| (i) Raw material | 0.00 | 0.00 |
| (ii) Component and spare parts | 0.00 | 0.00 |
| (iii) Capital goods | 0.00 | 0.00 |
| Expenditure on account of | | |
| Royalty | 0.00 | 0.00 |
| Know-how | 0.00 | 0.00 |
| Professional and consultation fees | 0.00 | 0.00 |
| Interest | 0.00 | 0.00 |
| Other matters | 0.00 | 0.00 |
| Dividend paid | 0.00 | 0.00 |
| Total Expenditure in foreign exchange | 0.00 | 0.00 |

## III. *Financial parameters - Profit and loss account items (Amount in Rupees) during the reporting period

| 1 | Proposed Dividend | 0.00 | 0.00 | % |
|---|---|---|---|---|
| 2 | Earnings per share (in Rupees)    Basic | 3.85 | | |
| | Diluted | 3.85 | | |
| 3 | Income in foreign currency | 191,600,000.00 | | |
| 4 | Expenditure in foreign currency | 0.00 | | |
| 5 | Revenue subsidies or grants  received from government authority(ies) | 0.00 | | |
| 6 | Rent paid | 13,536,200.00 | | |
| 7 | Consumption of stores and spare parts | 0.00 | | |
| 8 | Gross value of transaction with related parties as per AS-18 (If applicable) | 203,710,200.00 | | |
| 9 | Bad debts of related parties as per AS-18 (If applicable) | 0.00 | | |

## IV. Details related to principal products or services of the company

Total number of product/ services category(ies)    | 1 |



**764**

71

| 1 | Product or service category code (ITC/ NPCS 4 digit code) | 9983 |
|---|---|---|

Description of the product or service category: OTHER PROFESSIONAL, TECHNICAL AND BUSINESS SER

*Turnover of the product or service category (in Rupees): 198,119,200.00

*Highest turnover contributing product or service code (ITC/ NPCS 8 digit code): 99831329

*Description of the product or service: Other IT support services n.e.c.

*Turnover of highest contributing product or service (in Rupees): 19,819,200.00

Note - Please refer to 'Indian Trade Classification' based on harmonized commodity description and coding system issues by the ministry of Commerce & Industry for Product Codes and National Product Classification for Services (NPCS) for Services codes issued by Ministry of Statistics & Program Implementation, Government of India.

## Segment III: Reporting of Corporate Social Responsibility (CSR)

1. (a) (i) *Whether CSR is applicable as per section 135    ◯ Yes ⦿ No

    (ii) Turnover (in Rs.)

    (iii) Net worth (in Rs.)

2. Average net profit of the company for last three financial years (as defined in explanation to sub-section (5) section 135 of the Act)                    (in Rupees)

3. Prescribed CSR Expenditure (two per cent. of the amount as in item 2 above)                    (in Rupees)

4. (a) Total amount spent on CSR for the financial year          0.00          (in Rupees)

    (b) Amount spent in local area                    (in Rupees)

    (c) Manner in which the amount spent during the financial year as detailed below:

    Number of CSR activities

| (1) S. No. | (2) CSR project or activity identified | (3) Sector in which the Project is covered | (4) Projects or programs - Specify the State /Union Territory where the Project/ Program was undertaken | (5) Projects or programs - Specify the district where projects or programs was undertaken | (6) Amount outlay (budget) project or programs wise (in Rs.) | (7) Amount spent on the projects or programs (in Rs.) | (8) Expenditure on Administrative overheads (in Rs.) | (9) Mode of Amount spent |
|---|---|---|---|---|---|---|---|---|
| 1 | | | | | | | | |
| 2 | | | | | | | | |
| 3 | | | | | | | | |
| | Total | | | | | | | |

5. Give details (name, address and email address) of implementing agency(ies)

7. Whether a responsibility statement of the CSR Committee on the implementation and monitoring of CSR Policy  is enclosed  to the Board's Report      ◯ Yes  ◯ No



72

## Segment IV: DISCLOSURE ABOUT RELATED PARTY TRANSACTIONS

Disclosure of particulars of contracts/arrangements entered into by the company with related parties referred to in sub-section (1) of section 188 of the Companies Act, 2013 including certain arm's length transactions under third proviso thereto

1. Number of contracts or arrangements or transactions not at arm's length basis

| Name(s) of the related party | Nature of relationship | Nature of contracts/ arrangements/ transactions |
|---|---|---|
|  |  |  |

| Duration of the contracts / arrangements/ transactions | Date of approval by the Board | Amount paid as advances, if any | Date on which the special resolution was passed in general meeting as required under first proviso to section 188 |
|---|---|---|---|
|  |  |  |  |

2. Number of material contracts or arrangement or transactions at arm's length basis     1

| Name(s) of the related party | Nature of relationship | Nature of contracts/ arrangements/ transactions |
|---|---|---|
| Near India Private Limited | Fellow Subsidiary and common Direct | Business Transfer by way of slump sale |

| Duration of the contracts / arrangements/ transactions | Date of approval by the Board | Amount paid as advances, if any |
|---|---|---|
| one time contract | 12/10/2021 | 25,400,000.00 |

### Segment V:  Auditor's Report

I. (a) In case of a government company, whether Comptroller and Auditor-General of India (CAG of India) has commented upon or supplemented the audit report under section 143 of the Companies Act, 2013   ○ Yes  ○ No

**III.  Details of remarks made by auditors and applicability of CARO**

1. *Whether auditors' report has been qualified or has any reservations or contains adverse remarks   ○Yes  ⦿No

3. *Whether Companies (Auditors' Report) Order (CARO) applicable   ⦿Yes  ○ No

4. Auditors' comment on the items specified under Companies (Auditors' Report) Order   (CARO)

**766**

| Particulars | Auditors comments on the report |
|---|---|
| Fixed assets | Favourable Remark |
| Inventories | Clause not applicable |
| Loans given by the company | Clause not applicable |
| Acceptance of Public Deposits | Clause not applicable |
| Maintenance of Cost records | Clause not applicable |
| Statutory dues | Favourable Remark |
| Term loans | Clause not applicable |
| Fraud noticed | Favourable Remark |
| Others | Favourable Remark |

### SEGMENT-VI- Miscellaneous

1. *Whether the Secretarial Audit is applicable       ○ Yes   ◉ No

2. *Whether detailed disclosures with respect to Directors' report under sub-section (3)       ◉ Yes   ○ No
   of section 134 is attached.

**Attachments**

1. *Copy of financial statements duly authenticated as per section 134(including Board's report, auditors' report and other documents)       [Attach]

7. Company CSR policy as per s sub-section (4) of section 135       [Attach]

8. Details of other entity(s)       [Attach]

9. Details of salient features and justification for entering into contracts/Arrangements/transactions with related parties as Sub-section (1) of section 188 - Form AOC-2       [Attach]

12. Directors' report as per sub-section (3) of section 134       [Attach]

13. Details of remaining CSR activities       [Attach]

14. Optional attachment(s)- if any       [Attach]

List of attachment
Board report.pdf
Annexure A to AOC 2.pdf
Financial Statements.pdf
ADDITIONAL INFORMATION.pdf

[Remove attachment]



**767**

### Declaration

74

I am authorized by the Board of Directors of the Company vide *resolution number  [04]  *dated [28/10/2022]

to sign this form and declare that all the requirements of Companies Act, 2013 and the rules made thereunder in respect of the subject matter of this form and matters incidental thereto have been compiled with. I further declare that:

1.     Whatever is stated in this form and in the attachments thereto is true, correct and complete and no information material to the subject matter of this form has been suppressed or concealed and is as per the original records maintained by the company.

2. All the required attachments have been completely and legibly attached to this form.

**\*To be digitally signed by**     [JUSTIN JOSEPH]

   **\*Designation**    [Director]

   **\*Director identification number of the director; or
PAN of the manager or CEO or CFO; or Membership
number of the secretary**     [02838539]

### Certificate by Practicing professional

I declare that I have been duly engaged for the purpose of certification of this form. It is hereby certified that I have gone through the provisions of the Companies Act, 2013 and Rules thereunder for the subject matter of this form and matters incidental thereto and I have verified the above particulars (including attachment(s)) from the original/certified records maintained by the Company/applicant which is subject matter of this form and found them to be true, correct and complete and no information material to this form has been suppressed. I further certify that:

1.    The said records have been properly prepared, signed by the required officers of the Company and maintained as per the relevant provisions of the Companies Act, 2013 and were found to be in order;
2.    All the required attachments have been completely and legibly attached to this form;
3.    It is understood that I shall be liable for action under Section 448 of the Companies Act, 2013 for wrong certification, if any found at any stage.

   ◯ Chartered Accountant (in whole time practice)     ◯ Cost Accountant (in whole time practice)

   ◉ Company Secretary (in whole time practice)

Whether fellow or associate    ◯ Associate   ◉ Fellow

Membership number     [5829]

Certificate of practice number     [5302]

**Note: Attention is drawn to provisions of Section 448 and 449 which provide for punishment for false statement /
certificate and punishment for false evidence respectively.**

| Modify | Check Form | Prescrutiny | Submit |

---

**For office use only:**

eForm Service request number (SRN)    [    ]     eForm filing date    [    ] (DD/MM/YYYY)

**Digital signature of the authorizing officer**

This e-Form is hereby registered    [  ]    [ Confirm submission ]

Date of signing    [    ]     (DD/MM/YYYY)

**OR**

**This eForm has been taken on file maintained by the Registrar of Companies through electronic mode and on the
basis of statement of correctness given by the company**



**ANNEXURE H**

## NOTICE

AGM Notice No. 01 / 2022-23

Notice is hereby given that the First Annual General Meeting of the Company will be held on Monday, the 14th day of November, 2022 at the Registered Office of the Company at # 1, Kathalipalya Main Road, Koramangala, 6th Block, Bangalore – 560095, Karnataka at 10.00 AM to transact the following business:

ORDINARY BUSINESS:

1. **Adoption of Financial Statements for the Financial Year ended 31st March, 2022:**

   To receive, consider and adopt the audited Balance Sheet, Board's Report, Auditor's Report, Profit & Loss Account and Cash flow statement for the period ended 31st March, 2022.

2. **To appoint M/s Singhvi Dev & Unni LLP, Chartered Accountant, as Statutory Auditor of the Company and fix their remuneration and to consider and if thought fit, to pass with or without modification(s), the following resolution as an Ordinary Resolution:**

   "**RESOLVED THAT** pursuant to the provisions of Sections 139, 142 and other applicable provisions, if any, of the Companies Act, 2013 read with the Companies (Audit and Auditors) Rules, 2014 (including any statutory modification(s) or re-enactment(s) thereof, the consent of the members be and is hereby accorded for the appointment of Mr. **Singhvi Dev & Unni LLP** Chartered Accountants, bearing Firm Registration Number: 003867S / S200358 as the Statutory Auditors of the Company for a term of 5 (five) consecutive years from the conclusion of this Annual General Meeting till the conclusion of Annual General Meeting to be held on 2027, at such remuneration as shall be fixed by the Board of Directors of the company".

SPECIAL BUSINESS

3. **To appoint Mr. Anil Mathews as a director of the company and pass the following resolution as an Ordinary resolution:**

   "**RESOLVED THAT** Mr. Anil Mathews who was appointed as an additional director on 02nd December 2021, is be hereby appointed as director of the Company".

By the order of the Board of Directors of
Near Intelligence Private Limited

Director
Name: Justin Joseph
DIN: 02838539

Place: Bengaluru
Date: 28-10-2022




near   ♀ Near Intelligence Pvt Ltd. #1, Kathalipalya Main Road, Koramangala 6th Block, Bengaluru 560095
☎ +91 80 4555 6555   ⊕ www.near.com   CIN: U72200KA2021PTC152422

Notes:

1. Explanatory statement to the special business mentioned in the notice is attached as Annexure-I.

2. Entry to the place of Meeting will be regulated by an Attendance Slip which is annexed hereto as Annexure II to the Notice. Member/Proxies Attending the meeting are kindly requested to complete the enclosed Attendance Slip and affix the signature at the place provided thereon and hand it over at the Entrance.

3. The documents related to matters set out in the Notice shall be open for Inspection at the Registered Office of the Company during business hours (09.00 AM to 06.00 PM) on working days up to and including the date of Annual General Meeting of the Company.

4. Route Map And Land Mark Details For The Venue Of Annual General Meeting Of The Company Are As Below

77

770

**Explanatory Statement**

(Pursuant to Section 102(1) of the Companies Act, 2013)

Item No.2

The members are informed that Mr. Anil Mathews was appointed as additional director on 02nd December 2021. The services of Mr. Anil Mathews as director are beneficial to the company and hence, it is proposed to appoint him as director not liable to retire by rotation.

None of the directors are interested in the above resolution.

By the order of the Board of Directors of
Near Intelligence India Private Limited

JUSTIN JOSEPH
Director
DIN: 02838539

Place: Bengaluru
Date: 28-10-2022



BOARD'S REPORT

To the Members,

Your Directors have the pleasure in submitting their First Annual Report on the business and operations of the Company together with the Audited Statements of Accounts for the period ended 31ˢᵗ March, 2022.

1. **FINANCIAL SUMMMARY**

   The summarised version of the financial data for the current year and the previous year are as follows:

| Particulars | As at the end of current reporting period [2022] [amount in hundreds] | For the period ended March 31, 2021 [in Rs.] |
|---|---|---|
| Total Revenue | 19,92,482 | The company was |
| Total Expenses | 17,22,776 | |
| Profit or Loss before Exceptional and Extraordinary items and Tax | 2,69,706 | Incorporated on 29-09-2021 |
| Less: Exceptional Items | - | |
| Less: Extraordinary Items | - | |
| Profit or Loss before Tax | 2,69,706 | |
| Less: Current Tax | 82,250 | |
| Current Tax relating to Previous years | | |
| Deferred Tax | (6,643) | |
| Profit or Loss After Tax | 1,94,099 | |
| Earnings Per Share | | |
| Basic | 3.85 | |

2. **STATE OF COMPANY'S AFFAIRS AND FUTURE OUTLOOK**

   The Company has achieved turnover of INR 199,248,200 and achieved a profit of INR 19,409,900 for the period ending 31.03.2022 and your directors are expecting that the Company will be able to do better business in the forthcoming years.

3. **MATERIAL CHANGES AND COMMITMENT IF ANY AFFECTING THE FINANCIAL POSITION OF THE COMPANY OCCURRED BETWEEN THE END OF THE FINANCIAL YEAR TO WHICH THIS FINANCIAL STATEMENTS RELATE AND THE DATE OF THE REPORT**

   During the year 2021-2022 in the economic interest of the company, the Company has acquired the business undertaking of M/s Near India Private Limited, Bangalore by way of Slump Sale for a purchase consideration of INR 2,54,00,000 [Rupees Two Crore Fifty-four Lakhs only] by entering to a Business Transfer Agreement dated 1ˢᵗ November



⚲ Near Intelligence Pvt Ltd, #1, Kathailpalye Main Road, Koramangala 6th Block, Bengaluru 560095
☎ +91 80 4555 9555   ⊕ www.near.com   CIN: U72200KA2021PTC152422

LOS ANGELES | NEW YORK | LONDON | PARIS | BANGALORE | SINGAPORE | TOKYO | SYDNEY

2021. The company has acquired the assets and liabilities of Near India with effect from 1st November, 2021 and commenced its commercial operations.

4.  DIVIDEND

With the view to conserve the resources of the Company, the directors are not recommending any dividend.

5.  TRANSFER TO RESERVES

The Company has not proposed to transfer any amount to reserves.

6.  CHANGES IN SHARE CAPITAL, IF ANY

During the year under review, the company has not undertaken following transactions:

| Increase in Share Capital | Buy Back of Securities | Sweat Equity | Bonus Shares | Employees Stock Option Plan | Allotment of Shares |
|---|---|---|---|---|---|
| Nil | Nil | Nil | Nil | Nil | Nil |

7.  CHANGE IN NATURE OF BUSINESS, IF ANY

There is no change in the nature of the business of the company.

8.  PARTICULARS OF LOANS, GUARANTEES OR INVESTMENTS MADE UNDER SECTION 186 OF THE COMPANIES ACT, 2013

There were no loans, guarantees or investments made by the Company under Section 186 of the Companies Act, 2013 during the financial year under review.

9.  PARTICULARS OF CONTRACTS OR ARRANGEMENTS MADE WITH RELATED PARTIES

The particulars of contracts entered into by the Company with related parties as defined under Section 188 of the Companies Act, 2013 are provided in form AOC-2 annexed (Annexure B) with this report.

10. WEB LINK OF ANNUAL RETURN, IF ANY.

The Company is having website i.e www.near.com and annual return of Company has been published on the MCA website.



### 11. STATUTORY AUDITORS

**M/s. Singhvi Dev & Unni LLP,** Chartered Accountants, bearing FRN 003867S / S200358, were appointed as Statutory Auditors vide Extra Ordinary General meeting held on 21st January, 2022 to hold office until the conclusion of the First Annual General Meeting. Hence, it was now proposed to re-appoint M/s. Singhvi Dev & Unni LLP Chartered Accountant bearing FRN 003867S / S200358 as Statutory Auditor of the Company in the forthcoming Annual General Meeting to hold office for a period of 5 years, (i.e.) from the conclusion of this Annual General Meeting till the conclusion of the Annual General Meeting to be held in the year 2027.

### 12. SECRETARIAL AUDIT REPORT

Secretarial Audit Report is not applicable to this Company.

### 13. EXPLANATION OR COMMENTS ON QUALIFICATIONS, RESERVATIONS OR ADVERSE REMARKS OR DISCLAIMERS MADE BY THE AUDITORS AND THE PRACTICING COMPANY SECRETARY IN THEIR REPORTS

There are no qualifications, reservations or adverse remarks made by the Auditors in their report.

### 14. DETAILS OF DIRECTORS & KMP(s)

Mr. Anil Mathews was appointed as Additional Director of the company on 02nd December, 2021 and his appointment is proposed to be regularized at the ensuing Annual General meeting, subject to the approval of the shareholders of the company.

Mr. Vinod Desai has tendered his resignation from directorship with effect from 02nd December, 2021.

None of the Directors are disqualified to act as Directors in the Company.

### 15. DIRECTORS RESPONSIBILITY STATEMENT

In accordance with the provisions of Section 134(5) of the Companies Act, 2013 the Board hereby submits its responsibility Statement:

a) in the preparation of the annual accounts, the applicable accounting standards had been followed along with proper explanation relating to material departures;

b) the directors had selected such accounting policies and applied them consistently and made judgments and estimates that are reasonable and prudent so as to give a true and fair view of the state of affairs of the company at the end of the financial year and of the profit of the company for that period;



c) the directors had taken proper and sufficient care for the maintenance of adequate accounting records in accordance with the provisions of this Act for safeguarding the assets of the company and for preventing and detecting fraud and other irregularities;

d) the directors had prepared the annual accounts on a going concern basis;

e) the directors had devised proper systems to ensure compliance with the provisions of all applicable laws and that such systems were adequate and operating effectively.

**16. NUMBER OF BOARD MEETINGS/COMMITTEE MEETINGS CONDUCTED DURING THE YEAR UNDER REVIEW**

The Board meets at regular intervals to discuss and decide on the Company and its business policies and strategies apart from other Board businesses. The Board met 5 [Five] times on the following dates during the year financial year under review.

| Sl. No. | Date of the Board Meeting | Number of Directors Attended the Meeting |
|---|---|---|
| 1 | 01-10-2021 | 2 |
| 2 | 12-10-2021 | 2 |
| 3. | 02.12.2021 | 2 |
| 4. | 05-01-2022 | 2 |
| 5. | 12-03-2022 | 2 |

**17. STATEMENT INDICATING THE MANNER IN WHICH FORMAL ANNUAL EVALUATION HAS BEEN MADE BY THE BOARD OF ITS OWN PERFORMANCE, ITS DIRECTORS, AND THAT OF ITS COMMITTEES**

Being a private limited Company, the disclosure with respect to formal annual evaluation by the board is not applicable to your Company.

**18. SUBSIDIARIES, JOINT VENTURES AND ASSOCIATE COMPANIES**

The Company does not have any Subsidiary, Joint venture or Associate Company.

**19. CONSERVATION OF ENERGY, TECHNOLOGY ABSORPTION, FOREIGN EXCHANGE EARNINGS AND OUTGO**

The details of energy, technology absorption, foreign exchange earnings and outgo are as under:

a)    Conservation of Energy : NA
b)    Technology Absorption : NA
c)    Foreign exchange earnings : 19.16 Crores
d)    Foreign exchange outgo: Nil



20. STATEMENT CONCERNING DEVELOPMENT AND IMPLEMENTATION OF RISK MANAGEMENT POLICY OF THE COMPANY

The Company does not have any Risk Management Policy as the elements of risk threatening the Company's existence are very minimal.

21. DETAILS OF POLICY DEVELOPED AND IMPLEMENTED BY THE COMPANY ON ITS CORPORATE SOCIAL RESPONSIBILITY INITIATIVES

The Company is not required to constitute a Corporate Social Responsibility Committee as it does not fall within purview of Section 135(1) of the Companies Act, 2013 and hence it is not required to formulate policy on corporate social responsibility.

22. PROVIDING VIGIL MECHANISM

Being a private limited Company, the disclosure with respect to provision for Vigil Mechanism is not applicable to your Company.

23. ADEQUACY OF INTERNAL FINANCIAL CONTROLS WITH REFERENCE TO FINANCIAL STATEMENTS

The Company has in place adequate internal financial controls with reference to Financial Statements, in the opinion of the Board of Directors.

Also, the Company has a proper system of internal controls to ensure that all assets are safeguarded and protected against loss from unauthorized use or disposition and that transactions are authorized, recorded and reported correctly.

During the period under review, such controls were tested and no reportable material weakness in the design or operation was observed.

24. DEPOSITS

The Company has neither accepted nor renewed any deposits during the year under review.

25. DISCLOSURE UNDER SEXUAL HARASSMENT OF WOMEN AT WORKPLACE (PREVENTION, PROHIBITION & REDRESSAL) ACT, 2013

The Company has a "Prevention of Sexual Harassment Committee (POSH)". Such committee is responsible for end-to-end management and disposal of any cases that may be reported to it. During the Financial Year, no such cases were reported.

26. DETAILS OF SIGNIFICANT AND MATERIAL ORDERS PASSED BY THE REGULATORS, COURTS AND TRIBUNALS

During the year under review there has been no such significant and material orders passed by the regulators or courts or tribunals impacting the going concern status and company's operations in future.

27. DETAILS OF APPLICATION MADE OR ANY PROCEEDING PENDING UNDER THE INSOLVENCY AND BANKRUPTCY CODE, 2016 (31 OF 2016) DURING THE YEAR ALONGWITH THEIR STATUS AS AT THE END OF THE FINANCIAL YEAR.

During the period, there was no application made and proceeding initiated / pending under the Insolvency and Bankruptcy Code, 2016, by any Financial and/or Operational Creditors against your Company. As on the date of this Report, there is no application or proceeding pending against your Company under the Insolvency and Bankruptcy Code, 2016.

28. DETAILS OF DIFFERENCE BETWEEN AMOUNT OF THE VALUATION DONE AT THE TIME OF ONE-TIME SETTLEMENT AND THE VALUATION DONE WHILE TAKING LOAN FROM THE BANKS OR FINANCIAL INSTITUTIONS ALONG WITH THE REASONS THEREOF

During the period, the Company has not made any settlement with its bankers from which it has accepted any term loan.

29. OTHER MATTERS

The following disclosures are not applicable to this company and hence no reporting is required: -

| Sl. No | Particulars | Section & Rules |
|---|---|---|
| 1. | Secretarial Audit Report | Section 204(1) of the Companies Act, 2013. |
| 2. | Declaration Of Independent Directors | Section 134(3)(d) read with Section 149(6) of the Companies Act, 2013. |
| 3. | Receipt Of Any Commission By MD / WTD From A Company Or For Receipt Of Commission / Remuneration From Its Holding Or Subsidiary | Section 197(14) of the Companies Act, 2013. |
| 4. | Managerial Remuneration | Rule 5(1) of the Companies (Appointment and Remuneration of Managerial Personnel) Rules, 2014. |
| 5. | Disclosure Of Composition Of Audit Committee | Section 177(8) read with Rule 6 of the Companies (Meetings of the Board and its Powers), Rules, 2014 |



| 6. | Nomination & Remuneration Committee Policy | Section 178(3) of the Companies Act, 2013 |
| 7. | Statement Indicating The Manner In Which Formal Annual Evaluation Has Been Made By The Board Of Its Own Performance, Its Directors, And That Of Its Committees | Section 134(p) read with Rule 8(4) of Companies (Accounts) Rules, 2014. |
| 8. | Management Discussion And Analysis Report | Regulation 34 of the Securities and Exchange Board of India (Listing Obligations and Disclosure Requirements) Regulations, 2015. |
| 9. | Corporate Governance | Clause 49 of the Listing Obligations and Disclosure Requirements. |
| 10. | Maintenance of Cost Records | Section 148(1) of the Companies Act, 2013 |
| 11. | Particulars of employees | The provisions relating to Section 197(12) read with Rule 5 of the Companies (Appointment and Remuneration of Managerial Personnel) Rules, 2014. |

28.   ACKNOWLEDGEMENTS

Your Directors place on record their sincere thanks to bankers, business associates, consultants, and various Government Authorities for their continued support extended to your Company's activities during the year under review. Your Directors also acknowledge gratefully the shareholders for their support and confidence reposed on your Company.



*For* and on behalf of Board of Directors
Near Intelligence Private Limited

Name: Justin Joseph
DIN: 02838539
Address:  A  208,  Vijetha  Lapis  Lazuli
Apartment,  1st  Main  Road,  Brookfield,
Kundalahalli, Bangalore-560037

Name: Anil Mathews
DIN: 01741174
Address: No 102 , R J Manor
11\A 7th Main First Block,
Koramangala, Bangalore-560034

Place: Bengaluru
Date:  28-10-2022

ANNEXURE A

FORM NO. AOC -2

(Pursuant to clause (h) of sub-section (3) of section 134 of the Act and Rule 8(2) of the Companies (Accounts) Rules, 2014.

Form for Disclosure of particulars of contracts/arrangements entered into by the company with related parties referred to in sub section (1) of section 188 of the Companies Act, 2013 including certain arm's length transaction under third proviso thereto.

1. **Details of contracts or arrangements or transactions not at Arm's length basis:** Not Applicable

2. **Details of contracts or arrangements or transactions at Arm's length basis.**

| Sl No | Particulars | Particular |
|-------|-------------|-----------|
| a) | Name (s) of the related party & nature of relationship | Near India Private Limited [Fellow subsidiary and has common Directors] |
| b) | Nature of contracts/ arrangements/ transaction | Business Transfer Agreement |
| c) | Duration of the contracts/ arrangements/ transaction | One time Agreement |
| d) | Salient terms of the contracts or arrangements or transaction including the value, if any | Business undertaking of Near India Pvt Ltd was acquired by the company for a lump sum consideration of INR 2,54,00,000 |
| e) | Date of approval by the Board | 12-10-2021 |
| f) | Amount paid as advances, if any | - |

For and on behalf of Board of Directors
Near Intelligence Private Limited

Name: Justin Joseph
DIN: 02838539
Address: A 208, Vijetha Lapis Lazuli Apartment, 1st Main Road, Brookfield, Kundalahalli, Bangalore-560037

Name: Anil Mathews
DIN: 01741174
Address: No 102, R J Manor 11\A 7th Main First Block, Koramangala, Bangalore-560034

Place: Bengaluru
Date: 28-10-2022





**SINGHVI
DEV & UNNI LLP**
CHARTERED ACCOUNTANTS

**INDEPENDENT AUDITORS' REPORT**

**TO THE MEMBERS OF NEAR INTELLIGENCE PRIVATE LIMITED**

**Report on the Audit of the Financial Statements**

**Opinion**

1. We have audited the accompanying financial statements of **Near Intelligence Private Limited** ("the Company"), which comprise the Balance Sheet as at 31 March 2022, the Statement of Profit and Loss and Statement of Cash Flows for the year then ended, and a summary of significant accounting policies and other explanatory information.

2. In our opinion and to the best of our information and according to the explanations given to us, the aforesaid financial statements give the information required by the Companies Act, 2013 (the 'Act') in the manner so required and give a true and fair view in conformity with the accounting principles generally accepted in India, of the state of affairs of the Company as at 31 March 2022, its profit, its cash flows for the year ended on that date.

**Basis for Opinion**

3. We conducted our audit in accordance with the Standards on Auditing (SAs) specified under section 143(10) of the Act. Our responsibilities under those Standards are further described in the 'Auditor's Responsibilities for the Audit of the Financial Statements' section of our report. We are independent of the Company in accordance with the Code of Ethics issued by the Institute of Chartered Accountants of India together with the ethical requirements that are relevant to our audit of the financial statements under the provisions of the Act and the Rules thereunder, and we have fulfilled our other ethical responsibilities in accordance with these requirements and the Code of Ethics. We believe that the audit evidence we have obtained is sufficient and appropriate to provide a basis for our opinion.

**Other Information**

4. The Company's Board of Directors is responsible for the other information. The other information comprises the Board's Report, but does not include the financial statements and

Registered Office - 29/4, Trade Centre, Race Course Road, Bengaluru – 560 001 | +91 80 22261371 | www.sduca.com | info@sduca.com
Branch - Kaledonia, Unit No.1B, 5th Floor, Sahar Road, Off Western Express Highway Andheri (East), Mumbai - 400 069







our auditor's report thereon. These reports are expected to be made available to us after the date of this auditor's report.

5.  Our opinion on the financial statements does not cover the other information and we do not express any form of assurance conclusion thereon.

6.  In connection with our audit of the financial statements, our responsibility is to read the other information identified above when it becomes available and, in doing so, consider whether the other information is materially inconsistent with the Financial Statements or our knowledge obtained in the audit, or otherwise appears to be materially misstated. When we read the Board Report, if we conclude that there is a material misstatement therein, we are required to communicate the matter to those charged with governance and describe actions as per the applicable laws and regulations.

**Responsibility of Management for the Financial Statements**

7.  The Company's Board of Directors is responsible for the matters stated in Section 134(5) of the Act with respect to the preparation of these financial statements that give a true and fair view of the financial position, financial performance and cash flows of the Company in accordance with the accounting principles generally accepted in India, including the Accounting Standards specified under Section 133 of the Act. This responsibility also includes maintenance of adequate accounting records in accordance with the provisions of the Act for safeguarding the assets of the Company and for preventing and detecting frauds and other irregularities; selection and application of appropriate accounting policies; making judgments and estimates that are reasonable and prudent; and design, implementation and maintenance of adequate internal financial controls, that were operating effectively for ensuring the accuracy and completeness of the accounting records, relevant to the preparation and presentation of these financial statements that give a true and fair view and are free from material misstatement, whether due to fraud or error.

8.  In preparing the financial statements, Management is responsible for assessing the Company's ability to continue as a going concern, disclosing, as applicable, matters related to going concern and using the going concern basis of accounting unless Management either intends to liquidate the Company or to cease operations, or has no realistic alternative but to do so.

9.  Those Board of Directors are also responsible for overseeing the Company's financial reporting process.

Bengaluru | Mumbai

**782**



SINGHVI
DEV & UNNI LLP

**Auditor's Responsibilities for the Audit of the Financial Statements**

10. Our objectives are to obtain reasonable assurance about whether the financial statements as a whole are free from material misstatement, whether due to fraud or error, and to issue an auditors' report that includes our opinion. Reasonable assurance is a high level of assurance, but is not a guarantee that an audit conducted in accordance with SAs will always detect a material misstatement when it exists. Misstatements can arise from fraud or error and are considered material if, individually or in the aggregate, they could reasonably be expected to influence the economic decisions of users taken on the basis of these financial statements.

11. As part of an audit in accordance with SAs, we exercise professional judgment and maintain professional skepticism throughout the audit. We also:

a) Identify and assess the risks of material misstatement of the financial statements, whether due to fraud or error, design and perform audit procedures responsive to those risks, and obtain audit evidence that is sufficient and appropriate to provide a basis for our opinion. The risk of not detecting a material misstatement resulting from fraud is higher than for one resulting from error, as fraud may involve collusion, forgery, intentional omissions, misrepresentations, or the override of internal control.

b) To obtain an understanding of internal control relevant to the audit in order to design audit procedures that are appropriate in the circumstances, but not for the purpose of expressing an opinion on the effectiveness of the entity's internal control.

c) Evaluate the appropriateness of accounting policies used and the reasonableness of accounting estimates and related disclosures made by Management.

d) Conclude on the appropriateness of Management's use of the going concern basis of accounting and, based on the audit evidence obtained, whether a material uncertainty exists related to events or conditions that may cast significant doubt on the Company's ability to continue as a going concern. If we conclude that a material uncertainty exists, we are required to draw attention in our auditors' report to the related disclosures in the financial statements or, if such disclosures are inadequate, to modify our opinion. Our conclusions are based on the audit evidence obtained up to the date of our auditor's report. However, future events or conditions may cause the Company to cease to continue as a going concern.

e) Evaluate the overall presentation, structure and content of the financial statements, including the disclosures, and whether the financial statements represent the underlying transactions and events in a manner that achieves fair presentation.

Bengaluru | Mumbai



**SINGHVI DEV & UNNI LLP**

12. We communicate with those charged with governance regarding, among other matters, the planned scope and timing of the audit and significant audit findings, including any significant deficiencies in internal controls that we identify during our audit.

13. We also provide those charged with governance with a statement that we have complied with relevant ethical requirements regarding independence, and to communicate with them all relationships and other matters that may reasonably be thought to bear on our independence, and where applicable, related safeguards.

**Report on Other Legal and Regulatory Requirements**

14. As required by the Companies (Auditor's Report) Order, 2020 ("the Order") issued by the Central Government of India in terms of sub-section (11) of section 143 of the Act, we give in the "Annexure A" a statement on the matters specified in paragraph 3 of the Order.

15. As required by Section 143 (3) of the Act, we report that:

   a) We have sought and obtained all the information and explanations which to the best of our knowledge and belief were necessary for the purposes of our audit.

   b) In our opinion, proper books of account as required by law have been kept by the Company so far as it appears from our examination of those books.

   c) The Company does not have a branch office and therefore, reporting under Section 143(3)(c) of the Companies Act, 2013 is not applicable.

   d) The financial statements dealt with by this Report are in agreement with the books of account.

   e) In our opinion, the aforesaid financial statements comply with the Accounting Standards specified under Section 133 of the Act.

   f) There are no observations or comments made by us on the financial transactions or matters which have any adverse effect on the functioning of the Company.

   g) On the basis of the written representations received from the Directors as on 31 March 2022 taken on record by the Board of Directors, none of the Directors are disqualified as on 31 March 2022 from being appointed as a Director in terms of Section 164 (2) of the Act.

   h) There are no qualification, reservation or adverse remark relating to the maintenance of accounts and other matters connected therewith.

   i) The Company is exempted from the applicability of reporting on the adequacy of internal financial controls required under Section 134(5) of the Act.

   j) The Company is a private limited company and Section 197 read with Schedule V of the Act is not applicable.

Bengaluru | Mumbai



**SINGHVI
DEV & UNNI LLP**

k)  With respect to the other matters to be included in the Auditor's Report in accordance
    with

    Rule 11 of the Companies (Audit and Auditors) Rules, 2014, in our opinion and to the best
    of our information and according to the explanations given to us:

  i.  The Company does not have any pending litigations which would impact its financial
      position.

 ii.  The Company did not have any long-term contracts including derivative contracts for
      which there were any material foreseeable losses.

iii.  There were no amounts which were required to be transferred to the Investor Education
      and Protection Fund by the Company.

 iv.

  a)  The Management has represented that, to the best of it's knowledge and belief, other
      than as disclosed in the notes to the accounts, no funds have been advanced or loaned
      or invested (either from borrowed funds or share premium or any other sources or kind
      of funds) by the Company to or in any other person(s) or entity(ies), including foreign
      entities ("Intermediaries"), with the understanding, whether recorded in writing or
      otherwise, that the Intermediary shall, whether, directly or indirectly lend or invest in
      other persons or entities identified in any manner whatsoever by or on behalf of the
      Company ("Ultimate Beneficiaries") or provide any guarantee, security or the like on
      behalf of the Ultimate Beneficiaries.

  b)  The Management has represented, that, to the best of its knowledge and belief, other
      than as disclosed in the notes to the accounts, no funds have been received by the
      Company from any person(s) or entity(ies), including foreign entities ("Funding
      Parties"), with the understanding, whether recorded in writing or otherwise, that the
      Company shall, whether, directly or indirectly, lend or invest in other persons or entities
      identified in any manner whatsoever by or on behalf of the Funding Party ("Ultimate
      Beneficiaries") or provide any guarantee, security or the like on behalf of the Ultimate
      Beneficiaries.

  c)  Based on such audit procedures performed by us that are considered reasonable and
      appropriate in the circumstances, nothing has come to our notice that caused us to
      believe that the representations under sub-clause (a) and (b) contain any material
      misstatement.

Bengaluru | Mumbai

||||||||||||||||

SINGHVI
DEV & UNNI LLP

v. The Company has not declared/ paid dividend during the year.

For Singhvi Dev & Unni LLP
Chartered Accountants
FRN: 003867S/S200358 / LLPIN: AAP-3305

MANOJ NAIR   Digitally signed
by MANOJ NAIR
J NAIR   Date: 2022.10.28
18:35:43 +05'30'

Manoj Nair
Partner
UDIN: 22049426BBDGOM2778
Membership No: 049426
Bengaluru
28 October 2022





**786**

||||||||||||||

**SINGHVI**
**DEV & UNNI LLP**

Annexure A to the Auditors' Report

(As referred to in paragraph 14 of the Independent Auditors' report of even date)

(i)
   a)
      A) The Company has maintained proper records showing full particulars, including quantitative details and situation of property, plant & equipment.

      B) The Company has maintained proper records showing full particulars of intangible assets.

   b) According to the information and explanations provided to us, the Company has a phased program for physical verification of the property, plant & equipment (PPE). Accordingly, physical verification was conducted by the Management during the financial year 2021-22 and no material discrepancies were noted on such verification.

   c) The Company is not holding any immovable property in its name.

   d) The Company has not revalued any of its property, plant & equipment and/or intangible assets during the year.

   e) The Company does not have any proceedings pending under the Benami Transactions (Prohibition) Act, 1988 and rules made thereunder, in the financial statements.

(ii)
   a) The Company provides software services to its Group Company. Hence, the Company does not hold any inventory.

   b) The Company has not raised working capital finance at any point of time during the year from banks and/or financial institutions on the basis of security of current assets. Hence, reporting on quarterly returns or statement filed by the Company with such banks and/or financial institutions is not applicable.

(iii)   The Company has not made investments in, provided any guarantee or security or granted any loans or advances in the nature of loans, secured or unsecured, to companies, firms, Limited Liability Partnerships or any other parties. Therefore, the reporting under the clause 3(iii), (iii)(a), (iii)(b), (iii)(c), (iii)(d), (iii)(e) and (iii)(f) of the Order are not applicable to the Company.

Bengaluru | Mumbai

|||||||||||||||||||||||||||||||||||||||||||||||||||||||||||||||||||||||||||||||||

SINGHVI
DEV & UNNI LLP

(iv)   The Company has complied with the provisions of Section 185 and Section 186 of the Companies Act, 2013 in respect of loans, investments, guarantees and securities granted.

(v)   The Company has not accepted deposits.

(vi)   The Company is not required to maintain cost records in terms of Section 148(1) of the Companies Act, 2013, read with Companies (Cost Records and Audit) Rules, 2014.

(vii)
   a)   The Company is regular in depositing undisputed statutory dues including provident fund, employees' state insurance, income-tax, goods and service tax, duty of customs, cess and any other statutory dues with the appropriate authorities and there does not exist, any arrears of outstanding statutory dues as at the last day if the financial year concerned for a period of more than six months with the appropriate authorities.

   b)   As per the information and explanations provided to us and on the basis of examination of records, there are no statutory dues which have not been deposited on account of any dispute.

(viii)   There are no transactions that have been surrendered or disclosed as income during the year (which were previously unrecorded) in the tax assessments under the Income Tax Act, 1961, during the year.

(ix)

   a)   The Company has not raised funds through loans or borrowings.

   b)   The Company is not declared a willful defaulter by any bank or financial institution or other lender.

   c)   The Company has not raised term loans.

   d)   The Company has not raised funds on short term basis.

   e)   The Company has not taken any funds from any entity or person on account of or to meet the obligations of its subsidiaries, associates or joint ventures.

   f)   The Company has not raised loans during the year on the pledge of securities held in its subsidiaries, joint ventures or associate companies.

(x)

   a)   The Company has not raised moneys by way of initial public offer or further public offer (including debt instruments) during the year.

   b)   The Company has not made preferential allotment or private placement of shares or convertible debentures (fully, partially or optionally convertible) during the year.

**788**

|||||||||||||||

**SINGHVI
DEV & UNNI LLP**

(xi)

a) According to the information and explanations given to us, no material fraud by the Company or on the Company by its officers or employees has been noticed or reported during the course of the audit.

b) According to the information and explanations given to us, no fraud by the Company or on the Company by its officers or employees has been noticed or reported during the course of the audit. Therefore, the report under Section 143(12) of the Companies Act, 2013 in form ADT-4 is not required to filed with the Central Government.

c) According to the information and explanations given to us, no whistle-blower complaints have been received by the Company.

(xii)    The Company is not a Nidhi Company and hence reporting under clause (xii) of the Order is not applicable.

(xiii)    According to the explanation and information provided to us, the transactions with related parties are in compliance with Sections 177 and 188 of the Companies Act, 2013, and the relevant accounting standard, where applicable, and the details of which has been disclosed in Note 24 of the financial statements annexed to this Independent Auditors' report.

(xiv)    The Company is not required to conduct internal audit since it does not satisfy the criteria specified in Section 138 of the Companies Act, 2013.

(xv)    The Company has not entered into any non-cash transactions with Directors or persons connected with him.

(xvi)

a) The Company is not required to be registered under the Section 45-IA of the Reserve Bank of India, Act, 1934.

b) The Company has not conducted any Non-Banking Financial or Housing Finance activities during the year.

c) The Company is not a Core Investment Company (CIC) as defined in the regulations made by the Reserve Bank of India.

d) The Group does not have more than one CIC as part of the Group.

(xvii)    The Company has not incurred cash losses during the financial year and in the immediately preceding financial year.

Bengaluru | Mumbai

|||||||||||||||||||||||||||||||||||||||||||||||||||||||||||||||||||||||||||||||||||||



**SINGHVI
DEV & UNNI LLP**

(xviii) There has been no resignation of the statutory auditors during the year.

(xix)  In our opinion and according to the information and explanation provided to us and on evaluation of the financial ratios, ageing and expected dates of realization of financial assets and payment of financial liabilities, other information accompanying the financial information; we believe that there is no material uncertainty as on the date of the audit report that the Company is capable of meeting its financial liabilities at the date of Balance Sheet, as and when they fall due within one year from the date of Balance Sheet.

(xx)

  a)  The Company does not have any, in respect of other than an ongoing project, amount remaining unspent to be transferred to Fund specified in Schedule VII to the Companies Act, 2013 within a period of six months of the expiry of the financial year in compliance with second proviso to Section 135(5) of the said Act.

  b)  The Company does not have any, in respect an ongoing project, amount remaining unspent to be transferred to a special account within a period of six months of the financial year in compliance with provisions of Section 135(6) of the Companies Act, 2013.

For Singhvi Dev & Unni LLP
Chartered Accountants
FRN: 003867S/S200358 / LLPIN: AAP-3305

MANOJ NAIR    Digitally signed
              by MANOJ NAIR
              Date: 2022.10.28
              18:36:15 +05'30'

Manoj Nair
Partner
Membership No. 049426
UDIN: 22049426BBDGOM2778
Bengaluru
28 October 2022

Bengaluru | Mumbai



Near Intelligence Private Limited
Balance sheet as on 31.03.2022
#1, Kathalipalya Main Road, Koramangala, 6Th Block,  Bangalore, Karnataka-560095
CIN - U72200KA2021PTC152422
Email - justin@near.com,  Phone : 974188810
(Amount in ₹ hundreds unless otherwise stated)

| Particulars | Note | As at 31 March 2022 |
|---|---|---|
| **EQUITY AND LIABILITIES** | | |
| **Shareholders' funds** | | |
| Share capital | 3 | 1,000 |
| Reserves and surplus | 4 | 1,94,099 |
| | | 1,95,099 |
| **Current liabilities** | | |
| Trade payables | | |
| Total outstanding dues to micro enterprises and small enterprises | | - |
| Total outstanding dues to creditors other than micro enterprises | | |
| and small enterprises | 5 | 8,889 |
| Other current liabilities | 6 | 5,46,946 |
| Short-term provisions | 7 | 2,07,779 |
| | | 7,63,614 |
| **Total** | | 9,58,713 |
| **ASSETS** | | |
| **Non-current assets** | | |
| Property, plant and equipment | 8 | 3,00,808 |
| Deferred tax assets | 9 | 6,643 |
| Other non-current assets | 10 | 2,00,535 |
| | | 5,07,986 |
| **Current assets** | | |
| Trade receivables | 11 | 3,20,268 |
| Cash and cash equivalents | 12 | 47,203 |
| Short-term loans and advances | 13 | 71,971 |
| Other current assets | 14 | 11,285 |
| | | 4,50,727 |
| **Total** | | 9,58,713 |
| **Significant accounting policies** | 2 | |

The notes referred to above form an integral part of the financial statements.

As per our report of even date
for Singhvi Dev & Unni LLP
Chartered Accountants
FRN :003867S/S200358 / LLPIN :AAP-3305

for and on behalf of the Board of Directors of
**Near Intelligence Private Limited**
CIN: U72200KA2009PTC050999

MANOJ NAIR
Digitally signed by MANOJ NAIR
Date: 2022.10.28 18:31:38 +05'30'

ANIL MATHEWS
Digitally signed by ANIL MATHEWS
Date: 2022.10.28 13:25:03 +05'30'

JUSTIN JOSEPH
Digitally signed by JUSTIN JOSEPH
Date: 2022.10.28 13:21:32 +05'30'

Manoj Nair
*Partner*
Membership No.: 049426

**Anil Mathews**
*Director*
DIN: 01741174

**Justin Joseph**
Director
DIN: 02838539

Bengaluru
28 October 2022

Bengaluru
28 October 2022

Bengaluru
28 October 2022

Near Intelligence Private Limited
Statement of profit and loss for the period 31.03.2022
#1, Kathalipalya Main Road, Koramangala, 6Th Block,  Bangalore, Karnataka-560095
CIN - U72200KA2021PTC152422
Email - justin@near.com,  Phone : 974188810
(Amount in ₹ hundreds unless otherwise stated)

| Particulars | Note | For the period 29 September, 2021 to 31 March, 2022 |
|---|---|---|
| Revenue from operations | 15 | 19,81,192 |
| Other income | 16 | 11,290 |
| **Total income** | | **19,92,482** |
| | | |
| **Expenses** | | |
| | | |
| Employee benefit expense | 17 | 14,16,867 |
| Finance cost | 18 | 1,444 |
| Depreciation and amortization expense | 8 | 36,673 |
| Other expenses | 19 | 2,67,792 |
| **Total expenses** | | **17,22,776** |
| | | |
| **Profit before tax** | | **2,69,706** |
| | | |
| **Tax expense** | | |
| Current tax | | 82,250 |
| Deferred tax Charge | | |
| Deferred tax charge / (credit) | | (6,643) |
| **Profit for the year** | | **1,94,099** |
| | | |
| **Earnings per equity share [nominal value of share ₹ 10 each]** | | |
| Basic EPS | 22 | 3.85 |
| | | |
| **Significant accounting policies** | 2 | |

The notes referred to above form an integral part of the financial statements.

As per our report of even date                      for and on behalf of the Board of Directors of
**for Singhvi Dev & Unni LLP**                      **Near Intelligence Private Limited**
Chartered Accountants                                CIN: U72200KA2009PTC050999
FRN :003867S/S200358 /  LLPIN :AAP-3305

MANOJ NAIR    Digitally signed by MANOJ NAIR    Date: 2022.10.28 18:32:15 +05'30'

ANIL MATHEWS    Digitally signed by ANIL MATHEWS Date: 2022.10.28 13:25:23 +05'30'

JUSTIN JOSEPH    Digitally signed by JUSTIN JOSEPH Date: 2022.10.28 13:21:57 +05'30'

**Manoj Nair**                                       **Anil Mathews**          **Justin Joseph**
*Partner*                                            *Director*                *Director*
Membership No.: 049426                               DIN: 01741174             DIN: 02838539

Bengaluru                                            Bengaluru                 Bengaluru
28 October 2022                                      28 October 2022           28 October 2022



Near Intelligence Private Limited
Cash flow statement
#1, Kathalipalya Main Road, Koramangala, 6Th Block, Bangalore, Karnataka-560095
CIN - U72200KA2021PTC152422
Email - justin@near.com, Phone : 974188810
(Amount in ₹ hundreds unless otherwise stated)

| Particulars | For the period 29 September, 2021 to 31 March, 2022 |
|---|---|
| **Cash flow from operating activities** | |
| Profit before tax | 2,69,706 |
| Adjustments: | |
| Depreciation and amortization | 36,673 |
| Interest income | (595) |
| **Operating profit before working capital changes** | **3,05,784** |
| | |
| Adjustments: | |
| Increase in trade payables | 8,889 |
| Increase in other current liabilities | 1,91,413 |
| Increase in short term provisions | 41,931 |
| Increase in trade receivables | (3,20,268) |
| Increase in short term loans and advances | (71,971) |
| Increase in other non-current assets | - |
| Increase in other current assets | (11,285) |
| **Cash (used in) / generated from operations** | **1,44,494** |
| Income taxes paid | (60,000) |
| **Net cash flow from operating activities (A)** | **84,494** |
| | |
| **Cash flow from investing activities** | |
| Purchase of property, plant and equipment | (13,291) |
| Investment in Bank deposits having original maturity of more than three months | (25,000) |
| Interest received | - |
| **Net cash flow (used in) investing activities (B)** | **(38,291)** |
| | |
| **Cash flow from financing activities** | - |
| Issue of share capital | 1,000 |
| **Net cash flow from financing activities (C)** | **1,000** |
| | |
| **Net (decrease) in cash and cash equivalents (A+B+C)** | **47,203** |
| | |
| Cash and cash equivalents at the beginning of the year | - |
| **Cash and cash equivalents at the end of the year** | **47,203** |
| | |
| Notes to the cash flow statement | |
| Components of cash and cash equivalents : | |
| Cash on hand | 550 |
| Balance with banks | |
| in current account | 46,653 |
| **Total cash and cash equivalents  (Refer Note 12)** | **47,203** |
| **Cash and cash equivalents in cash flow statement** | **47,203** |



100

**793**

**Note:**

1. The above Cash Flow Statement has been compiled from and is based on the Balance Sheet as at March 31, 2022 and the related Statement of Profit and Loss for the year ended on that date.

2. The above statement of cash flow has been prepared under the indirect method as set out in AS 3 "Cash Flow Statements".

The notes referred to above form an integral part of the financial statements.

As per our report of even date
**for Singhvi Dev & Unni LLP**
Chartered Accountants
FRN :003867S/S200358 / LLPIN :AAP-3305

for and on behalf of the Board of Directors of
**Near Intelligence Private Limited**
CIN: U72200KA2009PTC050999

MANOJ NAIR
Digitally signed by MANOJ NAIR
Date: 2022.10.28 18:32:32 +05'30'

ANIL MATHEWS
Digitally signed by ANIL MATHEWS
Date: 2022.10.28 13:23:41 +05'30'

JUSTIN JOSEPH
Digitally signed by JUSTIN JOSEPH
Date: 2022.10.28 13:23:15 +05'30'

**Manoj Nair**
Partner
Membership No.: 049426

**Anil Mathews**
Director
DIN: 01741174

**Justin Joseph**
Director
DIN: 02838539

Bengaluru
28 October 2022

Bengaluru
28 October 2022

Bengaluru
28 October 2022

Near Intelligence Private Limited
Notes to the financial statements for the year ended 31 March 2022

### 1 Company overview

Near Intelligence Private Limited was originally incorporated on 29 September 2021 ('the Company') under provisions of Companies Act, 2013 having its registered office in Bengaluru and is a wholly owned subsidiary of Near Intelligence Pte. Ltd (formerly Near Holdings Pte. Ltd) incorporated in Singapore. The Company is engaged in the business of mobile advertising and support services. The Company's primary arrangement is to render services to its Holding Company "Near Intelligence Pte Limited", Singapore for provision of technology and business support services.

### 2 Significant accounting policies

The accounting policies set out below have been applied consistently to the periods presented in these financial statements.

### 2.1 Basis of preparation of financial statements

These financial statements are prepared in accordance with Generally Accepted Accounting Principles in India (GAAP) under the historical cost convention on a going concern and accrual basis of accounting. GAAP comprises mandatory accounting standards as prescribed under Section 133 of the Companies Act, 2013 ("the Act"), read with Rule 7 of the Companies (Accounts) Rules, 2021 and the relevant provisions of Companies Act 2013, as applicable, Accounting Standards ('AS') / guidance notes issued by Institute of Chartered Accountants of India (ICAI) and other generally accepted accounting principles in India.

The financial statements are presented in Indian Rupees ("₹") and rounded off to nearest hundreds , unless other wise stated.

The Company has prepared financials from 29 September 2022 to 31 March 2022 for the financial year 2021-22 as per provisions of the Companies Act, 2013. Since, this is the first year of reporting no comparable for the previous year has been disclosed.

### 2.2 Summary of significant accounting policies

#### a) Use of estimates

The preparation of the financial statements in conformity with GAAP requires Management to make judgements, estimates and assumptions that affect the reported amounts of assets and liabilities, income and expenses and the disclosure of contingent liabilities on the date of the financial statements. Actual results could differ from those estimates. Estimates and underlying assumptions are reviewed on an ongoing basis. Any revision to accounting estimates is recognized prospectively in the current and future years.

All assets and liabilities have been classified as current or non-current as per the Company's normal operating cycle and other criteria set out in the Schedule III of the Act.

#### b) Revenue recognition

Revenue is recognized to the extent that it is probable that the economic benefits will flow to the Company and the revenue can be reliably measured. The following specific recognition criteria must also be met before revenue is recognized:

*Income from services:*

i) The Company derives income by providing support services to its Holding Company. Support services income are based on a "cost plus" model as per terms of the contract entered into by the Company with its Holding Company. The applicable costs, as per the terms of contract are billed with a mark-up periodically.

ii) Unbilled revenue represents cost and earnings in excess of billings as at the end of the reporting year.

iii) Unearned revenue represents billing in excess of revenue recognized. Advance payments received from customers for which no services have been rendered are presented as 'Advance from customers'.

*Interest*

Interest is recognized on a time proportion basis taking into account the amount outstanding and the rate applicable.



Near Intelligence Private Limited
Notes to the financial statements for the year ended 31 March 2022
 c) Property, plant and equipment and depreciation

Property, plant and equipment are carried at cost of acquisition or construction less accumulated depreciation and impairment, if any. The cost includes freight, non-refundable duties, taxes and other incidental expenses related to the acquisition or installation of the assets concerned. Borrowing costs directly attributable to acquisition or construction of those property, plant and equipment which necessarily take a substantial period of time to get ready for their intended use are capitalized.

Advance paid towards acquisition of property, plant and equipment outstanding at each balance sheet date is disclosed as long term loans and advances. The cost of the property, plant and equipment not ready for their intended use before such date are disclosed as capital work-in-progress.

When parts of an item of property, plant and equipment have different useful lives, they are accounted for as separate items (major components) of property, plant and equipment.
Depreciation on property, plant and equipment are calculated on written down value method using the rates arrived at based on the useful lives estimated by the management which are equal to those prescribed in the Schedule II of the Companies Act, 2013. The Company has used the following useful lives to provide depreciation on property, plant and equipment.

| Particulars | Useful lives |
|---|---|
| Computers | 3 |
| Office equipment | 5 |
| Furniture and fixtures | 10 |

Leasehold improvements are depreciated over the period of the lease term or estimated useful life of the asset whichever is lower.

 d) Intangible assets and amortization

Intangible assets are recognized only if it is probable that future economic benefits that are attributable to the asset will flow to the enterprise and the cost of the asset can be measured reliably. Intangible assets are recorded at their acquisition cost. The amortization period and method used for intangible assets are reviewed at each period end. Computer software is amortized using written down value method over a period of three years.
The amortization method, useful lives and residual values are reviewed at each reporting period revised prospectively as changes in estimates.

 e) Impairment of assets

The Company assesses at each balance sheet date whether there is any indication that an asset or a group of assets comprising a cash generating unit may be impaired. If any such indication exists, the Company estimates the recoverable amount of the asset. For an asset or group of assets that does not generate largely independent cash in-flows, the recoverable amount is determined for the cash-generating unit to which the asset belongs. If such recoverable amount of the asset or the recoverable amount of the cash generating unit to which the asset belongs is less than its carrying amount, the carrying amount is reduced to its recoverable amount. The reduction is treated as an impairment loss and is recognized in the statement of profit and loss. If at the balance sheet date there is an indication that if a previously assessed impairment loss no longer exists, the recoverable amount is reassessed and the asset is reflected at the recoverable amount subject to a maximum of depreciable historical cost. An impairment loss is reversed only to the extent that the carrying amount of asset does not exceed the net book value that would have been determined, if no impairment loss had been recognized.



Near Intelligence Private Limited
Notes to the financial statements for the year ended 31 March 2022

f) Leases

Assets acquired under leases other than finance leases are classified as operating leases. The total lease rentals (including scheduled rental increases) in respect of an asset taken on operating lease are charged to the statement of profit and loss on a straight line basis over the lease term unless another systematic basis is more representative of the time pattern of the benefit. Initial direct costs incurred specifically for a operating lease are deferred and charged to the statement of profit and loss over the lease term.

g) Investments

Investments, which are readily realizable and intended to be held for not more than one year from the date on which such investments are made, are classified as current investments. All other investments are classified as long-term investments. On initial recognition, all investments are measured at cost. The cost comprises purchase price and directly attributable acquisition charges such as brokerage, fees etc.

Current investments are carried in the financial statements at lower of cost and fair value determined on an individual investment basis. Long-term investments are carried at cost. However, provision for diminution in value is made to recognize a decline other than temporary in the value of the investments.

On disposal of an investment, the difference between its carrying amount and net disposal proceeds is charged or credited to the statement of profit and loss.

h) Foreign currency transactions and translation

Foreign exchange transactions are recorded using the exchange rate prevailing on the date of the respective transaction. Exchange differences arising on foreign exchange transactions settled during the period are recognized in the statement of profit and loss for the period.

Monetary assets and liabilities denominated in foreign currencies as at the balance sheet date are translated at the exchange rates on that date, the resultant exchange differences are recognized in the statement of profit and loss for the period. Non-monetary items which are carried in terms of historical cost denominated in a foreign currency are reported using the exchange rate at the date of the transaction.

i) Income taxes

Income-tax expense comprises current tax (i.e. amount of tax for the year determined in accordance with the income-tax law) and deferred tax charge or credit (reflecting the tax effects of timing differences between accounting income and taxable income for the year). The deferred tax charge or credit and the corresponding deferred tax liabilities or assets are recognized using the tax rates that have been enacted or substantively enacted by the balance sheet date. Deferred tax assets are recognized only to the extent there is reasonable certainty that the assets can be realized in future; however, where there is unabsorbed depreciation or carried forward business loss under taxation laws, deferred tax assets are recognized only if there is a virtual certainty of realization of such assets. Deferred tax assets/ liabilities are reviewed as at each balance sheet date and written down or written-up to reflect the amount that is reasonably/ virtually certain (as the case may be) to be realized.

The Company offsets, on a year on year basis, the current tax assets and liabilities, where it has a legally enforceable right and where it intends to settle such assets and liabilities on a net basis.

Near Intelligence Private Limited
Notes to the financial statements for the year ended 31 March 2022

### j) Employee benefits

(i) *Short-term employee benefits* .

Employee benefits payable wholly within twelve months of receiving employee services are classified as short-term employee benefits. These benefits include salaries and wages, bonus and ex-gratia. The undiscounted amount of short-term employee benefits to be paid in exchange for employee services is recognized as an expense as the related service is rendered by employees.

(ii) *Defined benefit plans*

The Company's gratuity benefit scheme is a defined benefit plan. The Company's net obligation in respect of a defined benefit plan is calculated by estimating the amount of future benefit that employees have earned in return for their service in the current and prior periods; that benefit is discounted to determine its present value. Any unrecognized past service costs and the fair value of any plan assets are deducted. The calculation of the Company's obligation under the plan is performed annually by a qualified actuary using the projected unit credit method.
The Company recognizes all actuarial gains and losses arising from defined benefit plans immediately in the statement of profit and loss. All expenses related to defined benefit plans are recognized in employee benefits expense in the statement of profit and loss. When the benefits of a plan are improved, the portion of the increased benefit related to past service by employees is recognized in statement of profit and loss on a straight-line basis over the average period until the benefits become vested. The Company recognizes gains and losses on the curtailment or settlement of a defined benefit plan when the curtailment or settlement occurs.

(iii) *Compensated absences*

The employees of the Company are entitled to compensated absences. Earned/Privilege/Casual leaves not availed by the employee during the year will lapse at the end of the financial year and employees will be entitled to leave encashment of Six (6) days. The Company records an obligation for compensated absences in the period in which the employee renders the services that increases this entitlement. Compensated absences are short-term employee benefits and provided for on the basis of last drawn salary for the unavailed balance of leave.

(iv) *Defined contribution plan*

A defined contribution plan is a post-employment benefit plan under which an entity pays specified contributions to a separate entity and has no obligation to pay any further amounts. The Company makes specified monthly contributions towards employee provident fund to Government administered provident fund scheme which is a defined contribution plan. The Company's contribution is recognized as an expense in the statement of profit and loss during the period in which the employee renders the related service.

### k) Earnings per share

The basic earnings per share is computed by dividing the net profit attributable to equity shareholders for the period by the weighted average number of equity shares outstanding during the period.

### l) Provision and contingencies

The Company recognizes a provision when there is a present obligation as a result of an obligating event that probably requires an outflow of resources and a reliable estimate can be made of the amount of the obligation.

*Contingencies*
A contingent liability exist when there is a possible obligation or a present obligation that may, but probably will not, require an outflow of resources or a present obligation where amount cannot be estimated reliably.
Contingent liabilities do not require provision, but are disclosed under the possibility of outflow of resources is remote.
Contingent assets are not recognized nor disclosed in the financial statements.

*Onerous contracts*
Provisions for onerous contracts, i.e. contracts where the expected unavoidable costs of meeting the obligations under the contract exceed the economic benefits expected to be received under it, are recognized when it is probable that an outflow of resources embodying economic benefits will be required to settle a present obligation as a result of an obligating event, based on a reliable estimate of such obligation.



**798**

Near Intelligence Private Limited
Notes to the financial statements for the year ended 31 March 2022

**m) Cash flow statement**

Cash flows are reported using the indirect method, whereby net profit before tax are adjusted for the effects of transactions of a non-cash nature and any deferrals or accruals of past or future cash receipts or payments. The cash flows from regular revenue generating, investing and financing activities of the Company are segregated.

**n) Cash and cash equivalents**

Cash and cash equivalents comprise cash and balances with banks. The Company considers all highly liquid investments with an original maturity as at the date of purchase of three months or less and that are readily convertible to known amounts of cash to be cash equivalents.

**o) Segment Reporting**

The primary reporting of the company has been performed on the basis of business segments. The company has only one business segment, which is mobile advertising and support services. Accordingly, the amounts appearing in these financial statments relate to this primary business segment. Further, secondary segment reporting as envisaged in AS 17 for geographical location is not applicable as the risks and rewards are the same for all geographical locations serviced by the Company.

**p) Related party transactions**

Disclosure of transactions with related parties, as required by Accounting Standard 18 "Related Party Disclosures" has been set out in a separate note. Related parties as defined under clause 3 of the Accounting Standard 18 have been identified on the basis of information available with the Company.

Near Intelligence Private Limited
Notes to the financial statements for the year ended 31 March 2022
(Amount in ₹ hundreds unless otherwise stated)

3  Share capital

| Particulars | As at 31 March |
|---|---|
| *Authorized* | |
| 1,50,000 equity shares of ₹ 10 each | 15,000 |
| | |
| *Issued, subscribed and fully paid-up* | |
| 10,000 equity shares of ₹ 10 each | 1,000 |
| | 1,000 |

**(a) Reconciliation of the shares outstanding at the beginning and at the end of the year**

| Particulars | As at 31 March 2022 | |
|---|---|---|
| | Number of shares | Amount |
| Equity shares | | |
| At the beginning of the year | 10,000 | 1,000 |
| Add: Shares issued during the year | - | - |
| At the end of the year | 10,000 | 1,000 |

**(b) Rights, preferences and restrictions attached to equity shares**

The Company has a single class of equity shares. Accordingly, all equity shares rank equally with regard to dividends and share in the company's residual assets. The equity shares are entitled to receive dividend as declared from time to time. The voting right to an equity shareholder on a whole are in proportion to its share of the paid up equity capital of the Company. The voting rights cannot be exercised in respect of shares on which any call or other sums presently payable have not been paid.

On winding up of the Company, the holder the equity shares will be entitled to receive the residual assets of the Company, remaining after distribution of all preferential amounts in proportion to the number of equity shares held.

**(c) Particulars of shareholders holding more than 5% shares**

| Particulars | As at 31 March 2022 | |
|---|---|---|
| | Number of shares | % |
| Equity shares of ₹ 10 each fully paid up | | |
| Near Intelligence Pte. Ltd, Singapore | 9,999 | 99.99% |
| | 9,999 | 99.99% |

As per the records of the Company, including its register of shareholders/ members and other declarations received from shareholders regarding beneficial interest, the above shareholding represents legal and beneficial ownerships of shares.

**(d) Shares held by Holding Company**

| Particulars | As at 31 March 2022 | |
|---|---|---|
| | Number of shares | % |
| Equity shares of ₹ 10 each fully paid-up* | | |
| Near Intelligence Pte. Ltd: Holding Company | 9,999 | 99.99% |
| | 9,999 | 99.99% |

* Includes 1 (31 March 2022: 1) equity shares of Rs 10 each held by nominee director on behalf of the holding company.

**(e) Shares held by promoters**

| SLNo | Shares held by the promoters as at the end of the year 21-22 | | | % Change during the year |
|---|---|---|---|---|
| | Promoter's Name | No.of shares | % of Total shares | |
| 1 | Near Intelligence Pte. Ltd: Holding Company | 9,999 | 99.990% | 0 |
| 2 | Justin Joseph | 1 | 0.004% | 0 |



**800**

Notes to the financial statements for the year ended 31 March 2022 (continued)
(Amount in ₹ hundreds unless otherwise stated)

**4  Reserves and surplus**

| Particulars | As at 31 March 2022 |
|---|---|
| **Balance in the statement of profit and loss** | |
| At the beginning of the year | - |
| Add: Profit for the year | 1,94,099 |
| **At the end of the year** | 1,94,099 |
| | 1,94,099 |

**5  Trade payables**

| Particulars | As at 31 March 2022 |
|---|---|
| Total outstanding dues of micro and small enterprises (Refer note 1 below) | - |
| Total outstanding dues to creditors other than micro and small enterprises | 8,889 |
| | 8,889 |

**Note 1**

Details relating to dues to micro and small enterprises as per Micro, Small and Medium Enterprises Development Act, 2006 (MSME Act), are on the basis of such parties having been identified by the Management. According to the Management, the Company is not liable to pay any interest as all payments to such parties have been made within the time stipulated by MSME Act.

| Particulars | As at 31 March 2022 |
|---|---|
| The principal amount and the interest due thereon remaining unpaid to any supplier as at the end of each accounting year; | - |
| The amount of interest paid by the Company along with the amounts of the payment made to the supplier beyond the appointed day during the period; | - |
| The amount of interest due and payable for the period of delay in making payment (which have been paid but beyond the appointed day during the year) but without | - |
| The amount of interest accrued and remaining unpaid at the end of the period; | - |
| The amount of further interest remaining due and payable even in the succeeding years, until such date when the interest dues as above are actually paid to the small enterprise. | - |

**Note 2**

**Ageing for trade payables as at 31 March 2022**

| Particulars | Outstanding for following periods from due date of payment | | | | Total |
|---|---|---|---|---|---|
| | <1 Year | 1-2 Years | 2-3 Years | >3 Year | |
| **Undisputed** | | | | | |
| - MSME | - | - | - | - | - |
| - Others | 8,889 | - | - | - | 8,889 |
| **Disputed** | | | | | |
| - MSME | - | - | - | - | - |
| - Others | - | - | - | - | - |

**6  Other current liabilities**

| Particulars | As at 31 March 2022 |
|---|---|
| Capital creditors | 6,032 |
| Accrued salaries and benefits | 1,12,295 |
| Statutory liabilities | 52,223 |
| Rent equalization reserve | 1,03,355 |
| **Other payables** | |
| Payable towards business transfer | 2,54,000 |
| Reimbursements payable to employees | 664 |
| Credit card payable | 14,377 |
| Audit fee payable | 4,000 |
| | 5,46,946 |



**Short-term provisions**

| 7 | Particulars | As at 31 March 2022 |
|---|---|---|
| | Provision for employee benefits | |
| | Provision for gratuity | 1,66,595 |
| | | |
| | Provision for expenses | 18,993 |
| | Provision for income tax (net of advance tax) | 22,191 |
| | | 2,07,779 |



**802**

Near Intelligence Private Limited
Notes to the financial statements for the year ended 31 March 2022
(Amount in ₹ hundreds unless otherwise stated)

8 Property plant and equipment

| Description | Gross block | | | | | Accumulated depreciation and amortization | | | | Net block |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| | As at 1 April 2021 | Additions on acquisition | Additions | Deletions | As at 31 March 2022 | As at 1 April 2021 | Charge for the year | Deletions | As at 31 March 2022 | As at 31 March 2022 |
| **Property, plant and equipment** | | | | | | | | | | |
| Computers | - | 34,338 | 18,722 | - | 53,060 | - | 10,314 | - | 10,314 | 42,746 |
| Office equipment | - | 47,910 | 601 | - | 48,511 | - | 6,616 | - | 6,616 | 41,895 |
| Furniture and fixtures | - | 10,905 | - | - | 10,905 | - | 866 | - | 866 | 10,039 |
| Leasehold improvements | - | 2,206 | - | - | 2,206 | - | 565 | - | 565 | 1,641 |
| Goodwill on amalgamation | - | 2,22,799 | - | - | 2,22,799 | - | 18,312 | - | 18,312 | 2,04,487 |
| **Total (A)** | **-** | **3,18,158** | **19,323** | **-** | **3,37,481** | **-** | **36,673** | **-** | **36,673** | **3,00,808** |



Near Intelligence Private Limited
Notes to the financial statements for the year ended 31 March 2022
(Amount in ₹ hundreds unless otherwise stated)

9　Deferred tax assets- Non-current

| Particulars | As at 31 March 2022 |
|---|---|
| **Deferred tax assets** | |
| Property, plant and equipment | 870 |
| Provision for employee benefits | 5,773 |
| **Deferred tax assets** | **6,643** |

10　Other non- current assets

| Particulars | As at 31 March 2022 |
|---|---|
| Security deposits | |
| *Considered good* | 1,75,000 |
| Bank deposits (due to mature after 12 months from the reporting date) | 25,000 |
| Interest accrued but not due on bank deposits | 535 |
| | **2,00,535** |

11　Trade receivables

| Particulars | | As at 31 March 2022 |
|---|---|---|
| *Unsecured* | | |
| *Receivables outstanding for a period exceeding six months from the due date* | | |
| Considered good | | - |
| *Other receivables* | | |
| Unsecured considered good | (B) | 3,20,268 |
| | (A) + (B) | 3,20,268 |

Ageing for year ended 31 March 2022

| Particulars | Not due | Outstanding for following periods from due date of payment | | | | | Total |
|---|---|---|---|---|---|---|---|
| | | < 6 m | 6 m - 1 | 1-2 | 2-3 | >3 | |
| **Undisputed** | | | | | | | |
| Considered | - | 3,20,268 | - | - | - | - | 3,20,268 |
| Considered | - | - | - | - | - | - | - |
| **Disputed** | | | | | | | |
| Considered | - | - | - | - | - | - | - |
| Considered | - | - | - | - | - | - | - |

12　Cash and cash equivalents

| Particulars | As at 31 March 2022 |
|---|---|
| Cash on hand | 550 |
| Balances with banks: | |
| in current accounts | 46,653 |
| | **47,203** |

13　Short-term loans and advances

| Particulars | As at 31 March 2022 |
|---|---|
| *Unsecured, considered good unless otherwise stated* | |
| Balances with government authorities | 38,651 |
| Prepaid expenses | 25,216 |
| Other advances | 8,104 |
| | **71,971** |

14　Other Current Assets

| Particulars | As at 31 March 2022 |
|---|---|
| Unbilled Revenue | 11,285 |
| | **11,285** |



Near Intelligence Private Limited
Notes to the financial statements for the year ended 31 March 2022
(Amount in ₹ hundreds unless otherwise stated)

**15  Revenue from operations**

| Particulars | For the period 29 September, 2021 to 31 March, 2022 |
|---|---|
| Income from support service | 19,81,192 |
| | 19,81,192 |

**16  Other income**

| Particulars | For the period 29 September, 2021 to 31 March, 2022 |
|---|---|
| Interest on bank deposits | 595 |
| Foreign currency exchange gain (net) | 10,695 |
| | 11,290 |

**17  Employee benefits**

| Particulars | For the period 29 September, 2021 to 31 March, 2022 |
|---|---|
| Salaries, wages and bonus | 13,49,237 |
| Contribution to provident fund | 12,027 |
| Gratuity (Refer Note 25) | 22,938 |
| Staff welfare expenses | 32,665 |
| | 14,16,867 |

**18  Finance Cost**

| Particulars | For the period 29 September, 2021 to 31 March, 2022 |
|---|---|
| Interest on delayed payment of statutory dues | 1,444 |
| | 1,444 |

**19  Other expenses**

| Particulars | For the period 29 September, 2021 to 31 March, 2022 |
|---|---|
| Rent | 1,35,362 |
| Office expenses | 25,512 |
| Travelling and conveyance | 27,118 |
| Membership and Subscription | 5,631 |
| Power and fuel | 19,658 |
| Auditors remuneration (Refer note 23) | 4,000 |
| Legal and professional charges | 8,068 |
| Insurance | 17,445 |
| Communication expenses | 6,127 |
| Recruitment expenses | 12,107 |
| Repairs and maintenance | 5,012 |
| Rates and taxes | 272 |
| Printing and stationery | 186 |
| Bank charges | 1,294 |
| | 2,67,792 |



Near Intelligence Private Limited
Notes to the financial statements for the year ended 31 March 2022
(Amount in ₹ hundreds unless otherwise stated)

**20   Contingent liabilities and commitments**

**(a) Contingent liabilities**

(i)  As on 31 March 2022, the Company does not have any contingent liabilities.

**(b) Capital Commitment**
   Estimated amount of contracts to be executed on capital account and not provided for (net of advances) is ₹ Nil

**21   Unhedged foreign currency exposure**

The company has not taken any hedging instruments to hedge the foreign currency exposure.

**22   Earnings per share (EPS)**

| Particulars | For the year ended 31 March 2022 |
|---|---|
| Profit after tax as per statement of profit and loss | 1,94,099 |
| Weighted average number of equity shares outstanding during the year | 50,411 |
| Nominal value of share (₹) | 10 |
| Basic EPS | 3.85 |

**23   Leases**

The Company has entered into both cancellable and non-cancellable operating leases for office and premises. The Company intends to renew such leases in the normal course of business. Rental expenses under such lease amounting to ₹1,35,362 have been charged to statement of profit and loss.
Non-cancellable operating lease rentals payable (minimum lease payments) under the leases are as follows

| Particulars | For the year ended 31 March 2022 |
|---|---|
| Not later than 1 years | 2,93,034 |
| Later than 1 years and not later than 5 years | 10,61,515 |
| Later than 5 years and not later than 10 years | - |

**24   Auditor's remuneration**

| Particulars | For the year ended 31 March 2022 |
|---|---|
| Statutory audit | 3,000 |
| Tax audit | 750 |
| Assistance in filing of ITR | 250 |
| Total | 4,000 |

**25   Related party disclosure**

**a) Name of related parties**

**Holding company**
Near Intelligence Pte. Ltd

**Fellow subsidiary**

Near India Private Limited

**Key managerial personnel**

| Particulars | Relation |
|---|---|
| Anil Mathews | Non-Executive Director |
| Justin Joseph | Executive Director |



Near Intelligence Private Limited
Notes to the financial statements for the year ended 31 March 2022
(Amount in ₹ hundreds unless otherwise stated)

b) Transactions with related parties

| Particulars | For the year ended 31 March 2022 |
|---|---|
| **Near Intelligence Pte. Ltd, Singapore** | |
| Support service income | 19,81,192 |
| **Near India Private Limited** | |
| Business transfer by way of slump sale | 2,54,000 |
| **Transactions with Key managerial personnel\*** | |
| **Justin Joseph** | |
| Remuneration to Director | 55,910 |

\* The above remuneration does not include gratuity as the same is determined by an actuary for the Company as a whole and separate figures for the directors are not available.

c) Balances with related parties

| Particulars | For the year ended 31 March 2022 |
|---|---|
| **Holding Company** | |
| Other receivables / (payables) | (2,54,000) |
| Trade receivables | 3,20,268 |



Near Intelligence Private Limited
Notes to the financial statements for the year ended 31 March 2022
(Amount in ₹ hundreds unless otherwise stated)

26   Employee benefits

(i) Defined contribution plan

The Company makes provident fund contributions to Defined contribution plan for qualified employees. Under the scheme the Company is required to contribute a specified percentage of payroll costs to fund the benefits.

(ii) Defined benefit plan-Unfunded

In accordance with Accounting Standard 15 (revised 2005) on "Employee Benefits" as prescribed by the Companies (Accounting Standards) Rules, 2006, actuarial valuation as on 31 March, 2022 was carried out in respect of the aforesaid defined benefit plan.

Gratuity- Disclosure for Small and Medium Enterprises as required under Clause (i) of Para 120 of AS -15 'Employee Benefits'
i. The principal assumptions used in determining gratuity obligations for the company's plans are shown below

| Particulars | As at 31 March 2022 |
| --- | --- |
| Discount Rate | 5.85% |
| Salary escalation rate | 15% |
| Attrition rate | 25% |

Near Intelligence Private Limited
Notes to the financial statements for the year ended 31 March 2022
(Amount in ₹ hundreds unless otherwise stated)

27 The Company has not done any expenditure in foreign currency during the current year.

28 Transfer Pricing:

The Income-tax Act, 1961 contains detailed Transfer Pricing (TP) regulations to provide for computing the income from international transactions between associated enterprises on an arm's length basis. These regulations, inter-alia, require the maintenance of prescribed documents and information including furnishing a report from an Accountant within the due date of filing of the return of income.

For the year ended March 31 2022, the Company is in the process of complying with the TP regulations with regard to obtaining the TP study report and the prescribed certificate from the Accountant.

29 Balances in parties' accounts excluding bank balances and balances with employees of the Company, are subject to confirmation and reconciliation.

30 Goods and services tax:

The Company is yet to file the annual return for GST in FORM GSTR -9 and reconciliation statement in FORM GSTR-9C for the year ended March 31, 2022. In the opinion of the Management, adjustments arising out of the same (if any) will not materially affect the Company's financial position.

31 The Company is engaged in the business of mobile advertising and support services and is not covered under applicability of Companies (Cost Records and Audits) Rules, 2014 issued by Ministry of Corporate Affairs under sub-section (1) of section 148 of the Companies Act, 2013.

32 The Company does not have outstanding borrowings from banks or financial institutions and hence, the secretarial audit as per Section 204 of the Companies Act, 2013 and Rule 9 of The Companies (Appointment and Remuneration of Managerial Personnel) Rules, 2014 is not applicable.

33 The Company had only one business segment, which is providing Information Technology (IT) and Information Technology Enabled Services (ITES) to its parent company.Accordingly, the amounts appearing in these financial statements primarily relate to this primary business segment. Further, there are no reportable geographical segement as prescribed in Accounting Standard 17.



Near Intelligence Private Limited
Notes to the financial statements for the year ended 31 March 2022
(Amount in ₹ hundreds unless otherwise stated)

34   **Business transfer agreement:**
Pursuant to the Business Transfer Agreement ("BTA") dated 1 November 2021 executed between the Company and Near India Private Limited ("the Seller"), the Seller has transferred eligible assets and liabilities as a slump sale. The Company will pay consideration of Rs. 2,54,00,000 to the seller.
These assets and liabilities are acquired with effect from 1 November 2021. Accordingly, these assets and liabilities have been considered in the financial book close as on 31 March 2022 for the Company.
The details of the assets and liabilities transferred are as follows:

| Particulars | Amount |
|---|---|
| **Liabilitites** | |
| Provision for gratuity | 1,43,657 |
| Rent equalisation reserve | 95,501 |
| Total (A) | 2,39,158 |
| | |
| **Assets** | |
| Property, Plant and equipment | 95,359 |
| Security deposit | 1,75,000 |
| Total (B) | 2,70,359 |
| | |
| **Purchase consideration** | 2,54,000 |
| | |
| **Goodwill on acquisition** | 2,22,799 |



**810**

Near Intelligence Private Limited
Notes to the financial statements for the year ended 31 March 2022

35    Analytical ratios

| Description of the ratio | Explanation of the items included in numerator and denominator | Year ended | Numerator | Denominator | Ratio | Explanation for variance |
|---|---|---|---|---|---|---|
| (a) Current ratio | Current assets / Current liabilities | Mar-22 | 4,39,442 | 7,63,614 | 0.58 | |
| (b) Debt-equity ratio | Interest/Return / Investment | Mar-22 | Since the Company does not have debt, disclosure of the ratio is not applicable. | | | |
| (c) Debt service coverage ratio | Earnings available for debt service / Debt service | Mar-22 | Since the Company does not have debt, disclosure of the ratio is not applicable. | | | |
| (d) Return on equity ratio ('ROE') | Net profits after taxes / Average shareholder's equity | Mar-22 | 1,94,099 | 1,95,099 | 0.99 | |
| (e) Inventory turnover ratio | Cost of goods sold / Average inventory | Mar-22 | Since the Company does not have inventory, disclosure of the ratio is not applicable. | | | |
| (f) Trade receivables turnover ratio | Net credit sales / Average accounts receivable | Mar-22 | 19,81,192 | 3,20,268 | 6.19 | |
| (g) Trade payables turnover ratio | Net credit purchases / Average trade payables | Mar-22 | 2,67,792 | 8,889 | 30.13 | |
| (h) Net capital turnover ratio | Net sales / Average working capital | Mar-22 | 19,81,192 | (3,24,172) | -6.11 | |
| (i) Net profit ratio | Net profit / Net sales | Mar-22 | 1,94,099 | 19,81,192 | 0.1 | |
| (j) Return on capital employed ('ROCE') | Earning before interest and taxes / Capital employed (Tangible networth +Debt) | Mar-22 | 2,69,706 | 1,95,099 | 1.38 | |
| (j) Return on investment ('ROI') | Interest/Return / Investment | Mar-22 | Since the Company does not have investment, disclosure of the ratio is not applicable. | | | |

**Note :** Since it is the first year of operations, there is no comparative details available for variance analysis.

117

Near Intelligence Private Limited
Notes to the financial statements for the year ended 31 March 2022
(Amount in ₹ hundreds unless otherwise stated)

36 The Company has not imported any goods / services or asset of capital nature in the current year.

37 The Company has earned income in foreign currency during the current year of Rs. 19.16 crores.

38 The Company does not fall under the ambit of Section 135 of the Companies Act, 2013 with respect to corporate social responsibility.

39 The Company has prepared financials from 29 September 2021 to 31 March 2022 for the financial year 2021-22 as per provisions of the Companies Act, 2013. Since, this is the first year of reporting numbers comparable for the previous year has been disclosed.

The notes referred to above form an integral part of the financial statements.

| | |
|---|---|
| As per our report of even date | for and on behalf of the Board of Directors of |
| for Singhvi Dev & Unni LLP | Near Intelligence Private Limited |
| Chartered Accountants | CIN: U72200KA2009PTC050999 |
| FRN :003867S/S200358 / LLPIN :AAP-3305 | |

MANOJ NAIR
Digitally signed by MANOJ NAIR
Date: 2022.10.28 18:33:02 +05'30'

ANIL MATHEWS
Digitally signed by ANIL MATHEWS
Date: 2022.10.28 13:24:15 +05'30'

JUSTIN JOSEPH
Digitally signed by JUSTIN JOSEPH
Date: 2022.10.28 13:22:57 +05'30'

| | | |
|---|---|---|
| **Manoj Nair** | **Anil Mathews** | **Justin Joseph** |
| Partner | Director | Director |
| Membership No.: 049426 | DIN: 01741174 | DIN: 02838539 |

| | | |
|---|---|---|
| Bengaluru | Bengaluru | Bengaluru |
| 28 October 2022 | 28 October 2022 | 28 October 2022 |



**119**

# ⫿⫿ TRILEGAL

7th floor, Marksquare,
61, St. Marks Road,
Bangalore 560001
Karnataka, India
**T** +91 80 4343 4646

**By Email/ R.P.A.D. / Courier**

7 June 2024

To,

1. **Mr. Justin Joseph**
    A 208, Vijetha Lapis Lazuli Apartment
    1st Main Road, Brookfield, Kundalahalli,
    Bangalore, Karnataka, India, 560037

2. **Mr. Anil Mathews**
    Apartment No. 102, RJ Manor Apartments,
    355, 80 feet road, Koramangala, 3rd Block,
    Bangalore 560 095

**Subject:**    Your duties and legal obligations as directors of Near Intelligence Private Limited.

Mr. Joseph and Mr. Mathews,

We write for and on behalf of our client Near Intelligence Pte. Ltd.[1], having its office at 1 Phillip Street, #05-01 Royal One Phillip, Singapore – 048692 **(Near Singapore)** acting through its director / authorized signatory Mr. Daileader, the authorized representative of Drivetrain, LLC. Pursuant to the Confirmation Order entered by the United States Bankruptcy Court, District of Delaware in the case *In re NEAR INTELLIGENCE, INC., et. al.,* on 15 March 2024, Drivetrain, LLC is the Litigation Trustee and the Litigation Trustee is vested with the power to act for Near Intelligence Pte. Ltd. in the same capacity as applicable to a board of directors and officers, subject to the provisions of the Plan.   We have been instructed to state as under:

1.    Near Singapore is the **(i)** registered and beneficial owner of 9,999 (nine thousand nine hundred and ninety nine) equity shares of Near Intelligence Private Limited **(Company)** and **(ii)** beneficial owner of 1 (one) equity share of the Company (with the registered ownership of such 1 (one) equity share being held by Mr. Justin Joseph only for the limited purpose of fulfilling the minimum shareholding requirements applicable to the Company under Companies Act, 2013). As such, Near Singapore is the owner of 100% (one hundred percent) of the issued and paid-up share capital of the Company. By virtue of such ownership, Near Singapore has direct and substantial interest in the way in which the affairs of the Company are conducted.

2.    As you are well aware, both of you were appointed as directors of the Company on 29 September 2021 and 2 December 2021, respectively. Being directors of the Company, both of you should be undoubtedly aware that several statutory compliances and other obligations concerning the Company's business and operations are well past their due

---

[1] Near Intelligence Pte. Ltd is a debtor in the referenced bankruptcy cases that were consolidated under the caption *In re* NEAR INTELLIGENCE, INC., et. al., (Case no. 23-11962) in the United States Bankruptcy Court, District of Delaware.

1

Ⅲ TRILEGAL

dates and may occasion penalties, monetary losses and other adverse consequences to the Company. These are obligations which can only be met with active participation of a director of the Company and are set out in the table at Paragraph No. 3 below. The purpose of this notice is to *inter alia* solicit your immediate attention to ensure that these obligations are met without any further delay.

3.   A non-exhaustive list of statutory and other legal obligations of the Company which will need your active participation along with the consequence which will follow owing to continued non-participation is set out below:

| Sl. No. | Particulars |
|---|---|
| 1. | Provide assistance to the Company to access the GST portal by updating the password and retrieve all the notices issued by GST authorities to the Company in the past few months. The Company is presently not able to access any communications / notices issued by the GST authorities and is at risk of being in non-compliance / incurring penalties. |
| 2. | File replies to the notices issued by the GST authorities for the cancellation of the Company's GSTN registration. The authorities have already suspended the GSTN registration and may at any time cancel the GSTN registration which will bring the Company's operations to a halt. |
| 3. | Sign the pending monthly GST returns and the annual return for FY 2022-23 so that the filling can be regularised failing which the authorities will cancel the Company's GSTN registration. The returns have not been filed since September 2023 and the GST Authorities may initiate action to cancel the Company's GSTN registration and to recover any unpaid taxes and consequential interest and penalties. Any such cancellation would mean that the Company will not be able to continue its operations and the Company will also lose benefit of the accumulated input tax credit. |
| 4. | File GST refund applications so that the Company can take benefit of an amount of approximately USD 170,000 in the form of accumulated input tax credits. The Company is unable to file the application seeking refund only for the want of cooperation from the directors to sign the application seeking for refund. If the timeline for filing refund applications lapses the Company will lose out on eligible refunds. |
| 5. | Assist the company with adding additional signatories on the GST portal so that routine GST fillings can be made. |
| 6. | File the Letter of Undertaking renewal application on the GST portal so that Company can continue to export services without paying GST. If this application is not filed, the Company will not be able to export services without payment of GST. |
| 7. | File the annual returns and financial statements for FY 2022-23 with Ministry of Corporate Affairs. |



**814**

121

|||| TRILEGAL

| Sl. No. | Particulars |
|---------|-------------|
| 8. | Conduct quarterly board meeting as per the Companies Act, 2013 and regularize the past lapses in conducting the quarterly board meeting. Both of you are undoubtedly aware that the last board meeting was held in September 2023. |
| 9. | Process applications of the ex-employees to transfer their Provident Fund accounts to the new employer's Provident Fund account. Several former employees have been repeatedly following up with the Company on the status of this transfer. Apart from statutory liabilities, this also exposes the Company to adverse legal action by the former employees. |
| 10. | Approve the fund transfer from ICICI Bank to other bank accounts of the Company to enable working capital use. |

4.  Your continued non-participation in complying with the above requirements is in breach of your statutory and fiduciary duties as directors of the Company. All liabilities and penalties which the Company may be exposed to because of your continued non-participation in complying with the above requirements will be to your account. Evidently, both of you have been negligent and unconcerned with fulfilling your obligations as directors of the Company and all consequences (including monetary and otherwise) which follow because of your negligence will be to your account.

5.  Near Singapore therefore calls upon both of you to signify your consent to take requisite actions and steps to ensure all matters set out in Paragraph No. 3 above are attended to, <u>within 48 hours from the date of receipt of this notice by you.</u> Our client remains committed to provide any support that may be required to enable you to comply with the matters set out in paragraph No. 3 above.

6.  That apart, it has come to the notice of Near Singapore that **(a)** Anil Mathews has incorporated and is a director of a company by the name "Alphabyte Ventures Private Limited" (**Alphabyte**) which is engaged in a similar (if not identical) business as the Company; **(b)** employees of the Company have been solicited to join Alphabyte; and **(c)** you have been using the confidential and proprietary information, trade secrets, intellectual property etc. which is owned by the Company and its holding companies for establishing and running the business of Alphabyte. Given the circumstances and the apparent lack of attention to managing the Company's affairs, it is likely that even Justin Joseph is actively involved in establishing and running the business of Alphabyte to the detriment of the Company. Both of you are hereby put on notice that such acts are in breach of your fiduciary duties and are causing wrongful loss to the Company. Near Singapore hereby calls upon you to cease all such activities immediately, desist from your participation in competition with the Company, and cooperate with the demand in



3

**815**

122

⫛⫛ TRILEGAL

this notice. Failing to do so, Near Singapore will be constrained to initiate appropriate legal proceedings against you.

7.    This notice is without prejudice to our client's rights and remedies.

Sincerely,

Mohammed Shameer
Partner



ANNEXURE K

P O O V A Y Y A

ADVOCATES & SOLICITORS

BENGALURU • NEW DELHI

*By electronic mail and speed post acknowledgement due*

June 10, 2024

**Mr. Mohammed Shameer,**
Partner, Trilegal
7th Floor, Marksquare,
61, St. marks Road,
Bengaluru – 560001
Telephone : +91 80 4343 4646

Dear Sir,

*Subject*:     **Interim reply to the letter received on June 07, 2024, issued by you on behalf of your client, Near Intelligence Pte. Ltd.**

We, on the basis of instructions issued to us by our client, Mr. Justin Joseph, hereby write for, and on behalf of, our client in relation to your letter dated June 07, 2024, issued on behalf of your client, Near Intelligence Pte. Ltd.

We are in the process of reviewing the contents of the Notice to enable us to respond to the same. We will respond to the Notice in seven (7) days' time. Needless to add, none of the contents of the Notice are admitted by our client. In the meantime, we call upon your client to refrain from initiating any proceedings against our client. This interim reply is issued without prejudice to our client's rights and defences under law.

Yours faithfully,

**Manu Kulkarni**
*Partner*

The Estate, Level Four, 121 Dickenson Road, Bengaluru 560 042, India | law@poovayya.net | +91 80 4656 3000

| From: | Aneeta Mathew |
|---|---|
| To: | Akshata Benegal; "Manu Kulkarni" |
| Cc: | "Justin Joseph"; "Dharmendra Chatur"; "Nirnay Shanbough"; "archishman@poovayya.net"; "Sathyasagar Mithra"; Mohammed Shameer; Project Nexus |
| Bcc: | nitin@azira.com |
| Subject: | RE: [EXT] RE: Fw: Near Intelligence Pte. Ltd. | Notice to Mr. Justin Joseph and Mr. Anil Mathews dated 7 June 2024 |
| Date: | Friday, June 14, 2024 6:22:00 PM |
| Attachments: | image001.png |

Dear Ms. Benegal, Mr. Kulkarni,

We are writing for and on the instructions of our client **Near Intelligence Pte. Ltd. (our Client)**.

It is really unfortunate that despite your client (Mr. Justin Joseph being a director of Near Intelligence Private Limited (**the Company**) – instead of performing his obligations which are imminent for the survival of the business of the Company, is seeking 7 (seven) days from 10 June 2024 to respond to our notice received by you on 7 June 2024. This is despite the repeated requests which have been made by our Client (and its group companies) on this subject matter – one such request being on 20 November 2023. Even after a period of 7 months of such request, your client has failed to comply with his duties as a director of the Company.

Be that as it may, our Client intends to trigger the GST return filing between **2PM to 6 PM, tomorrow (i.e. 15 June 2024)** and your client's immediate cooperation in this regard is solicited. Please note, that your client's failure to comply and cooperate with us to have the GST returns filed – will result in further statutory non-compliance and may potentially lead to the cancellation of the GST registration of the Company by the GST authorities. Any and all liabilities that will accrue to the Company as a result of such cancellation will be to your client's account.

On behalf of our Client, we call upon your client to comply with the demands made by us in our notice dated 7 June 2024 and this email.

Regards,

**Aneeta Mathew**
Associate

**CONFIDENTIALITY NOTE**
This communication (including any accompanying documents) is intended only for the use of the addressee(s) and contains information that is PRIVILEGED AND CONFIDENTIAL. Unauthorized reading, dissemination, distribution or copying of this communication is prohibited. If you have received this communication in error, please notify us immediately at https://www.trilegal.com/offices/ and promptly destroy the original communication. This email has been scanned for viruses and malware and has been automatically archived. Thank you for your cooperation.

**From:** Akshata Benegal <akshata.benegal@poovayya.net>
**Sent:** Tuesday, June 11, 2024 8:46 AM
**To:** Mohammed Shameer <Mohammed.Shameer@Trilegal.com>; Aneeta Mathew <Aneeta.Mathew@Trilegal.com>
**Cc:** 'Justin Joseph' <justinpj2000@yahoo.com>; 'Manu Kulkarni' <manu@poovayya.net>; 'Dharmendra Chatur' <dharmendra.chatur@poovayya.net>; 'Nirnay Shanbough' <nirnay.shanbough@poovayya.net>; 'archishman@poovayya.net' <smruthi.prahalad@poovayya.net>; 'Sathyasagar Mithra' <sathyasagar.mithra@poovayya.net>
**Subject:** [EXT] RE: Fw: Near Intelligence Pte. Ltd. | Notice to Mr. Justin Joseph and Mr. Anil Mathews dated 7 June 2024

Hi Shameer and Aneeta,

We write on behalf of our client, Mr. Justin Joseph. Please find attached a holding reply in response to your notice dated June 07, 2024 on behalf of Near Intelligence Pte. Ltd.

Warm regards,

Akshata Benegal

| Principal Associate | + 91 9886940570 | akshata.benegal@poovayya.net |

The Estate, Level Four

125

**818**



Poovayya & Co.
ADVOCATES & SOLICITORS

| BANGALORE | NEW DELHI |

121 Dickenson Road
Bangalore 560 042

T: +91 80 4656 3000
F: +91 80 4656 3088





| INDIA BUSINESS LAW JOURNAL AWARD WINNING LAW FIRM 2020 | Chambers and Partners APAC 2020 | IFLR1000 2020 | Asia Law 2020 | Media Law International 2019 | Venture Intelligence |
|---|---|---|---|---|---|
| | Leading Law Firm in Employment and Real Estate | Ranked for M&A and Private Equity | Ranked for Corp and M&A, Dispute Resolution, Labour & Employment, Construction & Real Estate and TMT | Leading Practitioners | Top 15 Legal Advisors Mergers & Acquisitions 2017 |

INTERNET EMAIL CONFIDENTIALITY FOOTER

Attorney – client privileged/confidential information may be contained in this message. If you are not the first addressee indicated in this message (or responsible for delivery of the message to such person), you may not copy or deliver this message to anyone. In such case, you should destroy this message and kindly notify the sender by reply email. Please advise immediately if you or your employer do not consent to internet email for messages of this kind. Opinions, conclusions and other information in this message that do not relate to the official business of our firm shall be understood as neither given nor endorsed by it. Formal legal opinions are issued by the firm duly executed by its partners. Accordingly, this message shall not be considered as a formal legal opinion issued by the firm.

 Please consider the environment before printing this email

Begin forwarded message:

On Friday, June 7, 2024, 4:48 PM, Aneeta Mathew <Aneeta.Mathew@Trilegal.com> wrote:

Mr. Justin Joseph and Mr. Anil Mathews,

We write for and on behalf of our client, Near Intelligence Pte. Ltd. We are issuing the attached notice to you under instructions, the contents of which are self-explanatory. You are required to take note of the contents of the notice and ensure compliance with the demands therein within the timelines mentioned.

Regards,

**Aneeta Mathew**
Associate

—

**Trilegal**
6th Floor, Marksquare,
61, St. Marks Road,
Bangalore – 560 001

—

Tel +918043434646

EV charging point now available at our office

—



CONFIDENTIALITY NOTE

This communication (including any accompanying documents) is intended only for the use of the addressee(s) and contains information that is PRIVILEGED AND CONFIDENTIAL. Unauthorized reading, dissemination, distribution or copying of this communication is prohibited. If you have received this communication in error, please notify us immediately at https://www.trilegal.com/offices/ and promptly destroy the original communication. This email has been scanned for viruses and malware and has been automatically archived. Thank you for your cooperation.


Disclaimer

The information contained in this communication from the sender is confidential. It is intended solely for use by the recipient and others authorized to receive it. If you are not the recipient, you are hereby notified that any disclosure, copying, distribution or taking action in relation of the contents of this information is strictly prohibited and may be unlawful.

This email has been scanned for viruses and malware, and may have been automatically archived by **Mimecast Ltd**, an innovator in Software as a Service (SaaS) for business. Providing a **safer** and **more useful** place for your human generated data. Specializing in; Security, archiving and compliance. To find out more Click Here.

| From: | Akshata Benegal |
|---|---|
| To: | Aneeta Mathew |
| Cc: | "Justin Joseph"; "Manu Kulkarni"; "Dharmendra Chatur"; "Nirnay Shanbough"; "Smruthi Prahalad"; "Sathyasagar Mithra"; Mohammed Shameer; Project Nexus |
| Subject: | RE: [EXT] RE: Fw: Near Intelligence Pte. Ltd. | Notice to Mr. Justin Joseph and Mr. Anil Mathews dated 7 June 2024 |
| Date: | Saturday, June 15, 2024 11:58:38 AM |
| Attachments: | image001.png |
| | RE Call - Justin Joseph (without prejudice).msg |
| | RE Call - Justin Joseph (without prejudice).msg |
| | RE Justin Joseph Near Intelligence Inc..msg |
| | RE Justin Joseph.msg |
| | RE Justin Joseph.msg |
| | RE Justin Joseph.msg |

Dear Ms. Mathew,

We are writing to you as follows upon instructions from our client, Mr. Justin Joseph.

At the outset, it appears that your client has not given you the full picture of the discussions and negotiations that have been ongoing between your client and our client since October 27, 2023 until our last email on June 07, 2024.

Pursuant to our client's legal notice dated October 14, 2023, your client, through their counsel, reached out to our client seeking our client's cooperation to participate in an investigation against Mr. Anil Mathews and other officers against whom certain allegations have been made by your client. Your client offered to settle all disputes with our client. Since then, our client has been engaged in discussions with your client which are recorded in emails exchanged on 03.11.2023, 09.11.2023, 10.11.2023,15.11.2023, 17.11.2023, 20.11.2023, 21.11.2023, 28.11.2023, 29.11.2023, 03.12.2023, 05.12.2023, 06.12.2023, 11.12.2023, 15.12.2023, 16.12.2023, 29.12.2023, 18.01.2024, 30.01.2024, 02.02.2024, 07.02.2024, 08.02.2024, 28.02.2024 and 29.02.2024. On 29.02.2024, our client and your client agreed to terms of settlement, in principle. As per the said in principle terms, your client had agreed to, *inter alia*, pay our client a compensation amount, and our client had agreed to perform all secretarial and corporate actions as required by your client by virtue of being a director of Near Intelligence Private Limited ("**NIPL**"). Pursuant thereto, your client indicated that they will share a draft of the settlement agreement recording the same.

We followed up for the draft settlement agreement on 05.03.2024, 28.03.2024, 03.04.2024, 05.04.2024, and 15.04.2024. Your client finally sent the draft settlement agreement to our client only on 24.04.2024, i.e., nearly two months after the terms were agreed to in principle. From a reading of the draft settlement agreement, it was apparent that the in-principle settlement terms were not captured in the draft at all. Our client flagged the same for your client. To our client's shock, your client did a *volte face* and demanded that our client perform some of the action items prior to receipt of payment of the settlement amount and execution of the settlement agreement as well, which was not what was agreed to by our client. Your client engaged our client into further discussions in emails exchanged on 25.04.2024, 27.04.2024, 29.04.2024, 30.04.2024, 03.05.2024, 04.05.2024, and 08.05.2024 on this matter, after which no response was received from your client. We followed up with your client on 07.06.2024.

The email trail of the aforesaid email communication is attached for your reference.

It is apparent from the foregoing that your client has dragged on and delayed this matter for the past 8 months. During this entire period and until date, our client has been continued to be kept on 'administrative leave' and has had absolutely no access to the information, data or any systems of NIPL. It is absolutely false to say that our client has not complied with his duties as a director when such a situation was clearly created by your client solely.

Our client has now received your legal notice dated June 07, 2024 and this email below dated June 14, 2024, wherein there is absolutely no mention of the aforesaid negotiations and discussions. It is, therefore, only understandable that our client requires sufficient time to respond to the legal notice and our client will issue such reply by next week, i.e., within 7 days from his interim reply.

Further, our client has not received any request for any sort of compliance on November 20,2023. With regard to your request in the trailing mail, please note that since our client lost access as stated above on September 30, 2023, our client is completely unaware of the affairs of NIPL and transactions etc. carried on by it. Our client has been informed that NIPL has been engaged in non-legitimate cross-border transactions which may be in violation of FEMA and transfer pricing guidelines. Therefore, we are instructed to request you to restore our client's access to all systems and information of NIPL immediately so that he can validate and verify all information before signing off. Without such information being provided to our client, it is completely unfair to expect our client to sign off on the same and carry out compliances on behalf of NIPL blindly.

Our client reserves all rights.

Warm regards,

Akshata Benegal

| Principal Associate | + 91 9886940570 | akshata.benegal@poovayya.net |

ANNEXURE N
# 821



P O O V A Y Y A
ADVOCATES & SOLICITORS
BENGALURU · NEW DELHI

*By courier and Email*

Date: June 18, 2024

To,

**M/s TRILEGAL,**
7th Floor, Marksquare,
61, St. Marks Road,
Bengaluru – 560001.

*Kind Attention: Mr. Mohammed Shameer, Partner*

Dear Sir,

**Subject:** Reply to the Legal Notice received on 07.06.2024, issued by you on behalf of your client, Near Intelligence Pte. Ltd.

We write to you on behalf of and on instructions from Mr. Justin Joseph ("**our Client**") and respond to your legal notice dated 07.06.2024 (the "**Near Legal Notice**") as hereunder:

1. At the outset, our Client vehemently denies all statements, averments, claims and allegations made in the Near Legal Notice except to the extent admitted herein. Further, anything that has not been admitted shall be construed as denied. Nothing shall be deemed admitted for want of specific traversal. The contents of the legal notice dated 14.10.2023 (the "**Justin Legal Notice**") are not reiterated herein for the sake of brevity. This reply is to be read together with the Justin Legal Notice.

2. At the outset, it is apparent that your client has not provided you with the complete facts, particularly with respect to the settlement negotiations and discussions between your client, Near Intelligence Inc. ("**Near Inc.**") and Near Intelligence Private Limited (the "**Company**"), and that were ongoing since 27.10.2023 until 07.06.2024.

3. As your client is aware and as admitted in various communications, on 30.09.2023, our Client was suddenly, without any notice or authorization or any explanation whatsoever, denied access to his work email account and all other portals, systems, and other such material relating to the Company. Our Client repeatedly followed up with his colleagues at the Company, your

Page 1 of 11

129



ADVOCATES & SOLICITORS

BENGALURU · NEW DELHI

**822**

client and Near Inc., seeking an explanation for the same. However, nobody offered any explanation or clarifications to our Client. In the circumstances, our Client was put through great stress and mental agony due to the uncertainty and lack of explanations and information from your client. As your client is also aware, our Client further discovered that certain employees of your client and Near Inc. conducted town hall sessions with employees of your client, the Company and Near Inc. announcing a restructure of the management and that the erstwhile management including our Client have been put on administrative leave and that an internal enquiry is being conducted against them. The allegations made by the said employees against our Client are completely false and the aforementioned actions of your client, Near Inc. and its officers constitute defamation, and are not only in egregious breach of our Client's employment agreement, but are more importantly **without any authorization at all**. In the circumstances, our Client issued the Justin Legal Notice to Near Inc and the said employees seeking, *inter alia*, compensation and a retraction of the defamatory statements made against him. A copy of the Justin Legal Notice is annexed herewith as **Annexure A** for your reference.

4.   However, neither your client, nor Near Inc. nor the Company have responded to the Justin Legal Notice till date. Instead, your client, Near Inc and the Company approached our Client through their legal counsel, 27.10.2023, and sought our client's cooperation to participate in an investigation being conducted against Mr. Anil Mathews and other officers against whom certain allegations were made by your client and Near Inc. In response to the said email, our Client through his legal counsel, on 02.11.2023, sought the following clarifications with respect to the aforesaid investigation:

> "*1. Please provide a brief description of the investigation referred to in your email in the trailing mail.*
> *2. Is this investigation being conducted by Near Intelligence Inc. or by any governmental authority? Please provide a brief explanation on the procedure of the investigation, and what happens once the investigation is concluded.*
> *3. As our client is an employee of Near Intelligence Private Limited, and not of Near Inc., how does this investigation concern our client?*

Page 2 of 11

130



P O O V A Y Y A

ADVOCATES & SOLICITORS

BENGALURU · NEW DELHI

**823**

*4. Is our client being interviewed as a witness? Are there any allegations made against our client? If so, please provide details of this.*

*5. Will all expenses relating to the investigation and any outcome therefrom in respect of our client, be borne by Near Intelligence Inc.?*

*6. By when can we expect a response to our client's legal notice?..."*

5.   On 03.11.2023, your client and Near Inc. provided the following clarifications:

*"1. Please provide a brief description of the investigation referred to in your email in the trailing mail.*

> *We are investigating transactions relating to the relationship between Near Intelligence and MobileFuse. We are specifically interested in hearing about any agreements with MobileFuse as both a customer and a vendor to Near. We are also investigating other transfers to vendors and transfers to Mon FX.*

*2. Is this investigation being conducted by Near Intelligence Inc. or by any governmental authority? Please provide a brief explanation on the procedure of the investigation, and what happens once the investigation is concluded.*

> *I am conducting an investigation on behalf of Near Intelligence, Inc. We have collected documents and are interviewing witnesses. If Mr. Joseph agrees to sit for an interview, we anticipate showing him certain Near documents on screen and asking him to share any knowledge or understanding he has with us. He will have an opportunity to fully examine each document on screen before answering any questions. Once our investigation is concluded we will report to the Restructuring Committee of the Board and any determinations by the company will be communicated to Mr. Joseph.*

*3. As our client is an employee of Near Intelligence Private Limited, and not of Near Inc., how does this investigation concern our client?*

> *My understanding is that Near Intelligence Private Limited is a wholly owned subsidiary of Near Intelligence, Inc.*

*4. Is our client being interviewed as a witness? Are there any allegations made against our client? If so, please provide details of this.*

> *Mr. Joseph is being interviewed as a witness and I am not aware of any allegations made against him.*

*5. Will all expenses relating to the investigation and any outcome therefrom in respect of our client, be borne by Near Intelligence Inc.?*

The Estate, Level Four, 121 Dickenson Road, Bengaluru 560 042, India | law@poovayya.net | +91 80 4656 3000



ADVOCATES & SOLICITORS

BENGALURU · NEW DELHI

*I am not aware of any entitlement to indemnification for Mr. Joseph.*

6.  *By when can we expect a response to our client's legal notice?*

    *The legal notice that you sent is being handled by counsel at TriLegal in India. I will encourage them to provide a timely response…"*

7.  It is apparent from the foregoing that the investigation was not against our Client and that there are absolutely no allegations made against our Client. Thereafter, your client and Near Inc. exchanged several emails with our Client on 03.11.2023, 09.11.2023, 10.11.2023, 15.11.2023, 17.11.2023, 20.11.2023, 21.11.2023, 28.11.2023, 29.11.2023, 03.12.2023, 05.12.2023, 06.12.2023, 11.12.2023, 15.12.2023, 16.12.2023, 29.12.2023, 18.01.2024, 30.01.2024, 02.02.2024, 07.02.2024, 08.02.2024, 28.02.2024 and 29.02.2024, with respect to settlement with our client. Copies of the email communication exchanged between your client, Near Inc., the Company and our Client are produced herewith as **Annexure B**, for your reference.

8.  Pertinently, our client notified you on 21.11.2023, that since the blocking of our client's access to his official email, company records, books and other accounts since 30.09.2023, our client has been completely disabled from performing any of his duties as a director of the Company. Our client even notified you that any statutory penalties incurred by the Company are solely attributable to your client and Near Inc., and that our Client cannot be termed as an officer of the Company as, pursuant to the blocking of his access, he has not been involved in the day to day affairs and management of the Company since 30.09.2023. Our client further categorically stated that in the event that your client, Near Inc. and the Company require our client to carry out any actions as a director of the Company, our Client's access to his accounts **must be reinstated immediately**, and Near Inc. and the Company must furnish a written undertaking in our Client's favour to indemnify him against any actions that may be taken against our Client due to the illegal actions of Near Inc.

The Estate, Level Four, 121 Dickenson Road, Bengaluru 560 042, India | law@poovayya.net | +91 80 4656 3000

132

**825**



P  O  O  V  A  Y  Y  A
**ADVOCATES & SOLICITORS**
BENGALURU • NEW DELHI

9.  Pursuant thereto, your client, on 28.11.2023, responded to our Client providing a list of conditions for our Client to complete for settlement. Our Client, on the same day, responded to your client and indicated that he will extend his cooperation and fulfil the said conditions provided that the following terms be met by your client and Near Inc.:

> "...1. *Near Intelligence Inc. and its subsidiaries including NIPL will issue an undertaking, in writing, unconditionally indemnifying our client against any proceedings / actions / claims that may be initiated against our client or involving our client in any way, arising from anything relating to Near Intelligence Inc, NIPL or any other related entities;*
>
> *2. Near Intelligence Inc. and its subsidiaries including NIPL will, in writing, unconditionally release our client from any and all liabilities in respect of any past, existing or future claims, actions, legal proceedings, etc. vis-a-vis Near Intelligence Inc, NIPL or any other related entities.*
>
> *2. Our client be paid a fair compensation in view of your client's demand that he resign from employment and directorship, and for defaming his name and reputation and the agony and trauma caused to our client by your client's unprofessional, unethical and illegal actions as mentioned in our legal notice. We can discuss this in more detail; and*
>
> *4. An official statement from Near Intelligence Inc. and NIPL, to all employees of NIPL and its parent entities, clarifying that no allegations have been made against our client, and that the investigation being conducted by you is not against our client...*"

10.  Your client and Near Inc. agreed to the aforesaid terms and pursuant thereto, your client and our Client engaged in negotiations on the quantum of monetary compensation. Finally, on 28.02.2024, after much negotiation, your client offered a monetary compensation of $350,000. Our client, in the interest of arriving at a settlement, accepted the offer on 29.02.2024. It is pertinent to note that our Client accepted a settlement sum that was significantly lower than what he is entitled to and had initially sought for the mental agony caused to him, and the damage that this incident has caused to his career, for no fault of his. This was solely to close this issue once and for all so that he is able to move on from this distressing and unpleasant situation that he was thrown into by your client. In the course of these negotiations, our Client and your client have also engaged in video conference calls through their legal counsels, where the terms were discussed and negotiated further.

Page 5 of 11

**826**



P O O V A Y Y A

ADVOCATES & SOLICITORS

BENGALURU • NEW DELHI

11. Pursuant to our Client accepting your client's settlement offer on 29.02.2024, your client indicated that they will share the draft settlement agreement. Our Client, thereafter, followed up with your client on 05.03.2024, 28.03.2024, 03.04.2024, 05.04.2024, and 15.04.2024, for the draft agreement. At every instance, your client responded indicating that the draft was being prepared. It is notable that during this delay of two months, there was absolutely no mention of the corporate compliances that your client now requires our Client to complete within short time frames.

12. Your client finally shared the draft settlement agreement on 24.04.2024, nearly two months after the terms of settlement were agreed to, in-principle. From a bare perusal of the draft agreement, it is apparent that there was a complete deviation from the in-principle settlement terms. Your client sought to include our Client's statutory entitlements such as gratuity in the settlement amount of $350,000 which was never agreed to by the parties. Further, it was agreed that Near Inc. would also issue releases and provide indemnities to our Client. However, Near Inc. was not shown as a party to the draft agreement Furthermore, the manner of payment of the settlement sum provided in the settlement agreement was by way of instalment instead of the said sum being paid upfront, which was never discussed or agreed to prior to this. Our client was also entitled to a variable bonus component of his salary, which was not referred to or mentioned in the draft agreement. In the circumstances, our Client flagged the said concerns to your client on 25.04.2024. At this stage, your client made various excuses and delayed the discussions. In fact, your client's counsel resorted to making unpleasant and unfair comments against our Client and has not responded to our Client since May 08, 2024. It is apparent from the sudden *volte face* by your client, Near Inc. and the Company that they are attempting to circumvent the in-principle settlement terms, and are threatening and brow-beating our Client into carrying on actions as required by them which is wholly unjust and unfair.

13. As your client is aware, our Client is a qualified IT professional with extensive experience in Engineering, Operations and Human Resources, having a career spanning more than twenty

Page 6 of 11

The Estate, Level Four, 121 Dickenson Road, Bengaluru 560 042, India | law@poovayya.net | +91 80 4656 3000

134



827

ADVOCATES & SOLICITORS

BENGALURU · NEW DELHI

(20) years in the field. Our Client has been associated with the business that ultimately culminated in the incorporation of Near Inc and its subsidiaries (the **"Business"**), since its inception and is a founding member. Our Client is not only a long standing employee but also a vital member of the management team of the Business and has been a Director of the Company from its inception. Prior to this, our Client was also managing the affairs of the Company's predecessor, Near India Private Limited, and was a director of the said company as well.

14. Coercing and intimidating our Client to sign off on statutory compliances blindly, without providing any access to documents and information regarding the company's activities and operations for the last eight (8) months when he was denied all access and information relating to the Company by your client is contrary to law, civil and criminal. As your client is aware, a director has a fiduciary duty to verify and validate that operations, transactions and other statutory compliances of the company are being carried out as per law, and to ensure that there are no violations, particularly of any labor laws, Companies Act, 2013, and FEMA/FERA Laws. Our Client strongly suspects that there are many malicious and illegitimate actions that are being carried out by your client and our Client is entitled to verify all Company records and documents before having to sign off on the same.

15. We are instructed to reiterate that the aforesaid actions of your client, Near Inc, its board of directors and its CEO, Ms. Gladys Kong, have caused untold agony and trauma to our Client and a dent to his reputation and his career which is irreparable. Your client, Near Inc. and the Company have done a complete *volte face* by attempting to cast blame on our Client for alleged non-performance of actions being fully aware that our Client has not had access to any information or data regarding the Company's activities since 30.09.2023. Our Client has been put in an extremely unfair position by your client, for reasons that are directly attributable to your client, Near Inc and the Company. Please note and appreciate that the said acts, both commissions and omissions, are both a criminal offence as well as a civil wrong, punishable as per the laws for the time being in force. Our Client reserves all rights and contentions.

Page 7 of 11

**828**



POOVAYYA
ADVOCATES & SOLICITORS
BENGALURU · NEW DELHI

16. A paragraph wise traversal of the Near Legal Notice is as follows:

   a. **Regarding Paragraph No.1:** The contents of the paragraph under reply are a matter of record and do not require a specific traversal.

   b. **Regarding Paragraph No.2:** The contents of the paragraph under reply are denied as false and baseless. As stated above, pursuant to our Client being put on 'administrative leave' and being denied access to the Company's data and systems without any notice or explanation, our Client has not been updated on the affairs of the Company. Despite this, it is our Client who has, from time to time during the aforementioned settlement negotiations, reminded your client that there are pending statutory compliances for the Company to be carried out. However, your client, by dragging on and delaying the negotiations, and thereafter doing a complete *volte face* after the terms of settlement were agreed to in principle, has ignored the same. The delay of eight months is solely attributable to your client.

   c. **Regarding Paragraph No.3:** The table of compliance produced in the paragraph under reply is different from the table of compliances annexed to the aforesaid draft settlement agreement. In any event, the same is denied for want of knowledge.

   d. **Regarding Paragraph No. 4 and 5:** The contents of the paragraph under reply are denied as false and baseless. As your client is well aware, pursuant to our Client being put on 'administrative leave' and being denied access to the Company's data and systems, our Client has no knowledge of the status of compliances of the Company. In any event, our Client having been denied access as stated above, is disabled from carrying on any of the alleged compliances as required by your client. The fact that your client has issued the Near Legal Notice despite being aware of the said facts only demonstrates that your client is attempting to threaten our Client and coerce him into signing the draft settlement agreement as per your client's terms, which is wholly illegal and untenable. Our client reserves all rights.

Page 8 of 11

**829**



POOVAYYA

ADVOCATES & SOLICITORS

BENGALURU • NEW DELHI

   e. **Regarding Paragraph No.6:** The contents of the paragraph under reply are denied as false and baseless.  Our client is neither a director nor an employee nor a shareholder of Alphabyte Ventures Private Limited and therefore cannot be held    accountable for any alleged actions related to the establishment and operation of Alphabyte Ventures Private Limited. Any insinuation to the contrary is without merit and constitutes defamation. The allegations contained in your notice are defamatory and have caused significant harm to the personal and professional reputation of our Client. Your baseless accusations have been circulated without evidence, leading to unwarranted damage.

17. Given these shocking turn of events after our Client has spent months of his time in discussions with your client, Near Inc. and the Company, our Client is constrained to reiterate his demands as made in the Justin Legal Notice against your client, Near Inc, and the Company, and also demands clarifications / explanations on a few additional points, as follows:

   a) An immediate retraction of all defamatory statements made in the Near Legal Notice which should be circulated to all recipients of the Near Legal Notice;

   b) To cease and desist from making any further baseless allegations or engaging in any conduct aimed at damaging our Client's reputation;

   c) provide a detailed explanation of the allegations made against our Client, the basis thereof, reasons for putting our Client on the alleged administrative leave and the reason why no such explanation or communication was offered until date;

   d) issue a public apology to our Client for defaming his name and reputation;

   e) issue a public clarification confirming that the allegations of mismanagement and intellectual property theft are not made against our Client;

Page 9 of 11

**830**



ADVOCATES & SOLICITORS

BENGALURU · NEW DELHI

f) **Immediately** drop all further alleged enquiries against our Client;

g) provide a detailed explanation for the reason why our Client's access to the Company systems, data and portals was not reinstated despite your client, Near Inc and the Company expressly admitting that no allegations or inquiry is being conducted against our Client, and despite their demand that our Client carry on director actions on behalf of the Company;

h) revoke the unauthorized and alleged administrative leave that our Client has been put on and enable our Client to resume his professional duties;

i) provide a detailed explanation as to who has authorized and approved all activities of the Company after our Client was put on 'administrative leave'?

j) provide a detailed explanation as to why nearly one hundred (100) employees of the Company have been laid off from employment or were forced to resign from employment with the Company, after our Client was put on 'administrative leave', and who authorized such actions of the Company and whether the Labour Department and other statutory bodies were informed and requisite permissions and approvals were obtained for the same.

k) Provide a detailed description and explanation of all transactions and transfers carried out by the Company from the date when our Client was put on administrative leave (30.09.2023) until date. Our Client has learnt that some of these transactions are cross-border transactions and some of these are non-legitimate transactions and can be a violation of the FEMA, Statutory Compliance and Transfer pricing guidelines. As these transactions have taken place without our Client's knowledge or consent, our Client is entitled to ensure that the said transactions are legitimate before signing off on the same.

The Estate, Level Four, 121 Dickenson Road, Bengaluru 560 042, India | law@poovayya.net | +91 80 4656 3000



**831**

l) Not take any steps with regard to the Company or its employees since that is completely and absolutely unauthorized;

m) pay a sum of Rs.10,00,00,000 /- (Rupees Ten Crores) along with interest at the rate of 12% from 30.09.2023, as compensation for the agony and trauma caused to our Client by your unprofessional, unethical and illegal actions as described above without fail; and

n) pay our Client's salary for May 2024 along with annual variable bonus for the year 2023 which our Client is entitled to as an employee of the Company;

within seven (7) days from the date of receipt of this notice, failing which our Client will be constrained to initiate appropriate action, both civil and criminal, against you. In such a case, you alone will be responsible for all the cost/s, consequence/s and damage/s thereof.

18. Without prejudice to the foregoing and to our Client's rights and contentions, our Client is agreeable to carrying out the action items as required by your client subject to your client, Near Inc. and the Company honouring the aforementioned terms of settlement that were agreed to in principle.

19. Our client reserves all rights and contentions.

**MANU PRABHAKAR KULKARNI**
**PARTNER,**
**POOVAYYA & CO.,**
**Advocates and Solicitors**



1st Estate, Level Four, 121 Dickenson Road, Bengaluru 560 042, India | law@poovayya.net | +91 80 4655 3000

139                                    ↳2

**832**

# Poovayya  Co.
ADVOCATES    SOLICITORS

ANNEXURE-"A"

*By courier and Email*

Date: October 14, 2023

To,

1.  **Near Intelligence Inc.**
    100 W Walnut St, 4th Floor Pasadena, CA 91124
    *Kind Attention: Gladys Kong – Interim CEO*
2.  **Ms. Gladys Kong**
    Having office at
    100 W Walnut St, 4th Floor Pasadena, CA 91124
    Email address: gladys@near.com

3.  **Mr. Jay Angelo**
    Having office at
    100 W Walnut St, 4th Floor Pasadena, CA 91124
    Email address: jay.angelo@near.com

4.  **Mr. John Faieta**
    Having office at
    100 W Walnut St, 4th Floor Pasadena, CA 91124
    Email address: jfaieta@near.com

5.  **Mr. Mark Greene**
    Having office at
    100 W Walnut St, 4th Floor Pasadena, CA 91124
    Email address: mngreene@gmail.com

6.  **Mr. Sherman K Edmiston**
    Having office at
    100 W Walnut St, 4th Floor Pasadena, CA 91124
    Email address: sherman@hicapm.com

7.  **Mr. Richard Salute**
    Having office at
    100 W Walnut St, 4th Floor Pasadena, CA 91124
    Email address: richard.salute@gmail.com

8.  **Ms. Mini Krishnamoorthy**
    Having office at
    100 W Walnut St, 4th Floor Pasadena, CA 91124
    Email address: mk@kludein.com
9.  **Ms. Kathryn Petralia**
    Having office at



1

The Estate, Level Four, 121 Dickenson Road, Bangalore - 560 042, India
Phone : + 91 80 46563000   Fax : +91 80 4656 3088  Email : law@poovayya.net

*13*    **833**

# Poovayya  Co.

ADVOCATES        SOLICITORS

100 W Walnut St, 4th Floor Pasadena, CA 91124
Email address: kpetralia@gmail.com

Dear Sir / Ma'am,

**Subject:**   Breaches of the terms of employment and mistreatment of our client, Mr. Justin
Joseph, Chief People Officer

We write to you on behalf of our client, Mr. Justin Joseph (hereinafter referred to as "**our Client**"),
as follows:

1.   Our Client is a qualified IT professional with extensive experience in Engineering, Operations
and Human Resources, having a career spanning more than twenty (20) years in the field.

2.   We are instructed that the first of you ("**Near Inc.**") is a company incorporated under the
laws of the United States of America, and is a full stack data intelligence SaaS platform that
curates one of the world's largest sources of intelligence on people and places. The second of
you ("**Ms. Kong**") is an employee and the interim CEO of Near Inc. The third and fourth of
you are also employees of Near Inc. The fifth of you to the nineth of you are directors of
Near Inc. (hereinafter, collectively referred to as the "**Board**").

3.   We are instructed that Mr. Anil Mathews set up the business that ultimately culminated in the
incorporation of Near Inc. (the "**Business**"). Our Client has been associated with the
Business since its inception and is a founding member alongside Mr. Anil Mathews. Our
Client was appointed as the Chief People Officer of the Business in 2016, and retains the same
position till date. Prior to this, our Client was serving as the Vice President – Operations. Our
Client currently heads human resources at the Business level, and serves as a director of Near
Intelligence Private Limited ("**NIPL**"), a company incorporated under the Companies Act,
2013, and a fully owned subsidiary of a subsidiary of Near Inc. Mr. Anil Mathews is the only
other director of NIPL. Our Client manages operations and is the authorized signatory of

2  

141

# Poovayya Co.

ADVOCATES        SOLICITORS

*14* **834**

NIPL. He was also one of the few key management personnel authorized to manage the Business' Google Workspace account. The other authorized persons included the founder, Mr. Anil Mathews, and persons located at the USA and India offices.

4.  As is clear from the foregoing, our Client is not only a long standing employee but also a vital member of the management team of the Business.

5.  On September 30, 2023, one Mr. Sooraj Balakrishnan, another authorized admin to the Google Workspace account, reached out to our Client indicating that he is unable to access his email account. Our Client, in discharge of his duties as an admin, attempted to log into his own email account to reset Mr. Balakrishnan's password. However, to his shock, our Client received a pop-up message indicating that the password to his own account has been reset. Given this alarming situation, our Client reached out to the other authorized admins notifying them of the said issue, including account admins in the US - Mr. Wes Ferrari and Ms. Kong. Mr. Ferrari never responded to our Client, and Ms. Kong indicated that she is *"on the road"* and unable to assist our Client.

6.  In the course of his efforts to regain access to his email account, our Client also checked with the aforesaid Mr. Anil Mathews, the other Director of NIPL, who realized that even he was unable to access his email account as the password had been reset.

7.  In the circumstances, our Client feared that the said email accounts may have been hacked and spent all night, despite it being a Saturday - non-working day, in his efforts to regain access to the email accounts. Our Client reached out the Google support team and the reseller team, and to Mr. John Faieta (the then Global Finance Controller) and other officers to alert them of this issue and to find a resolution for the same, at the earliest, keeping the interest of the Business in mind.

8.  Mr. Mathews, thereafter, informed our Client that the aforesaid Ms. Kong had issued an email to Mr. Mathews, to his personal email address, inviting him to a special board meeting of Near Inc.. We are instructed that Mr. Mathews informed our Client, thereafter, that the board of

3

142

/ร    835

# Poovayya Co.

ADVOCATES    SOLICITORS

directors of Near Inc., i.e., the Board as defined hereinabove, on October 01, 2023, passed a board resolution for an internal investigation to be conducted in respect of allegations of financial mismanagement and alleged intellectual property theft made against Mr. Mathews and one Mr. Rahul Agarwal, the Chief Financial Officer. Mr. Mathews further informed out client that Board also informed him that the key management team, including our Client, is put on administrative leave. Pertinently, all persons put on administrative leave are of Indian origin / nationality. Our client has learnt from public domain sources that Near Inc. has filed a Form-8K referring to the said allegations but has not provided any details in the filing as well.

9.  Our Client and the other officers of the erstwhile management team also lost access to their 'Slack' accounts, thereafter.

10. Thereafter, our Client was informed by his colleagues that on October 03, 2023, Mr. Mark Greene (the fifth of you), and Ms. Kong conducted town hall sessions with employees of the following entities namely, Near Inc., NIPL, Near Intelligence Pte. Limited., Near Intelligence SAS and Near Intelligence Pty. Ltd. At the said town halls, it was announced that the Board is restructuring the management and Ms. Kong will take over as Interim CEO, Mr. John Faieta (the fourth of you) will be Interim CFO, and Mr. Scott Slipy will manage human resources. Our Client was further informed that the board did not announce any reason for the restructuring nor did they take any questions from the employees on the same.

11. Further, our client learnt through his colleagues that on October 06, 2023, Ms. Kong conducted another round of town hall sessions where she announced that the management team (including our Client) have been put on administrative leave and that an internal inquiry is being conducted.

12. Shockingly, our Client has not received any official communication, oral or written, from the Board or any officer of Near Inc. or NIPL informing him that he is being put on "administrative leave". At this stage, all information received by our Client has been merely through other employees / colleagues.



4

The Estate, Level Four, 121 Dickenson Road, Bangalore - 560 042, India
Phone : +91 80 46563000   Fax : +91 80 4656 3088  Email : law@poovayya.net

143



*16* **836**

# Poovayya Co.

A D V O C A T E S       S O L I C I T O R S

13. The aforesaid actions of the Board and Ms. Kong and NIPL are in egregious breach of the employment agreement dated November 01, 2021 executed between NIPL and our Client (the "**Employment Agreement**") and are more importantly **without authorization at all.**

14. A rudimentary understanding of Indian law would have made it clear to you that the board of directors of India is the final decision-making authority for NIPL. Our Client is on the board and has not received any communication about any purported administrative leave. Therefore, *ex facie*, all your actions and communications are completely unauthorized.

15. We call upon you to note that if you do **not** regard NIPL as a distinct and independent company but merely as a branch or outpost of Near Inc. and that as a consequence, you are entitled to take decisions for NIPL's employees because, as per you, de facto, NIPL employees are Near Inc. employees, we request that you make this position explicitly clear and in writing. If our Client is not treated as a Near Inc. employee, there is absolutely no basis whatsoever for you to take any decisions whatsoever regarding our Client or for that matter any other employee of NIPL. You have absolutely no authorization to block the employees' access to information or prevent them from working. You have, needless to say, no authorization whatsoever to put them on administrative leave or leave of any other kind. Our Client calls upon you to note that if you regard our Client and other employees of NIPL as Near Inc. employees, such a position will trigger multiple foreign exchange related laws and taxation laws including the concept of permanent establishment. To our Client's knowledge, both NIPL and Near Inc. will have to pay taxes in both countries and our Client, as a director, is concerned about Near Inc. holding out any position which will incur liability for NIPL. Our Client therefore asks you to clearly inform him what your position is: is it that NIPL is a separate and independent company or is it a company only in name but not in deed and it is in deed only a branch office or outpost of Near Inc.; and as a consequence, all employees of NIPL are employees of Near Inc. If it is the latter, our Client also calls upon you to demonstrate compliance with various foreign exchange related laws and taxation laws. Our Client states that, in his capacity as director of NIPL, our Client is entitled to this information



5

/7**837**

# Poovayya   Co.
ADVOCATES        SOLICITORS

and is entitled to know the position that you are taking. Our Client calls upon you, in the interest of NIPL and all its compliance obligations, in his capacity as a director and in order to ensure that no unnecessary liability is saddled on him to seek counsel from lawyers qualified to practice Indian law on the impact of holding out such a position – i.e., coalescing the distinction and regarding NIPL employees as employees of Near Inc. and share such an opinion with him. Our Client expressly reserves liberty to make appropriate communications in this regard with law enforcement agencies in India and with the Securities Exchange Commission and other appropriate authorities in United States and all countries where Near Inc. has entities controlled by it, once you have disclosed your position to him or if you fail to do so. Our Client also reserves his liberty to make claims against Near Inc. for various breaches if Near Inc. is considering our Client as its employee.

16. As per Clauses 6 and 7 of the Employment Agreement, in the event that NIPL decides to terminate employment or suspend an employee, NIPL is mandatorily required to serve a notice of the same upon our Client. However, in the present case, our Client has not received any such notice from NIPL. The alleged act of putting our Client on "administrative leave" without any notice of the same or even of the allegations made against our Client, and without hearing our Client on the same, is not only a breach of the Employment Agreement but is also wholly contrary to the principles of natural justice. In fact, there is absolutely no mention of "administrative leave" in the Employment Agreement. Such an action is, therefore, not even in accordance with the Employment Agreement, even if such notice were given. Our Client is not aware if he is sought to be put on administrative leave by Near Inc. on the basis of law applicable in United States and calls upon you to clearly let him know. Our Client also puts you on notice that law applicable in United States will not apply to our Client irrespective of whether he is employed by NIPL or Near Inc.

17. Further, our Client's access to his email account was disabled even prior to the alleged resolutions passed by the Near Inc. board of directors on October 01, 2023. This further demonstrates that no steps have been taken by Near Inc. to verify whether the allegations

6

145

# Poovayya ~ Co.    $18$    **838**

ADVOCATES        SOLICITORS

made have any merit, and the actions taken against our Client have been done without any thought or consideration. It is apparent that there is already a prejudice against our Client.

18. Such an act of putting our Client on "administrative leave" without any basis, by way of an alleged resolution passed by the Board of Near Inc., an entirely different entity, is completely without any basis or authority, and in utter contravention of applicable law. Furthermore, such an action by the Near Inc. has also jeopardized fulfilment of the duties carried out by our Client as director of NIPL, who is also the authorized signatory of NIPL. Our Client is entitled to be indemnified against any claims made against him for failure to perform his duties as director and authorized signatory of NIPL, during this alleged 'administrative leave' period, and our Client reserves all rights in this regard.

19. The actions of Ms. Kong and the Board, particularly Mr. Mark Greene (the fifth of you), in making baseless allegations against our Client at the townhall sessions as described, are not only contrary to due policy and procedure as prescribed in law, or the provisions of the Employment Agreement, but undoubtedly constitute egregious defamation of our Client's reputation. It is reiterated that our Client is a seasoned professional in the field, having over twenty (20) years of experience, and has been associated with the Business since its incorporation. Our Client has held, and continues to hold, very senior managerial positions in the Business over the years, and been in charge of NIPL operations (which has over 130 employees) since its incorporation. In this backdrop, such serious allegations being made against our Client, without any basis, has had a huge impact on our Client's reputation and goodwill in the company and in the industry, which our Client has built with his hard work and efforts over several years. Further, our Client, who engages with several external consultants and vendors, and customers, in the course of his work, has received several messages and phone calls enquiring the reasons for emails not getting delivered to our Client's email account, which has caused great embarrassment to our Client, a respected professional in his field. In these circumstances, our Client is entitled to, in civil and criminal law, recourse and reserves all rights in respect thereof.

7

'146

*19* **839**

# Poovayya _ Co.

ADVOCATES    SOLICITORS

20. Further, it is reiterated that all the executives put on administrative leave are of Indian origin. It is apparent to our Client that the unjust, unreasonable and baseless actions taken against the said persons is nothing but discrimination based on race which is not only unethical and in contravention of company policies but is also illegal and contrary to law. Our Client reserves all rights as per applicable law, civil and criminal, in this regard including laws of United States since our Client is being discriminated against by persons purportedly representing an entity incorporated in United States of America.

21. The aforesaid actions of Near Inc., the Board and Ms. Kong have caused untold agony and trauma to our Client. As described above, our Client, having never received any notice of the allegations or actions being taken on its basis, spent the entire night of September 30, 2023 and early hours of October 01, 2023, making every effort to ensure that the company email accounts had not been hacked and were safe. Even thereafter, our Client has been kept in complete darkness regarding the reasons for the actions of the Board and Ms. Kong against our Client, and has is constrained to relying on updates and hearsay from his colleagues. Our Client, despite dedicating his time and expertise to the Business for over ten (10) years, has been treated in the most unfair and unjust manner, without any fault of his own. Our Client has undergone severe mental agony and trauma during this period and continues to suffer as, even as of date, no clarity has been provided to our Client.

22. Please note and appreciate that the aforesaid acts, both commissions and omissions, at your end are both a criminal offence as well as a civil wrong, punishable as per the laws for the time being in force. That being the case, you are hereby put to notice to (i) revoke the unauthorized alleged administrative leave that our Client has been put on and enable our Client to resume his professional duties, (ii) provide a detailed explanation of the allegations made against our Client, the basis thereof, reasons for putting our Client on administrative leave and the status of the alleged investigation being conducted, at present, (iii) issue a public apology to our Client for defaming his name and reputation, (iv) issue a public clarification confirming that the allegations of mismanagement and intellectual property theft are not made against our Client, and (v) pay a sum of Rs.10,00,00,000 /- (Rupees Ten Crores) along with interest at the rate of

8

147

# Poovayya  Co.

ADVOCATES    SOLICITORS

**840**

2-0

12% from September 30, 2023, as compensation for the agony and trauma caused to our Client by your unprofessional, unethical and illegal actions as described above without fail, failing which our Client would be constrained to prefer appropriate legal action as per the laws for the time being in force. All of our client's rights and remedies to initiate proceedings against Near Inc. and all its directors personally are hereby expressly reserved.

**WHEREFORE**, you are hereby put to notice to forthwith:

a) revoke the unauthorized and alleged administrative leave that our Client has been put on and enable our Client to resume his professional duties;

b) provide a detailed explanation of the allegations made against our Client, the basis thereof, reasons for putting our Client on administrative leave and the status of the investigation being conducted, at present;

c) issue a public apology to our Client for defaming his name and reputation;

d) issue a public clarification confirming that the allegations of mismanagement and IP theft are not made against our Client;

e) **Immediately** drop all further alleged enquiries against our client;

f) Not take any steps with regard to NIPL or its employees since that is completely and absolutely unauthorized; and

g) pay a sum of Rs.10,00,00,000 /- (Rupees Ten Crores) along with interest at the rate of 12% from September 30, 2023, as compensation for the agony and trauma caused to our Client by your unprofessional, unethical and illegal actions as described above without fail;

within seven (7) days from the date of receipt of this notice, failing which our Client will be constrained to initiate appropriate action, both civil and criminal, against you. In such

9

148

**841**

# Poovayya  Co.
### ADVOCATES        SOLICITORS

21

a case, you alone will be responsible for all the cost/s, consequence/s and damage/s thereof.

A notice fee of Rs.25,000/- is charged herewith.

**POOVAYYA & CO.,**

Advocates and Solicitors

The Estate, Level Four, 121 Dickenson Road, Bangalore - 560 042, India
Phone : +91 80 46563000   Fax : +91 80 4656 3088  Email : law@poovayya.net

149ANNEXURE-"B"  2 2842

**nirnay.shanbough@poovayya.net**

| | |
|---|---|
| From: | Littman, A. Kristina <AKLittman@willkie.com> |
| Sent: | Friday, November 3, 2023 03:05 AM |
| To: | 'Akshata Benegal' |
| Cc: | Strickland, Rachel; manu@poovayya.net; dharmendra.chatur@poovayya.net; manoj.raikar@poovayya.net; mansi.dabbir@poovayya.net; smruthi.prahalad@poovayya.net; 'Nirnay Shanbough' |
| Subject: | RE: Justin Joseph : Near Intelligence, Inc. |

Dear Ms. Benegal,

Thank you for your email. We appreciate your client's willingness to cooperate with our investigation. Answers to your questions are listed below. Please let me know when Mr. Joseph is available to be interviewed by Zoom.

1. Please provide a brief description of the investigation referred to in your email in the trailing mail.

    We are investigating transactions relating to the relationship between Near Intelligence and MobileFuse. We are specifically interested in hearing about any agreements with MobileFuse as both a customer and a vendor to Near. We are also investigating other transfers to vendors and transfers to Mon FX.

2. Is this investigation being conducted by Near Intelligence Inc. or by any governmental authority? Please provide a brief explanation on the procedure of the investigation, and what happens once the investigation is concluded.

    I am conducting an investigation on behalf of Near Intelligence, Inc. We have collected documents and are interviewing witnesses. If Mr. Joseph agrees to sit for an interview, we anticipate showing him certain Near documents on screen and asking him to share any knowledge or understanding he has with us. He will have an opportunity to fully examine each document on screen before answering any questions. Once our investigation is concluded we will report to the Restructuring Committee of the Board and any determinations by the company will be communicated to Mr. Joseph.

3. As our client is an employee of Near Intelligence Private Limited, and not of Near Inc., how does this investigation concern our client?

    My understanding is that Near Intelligence Private Limited is a wholly owned subsidiary of Near Intelligence, Inc.

4. Is our client being interviewed as a witness? Are there any allegations made against our client? If so, please provide details of this.

    Mr. Joseph is being interviewed as a witness and I am not aware of any allegations made against him.

5. Will all expenses relating to the investigation and any outcome therefrom in respect of our client, be borne by Near Intelligence Inc.?

    I am not aware of any entitlement to indemnification for Mr. Joseph.

6. By when can we expect a response to our client's legal notice?

    The legal notice that you sent is being handled by counsel at TriLegal in India. I will encourage them to provide a timely response.

1 

150

**843**

Best,

Kristy Littman

23

**A. Kristina Littman**
**Willkie Farr & Gallagher LLP**
1875 K Street, N.W. | Washington, DC 20006-1238
Direct: +1 202 303 1209 | Fax: +1 202 303 2000
aklittman@willkie.com | vCard | www.willkie.com bio

**From:** Akshata Benegal <akshata.benegal@poovayya.net>
**Sent:** Thursday, November 2, 2023 12:57 AM
**To:** Littman, A. Kristina <AKLittman@willkie.com>
**Cc:** Strickland, Rachel <RStrickland@willkie.com>; manu@poovayya.net; dharmendra.chatur@poovayya.net; manoj.raikar@poovayya.net; mansi.dabbir@poovayya.net; smruthi.prahalad@poovayya.net; 'Nirnay Shanbough' <nirnay.shanbough@poovayya.net>
**Subject:** RE: Justin Joseph : Near Intelligence, Inc.

*** **EXTERNAL EMAIL** ***

Dear Ms. Littman,

Further to our email below, we clarify that any cooperation by our client is without prejudice to our client's claims in his legal notice and our client reserves all rights thereto.

Warm regards,

Akshata Benegal

| Principal Associate | + 91 9886940570 | akshata.benegal@poovayya.net |



| BANGALORE | NEW DELHI |

The Estate, Level Four
121 Dickenson Road
Bangalore 560 042

T: +91 80 4656 3000
F: +91 80 4656 3088


VaHu
WINNER

| INDIA BUSINESS LAW JOURNAL | Chambers and Partners APAC 2020 | IFLR1000 2020 | Asia Law 2020 | Media Law International 2019 | Venture Intelligence |
|---|---|---|---|---|---|
| AWARD WINNING LAW FIRM 2020 | Leading Law Firm in Employment and Real Estate | Ranked for M&A and Private Equity | Ranked for Corp and M&A, Dispute Resolution, labour & Employment, Construction & Real Estate and TMT | Leading Practitioners | Top 15 Legal Advisors Mergers & Acquisitions 2017 |

INTERNET EMAIL CONFIDENTIALITY NOTICE

Attorney - client privileged/confidential information may be contained in this message. If you are not the intended addressee indicated in this message (or responsible for delivery of the message to such person), you may not copy or deliver this message to anyone. In such case, you should destroy this message and kindly notify the sender by reply email. Please advise immediately if you or your employer do not consent to Internet email for messages of this kind. Opinions, conclusions and other information in this message that do not relate to the official business of our firm shall be understood as neither given nor endorsed by it. For all legal opinions are issued by the firm duly executed by its partners. Accordingly, any message sent shall not be considered as a formal legal opinion issued by the firm.

 *Please consider the environment before printing this email*

2



151

**844**

24

**From:** Akshata Benegal <akshata.benegal@poovayya.net>
**Sent:** Thursday, November 2, 2023 10:22 AM
**To:** 'Littman, A. Kristina' <AKLittman@willkie.com>
**Cc:** 'Strickland, Rachel' <RStrickland@willkie.com>; manu@poovayya.net; dharmendra.chatur@poovayya.net; manoj.raikar@poovayya.net; mansi.dabbir@poovayya.net; smruthi.prahalad@poovayya.net; 'Nirnay Shanbough' <nirnay.shanbough@poovayya.net>
**Subject:** RE: Justin Joseph : Near Intelligence, Inc.

Dear Ms. Littman,

Thank you for your patience. We have internally discussed your request and require a few clarifications, as listed below:

1.  Please provide a brief description of the investigation referred to in your email in the trailing mail.

2.  Is this investigation being conducted by Near Intelligence Inc. or by any governmental authority? Please provide a brief explanation on the procedure of the investigation, and what happens once the investigation is concluded.

3.  As our client is an employee of Near Intelligence Private Limited, and not of Near Inc., how does this investigation concern our client?

4.  Is our client being interviewed as a witness? Are there any allegations made against our client? If so, please provide details of this.

5.  Will all expenses relating to the investigation and any outcome therefrom in respect of our client, be borne by Near Intelligence Inc.?

6.  By when can we expect a response to our client's legal notice?

Once we have your responses to the questions above, we will accordingly confirm our client's availability. We look forward to your response.

Warm regards,

Akshata Benegal

| Principal Associate | + 91 9886940570 | akshata.benegal@poovayya.net |



**Poovayya & Co.**
ADVOCATES & SOLICITORS

| BANGALORE | NEW DELHI |

The Estate, Level Four
121 Dickenson Road
Bangalore 560 042

T: +91 80 4656 3000
F: +91 80 4656 3088



vaHu

**WiNNER**

| | Chambers and Partners APAC 2020 | IFLR1000 2020 | Asia Law 2020 | Media Law International 2019 | Venture Intelligence |
|---|---|---|---|---|---|
| INDIA BUSINESS LAW JOURNAL **AWARD WINNING LAW FIRM** 2020 | Leading Law Firm in Employment and Real Estate | Ranked for M&A and Private Equity | Ranked for Corp and M&A, Dispute Resolution, Labour & Employment, Construction & Real Estate and TMT | Leading Practitioners | Top 15 Legal Advisors Mergers & Acquisitions 2017 |



INTERNAL EMAIL CONFIDENTIALITY FOOTER

Attorney client privileged/confidential information, meant only for the named addressee. If you are not the intended recipient of this message (or responsible for delivery of the message to such person), you may not copy or deliver this message to anyone. In such case, you should destroy this message and kindly notify the sender by reply email. Please advise immediately if you or your employer does not consent to internet email for messages of this kind. Opinions etc. that do not relate to the official business of this company shall be understood as neither given nor endorsed by it.

3



not be considered as a formal legal opinion issued by the firm

*25*

🖨 *Please consider the environment before printing this email*

**From:** Akshata Benegal <akshata.benegal@poovayya.net>
**Sent:** Friday, October 27, 2023 10:41 AM
**To:** 'Littman, A. Kristina' <AKLittman@willkie.com>
**Cc:** 'Strickland, Rachel' <RStrickland@willkie.com>; manu@poovayya.net; dharmendra.chatur@poovayya.net;
manoj.raikar@poovayya.net; mansi.dabbir@poovayya.net; smruthi.prahalad@poovayya.net; 'Nirnay Shanbough'
<nirnay.shanbough@poovayya.net>
**Subject:** RE: Justin Joseph : Near Intelligence, Inc.

Dear Ms. Littman,

Thank you for your email. We will circle back to you on this, shortly.

Warm regards,

Akshata Benegal

| **Principal Associate** | + 91 9886940570 | akshata.benegal@poovayya.net |



| BANGALORE | NEW DELHI |

The Estate, Level Four
121 Dickenson Road
Bangalore 560 042

T: +91 80 4656 3000
F: +91 80 4656 3088



| | Chambers and Partners APAC 2020 | IFLR1000 2020 | Asia Law 2020 | Media Law International 2019 | Venture Intelligence |
|---|---|---|---|---|---|
| INDIA BUSINESS LAW JOURNAL AWARD WINNING LAW FIRM 2020 | Leading Law Firm in Employment and Real Estate | Ranked for M&A and Private Equity | Ranked for Corp and M&A, Dispute Resolution, Labour & Employment, Construction & Real Estate and TMT | Leading Practitioners | Top 15 Legal Advisors Mergers & Acquisitions 2017 |

INTERNET EMAIL CONFIDENTIALITY FOOTER

Attorney client privileged and other confidential information may be contained in this message. If you are not the first addressed indicated in this message (or responsible for delivery of the message to such person), you may not copy or deliver this message to anyone. In such case, you should destroy this message and kindly notify the sender by reply email. Please advise immediately if you or your employer do not consent to internet email for messages of this kind. Opinions, conclusions and other information in this message that do not relate to the official business of our firm shall be understood as neither given nor endorsed by it. Formal legal opinions are issued by the firm duly executed by its partners. Accordingly, this message shall not be considered as a formal legal opinion issued by the firm

🖨 *Please consider the environment before printing this email*



**From:** Littman, A. Kristina <AKLittman@willkie.com>
**Sent:** Friday, October 27, 2023 6:57 AM
**To:** 'akshata.benegal@poovayya.net' <akshata.benegal@poovayya.net>; 'manoj.raikar@poovayya.net'
<manoj.raikar@poovayya.net>; 'mansi.dabbir@poovayya.net' <mansi.dabbir@poovayya.net>;
'dharmendra.chatur@poovayya.net' <dharmendra.chatur@poovayya.net>; 'manu@poovayya.net'
<manu@poovayya.net>
**Cc:** Strickland, Rachel <RStrickland@willkie.com>
**Subject:** Justin Joseph : Near Intelligence, Inc.

Dear Mrs. Benegal,

153    26    **846**

We've been retained by Near Inc. to investigate the matters outlined in the Form 8-K filed by our client with the Securities and Exchange Commission of the United States of America on October 5, 2023. We are aware of the legal notice you sent to our client on October 14, 2023 and our client's counsel in India will respond to you shortly relating to the issues raised in your notice.

As part of our investigation, we would like to interview Mr. Joseph. Can you please let me know whether your client is available for an interview by Zoom at 8am ET / 5:30pm IST on November 1 or November 2?

If you have questions or would like to discuss further please feel free to call me at the number below.

Best,
Kristy Littman

**A. Kristina Littman**
**Willkie Farr & Gallagher LLP**
1875 K Street, N.W. | Washington, DC 20006-1238
Direct: +1 202 303 1209 | Fax: +1 202 303 2000
aklittman@willkie.com | vCard | www.willkie.com bio

**Important Notice:** This email message is intended to be received only by persons entitled to receive the confidential information it may contain. Email messages to clients of Willkie Farr & Gallagher LLP presumptively contain information that is confidential and legally privileged; email messages to non-clients are normally confidential and may also be legally privileged. Please do not read, copy, forward or store this message unless you are an intended recipient of it. If you have received this message in error, please forward it back. Willkie Farr & Gallagher LLP is a limited liability partnership organized in the United States under the laws of the State of Delaware, which laws limit the personal liability of partners.

**Important Notice:** This email message is intended to be received only by persons entitled to receive the confidential information it may contain. Email messages to clients of Willkie Farr & Gallagher LLP presumptively contain information that is confidential and legally privileged; email messages to non-clients are normally confidential and may also be legally privileged. Please do not read, copy, forward or store this message unless you are an intended recipient of it. If you have received this message in error, please forward it back. Willkie Farr & Gallagher LLP is a limited liability partnership organized in the United States under the laws of the State of Delaware, which laws limit the personal liability of partners.



**nirnay.shanbough@poovayya.net**

| | |
|---|---|
| **From:** | Littman, A. Kristina <AKLittman@willkie.com> |
| **Sent:** | Tuesday, January 30, 2024 09:57 PM |
| **To:** | 'Akshata Benegal' |
| **Cc:** | Strickland, Rachel; 'Dharmendra Chatur'; 'Atul Gupta'; 'Kunal Gupta'; 'Lavanya B Ananth'; 'Manu Kulkarni'; 'Mohammed Shameer'; Mordkoff, Andrew; 'Paul Gross'; 'Raavi Gupta'; 'Sayan Ghose'; 'Shagun Singh'; 'Wiseroy Damodaran'; siddhartha@poovayya.net; smruthi.prahalad@poovayya.net; varnika.sharma@poovayya.net; 'Nirnay Shanbough' |
| **Subject:** | RE: Call - Justin Joseph (without prejudice) |

Yes, I can talk at that time.  Here is a Zoom link for those that would like to join.



Hi there,

A. Kristina Littman is inviting you to a scheduled Zoom meeting.

# Join Zoom Meeting

One tap mobile:  US: +16469313860,,87928716435#,,,,*858198# or
+16468769923,,87928716435#,,,,*858198#

Meeting URL:  https://willkie.zoom.us/j/87928716435?pwd=5qzrcY9uktoq8csv4wGvZvnOXwwql7.1

Meeting ID:  879 2871 6435

Passcode:858198

### Join by Telephone

For higher quality, dial a number based on your current location.

Dial:    +1 646 931 3860 US
+1 646 876 9923 US (New York)
+1 305 224 1968 US
+1 309 205 3325 US
+1 312 626 6799 US (Chicago)
+1 301 715 8592 US (Washington DC)
+1 253 215 8782 US (Tacoma)
+1 346 248 7799 US (Houston)
+1 360 209 5623 US
+1 386 347 5053 US
+1 507 473 4847 US



28    **848**

+1 564 217 2000 US
+1 669 444 9171 US
+1 669 900 6833 US (San Jose)
+1 689 278 1000 US
+1 719 359 4580 US
+1 253 205 0468 US
833 548 0276 US Toll-free
833 548 0282 US Toll-free
833 928 4608 US Toll-free
833 928 4609 US Toll-free
833 928 4610 US Toll-free
877 853 5247 US Toll-free
888 788 0099 US Toll-free
+33 1 7037 2246 France
+33 1 7037 9729 France
+33 1 7095 0103 France
+33 1 7095 0350 France
+33 1 8699 5831 France
0 800 940 415 France Toll-free
0 800 944 049 France Toll-free
0 805 543 065 France Toll-free
+32 2 588 4188 Belgium
+32 2 788 0172 Belgium
+32 2 788 0173 Belgium
+32 1579 5132 Belgium
+32 2 290 9360 Belgium
+32 2 585 5574 Belgium
0 800 293 46 Belgium Toll-free
0 800 294 51 Belgium Toll-free
0 800 800 99 Belgium Toll-free
+49 69 5050 0952 Germany
+49 695 050 2596 Germany
+49 69 7104 9922 Germany
+49 69 3807 9883 Germany
+49 69 3807 9884 Germany
+49 69 5050 0951 Germany
0 800 000 6954 Germany Toll-free
0 800 1800 150 Germany Toll-free
0 800 588 9791 Germany Toll-free
0 800 000 1590 Germany Toll-free
+44 131 460 1196 United Kingdom
+44 203 481 5237 United Kingdom
+44 203 481 5240 United Kingdom
+44 203 901 7895 United Kingdom
+44 208 080 6591 United Kingdom
+44 208 080 6592 United Kingdom
+44 330 088 5830 United Kingdom
0 800 260 5801 United Kingdom Toll-free

## 156

849

```
0 800 358 2817 United Kingdom Toll-free
0 800 456 1369 United Kingdom Toll-free
0 800 031 5717 United Kingdom Toll-free
+39 020 066 7245 Italy
+39 021 241 28 823 Italy
+39 069 480 6488 Italy
800 125 671 Italy Toll-free
800 130 366 Italy Toll-free
800 790 654 Italy Toll-free
800 088 202 Italy Toll-free
```

Meeting ID:  879 2871 6435

Passcode: 858198

International numbers

**Join from an H.323/SIP room system**

H.323:   162.255.37.11 (US West)
162.255.36.11 (US East)
213.19.144.110 (Amsterdam Netherlands)
213.244.140.110 (Germany)
103.122.166.55 (Australia Sydney)
103.122.167.55 (Australia Melbourne)
64.211.144.160 (Brazil)
69.174.57.160 (Canada Toronto)
65.39.152.160 (Canada Vancouver)
207.226.132.110 (Japan Tokyo)
149.137.24.110 (Japan Osaka)

Meeting ID:  879 2871 6435

Passcode: 858198

SIP:   87928716435@zoomcrc.com

Passcode: 858198

**A. Kristina Littman**
**Willkie Farr & Gallagher LLP**
1875 K Street, N.W. | Washington, DC 20006-1238
Direct: +1 202 303 1209 | Fax: +1 202 303 2000
aklittman@willkie.com | vCard | www.willkie.com bio

**From:** Akshata Benegal <akshata.benegal@poovayya.net>
**Sent:** Tuesday, January 30, 2024 10:48 AM
**To:** Littman, A. Kristina <AKLittman@willkie.com>
**Cc:** Strickland, Rachel <RStrickland@willkie.com>; 'Dharmendra Chatur' <dharmendra.chatur@poovayya.net>; 'Atul Gupta' <Atul.Gupta@trilegal.com>; 'Kunal Gupta' <Kunal.Gupta@trilegal.com>; 'Lavanya B Ananth' <Lavanya.Ananth@trilegal.com>; 'Manu Kulkarni' <manu@poovayya.net>; 'Mohammed Shameer'

<Mohammed.Shameer@trilegal.com>; Mordkoff, Andrew <amordkoff@willkie.com>; 'Paul Gross'
<paul.gross@near.com>; 'Raavi Gupta' <Raavi.Gupta@trilegal.com>; 'Sayan Ghose' <Sayan.Ghose@trilegal.com>;
'Shagun Singh' <shagun.singh@poovayya.net>; 'Wiseroy Damodaran' <Wiseroy.Damodaran@trilegal.com>;
siddhartha@poovayya.net; smruthi.prahalad@poovayya.net; varnika.sharma@poovayya.net; 'Nirnay Shanbough'
<nirnay.shanbough@poovayya.net>
**Subject:** RE: Call - Justin Joseph (without prejudice)

**\*\*\*EXTERNAL EMAIL\*\*\***

Ms. Littman,

Can we please have the call at 9 PM IST (10:30 AM ET) tomorrow (January 31, 2024)?

Warm regards,

Akshata Benegal

| Principal Associate | + 91 9886940570 | akshata.benegal@poovayya.net |



Poovayya & Co.
ADVOCATES & SOLICITORS

The Estate, Level Four
121 Dickenson Road
Bangalore 560 042

T: +91 80 4655 3000
F: +91 80 4656 3088

| BANGALORE | NEW DELHI |



| INDIA BUSINESS LAW JOURNAL **AWARD WINNING LAW FIRM** 2020 | Chambers and Partners APAC 2020 | IFLR1000 2020 | Asia Law 2020 | Media Law International 2019 | Venture Intelligence |
|---|---|---|---|---|---|
| | Leading Law Firm in Employment and Real Estate | Ranked for M&A and Private Equity | Ranked for Corp and M&A, Dispute Resolution, Labour & Employment, Construction & Real Estate and TMT | Leading Practitioners | Top 15 Legal Advisors Mergers & Acquisitions 2017 |

INTERNET MAIL CONFIDENTIALITY FOOTER

Attorney - client privileged, confidential information may be contained in this message. If you are not the first addressee
indicated in this message, not responsible for delivery of this message to such person, you may not copy or deliver this
message to anyone, in such case, you should destroy this message and kindly notify the sender by reply email. Please advise
immediately if you or your employer do not consent to internet email for messages of this kind. Opinions, conclusions and
other information in this message that do not relate to the official business of our firm shall be understood as neither given
nor endorsed by it. Formal legal opinions are issued by the firm, duly executed by its partners. Accordingly, this message shall
not be considered as a formal legal opinion issued by the firm.

🖨 Please consider the environment before printing this email

**From:** Littman, A. Kristina <AKLittman@willkie.com>
**Sent:** Tuesday, January 30, 2024 8:21 PM
**To:** 'Akshata Benegal' <akshata.benegal@poovayya.net>
**Cc:** Strickland, Rachel <RStrickland@willkie.com>; 'Dharmendra Chatur' <dharmendra.chatur@poovayya.net>; 'Atul
Gupta' <Atul.Gupta@trilegal.com>; 'Kunal Gupta' <Kunal.Gupta@trilegal.com>; 'Lavanya B Ananth'
<Lavanya.Ananth@trilegal.com>; 'Manu Kulkarni' <manu@poovayya.net>; 'Mohammed Shameer'
<Mohammed.Shameer@trilegal.com>; Mordkoff, Andrew <amordkoff@willkie.com>; 'Paul Gross'
<paul.gross@near.com>; 'Raavi Gupta' <Raavi.Gupta@trilegal.com>; 'Sayan Ghose' <Sayan.Ghose@trilegal.com>;
'Shagun Singh' <shagun.singh@poovayya.net>; 'Wiseroy Damodaran' <Wiseroy.Damodaran@trilegal.com>;
siddhartha@poovayya.net; smruthi.prahalad@poovayya.net; varnika.sharma@poovayya.net; 'Nirnay Shanbough'
<nirnay.shanbough@poovayya.net>
**Subject:** RE: Call - Justin Joseph (without prejudice)

Ms. Benegal,

158    31    **851**

Are you available for a call at 8am IST tomorrow morning (9:30pm ET tonight) to discuss a resolution?

With respect to the credit card noted below, can you please provide additional information about the expenses? Does he have a credit card statement that I can pass along to the company to confirm that these are company expenses?

Best,
Kristy

**A. Kristina Littman**
**Willkie Farr & Gallagher LLP**
1875 K Street, N.W. | Washington, DC 20006-1238
Direct: +1 202 303 1209 | Fax: +1 202 303 2000
aklittman@willkie.com | vCard | www.willkie.com bio

**From:** Akshata Benegal <akshata.benegal@poovayya.net>
**Sent:** Thursday, January 18, 2024 12:36 AM
**To:** Littman, A. Kristina <AKLittman@willkie.com>
**Cc:** Strickland, Rachel <RStrickland@willkie.com>; 'Dharmendra Chatur' <dharmendra.chatur@poovayya.net>; 'Atul Gupta' <Atul.Gupta@trilegal.com>; 'Kunal Gupta' <Kunal.Gupta@trilegal.com>; 'Lavanya B Ananth' <Lavanya.Ananth@trilegal.com>; 'Manu Kulkarni' <manu@poovayya.net>; 'Mohammed Shameer' <Mohammed.Shameer@trilegal.com>; Mordkoff, Andrew <amordkoff@willkie.com>; 'Paul Gross' <paul.gross@near.com>; 'Raavi Gupta' <Raavi.Gupta@trilegal.com>; 'Sayan Ghose' <Sayan.Ghose@trilegal.com>; 'Shagun Singh' <shagun.singh@poovayya.net>; 'Wiseroy Damodaran' <Wiseroy.Damodaran@trilegal.com>; siddhartha@poovayya.net; smruthi.prahalad@poovayya.net; varnika.sharma@poovayya.net; 'Nirnay Shanbough' <nirnay.shanbough@poovayya.net>
**Subject:** RE: Call - Justin Joseph (without prejudice)

*** **EXTERNAL EMAIL** ***

Ms. Littman,

Our client has informed us that recovery agents of ICICI Bank visited our client's residence last Friday regarding non-payment of pending dues on the corporate credit card used by Near Intelligence Private Limited for its operations (but obtained under our client's name). Our client is informed that the credit card dues are about Indian Rupees Twenty Three Lakhs (i.e., $27682 approximately). Please note that our client cannot be made personally liable for any expenses incurred by the company for its operations. We request you to advise your client to address this issue immediately. Our client reserves all rights.

Also please let us have an update on whether you have heard back from your client.

Warm regards,

Akshata Benegal

| Principal Associate | + 91 9886940570 | akshata.benegal@poovayya.net |

# Poovayya & Co.
ADVOCATES · SOLICITORS

| BANGALORE | NEW DELHI |

The Estate, Level Four
121 Dickenson Road
Bangalore 560 042

T: +91 80 4656 3000
F: +91 80 4656 3088

**VaHU**
**WINNER**

IFLR1000          Asia Law

5

INDIA BUSINESS LAW JOURNAL

AWARD-WINNING LAW FIRM

2020

Chambers and Partners APAC 2020

Leading Law Firm in Employment and Real Estate

2020

Ranked for M&A and Private Equity

2020

Ranked for Corp and M&A, Dispute Resolution, Labour & Employment, Construction & Real Estate and TMT

Media Law International 2019

Leading Practitioners

852

Intelligence

Top 15 Legal Advisors Mergers & Acquisitions 2017

INTERNET EMAIL CONFIDENTIALITY FOOTER

Attorney-client privileged/confidential information may be contained in this message. If you are not the first addressee indicated in this message (or responsible for delivery of the message to such person), you may not copy or deliver this message to anyone. In such case, you should destroy this message and kindly notify the sender by reply email. Please advise immediately if you or your employer do not consent to Internet email for messages of this kind. Opinions, conclusions and other information in this message that do not relate to the official business of our firm shall be understood as neither given nor endorsed by it. Formal legal opinions are issued by the firm duly executed by its partners. Accordingly, this message shall not be considered as a formal legal opinion issued by the firm.

 *Please consider the environment before printing this email*

**From:** Littman, A. Kristina <AKLittman@willkie.com>
**Sent:** Friday, December 29, 2023 9:14 PM
**To:** Akshata Benegal <akshata.benegal@poovayya.net>
**Cc:** Strickland, Rachel <RStrickland@willkie.com>; Dharmendra Chatur <dharmendra.chatur@poovayya.net>; Atul Gupta <Atul.Gupta@trilegal.com>; Kunal Gupta <Kunal.Gupta@trilegal.com>; Lavanya B Ananth <Lavanya.Ananth@trilegal.com>; Manu Kulkarni <manu@poovayya.net>; Mohammed Shameer <Mohammed.Shameer@trilegal.com>; Mordköff, Andrew <amordkoff@willkie.com>; Paul Gross <paul.gross@near.com>; Raavi Gupta <Raavi.Gupta@trilegal.com>; Sayan Ghose <Sayan.Ghose@trilegal.com>; Shagun Singh <shagun.singh@poovayya.net>; Wiseroy Damodaran <Wiseroy.Damodaran@trilegal.com>; siddhartha@poovayya.net; smruthi.prahalad@poovayya.net; varnika.sharma@poovayya.net; Nirnay Shanbough <nirnay.shanbough@poovayya.net>
**Subject:** RE: Call - Justin Joseph (without prejudice)

Ms. Benegal,

We have presented your offer to the lender, who will not agree to the monetary portion of the offer. The company does not have funds to cover a settlement, so it must be covered by the lender. I suspect that they will agree to the other terms. I am hoping to hear back from them soon on an amount that would be agreeable to them, but it will be significantly lower than $400,000. I'll let you know when I hear back.

As a reminder, any settlement that the company and the lender reach with your client will still need to be approved by the bankruptcy court. This applies to the indemnification and release as well.

Kristy

On December 29, 2023 at 2:22:23 AM AST, Akshata Benegal <akshata.benegal@poovayya.net> wrote:

**\*\*\* EXTERNAL EMAIL \*\*\***

Hi Kristina,

Happy Holidays!

Just following up on if your client has come back on our client's counter-offer. We also want to clarify that the indemnity and release being offered to our client by your client should include any liability arising from any default by the company in completing its year end statutory filings.

Look forward to hearing from you.

160

33

**853**

Warm regards,

Akshata Benegal

| Principal Associate | + 91 9886940570 | akshata.benegal@poovayya.net |



Poovayya Co.
ADVOCATES    SOLICITORS

| BANGALORE | NEW DELHI |

The Estate, Level Four
121 Dickenson Road
Bangalore 560 042

T: +91 80 4656 3000
F: +91 80 4656 3088



vaHu
WINNER

| INDIA BUSINESS LAW JOURNAL | **AWARD WINNING LAW FIRM** 2020 | Chambers and Partners APAC 2020 | IFLR1000 2020 | Asia Law 2020 | Media Law International 2019 | Venture Intelligence |
| --- | --- | --- | --- | --- | --- |
| | Leading Law Firm in Employment and Real Estate | Ranked for M&A and Private Equity | Ranked for Corp and M&A, Dispute Resolution, Labour & Employment, Construction & Real Estate and TMT | Leading Practitioners | Top 15 Legal Advisors Mergers & Acquisitions 2017 |

INTERNET EMAIL CONFIDENTIALITY FOOTER

Attorney – client privileged/confidential information may be contained in this message. If you are not the first addressee indicated in this message (or responsible for delivery of the message to such person), you may not copy or deliver the message to anyone. In such case, you should destroy this message and kindly notify the sender by reply email. Please advise immediately if you or your employer do not consent to internet email for messages of this kind. Opinions, conclusions and other information in this message that do not relate to the official business of our firm shall be understood as neither given nor endorsed by it. Formal legal opinions are issued by the firm duly connected by its partners. Accordingly, this message will not be construed as to be a formal legal opinion issued by the firm.

 Please consider the environment before printing this email

**A. Kristina Littman**
**Willkie Farr & Gallagher LLP**
1875 K Street, N.W. | Washington, DC 20006-1238
Direct: +1 202 303 1209 | Fax: +1 202 303 2000
aklittman@willkie.com | vCard | www.willkie.com bio

**From:** Littman, A. Kristina <AKLittman@willkie.com>
**Sent:** Saturday, December 16, 2023 7:23 PM
**To:** Akshata Benegal <akshata.benegal@poovayya.net>; Strickland, Rachel <RStrickland@willkie.com>
**Cc:** Dharmendra Chatur <dharmendra.chatur@poovayya.net>; Atul Gupta <Atul.Gupta@trilegal.com>; Kunal Gupta <Kunal.Gupta@trilegal.com>; Lavanya B Ananth <Lavanya.Ananth@trilegal.com>; Manu Kulkarni <manu@poovayya.net>; Mohammed Shameer <Mohammed.Shameer@trilegal.com>; Mordkoff, Andrew <amordkoff@willkie.com>; Paul Gross <paul.gross@near.com>; Raavi Gupta <Raavi.Gupta@trilegal.com>; Sayan Ghose <Sayan.Ghose@trilegal.com>; Shagun Singh <shagun.singh@poovayya.net>; Wiseroy Damodaran <Wiseroy.Damodaran@trilegal.com>; siddhartha@poovayya.net; smruthi.prahalad@poovayya.net; varnika.sharma@poovayya.net; Nirnay Shanbough <nirnay.shanbough@poovayya.net>
**Subject:** RE: Call - Justin Joseph (without prejudice)

We will share this with our client and come back to you.

Kristy

—
On December 16, 2023 at 7:50:06 AM EST, Akshata Benegal <akshata.benegal@poovayya.net> wrote:

161    34    **854**

**\*\*\* EXTERNAL EMAIL \*\*\***

Ms. Littman,

Thank you for your email. We have conveyed this to our client. Considering the current situation, our client has agreed to settle this at $400,000. Please let us know if your client is agreeable to this. We can discuss this over a call, as required.

Warm regards,

Akshata Benegal

| Principal Associate | + 91 9886940570 | akshata.benegal@poovayya.net |

The Estate, Level Four
121 Dickenson Road
Bangalore 560 042

T: +91 80 4656 3000
F: +91 80 4656 3088

| BANGALORE | NEW DELHI |

| Chambers and Partners APAC 2020 | IFLR1000 2020 | Asia Law 2020 | Media Law International 2019 | Venture Intelligence |
|---|---|---|---|---|
| Leading Law Firm in Employment and Real Estate | Ranked for M&A and Private Equity | Ranked for Corp and M&A, Dispute Resolution, Labour & Employment, Construction & Real Estate and TMT | Leading Practitioners | Top 15 Legal Advisors Mergers & Acquisitions 2017 |

INTERNET EMAIL CONFIDENTIALITY FOOTER

Attorney client privileged/confidential information may be contained in this message. If you are not the intended recipient indicated in this message (or responsible for delivery of the message to such person), you may not copy or deliver this message to anyone. In such case, you should destroy this message, and kindly notify the sender by reply email. Please advise immediately if you or your employer do not consent to internet email for messages of this kind. Opinions, conclusions and other information in this message that do not relate to the official business of our firm shall be understood as neither given nor endorsed by it. Formal legal opinions are issued by the firm duly executed by its partners. Accordingly, this message shall not be considered as a formal legal opinion issued by the firm.

 *Please consider the environment before printing this email*

**A. Kristina Littman**
**Willkie Farr & Gallagher LLP**
1875 K Street, N.W. | Washington, DC 20006-1238
Direct: +1 202 303 1209 | Fax: +1 202 303 2000
aklittman@willkie.com | vCard | www.willkie.com bio

**From:** Littman, A. Kristina <AKLittman@willkie.com>
**Sent:** Friday, December 15, 2023 10:46 PM
**To:** 'Akshata Benegal' <akshata.benegal@poovayya.net>; Strickland, Rachel <RStrickland@willkie.com>
**Cc:** 'Dharmendra Chatur' <dharmendra.chatur@poovayya.net>; 'Atul Gupta' <Atul.Gupta@trilegal.com>; 'Kunal Gupta' <Kunal.Gupta@trilegal.com>; 'Lavanya B Ananth' <Lavanya.Ananth@trilegal.com>; 'Manu Kulkarni' <manu@poovayya.net>; 'Mohammed Shameer' <Mohammed.Shameer@trilegal.com>; Mordkoff, Andrew <amordkoff@willkie.com>; 'Paul Gross' <paul.gross@near.com>; 'Raavi Gupta' <Raavi.Gupta@trilegal.com>; 'Sayan Ghose' <Sayan.Ghose@trilegal.com>; 'Shagun Singh' <shagun.singh@poovayya.net>; 'Wiseroy Damodaran' <Wiseroy.Damodaran@trilegal.com>; siddhartha@poovayya.net; smruthi.prahalad@poovayya.net;



162

**855**

varnika.sharma@poovayya.net
**Subject:** RE: Call - Justin Joseph (without prejudice)

35

Ms. Benegal,

The Board has authorized an increased offer of $350,000 in total. Given that the company is now in bankruptcy proceedings the entire settlement will need to be approved by the company's lender and by the bankruptcy court. The lender will also need to agree to pay the settlement amount. If you agree to this amount, I will start the work of trying to get the lender's consent. I'm happy to arrange a time for a call if you would like to discuss.

Best,
Kristy Littman


**A. Kristina Littman**
**Willkie Farr & Gallagher LLP**
1875 K Street, N.W. | Washington, DC 20006-1238
Direct: +1 202 303 1209 | Fax: +1 202 303 2000
aklittman@willkie.com | vCard | www.willkie.com bio

**From:** Akshata Benegal <akshata.benegal@poovayya.net>
**Sent:** Monday, December 11, 2023 11:00 AM
**To:** Strickland, Rachel <RStrickland@willkie.com>
**Cc:** 'Dharmendra Chatur' <dharmendra.chatur@poovayya.net>; 'Atul Gupta' <Atul.Gupta@trilegal.com>; 'Kunal Gupta' <Kunal.Gupta@trilegal.com>; 'Lavanya B Ananth' <Lavanya.Ananth@trilegal.com>; Littman, A. Kristina <AKLittman@willkie.com>; 'Manu Kulkarni' <manu@poovayya.net>; 'Mohammed Shameer' <Mohammed.Shameer@trilegal.com>; Mordkoff, Andrew <amordkoff@willkie.com>; 'Paul Gross' <paul.gross@near.com>; 'Raavi Gupta' <Raavi.Gupta@trilegal.com>; 'Sayan Ghose' <Sayan.Ghose@trilegal.com>; 'Shagun Singh' <shagun.singh@poovayya.net>; 'Wiseroy Damodaran' <Wiseroy.Damodaran@trilegal.com>; siddhartha@poovayya.net; smruthi.prahalad@poovayya.net; varnika.sharma@poovayya.net
**Subject:** RE: Call - Justin Joseph (without prejudice)

**\*\*\* EXTERNAL EMAIL \*\*\***

Hi Rachel,

Your last email was a little unclear. Are you checking with your client? Please let us know what their final and best offer is. Thanks.

Warm regards,

Akshata Benegal

| Principal Associate | + 91 9886940570 | akshata.benegal@poovayya.net |


The Estate, Level Four
121 Dickenson Road
Bangalore 560 042

| BANGALORE | NEW DELHI |

T: +91 80 4656 3000
F: +91 80 4656 3088

| Chambers and Partners APAC 2020 | IFLR1000 2020 | Asia Law 2020 | Media Law International 2019 | Venture Intelligence |

Leading Practitioners

9

163

| Leading Law Firm in Employment and Real Estate | Ranked for M&A and Private Equity | Ranked for Corp and M&A, Dispute Resolution, Labour & Employment, Construction & Real Estate and TMT | | **856** Legal Advisors Mergers & Acquisitions 2017 |

30

INTERNET EMAIL CONFIDENTIALITY FOOTER

Attorney client privileged/confidential information may be contained in this message. If you are not the first addressee indicated in this message (or responsible for delivery of the message to such person), you may not copy or deliver this message to anyone. In such case, you should destroy this message and kindly notify the sender by reply e-mail. Please advise immediately if you or your employer do not consent to Internet e-mail for messages of this kind. Opinions, conclusions and other information in this message that do not relate to the official business of our firm shall be understood as neither given nor endorsed by it. Formal legal opinions are issued by the firm, duly executed by its partners. Accordingly, this message shall not be considered as a formal legal opinion issued by the firm.

Please consider the environment before printing this email

**From:** Strickland, Rachel <RStrickland@willkie.com>
**Sent:** Wednesday, December 6, 2023 9:22 PM
**To:** 'Dharmendra Chatur' <dharmendra.chatur@poovayya.net>
**Cc:** Akshata Benegal <akshata.benegal@poovayya.net>; Atul Gupta <Atul.Gupta@trilegal.com>; Kunal Gupta <Kunal.Gupta@trilegal.com>; Lavanya B Ananth <Lavanya.Ananth@trilegal.com>; Littman, A. Kristina <AKLittman@willkie.com>; Manu Kulkarni <manu@poovayya.net>; Mohammed Shameer <Mohammed.Shameer@trilegal.com>; Mordkoff, Andrew <amordkoff@willkie.com>; Paul Gross <paul.gross@near.com>; Raavi Gupta <Raavi.Gupta@trilegal.com>; Sayan Ghose <Sayan.Ghose@trilegal.com>; Shagun Singh <shagun.singh@poovayya.net>; Wiseroy Damodaran <Wiseroy.Damodaran@trilegal.com>; siddhartha@poovayya.net; smruthi.prahalad@poovayya.net; varnika.sharma@poovayya.net
**Subject:** RE: Call - Justin Joseph (without prejudice)

We will do so. Just clarifying that what you wrote below "will not negotiate below $700,000" is not within the realm of the possible for NEAR.

**Rachel C. Strickland**
**Willkie Farr & Gallagher LLP**
787 Seventh Avenue | New York, NY 10019-6099
Direct: +1 212 728 8544 | Fax: +1 212 728 8111
rstrickland@willkie.com | vCard | www.willkie.com bio
**From:** Dharmendra Chatur <dharmendra.chatur@poovayya.net>
**Sent:** Wednesday, December 6, 2023 10:48 AM
**To:** Strickland, Rachel <RStrickland@willkie.com>
**Cc:** Akshata Benegal <akshata.benegal@poovayya.net>; Atul Gupta <Atul.Gupta@trilegal.com>; Kunal Gupta <Kunal.Gupta@trilegal.com>; Lavanya B Ananth <Lavanya.Ananth@trilegal.com>; Littman, A. Kristina <AKLittman@willkie.com>; Manu Kulkarni <manu@poovayya.net>; Mohammed Shameer <Mohammed.Shameer@trilegal.com>; Mordkoff, Andrew <amordkoff@willkie.com>; Paul Gross <paul.gross@near.com>; Raavi Gupta <Raavi.Gupta@trilegal.com>; Sayan Ghose <Sayan.Ghose@trilegal.com>; Shagun Singh <shagun.singh@poovayya.net>; Wiseroy Damodaran <Wiseroy.Damodaran@trilegal.com>; siddhartha@poovayya.net; smruthi.prahalad@poovayya.net; varnika.sharma@poovayya.net
**Subject:** Re: Call - Justin Joseph (without prejudice)

***EXTERNAL EMAIL ***

Rachel and Kristina,

If you're unwilling to tell us what your client's best and final offer is, we won't be able to secure our client's instructions. If no counter offer is forthcoming, I agree that this process can be wrapped up.

On Wed, 6 Dec 2023 at 9:01 PM, Strickland, Rachel <RStrickland@willkie.com> wrote:



10

It can be an admin claim yes.  $700,000 is not feasible so if that is your best and final, we should wrap this up now.

**857**

37

**Rachel C. Strickland**
**Willkie Farr & Gallagher LLP**
787 Seventh Avenue | New York, NY 10019-6099
Direct: +1 212 728 8544 | Fax: +1 212 728 8111
rstrickland@willkie.com | vCard | www.willkie.com bio

**From:** Akshata Benegal <akshata.benegal@poovayya.net>
**Sent:** Wednesday, December 6, 2023 10:30 AM
**To:** Littman, A. Kristina <AKLittman@willkie.com>
**Cc:** 'Atul Gupta' <Atul.Gupta@trilegal.com>; 'Kunal Gupta' <Kunal.Gupta@trilegal.com>; 'Manu Kulkarni' <manu@poovayya.net>; siddhartha@poovayya.net; 'Dharmendra Chatur' <dharmendra.chatur@poovayya.net>; varnika.sharma@poovayya.net; 'Lavanya B Ananth' <Lavanya.Ananth@trilegal.com>; 'Mohammed Shameer' <Mohammed.Shameer@trilegal.com>; Mordkoff, Andrew <amordkoff@willkie.com>; 'Raavi Gupta' <Raavi.Gupta@trilegal.com>; 'Sayan Ghose' <Sayan.Ghose@trilegal.com>; 'Wiseroy Damodaran' <Wiseroy.Damodaran@trilegal.com>; smruthi.prahalad@poovayya.net; 'Shagun Singh' <shagun.singh@poovayya.net>; Strickland, Rachel <RStrickland@willkie.com>; 'Paul Gross' <paul.gross@near.com>
**Subject:** RE: Call - Justin Joseph (without prejudice)

**\*\*\* EXTERNAL EMAIL \*\*\***

Please let us know what your client's final and best offer is, so that we can check with our client. Please also clarify if our client's claim will be treated as an 'administrative claim'.

Warm regards,

Akshata Benegal

| Principal Associate | + 91 9886940570 | akshata.benegal@poovayya.net |

The Estate, Level Four
121 Dickenson Road
Bangalore 560 042

| BANGALORE | NEW DELHI |

T: +91 80 4656 3000
F: +91 80 4656 3088

| Chambers and Partners APAC 2020 | IFLR1000 2020 | Asia Law 2020 | Media Law International 2019 | Venture Intelligence |
|---|---|---|---|---|
| Leading Law Firm in Employment and Real Estate | Ranked for M&A and Private Equity | Ranked for Corp and M&A, Dispute Resolution, Labour & Employment, Construction & Real Estate and TMT | Leading Practitioners | Top 15 Legal Advisors Mergers & Acquisitions 2017 |

INTERNET PRIVILEGE & CONFIDENTIALITY FOOTER

Notice by consent privileged/confidential information may be contained in this message. If you are not the first address indicated in this message, you are responsible for delivery of the message to such person, you may not copy or deliver this message to anyone else. In such case, you should destroy this message and kindly notify the sender by reply email. Please advise immediate if you or your employer do not consent to internet email for messages of this kind. Opinions, conclusions and other information in this message that do not relate to the official business of our firm shall be understood as neither given nor endorsed by it. Formal legal opinions are issued by the firm duly authorized by its partners. Accordingly, this message shall not be considered in itself as a legal opinion issued by the firm.

*Please consider the environment before printing this email*

**From:** Littman, A. Kristina <AKLittman@willkie.com>
**Sent:** Wednesday, December 6, 2023 8:44 PM
**To:** 'Akshata Benegal <akshata.benegal@poovayya.net>
**Cc:** 'Atul Gupta' <Atul.Gupta@trilegal.com>; 'Kunal Gupta' <Kunal.Gupta@trilegal.com>; 'Manu Kulkarni' <manu@poovayya.net>; siddhartha@poovayya.net; 'Dharmendra Chatur' <dharmendra.chatur@poovayya.net>; varnika.sharma@poovayya.net; 'Lavanya B Ananth' <Lavanya.Ananth@trilegal.com>; 'Mohammed Shameer' <Mohammed.Shameer@trilegal.com>; Mordkoff, Andrew <amordkoff@willkie.com>; 'Raavi Gupta' <Raavi.Gupta@trilegal.com>; 'Sayan Ghose' <Sayan.Ghose@trilegal.com>; 'Wiseroy Damodaran' <Wiseroy.Damodaran@trilegal.com>; smruthi.prahalad@poovayya.net; 'Shagun Singh' <shagun.singh@poovayya.net>; Strickland, Rachel <RStrickland@willkie.com>; 'Paul Gross' <paul.gross@near.com>
**Subject:** RE: Call - Justin Joseph (without prejudice)

To be clear, are you saying that $700,000 is your final offer and your client will not accept any amount below that?

Kristy

**A. Kristina Littman**
**Willkie Farr & Gallagher LLP**
1875 K Street, N.W. | Washington, DC 20006-1238
Direct: +1 202 303 1209 | Fax: +1 202 303 2000
aklittman@willkie.com | vCard | www.willkie.com bio

**From:** Akshata Benegal <akshata.benegal@poovayya.net>
**Sent:** Wednesday, December 6, 2023 10:16 AM
**To:** Littman, A. Kristina <AKLittman@willkie.com>
**Cc:** 'Atul Gupta' <Atul.Gupta@trilegal.com>; 'Kunal Gupta' <Kunal.Gupta@trilegal.com>; 'Manu Kulkarni' <manu@poovayya.net>; siddhartha@poovayya.net; 'Dharmendra Chatur' <dharmendra.chatur@poovayya.net>; varnika.sharma@poovayya.net; 'Lavanya B Ananth' <Lavanya.Ananth@trilegal.com>; 'Mohammed Shameer' <Mohammed.Shameer@trilegal.com>; Mordkoff, Andrew <amordkoff@willkie.com>; 'Raavi Gupta' <Raavi.Gupta@trilegal.com>; 'Sayan Ghose' <Sayan.Ghose@trilegal.com>; 'Wiseroy Damodaran' <Wiseroy.Damodaran@trilegal.com>; smruthi.prahalad@poovayya.net; 'Shagun Singh' <shagun.singh@poovayya.net>; Strickland, Rachel <RStrickland@willkie.com>; 'Paul Gross' <paul.gross@near.com>
**Subject:** RE: Call - Justin Joseph (without prejudice)

*** EXTERNAL EMAIL ***

Hi Kristina,

We have discussed with our client. Since your client is combining all monetary demands into a single offer, the same should be much higher. Given your client's financial situation, our client is willing to consider a lower compensation amount from his original claim but will not negotiate below $700,000. Please also confirm if our client's claim will be treated as an 'administrative claim'.

Warm regards,

Akshata Benegal

| Principal Associate | + 91 9886940570 | akshata.benegal@poovayya.net |

---

The Estate, Level Four
121 Dickenson Road
Bangalore 560 042

| BANGALORE | NEW DELHI |

166

T: +91 80 4656 3000
F: +91 80 4656 3088

39

859

| Chambers and Partners APAC 2020 | IFLR1000 2020 | Asia Law 2020 | Media Law International 2019 | Venture Intelligence |
|---|---|---|---|---|
| Leading Law Firm in Employment and Real Estate | Ranked for M&A and Private Equity | Ranked for Corp and M&A, Dispute Resolution, Labour & Employment, Construction & Real Estate and TMT | Leading Practitioners | Top 15 Legal Advisors Mergers & Acquisitions 2017 |

INTERNET EMAIL CONFIDENTIALITY FOOTER

Attorney – client privileged/confidential information may be contained in this message. If you are not the first addressee or indicated in this message (or responsible for delivery of the message to such person), you may not copy or deliver this message to anyone. In any case you should destroy this message and kindly notify the sender by reply email. Please advise immediately if you or your employer does not consent to internet email for messages of this kind. Opinions, conclusions and other information in this message that do not relate to the official business of our firm shall be understood as neither given nor endorsed by it. Formal legal opinions are issued by the firm duly executed by its partners. Accordingly, this message shall not be considered as a formal legal opinion issued by the firm.

 *Please consider the environment before printing this email*

**From:** Littman, A. Kristina <AKLittman@willkie.com>
**Sent:** Tuesday, December 5, 2023 6:09 PM
**To:** Akshata Benegal <akshata.benegal@poovayya.net>
**Cc:** Atul Gupta <Atul.Gupta@trilegal.com>; Kunal Gupta <Kunal.Gupta@trilegal.com>; Manu Kulkarni <manu@poovayya.net>; siddhartha@poovayya.net; Dharmendra Chatur <dharmendra.chatur@poovayya.net>; varnika.sharma@poovayya.net; Lavanya B Ananth <Lavanya.Ananth@trilegal.com>; Mohammed Shameer <Mohammed.Shameer@trilegal.com>; Mordkoff, Andrew <amordkoff@willkie.com>; Raavi Gupta <Raavi.Gupta@trilegal.com>; Sayan Ghose <Sayan.Ghose@trilegal.com>; Wiseroy Damodaran <Wiseroy.Damodaran@trilegal.com>; smruthi.prahalad@poovayya.net; Shagun Singh <shagun.singh@poovayya.net>; Strickland, Rachel <RStrickland@willkie.com>; Paul Gross <paul.gross@near.com>
**Subject:** RE: Call - Justin Joseph (without prejudice)

We are combining the monetary demands into one offer, we are not engaging in three separate negotiations. Do you have a counter offer to our monetary offer of $250,000?

As for the third party, that is only if Near Intelligence, Inc. is in bankruptcy at the time that the agreement is reached. We have full authority at this time, but the requested release and indemnification would bind that party. If that party is in bankruptcy proceedings those provisions would require additional approvals.

Kristy

—

On December 5, 2023 at 3:02:24 AM EST, Akshata Benegal <akshata.benegal@poovayya.net> wrote:

*** EXTERNAL EMAIL ***

Ms. Littman,

Thank you for your email. We have discussed your proposal with our client and are instructed to state that the monetary compensation offered by your client is significantly lower than the amount proposed by our client.

13

ᵤₒ**860**

Our client's annual salary, from January 2023, was fixed as $250,000, i.e., $175,000 as base compensation + $75,000 as annual bonus. It was converted to INR as approximately INR 1,40,00,000 as base compensation + INR 60,00,000 as annual bonus. Please find attached our client's pay slip for April 2023. Your client may check records of NIPL and Near Intelligence Inc. as well as with the relevant finance teams to verify these details .

Further, as discussed over our call on Friday December 01, 2023), our client has dedicated most of his career towards the business and NIPL itself, with utmost sincerity and integrity. The demand made by your client for our client to resign from his employment will leave him unemployed and in a very difficult situation, which is unfair as our client is not responsible for the condition in which Near Intelligence Inc. is in today, and was never involved in any of the allegedly illegal activities or misconduct alleged by your client against certain other officers. In fact, your client and you have confirmed that no allegations have been made against our client and that the investigation that you are conducting is not against our client.

Our client had also claimed compensation for defaming his name and reputation, mental harassment, discrimination, and agony faced by our client since September 30, 2023, which your client does not seem to have considered. Regarding the RSU amounts, we are instructed that the agreement with respect to the RSUs granted to our client is a public document and available on the Morgan Stanley e*trade portal. The 'Grant Number' is **ES-314**. We request your client to consider these claims as well.

Our client's demands are reasonable and have been made keeping in mind the financial situation that your client is in, currently. We therefore request your client to be fair to our client and consider his request.

We note that in your email, you have indicated that the offer made by your client is contingent upon our client's agreement to cooperate as requested, and 'will need to be approved by a third party'. Please provide us with more information on this as it seems as though the offer being made to our client is without any assurance or certainty.

We look forward to your response.

Warm regards,

Akshata Benegal

| Principal Associate | + 91 9886940570 | akshata.benegal@poovayya.net |

| BANGALORE | NEW DELHI |

The Estate, Level Four
121 Dickenson Road
Bangalore 560 042

T: +91 80 4656 3000
F: +91 80 4656 3088

| Chambers and Partners APAC 2020 | IFLR1000 2020 | Asia Law 2020 | Media Law International 2019 | Venture Intelligence |
|---|---|---|---|---|
| Leading Law Firm in Employment and Real Estate | Ranked for M&A and Private Equity | Ranked for Corp and M&A, Dispute Resolution, Labour & Employment, Construction & Real Estate and TMT | Leading Practitioners | Top 15 Legal Advisors Mergers & Acquisitions 2017 |

INTERNET EMAIL CONFIDENTIALITY NOTICE

Attorney - client privileged/other sensitive information may be contained in this message. If you are not the first-named person indicated in this message (or responsible for delivery of the message to such person), you may not copy, distribute or forward the message to anyone. In such case, you should destroy this message and kindly notify the sender by reply email. Please advise us immediately if you or your employer do not consent to internet email for messages of this kind. Opinions, conclusions and other information in this message that do not relate to the official business of our firm shall be understood as neither given nor endorsed by it. Formal legal opinions are issued by the firm duly executed by its partners. Casual opinions shall not be considered as a formal legal opinion issued by the firm.

 Please consider the environment before printing this email



ԿI

**861**

A. Kristina Littman
**Willkie Farr & Gallagher LLP**
1875 K Street, N.W. | Washington, DC 20006-1238
Direct: +1 202 303 1209 | Fax: +1 202 303 2000
aklittman@willkie.com | vCard | www.willkie.com bio

**From:** Littman, A. Kristina <AKLittman@willkie.com>
**Sent:** Sunday, December 3, 2023 11:31 PM
**To:** 'Akshata benegal' <akshata.benegal@poovayya.net>
**Cc:** 'Atul Gupta' <Atul.Gupta@trilegal.com>; 'Kunal Gupta' <Kunal.Gupta@trilegal.com>;
'Manu Kulkarni' <manu@poovayya.net>; siddhartha@poovayya.net; 'Dharmendra Chatur'
<dharmendra.chatur@poovayya.net>; varnika.sharma@poovayya.net; 'Lavanya B Ananth'
<Lavanya.Ananth@trilegal.com>; 'Mohammed Shameer'
<Mohammed.Shameer@trilegal.com>; Mordkoff, Andrew <amordkoff@willkie.com>;
'Raavi Gupta' <Raavi.Gupta@trilegal.com>; 'Sayan Ghose' <Sayan.Ghose@trilegal.com>;
'Wiseroy Damodaran' <Wiseroy.Damodaran@trilegal.com>;
smruthi.prahalad@poovayya.net; 'Shagun Singh' <shagun.singh@poovayya.net>;
Strickland, Rachel <RStrickland@willkie.com>; 'Paul Gross' <paul.gross@near.com>
**Subject:** RE: Call - Justin Joseph (without prejudice)

Ms. Benegal,

I have consulted with my client and we can agree to your requests below relating to a
release, indemnification and a written notice to Near employees. In light of your monetary
demand that was communicated on our call on Friday, December 1, 2023, my client is
increasing its offer of monetary consideration from one-year salary for Mr. Joseph, to
$250,000 USD. My understanding is that Mr. Joseph's annual salary is not $240,000, as
your colleague suggested on our call, rather his annual salary is less than $200,000. As
such, this increased offer is significant in light of the company's current condition. This
offer is contingent upon Mr. Joseph's agreement to fulfill all of the cooperation that we
have outlined previously and will need to be approved by a third party once the company is
in bankruptcy proceedings.

Please let me know whether this monetary amount is acceptable to your client so that we
can move forward with appropriate documentation for this agreement.

Kristy

A. Kristina Littman
**Willkie Farr & Gallagher LLP**
1875 K Street, N.W. | Washington, DC 20006-1238
Direct: +1 202 303 1209 | Fax: +1 202 303 2000
aklittman@willkie.com | vCard | www.willkie.com bio

**From:** Akshata Benegal <akshata.benegal@poovayya.net>
**Sent:** Tuesday, November 28, 2023 11:33 AM
**To:** Littman, A. Kristina <AKLittman@willkie.com>
**Cc:** 'Atul Gupta' <Atul.Gupta@trilegal.com>; 'Kunal Gupta' <Kunal.Gupta@trilegal.com>;
'Manu Kulkarni' <manu@poovayya.net>; siddhartha@poovayya.net; 'Dharmendra Chatur'
<dharmendra.chatur@poovayya.net>; varnika.sharma@poovayya.net; 'Lavanya B Ananth'
<Lavanya.Ananth@trilegal.com>; 'Mohammed Shameer'
<Mohammed.Shameer@trilegal.com>; Mordkoff, Andrew <amordkoff@willkie.com>;
'Raavi Gupta' <Raavi.Gupta@trilegal.com>; 'Sayan Ghose' <Sayan.Ghose@trilegal.com>;
'Wiseroy Damodaran' <Wiseroy.Damodaran@trilegal.com>;



smruthi.prahalad@poovayya.net; 'Shagun Singh' <shagun.singh@poovayya.net>;   u2   **862**
Strickland, Rachel <RStrickland@willkie.com>; 'Paul Gross' <paul.gross@near.com>
**Subject:** RE: Call - Justin Joseph (without prejudice)

**\*\*\* EXTERNAL EMAIL \*\*\***

Ms. Littman,

We note that the list of conditions in your email below now includes additional conditions, including that our client resign from employment and directorship of Near Intelligence Private Limited ("NIPL"), which was never mentioned earlier. As you are aware, our client has been part of the Near Intelligence group of companies from the very beginning and has dedicated over fourteen years of his career to the business and organisation.

Firstly, our client is an employee and director of NIPL, and not Near Intelligence Inc. We have not seen any authorisation from NIPL to Near Intelligence Inc. that such demand, i.e., our client resign, be made on its behalf. It is apparent that the condition for our client to resign is being made as your client is aware that they have no right, authority, or legal grounds to terminate our client's employment. Further, as you have indicated earlier, **the ongoing investigation that you are conducting is not against our client and no allegations have been made against our client.** Therefore, your client's demand that our client resign from employment is effectively a termination of his employment without cause and our client is entitled to be adequately and fairly compensated for the same.

Regarding indemnification, Article 88 of the Articles of Association is not adequate as it contains certain exceptions. Given that the only reason our client was unable to carry out any filings was due to the illegal actions of certain officers of Near Intelligence Inc. by blocking his access to work accounts, the indemnification given by Near Intelligence Inc. and NIPL must be unconditional and our client must be released from all liability.

We are instructed that in view of the foregoing, and without prejudice, our client is agreeable to cooperating with your client, subject to the following requirements being met:

1. Near Intelligence Inc. and its subsidiaries including NIPL will issue an undertaking, in writing, unconditionally indemnifying our client against any proceedings / actions / claims that may be initiated against our client or involving our client in any way, arising from anything relating to Near Intelligence Inc, NIPL or any other related entities;

2. Near Intelligence Inc. and its subsidiaries including NIPL will, in writing, unconditionally release our client from any and all liabilities in respect of any past, existing or future claims, actions, legal proceedings, etc. vis-a-vis Near Intelligence Inc, NIPL or any other related entities.

2. Our client be paid a fair compensation in view of your client's demand that he resign from employment and directorship, and for defaming his name and reputation and the agony and trauma caused to our client by your client's unprofessional, unethical and illegal actions as mentioned in our legal notice. We can discuss this in more detail; and

4. An official statement from Near Intelligence Inc. and NIPL, to all employees of NIPL and its parent entities, clarifying that no allegations have been made against our client, and that the investigation being conducted by you is not against our client.

We look forward to your response.

Warm regards,

Akshata Benegal

| Principal Associate | + 91 9886940570 | akshata.benegal@poovayya.net |

The Estate, Level Four
121 Dickenson Road
Bangalore 560 042

T: +91 80 4656 3000
F: +91 80 4656 3088

**Important Notice:** This email message is intended to be received only by persons entitled to receive the confidential information it may contain. Email messages to clients of Willkie Farr & Gallagher LLP presumptively contain information that is confidential and legally privileged; email messages to non-clients are normally confidential and may also be legally privileged. Please do not read, copy, forward or store this message unless you are an intended recipient of it. If you have received this message in error, please forward it back. Willkie Farr & Gallagher LLP is a limited liability partnership organized in the United States under the laws of the State of Delaware, which laws limit the personal liability of partners.

**Important Notice:** This email message is intended to be received only by persons entitled to receive the confidential information it may contain. Email messages to clients of Willkie Farr & Gallagher LLP presumptively contain information that is confidential and legally privileged; email messages to non-clients are normally confidential and may also be legally privileged. Please do not read, copy, forward or store this message unless you are an intended recipient of it. If you have received this message in error, please forward it back. Willkie Farr & Gallagher LLP is a limited liability partnership organized in the United States under the laws of the State of Delaware, which laws limit the personal liability of partners.

**Important Notice:** This email message is intended to be received only by persons entitled to receive the confidential information it may contain. Email messages to clients of Willkie Farr & Gallagher LLP presumptively contain information that is confidential and legally privileged; email messages to non-clients are normally confidential and may also be legally privileged. Please do not read, copy, forward or store this message unless you are an intended recipient of it. If you have received this message in error, please forward it back. Willkie Farr & Gallagher LLP is a limited liability partnership organized in the United States under the laws of the State of Delaware, which laws limit the personal liability of partners.

**Important Notice:** This email message is intended to be received only by persons entitled to receive the confidential information it may contain. Email messages to clients of Willkie Farr & Gallagher LLP presumptively contain information that is confidential and legally privileged; email messages to non-clients are normally confidential and may also be legally privileged. Please do not read, copy, forward or store this message unless you are an intended recipient of it. If you have received this message in error, please forward it back. Willkie Farr & Gallagher LLP is a limited liability partnership organized in the United States under the laws of the State of Delaware, which laws limit the personal liability of partners.

**Important Notice:** This email message is intended to be received only by persons entitled to receive the confidential information it may contain. Email messages to clients of Willkie Farr & Gallagher LLP presumptively contain information that is confidential and legally privileged; email messages to non-clients are normally confidential and may also be legally privileged. Please do not read, copy, forward or store this message unless you are an intended recipient of it. If you have received this message in error, please forward it back. Willkie Farr & Gallagher LLP is a limited liability partnership organized in the United States under the laws of the State of Delaware, which laws limit the personal liability of partners.

**Important Notice:** This email message is intended to be received only by persons entitled to receive the confidential information it may contain. Email messages to clients of Willkie Farr & Gallagher LLP presumptively contain information that is confidential and legally privileged; email messages to non-clients are normally confidential and may also be legally privileged. Please do not read, copy, forward or store this message unless you are an intended recipient of it. If you have received this message in error, please forward it back. Willkie Farr & Gallagher LLP is a limited liability partnership organized in the United States under the laws of the State of Delaware, which laws limit the personal liability of partners.



ᴜ� **864**

**nirnay.shanbough@poovayya.net**

| From: | Akshata Benegal <akshata.benegal@poovayya.net> |
|---|---|
| Sent: | Tuesday, November 21, 2023 10:48 PM |
| To: | 'Littman, A. Kristina' |
| Cc: | 'Atul Gupta'; 'Kunal Gupta'; 'Manu Kulkarni'; 'Dharmendra Chatur'; 'Lavanya B Ananth'; 'Mohammed Shameer'; 'Mordkoff, Andrew'; 'Raavi Gupta'; 'Sayan Ghose'; 'Wiseroy Damodaran'; smruthi.prahalad@poovayya.net; 'Strickland, Rachel'; 'Paul Gross' |
| Subject: | RE: Call - Justin Joseph (without prejudice) |

Ms. Littman,

As you are aware and have also acknowledged in your email below, despite having received the legal notice dated October 14, 2023 issued on behalf our client, Mr. Justin Joseph (the "**Legal Notice**"), none of the addressees including Near Intelligence Inc. ("**Near Inc**"), have responded to the same till date. You had indicated in your email dated November 03, 2023, that Trilegal will be responding to the Legal Notice. However, it has been over a month and we have not received any response. It is also strange that you are now seeking a copy of our client's employment agreement as this is a document that is part of company records and ought to be accessible to your client. In any event, we reiterate the contents of our Legal Notice.

Further, with respect to the list of requests in your email, please note that this is the **first time** such a request is being made to our client.

Without prejudice to the foregoing, please note that your allegations that our client is not participating or complying with the requirements listed in your email are completely baseless and false, in light of the following.

As you are aware, your client, despite having absolutely no authority, completely disabled our client from performing any duties as a director of NIPL by blocking our client's access to his official email, company records, books, and other accounts since September 30, 2023. In fact, certain officers of your client even made public announcements to various employees of Near Inc. that our client has been put on 'administrative leave' in view of a purported internal inquiry that was being conducted by Near Inc. Admittedly, no allegations of any kind have been made against our client. Our client has never received any official communication or explanation regarding the actions taken by Near Inc. and its officers, till date.

Please also note that the aforementioned actions are illegal and amount to an illegal interference with the day to day operations of NIPL, which is a completely distinct and separate corporate entity under Indian law. Our client is an employee and director of NIPL, not of Near Inc. Any actions against our client could have been taken only by NIPL, and Near Inc. has no such authority.

Please note that any statutory penalties incurred by NIPL are solely attributable to the illegal acts of Near Inc., and our client is not liable for the same. In fact, since our client's access was blocked on September 30, 2023, our client cannot be termed as an officer of NIPL as he has not been involved in the day to day affairs and management of the company since September 30, 2023 till date due to your illegal actions.

We are instructed that if Near Inc. and NIPL require our client to carry out any actions as a director of NIPL, our client's access to his accounts must be reinstated immediately, and Near Inc. and NIPL must furnish a written undertaking in favour of our client to indemnify him against any actions that may be taken against our client due to the illegal actions of Near Inc.

Our client reserves all rights.

Warm regards,

Akshata Benegal

| Principal Associate | + 91 9886940570 | akshata.benegal@poovayya.net |

1

172                                                   uS





865

# Poovayya & Co.

ADVOCATES & SOLICITORS

| BANGALORE | NEW DELHI |

The Estate, Level Four
121 Dickenson Road
Bangalore 560 042

T: +91 80 4656 3000
F: +91 80 4656 3088

vaHu

WINNER

| | Chambers and Partners APAC 2020 | IFLR1000 2020 | Asia Law 2020 | Media Law International 2019 | Venture Intelligence |
|---|---|---|---|---|---|
| INDIA BUSINESS LAW JOURNAL AWARD WINNING LAW FIRM 2020 | Leading Law Firm in Employment and Real Estate | Ranked for M&A and Private Equity | Ranked for Corp and M&A, Dispute Resolution, Labour & Employment, Construction & Real Estate and TMT | Leading Practitioners | Top 15 Legal Advisors Mergers & Acquisitions 2017 |

INTERNET EMAIL CONFIDENTIALITY FOOTER

Attorney - client privileged/confidential information may be contained in this message. If you are not the first addressee indicated in this message (or responsible for delivery of the message to such person), you may not copy or deliver this message to anyone. In such case, you should destroy this message and kindly notify the sender by reply email. Please advise immediately if you or your employer do not consent to internet email for messages of this kind. Opinions, conclusions and other information in this message that do not relate to the official business of our firm shall be understood as neither given nor endorsed by it. Formal legal opinions are issued by the firm duly executed by its partners. Accordingly, this message shall not be considered as a formal legal opinion issued by the firm.

 *Please consider the environment before printing this email*

**From:** Littman, A. Kristina <AKLittman@willkie.com>
**Sent:** Monday, November 20, 2023 11:03 PM
**To:** 'Akshata Benegal' <akshata.benegal@poovayya.net>
**Cc:** 'Atul Gupta' <Atul.Gupta@trilegal.com>; 'Kunal Gupta' <Kunal.Gupta@trilegal.com>; 'Dharmendra Chatur' <dharmendra.chatur@poovayya.net>; 'Lavanya B Ananth' <Lavanya.Ananth@trilegal.com>; 'Mohammed Shameer' <Mohammed.Shameer@trilegal.com>; Mordkoff, Andrew <amordkoff@willkie.com>; 'Raavi Gupta' <Raavi.Gupta@trilegal.com>; 'Sayan Ghose' <Sayan.Ghose@trilegal.com>; 'Wiseroy Damodaran' <Wiseroy.Damodaran@trilegal.com>; smruthi.prahalad@poovayya.net; Strickland, Rachel <RStrickland@willkie.com>; 'Paul Gross' <paul.gross@near.com>
**Subject:** RE: Call - Justin Joseph (without prejudice)

Ms. Benegal,

I'm sorry to hear about Mr. Joseph's wife. I hope that her condition has improved.

I also hope that by now you have had an opportunity to speak with Mr. Joseph about his cooperation. My client needs to know whether Mr. Joseph will cooperate and we cannot agree to additional delays. Please respond within 24 hours to let us know whether Mr. Joseph will cooperate with our request for an investigative interview and with the requests outlined in the list below.

As I am certain Mr. Joseph is aware, as a director of the Near Intelligence Private Limited (the Company), several statutory and other obligations concerning the Company's business are well past their due dates and may results in penalties and other adverse consequences to the Company. These obligations can only be met with active participation of a director of the Company and are set out in the non-exhaustive list below. These are requests that we and Trilegal have made to your client in prior discussions with you. Mr. Joseph's continued non-participation and non-compliance with these requirements is in breach of his duties as a director of the Company. All liabilities and penalties which the Company may be exposed to because of your client's continued non-participation and non-compliance are attributable to Mr. Joseph in his role as a director.

1. Paying withholding taxes / TDS for September, October and November 2023 (and the future months) on behalf of the Company.



2. Assistance on payroll including payment of employee provident fund contribution for September and November 2023 on behalf of the Company.

3. Addition of bank signatories (of the Company) for making payments to vendors, credit card payments etc.

4. Conducting the annual general meeting of the Company for FY 2022-23 for, inter alia, adopting the consolidated financial statements for FY 2022-23.

5. Filing of: (a) consolidated financial statements (in form AOC-4); and (b) annual return (in form MGT-7), of the Company for FY 2022-23 as required under Section 137 and 92 of the Companies Act, 2013.

6. Filing of audit report of the Company with the Income Tax Department.

7. Filing of transfer pricing certificate (form 3CEB) of the Company with the Income Tax Department.

8. Filing of TDS returns of the Company for the third quarter i.e. July to September 2023.

9. Filing of income tax return of the Company – March 2023 and payment of tax for March 2023.

10. Filing of GST Returns of Near India for Q3 - GSTR 1 and GSTR 3B.

11. Filing an application on the Company's behalf for claiming GST refund.

We look forward to hearing from you in the next 24 hours.  Can you also please share the employment agreement that you reference in your October 14, 2023 Legal Notice?

Best,
Kristy Littman


**A. Kristina Littman**
**Willkie Farr & Gallagher LLP**
1875 K Street, N.W. | Washington, DC 20006-1238
Direct: +1 202 303 1209 | Fax: +1 202 303 2000
aklittman@willkie.com | vCard | www.willkie.com bio


**From:** Akshata Benegal <akshata.benegal@poovayya.net>
**Sent:** Friday, November 17, 2023 9:40 AM
**To:** Littman, A. Kristina <AKLittman@willkie.com>
**Cc:** 'Atul Gupta' <Atul.Gupta@trilegal.com>; 'Kunal Gupta' <Kunal.Gupta@trilegal.com>; 'Dharmendra Chatur' <dharmendra.chatur@poovayya.net>; 'Lavanya B Ananth' <Lavanya.Ananth@trilegal.com>; 'Mohammed Shameer' <Mohammed.Shameer@trilegal.com>; Mordkoff, Andrew <amordkoff@willkie.com>; 'Raavi Gupta' <Raavi.Gupta@trilegal.com>; 'Sayan Ghose' <Sayan.Ghose@trilegal.com>; 'Wiseroy Damodaran' <Wiseroy.Damodaran@trilegal.com>; smruthi.prahalad@poovayya.net
**Subject:** RE: Call - Justin Joseph (without prejudice)

*** EXTERNAL EMAIL ***

Hi Kristina,

Justin's wife is unwell and was admitted into the hospital yesterday. We have not been able to discuss this with him in detail as he has been understandably caught up. We will check with him and come back to you at the earliest.

Warm regards,

Akshata Benegal

| Principal Associate | + 91 9886940570 | akshata.benegal@poovayya.net |



Poovayya & Co.
A D V O C A T E S   S O L I C I T O R S

| BANGALORE | NEW DELHI |

The Estate, Level Four
121 Dickenson Road
Bangalore 560 042

T: +91 80 4656 3000
F: +91 80 4656 3088



vahu

WINNER





| INDIA BUSINESS LAW JOURNAL AWARD-WINNING LAW FIRM 2020 | Chambers and Partners APAC 2020 | IFLR1000 2020 | Asia Law 2020 | Media Law International 2019 | 867venture Intelligence |
|---|---|---|---|---|---|
| | Leading Law Firm in Employment and Real Estate | Ranked for M&A and Private Equity | Ranked for Corp and M&A, Dispute Resolution, Labour & Employment, Construction & Real Estate and TMT | Leading Practitioners | Top 15 Legal Advisors Mergers & Acquisitions 2017 |

INTERNET EMAIL CONFIDENTIALITY FOOTER

Attorney - client privileged/confidential information may be contained in this message. If you are not the first addressee indicated in this message (or responsible for delivery of the message to such person), you may not copy or deliver this message to anyone. In such case, you should destroy this message and kindly notify the sender by reply email. Please advise immediately if you or your employer do not consent to internet email for messages of this kind. Opinions, conclusions and other information in this message that do not relate to the official business of our firm shall be understood as neither given nor endorsed by it. Formal legal opinions are issued by the firm duly executed by its partners. Accordingly, this message shall not be considered as a formal legal opinion issued by the firm.

*Please consider the environment before printing this email*

**From:** Littman, A. Kristina <AKLittman@willkie.com>
**Sent:** Friday, November 17, 2023 5:57 PM
**To:** Dharmendra Chatur <dharmendra.chatur@poovayya.net>
**Cc:** Akshata Benegal <akshata.benegal@poovayya.net>; Atul Gupta <Atul.Gupta@trilegal.com>; Kunal Gupta <Kunal.Gupta@trilegal.com>; Lavanya B Ananth <Lavanya.Ananth@trilegal.com>; Mohammed Shameer <Mohammed.Shameer@trilegal.com>; Mordkoff, Andrew <amordkoff@willkie.com>; Raavi Gupta <Raavi.Gupta@trilegal.com>; Sayan Ghose <Sayan.Ghose@trilegal.com>; Wiseroy Damodaran <Wiseroy.Damodaran@trilegal.com>; smruthi.prahalad@poovayya.net
**Subject:** Re: Call - Justin Joseph (without prejudice)

Can you please let us know whether Justin will cooperate with our requests that were communicated to you earlier this week?

Kristy

___

On November 15, 2023 at 9:20:04 AM EST, Littman, A. Kristina <AKLittman@willkie.com> wrote:

There will be a call. I'm sending it shortly.

___

On November 15, 2023 at 9:11:40 AM EST, Dharmendra Chatur <dharmendra.chatur@poovayya.net> wrote:



**\*\*\* EXTERNAL EMAIL \*\*\***

Hi Kristina - since we haven't received a zoom invitation yet, we presume that there won't be a call today.

Warm regards,
**Dharmendra Chatur**
Partner
M: +91 98444 64413 | O: +91 80 4656 3000
E: dharmendra.chatur@poovayya.net |
A: Level Four, The Estate, 121 Dickenson Road, Bengaluru 560042 | D-25 Nizamuddin East, New Delhi 110 001 India



175    u8                                                    **868**

**A. Kristina Littman**
**Willkie Farr & Gallagher LLP**
1875 K Street, N.W. | Washington, DC 20006-1238
Direct: +1 202 303 1209 | Fax: +1 202 303 2000
aklittman@willkie.com | vCard | www.willkie.com bio

**A. Kristina Littman**
**Willkie Farr & Gallagher LLP**
1875 K Street, N.W. | Washington, DC 20006-1238
Direct: +1 202 303 1209 | Fax: +1 202 303 2000
aklittman@willkie.com | vCard | www.willkie.com bio

On Wed, 15 Nov 2023 at 19:07, Dharmendra Chatur <dharmendra.chatur@poovayya.net> wrote:

> Dear Kristina:
>
> Thank you - we will wait for the zoom invitation for 7.30pm IST. Please also let us know if we can expect a response to our legal notice today. No response has been received since October 14, 2023.
>
> Warm regards,
> Dharmendra.
>
> On Wed, 15 Nov 2023 at 5:48 PM, Littman, A. Kristina <AKLittman@willkie.com> wrote:
>
> > Thank you. I can talk at 7:30pm IST. I will circulate a zoom invitation before that time.
> >
> > Kristy
> >
> > ─
> > On November 15, 2023 at 12:01:42 AM EST, Akshata Benegal <akshata.benegal@poovayya.net> wrote:
> >
> > > ***EXTERNAL EMAIL***
> > >
> > > Hi Ms. Littman,
> > >
> > > Can we have the call any time after 6 PM IST today (November 16th, 2023)? I had suggested this in my earlier email which I think may have been missed. I am attaching the email for convenience and completeness. Please let us know if this time slot works or if you prefer any other time slot.
> > >
> > > Warm regards,
> > >
> > > Akshata Benegal
> > >
> > > | Principal Associate | + 91 9886940570
> > > | akshata.benegal@poovayya.net |



176     49



**869**

# Poovayya & Co.
A D V O C A T E S    S O L I C I T O R S

| BANGALORE | NEW DELHI |

The Estate, Level Four
121 Dickenson Road
Bangalore 560 042

T: +91 80 4656 3000
F: +91 80 4656 3088

| INDIA BUSINESS LAW JOURNAL AWARD WINNING LAW FIRM 2020 | Chambers and Partners APAC 2020 | IFLR1000 2020 | Asia Law 2020 | Me Inte |
|---|---|---|---|---|
| | Leading Law Firm in Employment and Real Estate | Ranked for M&A and Private Equity | Ranked for Corp and M&A, Dispute Resolution, Labour & Employment, Construction & Real Estate and TMT | Leadin |

INTERNET EMAIL CONFIDENTIALITY FOOTER

Attorney - client privileged/confidential information may be contained in this message. If you indicated in this message (or responsible for delivery of the message to such person), you r message to anyone. In such case, you should destroy this message and kindly notify the sender immediately if you or your employer do not consent to internet email for messages of this kin other information in this message that do not relate to the official business of our firm shall be nor endorsed by it. Formal legal opinions are issued by the firm duly executed by its partners. Ac not be considered as a formal legal opinion issued by the firm.

 *Please consider the environment before printing this email*

**A. Kristina Littman**
**Willkie Farr & Gallagher LLP**
1875 K Street, N.W. | Washington, DC 20006-1238
Direct: +1 202 303 1209 | Fax: +1 202 303 2000
aklittman@willkie.com | vCard | www.willkie.com bio

**From:** Littman, A. Kristina
<AKLittman@willkie.com>
**Sent:** Wednesday, November 15, 2023 1:08 AM
**To:** 'Raavi Gupta'
<Raavi.Gupta@trilegal.com>; Atul Gupta
<Atul.Gupta@trilegal.com>; Kunal Gupta
<Kunal.Gupta@trilegal.com>;
dharmendra.chatur@poovayya.net;
akshata.benegal@poovayya.net;
smruthi.prahalad@poovayya.net; Wiseroy
Damodaran
<Wiseroy.Damodaran@trilegal.com>;
Mohammed Shameer
<Mohammed.Shameer@Trilegal.com>;
Sayan Ghose <Sayan.Ghose@Trilegal.com>;
Lavanya B Ananth
<Lavanya.Ananth@Trilegal.com>
**Cc:** Mordkoff, Andrew
<amordkoff@willkie.com>
**Subject:** RE: Call - Justin Joseph (without prejudice)

Ms. Benegal,



6

177    SO    **870**

I am following up on my email below. I understand that you have been out of the office for the holiday festivities. When you return to the office, can we please arrange a time to speak?

Best,
Kristy Littman


**A. Kristina Littman**
**Willkie Farr & Gallagher LLP**
1875 K Street, N.W. | Washington, DC
20006-1238
Direct: +1 202 303 1209 | Fax: +1 202 303
2000
aklittman@willkie.com | vCard |
www.willkie.com bio

**From:** Littman, A. Kristina
<AKLittman@willkie.com>
**Sent:** Thursday, November 9, 2023 1:04 PM
**To:** 'Raavi Gupta'
<Raavi.Gupta@trilegal.com>; Atul Gupta
<Atul.Gupta@trilegal.com>; Kunal Gupta
<Kunal.Gupta@trilegal.com>;
dharmendra.chatur@poovayya.net;
akshata.benegal@poovayya.net;
smruthi.prahalad@poovayya.net; Wiseroy
Damodaran
<Wiseroy.Damodaran@trilegal.com>;
Mohammed Shameer
<Mohammed.Shameer@Trilegal.com>;
Sayan Ghose <Sayan.Ghose@Trilegal.com>;
Lavanya B Ananth
<Lavanya.Ananth@Trilegal.com>
**Subject:** RE: Call - Justin Joseph (without
prejudice)

Ms. Benegal,

Do you have sometime today/tonight for a brief follow-up call? I would like to share an additional request with you. It should not take long.

Best,
Kristy Littman


**A. Kristina Littman**
**Willkie Farr & Gallagher LLP**
1875 K Street, N.W. | Washington, DC
20006-1238
Direct: +1 202 303 1209 | Fax: +1 202 303
2000
aklittman@willkie.com | vCard |
www.willkie.com bio

178

871

-----Original Appointment-----
**From:** Raavi Gupta
<Raavi.Gupta@trilegal.com>
**Sent:** Friday, November 3, 2023 8:18 AM
**To:** Atul Gupta; Kunal Gupta; Littman, A.
Kristina;
dharmendra.chatur@poovayya.net;
akshata.benegal@poovayya.net;
smruthi.prahalad@poovayya.net; Wiseroy
Damodaran; Mohammed Shameer; Sayan
Ghose; Lavanya B Ananth
**Subject:** Call - Justin Joseph (without
prejudice)
**When:** Tuesday, November 7, 2023 8:00
PM-9:00 PM (UTC+05:30) Chennai, Kolkata,
Mumbai, New Delhi.
**Where:** Microsoft Teams Meeting

**\*\*\* EXTERNAL EMAIL \*\*\***

Microsoft Teams meeting

**Join on your computer, mobile app or room
device**
Click here to join the meeting

Meeting ID: 498 014 226 917
Passcode: EKfPmJ
Download Teams | Join on on the web

Learn More | Meeting options

Warm regards,

**Raavi Gupta**
Executive Assistant

**CONFIDENTIALITY NOTE**
This communication (including any accompanying documents) is intended only for the use of the addressee(s) and co
PRIVILEGED AND CONFIDENTIAL. Unauthorized reading, dissemination, distribution or copying of this communication
received this communication in error, please notify us immediately at https://www.trilegal.com/offices/ and prompt
communication. This email has been scanned for viruses and malware and has been automatically archived. Thank y



179          S2                          **872**

**Disclaimer**

The information contained in this communication from the sender is confidential. It is intended solely for use by the recipient and others authorized to receive it. If you are not the recipient, you are hereby notified that any disclosure, copying, distribution or taking action in relation of the contents of this information is strictly prohibited and may be unlawful.

This email has been scanned for viruses and malware, and may have been automatically archived by **Mimecast Ltd**, an innovator in Software as a Service (SaaS) for business. Providing a **safer** and **more useful** place for your human generated data. Specializing in; Security, archiving and compliance. To find out more Click Here.

**Important Notice:** This email message is intended to be received only by persons entitled to receive the confidential information it may contain. Email messages to clients of Willkie Farr & Gallagher LLP presumptively contain information that is confidential and legally privileged; email messages to non-clients are normally confidential and may also be legally privileged. Please do not read, copy, forward or store this message unless you are an intended recipient of it. If you have received this message in error, please forward it back. Willkie Farr & Gallagher LLP is a limited liability partnership organized in the United States under the laws of the State of Delaware, which laws limit the personal liability of partners.

**Important Notice:** This email message is intended to be received only by persons entitled to receive the confidential information it may contain. Email messages to clients of Willkie Farr & Gallagher LLP presumptively contain information that is confidential and legally privileged; email messages to non-clients are normally confidential and may also be legally privileged. Please do not read, copy, forward or store this message unless you are an intended recipient of it. If you have received this message in error, please forward it back. Willkie Farr & Gallagher LLP is a limited liability partnership organized in the United States under the laws of the State of Delaware, which laws limit the personal liability of partners.

**Important Notice:** This email message is intended to be received only by persons entitled to receive the confidential information it may contain. Email messages to clients of Willkie Farr & Gallagher LLP presumptively contain information that is confidential and legally privileged; email messages to non-clients are normally confidential and may also be legally privileged. Please do not read, copy, forward or store this message unless you are an intended recipient of it. If you have received this message in error, please forward it back. Willkie Farr & Gallagher LLP is a limited liability partnership organized in the United States under the laws of the State of Delaware, which laws limit the personal liability of partners.

**Important Notice:** This email message is intended to be received only by persons entitled to receive the confidential information it may contain. Email messages to clients of Willkie Farr & Gallagher LLP presumptively contain



180    $\text{53}$    **873**

information that is confidential and legally privileged; email messages to non-clients are normally confidential and may also be legally privileged. Please do not read, copy, forward or store this message unless you are an intended recipient of it. If you have received this message in error, please forward it back. Willkie Farr & Gallagher LLP is a limited liability partnership organized in the United States under the laws of the State of Delaware, which laws limit the personal liability of partners.

181

S4

**874**

| | |
|---|---|
| **From:** | Akshata Benegal <akshata.benegal@poovayya.net> |
| **Sent:** | Friday, February 2, 2024 04:58 PM |
| **To:** | 'Littman, A. Kristina' |
| **Cc:** | 'Manu Kulkarni'; 'Dharmendra Chatur'; 'Smruthi Prahalad'; 'Nirnay Shanbough' |
| **Subject:** | RE: Justin Joseph |

Ms. Littman,

We have taken Near's offer to our client and he is considering the same. We will come back to you on this next week.

Warm regards,

Akshata Benegal

| Principal Associate | + 91 9886940570 | akshata.benegal@poovayya.net |

 

**Poovayya & Co.**
ADVOCATES     SOLICITORS

The Estate, Level Four
121 Dickenson Road
Bangalore 560 042

T: +91 80 4656 3000
F: +91 80 4656 3088



| BANGALORE | NEW DELHI |

| INDIA BUSINESS LAW JOURNAL AWARD WINNING LAW FIRM 2020 | Chambers and Partners APAC 2020 | IFLR1000 2020 | Asia Law 2020 | Media Law International 2019 | Venture Intelligence |
|---|---|---|---|---|---|
| | Leading Law Firm in Employment and Real Estate | Ranked for M&A and Private Equity | Ranked for Corp and M&A, Dispute Resolution, Labour & Employment, Construction & Real Estate and TMT | Leading Practitioners | Top 15 Legal Advisors Mergers & Acquisitions 2017 |

INTERNET EMAIL CONFIDENTIALITY FOOTER

Attorney - client privileged/confidential information may be contained in this message. If you are not the first addressee indicated in this message (or responsible for delivery of the message to such person), you may not copy or deliver this message to anyone. In such case, you should destroy this message and kindly notify the sender by reply email. Please advise immediately if you or your employer do not consent to internet email for messages of this kind. Opinions, conclusions and other information in this message that do not relate to the official business of our firm shall be understood as neither given nor endorsed by it. Formal legal opinions are issued by the firm duly executed by its partners. Accordingly, this message shall not be considered as a formal legal opinion issued by the firm.

 *Please consider the environment before printing this email*

**From:** Littman, A. Kristina <AKLittman@willkie.com>
**Sent:** Friday, February 2, 2024 8:10 AM
**To:** Dharmendra Chatur <dharmendra.chatur@poovayya.net>; Akshata Benegal <akshata.benegal@poovayya.net>
**Subject:** Justin Joseph

Mr. Chatur and Ms. Benegal,

Have you had an opportunity to speak with your client about Near's offer?

Best,
Kristy Littman

182

875

**A. Kristina Littman**
**Willkie Farr & Gallagher LLP**
1875 K Street, N.W. | Washington, DC 20006-1238
Direct: +1 202 303 1209 | Fax: +1 202 303 2000
aklittman@willkie.com | vCard | www.willkie.com bio

**Important Notice:** This email message is intended to be received only by persons entitled to receive the confidential information it may contain. Email messages to clients of Willkie Farr & Gallagher LLP presumptively contain information that is confidential and legally privileged; email messages to non-clients are normally confidential and may also be legally privileged. Please do not read, copy, forward or store this message unless you are an intended recipient of it. If you have received this message in error, please forward it back. Willkie Farr & Gallagher LLP is a limited liability partnership organized in the United States under the laws of the State of Delaware, which laws limit the personal liability of partners.

**Sathyasagar Mithra**

| | |
|---|---|
| **From:** | Akshata Benegal <akshata.benegal@poovayya.net> |
| **Sent:** | Tuesday, April 16, 2024 11:24 AM |
| **To:** | 'Littman, A. Kristina' |
| **Cc:** | 'Manu Kulkarni'; 'Dharmendra Chatur'; 'Smruthi Prahalad'; 'Nirnay Shanbough'; 'Strickland, Rachel'; 'Mordkoff, Andrew' |
| **Subject:** | RE: Justin Joseph |

Noted, Kristina. Thanks. We will wait for the draft.

Warm regards,

Akshata Benegal

| Principal Associate | + 91 9886940570 | akshata.benegal@poovayya.net |

 

# Poovayya & Co.
ADVOCATES & SOLICITORS

| BANGALORE | NEW DELHI |

The Estate, Level Four
121 Dickenson Road
Bangalore 560 042

T: +91 80 4656 3000
F: +91 80 4656 3088

**vaHu**

**WINNER**



| INDIA BUSINESS LAW JOURNAL AWARD WINNING LAW FIRM 2020 | Chambers and Partners APAC 2020 | IFLR1000 2020 | Asia Law 2020 | Media Law International 2019 | Venture Intelligence |
|---|---|---|---|---|---|
| | Leading Law Firm in Employment and Real Estate | Ranked for M&A and Private Equity | Ranked for Corp and M&A, Dispute Resolution, Labour & Employment, Construction & Real Estate and TMT | Leading Practitioners | Top 15 Legal Advisors Mergers & Acquisitions 2017 |

INTERNET EMAIL CONFIDENTIALITY FOOTER

Attorney - client privileged/confidential information may be contained in this message. If you are not the first addressee indicated in this message (or responsible for delivery of the message to such person), you may not copy or deliver this message to anyone. In such case, you should destroy this message and kindly notify the sender by reply email. Please advise immediately if you or your employer do not consent to internet email for messages of this kind. Opinions, conclusions and other information in this message that do not relate to the official business of our firm shall be understood as neither given nor endorsed by it. Formal legal opinions are issued by the firm duly executed by its partners. Accordingly, this message shall not be considered as a formal legal opinion issued by the firm.

 *Please consider the environment before printing this email*

**From:** Littman, A. Kristina <AKLittman@willkie.com>
**Sent:** Monday, April 15, 2024 10:44 PM
**To:** Akshata Benegal <akshata.benegal@poovayya.net>
**Cc:** 'Manu Kulkarni' <manu@poovayya.net>; 'Dharmendra Chatur' <dharmendra.chatur@poovayya.net>; 'Smruthi Prahalad' <smruthi.prahalad@poovayya.net>; 'Nirnay Shanbough' <nirnay.shanbough@poovayya.net>; Strickland, Rachel <RStrickland@willkie.com>; Mordkoff, Andrew <amordkoff@willkie.com>
**Subject:** RE: Justin Joseph

We hope to send it to you later this week.  We are just awaiting comments from one more party.

1



184

ᛉ**877**

Kristy

**A. Kristina Littman**
**Willkie Farr & Gallagher LLP**
1875 K Street, N.W. | Washington, DC 20006-1238
Direct: +1 202 303 1209 | Fax: +1 202 303 2000
aklittman@willkie.com | vCard | www.willkie.com bio

**From:** Akshata Benegal <akshata.benegal@poovayya.net>
**Sent:** Monday, April 15, 2024 10:18 AM
**To:** Littman, A. Kristina <AKLittman@willkie.com>
**Cc:** 'Manu Kulkarni' <manu@poovayya.net>; 'Dharmendra Chatur' <dharmendra.chatur@poovayya.net>; 'Smruthi Prahalad' <smruthi.prahalad@poovayya.net>; 'Nirnay Shanbough' <nirnay.shanbough@poovayya.net>; Strickland, Rachel <RStrickland@willkie.com>; Mordkoff, Andrew <amordkoff@willkie.com>
**Subject:** RE: Justin Joseph



\*\*\*EXTERNAL EMAIL\*\*\*

Hi Kristina,

Just following up on by when we can expect to have the draft settlement agreement. Do let me know if you require anything further from our end. Thanks.

Warm regards,

Akshata Benegal

| Principal Associate | + 91 9886940570 | akshata.benegal@poovayya.net |



The Estate, Level Four
121 Dickenson Road
Bangalore 560 042

T: +91 80 4656 3000
F: +91 80 4656 3088

| BANGALORE | NEW DELHI |



vaHu

WINNER.

|  INDIA BUSINESS LAW JOURNAL AWARD WINNING LAW FIRM 2020 | Chambers and Partners APAC 2020 | IFLR1000 2020 | Asia Law 2020 | Media Law International 2019 | Venture Intelligence |
|---|---|---|---|---|---|
| | Leading Law Firm in Employment and Real Estate | Ranked for M&A and Private Equity | Ranked for Corp and M&A, Dispute Resolution, Labour & Employment, Construction & Real Estate and TMT | Leading Practitioners | Top 15 Legal Advisors Mergers & Acquisitions 2017 |

INTERNET EMAIL CONFIDENTIALITY FOOTER

Attorney - client privileged/confidential information may be contained in this message. If you are not the first addressee indicated in this message (or responsible for delivery of the message to such person), you may not copy or deliver this message to anyone. In such case, you should destroy this message and kindly notify the sender by reply email. Please advise immediately if you or your employer do not consent to internet email for messages of this kind. Opinions, conclusions and other information in this message that do not relate to the official business of our firm shall be understood as neither given nor endorsed by it. Formal legal opinions are issued by the firm duly executed by its partners. Accordingly, this message shall not be considered as a formal legal opinion issued by the firm.

 *Please consider the environment before printing this email*

2

**878**

**From:** Littman, A. Kristina <AKLittman@willkie.com>
**Sent:** Friday, April 5, 2024 2:26 AM
**To:** Akshata Benegal <akshata.benegal@poovayya.net>
**Cc:** 'Manu Kulkarni' <manu@poovayya.net>; 'Dharmendra Chatur' <dharmendra.chatur@poovayya.net>; 'Smruthi Prahalad' <smruthi.prahalad@poovayya.net>; 'Nirnay Shanbough' <nirnay.shanbough@poovayya.net>; Strickland, Rachel <RStrickland@willkie.com>; Mordkoff, Andrew <amordkoff@willkie.com>
**Subject:** RE: Justin Joseph

Thank you Akshata. We are working with counsel in India to get you a draft of the settlement agreement. I hope to get it to you shortly.

Best,
Kristy

**A. Kristina Littman**
**Willkie Farr & Gallagher LLP**
1875 K Street, N.W. | Washington, DC 20006-1238
Direct: +1 202 303 1209 | Fax: +1 202 303 2000
aklittman@willkie.com | vCard | www.willkie.com bio

**From:** Akshata Benegal <akshata.benegal@poovayya.net>
**Sent:** Wednesday, April 3, 2024 3:54 AM
**To:** Littman, A. Kristina <AKLittman@willkie.com>
**Cc:** 'Manu Kulkarni' <manu@poovayya.net>; 'Dharmendra Chatur' <dharmendra.chatur@poovayya.net>; 'Smruthi Prahalad' <smruthi.prahalad@poovayya.net>; 'Nirnay Shanbough' <nirnay.shanbough@poovayya.net>; Strickland, Rachel <RStrickland@willkie.com>; Mordkoff, Andrew <amordkoff@willkie.com>
**Subject:** RE: Justin Joseph

**\*\*\* EXTERNAL EMAIL \*\*\***

Hi Kristina,

Please find attached our client's employment agreement with Near India Private Limited. Please note that this agreement was signed in 2021, and the remuneration has been revised since then. Let us know if you require anything else. We look forward to the draft settlement agreement and hope you can send this to us at the earliest.

Warm regards,

Akshata Benegal

| Principal Associate | + 91 9886940570 | akshata.benegal@poovayya.net |



Poovayya & Co.
ADVOCATES & SOLICITORS

| BANGALORE | NEW DELHI |

The Estate, Level Four
121 Dickenson Road
Bangalore 560 042

T: +91 80 4656 3000
F: +91 80 4656 3088

**VAHU**
**WINNER**

| Chambers and Partners APAC 2020 | IFLR1000 2020 | Asia Law 2020 | Media Law International 2019 | Venture Intelligence |

Leading Practitioners

186

尔 **879**



| | Leading Law Firm in Employment and Real Estate | Ranked for M&A and Private Equity | Ranked for Corp and M&A, Dispute Resolution, Labour & Employment, Construction & Real Estate and TMT | Top 15 Legal Advisors Mergers & Acquisitions 2017 |

INTERNET EMAIL CONFIDENTIALITY FOOTER

Attorney - client privileged/confidential information may be contained in this message. If you are not the first addressee indicated in this message (or responsible for delivery of the message to such person), you may not copy or deliver this message to anyone. In such case, you should destroy this message and kindly notify the sender by reply email. Please advise immediately if you or your employer do not consent to internet email for messages of this kind. Opinions, conclusions and other information in this message that do not relate to the official business of our firm shall be understood as neither given nor endorsed by it. Formal legal opinions are issued by the firm duly executed by its partners. Accordingly, this message shall not be considered as a formal legal opinion issued by the firm.

 *Please consider the environment before printing this email*

**From:** Littman, A. Kristina <AKLittman@willkie.com>
**Sent:** Thursday, March 28, 2024 9:10 PM
**To:** Akshata Benegal <akshata.benegal@poovayya.net>
**Cc:** 'Manu Kulkarni' <manu@poovayya.net>; 'Dharmendra Chatur' <dharmendra.chatur@poovayya.net>; 'Smruthi Prahalad' <smruthi.prahalad@poovayya.net>; 'Nirnay Shanbough' <nirnay.shanbough@poovayya.net>; Strickland, Rachel <RStrickland@willkie.com>; Mordkoff, Andrew <amordkoff@willkie.com>
**Subject:** RE: Justin Joseph

We are working with counsel in India to finalize the first draft, which I should be able to transmit shortly.  First though, I need you to send me the copy you have of Mr. Joseph's employment agreement. Counsel in India needs this to complete the draft.  I have asked for this several times and you have declined to provide it.  Please provide it now.

Best,
Kristy Littman

**A. Kristina Littman**
**Willkie Farr & Gallagher LLP**
1875 K Street, N.W. | Washington, DC 20006-1238
Direct: +1 202 303 1209 | Fax: +1 202 303 2000
aklittman@willkie.com | vCard | www.willkie.com bio

**From:** Akshata Benegal <akshata.benegal@poovayya.net>
**Sent:** Thursday, March 28, 2024 8:16 AM
**To:** Littman, A. Kristina <AKLittman@willkie.com>
**Cc:** 'Manu Kulkarni' <manu@poovayya.net>; 'Dharmendra Chatur' <dharmendra.chatur@poovayya.net>; 'Smruthi Prahalad' <smruthi.prahalad@poovayya.net>; 'Nirnay Shanbough' <nirnay.shanbough@poovayya.net>; Strickland, Rachel <RStrickland@willkie.com>; Mordkoff, Andrew <amordkoff@willkie.com>
**Subject:** RE: Justin Joseph

***EXTERNAL EMAIL***

Hi Kristina,

I just wanted to follow up on this. By when can we expect a draft of the settlement agreement?

4

Warm regards,

*60*    **880**

Akshata Benegal

| Principal Associate | + 91 9886940570 | akshata.benegal@poovayya.net |

 

# Poovayya & Co.
ADVOCATES & SOLICITORS

The Estate, Level Four
121 Dickenson Road
Bangalore 560 042

T: +91 80 4656 3000
F: +91 80 4656 3088


**vaHU**
**WINNER**

| BANGALORE | NEW DELHI |

| INDIA BUSINESS LAW JOURNAL 2020 AWARD WINNING LAW FIRM 2020 | Chambers and Partners APAC 2020 | IFLR1000 2020 | Asia Law 2020 | Media Law International 2019 | Venture Intelligence |
|---|---|---|---|---|---|
| | Leading Law Firm in Employment and Real Estate | Ranked for M&A and Private Equity | Ranked for Corp and M&A, Dispute Resolution, Labour & Employment, Construction & Real Estate and TMT | Leading Practitioners | Top 15 Legal Advisors Mergers & Acquisitions 2017 |

INTERNET EMAIL CONFIDENTIALITY FOOTER

Attorney - client privileged/confidential information may be contained in this message. If you are not the first addressee indicated in this message for responsible for delivery of the message to such person), you may not copy or deliver this message to anyone. In such case, you should destroy this message and kindly notify the sender by reply email. Please advise immediately if you or your employer do not consent to internet email for messages of this kind. Opinions, conclusions and other information in this message that do not relate to the official business of our firm shall be understood as neither given nor endorsed by it. Formal legal opinions are issued by the firm duly executed by its partners. Accordingly, this message shall not be considered as a formal legal opinion issued by the firm.

 *Please consider the environment before printing this email*

**From:** Akshata Benegal <akshata.benegal@poovayya.net>
**Sent:** Tuesday, March 5, 2024 12:50 PM
**To:** 'Littman, A. Kristina' <AKLittman@willkie.com>
**Cc:** 'Manu Kulkarni' <manu@poovayya.net>; 'Dharmendra Chatur' <dharmendra.chatur@poovayya.net>; 'Smruthi Prahalad' <smruthi.prahalad@poovayya.net>; 'Nirnay Shanbough' <nirnay.shanbough@poovayya.net>; 'Strickland, Rachel' <RStrickland@willkie.com>; 'Mordkoff, Andrew' <amordkoff@willkie.com>
**Subject:** RE: Justin Joseph

Hi Kristina,

Our client has informed us that salary increments and bonuses were determined by a compensation committee constituted by Near Inc. Our client's compensation was revised to $250,000 ($175,000 base salary + $75,000 variable pay) from January 2023. This was part of a resolution of the committee to revise the salaries of the entire executive team, including John Faeta and Gladys Kong, before Near Inc. went public. We are instructed that there are minutes for the meetings of this committee and these details are also filed with the SEC. The company's finance team and the 'Compensation and benefits' team are also aware of these revisions and will have all documentation and information available with them. As our client does not have access to his work email or any company documents, he is unable to share the same. We request you to please check internally with your client for the said documents. I hope this is helpful. Alternatively, if our client may be granted temporary access to his emails, he will pull out the necessary documents.

Do let us know once you have had a chance to check on this. Please also share with us a draft of the settlement agreement.

Warm regards,

5    

Akshata Benegal

| Principal Associate | + 91 9886940570 | akshata.benegal@poovayya.net |

 

The Estate, Level Four
121 Dickenson Road
Bangalore 560 042

T: +91 80 4656 3000
F: +91 80 4656 3088

| BANGALORE | NEW DELHI |



| INDIA BUSINESS LAW JOURNAL AWARD-WINNING LAW FIRM 2020 | Chambers and Partners APAC 2020 | IFLR1000 2020 | Asia Law 2020 | Media Law International 2019 | Venture Intelligence |
|---|---|---|---|---|---|
| | Leading Law Firm in Employment and Real Estate | Ranked for M&A and Private Equity | Ranked for Corp and M&A, Dispute Resolution, Labour & Employment, Construction & Real Estate and TMT | Leading Practitioners | Top 15 Legal Advisors Mergers & Acquisitions 2017 |

INTERNET EMAIL CONFIDENTIALITY FOOTER

Attorney - client privileged/confidential information may be contained in this message. If you are not the first addressee indicated in this message (or responsible for delivery of the message to such person), you may not copy or deliver this message to anyone. In such case, you should destroy this message and kindly notify the sender by reply email. Please advise immediately if you or your employer do not consent to internet email for messages of this kind. Opinions, conclusions and other information in this message that do not relate to the official business of our firm shall be understood as neither given nor endorsed by it. Formal legal opinions are issued by the firm duly executed by its partners. Accordingly, this message shall not be considered as a formal legal opinion issued by the firm.

 Please consider the environment before printing this email

**From:** Littman, A. Kristina <AKLittman@willkie.com>
**Sent:** Friday, March 1, 2024 8:46 AM
**To:** 'Akshata Benegal' <akshata.benegal@poovayya.net>
**Cc:** 'Manu Kulkarni' <manu@poovayya.net>; 'Dharmendra Chatur' <dharmendra.chatur@poovayya.net>; 'Smruthi Prahalad' <smruthi.prahalad@poovayya.net>; 'Nirnay Shanbough' <nirnay.shanbough@poovayya.net>; Strickland, Rachel <RStrickland@willkie.com>; Mordkoff, Andrew <amordkoff@willkie.com>
**Subject:** RE: Justin Joseph

Akshata,

Thank you for your email below.  I'm pleased that we can come to agreement on the principal terms.  With respect to the variable compensation that you reference below, I am working with the company to get you an answer. I need you to send me the employment agreement in which the company promises to pay him that amount.

Best,
Kristy

**A. Kristina Littman**
**Willkie Farr & Gallagher LLP**
1875 K Street, N.W. | Washington, DC 20006-1238
Direct: +1 202 303 1209 | Fax: +1 202 303 2000
aklittman@willkie.com | vCard | www.willkie.com bio

6

62    **882**

**From:** Akshata Benegal <akshata.benegal@poovayya.net>
**Sent:** Wednesday, February 28, 2024 10:50 PM
**To:** Littman, A. Kristina <AKLittman@willkie.com>
**Cc:** 'Manu Kulkarni' <manu@poovayya.net>; 'Dharmendra Chatur' <dharmendra.chatur@poovayya.net>; 'Smruthi Prahalad' <smruthi.prahalad@poovayya.net>; 'Nirnay Shanbough' <nirnay.shanbough@poovayya.net>; Strickland, Rachel <RStrickland@willkie.com>; Mordkoff, Andrew <amordkoff@willkie.com>
**Subject:** RE: Justin Joseph

**\*\*\* EXTERNAL EMAIL \*\*\***

Ms. Littman,

Thank you for your email. Our client accepts your client's offer, along with the previously agreed conditions, reiterated below:

    i.    Near Intelligence Inc. and its subsidiaries including NIPL will issue an undertaking, in writing, unconditionally indemnifying our client against any proceedings / actions / claims that may be initiated against our client or involving our client in any way, arising from anything relating to Near Intelligence Inc, NIPL or any other related entities;

    ii.    Near Intelligence Inc. and its subsidiaries including NIPL will, in writing, unconditionally release our client from any and all liabilities in respect of any past, existing or future claims, actions, legal proceedings, etc. vis-a-vis Near Intelligence Inc, NIPL or any other related entities.

    iii.    An official statement from Near Intelligence Inc. and NIPL, to all employees of NIPL and its related entities, clarifying that no allegations have been made against our client, and that the investigation being conducted by you is not against our client.

We will let you draft the agreement with the terms of settlement. We are also instructed that our client is yet to receive the annual variable component of his salary (USD 75,000) for 2023, that was due to be paid at the end of January, 2024. Our client informs us that other employees have already received their variable component. Please look into this and let us have an update.

Warm regards,

Akshata Benegal

| Principal Associate | + 91 9886940570 | akshata.benegal@poovayya.net |



# Poovayya & Co.
ADVOCATES & SOLICITORS

| BANGALORE | NEW DELHI |

The Estate, Level Four
121 Dickenson Road
Bangalore 560 042

T: +91 80 4656 3000
F: +91 80 4656 3088



vaHu

**WINNER**

| INDIA BUSINESS LAW JOURNAL | Chambers and Partners APAC 2020 | IFLR1000 2020 | Asia Law 2020 | Media Law International 2019 | Venture Intelligence |
|---|---|---|---|---|---|
| AWARD-WINNING LAW FIRM 2020 | Leading Law Firm in Employment and Real Estate | Ranked for M&A and Private Equity | Ranked for Corp and M&A, Dispute Resolution, Labour & Employment, Construction & Real Estate and TMT | Leading Practitioners | Top 15 Legal Advisors Mergers & Acquisitions 2017 |

7 

63      **883**

INTERNET EMAIL CONFIDENTIALITY FOOTER

Attorney - client privileged/confidential information may be contained in this message. If you are not the first addressee indicated in this message (or responsible for delivery of the message to such person), you may not copy or deliver this message to anyone. In such case, you should destroy this message and kindly notify the sender by reply email. Please advise immediately if you or your employer do not consent to internet email for messages of this kind. Opinions, conclusions and other information in this message that do not relate to the official business of our firm shall be understood as neither given nor endorsed by it. Formal legal opinions are issued by the firm duly executed by its partners. Accordingly, this message shall not be considered as a formal legal opinion issued by the firm.

*Please consider the environment before printing this email*

**From:** Littman, A. Kristina <AKLittman@willkie.com>
**Sent:** Wednesday, February 28, 2024 3:02 AM
**To:** 'Akshata Benegal' <akshata.benegal@poovayya.net>
**Cc:** 'Manu Kulkarni' <manu@poovayya.net>; 'Dharmendra Chatur' <dharmendra.chatur@poovayya.net>; 'Smruthi Prahalad' <smruthi.prahalad@poovayya.net>; 'Nirnay Shanbough' <nirnay.shanbough@poovayya.net>; Strickland, Rachel <RStrickland@willkie.com>; Mordkoff, Andrew <amordkoff@willkie.com>
**Subject:** RE: Justin Joseph

Akshata,

As you may know, the court approved the sale of the company last week to Blue Torch.  The sale is scheduled to close on Thursday, February 29.

We have spoken with Blue Torch, and they have authorized us to offer Mr. Joseph a monetary settlement of $350,000, along with the previously agreed upon conditions of his cooperation.  Can you please let us know by the end of the day on Wednesday, February 28 (by 10:30am IST on Thursday, February 29) whether Mr. Joseph will accept this offer?  Blue Torch has indicated that this is their final offer and it needs to be accepted by this deadline in advance of the transaction closing.

Best,
Kristy



**A. Kristina Littman**
**Willkie Farr & Gallagher LLP**
1875 K Street, N.W. | Washington, DC 20006-1238
Direct: +1 202 303 1209 | Fax: +1 202 303 2000
aklittman@willkie.com | vCard | www.willkie.com bio

**From:** Akshata Benegal <akshata.benegal@poovayya.net>
**Sent:** Thursday, February 8, 2024 9:54 AM
**To:** Littman, A. Kristina <AKLittman@willkie.com>
**Cc:** 'Manu Kulkarni' <manu@poovayya.net>; 'Dharmendra Chatur' <dharmendra.chatur@poovayya.net>; 'Smruthi Prahalad' <smruthi.prahalad@poovayya.net>; 'Nirnay Shanbough' <nirnay.shanbough@poovayya.net>
**Subject:** RE: Justin Joseph

 ***EXTERNAL EMAIL***

Ms. Littman,

We have discussed with our client and he has indicated that a sum of USD 200,000 is not acceptable to him.

191

**884**

Warm regards,

Akshata Benegal

b4

| Principal Associate | + 91 9886940570 | akshata.benegal@poovayya.net |

---



Poovayya & Co.
ADVOCATES & SOLICITORS

| BANGALORE | NEW DELHI |

The Estate, Level Four
121 Dickenson Road
Bangalore 560 042

T: +91 80 4656 3000
F: +91 80 4656 3088



vaHu

WINNER

---

| INDIA BUSINESS LAW JOURNAL — AWARD WINNING LAW FIRM 2020 | Chambers and Partners APAC 2020 | IFLR1000 2020 | Asia Law 2020 | Media Law International 2019 | Venture Intelligence |
|---|---|---|---|---|---|
| | Leading Law Firm in Employment and Real Estate | Ranked for M&A and Private Equity | Ranked for Corp and M&A, Dispute Resolution, Labour & Employment, Construction & Real Estate and TMT | Leading Practitioners | Top 15 Legal Advisors Mergers & Acquisitions 2017 |

INTERNET EMAIL CONFIDENTIALITY FOOTER

Attorney - client privileged/confidential information may be contained in this message. If you are not the first addressee indicated in this message (or responsible for delivery of the message to such person), you may not copy or deliver this message to anyone. In such case, you should destroy this message and kindly notify the sender by reply email. Please advise immediately if you or your employer do not consent to internet email for messages of this kind. Opinions, conclusions and other information in this message that do not relate to the official business of our firm shall be understood as neither given nor endorsed by it. Formal legal opinions are issued by the firm duly executed by its partners. Accordingly, this message shall not be considered as a formal legal opinion issued by the firm.

 *Please consider the environment before printing this email*

---

**From:** Littman, A. Kristina <AKLittman@willkie.com>
**Sent:** Wednesday, February 7, 2024 5:04 PM
**To:** Akshata Benegal <akshata.benegal@poovayya.net>
**Cc:** Manu Kulkarni <manu@poovayya.net>; Dharmendra Chatur <dharmendra.chatur@poovayya.net>; Smruthi Prahalad <smruthi.prahalad@poovayya.net>; Nirnay Shanbough <nirnay.shanbough@poovayya.net>
**Subject:** RE: Justin Joseph

My client can offer $200,000. That is our firm and final offer. There is no other room in the budget for more than that. Please let us know as soon as possible if Mr. Joseph agrees.

Kristy

On February 7, 2024 at 1:05:26 AM EST, Akshata Benegal <akshata.benegal@poovayya.net> wrote:

**\*\*\*\* EXTERNAL EMAIL \*\*\*\***

Ms. Littman,

Our client's final proposal is USD 350,000 which is the amount suggested by your client earlier.

Warm regards,

192

65

**885**

Akshata Benegal

| Principal Associate | + 91 9886940570 | akshata.benegal@poovayya.net |

 

Poovayya & Co.
ADVOCATES & SOLICITORS

The Estate, Level Four
121 Dickenson Road
Bangalore 560 042

T: +91 80 4656 3000
F: +91 80 4656 3088

| BANGALORE | NEW DELHI |

vaHu

.WINNER



| INDIA BUSINESS LAW JOURNAL 2020 AWARD WINNING LAW FIRM 2020 | Chambers and Partners APAC 2020 | IFLR1000 2020 | Asia Law 2020 | Media Law International 2019 | Venture Intelligence |
|---|---|---|---|---|---|
| | Leading Law Firm in Employment and Real Estate | Ranked for M&A and Private Equity | Ranked for Corp and M&A, Dispute Resolution, Labour & Employment, Construction & Real Estate and TMT | Leading Practitioners | Top 15 Legal Advisors Mergers & Acquisitions 2017 |

INTERNET EMAIL CONFIDENTIALITY FOOTER

Attorney - client privileged/confidential information may be contained in this message. If you are not the first addressee indicated in this message (or responsible for delivery of the message to such person), you may not copy or deliver this message to anyone. In such case, you should destroy this message and kindly notify the sender by reply email. Please advise immediately if you or your employer do not consent to internet email for messages of this kind. Opinions, conclusions and other information in this message that do not relate to the official business of our firm shall be understood as neither given nor endorsed by it. Formal legal opinions are issued by the firm duly executed by its partners. Accordingly, this message shall not be considered as a formal legal opinion issued by the firm.

 *Please consider the environment before printing this email*

**A. Kristina Littman**
**Willkie Farr & Gallagher LLP**
1875 K Street, N.W. | Washington, DC 20006-1238
Direct: +1 202 303 1209 | Fax: +1 202 303 2000
aklittman@willkie.com | vCard | www.willkie.com bio

**From:** Littman, A. Kristina <AKLittman@willkie.com>
**Sent:** Wednesday, February 7, 2024 10:19 AM
**To:** Akshata Benegal <akshata.benegal@poovayya.net>
**Cc:** Manu Kulkarni <manu@poovayya.net>; Dharmendra Chatur <dharmendra.chatur@poovayya.net>; Smruthi Prahalad <smruthi.prahalad@poovayya.net>; Nirnay Shanbough <nirnay.shanbough@poovayya.net>
**Subject:** RE: Justin Joseph

What is the minimum amount would your client accept?

Kristy

—

On February 6, 2024 at 11:41:13 PM EST, Akshata Benegal <akshata.benegal@poovayya.net> wrote:

**\*\*EXTERNAL EMAIL\*\*\***

Ms. Littman,



10

**886**

We have discussed your proposal with our client. The settlement amount proposed by your client is not acceptable to our client as the amount offered is much lower than the amount proposed by your client earlier.

As your client is aware, our client has been in dedicated service and employment with the Near Group for over fourteen years and is responsible for setting up the offices in India for Near Intelligence Private Limited ("NIPL"). To be paid such a minuscule amount at this stage in his career, especially since it will be difficult for him to find employment elsewhere at this point, is not feasible for our client.

Further, as your client is aware, there are no allegations or any findings of any illegal conduct or activity by our client. We are instructed that NIPL is only a cost and support centre to the Near group of companies, and does not engage in any sort of business that could facilitate any of the illegalities alleged by your client against certain other employees of the Near Group. It is, therefore, unfair for such aspersions to be made against our client.

We, therefore, request your client to consider the aforesaid circumstances and settle on a monetary amount that is fair and respectful.

Our client has also informed us that he is also entitled to his annual variable component for FY 2023, which was due to be paid with his salary for January, 2024. However, he has not received this amount as yet.

Warm regards,

Akshata Benegal

| Principal Associate | + 91 9886940570 | akshata.benegal@poovayya.net |

The Estate, Level Four
121 Dickenson Road
Bangalore 560 042

T: +91 80 4656 3000
F: +91 80 4656 3088

| BANGALORE | NEW DELHI |

| | Chambers and Partners APAC 2020 | IFLR1000 2020 | Asia Law 2020 | Media Law International 2019 | Venture Intelligence |
|---|---|---|---|---|---|
| | Leading Law Firm in Employment and Real Estate | Ranked for M&A and Private Equity | Ranked for Corp and M&A, Dispute Resolution, Labour & Employment, Construction & Real Estate and TMT | Leading Practitioners | Top 15 Legal Advisors Mergers & Acquisitions 2017 |

INTERNET EMAIL CONFIDENTIALITY FOOTER

Attorney - client privileged/confidential information may be contained in this message. If you are not the first addressee indicated in this message (or responsible for delivery of the message to such person), you may not copy or deliver this message to anyone. In such case, you should destroy this message and kindly notify the sender by reply email. Please advise immediately if you or your employer do not consent to internet email for messages of this kind. Opinions, conclusions and other information in this message that do not relate to the official business of our firm shall be understood as neither given nor endorsed by it. Formal legal opinions are issued by the firm duly executed by its partners. Accordingly, this message shall not be considered as a formal legal opinion issued by the firm.

*Please consider the environment before printing this email*

**A. Kristina Littman**
**Willkie Farr & Gallagher LLP**
1875 K Street, N.W. | Washington, DC 20006-1238

67                                                      **887**

Direct: +1 202 303 1209 | Fax: +1 202 303 2000
aklittman@willkie.com | vCard | www.willkie.com bio

**From:** Akshata Benegal <akshata.benegal@poovayya.net>
**Sent:** Friday, February 2, 2024 4:58 PM
**To:** 'Littman, A. Kristina' <AKLittman@willkie.com>
**Cc:** 'Manu Kulkarni' <manu@poovayya.net>; 'Dharmendra Chatur'
<dharmendra.chatur@poovayya.net>; 'Smruthi Prahalad' <smruthi.prahalad@poovayya.net>; 'Nirnay
Shanbough' <nirnay.shanbough@poovayya.net>
**Subject:** RE: Justin Joseph

Ms. Littman,

We have taken Near's offer to our client and he is considering the same. We will come back to you on this
next week.

Warm regards,

Akshata Benegal

| Principal Associate | + 91 9886940570 | akshata.benegal@poovayya.net |

| | The Estate, Level Four<br>121 Dickenson Road<br>Bangalore 560 042 |
|---|---|
| \| BANGALORE \| NEW DELHI \| | T: +91 80 4656 3000<br>F: +91 80 4656 3088 |

| Chambers and<br>Partners APAC<br>2020 | IFLR1000<br>2020 | Asia Law<br>2020 | Media Law<br>International<br>2019 | Venture<br>Intelligence |
|---|---|---|---|---|
| Leading Law Firm in<br>Employment and Real<br>Estate | Ranked for M&A<br>and Private Equity | Ranked for Corp and M&A, Dispute<br>Resolution, Labour & Employment,<br>Construction & Real Estate and TMT | Leading Practitioners | Top 15 Legal<br>Advisors Mergers &<br>Acquisitions 2017 |

INTERNET EMAIL CONFIDENTIALITY FOOTER

Attorney - client privileged/confidential information may be contained in this message. If you are not the first addressee
indicated in this message (or responsible for delivery of the message to such person), you may not copy or deliver this
message to anyone. In such case, you should destroy this message and kindly notify the sender by reply email. Please advise
immediately if you or your employer do not consent to internet email for messages of this kind. Opinions, conclusions and
other information in this message that do not relate to the official business of our firm shall be understood as neither given
nor endorsed by it. Formal legal opinions are issued by the firm duly executed by its partners. Accordingly, this message shall
not be considered as a formal legal opinion issued by the firm.

 *Please consider the environment before printing this email*

**From:** Littman, A. Kristina <AKLittman@willkie.com>
**Sent:** Friday, February 2, 2024 8:10 AM
**To:** Dharmendra Chatur <dharmendra.chatur@poovayya.net>; Akshata Benegal
<akshata.benegal@poovayya.net>
**Subject:** Justin Joseph

Mr. Chatur and Ms. Benegal,

Have you had an opportunity to speak with your client about Near's offer?

Best,
Kristy Littman

**A. Kristina Littman**
**Willkie Farr & Gallagher LLP**
1875 K Street, N.W. | Washington, DC 20006-1238
Direct: +1 202 303 1209 | Fax: +1 202 303 2000
aklittman@willkie.com | vCard | www.willkie.com bio

**Important Notice:** This email message is intended to be received only by persons entitled to receive the confidential information it may contain. Email messages to clients of Willkie Farr & Gallagher LLP presumptively contain information that is confidential and legally privileged; email messages to non-clients are normally confidential and may also be legally privileged. Please do not read, copy, forward or store this message unless you are an intended recipient of it. If you have received this message in error, please forward it back. Willkie Farr & Gallagher LLP is a limited liability partnership organized in the United States under the laws of the State of Delaware, which laws limit the personal liability of partners.

**Important Notice:** This email message is intended to be received only by persons entitled to receive the confidential information it may contain. Email messages to clients of Willkie Farr & Gallagher LLP presumptively contain information that is confidential and legally privileged; email messages to non-clients are normally confidential and may also be legally privileged. Please do not read, copy, forward or store this message unless you are an intended recipient of it. If you have received this message in error, please forward it back. Willkie Farr & Gallagher LLP is a limited liability partnership organized in the United States under the laws of the State of Delaware, which laws limit the personal liability of partners.

**Important Notice:** This email message is intended to be received only by persons entitled to receive the confidential information it may contain. Email messages to clients of Willkie Farr & Gallagher LLP presumptively contain information that is confidential and legally privileged; email messages to non-clients are normally confidential and may also be legally privileged. Please do not read, copy, forward or store this message unless you are an intended recipient of it. If you have received this message in error, please forward it back. Willkie Farr & Gallagher LLP is a limited liability partnership organized in the United States under the laws of the State of Delaware, which laws limit the personal liability of partners.

**Important Notice:** This email message is intended to be received only by persons entitled to receive the confidential information it may contain. Email messages to clients of Willkie Farr & Gallagher LLP presumptively contain information that is confidential and legally privileged; email messages to non-clients are normally confidential and may also be legally privileged. Please do not read, copy, forward or store this message unless you are an intended recipient of it. If you have received this message in error, please forward it back. Willkie Farr & Gallagher LLP is a limited liability partnership organized in the United States under the laws of the State of Delaware, which laws limit the personal liability of partners.

**Important Notice:** This email message is intended to be received only by persons entitled to receive the confidential information it may contain. Email messages to clients of Willkie Farr & Gallagher LLP presumptively contain information that is confidential and legally privileged; email messages to non-clients are normally confidential and may also be legally privileged. Please do not read, copy, forward or store this message unless you are an intended recipient of it. If you have received this message in error, please forward it back. Willkie Farr & Gallagher LLP is a limited liability partnership organized in the United States under the laws of the State of Delaware, which laws limit the personal liability of partners.

**Important Notice:** This email message is intended to be received only by persons entitled to receive the confidential information it may contain. Email messages to clients of Willkie Farr & Gallagher LLP presumptively contain information that is confidential and legally privileged; email messages to non-clients are normally confidential and may also be legally privileged. Please do not read, copy, forward or store this message unless you are an intended recipient of it. If you have received this message in error, please forward it back. Willkie Farr & Gallagher LLP is a limited liability partnership organized in the United States under the laws of the State of Delaware, which laws limit the personal liability of partners.

**Important Notice:** This email message is intended to be received only by persons entitled to receive the confidential information it may contain. Email messages to clients of Willkie Farr & Gallagher LLP presumptively contain information that is confidential and legally privileged; email messages to non-clients are normally confidential and may also be legally



196

69        **889**

privileged. Please do not read, copy, forward or store this message unless you are an intended recipient of it. If you have received this message in error, please forward it back. Willkie Farr & Gallagher LLP is a limited liability partnership organized in the United States under the laws of the State of Delaware, which laws limit the personal liability of partners.

---

**Important Notice:** This email message is intended to be received only by persons entitled to receive the confidential information it may contain. Email messages to clients of Willkie Farr & Gallagher LLP presumptively contain information that is confidential and legally privileged; email messages to non-clients are normally confidential and may also be legally privileged. Please do not read, copy, forward or store this message unless you are an intended recipient of it. If you have received this message in error, please forward it back. Willkie Farr & Gallagher LLP is a limited liability partnership organized in the United States under the laws of the State of Delaware, which laws limit the personal liability of partners.

Sathyasagar Mithra

| | |
|---|---|
| **From:** | Akshata Benegal <akshata.benegal@poovayya.net> |
| **Sent:** | Friday, June 7, 2024 2:20 PM |
| **To:** | 'Littman, A. Kristina' |
| **Cc:** | 'Justin Joseph'; 'Manu Kulkarni'; 'Dharmendra Chatur'; 'Mordkoff, Andrew'; 'Nirnay Shanbough'; 'Siddhartha George'; 'Smruthi Prahalad'; 'Strickland, Rachel'; 'Varnika Sharma' |
| **Subject:** | RE: Justin Joseph |

Hi Kristina,

Please let us have an update. Thanks.

Warm regards,

Akshata Benegal

| Principal Associate | + 91 9886940570 | <u>akshata.benegal@poovayya.net</u> |

 

# Poovayya & Co.
ADVOCATES & SOLICITORS

The Estate, Level Four
121 Dickenson Road
Bangalore 560 042

T: +91 80 4656 3000
F: +91 80 4656 3088


vaHU
WINNER

| BANGALORE | NEW DELHI |

| INDIA BUSINESS LAW JOURNAL AWARD WINNING LAW FIRM 2020 | Chambers and Partners APAC 2020 | IFLR1000 2020 | Asia Law 2020 | Media Law International 2019 | Venture Intelligence |
|---|---|---|---|---|---|
| | Leading Law Firm in Employment and Real Estate | Ranked for M&A and Private Equity | Ranked for Corp and M&A, Dispute Resolution, Labour & Employment, Construction & Real Estate and TMT | Leading Practitioners | Top 15 Legal Advisors Mergers & Acquisitions 2017 |

INTERNET EMAIL CONFIDENTIALITY FOOTER

Attorney - client privileged/confidential information may be contained in this message. If you are not the first addressee indicated in this message (or responsible for delivery of the message to such person), you may not copy or deliver this message to anyone. In such case, you should destroy this message and kindly notify the sender by reply email. Please advise immediately if you or your employer do not consent to internet email for messages of this kind. Opinions, conclusions and other information in this message that do not relate to the official business of our firm shall be understood as neither given nor endorsed by it. Formal legal opinions are issued by the firm duly executed by its partners. Accordingly, this message shall not be considered as a formal legal opinion issued by the firm.

 *Please consider the environment before printing this email*



**From:** Akshata Benegal <akshata.benegal@poovayya.net>
**Sent:** Wednesday, May 8, 2024 9:12 PM
**To:** 'Littman, A. Kristina' <AKLittman@willkie.com>
**Cc:** 'Justin Joseph' <justinpj2000@yahoo.com>; 'Manu Kulkarni' <manu@poovayya.net>; 'Dharmendra Chatur' <dharmendra.chatur@poovayya.net>; 'Mordkoff, Andrew' <amordkoff@willkie.com>; 'Nirnay Shanbough' <nirnay.shanbough@poovayya.net>; 'Siddhartha George' <siddhartha@poovayya.net>; 'Smruthi Prahalad'

<smruthi.prahalad@poovayya.net>; 'Strickland, Rachel' <RStrickland@willkie.com>; 'Varnika Sharma'
<varnika.sharma@poovayya.net>
**Subject:** RE: Justin Joseph

Kristina,

Our client will not perform any of the actions identified in the schedule to the Settlement Agreement without payment of the compensation amount first.

Please bear in mind that the settlement amount is not meant to be a payment for the action items sought by your client but is a compensation to our client for his future (as your client insists that our client resign from employment) and damage to his reputation (being unfairly put on administrative leave and being treated as if he is guilty of misconduct despite there being no allegations made against our client as confirmed by you). Your client's demands for instalment wise payment and performance of action items prior to payment of the settlement amount are contrary to the terms confirmed by our client. You cannot change the terms of settlement in this manner after the several rounds of negotiations we have already gone through over weeks. As I have mentioned in my earlier emails, while our client has been flexible about his variable bonus amount, any change in the terms of settlement is non-negotiable.

Further, as requested earlier, please adopt a conciliatory tone in your emails, especially when addressing our client. It is absolutely unfair to say that our client has been receiving a salary for doing nothing, when you are aware that the only reason our client is in such a situation is because your client put him on administrative leave, without following proper procedure or notifying our client of the same. It was only after our client issued a legal notice to your client that your client offered an explanation for this to our client. I, therefore, request you once again to refrain from making unnecessary comments, which are counterproductive to achieving a final closure of this dispute. We are hopeful to close this settlement ASAP, so that all parties can move on.

We will wait for your response. As mentioned in my earlier emails, our client is travelling and will return to India after 17th May 2024.

Warm regards,

Akshata Benegal

 | Principal Associate | + 91 9886940570 | akshata.benegal@poovayya.net |

# Poovayya & Co.
ADVOCATES    SOLICITORS

| BANGALORE | NEW DELHI |

The Estate, Level Four
121 Dickenson Road
Bangalore 560 042

T: +91 80 4656 3000
F: +91 80 4656 3088


vahu
WINNER

| INDIA BUSINESS LAW JOURNAL AWARD WINNING LAW FIRM 2020 | Chambers and Partners APAC 2020 | IFLR1000 2020 | Asia Law 2020 | Media Law International 2019 | Venture Intelligence |
|---|---|---|---|---|---|
| | Leading Law Firm in Employment and Real Estate | Ranked for M&A and Private Equity | Ranked for Corp and M&A, Dispute Resolution, Labour & Employment, Construction & Real Estate and TMT | Leading Practitioners | Top 15 Legal Advisors Mergers & Acquisitions 2017 |

INTERNET EMAIL CONFIDENTIALITY FOOTER

Attorney - client privileged/confidential information may be contained in this message. If you are not the first addressee indicated in this message (or responsible for delivery of the message to such person), you may not copy or deliver this message to anyone. In such case, you should destroy this message and kindly notify the sender by reply email. Please advise immediately if you or your employer do not consent to internet email for messages of this kind. Opinions, conclusions and other information in this message that do not relate to the official business of our firm shall be understood as neither given nor endorsed by it. Formal legal opinions are issued by the firm duly executed by its partners. Accordingly, this message shall not be considered as a formal legal opinion issued by the firm.

 *Please consider the environment before printing this email*



199  72

**892**

**From:** Littman, A. Kristina <AKLittman@willkie.com>
**Sent:** Saturday, May 4, 2024 9:44 PM
**To:** Akshata Benegal <akshata.benegal@poovayya.net>
**Cc:** 'Justin Joseph' <justinpj2000@yahoo.com>; 'Manu Kulkarni' <manu@poovayya.net>; 'Dharmendra Chatur' <dharmendra.chatur@poovayya.net>; Mordkoff, Andrew <amordkoff@willkie.com>; 'Nirnay Shanbough' <nirnay.shanbough@poovayya.net>; 'Siddhartha George' <siddhartha@poovayya.net>; 'Smruthi Prahalad' <smruthi.prahalad@poovayya.net>; Strickland, Rachel <RStrickland@willkie.com>; 'Varnika Sharma' <varnika.sharma@poovayya.net>
**Subject:** RE: Justin Joseph

Akshata,

The company will agree to pay Justin the full $350,000 once Anil Mathews has been removed as a director of the India subsidiary, the company's nominees have been properly appointed, and Justin resigns his directorship. These are items xii. through xv. on the Schedule I of the attached proposed settlement agreement. He also needs to assist with the GST filing today. This is the company's final offer and it is more than reasonable.

The remainder of the tasks will remain on the schedule and he is obligated to fulfill those, but his payment will be made at the time of completion of items xii. through xv. of Schedule I.

Your client has no basis to distrust the company. They company has negotiated in good faith and compromised on several key terms of the proposed agreement. Moreover, the company has been paying his salary for months, while he does nothing.

To fulfill his assistance with the GST filing today, Justin can coordinate with Nitin Agarwal. Please respond as promptly as possible given the need to get the GST filing completed.

Kristy

**A. Kristina Littman**
**Willkie Farr & Gallagher LLP**
1875 K Street, N.W. | Washington, DC 20006-1238
Direct: +1 202 303 1209 | Fax: +1 202 303 2000
aklittman@willkie.com | vCard | www.willkie.com bio

**From:** Akshata Benegal <akshata.benegal@poovayya.net>
**Sent:** Saturday, May 4, 2024 7:34 AM
**To:** Littman, A. Kristina <AKLittman@willkie.com>
**Cc:** 'Justin Joseph' <justinpj2000@yahoo.com>; 'Manu Kulkarni' <manu@poovayya.net>; 'Dharmendra Chatur' <dharmendra.chatur@poovayya.net>; Mordkoff, Andrew <amordkoff@willkie.com>; 'Nirnay Shanbough' <nirnay.shanbough@poovayya.net>; 'Siddhartha George' <siddhartha@poovayya.net>; 'Smruthi Prahalad' <smruthi.prahalad@poovayya.net>; Strickland, Rachel <RStrickland@willkie.com>; 'Varnika Sharma' <varnika.sharma@poovayya.net>
**Subject:** RE: Justin Joseph

*** EXTERNAL EMAIL ***

Kristina,

3

200

93

**893**

Our client is willing to assist with the GST filing subject to a written confirmation from your client, as a show of good faith, that the sum of $350,000 will be paid upfront at the time of execution of the Separation Agreement.

Warm regards,

Akshata Benegal

| Principal Associate | + 91 9886940570 | akshata.benegal@poovayya.net |

 **Poovayya & Co.**
A D V O C A T E S & S O L I C I T O R S

| BANGALORE | NEW DELHI |

The Estate, Level Four
121 Dickenson Road
Bangalore 560 042

T: +91 80 4656 3000
F: +91 80 4656 3088

 **vaHu**
**WINNER**

| | | | | |
|---|---|---|---|---|
| **INDIA BUSINESS LAW JOURNAL** AWARD WINNING LAW FIRM 2020 | **Chambers and Partners APAC 2020** | **IFLR1000 2020** | **Asia Law 2020** | **Media Law International 2019** | **Venture Intelligence** |
| | Leading Law Firm in Employment and Real Estate | Ranked for M&A and Private Equity | Ranked for Corp and M&A, Dispute Resolution, Labour & Employment, Construction & Real Estate and TMT | Leading Practitioners | Top 15 Legal Advisors Mergers & Acquisitions 2017 |

INTERNET EMAIL CONFIDENTIALITY FOOTER

Attorney - client privileged/confidential information may be contained in this message. If you are not the first addressee indicated in this message (or responsible for delivery of the message to such person), you may not copy or deliver this message to anyone. In such case, you should destroy this message and kindly notify the sender by reply email. Please advise immediately if you or your employer do not consent to internet email for messages of this kind. Opinions, conclusions and other information in this message that do not relate to the official business of our firm shall be understood as neither given nor endorsed by it. Formal legal opinions are issued by the firm duly executed by its partners. Accordingly, this message shall not be considered as a formal legal opinion issued by the firm.

 *Please consider the environment before printing this email*

---

**From:** Littman, A. Kristina <AKLittman@willkie.com>
**Sent:** Saturday, May 4, 2024 8:31 AM
**To:** Akshata Benegal <akshata.benegal@poovayya.net>
**Cc:** Justin Joseph <justinpj2000@yahoo.com>; Manu Kulkarni <manu@poovayya.net>; Dharmendra Chatur <dharmendra.chatur@poovayya.net>; Mordkoff, Andrew <amordkoff@willkie.com>; Nirnay Shanbough <nirnay.shanbough@poovayya.net>; Siddhartha George <siddhartha@poovayya.net>; Smruthi Prahalad <smruthi.prahalad@poovayya.net>; Strickland, Rachel <RStrickland@willkie.com>; Varnika Sharma <varnika.sharma@poovayya.net>
**Subject:** RE: Justin Joseph

Does Mr. Joseph plan to assist with the GST filing today as a show of good faith?

---

On May 3, 2024 at 10:52:58 PM EDT, Akshata Benegal <akshata.benegal@poovayya.net> wrote:

*** EXTERNAL EMAIL ***

Kristina,

Our client is not comfortable with the payment by instalment proposed by your client. The events that have transpired over the last 6 months have resulted in a complete breakdown of our client's trust in your client,

4



201    74    **894**

particularly with respect to payment of dues. The settlement amount of $350,000 must be paid upfront, on date of execution of the Separation Agreement. Our client is agreeable to have the gratuity and other statutory dues payable to him on his last employment date, which will be after he has completed his obligations as per the Separation Agreement, for which your client seeks our client's cooperation.

Warm regards,

Akshata Benegal

| Principal Associate | + 91 9886940570 | akshata.benegal@poovayya.net |

 

**Poovayya & Co.**
ADVOCATES & SOLICITORS

| BANGALORE | NEW DELHI |

The Estate, Level Four
121 Dickenson Road
Bangalore 560 042

T: +91 80 4656 3000
F: +91 80 4656 3088

**vaHu**
**WINNER**



| INDIA BUSINESS LAW JOURNAL AWARD WINNING LAW FIRM 2020 | Chambers and Partners APAC 2020 | IFLR1000 2020 | Asia Law 2020 | Media Law International 2019 | Venture Intelligence |
|---|---|---|---|---|---|
| | Leading Law Firm in Employment and Real Estate | Ranked for M&A and Private Equity | Ranked for Corp and M&A, Dispute Resolution, Labour & Employment, Construction & Real Estate and TMT | Leading Practitioners | Top 15 Legal Advisors Mergers & Acquisitions 2017 |

INTERNET EMAIL CONFIDENTIALITY FOOTER

Attorney - client privileged/confidential information may be contained in this message. If you are not the first addressee indicated in this message (or responsible for delivery of the message to such person), you may not copy or deliver this message to anyone. In such case, you should destroy this message and kindly notify the sender by reply email. Please advise immediately if you or your employer do not consent to internet email for messages of this kind. Opinions, conclusions and other information in this message that do not relate to the official business of our firm shall be understood as neither given nor endorsed by it. Formal legal opinions are issued by the firm duly executed by its partners. Accordingly, this message shall not be considered as a formal legal opinion issued by the firm.

 *Please consider the environment before printing this email*

**A. Kristina Littman**
**Willkie Farr & Gallagher LLP**
1875 K Street, N.W. | Washington, DC 20006-1238
Direct: +1 202 303 1209 | Fax: +1 202 303 2000
aklittman@willkie.com | vCard | www.willkie.com bio

**From:** Littman, A. Kristina <AKLittman@willkie.com>
**Sent:** Friday, May 3, 2024 7:42 AM
**To:** Akshata Benegal <akshata.benegal@poovayya.net>
**Cc:** 'Justin Joseph' <justinpj2000@yahoo.com>; 'Manu Kulkarni' <manu@poovayya.net>; 'Dharmendra Chatur' <dharmendra.chatur@poovayya.net>; Mordkoff, Andrew <amordkoff@willkie.com>; 'Nirnay Shanbough' <nirnay.shanbough@poovayya.net>; 'Siddhartha George' <siddhartha@poovayya.net>; 'Smruthi Prahalad' <smruthi.prahalad@poovayya.net>; Strickland, Rachel <RStrickland@willkie.com>; 'Varnika Sharma' <varnika.sharma@poovayya.net>
**Subject:** RE: Justin Joseph

Akshata,

5

My client has considered your request. They will agree to pay Mr. Joseph the gratuity payment in addition to the agreed upon $350,000. With respect to the $350,000, we propose breaking it into 4 payments and paying each installment once certain aspects of his cooperation are complete. This allows him to start receiving payments before the completion of all of the steps, but also provides the company with assurances that he will fulfill his obligations. His fulfillment of these obligations is very important to the company and especially to his fellow employees in India, who stand to suffer the most harm if he won't cooperate.

To that end, the company needs him to logon and facilitate the filing on the GST license this week. This is not a difficult task and is essential in showing that he intends to cooperate in good faith.

If he wants one of his payments to be made up front, it will need to be his gratuity payment. That will also mean that his employment and salary will end at that time. If he prefers to remain on salary, then he will receive his first payment of $87,500 (one quarter of the agreed upon $350,000) once certain tasks are complete.

If this concept is agreeable, please let me know and I will propose four groups of tasks to correspond to each payment of $87,500. Please also let me know if he prefers to end his employment and receive his gratuity payment up front or if he prefers to continue his employment and receive it upon termination.

The company's position on variable compensation is unchanged and Mr. Joseph will not receive a bonus.

Best,
Kristy


**A. Kristina Littman**
**Willkie Farr & Gallagher LLP**
1875 K Street, N.W. | Washington, DC 20006-1238
Direct: +1 202 303 1209 | Fax: +1 202 303 2000
aklittman@willkie.com | vCard | www.willkie.com bio

**From:** Akshata Benegal <akshata.benegal@poovayya.net>
**Sent:** Tuesday, April 30, 2024 10:38 AM
**To:** Littman, A. Kristina <AKLittman@willkie.com>
**Cc:** 'Justin Joseph' <justinpj2000@yahoo.com>; 'Manu Kulkarni' <manu@poovayya.net>; 'Dharmendra Chatur' <dharmendra.chatur@poovayya.net>; Mordkoff, Andrew <amordkoff@willkie.com>; 'Nirnay Shanbough' <nirnay.shanbough@poovayya.net>; 'Siddhartha George' <siddhartha@poovayya.net>; 'Smruthi Prahalad' <smruthi.prahalad@poovayya.net>; Strickland, Rachel <RStrickland@willkie.com>; 'Varnika Sharma' <varnika.sharma@poovayya.net>
**Subject:** RE: Justin Joseph

*** EXTERNAL EMAIL ***

Kristina,

We hope that you and your client will continue to adopt a conciliatory tone in your communications with us – unfortunately, our client and we believe that your last email departs from such a conciliatory tone. Nevertheless, we are now compelled to respond as below.

We will not be able to work under the unreasonable timelines that you mention in your email. Your client has taken almost two months to come back to us with the draft settlement agreement after terms were confirmed by our client. We have waited patiently and despite repeated follow-ups with you, the draft was received only last week. Our client cannot be expected to give inputs and finalise the draft settlement agreement in five days, especially since the draft significantly departs from what you had agreed.



203

**896**

Our client has been an executive with Near since 2016. We understand that it was the current executive (not our client) who had negotiated and received a hefty Variable Bonus for the year 2022 even though they were not entitled to the same. Our client is entitled to his Variable Bonus for the year 2023. However, he is willing to consider forgoing 25% of the Variable Bonus and accept a reduced sum of 75% of the Variable Bonus, in the interest of closing the settlement.

The other two concerns raised, i.e., (i) entire sum of $350,000 (the "**Settlement Amount**") to be paid on Effective date, and (ii) statutory and contractual entitlements like gratuity, etc. to be paid in addition to the Settlement Amount, are **non-negotiable**. Please let us know if your client is agreeable to the same. Just as we do not intend to provide piecemeal comments, we expect your client not to expect piecemeal co-operation. Since the broad terms of settlement have been departed from, we will cease reviewing the Settlement Agreement until your client confirms whether it intends to honour its word or whether it is going to continue to play hard ball. We are not interested in engaging in this any further if your client is unwilling to be fair and reasonable.

Our client is willing to cooperate on the GST filings only if the aforesaid two non-negotiable concerns are agreed to by your client.

Also please note that our client will be traveling over this weekend and thereafter will be going abroad for a planned family vacation from May 7 to May 17, 2024, and will not be available during that time. We will appreciate your response in 24 hours.

Warm regards,

Akshata Benegal

| Principal Associate | + 91 9886940570 | akshata.benegal@poovayya.net |

The Estate, Level Four
121 Dickenson Road
Bangalore 560 042

T: +91 80 4656 3000
F: +91 80 4656 3088

[ BANGALORE | NEW DELHI ]

| Chambers and Partners APAC 2020 | IFLR1000 2020 | Asia Law 2020 | Media Law International 2019 | Venture Intelligence |
|---|---|---|---|---|
| Leading Law Firm in Employment and Real Estate | Ranked for M&A and Private Equity | Ranked for Corp and M&A, Dispute Resolution, Labour & Employment, Construction & Real Estate and TMT | Leading Practitioners | Top 15 Legal Advisors Mergers & Acquisitions 2017 |

INTERNET EMAIL CONFIDENTIALITY FOOTER

Attorney - client privileged/confidential information may be contained in this message. If you are not the first addressee indicated in this message (or responsible for delivery of the message to such person), you may not copy or deliver this message to anyone. In such case, you should destroy this message and kindly notify the sender by reply email. Please advise immediately if you or your employer do not consent to internet email for messages of this kind. Opinions, conclusions and other information in this message that do not relate to the official business of our firm shall be understood as neither given nor endorsed by it. Formal legal opinions are issued by the firm duly executed by its partners. Accordingly, this message shall not be considered as a formal legal opinion issued by the firm.

*Please consider the environment before printing this email*

**From:** Littman, A. Kristina <AKLittman@willkie.com>
**Sent:** Monday, April 29, 2024 11:43 PM
**To:** Akshata Benegal <akshata.benegal@poovayya.net>
**Cc:** 'Justin Joseph' <justinpj2000@yahoo.com>; 'Manu Kulkarni' <manu@poovayya.net>; 'Dharmendra Chatur'

7

<<dharmendra.chatur@poovayya.net>>; Mordkoff, Andrew <<amordkoff@willkie.com>>; 'Nirnay Shanbough' <<nirnay.shanbough@poovayya.net>>; 'Siddhartha George' <<siddhartha@poovayya.net>>; 'Smruthi Prahalad' <<smruthi.prahalad@poovayya.net>>; Strickland, Rachel <<RStrickland@willkie.com>>; 'Varnika Sharma' <<varnika.sharma@poovayya.net>>
**Subject:** RE: Justin Joseph

Akshata,
There will be no variable compensation for Justin. He negotiated with Anil and Rahul to be treated as an executive, not as a NIPL employee. So, NIPL bonuses are irrelevant.
As for your other comments to the agreement, please send us all of your comments and requests to the draft agreement that I sent you. We will not negotiate each term piecemeal. Instead, we will evaluate and respond when we see all of your proposed revisions.
In the meantime, the company needs Justin's cooperation with responding to the GST department's suspension of the company's license. The company needs to respond this week through the GST portal, which is digital and requires Justin's assistance in logging in and filing the necessary documentation. Specifically, we need Justin to perform the three steps below this week. If he is unable or unwilling to assist with this task, there is diminishing practical value to the company paying out such a significant amount of money.

- Justin must update the login details of the GST portal as the password has expired. He will receive the OTP when the change is triggered.
- Justin must sign the reply to the authorities by use of his DSC.
- Justin must sign the pending GSTR returns.

Please let me know in the next 48 hours whether Justin will perform these administrative tasks.
Best,
Kristy

**A. Kristina Littman**
**Willkie Farr & Gallagher LLP**
1875 K Street, N.W. | Washington, DC 20006-1238
Direct: +1 202 303 1209 | Fax: +1 202 303 2000
aklittman@willkie.com | vCard | www.willkie.com bio
**From:** Akshata Benegal <<akshata.benegal@poovayya.net>>
**Sent:** Saturday, April 27, 2024 1:11 AM
**To:** Littman, A. Kristina <<AKLittman@willkie.com>>
**Cc:** 'Justin Joseph' <<justinpj2000@yahoo.com>>; 'Manu Kulkarni' <<manu@poovayya.net>>; 'Dharmendra Chatur' <<dharmendra.chatur@poovayya.net>>; Mordkoff, Andrew <<amordkoff@willkie.com>>; 'Nirnay Shanbough' <<nirnay.shanbough@poovayya.net>>; 'Siddhartha George' <<siddhartha@poovayya.net>>; 'Smruthi Prahalad' <<smruthi.prahalad@poovayya.net>>; Strickland, Rachel <<RStrickland@willkie.com>>; 'Varnika Sharma' <<varnika.sharma@poovayya.net>>
**Subject:** RE: Justin Joseph


*** EXTERNAL EMAIL ***

Hi Kristina,

We understand that every employee of NIPL has received their variable component for FY 2023. Please do let us know who amongst the employees of NIPL have not received their variable component. We are also informed that most employees of NIPL have also received salary increments in 2024.

205

*78*   **898**

Warm regards,

Akshata Benegal

| Principal Associate | + 91 9886940570 | akshata.benegal@poovayya.net |

The Estate, Level Four
121 Dickenson Road
Bangalore 560 042

T: +91 80 4656 3000
F: +91 80 4656 3088

| BANGALORE | NEW DELHI |

| Chambers and Partners APAC 2020 | IFLR1000 2020 | Asia Law 2020 | Media Law International 2019 | Venture Intelligence |
|---|---|---|---|---|
| Leading Law Firm in Employment and Real Estate | Ranked for M&A and Private Equity | Ranked for Corp and M&A, Dispute Resolution, Labour & Employment, Construction & Real Estate and TMT | Leading Practitioners | Top 15 Legal Advisors Mergers & Acquisitions 2017 |

INTERNET EMAIL CONFIDENTIALITY FOOTER

Attorney - client privileged/confidential information may be contained in this message. If you are not the first addressee indicated in this message (or responsible for delivery of the message to such person), you may not copy or deliver this message to anyone. In such case, you should destroy this message and kindly notify the sender by reply email. Please advise immediately if you or your employer do not consent to internet email for messages of this kind. Opinions, conclusions and other information in this message that do not relate to the official business of our firm shall be understood as neither given nor endorsed by it. Formal legal opinions are issued by the firm duly executed by its partners. Accordingly, this message shall not be considered as a formal legal opinion issued by the firm.

 *Please consider the environment before printing this email*

**From:** Littman, A. Kristina <AKLittman@willkie.com>
**Sent:** Thursday, April 25, 2024 10:21 PM
**To:** Akshata Benegal <akshata.benegal@poovayya.net>
**Cc:** 'Justin Joseph' <justinpj2000@yahoo.com>; 'Manu Kulkarni' <manu@poovayya.net>; 'Dharmendra Chatur' <dharmendra.chatur@poovayya.net>; Mordkoff, Andrew <amordkoff@willkie.com>; 'Nirnay Shanbough' <nirnay.shanbough@poovayya.net>; 'Siddhartha George' <siddhartha@poovayya.net>; 'Smruthi Prahalad' <smruthi.prahalad@poovayya.net>; Strickland, Rachel <RStrickland@willkie.com>; 'Varnika Sharma' <varnika.sharma@poovayya.net>
**Subject:** RE: Justin Joseph

Akshata –

In order to respond to your remark below indicating that executives in India have received variable compensation, please identify the executives you are referring to. I understand that executive bonuses were not paid, so I cannot address this claim without you identifying the individuals.

Kristy

**A. Kristina Littman**
**Willkie Farr & Gallagher LLP**
1875 K Street, N.W. | Washington, DC 20006-1238

79

**899**

Direct: +1 202 303 1209 | Fax: +1 202 303 2000
aklittman@willkie.com | vCard | www.willkie.com bio

**From:** Littman, A. Kristina
**Sent:** Thursday, April 25, 2024 12:45 PM
**To:** 'Akshata Benegal' <akshata.benegal@poovayya.net>
**Cc:** 'Justin Joseph' <justinpj2000@yahoo.com>; 'Manu Kulkarni' <manu@poovayya.net>; 'Dharmendra Chatur'
<dharmendra.chatur@poovayya.net>; Mordkoff, Andrew <amordkoff@willkie.com>; 'Nirnay Shanbough'
<nirnay.shanbough@poovayya.net>; 'Siddhartha George' <siddhartha@poovayya.net>; 'Smruthi Prahalad'
<smruthi.prahalad@poovayya.net>; Strickland, Rachel <RStrickland@willkie.com>; 'Varnika Sharma'
<varnika.sharma@poovayya.net>
**Subject:** RE: Justin Joseph

I will consult with my client on the items below and come back to you.  In the meantime, I am attaching the
word version of the document so you are able to propose edits.

Kristy

**From:** Akshata Benegal <akshata.benegal@poovayya.net>
**Sent:** Thursday, April 25, 2024 11:11 AM
**To:** Littman, A. Kristina <AKLittman@willkie.com>
**Cc:** 'Justin Joseph' <justinpj2000@yahoo.com>; 'Manu Kulkarni' <manu@poovayya.net>; 'Dharmendra Chatur'
<dharmendra.chatur@poovayya.net>; Mordkoff, Andrew <amordkoff@willkie.com>; 'Nirnay Shanbough'
<nirnay.shanbough@poovayya.net>; 'Siddhartha George' <siddhartha@poovayya.net>; 'Smruthi Prahalad'
<smruthi.prahalad@poovayya.net>; Strickland, Rachel <RStrickland@willkie.com>; 'Varnika Sharma'
<varnika.sharma@poovayya.net>
**Subject:** RE: Justin Joseph

**\*\* EXTERNAL EMAIL \*\*\***

Hi Kristina,

Thank you for the draft. We have discussed with Justin and he has the following concerns:

- The entire sum of $350,000 should be paid on the Effective Date.

- Statutory and Contractual Entitlements like Gratuity, Leave encashment etc. cannot be part of the $350,000.
  The said payments are additional as they are legal entitlements and can never be part of the settlement
  amount. The said statutory payments should be paid separately on the Separation Date as full and final
  payment to Justin.

- We understand that other employees including executives in India have received the variable
  compensation, and Justin is entitled to the same.

Do let us have your thoughts on this .We are happy to discuss this over a call.

Warm regards,

Akshata Benegal

| Principal Associate | + 91 9886940570 | akshata.benegal@poovayya.net |

207

80

**900**

The Estate, Level Four
121 Dickenson Road
Bangalore 560 042

T: +91 80 4656 3000
F: +91 80 4656 3088

| BANGALORE | NEW DELHI |

| | Chambers and Partners APAC 2020 | IFLR1000 2020 | Asia Law 2020 | Media Law International 2019 | Venture Intelligence |
|---|---|---|---|---|---|
| | Leading Law Firm in Employment and Real Estate | Ranked for M&A and Private Equity | Ranked for Corp and M&A, Dispute Resolution, Labour & Employment, Construction & Real Estate and TMT | Leading Practitioners | Top 15 Legal Advisors Mergers & Acquisitions 2017 |

INTERNET EMAIL CONFIDENTIALITY FOOTER

Attorney - client privileged/confidential information may be contained in this message. If you are not the first addressee indicated in this message (or responsible for delivery of the message to such person), you may not copy or deliver this message to anyone. In such case, you should destroy this message and kindly notify the sender by reply email. Please advise immediately if you or your employer do not consent to internet email for messages of this kind. Opinions, conclusions and other information in this message that do not relate to the official business of our firm shall be understood as neither given nor endorsed by it. Formal legal opinions are issued by the firm duly executed by its partners. Accordingly, this message shall not be considered as a formal legal opinion issued by the firm.

 *Please consider the environment before printing this email*

**From:** Dharmendra Chatur <dharmendra.chatur@poovayya.net>
**Sent:** Wednesday, April 24, 2024 6:55 AM
**To:** Littman, A. Kristina <AKLittman@willkie.com>
**Cc:** Akshata Benegal <akshata.benegal@poovayya.net>; Justin Joseph <justinpj2000@yahoo.com>; Manu Kulkarni <manu@poovayya.net>; Mordkoff, Andrew <amordkoff@willkie.com>; Nirnay Shanbough <nirnay.shanbough@poovayya.net>; Siddhartha George <siddhartha@poovayya.net>; Smruthi Prahalad <smruthi.prahalad@poovayya.net>; Strickland, Rachel <RStrickland@willkie.com>; Varnika Sharma <varnika.sharma@poovayya.net>
**Subject:** Re: Justin Joseph

Kristina:

Thank you for your email. We will review the agreement and get back to you with our comments by early next week. Can I please request that you send us a Word version of the document to help us make suggestions/comments in track?

On the variable compensation/annual bonus, we will seek Justin's instructions and respond shortly.

I've also marked Justin on this email - we request you to also mark him on all emails going forward.

Warm regards,
**Dharmendra Chatur**
Partner
M: +91 98444 64413 | O: +91 80 4656 3000
E: dharmendra.chatur@poovayya.net |

11

208

१1 **901**

A: Level Four, The Estate, 121 Dickenson Road, Bengaluru 560042 | D-25 Nizamuddin East, New Delhi 110 001 India

On Wed, 24 Apr 2024 at 4:46 AM, Littman, A. Kristina <AKLittman@willkie.com> wrote:

Akshata,

I am attaching a draft settlement agreement. Please review this and let me know if you have any proposed edits or comments. I am happy to arrange a time to speak by phone if that is preferrable.

I have spoken with my client about the variable compensation issue that you raised. It appears that the variable compensation that was contemplated for all members of the Executive Team was to be paid out 75% in stock and 25% in cash. As such, Mr. Joseph's anticipated cash bonus was only $19,000, with the remainder to be paid out in common stock. Given the company's financial condition and poor performance, it was determined at the end of the 4th quarter of 2023 that no executive bonuses would be paid, including those executives that were still working at the company. As with the other executives, Mr. Joseph will not be awarded a bonus for 2023.

For this reason, you will see in the attached proposed settlement agreement that the entirety of the monetary amount that Mr. Joseph will receive is the INR equivalent of $350,000. He will not be given any additional amounts for variable compensation.

Best,
Kristy Littman

**A. Kristina Littman**
**Willkie Farr & Gallagher LLP**
1875 K Street, N.W. | Washington, DC 20006-1238
Direct: +1 202 303 1209 | Fax: +1 202 303 2000
aklittman@willkie.com | vCard | www.willkie.com bio

---

**Important Notice:** This email message is intended to be received only by persons entitled to receive the confidential information it may contain. Email messages to clients of Willkie Farr & Gallagher LLP presumptively contain information that is confidential and legally privileged; email messages to non-clients are normally confidential and may also be legally privileged. Please do not read, copy, forward or store this message unless you are an intended recipient of it. If you have received this message in error, please forward it back. Willkie Farr & Gallagher LLP is a limited liability partnership organized in the United States under the laws of the State of Delaware, which laws limit the personal liability of partners.



209

**Important Notice:** This email message is intended to be received only by persons entitled to receive the confidential information it may contain. Email messages to clients of Willkie Farr & Gallagher LLP presumptively contain information that is confidential and legally privileged; email messages to non-clients are normally confidential and may also be legally privileged. Please do not read, copy, forward or store this message unless you are an intended recipient of it. If you have received this message in error, please forward it back. Willkie Farr & Gallagher LLP is a limited liability partnership organized in the United States under the laws of the State of Delaware, which laws limit the personal liability of partners.

**Important Notice:** This email message is intended to be received only by persons entitled to receive the confidential information it may contain. Email messages to clients of Willkie Farr & Gallagher LLP presumptively contain information that is confidential and legally privileged; email messages to non-clients are normally confidential and may also be legally privileged. Please do not read, copy, forward or store this message unless you are an intended recipient of it. If you have received this message in error, please forward it back. Willkie Farr & Gallagher LLP is a limited liability partnership organized in the United States under the laws of the State of Delaware, which laws limit the personal liability of partners.

**Important Notice:** This email message is intended to be received only by persons entitled to receive the confidential information it may contain. Email messages to clients of Willkie Farr & Gallagher LLP presumptively contain information that is confidential and legally privileged; email messages to non-clients are normally confidential and may also be legally privileged. Please do not read, copy, forward or store this message unless you are an intended recipient of it. If you have received this message in error, please forward it back. Willkie Farr & Gallagher LLP is a limited liability partnership organized in the United States under the laws of the State of Delaware, which laws limit the personal liability of partners.

**Important Notice:** This email message is intended to be received only by persons entitled to receive the confidential information it may contain. Email messages to clients of Willkie Farr & Gallagher LLP presumptively contain information that is confidential and legally privileged; email messages to non-clients are normally confidential and may also be legally privileged. Please do not read, copy, forward or store this message unless you are an intended recipient of it. If you have received this message in error, please forward it back. Willkie Farr & Gallagher LLP is a limited liability partnership organized in the United States under the laws of the State of Delaware, which laws limit the personal liability of partners.

**Important Notice:** This email message is intended to be received only by persons entitled to receive the confidential information it may contain. Email messages to clients of Willkie Farr & Gallagher LLP presumptively contain information that is confidential and legally privileged; email messages to non-clients are normally confidential and may also be legally privileged. Please do not read, copy, forward or store this message unless you are an intended recipient of it. If you have received this message in error, please forward it back. Willkie Farr & Gallagher LLP is a limited liability partnership organized in the United States under the laws of the State of Delaware, which laws limit the personal liability of partners.

13

**903**

BEFORE THE HON'BLE NATIONAL COMPANY LAW TRIBUNAL BANGALORE

BENCH AT BANGALORE

PRESENTATION FORM

CA No.____/BB/2025

IN

CP. No.39/BB/2025

SAJI P. JOHN Kar 290/99          JUSTIN JOSEPH
AJAI P.JKar2131/2017
  SPJ LEGAL                      Vs.
  ADVOCATES
Unit No 306, 3rd Floor,          NEAR INTELLIGENCE PVT LTD & OTHERS
# 30, Prestige Meridian II
M G Road
BENGALURU – 560001
Mobile no 98452 09798

| Sl No | Description of Paper Presented | Court fee affixed on the paper | |
|-------|-------------------------------|-------------------------------|---|
| 1. | Company Application Under Rules 11 Of The National Company Law Tribunal Rules, 2016 | | - |
| 2. | | | |
| 3. | | | |
| 4. | | | |
| 5. | | | |
| 6. | | | |
| | Total .... | | |

Number of copies furnished ...2......          Other side served

Presented by

ADVOCATE FOR APPLICANT

SAJI P JOHN, KAR 290/1999          Received paper with Court fee as above

Dated this 05th day of June 2025          Bangalore          Receiving clerk

**904**

BEFORE THE NATIONAL COMPANY LAW TRIBUNAL BENGALURU BENCH

IN THE MATTER OF RULES 11 OF THE NATIONAL COMPANY LAW TRIBUNAL

RULES, 2016

AND

IN THE MATTER OF NEAR INTELLIGENCE PVT LTD

CA NO.    /2025

IN

COMPANY PETITION NO. 39 /BB/2025

| | |
|---|---|
| APPLICANT: | JUSTIN JOSEPH |
| | Vs. |
| RESPONDENTS: | NEAR INTELLIGENCE PVT.LTD |
| | IN |
| PETITIONER: | NEAR INTELLIGENCE PTE LTD |
| | |
| | Vs. |
| RESPONDENTS: | NEAR INTELLIGENCE PVT LTD & OTHERS |

INDEX

| Sl. No | Particulars | Page Nos |
|---|---|---|
| 1. | Company Application | 1 - 8 |
| | Verifying affidavit | 9 - 10 |
| | The copy of the Master Data of the Respondent No.1 Company, as obtained from the Ministry of Corporate Affairs (MCA) portal ANNEXURE 1: | 11 - 12 |
| | The copy of the Employment Agreement dated 01.11.2021- ANNEXURE 2: | 13 - 29 |
| | The True copies of the salary details at the time of joining, as well as the revised salary details communicated in July 2022 -ANNEXURE 3 Series: | 30 - 32 |
| | The Copy of latest PF payment by the Respondent Company No.1 ANNEXURE 4 : | 33 - 34 |
| | The Copies of the email correspondence exchanged between Near Inc. and the Applicant ANNEXURE 5 Series : | 35 - 96 |
| | Proof of Service | 97 |

Bangalore

Date: 05·06·2025

ADVOCATE FOR APPLICANT

SAJI P JOHN, KAR 290/1999

BEFORE THE NATIONAL COMPANY LAW TRIBUNAL BENGALURU BENCH

IN THE MATTER OF RULES 11 OF THE NATIONAL COMPANY LAW TRIBUNAL

RULES, 2016

AND

IN THE MATTER OF NEAR INTELLIGENCE PVT LTD

CA NO.    /2025

IN

COMPANY PETITION NO. 39 /BB/2025

| | |
|---|---|
| APPLICANT: | JUSTIN JOSEPH |
| | Vs. |
| RESPONDENTS: | NEAR INTELLIGENCE PVT.LTD |
| | IN |
| PETITIONER: | NEAR INTELLIGENCE PTE LTD |
| | Vs. |
| RESPONDENTS: | NEAR INTELLIGENCE PVT LTD & OTHERS |

Between

Applicant:

JUSTIN JOSEPH
A 208,VIJETHA LAPIS LAZULI  APARTMENT
1st MAIN ROAD BROOKFIELD
KUNDALAHALI, BENGALURU
KARNATAKA-560037
PAN:
EMAIL: justinpj2000@yahoo.com
PH.NO.9916510399

Vs

Respondent NO-1:

NEAR INTELLIGENCE PVT LTD
#1, KATHALIPALYA MAIN ROAD
KORAMANAGALA
6TH BLOCK, BENGALURU-560095
PAN: AAHCN8319D
GST.NO. 29AAHCN8319D1ZA
EMAIL:
PH.NO: 8951944160

RESPONDENT NO-2:

NEAR INTELLIGENCE PTE LIMITED
Represented by NITHIN AGARWAL
1, PHILP STREET 305-01 ROYA; ONE PHILIP,
SINGAPORE
PAN: NA
EMAIL nithin@azira.com
PH. 9899117837

**906**
2

COMPANY APPLICATION UNDER RULES 11 OF THE NATIONAL COMPANY
LAW TRIBUNAL RULES, 2016

The Applicant most respectfully submits as follows:

I.    **Particulars of the Applicant:**

The Applicant, Justin Joseph is one of the Directors and employee of the
Respondent No-1 Company. The Applicant is the Respondent No.2 in the Main
Case.

II.    **Particulars of the Respondents**

1.  **Respondent No.1 is NEAR INTELLIGENCE PVT LTD** is a company registered
    under the Companies Act, 2013 bearing CIN: U72200KA2021PTC152422    and
    having its registered office at 1, Kathalipalya Main Road, Koramangala 6th Block,
    Bengaluru-560095. Respondent No. 1 is the Respondent No.1 in the main Petition.

2.  **Respondent No. 2 is NEAR INTELLIGENCE PTE LIMITED** is a company
    registered in Singapore and having its registered address at 1, Philp Street 305-01
    Roya; One Philp, Singapore. The Respondent No.2 is the holding company of
    Respondent No.1 and represented by Mr. Nithin Agarwal. Respondent No.2 is the
    Petitioner in the Main case.

III.    **Jurisdiction of Bench**

The Applicant submits that the Respondent Company No.1 is registered with the
Registrar of Companies, Karnataka at Bengaluru, hence is within the jurisdiction
of the National Company Law Tribunal, Bengaluru Bench.

IV.    **Facts of the Case:**

1.    NEAR INDIA PVT LTD (hereinafter referred to as NEAR) which was
      incorporated by Applicant herein along with another director in 2009. NEAR was
      engaged in the business of LOCATION BASED ADVERTISING and was serving
      clients globally. The 1st Respondent, [NEAR INTELLIGENCE PVT LTD]
      (hereinafter referred to as "Respondent No.1 Company"), was incorporated by the
      Applicant along with another director on 21.09.2021 under the provisions of the
      Companies Act, 2013. The Respondent No.1 Company took over the business and
      employees of NEAR. Later, entire shares of the Respondent No.1 Company was

**907**

taken over by Respondent No.2 in the year 2022. In the same year, Near Intelligence Inc (Near Inc) was incorporated in the USA and Near Inc took over the business of NEAR INTELLIGENCE PTE LIMITED and the Respondent Company No.1 became a step-down subsidiary of Near Inc.

2.    Near Inc went for an IPO in the USA in the year 2023 and the same was not so successful due to the COVID situations. Later in the year 2023 Near Inc filed bankruptcy papers and the company was taken over by BLUE TORCH CAPITAL which was a Financial Creditor who provided funding for IPO expenses. Further Near Inc has been delisted.

3.    As mentioned above, the Applicant was a Director and Employee of NEAR. He has been working as the Chief People Officer of NEAR since 2016. Upon taking over the business of NEAR by Respondent Company No.1, he became Director and Chief People Officer of the Respondent Company No.1. A copy of the Master Data of the Respondent No.1 Company, as obtained from the Ministry of Corporate Affairs (MCA) portal, is produced herewith and marked as ANNEXURE-1.

4.    The Applicant is a highly qualified I.T professional, possessing over twenty (20) years of comprehensive experience in the domains of Engineering, Operations, and Human Resources. The Applicant has consistently demonstrated professional excellence and integrity throughout his career. As mentioned above, it is respectfully submitted that the Applicant has been associated with the Respondent Company No.1 since its inception and was appointed as one of its Directors. The Applicant has played a vital and continuous role in the Company's growth and operations from the seeding stage up to the present day.

5.    The Applicant has been an Employee Director from 2009 and was Head of Mobile division from 2009 to 2012 and was VP of Operations from November 2012 to 2015. He was personally involved in the hiring of all the 150 plus employees of the Respondent Company No.1.

6.    The Applicant was Chief People Officer of the group with Employment Code NEA004 pursuant to the Employment Agreement dated 01.11.2021. It is pertinent to note that the said agreement also records that the Applicant's employment with earlier Company Near India Private Limited and it is recognized that his employment with the company shall be deemed to be in continuation of his tenure in Near India Private Limited and terms and joining date etc shall tie back to his

tenure of employment in Near India Private Limited ie. with effect from 01ˢᵗ October 2009. A copy of the Employment Agreement dated 01.11.2021 is annexed hereto and marked as **ANNEXURE-2**.

7. It is respectfully submitted that being the Chief People Officer (CPO) of the Respondent Company No.1, he is a key employee of the Respondent Company No. 1 and also handled a very important role as CPO in the group. As per the employment agreement, in the year 2021 the Applicant was eligible for a fixed annual salary of ₹1,20,00,000/- (Rupees One Crore Twenty Lakhs only), along with a variable pay component of ₹30,00,000/- (Rupees Thirty Lakhs only), amounting to a total gross annual salary of ₹1,50,00,000/- (Rupees One Crore Fifty Lakhs only). Subsequently, in July 2022, the Applicant received an email communication from **Mr. Rahul Agarwal** (CFO of the group) informing him of a revision in his salary along with other members of the Executive team. As per the said communication, the revised salary was stated to be ₹1,40,00,000 (Rupees one crore forty lakhs only) as fixed salary, with a variable component of ₹60,00,000 (Rupees sixty lakhs only), amounting to a total revised gross salary of ₹2,00,00,000 (Rupees two crore only). The salary revision was implemented from January 2023 onwards. The revised salary communication and true copies of the salary payment details are produced herewith and collectively marked as **ANNEXURE-3 SERIES**.

8. It is respectfully submitted that on 30.09.2023, without any prior notice or intimation, the Applicant was abruptly denied access to his official email account and all other portals and systems of Respondent No.1 company. Subsequently, the Applicant learnt from his colleagues that, most of the erstwhile management team, including himself, had been placed on 'administrative leave' but no intimation or notice regarding the same was given to him by the management till date. Later he learned that some internal enquiry was being initiated against some other persons in management who were employed in USA. It is pertinent to note that all allegations forming the basis of this enquiry were against some other officers of the Company and it was categorically confirmed to the Applicant that, there are no allegations against him. The Applicant had no involvement or connection whatsoever with the said allegations. Despite this, the Applicant was subjected to immense mental distress and agony due to the unwarranted actions taken against him.

9. Since there was no response or communication from the Respondent No.1 Company or Respondent No.2 Company for a year regarding his alleged "Administrative Leave" on September 26, 2024, the Applicant had informed

**909**

through his lawyers that he will be physically present at the offices of the Company to perform the directorial duties for the Company and duties as a Chief People Officer (CPO) of the Near Group. On October 01, 2024, at 09:05 a.m. IST, the Applicant had gone to the office as communicated. However, no sooner than he entered the offices of the Company he was asked by the security officer at the offices, repeatedly, albeit politely, to leave the premises. Upon enquiring the reason for being asked to leave the premises, the security officer refused to give him any such reason and asked him to vacate the premises immediately. At this stage, he informed him that as a director of the Company, he is entitled to physically work out of the Company's offices to complete the requisite Compliances and perform his other duties as an officer of the Company. The Applicant continued to wait, as entitled as a director of the Company, in the hope, trust and confidence that the Company and the Near Group will furnish the necessary papers, records and information, as well as will provide him access to his virtual and physical workspace, as well as Company records, to enable him to perform his functions and duties towards completion of the Compliances and to perform his other duties as a director of the Company. However, despite having patiently waited physically at the Company's offices for 4 hours, while withstanding the security officer's persistent, repeated and unauthorized efforts to remove him from the premises with no reasonable cause, all with the bonafide intention of extending his cooperation towards completion of the Compliances and to perform his statutory functions as a director of the Company, he was not given any access whatsoever to any Company records, information or to his workspace. In light of the same and given the Company's security officer's repeated requests to him to leave the office premises, he had no choice but was compelled to leave the Company's offices, rendering almost 4 hours of his time and efforts to physically work out of the Company's offices, completely in vain. Despite being a director and executive officer of the Company, he was unnecessarily humiliated and forced to leave the office premises by the Company's security officer.

10.     It is pertinent to note that the Applicant was placed on alleged 'administrative leave' effective from 30-09-2023 without valid intimation or proper justification. There is no provision under the employment agreement regarding such 'administrative leave'. Furthermore, the Applicant's salary was not paid from May 2024, nor was he informed about his current position or status within the company. Despite several follow-ups and inquiries, the Applicant has not received any response or clarification regarding the non-payment of his salary. The

**910**

continued withholding of salary without any official communication amounts to a clear violation of the Applicant's employment rights and has caused severe financial and mental distress. It may be noted that till date the Applicant not received any communication regarding termination of his employment. The Respondent Company continues to pay the PF dues every month till date. Copy of latest PF payment by the Respondent Company No.1 is attached as **ANNEXURE 4**.

11. The details of pending dues as follows:-

| PENDING SALARY DETAILS | | | |
|---|---|---|---|
| SL. NO | Item | Amount (INR) | Comments |
| 1 | Annual Variable Compensation for 2023 | 60,00,000.00 | Due on January 2024 |
| 2 | Annual Variable Compensation for 2024 | 60,00,000.00 | Due on January 2025 |
| 3 | Fixed Compensation due for September 2023 | 2,33,334.00 | Full salary was not paid * |
| 4 | Fixed Compensation due for October 2023 | 2,33,334.00 | Full salary was not paid * |
| 5 | Fixed Compensation due for November 2023 | 2,33,334.00 | Full salary was not paid * |
| 6 | Fixed Compensation due for December 2023 | 2,33,334.00 | Full salary was not paid * |
| 7 | Fixed Compensation due for January 2024 | 2,33,334.00 | Full salary was not paid * |
| 8 | Fixed Compensation due for February 2024 | 2,33,334.00 | Full salary was not paid * |
| 9 | Fixed Compensation due for March 2024 | 2,33,334.00 | Full salary was not paid * |
| 10 | Fixed Compensation due for April 2024 | 2,33,334.00 | Full salary was not paid * |
| 11 | Salary May 2024 | 11,64,867.00 | Not Paid |
| 12 | Salary June 2024 | 11,64,867.00 | Not Paid |
| 13 | Salary July 2024 | 11,64,867.00 | Not Paid |
| 14 | Salary August 2024 | 11,64,867.00 | Not Paid |
| 15 | Salary September 2024 | 11,64,867.00 | Not Paid |
| 16 | Salary October 2024 | 11,64,867.00 | Not Paid |
| 17 | Salary November 2024 | 11,64,867.00 | Not Paid |
| 18 | Salary December 2024 | 11,64,867.00 | Not Paid |
| 19 | Salary January 2025 | 11,64,867.00 | Not Paid |
| 20 | Salary February 2025 | 11,64,867.00 | Not Paid |
| 21 | Salary March 2025 | 11,64,867.00 | Not Paid |
| 22 | Quarterly Variable Compensation for Q1 2025 | 15,00,000.00 | Not Paid |
| 23 | Salary April 2025 | 11,64,867.00 | Not Paid |
| 24 | Salary May 2025 | 11,64,867.00 | Not Paid |
| | **TOTAL AMOUNT PENDING** | 3,05,09,943.00 | |



**911**

12. *Salary was revised to INR 20,000,000 (Fixed Compensation of INR 14,000,000 + Variable Compensation of INR 6,000,000 from January 2023 onwards. In August 2023, the Board of Near Inc had decided to reduce the compensation of all the Board Members and the senior management team by 20% in lieu of equity in Near Inc by year-end. But at the year-end no equity was given. Hence the Applicant herein is eligible for entire salary. Moreover, the salary of all the senior management & employees of the group has been increased in 2024 but no such benefit has been extended to this applicant.

13. It is evident from the foregoing that the investigation was not directed against the Applicant, and that no allegations whatsoever have been made against the Applicant. Subsequently, counsel of Near Inc. (the parent company) exchanged multiple email communications with the Applicant on the following dates: 03.11.2023, 09.11.2023, 10.11.2023, 15.11.2023, 17.11.2023, 20.11.2023, 21.11.2023, 28.11.2023, 29.11.2023, 03.12.2023, 05.12.2023, 06.12.2023, 11.12.2023, 15.12.2023, 16.12.2023, 29.12.2023, 18.01.2024, 30.01.2024, 02.02.2024, 07.02.2024, 08.02.2024, and till 24.04.2024 with respect to settlement with our client. The Copies of the email correspondence exchanged between Near Inc. and the Applicant are produced herewith and marked as ANNEXURE-5 Series. After multiple communications, on 28.02.2024, Near Inc agreed in principle for a compensation amount of USD 350,000. However, merely two months later, on 24.04.2024, Near Inc unilaterally deviated from the agreed terms and conditions and failed to respond thereafter. Later Respondent Company No.1 filed petition seeking leave of this court for conducting EGM with single person quorum for appointing new Directors in Respondent Company No.1 with the ulterior motive of whitewashing the illegal transactions done by Near Inc in the company since 30.09.2023 as well as to evade from the payment of this Applicant's pending salary dues.

14. In light of the foregoing, it is respectfully submitted that the unjust placement of the Applicant on illegal 'Administrative leave' without valid justification, coupled with the deliberate non-payment of salary and lack of official communication, constitutes a serious breach of contractual and statutory obligations by the Respondent Company No.1. The Applicant humbly prays that this Hon'ble Tribunal take cognizance of the matter and direct the Respondent to immediately release all pending salary dues. Hence this IA.

**912**

V.    Limitation:

The Company Petition was filed on and the Main case is ongoing. Hence within the Limitation.

VI.    Reliefs

WHEREFORE, the Applicant herein prays that this Hon'ble Court may be pleased to grant the following Reliefs:

1.    This Hon'ble Bench may be pleased to direct the Respondent company No.1 to immediately release all pending salary dues as listed out in the computation table at Para 11 above.

2.    Pass such other order as this Hon'ble Tribunal may deem fit in the interest of justice and equity.

VII.    Particulars of Bank draft evidencing payment of fee for the Application made:

The fee of INR 1,000/- is paid by the Applicant in favour of *"Pay and Accounts Officer, Ministry of Corporate Affairs, Chennai"* through *Bharathghosh* website.

ADVOCATE FOR APPLICANT
SAJI P JOHN, KAR 290/1999

Bengaluru
Date: 05 · 06 · 2025

APPLICANT



**INDIA NON JUDICIAL**

**913**

## Government of Karnataka

### e-Stamp

| | | |
|---|---|---|
| Certificate No. | : | IN-KA44557876070016X |
| Certificate Issued Date | : | 30-May-2025 11:27 AM |
| Account Reference | : | NONACC (FI)/ kabacsl08/ M G ROAD1/ KA-SV |
| Unique Doc. Reference | : | SUBIN-KAKABACSL0810752686422502X |
| Purchased by | : | JUSTIN JOSEPH |
| Description of Document | : | Article 4 Affidavit |
| Property Description | : | AFFIDAVIT |
| Consideration Price (Rs.) | : | 0<br>(Zero) |
| First Party | : | JUSTIN JOSEPH |
| Second Party | : | NA |
| Stamp Duty Paid By | : | JUSTIN JOSEPH |
| Stamp Duty Amount(Rs.) | : | 100<br>(One Hundred only) |





.................................................................... Please write or type below this line ....................................



Statutory Alert:
1. The authenticity of this Stamp certificate should be verified at 'www.shcilestamp.com' or using e-Stamp Mobile App of Stock Holding.
   Any discrepancy in the details on this Certificate and as available on the website / Mobile App renders it invalid.
2. The onus of checking the legitimacy is on the users of the certificate.
3. In case of any discrepancy please inform the Competent Authority.

**914**

*10*

BEFORE THE NATIONAL COMPANY LAW TRIBUNAL BENGALURU
BENCH
IN THE MATTER OF RULES 11 OF THE NATIONAL COMPANY LAW
TRIBUNAL RULES, 2016
AND
IN THE MATTER OF NEAR INTELLIGENCE PVT LTD
CA NO.    /2025
IN
COMPANY PETITION NO. 39 /BB/2025

| | |
|---|---|
| APPLICANT: | JUSTIN JOSEPH |
| | Vs. |
| RESPONDENTS: | NEAR INTELLIGENCE PVT.LTD |
| | IN |
| PETITIONER: | NEAR INTELLIGENCE PTE LTD |
| | Vs. |
| RESPONDENTS: | NEAR INTELLIGENCE PVT LTD & OTHERS |

### VERIFYING AFFIDAVIT

I, JUSTIN JOSEPH, S/o P M Ouseph, aged about 49 years, residing at A 208 Vijetha Lapis Lazuil Apartment 1stmain road Brookfield kundalahali Bengaluru Karnataka 560037, do hereby solemnly affirm and state on oath as follows:

1. I am the Applicant in the above Application and I am fully conversant with the facts and able to depose the same.

2. I have read the accompanying Application and I say that the statements made in the Application said are true and correct. I pray that the said Application to be treated as part and parcel of my affidavit for the reasons more specifically set out in the Verifying Affidavit.

Solemnly affirmed and sincerely stated on oath this 05th day of June, 2025 at Bengaluru.

Identified by me

ADVOCATE

SWORN TO BEFORE ME

N. KANCHIVARADARAJU, M.A. LLB
ADVOCATE & NOTARY PUBLIC
GOVERNMENT OF INDIA
# 66/67, 5th Cross, Jyothi Nagar,
Chandra Layout, Bangalore - 560 072.
Mob : 9008573379

0 5 JUN 2025

DEPONENT



**915**

ANNEXURE -1

37
# Ministry Of Corporate Affairs

Date : 08-11-2024 2:29:29 pm

Company Information

| CIN | U72200KA2021PTC152422 |
|---|---|
| Company Name | NEAR INTELLIGENCE PRIVATE LIMITED |
| ROC Name | ROC Bangalore |
| Registration Number | 152422 |
| Date of Incorporation | 29/09/2021 |
| Email Id | justin@near.com |
| Registered Address | #1, Kathalipalya Main Road, Koramangala 6th Block, Bangalore, Bangalore, Karnataka, India, 560095 |
| Address at which the books of account are to be maintained | - |
| Listed in Stock Exchange(s) (Y/N) | No |
| Category of Company | Company limited by shares |
| Subcategory of the Company | Non-government company |
| Class of Company | Private |
| ACTIVE compliance | - |
| Authorised Capital (Rs) | 15,00,000 |
| Paid up Capital (Rs) | 1,00,000 |
| Date of last AGM | 14/11/2022 |
| Date of Balance Sheet | 31/03/2022 |
| Company Status | Active |

| Jurisdiction | |
|---|---|
| ROC (name and office) | ROC Bangalore |
| RD (name and Region) | RD, South East Region |

Index of Charges

TRUE COPY

**916**

*12*

38

No Records Found

## Director/Signatory Details

| Sr. No | DIN/PAN | Name | Designation | Date of Appointment | Cessation Date | Signatory |
|--------|---------|------|-------------|---------------------|----------------|-----------|
| 1 | 01741174 | ANIL MATHEWS | Director | 02/12/2021 | - | Yes |
| 2 | 02838539 | JUSTIN JOSEPH | Director | 29/09/2021 | - | Yes |

TRUE COPY





### EMPLOYEE NON-DISCLOSURE AGREEMENT

This employee non-disclosure agreement (the "Agreement") is entered into by Near Intelligence Pvt. Ltd., ("Company") and Justin Joseph ("Employee") effective November 01, 2021 in view of the Employment Agreement executed between the Employee and Company effective November 01, 2021.

The Company's objective under this Employee non-disclosure Agreement is to provide protection for Confidential Information (defined below) disclosed to the Employee by the Company or any of its affiliate or group companies, while allowing the Employee access to the Company's information prior to or during the tenure of the Employee's employment with the Company. For the purposes of this Agreement, "Company" shall be deemed to include all affiliate and group companies of the Company.

In consideration of the commencement of Employee's employment with Company and the compensation that will be paid, Employee and Company agree as follows:

1.   COMPANY'S CONFIDENTIAL INFORMATION

In the performance of Employee's duties with Company, Employee will be exposed to Company's Confidential Information. "Confidential Information" means information or material that is commercially valuable to Company and not generally known or readily ascertainable in the industry, including but is not limited to:

(a)   technical information concerning Company's products and services, including product know-how, formulas, designs, devices, diagrams, software code, test results, processes, inventions, research projects and product development, technical memoranda and correspondence;

(b)   information concerning Company's business, including cost information, profits, sales information, accounting and unpublished financial information, business plans, markets and marketing methods, customer lists and customer information, purchasing techniques, supplier lists and supplier information and advertising strategies;

(c)   information concerning Company's employees, including salaries, strengths, weaknesses and skills;

(d)   information submitted by Company's customers, suppliers, employees, consultants or co-venture partners with Company for study, evaluation or use;

(e)   any information not generally known to the public which, if misused or disclosed, could reasonably be expected to adversely affect Company's business; and

(f)   any confidential or proprietary information received by Company or which it may receive in future from third parties subject to a duty on the Company's part to maintain the confidentiality of such information and to use it only for certain limited purposes.

Page 1 of 17



♀ Near Intelligence Pvt Ltd. #1, Kathalpalya Main Road, Koramangala 6th Block, Bengaluru 560095
✆ +91 80 4555 9555   o www.near.com   CIN: U72200KA2021PTC152422



**918**



2.   NONDISCLOSURE OF CONFIDENTIAL INFORMATION

Employee shall keep Company's Confidential Information, whether or not prepared or developed by Employee, in the strictest confidence. Employee shall not disclose such information to anyone outside Company without Company's prior written consent. Employee shall not make use of any Confidential Information for Employee's own purposes or the benefit of anyone other than the Company.

However, Employee shall have no obligation to treat as confidential any information which:

(a)   was in Employee's possession or known to Employee, without an obligation to keep it confidential, before such information was disclosed to Employee by Company;

(b)   is or becomes public knowledge through a source other than the Employee and through no fault of Employee; or

(c)   is or becomes lawfully available to Employee from a source other than Company.

3.   CONFIDENTIAL INFORMATION OF OTHERS

Employee will not disclose to Company, use in Company's business, or cause Company to use, any trade secret or confidential information of others/third parties.

4.   RETURN OF MATERIALS

When Employee's employment with Company ends, for whatever reason, Employee will promptly deliver to Company all originals and copies of all documents, records, software programs, media and other materials containing any Confidential Information. Employee will also return to Company all machines, equipment, files, software programs and other personal property belonging to Company.

5.   CONFIDENTIALITY OBLIGATION SURVIVES EMPLOYMENT

Employee's obligation to maintain the confidentiality and security of Confidential Information shall remain even after Employee's employment with the Company ends and shall continue for so long as such Confidential Information is not explicitly disclosed in the public domain by an authorized representative of the Company.

6.   GENERAL PROVISIONS

(a)   Relationships: Nothing contained in this Agreement shall be deemed to make the Employee a partner or joint venturer of the Company for any purpose.

(b)   Severability: If a court finds any provision of this Agreement invalid or unenforceable, the remainder of this Agreement shall be interpreted so as best to effect the intent of the Company and Employee.



♀ Near Intelligence Pvt Ltd. #1, Kathalipalya Main Road, Koramangala 6th Block, Bengaluru 560095
☏ +91 80 4555 8555   ◉ www.near.com   CIN: U72200KA2021PTC152422



TRUE COPY



(c) Integration: This Agreement expresses the complete understanding of the parties with respect to the subject matter and supersedes all prior proposals, agreements, representations and understandings. This Agreement may not be amended except in a writing signed by both Company and Employee.

(d) Waiver: The failure to exercise any right provided in this Agreement shall not be a waiver of prior or subsequent rights.

(e) Injunctive Relief: Any misappropriation of any of the Confidential Information in violation of this Agreement may cause Company irreparable harm, the amount of which may be difficult to ascertain, and therefore Employee agrees that Company shall have the right to apply to a court of competent jurisdiction for an order enjoining any such further misappropriation and for such other relief as Company deems appropriate. This right is to be in addition to the remedies otherwise available to Company.

(f) Indemnity: Employee agrees to indemnify and hold the Company harmless against any and all losses, damages, claims or expenses incurred or suffered by Company as a result of Employee's breach of this Agreement.

(g) Attorney Fees and Expenses: In a dispute arising out of or related to this Agreement, the prevailing party shall have the right to collect from the other party its reasonable attorney fees and costs and necessary expenditures.

(h) Governing Law: This Agreement shall be governed in accordance with the laws of India, with the courts in Bangalore assuming exclusive jurisdiction on all matters hereunder.

IN WITNESS WHEREOF, the parties below hereby execute this Agreement

Employee

Signature

Name: Justin Joseph
Designation: Chief People Officer

Near Intelligence Pvt. Ltd.

Signature

Name: Vinod Desai
Designation: Director

TRUE COPY



⚲ Near Intelligence Pvt Ltd. #1, Kathalipalya Main Road, Koramangala 6th Block, Bengaluru 560095
☏ +91 80 4555 9555  ⊙ www.near.com  CIN: U72200KA2021PTC152422

**920**

/ß



## PROPRIETARY INFORMATION AND ASSIGNMENT AGREEMENT

This Proprietary Information and Assignment Agreement ("Agreement") effective from November 01, 2021 ("Effective Date") is executed by and between Near Intelligence Pvt. Ltd., (the "Company"), Justin Joseph ("Employee"), Near Pte. Ltd. a company registered in Singapore ("Near 1") and Near Intelligence Pte. Ltd. a company registered in Singapore ("Near 2"). Near 1 and Near 2 are collectively referred to as "NEAR SINGAPORE".

WHEREAS:
Near 1 is the parent company of NEAR 2 and Near 2 is the holding company of the Company. The Employee is in employment with the Company through the Employment Agreement and Employee acknowledges that he/ she has had in the past/ will/may have access to sensitive and Proprietary Information belonging to the Company and/ or NEAR SINGAPORE and/ or to any of its affiliate companies ("Affiliates") and in order to protect the business interest of the Company and NEAR SINGAPORE and all of their prior and current subsidiaries and affiliates, and predecessors (hereinafter, individually or collectively referred to as, "NEAR"), the Employee agrees to the terms set out herein.

NOW THEREFORE, in consideration of the mutual covenants and agreements contained in this Agreement, the Parties agree as follows:

1.     **Proprietary Information**. The Employee understands that his/ her work as an Employee of the Company, as part of the group of NEAR companies, including NEAR SINGAPORE ("Group Company"), will involve access to and creation of confidential (including trade secrets) and proprietary information (collectively, "Proprietary Information"). NEAR SINGAPORE may assign to or allow the Company to use, on terms agreed upon between the parties, several of its intellectual property rights and Proprietary Information. NEAR SINGAPORE has, therefore, a very direct interest in protecting its valuable Proprietary Information and making sure that no one may have access to its Proprietary Information through the Company. To ensure complete secrecy and enforce stringent security measures, NEAR SINGAPORE is a necessary and indispensable party to this Proprietary Information Agreement. The Employee agrees to keep all Proprietary Information in trust for the benefit of the Group Company. The Employee shall never use any Proprietary Information, except as required by his/ her duties to the Company. Employee understands that this prohibition on use or disclosure prevents him/ her from discussing Proprietary Information, even in general terms, with persons outside the Group Company. Even within the Group Company, the Employee shall discuss or disclose the Proprietary Information ONLY with those persons with or to whom he/ she is authorized to discuss or disclose such information.

"Proprietary Information" includes any information, ideas, and materials of or about the Company, NEAR SINGAPORE, or its Affiliates (any company which controls, is controlled by, or under common control with NEAR SINGAPORE), Employees, customers of NEAR SINGAPORE or its Affiliates, or others with whom NEAR SINGAPORE or its Affiliates conducts business. Proprietary Information that is not generally known to the software or recruiting industries or the public is confidential, and the Employee agrees to exercise diligence, at all times to maintain the confidentiality of all Proprietary Information and not disclose Proprietary Information. The Employee understands that his/ her obligation to keep Proprietary Information strictly confidential shall survive the termination of his/ her employment and/or this Agreement.

Proprietary Information includes, without limitation, information, ideas or materials of a technical nature such as research and development results, software design and specifications, source and

Page 4 of 17



⚲ Near Intelligence Pvt Ltd. #1, Kathalipalya Main Road, Koramangala 6th Block, Bengaluru 560095
☏ +91 80 4555 9555   @ www.near.com   CIN: U72200KA2021PTC152422


TRUE COPY



**921**

object code, training and training materials, Invention disclosures, patent applications, and other materials and concepts relating to products and processes. Proprietary Information also includes information, ideas, or materials of a business nature such as non-public financial information; information relating to profits, costs, marketing, strategy, purchasing, sales, customers, suppliers, contract terms, employees, and salaries, product development plans; business and financial plans and forecasts, student information, client company information, and marketing and sales plans and forecasts.

2.     Inventions & Assignment. The Employee shall promptly and fully disclose to the Company and/or NEAR SINGAPORE all ideas, inventions, discoveries, creations, designs, materials, works of authorship, *sui generis* database rights trademarks, and other technology and rights (and any related improvements or modifications thereof), whether patentable or not, copyrightable or not, or otherwise protectable or not under any form of legal protection afforded to intellectual property (collectively, "Inventions"), relating to any activities of the Group Company of which the Employee is aware of or becomes aware of, conceived or developed by him/ her alone or with others, (1) during the term of his/ her employment, whether or not conceived during regular business hours, (2) within one year after termination of his/ her employment if based on Proprietary Information or (3) developed using equipment, supplies, facilities or trade secrets of the Company or NEAR SINGAPORE.

Such Inventions shall be jointly & severally owned by NEAR 1 & Near 2 respectively. To the extent possible, such Inventions shall each be considered a 'Work Made For Hire' by him/ her for NEAR SINGAPORE under relevant provisions of law. To the extent the Inventions may not be considered such a 'Work Made For Hire', the Employee agrees to assign, and automatically assign to NEAR SINGAPORE at the time of creation of the Inventions, without additional consideration, any right, title, or interest the Employee may have in such Inventions. The Employee will (whether during or after his/ her employment by the Company) execute such written instruments and do other such acts as may be necessary in the opinion of NEAR SINGAPORE to obtain a patent, register a copyright, or otherwise protect or enforce NEAR SINGAPORE's rights in such Inventions. The Employee hereby irrevocably appoints NEAR SINGAPORE and any of its officers as his/ her attorneys-in-fact to undertake such acts in his/ her name. The Employee will allow NEAR SINGAPORE to inspect any Inventions that he/ she conceive or develop within one year after termination of his/ her employment to determine if they are based on Proprietary Information.

The Employee is well aware of the fact that due to the technological advancements in the field of software development and coding, certain codes, if altered/changed even minutely, may lead to substantially a different functionality/result. Such alteration(s) of codes *ipso facto* do not violate the well establish principle of "Doctrine of Equivalence." However, the Employee hereby assigns to NEAR SINGAPORE, free of cost and in perpetuity, all/any Invention caused or made by him/ her due to such alteration(s)/change(s) in code.

This assignment obligation does not apply to Inventions which are conceived or developed entirely on his/ her own time and for which the Employee does not use any equipment, supplies, facilities, or Proprietary Information of the Group Company or any of its customers, if such Inventions: (a) do not relate to the business or (current and reasonably anticipated) research and development efforts of the Group Company or its customer; and (b) do not result from any work performed by his/ her (alone or with others) for the Group Company.

The Employee also hereby irrevocably waives and agrees never to assert any and all Moral Rights that the Employee may have in or with respect to any Inventions. "Moral Rights" mean and include any

Page 5 of 18



⚲ Near Intelligence Pvt Ltd. #1, Kathalipalya Main Road, Koramangala 6th Block, Bengaluru 560095
☏ +91 80 4555 9555  ⊚ www.near.com  CIN: U72200KA2021PTC152422



TRUE COPY

**922**

/8



rights to claim authorship of any Invention, to object, to prevent the modification of any Invention, or to withdraw from circulation or control the publication or distribution of any Invention, and any similar right, existing under judicial or statutory Law of any country in the world, or under any treaty, regardless of whether or not such right is denominated or generally referred to as a Moral Right. The Employee further waives his right under any applicable law with respect to application for revocation of assignment of any Invention assigned to NEAR Singapore under this Agreement, in the event such assignment has not been utilized by NEAR SINGAPORE.

3.      **Return of Proprietary Information.** On termination of his/ her employment with the Company, or at any time it so requests, the Employee will deliver immediately to NEAR SINGAPORE and the Company all property belonging to the Group Company and all material containing Proprietary Information regardless of the storage media type, including but not limited to notebooks, notes, memoranda, records, diagrams, blueprints, bulletins, formulas, reports, computer programs and documentation, other data, customer lists, accounts of customers, any other records relating to customers, or memorializations of any kind coming into his/ her possession or kept by him/ her in connection with his/ her employment including any copies, in his/ her possession, whether prepared by him/ her or others.

4.      **Former Employers'/ Third Party's Information.** The Employee agrees that he/ she will not, during his/ her employment with the Company, improperly use or disclose any proprietary information or trade secrets of any former or concurrent employer or other person or entity and that he/ she will not bring onto the premises of the Group Company any unpublished document or proprietary information belonging to any such employer, person or entity or any third party unless consented to, in writing by such employer, person or entity. To the extent that the Employee has such information or materials, he/ she acknowledge notice that the Company does not want him/ her to disclose such information or materials to the Company, nor does the Company want him/ her to use such information or materials in any work that the Employee may perform for the Company.

5.      **Assistance Upon Termination.** The Employee shall upon leaving employment with the Company, assist the Company and/ or NEAR SINGAPORE in patenting any inventions or registration of any other form of intellectual property rights even after severance of employment by way of undertaking required formalities (at reasonable expenses paid by the Company) and for this purpose keep the Company informed of his/ her addresses in the succeeding five years after leaving employment.

6.      **Reserved Rights: License.** The Employee has listed on the attached Annexure "A" a detailed description of all of independent inventions developed or conceived by him/ her, patented or unpatented and, to the extent that he/ she possess proprietary rights therein, the Employee wishes to have such proprietary rights excluded from this Agreement. If there is no such list, the Employee represents that there are no such items to be excluded. In the event that the Employee incorporates, uses, or otherwise employs ("Use") any Inventions in which the Employee possesses any proprietary rights to develop or modify any work (including any interim versions thereof and whether for internal and/or customer use) of or for the Group Company, he/ she hereby grants to NEAR SINGAPORE a perpetual, irrevocable, royalty free, worldwide, nonexclusive license to make, have made, perform, display, use, practice, sell, sublicense, reproduce, distribute, prepare derivative works, and otherwise exploit such proprietary rights.

7.      **Conflicting Agreement.** The Employee represents that there are no other contracts to assign Inventions currently in existence between the Employee and any other corporation or other third

Page 6 - 13 /



⌖ Near Intelligence Pvt Ltd. #1, Kathalipalya Main Road, Koramangala 6th Block, Bengaluru 560095
☏ +91 80 4555 9555  ⌨ www.near.com  CIN: U72200KA2021PTC152422





**923**

party, unless he/ she has so indicated on Annexure "A" and unless a copy of any such contract is attached hereto.

8.      **NEAR Policies.** The Employee agrees to comply with the policies and procedures of NEAR SINGAPORE and the Company, in their respective Employee manuals, code of conduct and bulletins, and other communications which may all be modified from time to time at the sole discretion of the Company or NEAR SINGAPORE, respectively. In the event of any inconsistencies, the terms of this Agreement shall govern unless otherwise stated.

9.      **Assurances Upon Termination.** The Employee will, upon termination of his/ her employment with the Company or upon the Company's request, reaffirm his/ her recognition of the importance of maintaining the confidentiality of Proprietary Information and reaffirm all of the obligations set forth in this Agreement.

10.     **Choice of Law; Jurisdiction; Remedies.** This Agreement shall be governed by and construed in accordance with the laws of Singapore, and the Employee voluntarily submits himself/ herself to the jurisdiction of the courts in Singapore. The Employee acknowledges that breach of this Agreement would cause irreparable damage to NEAR SINGAPORE the monetary value of which, he/ she acknowledges, shall be extremely difficult to be ascertained. Therefore, the Employee agrees that, in addition to other remedies, NEAR SINGAPORE is entitled to a temporary restraining order, an injunction, or other equitable relief to prevent any such breach.

11.     **Severability.** If any provision of this Agreement is determined to be invalid or unenforceable, such provision shall be reformed to the minimum extent necessary to be valid and enforceable, and the validity or enforceability of the other provisions shall not be affected.

12.     **Assignment & Successors.** Near 1 or Near 2 may, jointly or individually, assign this Agreement at its discretion to any third party pursuant to restructuring, merger, acquisition, etc. This Agreement inures to the benefit of successors and assigns of NEAR SINGAPORE and is binding on his/ her heirs and legal representatives.

13.     **Survival.** This Agreement survives termination of his/ her employment with the Company.

14.     **Notice.** All notices and other communications provided for or permitted hereunder shall be in writing and delivered in person or sent through an internationally recognized commercial courier or by facsimile transmission at the addresses hereinbefore mentioned with attention to:

| If to the Company: | If to NEAR SINGAPORE: | If to the EMPLOYEE: |
|---|---|---|
| Address: #1, | Address: 160, Robinson Road, | Address: as per the address |
| Kathalipalya Main Road, | #20-03 SBF Center | proof provided during the |
| Koramangala 6th Block, | Singapore 068914 | Joining Date |
| Bengaluru 560095 | | |
| Attention: | Attention: | |
| Telephone: | Telephone: | Telephone: |

 ♀ Near Intelligence Pvt Ltd. #1, Kathalipalya Main Road, Koramangala 6th Block, Bengaluru 560095
☎ +91 80 4555 9555  ⊚ www.near.com  CIN: U72200KA2021PTC152422



**924**





All such notices and communications shall be deemed to have been duly given and delivered: if delivered in person, when personally delivered to the address of the addressee; if delivered by commercial courier, five (5) business days after being dispatched; and, if sent by facsimile transmission or e-mail, when receipt is acknowledged. Any of the above addresses may be changed by notice given in accordance with this Article 14.

15.     General. This is not an employment contract. This Agreement supersedes and replaces any existing agreement entered into by him/ her and NEAR SINGAPORE or the Company relating to the same subject matter. This Agreement shall not be modified except in writing and signed by him/ her, an authorized representative of NEAR SINGAPORE as well as an authorized representative of the Company.

16.     Counsel. The Employee understands that he/ she may have independent legal counsel review this Agreement, at his/ her own expense, on his/ her behalf prior to execution.

IN WITNESS WHEREOF THE PARTIES HAVE EXECUTED AND DELIVERED THIS AGREEMENT TO BE EFFECTIVE ON THE EFFECTIVE DATE SET FORTH ABOVE.

EMPLOYEE,

Signature
Name: Justin Joseph
Title:   Chief People Officer

NEAR PTE. LTD.

Signature
Name: Rahul Agarwal
Title: Chief Financial Officer

Company

Signature
Name: Vinod Desai
Title: Director
November 01, 2021

NEAR INTELLIGENCE PTE. LTD.

Signature
Name: Anil Mathews
Title: Founder & CEO
November 01, 2021

TRUE COPY



 �◉ Near Intelligence Pvt Ltd. #1, Kathalipalya Main Road, Koramangala 6th Block, Bengaluru 560095
☎ +91 80 4555 9555  ◎ www.near.com  CIN: U72200KA2021PTC152422

**925**

Annexure A

TRUE COPY

 Near Intelligence Pvt Ltd. #1, Kathalipalya Main Road, Koramangala 6th Block, Bengaluru 560095
+91 80 4555 9555   www.near.com   CIN: U72200KA2021PTC152422

**926**





## EMPLOYMENT AGREEMENT

November 01, 2021

Near/India/NEA004

### PRIVATE & CONFIDENTIAL

Name: Justin Joseph
Email: justinpj2000@yahoo.com
Phone No.: +91 9916510399

### Appointment: Chief People Officer

Dear Justin,

We welcome you to Near Intelligence Private Limited (the "Company" or "We" or "Our") and wish you an enriching tenure with us.

Your employment with the Company shall be deemed to be in continuation of your tenure with Near India Private Limited and terms such as Joining Date i.e. 01 Oct 2009, Probation Period or such other references that tie back to tenure of your employment with Near India Private Limited shall be interpreted accordingly. Any references to the term of this Agreement, consequently shall include the term of your agreement with Near India Private Limited ("Previous Agreement"). This Employment Agreement ("Agreement") and the Previous Agreement (to the extent set out in the preceding sentence) supersedes and replaces all other communications made to you prior to the date of issue of this Agreement. This Agreement also sets out the terms of understanding with respect to your employment with the Company which are no less disadvantageous to you than the terms of the Previous Agreement. In the event of any conflict between this Agreement and the Previous Agreement, the terms of this Agreement will prevail, except the Joining Date, Probation Period or references to tenure of your employment with Near India Private Limited.

1. **TITLE AND DUTIES**

We are pleased to appoint you as "Chief People Officer". You will perform such duties and exercise such powers as the Company may, from time to time, require of you. You acknowledge that your designation, as stated above, may be changed at the discretion of the Company depending on the work assigned to you, including at the time of promotion and progression within the Company. Your appointment shall also be subject to such statutes, rules and regulations as are applicable and are in force now and/or any such modifications or enactments that may come into force from time to time.

2. **PLACE OF WORK**

You will be based in Bangalore, India. However, the Company reserves the right at any time to require you to attend training sessions, Company meet-ups or work at any other division or location of the Company or its clients, or be transferred to any branch office, subsidiaries and associate companies, situated anywhere in India or abroad, whether existing or, which may be set up in future. These assignments will be agreed with you in advance and will fall within the scope of work set out in this Agreement. In such case, all transfer facilities applicable per the Company's then existing policies will be made available to you. In the event, you leave the Company within one (1) year of your Joining Date, you will refund all expenses borne by Company on your training, travel, re-location etc. If you

Page 10 of 17



📍 Near Intelligence Pvt Ltd. #1, Kathalpalya Main Road, Koramangala 6th Block, Bengaluru 560095
📞 +91 80 4555 9555  🌐 www.near.com   CIN: U72200KA2021PTC152422



TRUE COPY



**927**

fail to repay the Company, Company will have the right to deduct the expenses incurred from your full and final settlement of salary payable to you, at the time of separation.

3.    HOURS OF WORK

We estimate that under the Agreement, you will be required to work five (5) days in a week i.e. forty (40) hours out of the normal working week. However, you will, in addition, work such hours and days as may be necessary or appropriate from time to time to carry out your duties properly and effectively. Further, during your employment with the Company, you are expected to devote your entire time and attention to the Company's affairs and refrain from directly or indirectly engaging in any other activity including engaging with any person in any capacity that will potentially conflict with the business of the Company and Your role.

4.    EMOLUMENTS AND TAXES

Refer to <u>Annexure 'A'</u>

Your individual remuneration is strictly between yourself and the Company. It has been determined based on numerous factors such as your job, skills-specific background, and professional merit. This information and any changes made therein should be treated as personal and highly confidential.

You shall be solely responsible for paying any taxes, direct or indirect, state or local, whether payable in India or elsewhere which may result from the remuneration paid to you pursuant to your employment hereunder. The Company is entitled to deduct from your remuneration, income tax, other taxes and levies which it is liable to deduct at source under applicable law. The break-up of the remuneration payable to you is attached herewith as <u>Annexure 'A'.</u>

5.    PROBATION

Your probation period is six (6) months from your Joining Date ("Probation Period"). Your full time employment will commence at the time of successful completion of the Probation Period with a written confirmation letter from the Company, in its sole discretion. Notwithstanding anything to the contrary herein, your employment with the Company under this Agreement may be terminated forthwith through a written notice by the Company during the Probation Period.

6.    NOTICE PERIODS

Subject to Clause 8 below, this Agreement may be terminated by either party (you or the Company) on providing sixty (60) days' written notice to the other party. The tenure for the notice period starts from the date of acceptance of the resignation letter by your reporting manager. Company may, in its sole discretion, terminate the Agreement before the expiry of the notice period, on such terms and conditions as may be decided by the Company. If you are absent for a continuous period of ten (10) days without leave or without obtaining your manager's approval, your employment will be immediately terminated by Company for cause and without notice, in which case, you will be liable to pay to the Company an amount equal to your then current gross salary for a period of sixty (60) days in lieu of the notice required to be provided.



⦿ Near Intelligence Pvt Ltd. #1, Kathalipalya Main Road, Koramangala 6th Block, Bengaluru 560095
☏ +91 80 4555 9555  ◎ www.near.com   CIN: U72200KA2021PTC162422


TRUE COPY

**928**



7. TERMINATION AND SUSPENSION

7.1. The Company may, in its sole discretion, terminate this Agreement immediately, with no liability to make any further payment (other than in respect of amounts accrued as on the date of termination) to you, if you:
   (a) commit any serious or repeated breach of any of your obligations under this Agreement;
   (b) are responsible for any gross negligence in the performance of your duties, intentional non-performance or mis-performance of such duties, or refuse to abide by the orders of reporting managers, supervisors or refuse to comply with lawful directives of the Company;
   (c) are guilty of serious misconduct which, in the Company's reasonable opinion, has damaged or may damage the business or affairs of the Company;
   (d) are guilty of conduct which, in the Company's reasonable opinion, brings or is likely to bring you or the Company into disrepute;
   (e) are in breach any of the Company's policies and procedures;
   (f) willfully cause damage to any property of the Company; or
   (g) are found guilty of sexual harassment through proceedings conducted within the Company in accordance with the Company's Policy on Prevention of Sexual Harassment at the Workplace.
   This Clause shall not restrict any other right the Company may have (whether under applicable law or otherwise) to terminate this Agreement summarily. Any delay by the Company in exercising its rights under this Clause shall not constitute a waiver of those rights.

7.2. Where notice of termination has been served by either party whether in accordance with Clause 6, this Clause 7 or otherwise, the Company shall be under no obligation to provide work for or assign any duties to you for the whole or any part of the relevant notice period and may require you:
   (a) not to enter any premises of the Company; and/or
   (b) to refrain from making any contact with any customers, clients or other employees of the Company.

7.3. The Company may, in its absolute discretion, suspend you, on full salary, at any time during your employment under this Agreement including during any period in which the Company is carrying out an investigation into any of your acts or defaults (or alleged or suspected acts or defaults) or where it does not require you to enter its premises and continue working on assignments under Clause 7.2 above. The applicable Clauses within this Agreement shall remain in full force and effect during any period of suspension under this Clause. You will also continue to be bound by duties of good faith and fidelity to the Company during any such period of suspension.

7.4. Upon termination of this Agreement for whatever reason, on your last working day of employment with the Company, you will deliver to the Company all computer devices, laptops, machines, books, documents, papers, materials, access cards or Confidential Information as defined in the NDA (*defined in Clause 11 below*) and other property relating to the business of the Company (hereinafter the "Company's Equipment's"), which may then be in your possession or under your power or control.



⚘ Near Intelligence Pvt Ltd. #1, Kathalpalya Main Road, Koramangala 6th Block, Bengaluru 560095
☎ +91 80 4555 9555  ○ www.near.com  CIN: U72200KA2021PTC152422



TRUE COPY



**929**

7.5.  Notwithstanding anything to the contrary herein, your remuneration for the last month of your employment with the Company, shall be payable in the subsequent month along with the full and final settlement remuneration payable to you.

8.  **RESTRAINT ON ACTIVITIES**

You will not, at any time after termination of this Agreement, for whatever reason, represent yourself as being in any way connected with the affairs of the Company.

9.  **POST TERMINATION**

9.1  **NON-SOLICITATION**

(a)  You shall not and shall not attempt to, either personally, or through an agent or firm, directly or indirectly, during your employment and after the termination of this Agreement for a period of twenty four (24) months by whatever means solicit or attempt to solicit any business from any of the Company's customers, prospective customers, or vendors.

(b)  You shall not and shall not attempt to, either personally, or through an agent or firm, directly or indirectly, during your employment and after the termination of this Agreement for the period of twelve (12) months by whatever means recruit, solicit, or induce, or attempt to recruit, solicit, or induce, any employee, director, shareholder or consultant of the Company, to terminate their employment relationship with the Company or induce any Vendor or Customer of the Company to terminate its arrangement with the Company.

9.2  **NON-COMPETE**

For a period of twenty four (24) months after the termination of this Agreement by whatever means, you shall not without the prior written consent of the Company, work for, or consult with, any company, firm or person which is in direct competition with the Company or with any customer, prospective customer, business partner or vendor of the Company.

9.3  **NON- DISPARAGEMENT**

You shall not tarnish the reputation of or disparage the Company, the parent company, their respective affiliates, directors, shareholders, or employees and shall not otherwise harm the goodwill or reputation of such persons in any manner.

9.4  **PUBLICATION**

You shall not, during the tenure of your employment with the Company or at any time thereafter, either personally or through a third party, directly or indirectly, refer to or publish any false, incorrect or partially incorrect information about, or of the Company, in any form of social media or public forums or otherwise. Breach of this Clause will entitle the Company to terminate this Agreement with immediate effect and with no liability to make any further payment (other than in respect of amounts accrued due at the date of termination) to you or to pursue any legal action against you, as applicable, in the event of your breach of this Clause post leaving the employment of the Company. Further, notwithstanding the above, you acknowledge that any post, comment, opinion etc. published by you on any matter in any

 ♀ Near Intelligence Pvt Ltd. #1, Kathalipalya Main Road, Koramangala 6th Block, Bengaluru 560095
☏ +91 80 4555 9555  o www.near.com  CIN: U72200KA2021PTC152422

TRUE COPY

**930**





forum, including social media, is your personal view and that the Company shall have no liability or responsibility for the same whatsoever.

10.  PRIVACY

You hereby provide consent to the Company for collecting, using, disclosing to third parties or other group companies of the Company your personal information and sensitive personal data for the purpose of your employment and for purposes related to your emoluments, any other benefits and taxes.

11.  CONFIDENTIALITY

The Company requires all employees to execute a Non-Disclosure Agreement ("NDA") to protect the rights of its employees and also that of the Company while dealing with confidential information, documents, etc. The said NDA forms part of this Agreement and is applicable to you. You are required to read, understand and sign the enclosed NDA in acknowledgement of your acceptance of the conditions therein.

12.  INTELLECTUAL PROPERTY

You agree to execute a Proprietary Information and Assignment Agreement ("PI Assignment Agreement") in favour of the parent or any affiliate company of the group company. The PI Assignment Agreement forms an integral part of this Agreement. You are required to read, understand and sign the enclosed PI Assignment Agreement in acknowledgement of your acceptance of the conditions therein.

13.  NOTICES

Notice under these terms and conditions will be treated as having been given if sent by ordinary registered post, by you to the Company's registered office or by the Company to you at your last known address on file with the Company, and will be deemed to be given on the day when it would ordinarily be delivered after such posting. Notwithstanding the above, any notice under this Agreement can also be given in writing by email to (i) Company at hr@near.com and (ii) to employee at employee's personal email id. It is your responsibility to notify the Company of any changes in your personal information, including residential address or personal email address within three (3) working days of such change being effective.

14.  CONDITIONS

The offer of employment under this Agreement is conditional upon satisfactory completion of the Company's pre-employment screening process, which includes, but is not limited to, verification of your application materials, education and employment history, references which are satisfactory to the Company from your previous employer(s) etc. Your employment is also contingent upon your ability to work for the Company without restriction (i.e. you do not have any non-compete obligations or other restrictive clauses with any previous employer). If, after you have started work, we are informed that you have not (in our sole discretion) satisfactorily completed pre-employment screening, or if it is found at any time during your employment with the Company that any information furnished by you is incorrect or false, and/or if you have suppressed material information regarding your qualifications and experience, the Company may terminate your employment with immediate

Page 14 of 17

 ♀ Near Intelligence Pvt Ltd. #1, Kathalipalya Main Road, Koramangala 6th Block, Bengaluru 560095
📞 +91 80 4555 9555   o www.near.com   CIN: U72200KA2021PTC152422

 TRUE COPY




**931**

effect and with no liability to make any further payment (other than in respect of amounts accrued at the date of termination) to you. During your employment with the Company, you explicitly agree to adhere to and be governed by all rules, regulations, instructions, personnel policies and the policies of the Company, as may be applicable to you, and any change thereof, which may be adopted by the Company from time to time.

15. **POLICIES OF THE COMPANY IN FORCE AND GOVERNING LAW**

    (a) You will abide by all the policies of the Company including but not limited to (*i*) the Policy on Prevention of Sexual Harassment at the Workplace, (*ii*) Anti-Corruption and Anti-Bribery Policy and Code of Ethical Business Conduct, (*iii*) Whistle-blower Policy, and (*iv*) the Leaves Policy which are in force from time to time and the Company shall have the right to vary or modify any or all of the above policies which shall be binding on you.

    (b) You agree that you shall not knowingly participate in any activity that constitutes an actual or potential conflict of interest with your employment with the Company.

    (c) You will be entitled to leaves (including earned leaves and sick leaves) in accordance with the Company's leave policies, as in effect from time to time. The Company, in its sole discretion, may amend its leave policies on an annual basis or any other intervals.

    (d) This Agreement shall be governed by the laws of India, with the courts in Bangalore assuming exclusive jurisdiction on all matters hereunder.

16. **SEVERABILITY**

In the event that any of the provisions of this Agreement are held to be invalid or unenforceable in whole or in part, those provisions to the extent enforceable and all other provisions shall nevertheless continue to be valid and enforceable as though the invalid or unenforceable parts had not been included in this Agreement. In the event that any provision relating to a time period of restriction is declared by a court of competent jurisdiction to exceed the maximum time period such court deems reasonable and enforceable, then the time period of restriction deemed reasonable and enforceable by the court shall become and shall thereafter be the maximum time period.

17. **INJUNCTIVE RELIEF**

You agree that it may be impossible to assess the damages caused by your violation of this Agreement or any of its terms. You agree that any threatened or actual violation of this Agreement or any of its terms will constitute an immediate and irreparable injury to the Company, and the Company will have the right to enforce this Agreement and any of its provisions by injunction, specific performance or other equitable relief, without bond and without prejudice to any other rights and remedies that the Company may have for a breach or threatened breach of this Agreement.

18. **WAIVER**

Any waiver or consent from the Company with respect to any term or provision of this Agreement or any other aspect of your conduct or employment shall be effective only in the specific instance and for the specific purpose for which given and shall not be deemed, regardless of frequency given, to be a further or continuing waiver or consent. The failure or delay of the Company at any time or times to

    ♀ Near Intelligence Pvt Ltd #1, Kathalpalya Main Road, Koramangala 6th Block, Bengaluru 560095
☏ +91 80 4555 9555  ☐ www.near.com  CIN: U72200KA2021PTC152422



**932**



require performance of, or to exercise any of its powers, rights or remedies with respect to any term or provision of this Agreement or any other aspect of your conduct or employment in no manner (except as otherwise expressly provided herein) shall affect the Company's right at a later time to enforce any such term or provision.

19.   SURVIVAL

Termination of this Agreement for any reason shall be without prejudice to any rights that shall have accrued to the benefit of a party prior to such termination. Such termination shall not relieve a party from obligations that are expressly indicated to survive the termination of this Agreement or those obligations which by their nature are expected to survive the termination of this Agreement.

20.   AGREEMENT READ AND UNDERSTOOD

You acknowledge that you have carefully read the terms of this Agreement, that you had the opportunity to consult with an attorney or other representative of your choice regarding this Agreement, that you understand the terms of this Agreement and that you are entering into this Agreement of your own free will.

We are delighted to have you as part of our team. To confirm your acceptance of this Agreement on the terms and conditions specified herein, please sign in the space specified below.

For Near Intelligence Private Limited

Vinod Desai
Director

> *I agree that I have read, understand, and accept employment with Near Intelligence Private Limited under the terms and conditions stated above.*

Signature          :

Name (in Capitals) :     Justin Joseph

Place & Date       :     Bangalore, November 01, 2021

TRUE COPY

 **near.**  ♀ Near Intelligence Pvt Ltd. #1, Kathalipalya Main Road, Koramangala 6th Block, Bengaluru 560095
☎ +91 80 4555 9555  ⊚ www.near.com  CIN: U72200KA2021PTC152422




**933**

Annexure – A

| Name | Justin Joseph |
|---|---|
| Designation | Chief People Officer |
| Employee Code | NEA004 |

ALLOWANCES AND BENEFITS:

| Components of Salary | Yearly (INR) |
|---|---|
| Fixed | 1,20,00,000 /- |
| Variable | 30,00,000 /- |
| Gross Salary | 1,50,00,000 /- |

*Note:*

(a) *Allowances and reimbursement of expenses are subject to production of original bills/voucher as per prevailing reimbursement policy.*

(b) *The compensation calculated above is just an estimate and may vary from the actual due to taxes.*

(c) *Variable component will be paid on a quarterly basis in four equal parts, over a twelve (12) months' period. Variable component will be payable along with the salary of the immediately succeeding month of the quarter in which variable component is accrued, provided you are on the payroll of the Company on such succeeding month's salary disbursement date. Notwithstanding anything to the contrary herein, you shall not be entitled to any variable pay if you are no longer in employment with the Company on the date of disbursal of the variable pay.*

(d) *Amount deductible for contribution to provident fund will be deducted from the monthly gross salary payable and paid to the PF department.*

(e) *All the above benefits are as per Company's policies which are subject to change from time to time.*

(f) *All compensation shall be subject to the applicable withholding tax, other employment taxes and customary payroll deductions, wherever applicable.*

(g) *The Company shall be entitled to deduct from the remuneration set out hereinabove, the following amounts:*
*(i) Tax deduction at source, at applicable rates;*
*(ii) All employment/professional taxes (as applicable);*
*(iii) Contribution to provident fund, or any such other employee benefits as per the Company's policies and applicable law; and*
*(iv) All other dues payable to the Company such as, loans and advances given to you, if applicable.*

*Salary details and other terms of this Agreement are required to be kept **Confidential** and should not be shared directly or indirectly with others.

Page 17 of 17



⦿ Near Intelligence Pvt Ltd. #1, Kathalipalya Main Road, Koramangala 6th Block, Bengaluru 560095
☏ +91 80 4555 9555  ⊚ www.near.com  CIN: U72200KA2021PTC152422



TRUE COPY

**934**

ANNEXURE - 3 series.

㉚



Annexure – A

| Name | Justin Joseph |
|------|---------------|
| Designation | Chief People Officer |
| Employee Code | NEA004 |

**ALLOWANCES AND BENEFITS:**

| Components of Salary | Yearly (INR) |
|---------------------|--------------|
| Fixed | 1,20,00,000 /- |
| Variable | 30,00,000 /- |
| Gross Salary | 1,50,00,000 /- |

*Note:*

*(a) Allowances and reimbursement of expenses are subject to production of original bills/voucher as per prevailing reimbursement policy.*

*(b) The compensation calculated above is just an estimate and may vary from the actual due to taxes.*

*(c) Variable component will be paid on a quarterly basis in four equal parts, over a twelve (12) months' period. Variable component will be payable along with the salary of the immediately succeeding month of the quarter in which variable component is accrued, provided you are on the payroll of the Company on such succeeding month's salary disbursement date. Notwithstanding anything to the contrary herein, you shall not be entitled to any variable pay if you are no longer in employment with the Company on the date of disbursal of the variable pay.*

*(d) Amount deductible for contribution to provident fund will be deducted from the monthly gross salary payable and paid to the PF department.*

*(e) All the above benefits are as per Company's policies which are subject to change from time to time.*

*(f) All compensation shall be subject to the applicable withholding tax, other employment taxes and customary payroll deductions, wherever applicable.*

*(g) The Company shall be entitled to deduct from the remuneration set out hereinabove, the following amounts:*

*(i) Tax deduction at source, at applicable rates;*

*(ii) All employment/professional taxes (as applicable);*

*(iii) Contribution to provident fund, or any such other employee benefits as per the Company's policies and applicable law; and*

*(iv) All other dues payable to the Company such as, loans and advances given to you, if applicable.*

\*Salary details and other terms of this Agreement are required to be kept Confidential and should not be shared directly or indirectly with others.

Page 12 of 12



⌖ Near Intelligence Pvt Ltd. #1, Kathalipalya Main Road, Koramangala 6th Block, Bengaluru 560095
☏ +91 80 4555 9555   ⊚ www.near.com   CIN: U72200KA2021PTC152422



TRUE COPY

*3/*
**935**



## NEAR INTELLIGENCE PRIVATE LIMITED
#1, Kaithalipalya Main Road, Koramangala, 6th Block, Bangalore, Karnataka, India, 560095

### Payslip for the month of April 2023

| Name: | Justin Joseph | | | Bank Name: | ICICI Bank |
|---|---|---|---|---|---|
| Employee No: | NEA004 | | | Bank Account No: | 004701603545 |
| Designation: | Chief People Officer | | | PF No: | PYBOM24791140000010113 |
| Department: | Executive Team | | | PF UAN: | 100040201612 |
| Location: | Bangalore | | | PAN No.: | AFRPJ8255J |
| Effective Working Days: | 30 | | | LOP: | 0 |
| Days In Month: | 30 | | | | |

| Earnings | Full | Actual | Deductions | Actual |
|---|---|---|---|---|
| BASIC | 582434 | 582434 | PF | 1800 |
| HRA | 232973 | 232973 | PROF TAX | 200 |
| LTA | 116487 | 116487 | INCOME TAX | 368620 |
| SPECIAL ALLOWANCE | 182973 | 182973 | CORPORATE NPS DED | 50000 |
| CORPORATE NPS | 50000 | 50000 | | |
| Total Earnings:INR. | 1164867 | 1164867 | Total Deductions:INR. | 420620 |

Net Pay for the month ( Total Earnings - Total Deductions):   744247

*(Rupees seven lakh forty four thousand two hundred forty seven Only)*

| RSU PERQUISITE: | 0 | | RSU TDS: | |
|---|---|---|---|---|

This is a system generated payslip and does not require signature.

TRUE COPY

**936**

CONFIDENTIAL I ET Revised Compensation Nos.

**Subject:** CONFIDENTIAL | ET Revised Compensation Nos.
**From:** Rahul Agarwal <rahul@near.com>
**Date:** 29/06/22, 11:59 pm
**To:** John Faieta <jfaieta@near.com>, Justin Joseph <justin@near.com>
**CC:** Anil Mathews <anil@near.com>

As discussed, please see below the final nos. effective July 1, 2022:

| ET | Fixed | Variable | Total | *Variable % of Fixed* |
|---|---|---|---|---|
| Anil Mathews | $400,000 | $200,000 | $600,000 | *50%* |
| Shobhit Shukla | $350,000 | $150,000 | $500,000 | *43%* |
| Rahul Agarwal | $350,000 | $150,000 | $500,000 | *43%* |
| Gladys Kong | $350,000 | $150,000 | $500,000 | *43%* |
| Madhusudan Therani | $250,000 | $100,000 | $350,000 | *40%* |
| John Faieta | $225,000 | $90,000 | $315,000 | *40%* |
| Justin Joseph | $175,000 | $75,000 | $250,000 | *43%* |
| Total | $2,100,000 | $915,000 | $3,015,000 | *44%* |

Regards,
Rahul Agarwal / Chief Financial Officer
M: +91 9916896999 I +65 98295479  I near.com

 REAL-WORLD INTELLIGENCE ON PEOPLE AND PLACES
SAN FRANCISCO I NEW YORK I LONDON I BANGALORE I SINGAPORE I TOKYO I SYDNEY

TRUE COPY



ANNEXURG-4

**937**

# कर्मचारी भविष्य निधि संगठन
(श्रम एवं रोजगार मंत्रालय, भारत सरकार)
## EMPLOYEES' PROVIDENT FUND ORGANISATION
(Ministry of Labour & Employment, Govt. of India)



### सदस्य पासबुक / Member Passbook

| स्थापना आईडी / नाम | Establishment ID/Name | PYBOM2479114000 / NEAR INTELLIGENCE PRIVATE LIMITED |
|---|---|---|
| सदस्य आईडी / नाम | Member ID/Name | PYBOM24791140000010113 / JUSTIN JOSEPH |
| जन्म तिथि | Date of Birth | 20-02-1976 |
| यू.ए.न | UAN | 100040201612 |

### ईपीएफ पासबुक [ वित्तीय वर्ष - 2024-2025 ] / EPF Passbook [ Financial Year - 2024-2025 ]

| विवरण / Particulars | | | | वेतन / Wages | | कर्मचारी शेष /<br>Employee<br>Balance | नियोक्ता शेष /<br>Employer<br>Balance | पेंशन शेष /<br>Pension<br>Balance |
|---|---|---|---|---|---|---|---|---|
| OB Int. Updated upto 01/04/2024 | | | | | | 55,187 | 16,863 | 35,000 |
| वेतन माह /<br>Wage Month | ट्रांसवान / Transaction | | विवरण / Particulars | वेतन / Wages | | संस्थान / Contribution | | |
| | दिनांक / Date | प्रकार<br>/ Type | | ई.पी.एफ / EPF | ई.पी.एस / EPS | कर्मचारी /<br>Employee | नियोक्ता /<br>Employer | वेतन /<br>Pension |
| Mar-2024 | 16-04-2024 | CR | Cont. For Due-Month 042024 | 15,000 | 15,000 | 1,800 | 550 | 1,250 |
| Apr-2024 | 16-05-2024 | CR | Cont. For Due-Month 052024 | 15,000 | 15,000 | 1,800 | 550 | 1,250 |
| May-2024 | 07-06-2024 | CR | Cont. For Due-Month 062024 | 15,000 | 15,000 | 1,800 | 550 | 1,250 |
| Jun-2024 | 06-07-2024 | CR | Cont. For Due-Month 072024 | 15,000 | 15,000 | 1,800 | 550 | 1,250 |
| Jul-2024 | 14-08-2024 | CR | Cont. For Due-Month 082024 | 15,000 | 15,000 | 1,800 | 550 | 1,250 |
| Aug-2024 | 09-09-2024 | CR | Cont. For Due-Month 092024 | 15,000 | 15,000 | 1,800 | 550 | 1,250 |
| Sep-2024 | 05-10-2024 | CR | Cont. For Due-Month 102024 | 15,000 | 15,000 | 1,800 | 550 | 1,250 |
| Oct-2024 | 07-11-2024 | CR | Cont. For Due-Month 112024 | 15,000 | 15,000 | 1,800 | 550 | 1,250 |
| Nov-2024 | 06-12-2024 | CR | Cont. For Due-Month 122024 | 15,000 | 15,000 | 1,800 | 550 | 1,250 |
| Dec-2024 | 07-01-2025 | CR | Cont. For Due-Month 012025 | 15,000 | 15,000 | 1,800 | 550 | 1,250 |
| | | | Total Contributions for the year [ 2024 ] | | | 18,000 | 5,500 | 12,500 |
| | | | Total Transfer-Ins/VDRs for the year [ 2024 ] | | | 0 | 0 | 0 |
| | | | Total Withdrawals for the year [ 2024 ] | | | 0 | 0 | 0 |
| Interest details N/A | | | | | | 0 | 0 | 0 |
| Closing Balance as on 31/03/2025 | | | | | | 73,187 | 22,363 | 47,500 |

-------------विवरण की समाप्ति/End Of Statement-----------------       मुद्रित/Printed On : 20-03-2025 17:12:07

प्रतिद्वान – ऊपर दी गई जानकारी केन्द्रीय सर्वर पर दी गई जानकारी के आधार पर है। यह जानकारी कानूनी प्रयोजन के लिए उपयोग नहीं की जा सकती है।
Disclaimer - Information shown above is based on available data on central server.This information may not be use for legal purpose.

* Please never respond to any call for sharing any personal details like Aadhar, PAN, Bank details, OTP or request for any payment.

* EPFO never calls members/ pensioners to deposit any amount.

* Please do not make any payment based on any such call.

TRUE COPY

**938**

34







कर्मचारी भविष्य निधि संगठन
(श्रम एव रोजगार मंत्रालय, भारत सरकार)
**EMPLOYEES' PROVIDENT FUND ORGANISATION**
(Ministry of Labour & Employment, Govt. of India)

सदस्य पासबुक / Member Passbook

| | | |
|---|---|---|
| स्थापना आईडी / नाम | Establishment ID/Name | PYBOM2479114000 / NEAR INTELLIGENCE PRIVATE LIMITED |
| सदस्य आईडी / नाम | Member ID/Name | PYBOM24791140000010113 / JUSTIN JOSEPH |
| जन्म तिथि | Date of Birth | 20-02-1976 |
| यू ए न | UAN | 100040201612 |

| Taxable Data for the year [ 2024-2025] | | | |
|---|---|---|---|
| OB Int. Updated upto 01/04/2024 | 55,187 | 55,187 | 0 |
| Cont. Month | Monthly Contribution | Cumulative Balance at the end of the Month | |
| | | Non-Taxable | Taxable |
| Apr-2024 | 1,800 | 1,800 | 0 |
| May-2024 | 1,800 | 3,600 | 0 |
| Jun-2024 | 1,800 | 5,400 | 0 |
| Jul-2024 | 1,800 | 7,200 | 0 |
| Aug-2024 | 1,800 | 9,000 | 0 |
| Sep-2024 | 1,800 | 10,800 | 0 |
| Oct-2024 | 1,800 | 12,600 | 0 |
| Nov-2024 | 1,800 | 14,400 | 0 |
| Dec-2024 | 1,800 | 16,200 | 0 |
| Jan-2025 | 1,800 | 18,000 | 0 |
| Feb-2025 | 0 | 18,000 | 0 |
| Mar-2025 | 0 | 18,000 | 0 |
| TOTAL | 18,000 | 18,000 | 0 |
| Int. Updated upto 31/03/2025 | 0 | 0 | 0 |
| Closing Balance as on 31/03/2025 | 73,187 | 73,187 | 0 |

*In case taxable interest is less than Rs. 5,000/- then TDS will not be deducted.

TRUE COPY

ANNEXURE **939**
35

148

# Poovayya & Co.
ADVOCATES    SOLICITORS

21

a case, you alone will be responsible for all the cost/s, consequence/s and damage/s thereof.

A notice fee of Rs.25,000/- is charged herewith.



POOVAYYA & CO.,
Advocates and Solicitors

TRUE COPY

10

The Estate, Level Four, 121 Dickenson Road, Bangalore - 560 042, India
Phone : +91 80 46563000    Fax : +91 80 4656 3088    Email · law@poovayya.net

**940**

*36*

149ANNEXURE-"B"  22

nirnay.shanbough@poovayya.net

| | |
|---|---|
| From: | Littman, A. Kristina <AKLittman@willkie.com> |
| Sent: | Friday, November 3, 2023 03:05 AM |
| To: | 'Akshata Benegal' |
| Cc: | Strickland, Rachel; manu@poovayya.net; dharmendra.chatur@poovayya.net; manoj.raikar@poovayya.net; mansi.dabbir@poovayya.net; smruthi.prahalad@poovayya.net; 'Nirnay Shanbough' |
| Subject: | RE: Justin Joseph : Near Intelligence, Inc. |

Dear Ms. Benegal,

Thank you for your email. We appreciate your client's willingness to cooperate with our investigation. Answers to your questions are listed below. Please let me know when Mr. Joseph is available to be interviewed by Zoom.

1. Please provide a brief description of the investigation referred to in your email in the trailing mail.

   We are investigating transactions relating to the relationship between Near Intelligence and MobileFuse. We are specifically interested in hearing about any agreements with MobileFuse as both a customer and a vendor to Near. We are also investigating other transfers to vendors and transfers to Mon FX.

2. Is this investigation being conducted by Near Intelligence Inc. or by any governmental authority? Please provide a brief explanation on the procedure of the investigation, and what happens once the investigation is concluded.

   I am conducting an investigation on behalf of Near Intelligence, Inc. We have collected documents and are interviewing witnesses. If Mr. Joseph agrees to sit for an interview, we anticipate showing him certain Near documents on screen and asking him to share any knowledge or understanding he has with us. He will have an opportunity to fully examine each document on screen before answering any questions. Once our investigation is concluded we will report to the Restructuring Committee of the Board and any determinations by the company will be communicated to Mr. Joseph.

3. As our client is an employee of Near Intelligence Private Limited, and not of Near Inc., how does this investigation concern our client?

   My understanding is that Near Intelligence Private Limited is a wholly owned subsidiary of Near Intelligence, Inc.

4. Is our client being interviewed as a witness? Are there any allegations made against our client? If so, please provide details of this.

   Mr. Joseph is being interviewed as a witness and I am not aware of any allegations made against him.

5. Will all expenses relating to the investigation and any outcome therefrom in respect of our client, be borne by Near Intelligence Inc.?

   I am not aware of any entitlement to indemnification for Mr. Joseph.

6. By when can we expect a response to our client's legal notice?

   The legal notice that you sent is being handled by counsel at TriLegal in India. I will encourage them to provide a timely response.

1  TRUE COPY



87
**941**

150

Best,

23

Kristy Littman

A. Kristina Littman
Willkie Farr & Gallagher LLP
1875 K Street, N.W. | Washington, DC 20006-1238
Direct: +1 202 303 1209 | Fax: +1 202 303 2000
aklittman@willkie.com | vCard | www.willkie.com bio

From: Akshata Benegal <akshata.benegal@poovayya.net>
Sent: Thursday, November 2, 2023 12:57 AM
To: Littman, A. Kristina <AKLittman@willkie.com>
Cc: Strickland, Rachel <RStrickland@willkie.com>; manu@poovayya.net; dharmendra.chatur@poovayya.net;
manoj.raikar@poovayya.net; mansi.dabbir@poovayya.net; smruthi.prahalad@poovayya.net; 'Nirnay Shanbough'
<nirnay.shanbough@poovayya.net>
Subject: RE: Justin Joseph : Near Intelligence, Inc.

 **EXTERNAL EMAIL**

Dear Ms. Littman,

Further to our email below, we clarify that any cooperation by our client is without prejudice to our client's claims in his
legal notice and our client reserves all rights thereto.

Warm regards,

Akshata Benegal

| Principal Associate | + 91 9886940570 | akshata.benegal@poovayya.net |

Poovayya & Co.
ADVOCATES & SOLICITORS

The Estate, Level Four
121 Dickenson Road
Bangalore 560 042

T: +91 80 4656 3000
F: +91 80 4656 3088

| BANGALORE | NEW DELHI |

vaHu
WINNER

| INDIA BUSINESS LAW JOURNAL | Chambers and Partners APAC 2020 | IFLR1000 2020 | Asia Law 2020 | Media Law International 2019 | Venture Intelligence |
|---|---|---|---|---|---|
| AWARD WINNING LAW FIRM 2020 | Leading Law Firm in Employment and Real Estate | Ranked for M&A and Private Equity | Ranked for Corp and M&A, Dispute Resolution, Labour & Employment, Construction & Real Estate and TMT | Leading Practitioners | Top 15 Legal Advisors Mergers & Acquisitions 2017 |

INTERNET email CONFIDENTIALITY NOTES

Attorney - client privileged/confidential information may be contained in this message intended solely to the person indicated in the message. the responsible for delivery of the message to the intended recipient. If you are not the addressee to anyone, in such cases, you should destroy this message and kindly revert the message to the sender immediately. If you or your employer do not consent to internet email messages of this nature signatures, or any other information in this message that do not relate to the official business of our company be understood as the endorsed by it. For any legal opinions are issued by the firm designated by its partners. In no event is this communication to be considered any formal advice, opinion, issued by us.

Please consider the environment before printing this email

2

 **TRUE COPY**